IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Case No. 25-30002 |
| | ) | (Chapter 11) |
| GENERATIONS ON 1ST, LLC | ) | |
| | ) | |
| Debtor | ) | |
| _____ | ) | |
| | ) | |
| In re: | ) | Case No. 25-30003 |
| | ) | (Chapter 11) |
| PARKSIDE PLACE, LLC | ) | |
| | ) | |
| Debtor | ) | |
| _____ | ) | |
| | ) | |
| In re: | ) | Case No. 25-30004 |
| | ) | (Chapter 11) |
| THE RUINS, LLC | ) | |
| | ) | |
| Debtor | ) | |
| _____ | ) | (*Joint Administration Motion Pending*) |

**MOTION TO UTILIZE FDIC-INSURED DEPOSITORY ACCOUNTS**

Come now Generations on 1st, LLC ("Generations"), Parkside Place, LLC ("Parkside"), and The Ruins, LLC ("Ruins") (collectively, the "Debtors," and each a "Debtor"), by and through undersigned proposed counsel, pursuant to Federal Rule of Bankruptcy Procedure 6004, and move this Honorable Court for leave to maintain depository accounts at institutions that are insured by the Federal Deposit Insurance Corporation (the "FDIC") but that are not necessarily participants in the debtor-in-possession bank account ("DIP Account") program, and in support thereof state as follows:

**I.    Introduction**

While none of the Debtors presently maintain any bank accounts, at least two of the Debtors (Generations and Parkside) will need to imminently open accounts to receive funds previously

1

being held by a receiver as well as future rental proceeds from apartment building tenants. In so doing, the Debtors will look to area banking institutions in either Watertown, South Dakota or Fargo, potentially looking to synergize existing banking relationships held by the entities' principal. It is likely this will result in the utilization of checking and/or savings accounts at a bank that is FDIC-insured but that does not furnish specialized DIP Accounts.

While the Debtors are aware that the Operating Guidelines and Reporting Requirements of the United States Trustee (the "UST Guidelines") call for all pre-petition accounts to be closed, and new DIP Accounts to be opened, such seems unpragmatic in the prism of these cases. And the Debtors accordingly now ask this Honorable Court to affirmatively permit Generations, Parkside and Ruins to maintain traditional FDIC-insured accounts in accord with prevailing notions of equity and a plain language reading of Title 11 of the United States Code (the "Bankruptcy Code").

To be sure, there are myriad obligations attendant to the maintenance of a Chapter 11 proceeding in this Honorable Court, including many enforced by the United States Trustee (the "UST"). The Debtors have every intention of complying with each such rigor correlative to their cases, and do not seek to shirk the mandates of monthly operating reports, attendance at initial debtor interviews, the ongoing provision of pertinent information when requested by the UST, or anything else. But limiting banking options would serve little demonstrable purpose *sub judice*, especially so long as each of the Debtor's bank accounts is fully insured.

For these reasons, and as extrapolated upon *infra*, the Debtors respectfully ask they be permitted to use traditional depository accounts.

II. **Argument: Traditional Depository Accounts are Adequately Insured**

For self-evident reasons, the Bankruptcy Code requires debtors' funds be held in properly-insured depository and investment havens. While placing monies in a DIP Account no doubt serves

to achieve these ends, certain geographic anomalies (especially in and around Watertown, South Dakota) create a paradigm where DIP Accounts lack pragmatism in certain cases. This is one such case.

The Bankruptcy Code does not actually mandate that debtors open new bank accounts upon filing petitions for relief, instead requiring only:

> **Except with respect to a deposit or investment that is insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States** or backed by the full faith and credit of the United States, the trustee shall require from an entity with which such money is deposited or invested—
>
> (1) a bond—
>
> (A) in favor of the United States;
>
> (B) secured by the undertaking of a corporate surety approved by the United States trustee for the district in which the case is pending; and
>
> (C) conditioned on—
>
> (i) a proper accounting for all money so deposited or invested and for any return on such money;
>
> (ii) prompt repayment of such money and return; and
>
> (iii) faithful performance of duties as a depository; or
>
> (2) the deposit of securities of the kind specified in section 9303 of title 31;
>
> unless the court for cause orders otherwise…

11 U.S.C. § 345(b) (emphasis added).

The UST Guidelines, however, go a step further, requiring, *inter alia*, "[t]he debtor must immediately close pre petition bank accounts and open new 'debtor in possession' bank accounts. All receipts must flow through the debtor in possession account(s). All disbursements should be by check." UST Guidelines, p. 3, § II(A)(1).

Under Section 345 of the Bankruptcy Code, a regime is created through which DIP Accounts can be established at banks that post the requisite bond and agree to participate in the

3

subject program. The regime, however, is plainly only applicable "[e]xcept with respect to a deposit or investment that is insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States…" 11 U.S.C. § 345(b). And where the FDIC insures a bank, the institution may be understood to have the protections of "a department, agency, or instrumentality of the United States." *See, e.g.*, 12 U.S.C. § 1811(a) ("There is hereby established a Federal Deposit Insurance Corporation … which shall insure, as hereinafter provided, the deposits of all banks and savings associations which are entitled to the benefits of insurance under this chapter, and which shall have the powers hereinafter granted").

The current extent of FDIC insurance on each deposit is $250,000.00. 12 U.S.C. § 1821(a)(1)(E). Should any Debtor obtain funds in excess of the insured threshold, it will open a new account at a new institution, so as to ensure no monies lack appropriate federal insurance. But, for the time being, the Debtors believe utilization of traditional depository accounts to offer adequate security to estate funds, and accordingly respectfully seek leave to maintain traditional banking relationships.

### III. Conclusion

WHEREFORE, the Debtors respectfully prays this Honorable Court (i) permit the Debtors to utilize non-DIP Accounts at FDIC-insured institutions, provided no single Debtor have more than $245,000.00 on deposit at any one institution at any one time; and (ii) afford such other and further relief.

*[Signature on Following Page]*

|  |  |  |
|---|---|---|
|  |  | Respectfully Submitted, |
| Dated: January 8, 2025 | By: | /s/ Maurice B. VerStandig |
|  |  | Maurice B. VerStandig, Esq. |
|  |  | The Dakota Bankruptcy Firm |
|  |  | 1630 1st Avenue N |
|  |  | Suite B PMB 24 |
|  |  | Fargo, North Dakota 58102-4246 |
|  |  | Phone: (701) 394-3215 |
|  |  | mac@dakotabankruptcy.com |
|  |  | *Proposed Counsel for the Debtors* |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 8th day of January, 2025, a copy of the foregoing was served electronically upon filing via the ECF system. I further note that on January 7, 2025, a substantively similar copy was sent, via e-mail, to all parties receiving notice via ECF, at a time when this Honorable Court's ECF system appeared to be experiencing technical difficulties. Aside from (i) changing the date of this document; (ii) updating this certificate of deposit; and (iii) correcting the case caption to note that a joint administration motion is pending, no alterations have been made between the copy informally served on January 7, 2025 and this filed version.

/s/ Maurice B. VerStandig
Maurice B. VerStandig