IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Case No. 25-30002 |
| | ) | (Chapter 11) |
| GENERATIONS ON 1ST, LLC | ) | |
| | ) | |
| Debtor | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |
| | ) | |
| In re: | ) | Case No. 25-30003 |
| | ) | (Chapter 11) |
| PARKSIDE PLACE, LLC | ) | |
| | ) | Jointly Administered |
| Debtor | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |
| | ) | |
| In re: | ) | Case No. 25-30004 |
| | ) | |
| THE RUINS, LLC | ) | Not Jointly Administered |
| | ) | |
| Debtor | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |

**MOTION TO EXTEND EXCLUSIVITY PERIOD**

Come now Generations on 1st, LLC ("Generations"), Parkside Place, LLC ("Parkside"), and The Ruins, LLC ("Ruins") (collectively, the "Debtors," and each a "Debtor"), by and through undersigned counsel, pursuant to Section 1121(d)(1) of Title 11 of the United States Code, and move this Honorable Court to extend—to and through January 1, 2026—the exclusivity period delineated in Section 1121(c)(3) of the same title, and in support thereof state as follows:

I.   **Introduction**

The single largest creditor in all three of these cases, Red River State Bank ("RRSB"), has steadfastly refused to provide payment records. So while the Debtors know that enormous sums of money have been paid toward the at-issue obligations, the Debtors do not know (i) to which loans those payments were credited; (ii) at which interest rates those payments were credited; (iii)

1

the dates on which those payments were credited; or even (iv) the sum of certain such payments. And, lest the last point appear absurd, it merits notation that for Generations and Parkside, RRSB directly commandeered the entities' rental revenue, through an assignment of rents, for several months, before then commandeering rental revenue through a receivership; all of which means the Debtors, quite literally, do not have access to details about the sums of payments made or the dates of such payments, let alone how those payments were credited.

The problem is exacerbated by the fact that there exist myriad loans in these three cases, at least some of which appear to be cross-collateralized and several of which were not actually made to the Debtors but, rather, to third party insiders.[1] While, as discussed in a pending adversary proceeding (the "Adversary Proceeding"), this mechanism appears to have been designed to end-run certain banking laws, the mechanism now presents a particularly potent dilemma insofar as the Debtors do not have the ability to trace their own loan payments (much less those emanating from an assignment of rents or a receivership), since each Debtor's payments could—rather easily—have been applied to the loans of third parties or one or more other Debtors. This oddity is compounded by the fact that, in reviewing the proofs of claim filed by RRSB, it at least appears the bank is double counting certain debts in multiple cases, *i.e.*, alleging multiple Debtors owe the full sum of the same loans.

Complicating matters even further, it appears certain loans were actually held—for at least some modicum of time—not by RRSB but, rather, by one or more insiders of RRSB. And the Debtors thusly do not know if the bank chose to prioritize payment of the debts held by insiders, over debts held by the bank, or vice-versa. In fact, there is *still* some uncertainty as to who exactly

---

[1] The monies from these loans were all distributed either to the Debtors or their contractor; the third-parties never actually obtained any funds.

2

holds which notes, though it is believed that RRSB is the likely holder of each such instrument—or, at minimum, holds each such instrument in its capacity as a debt servicer.

The resulting problem is relatively straightforward: Each Debtor is committed to confirming a so-called "100% plan," in which all claims are paid in full. Yet, without knowing how much is due to the largest creditor in each case, none of the Debtors are in a position to budget accordingly. By way of intentionally-absurd anecdote only, if one Debtor has $10.00 per month in projected net revenue, and does not know if the claim of RRSB is such that the obligation will amortize to a monthly payment of $7.00 or $9.50, that Debtor cannot, in turn, determine if it has $3.00 or a mere 50¢ to be applied toward the retirement of other creditors' claims on a monthly basis.

For these reasons, and as extrapolated upon *infra*, the Debtors respectfully seek an extension of the exclusivity period in which to obtain plan acceptances, to and through January 1, 2026—an extension of 178 days.[2] The Debtors do *not* seek an extension of the exclusivity period in which to file plans of reorganization, however; despite the limited utility of so doing, in light of the issues created by RRSB's intransigence, each Debtor will be timely docketing a plan of reorganization of even date herewith—the 120th day of all three cases. The Debtors will not be docketing accompanying disclosuree statements at the time of filing plans, and will not be moving for entry of a confirmation schedule correlative to each such plan, but will nonetheless be filing plans. Transparently, this decision is calculated to both evidence progress in these cases and to

---

[2] Since the current deadline falls on a Saturday, the extant exclusivity period is actually 182 days, not 180 days. *See* Fed. R. Bankr. P. 9006(a)(1)(C).

advance open discussions with other stakeholders about how those plans might be amended so as to become consensual in nature, if they are not agreeable in their initial form.[3]

## II. Standard

Title 11 of the United States Code (the "Bankruptcy Code") provides that only a debtor-in-possession may propose a chapter 11 plan of reorganization unless:

> (1) a trustee has been appointed under this chapter;
>
> (2) the debtor has not filed a plan before 120 days after the date of the order for relief under this chapter; or
>
> (3) the debtor has not filed a plan that has been accepted, before 180 days after the date of the order for relief under this chapter, by each class of claims or interests that is impaired under the plan.

