UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In re: | Bankr. No. 25-30004 |
| The Ruins, LLC, | Chapter 11 |
| Debtor. | |

**OBJECTION TO CONFIRMATION OF PLAN AND JOINDER**

1.  Watertown Development Company ("WDC"), through its undersigned counsel, hereby objects to confirmation of the Chapter 11 Plan of Reorganization proposed by Debtor (the "Plan") (Doc. 41). WDC joins in paragraphs 1, 2, 3, 4, and 7 of the Plan Objection filed by Red River State Bank (doc. 45), and hereby incorporates those paragraphs by reference.

2.  WDC is a non-profit corporation organized under the laws of the State of South Dakota.

3.  WDC filed a Proof of Claim on March 10, 2025. (*See* Claims Registry, Claim No. 7.) WDC is a secured creditor and holds a pre-petition claim in the amount of $2,485,641.14. (*Id.*)

4.  No objection has been made to WDC's claim.

5.  Debtor's proposed treatment of WDC's claim appears in Section 3.2.2 of the Plan. This section of the Plan fundamentally misstates the "TIF Arrangement" to which it refers. WDC is currently owed nearly $2.5 million, and WDC holds two mortgages providing full security for the debt obligations. (Claims Registry, Claim No. 7, Exs. 4 and 5.) If the Plan were confirmed in its current form, it would reduce the value of WDC's mortgage security from approximately $2.5 million to $37,240.23 (*see* Plan, doc. 41, at p. 8), and it would shift

1

responsibility for nearly the entire debt owed under WDC's pre-petition claim to the City of Watertown while essentially absolving Debtor of its responsibility to repay WDC. Debtor's proposed treatment of WDC's claim is in irreconcilable conflict with the underlying loan documents as well as the Bankruptcy Code.

6. The underlying loan documents attached to WDC's claim unequivocally demonstrate that Debtor signed a Loan Agreement dated March 16, 2021, and a Promissory Note of the same date in the original principal amount of $2,275,000.00. (Claims Registry, Claim No. 7, Exs. 1 and 2.) Debtor is absolutely liable to WDC for the full amount of the debt, despite Debtor's attempt to shift responsibility for the lion's share of the debt to the City of Watertown.

7. Debtor is a party to agreements that establish a tax increment financing ("TIF") district in Watertown, South Dakota. The details of TIF financing can be complex, but the general concept is simple. To facilitate development in downtown Watertown, the City of Watertown agreed to establish a TIF District encompassing the real estate where Debtor's sole asset, an unfinished apartment complex, is situated (the "Real Estate"). The purpose of the TIF is to allow the Debtor to recapture a portion of the property taxes it pays every year on the Real Estate in the form of a grant, which also helps Debtor repay the loan it took from WDC to finance acquisition of the land and the construction.

8. Debtor and the City of Watertown are the sole parties to a Development Agreement which establishes the TIF arrangement. In the Development Agreement, the parties *estimated* the future value of the Real Estate and determined an approximate amount that Debtor would receive over a 20-year period from the City of Watertown as a grant. To determine the amount of the grant, the Real Estate was valued before any improvements were made (the "Base Value"), and then the parties *estimated* what the value of the Real Estate would be after

2

completion of construction. Pursuant to the Development Agreement, the property taxes paid on the difference between the Base Value and the final value (which was *estimated* in the Development Agreement) constitute the TIF Revenue to which the Debtor is entitled to receive as a grant from the City of Watertown.

9. The estimated amount of the grant was used to determine the amount of the loan WDC made to Debtor, and in return, Debtor assigned all of its rights to the grant money it would receive from the City of Watertown to WDC. Importantly, nothing in any of these agreements: (i) established a definitive grant amount; (ii) made the City of Watertown liable to WDC for the debt; (iii) established a separate portion of the debt for which Debtor was responsible; or (iv) states that WDC's receipt of the real estate tax proceeds every year satisfies Debtor's obligations under the loan documents. The Debtor is the only borrower and obligor on the full amount of the debt owed to WDC.