11 U.S.C. § 1121(c).

The two foregoing deadlines, however, may be extended "for cause," 11 U.S.C. § 1121(d)(1), with any extension of the 180 day period being limited to "a date that is 18 months after the date of the order for relief under this chapter," 11 U.S.C. § 1121(d)(2)(A).[4]

## III. Argument: The 180 Day Period Should be Extended

When a debtor—whether a consumer in chapter 7 or a business in chapter 11—does not know how much money is owed to a particular creditor, the usual remedy is to either check the "unknown" box on the correlative schedule or to list the creditor as being due some *de minimis* sum of money, knowledgeable that a proof of claim will then follow. Yet where, as here, the

---

[3] For the avoidance of doubt, no Debtor will be soliciting any votes, from any creditor, unless and until a disclosure statement is approved. The docketing of plans will be aimed solely at facilitating conversations with other counsel so as to maximize odds of the ultimate balloting process proceeding smoothly. The Debtors are acutely aware of the restrictions of Section 1125(b) of Title 11 of the United States Code and will carefully abide by the same.

[4] The 18-month anniversary of the orders for relief in these cases will be July 6, 2026—a date well beyond the extensions being sought herein.

4

creditor in question both (i) holds a secured claim; and (ii) dockets proofs of claim wholly bereft of payment histories, there emerges a kink in the system. Yes, the Debtors will, eventually, be able to obtain these vital records, but to do so they will first have to await the open of discovery in the Adversary Proceeding. And, in light of the loquacious motion to dismiss docketed by RRSB in that suit, the open of discovery is unlikely to come soon enough to permit the Debtors to abide the 180-day rigor of Section 1121(c). Given this relatively *sui generis* circumstance, an extension of that deadline is wholly appropriate.

As observed by the Eighth Circuit Bankruptcy Appellate Panel, a nine prong, disjunctive analysis guides requests to extend the exclusivity period in chapter 11 cases:

> In deciding whether or not to extend or shorten the exclusivity periods, courts have relied on such factors as: (1) the large size of the debtor and the consequent difficulty in formulating a plan of reorganization for a huge debtor with a complex financial structure; (2) the need of the creditors' committee to negotiate with the debtor and the ability to prepare adequate information; (3) the existence of good faith progress towards reorganization; (4) the existence of an unresolved contingency; (5) the fact that the debtor is paying bills as they become due; (6) the length of previous extensions of exclusivity; (7) breakdowns in plan negotiations, such that the continuation of the debtor's exclusivity period would result in the debtor having an unfair bargaining position over creditors; (8) the debtor's failure to resolve fundamental reorganization matters essential to its survival; (9) the gross mismanagement of the debtor.

*Bunch v. Hoffinger Indus. (In re Hoffinger Indus.)*, 292 B.R. 639, 644 (B.A.P. 8th Cir. 2003) (citing *In re Texaco, Inc.*, 6 B.R. 322, 326 (Bankr. S.D.N.Y. 1987); *Gaines v. Perkins, (In re Perkins)*, 71 B.R. 294, 298 (W.D. Tenn. 1987); *In re Pine Run Trust, Inc.*, 67 B.R. 432, 435 (Bankr. E.D. Pa. 1986); *In re United Press International, Inc.*, 60 B.R. 265, 270 (Bankr. D.D.C. 1986); *In re McLean Industries, Inc.*, 87 B.R. 830, 834 (Bankr.S.D.N.Y. 1987); *In re Swatara Coal Co.*, 49 B.R. 898, 899-900 (Bankr. E.D. Pa. 1985); *In re Trainer's Inc.*, 17 B.R. 246, 247 (Bankr. E.D. Pa. 1982); *In re Ravenna Industries, Inc.*, 20 B.R. 886, 890 (Bankr. Ohio 1982); *Teacher's Insurance and Annuity Asso. of America v. Lake in the Woods (In re Lake in the Woods)*, 10 B.R. 338, 344

(E.D. Mich. 1981); *In re Sharon Steel Corp.*, 78 B.R. 762, 766 (Bankr. W.D. Pa. 1987); *In re Crescent Beach Inn, Inc.*, 22 B.R. 155, 160 (Bankr. D. Me. 1982)).

Here, none of the Debtors feign to be so large or financially complex as to need additional time to draft a plan of reorganization. In fact, much to the contrary, all three Debtors are timely filing plans—the extension sought herein is for the period in which to secure plan acceptance, not the period to docket a plan itself.

The second *Bunch* prong is inapplicable since there does not exist a creditors' committee in any of these three cases.

Vis a vis the third criterion, there is good faith progress toward reorganization on the part of all three Debtors. Each entity is timely docketing a plan showing the architectural construct of a forthcoming reorganization. Each entity is also zealously pursuing the Adversary Proceeding both so as to liquidate the tort claims emanating from the conduct that beget these bankruptcies and, too, so as to obtain the payment histories necessary to finalize plans of reorganization. All three Debtors are current on operating reports, with two of the Debtors also remaining compliant with cash collateral orders (the third Debtor is not subject to such an order). These are not cases where anyone fell asleep at the proverbial switch or where delay is a driving motivation; these are cases where the Debtors, quite badly, wish to exit bankruptcy—they are merely precluded from doing so by the actions (or, as it is, inactions) of RRSB.