10. In further explanation of the TIF arrangement, it is important to understand that real estate taxes are determined in South Dakota based on an assessed value that could, and often does, change every year. Property taxes are paid in arrears, meaning that property taxes for the 2024 assessed value, for example, are payable in 2025, with half being due by the end of April, and the other half being due by the end of October. The real estate assessment is completed by the Codington County Director of Equalization, and the Debtor, WDC, and the City of Watertown have no control over the final assessed value. As the Debtor's Real Estate is assessed and property taxes become due, Debtor is required to pay real estate taxes to Codington County, and a portion of the tax revenue is shared with the City of Watertown pursuant to South Dakota law. By creating a TIF District and entering into the Development Agreement, the City of Watertown agreed to forego the revenue to which it would otherwise be entitled from property

3

taxes paid on the portion of the assessed value that exceeds the Base Value. This portion is known as the TIF Revenue, and it is given back to Debtor as a grant (with the caveat that Debtor's right to receive the funds was assigned to WDC for repayment of the loan WDC made to Debtor).

11. A TIF has several benefits for a developer, but most notably, the developer can obtain a loan to acquire real estate and complete construction on the front-end. The developer can also recapture a large portion of the property tax it would otherwise pay on a completed project to help repay the loan.

12. Importantly, though, none of the TIF documents, nor the loan documents attached to WDC's Proof of Claim, contemplate a definitive amount of the grant. In other words, the grant amount is ***not a sum certain***. The amounts stated in the TIF documents are ***estimates***, and they specify that Debtor is entitled to an "amount not to exceed $2,448,400.91." To be clear, the grant amount must be an estimate because the assessed value of the Real Estate can change every year, and there would be no way to anticipate the future assessed value of the Real Estate from year-to-year. The assessed value depends on many variables like market conditions and here, most notably, completion of construction. Because The Ruins is not completed, the value of the Real Estate is lower than it would be if construction was complete. Accordingly, the amounts that are and will continue to be realized through the TIF grant are undeniably lower than the amounts estimated on the front end in a Development Agreement that assumed the timely completion of construction.

13. As is clear in the loan documents supporting WDC's Proof of Claim, Debtor assigned all its rights to the TIF Revenue to WDC so long as a balance remains owed to WDC. However, Debtor's obligation to repay WDC is absolute and wholly independent of any amounts

4

it receives from the City of Watertown through a grant. In other words, and by way of example only, if the Real Estate were assessed such that there is no value exceeding the Base Value, Debtor would be entitled to nothing under the TIF grant, but Debtor would still owe WDC for the loan it received. There is simply no contingency that excuses Debtor from liability to repay the loan if the TIF amount is less than expected.

14. The actual structure of the TIF Arrangement is at odds with Debtor's explanation in the Plan. Section 3.2.2. of the Plan states:

> The TIF Arrangement provides that an advance of funding to the Debtor shall be repaid through a combination of (i) payments from the Debtor; and (ii) a grant from the city of Watertown, South Dakota (the "City of Watertown"). WDC has filed a proof of claim indicating a total indebtedness of $2,485,641.14. The TIF Arrangement, in turn, provides that WDC shall receive $2,448,400.91 from the City of Watertown. There accordingly exist two components to the manner in which this Class shall be paid: (i) funds to be paid by the City of Watertown, pursuant to the TIF Arrangement; and (ii) funds to be paid by the Debtor, also pursuant to the TIF Arrangement.
> . . .
> The funds to be paid by Debtor in turn, equal $37,240.23 (being equal to the gross obligation less the sum to be repaid through property taxes, under the TIF Arrangement).
> . . .

This characterization of the TIF is plainly wrong. Debtor characterizes the $2,448,400.91 unequivocally as an amount that will be realized through the TIF, but that is incorrect. The amount to be paid to WDC through the TIF will be unknown until the completion of the 20-year period over which the grant is paid. Nobody can predict the assessed value of the Real Estate in future years, especially given that the timeline for finishing construction is unknown, making it impossible to know how much Debtor will ultimately receive in grant funds. The only guarantee provided in the Development Agreement as to the grant amount is set forth in Section 2.01, which states that the grant amount will not "exceed $2,448,400.91." The Development Agreement specifically contemplates that the maximum grant amount may never be realized.