The fourth consideration is an unresolved contingency, which is very much extant here. Not only will the Adversary Proceeding need to be adjudicated to liquidate the debt to RRSB, net of setoff claims, but the Adversary Proceeding—coupled with claim objections being filed herewith—will need to be resolved for RRSB's claim to be calculated in the first instance. A bank is refusing to provide loan payment records: that point cannot be sufficiently emphasized, both

from the perspective of the enormously deleterious impact such occasions on efforts to reorganize and, too, the equally enormous stigma such casts upon RRSB. This is, quite plainly, not the action of a traditional financial institution unconcerned with lender liability, and this course of conduct is thereby at least suggestive of the Adversary Proceeding being likely to net a meaningful judgment in favor of the Debtors from which the debt to RRSB may be setoff.[5]

As for the fifth factor, each Debtor is paying its post-petition bills as they come due.

On the sixth question, there have not been any prior extensions of the exclusivity period. The Debtors hope the extension requested herein will be the only one necessary, though the ultimate scheduling of discovery—and RRSB's compliance therewith—in the Adversary Proceeding is likely to be determinative of whether or not a subsequent extension is sought.

The seventh criterion is a breakdown in plan negotiations. While some discussions have been had with counsel for parties other than RRSB, the majority of discussions to date have been with RRSB's counsel, and those discussions have occurred with some frequency. It would be deceptive to suggest any breakthroughs have occurred and it would be equally deceptive to suggest such negotiations have been as substantive as one might desire. Each side has made various procedural requests of the other side; some have been fulfilled and some have not. But the Debtors do not believe there has been a "breakdown" as of yet and, notwithstanding the sharp rhetoric of the Adversary Proceeding (and parts of this very motion), maintain a cautious optimism that cooler heads may yet prevail and allow an amicable resolution to be found.

The eighth and ninth factors are "the debtor's failure to resolve fundamental reorganization matters essential to its survival" and "the gross mismanagement of the debtor." *Bunch*, 292 B.R.

---

[5] For clarity, the Debtors do *not* presently seek to extend exclusivity through adjudication of the Adversary Proceeding; they are simply seeking to extend exclusivity long enough to obtain discovery that will cast light upon payment histories.

at 644. Respectfully, the Debtors do not believe there to be any indicia of either of these scenarios. The two operating Debtors are paying their debts as they come due, filing monthly operating reports in a timely fashion, making cash collateral payments, and promptly pursuing litigation rights that correlate directly to their need to seek bankruptcy protection in the first instance. The third Debtor is, too, timely reporting each month, tending to various rigors, and pursuing the same litigation rights. The Debtors take their obligations in this Honorable Court quite seriously and have discharged their every duty in a sober, thoughtful, and timely fashion.

### IV.     Conclusion

This motion is not a proper forum in which to resolve the Adversary Proceeding, nor do the Debtors feign the allegations in that lawsuit to be any more than just that—allegations—as of present. Yet it bears notation that all three Debtors credibly contend their descent into chapter 11 to be directly pegged to (i) the failure of RRSB to honor express, written loan commitments; (ii) the illegal actions of RRSB—including wire fraud, violation of lending limit laws, and an executive's solicitation of bribes; (iii) the inability of RRSB to responsibly fund and service the loans it committed to making; (iv) the oft-absurd reactionary collection measures of RRSB; and (v) the seeming inability of RRSB to keep its accounting straight.

Most of these issues simply raise questions of tort debt that can be used to setoff part of the obligations owed by each Debtor to RRSB. Yet some of these also speak to the profoundly enigmatic—if not Kafkaesque—nature of these cases: a bank is either incapable of furnishing, or unwilling to furnish, payment histories that show how relatively significant sums of money have been applied. And in chapter 11 proceedings that were beget by the other actions and inactions of that same bank, it would seem fundamentally inequitable to now permit that financial institution's refusal to provide payment histories to, in turn, stymie the Debtors' reorganizational prospects.

8

WHEREFORE, the Debtors respectfully pray this Honorable Court (i) extend to and through January 1, 2026 the deadline for each Debtor to obtain acceptances of their respective plans of reorganization (including future amended iterations), under Section 1121(c)(3) of Title 11 of the United States Code; and (ii) afford such other and further relief as may be just and proper.

        Respectfully Submitted,

Dated: May 6, 2025    By:    /s/ Maurice B. VerStandig
    Maurice B. VerStandig, Esq.
    The Dakota Bankruptcy Firm
    1630 1st Avenue N
    Suite B PMB 24
    Fargo, North Dakota 58102-4246
    Phone: (701) 394-3215
    mac@dakotabankruptcy.com
    *Counsel for the Debtor*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 6th day of May, 2025, a copy of the foregoing was served electronically upon filing via the ECF system.

    /s/ Maurice B. VerStandig
    Maurice B. VerStandig