5

Section 2.08 states: "Developer [(Debtor)] shall bear all risks that such Tax Increment Revenues may be insufficient to pay the maximum amounts specified in Section 2.01."

15. But Section 3.2.2 of the Plan does not stop there. It also states: "WDC shall retain its mortgage on the Real Estate in a sum equal to the Debtor's obligation hereunder ($37,240.23) until such a time as that obligation is retired, with the subject Lien being reduced in a sum equal to the amount of principal tendered with each monthly payment." The Plan does not provide that WDC will retain its mortgage on the Real Estate to secure the remaining debt amount which exceeds $2.4 million.

16. Debtor proposes to ignore its obligation under a $2,275,000 Promissory Note and to reduce a mortgage fully securing WDC's entire claim to a mortgage that secures a mere $37,240.23. Neither of these actions is permissible. To even approach the realm of confirmability, the Plan must acknowledge Debtor is absolutely and solely liable to WDC for the full amount of the debt. The City of Watertown is not a party to any Loan Agreement or Promissory Note, and the debt obligation belongs only to Debtor. The Plan must leave in place and undisturbed the mortgages securing the debt owed to WDC until payment is made in full. And the Plan must provide that to the extent grant funds received through the TIF are insufficient to make payments to WDC as they become due, the Debtor is responsible for paying the balance of the debt. Finally, the Plan must acknowledge that the Promissory Note matured on March 26, 2022. Accordingly, the full amount of the Note is presently due and owing. Debtor must propose reasonable terms for repayment of the entire debt and not only the $37,240.23 referenced in the Plan.

17.	The Plan cannot be confirmed because it proposes to pay junior classes of claims without providing for the payment in full of the debt owed to WDC, in violation of the absolute priority rule.

18.	The Plan cannot be confirmed because it was not proposed in good faith in violation of 11 U.S.C. § 1129(a)(3).

19.	The Plan cannot be confirmed because it does not comply with 11 U.S.C. § 1129(a)(7). WDC does not accept the Plan, and the Plan as proposed would not result in WDC receiving value that is not less than the amount WDC would receive or retain if Debtor were liquidated because Debtor is proposing to reduce its personal obligation to WDC by over $2.4 million and reduce the amount of WDC's mortgage security by the same amount.

20.	The Plan cannot be confirmed because it does not satisfy the "fair and equitable" requirement of 11 U.S.C. § 1129(b)(2)(A)(i)(I) because it proposes to allow WDC to retain its mortgage only in a sum equal to $37,240.23.

21.	The Plan cannot be confirmed because it does not satisfy the "fair and equitable" requirement of 11 U.S.C. § 1129(b)(2)(A)(i)(II) because it proposes to pay WDC only $37,240.23 over 10 years, even if the TIF Revenue is insufficient to repay the loan in full.

22.	The Plan cannot be confirmed because it does not satisfy the "fair and equitable" requirement of 11 U.S.C. ¶ 1129(b)(2)(A) generally because it proposes to amortize a portion of a matured note over 10 years at 4% interest without any upward adjustment for risk as required in <u>In re Topp</u>, 75 F.4th 959 (8th Cir. 2023).

WHEREFORE, WDC respectfully requests that the Court deny confirmation of the Plan.

Dated this 12th day of June, 2025.

          WOODS, FULLER, SHULTZ & SMITH P.C.


By /s/ Jordan J. Feist
   Jordan J. Feist (#08592)
   P.O. Box 5027
   300 South Phillips Avenue, Suite 300
   Sioux Falls, SD 57117-5027
   Phone (605) 336-3890
   Fax (605) 339-3357
   Jordan.Feist@woodsfuller.com
   Attorneys for Watertown Development Company


## CERTIFICATE OF SERVICE

The undersigned states that on the 12th day of June, 2025, I served a copy of the foregoing Objection to Confirmation of Plan and Joinder electronically upon all CM/ECF participations in this case.

*/s/ Jordan J. Feist*
Attorney for Watertown Development Company