UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In Re:<br><br>The Ruins, LLC,<br><br>                 Debtor. | Case No.: 25-30004<br><br>Chapter 11 |

**MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

Red River State Bank ("Creditor"), a secured creditor of The Ruins, LLC ("Debtor") respectfully submits this motion for relief from the automatic stay (the "Motion"), pursuant to Rule 4001 and Rule 9014 of the Federal Rules of Bankruptcy Procedure and 11 USC § 362(d). In support of this Motion, Creditor has also submitted: the Affidavit of Charles Aarestadt (the "RRSB Affidavit"); the Affidavit of Joshua W. Luther, Vice President for CBRE Valuation and Advisory Services (the "CBRE Affidavit"); and the Affidavit of Matt Gehrtz, Principal Construction Manager at Gehrtz Construction Services, Inc (the "GCS Affidavit").

Background

**A. Creditor's Secured Claim**

1. Creditor timely filed Proof of Claim No. 1 asserting a secured claim against the Debtor for $11,704,816 (the "POC").

2. Debtor's obligation to Creditor is evidenced by:

    a. a promissory note dated May 9, 2022, in the original principal amount of $7,740,000, with a maturity date of March 15, 2027 (the "First Ruins Note");

  b. a promissory note dated August 1, 2022, in the original principal amount of $2,750,000, with a maturity date of March 15, 2027 (the "Second Ruins Note"); and

  c. a promissory note dated February 17, 2023, in the original principal amount of $600,000, with a maturity date of December 31, 2023 (the "Third Ruins Note", and together with the First Ruins Note and Second Ruins Note, the "Ruins Notes".) [1]

 3. To secure the indebtedness evidenced by the Ruins Notes, Debtor executed and delivered three commercial security agreements (the "Security Agreements") contemporaneously with the execution of each of the Ruins Notes.[2] In each of the Security Agreements, Debtor pledged the following collateral ("Ruins Personal Property") to Creditor:

> As security for the payment of the indebtedness and all other indebtedness, obligations and liabilities of the Debtor to Creditor, now existing or hereafter arising, directly or indirectly, by operation of law or otherwise (collectively the "liabilities"), Debtor assigns, transfers, pledges, hypothecates and grants to Creditor, its successors and assigns, a first priority security interest (the "security interest") in all Debtor's assets, including without limitation, all equipment, inventory, supplies, accounts, general intangibles, chattel paper and instruments, goods, assets, machinery, fixtures, furnishings and all other personal property together with all other accessories, accessions, attachments and appurtenances, appertaining to attached thereto, whether now owned or hereafter acquired, and all other substitutions, renewals, replacements and improvements and all proceeds, rents, issuers, income, profits and avails, including without limitation, insurance proceeds. Further, Borrower grants Lender a purchase money security interest in specific equipment, furniture and fixtures purchased by Borrower and financed by Lender on or about the date of the loan or filing date thereafter (collectively the "collateral")

 4. Creditor perfected its security interest in the Ruins Personal Property by filing a UCC financing statement with the South Dakota Secretary of State.[3]

---

[1] True and correct copies of the Ruins Notes are attached to the POC as Exhibits A, B and C and incorporated herein by reference.

[2] True and correct copies of the Security Agreements are attached to the POC as Exhibits E-1, E-2 and E-3 and incorporated herein by reference.

[3] A true and correct copy of the financing statement is attached to the POC as Exhibit F and incorporated herein by reference.

5.  Debtor also executed and delivered the following mortgages upon real property located at 315 East Kemp Avenue, Watertown, SD 57201 and known as The Ruins (the "<u>Ruins Real Property</u>"):

   a.  On or about March 9, 2022, a Construction Mortgage as security for all indebtedness due on the Ruins Notes up to the sum of $9,875,000.00 (the "<u>First Mortgage</u>"). The First Mortgage was recorded in Book 990 on Page 8555 in the office of the Register of Deeds of Codington County, South Dakota, having been recorded on March 10, 2022 at 9:57 a.m.[4]; and

   b.  On or about August 1, 2022, a Construction Mortgage as security for all of the indebtedness due on the Ruins Notes up to the sum of $615,000.00 (the "<u>Second Mortgage</u>"). The Second Mortgage was recorded in Book 990 on Page 9258 in the office of the Register of Deeds of Codington County, South Dakota, having been recorded on August 4, 2022 at 11:10 a.m.[5]

6.  Creditor and Watertown Development Corporation ("<u>WDC</u>") entered into two Subordination Agreements dated March 7, 2022 and August 22, 2022, respectively (collectively, the "<u>Subordination Agreements</u>").[6] Pursuant to the Subordination Agreements, the First Mortgage has priority over WDC's mortgages against the Ruins Real Property.

---

[4] A true and correct copy of the First Mortgage is attached to the POC as Exhibit G and incorporated herein by reference.

[5] A true and correct copy of the Second Mortgage is attached to the POC as Exhibit H and incorporated herein by reference.

[6] True and correct copies of the Subordination Agreements are attached to the POC as Exhibit I and incorporated herein by reference.

B. **Debtor's Payment Defaults**

7. As of the petition date, the outstanding balance of the Ruins Notes was:

|  | BALANCE |
|---|---|
| First Ruins Note | $8,198,063.60 |
| Second Ruins Note | $2,926,377.54 |
| Third Ruins Note | $ 580,374.97 |
|  | **$11,704,816.11** |

8. Prior to the petition date, Debtor defaulted several times on the Ruins Notes. Debtor missed several monthly payments and generally paid late. Debtor stopped making any payments on the Third Ruins Note after September 20, 2023. Debtor's last payments on the First and Second Ruins Notes were received by Creditor on November 13, 2023. [RRSB. Affidavit, ¶ 6]

9. On February 27, 2024, Creditor commenced an action in the Third Judicial Circuit Court in Codington County, South Dakota seeking an order granting Creditor immediate possession of the Ruins Real Property, and other related relief (the "Foreclosure Action").[7] [RRSB. Affidavit, ¶ 7] On June 25, 2024, Creditor filed a motion for partial summary judgment in the Foreclosure Action and on December 6, 2024, Creditor filed a motion to appoint a receiver. [RRSB. Affidavit, ¶ 8] To preclude Creditor from successfully completing the aforementioned judicial foreclosure, Debtor commenced this bankruptcy case on January 6, 2025.

---

[7] Civil Case No. 24-000068, *Red River State Bank v. The Ruins, LLC et al*.

10. During the time this case has been pending, Debtor has failed to make any post-petition payments to Creditor. Interest continues to accrue at a rate of $900.66 per day on the First Ruins Note and $350.34 per day on the Second Ruins Note. The Third Ruins Note matured on December 31, 2023, and it remains outstanding. It accrues interest at a rate of $106.38 per day. [RRSB. Affidavit, ¶ 9]

**C. Creditor's Collateral & Risk of Loss**

11. On May 6, 2025, Creditor performed a scheduled site inspection, with Debtor's permission, to assess the current condition of its collateral (the "Site Inspection"). [RRSB Affidavit, ¶ 11]

12. Creditor retained Joshua W. Luther, Vice President for CBRE Valuation and Advisory Services ("CBRE"), to determine the current market value of the Ruins Real Property and to produce an Appraisal Report.

13. Creditor also retained Matt Gehrtz, Principal Construction Manager at Gehrtz Construction Services, Inc ("GCS"), to inspect the physical condition of the Ruins Real Property and to determine the current cost to complete construction. [GCS Affidavit, ¶ 3]

14. After completing the Site Inspection and reviewing reports from CBRE and GCS, Creditor has grave concerns about the condition of the Ruins Real Property and the adequacy of Debtor's efforts to maintain the value of its collateral. [RRSB Affidavit, ¶¶ 17-21]

15. First, Creditor has confirmed that certain Ruins Personal Property is missing or damaged. One or more appliances are missing from 42 out of 63 units. [RRSB Affidavit, ¶20] Creditor also confirmed that a Bobcat purchased by Debtor using Creditor's loan proceeds is not onsite and was transferred by Debtor's insider prior to the petition date.

16. Creditor has filed a police report for the missing Ruins Personal Property. Creditor is not aware of any efforts by Debtor to utilize insurance coverage for missing or stolen Ruins Personal Property. [RRSB Affidavit, ¶¶ 21-21]

17. Additionally, there is serious risk of water damage and mold damage to the Ruins Real Property if the status quo continues. [RRSB Affidavit, ¶¶ 12-14] The building currently has two unfinished exterior walls that allow water to penetrate the building envelope. [GCS Affidavit, ¶ 7] During the pendency of this case, Debtor has made no progress toward finishing and sealing the building envelope, replacing broken or missing windows, or any other efforts to secure and protect the Ruins Real Property against further environmental damage.

18. As detailed in the RRSB and GCS Affidavits, there are open and obvious signs of water damage throughout the building. Even if the exterior of the building is completed, the building will still require water and mold remediation services. ServiceMaster Restore ("ServiceMaster") has currently recommended remediation services for the North and East sides of the building to prevent the spread of mold and to restore affected areas to a safe and stable condition. The current cost of remediation is estimated at $293,951 and such cost will increase if water and mold damage spread with the passage of time. [GCS Affidavit, ¶¶ 15-20]]

## LAW AND ARGUMENT

**A. Section 361(d)(1): Creditor is entitled to Relief for "Cause"**

19. A creditor is entitled to relief from the automatic stay under Section 362(a)(1) "for cause." 11 U.S.C. § 362(d)(1). Except for lack of adequate protection, the Bankruptcy Code does not define "for cause." Instead, case law instructs that relief may be granted "for cause" on a case-by-case basis, including where the debtor has acted in bad faith. *State Bank*

of *Benkleman v. Stute Co., Inc. (In re Stute Co, Inc.)*, No. 96-1789, 1996 WL 719928 (8th Cir. 1996). The movant must make an initial showing of cause, and then the burden shifts to the party opposing the motion to prove that it is entitled to the continued protection of the automatic stay. *See Barber v. Arnott (In re Arnott)*, 512 B.R. 744, 753 (Bankr. S.D.N.Y. 2014).

20.     The concept of "adequate protection" of a secured creditor's collateral is rooted in the fifth amendment and the creditor's constitutionally protected property interest in such collateral. As a practical matter, Section 361 of the Bankruptcy Code conditions the ongoing use and possession of collateral upon debtor's showing of adequate protection. Similarly, in the context of Section 362, the automatic stay is expressly conditioned upon the adequacy of the debtor's protection of the secured creditor's collateral. Where, as here, stay protection for the debtor has diminished the value of the secured creditor's collateral, the secured creditor is entitled to relief from the automatic stay for cause. Section 362(d)(1) exists to protect a secured creditor against precisely this type of forfeiture.

21.     First, cause exists under Section 362(d)(1) and Creditor lacks adequate protection because Debtor has not made a single post-petition payment to Creditor on any of the Ruins Notes. 11 U.S.C. § 361(1); *In re Borm*, 508 B.R. 104, 106 (B.A.P. 8th Cir. 2014) (debtor's failure to comply with their obligations under their plan constitutes cause); *In re Martens*, 331 B.R. 395, 398 (B.A.P. 8th Cir. 2005). A debtor's failure to make regular post-petition payments as they come due constitutes a lack of adequate protection and it is a basis for granting relief from the automatic stay under Section 362(d)(1).

22.     Second, Creditor lacks adequate protection because Debtor has failed to properly insure and safeguard Creditor's collateral. At an evidentiary hearing, Creditor is prepared to demonstrate that Ruins Personal Property has been lost to theft and/or vandalism.

Unfortunately, Creditor suspects that Debtor has allowed the Ruins to be used as a stash of "spare parts" or a "piggy bank" for other buildings owned by affiliates or insiders.

23. Creditor has also confirmed Debtor's failure to adequately insure and protect the Ruins Real Property against trespassing, vandalism, and physical damage. *Id.* Debtor's failure to prevent and remediate water penetration may lead to mold damage that could render the Ruins Real Property uninhabitable. To date, Creditor has confirmed it will incur losses of at least $250,000 to remediate water and mold damage alone. Again, Debtor has failed to obtain and utilize insurance coverage for such remediation efforts. There is no evidence that Debtor has cash on hand to pay for remediation or to finish construction of the building envelope to seal the building and prevent future water intrusion.

24. To be clear, however, Creditor is not arguing that regular monthly payments or insurance coverage alone would be sufficient to demonstrate adequate protection. Under Section 361, Creditor is entitled to the "indubitable equivalent" of its collateral, and protection against the diminution of such collateral. Here, Creditor has obtained an appraisal that quantifies the actual diminution of its collateral during this case. *In re Martens*, 331 B.R. at 398 ("any reason whereby a creditor is receiving less than [its] bargain from a debtor and is without a remedy because of the bankruptcy proceeding.") The dramatic reduction in the value of the Ruins Real Property, a loss of more than $1 million during this case, constitutes cause under Section 362(d)(1). [CBRE Affidavit, Exhibit 1, pp.1, 98]

25. Fourth, cause exists under Section 362(d)(1) because a motion for partial summary judgment was pending in the Foreclosure Action prior to the Petition Date. The Ruins Notes memorialize the parties' contractually bargained for rights – upon default, the Creditor is entitled to foreclosure upon the Ruins Mortgages. If this Court grants relief from the

automatic stay, all of the parties in this case can efficiently adjudicate their respective rights under applicable non-bankruptcy law. *In re Blan*, 237 B.R. 737, 739 (B.A.P. 8th Cir. 1999) If the court denies the Motion, the Creditor will be deprived of its bargained for right to enforce its contractual remedies with respect to the Ruins Notes.

26. Fifth, cause exists due to the Debtor's bad faith. Creditor is prepared to demonstrate at an evidentiary hearing that the Debtor has actively defrauded Creditor with respect to the collateral.

### B. Section 362(d)(2): Creditor is Entitled to Relief because Debtor Lacks Equity and a Successful Reorganization is Not Feasible

27. This Court can also grant relief from the automatic stay pursuant to Section 362(d)(2). This requires a two-prong inquiry. First, Creditor bears the burden of establishing that no equity exists in the property. 11 U.S.C. § 362(g)(1); *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 375 (1988). And "[o]nce a creditor has established that a debtor lacks equity in some property, the burden shifts to the debtor to prove that the property at issue is necessary for an effective reorganization." *Bowman v. Bond (In re Bowman)*, 253 B.R. 233, 238 (B.A.P. 8th Cir. 2000)).

28. As to the first prong, Creditor can demonstrate that Debtor lacks equity in the Ruins Real Property. Creditor's current claim against the Debtor is $11,704,816.11, as detailed in the POC. [RRSB Affidavit, ¶¶ 5, 9] The most recent appraised value of the Ruins Real Estate as it currently sits is $4,520,000 [CBRE Affidavit, Exhibit 1, pp.1, 98] Creditor's claim far exceeds the current value of the Ruins Real Property, and thus Debtor has no equity in the Ruins Real Property.

29. With this showing, the second prong of Section 362(d)(2) shifts the burden onto Debtor. Debtor will no doubt claim the real estate is necessary for its reorganization. But this contention alone is not sufficient to prevail. Debtor must establish a "'reasonable possibility of a successful reorganization within a reasonable time.'" *United States Ass'n of Tex.*, 484 U.S. at 376). In this case, Section 362(d)(2) requires Debtor to satisfy the Eighth Circuit's "feasibility test."

30. Debtor cannot satisfy the feasibility test in this case. The current cost to complete the Ruins Real Estate is estimated to be $1,695,967 [GCS Affidavit, ¶ 19] CBRE estimated the cost to complete the project to be $1,865,000. [CBRE Affidavit, Exhibit 1, p.21] Debtor currently has no funds on hand. None of the secured creditors or mechanics lien holders in this case are willing to extend additional credit to enable the Debtor to finish construction. Debtor's plan is entirely speculative. The reality is that it would be economically irrational for a third party to fund Debtor's plan with new money to finish a project that is already wildly overleveraged in favor of senior secured creditors. Chapter 11 bankruptcy is not a magic bullet.

Conclusion

31. Debtor has no reasonable prospect of reorganization in Chapter 11. The Ruins Real Estate cannot generate revenue without a certificate of occupancy ("COO"), and it cannot obtain a COO without completing construction at a cost of $1.6 to $1.8 million. In the immediate short term, before construction can resume, the Ruins Real Property requires remediation at a cost of $250,000. Debtor clearly lacks sufficient funds to remediate existing damage and move forward to complete construction of the Ruins Real Estate.

32. But for Debtor's filing of this bankruptcy case, Creditor would have possession of the Ruins Real Property. Possession would give the Creditor the ability to stabilize the

condition of the Ruins Real Property to prevent further loss, or to sell the collateral to satisfy Debtor's unpaid loans. For all the foregoing reasons, Creditor respectfully requests relief from the automatic stay. The requested relief will permit the Creditor to complete the prepetition Foreclosure Action and prevent any further losses associated with the defaulted Ruins Notes, the loss of Ruins Personal Property, and further deterioration of the Ruins Real Property.

Dated: July 15, 2025.

**VOGEL LAW FIRM**

BY: */s/ Kesha L. Tanabe* _____
Kesha L. Tanabe
ktanabe@vogellaw.com
Caren W. Stanley (#06100)
cstanley@vogellaw.com
Drew J. Hushka (#08230)
dhushka@vogellaw.com
218 NP Avenue
PO Box 1389
Fargo, ND  58107-1389
701.237.6983
ATTORNEYS FOR RED RIVER STATE BANK

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

| In Re:<br><br>The Ruins, LLC,<br><br>               Debtor. | Case No.: 25-30004<br><br>Chapter 11 |
|---|---|

## NOTICE OF MOTION

TO ALL INTERESTED PARTIES:

    NOTICE IS HEREBY GIVEN that Red River State Bank, a secured creditor of the Debtor The Ruins, LLC, has filed a Motion to Lift Automatic Stay, a copy of which motion is annexed hereto and herewith served upon you.

    NOTICE IS FURTHER GIVEN that written objections to said motion, if any, shall be filed with the Clerk of the United States Bankruptcy Court, whose address is 655 First Avenue North, Suite 210, Fargo, ND 58102-4932, with a copy mailed to counsel for Red River State Bank, whose name and address is listed below, <u>within fourteen (14) days from the date of the mailing of this Notice</u>.  Any objections not filed and served may be deemed waived.

    Dated: July 15, 2025.

**VOGEL LAW FIRM**

BY:   <u>/s/ Kesha L. Tanabe</u>
Kesha L. Tanabe
ktanabe@vogellaw.com
Caren W. Stanley (#06100)
cstanley@vogellaw.com
Drew J. Hushka (#08230)
dhushka@vogellaw.com
218 NP Avenue
PO Box 1389
Fargo, ND  58107-1389
701.237.6983
ATTORNEYS FOR RED RIVER STATE BANK

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

| In Re:<br><br>The Ruins, LLC,<br><br>                Debtor. | Case No.: 25-30004<br><br>Chapter 11 |
|---|---|

**PROPOSED ORDER GRANTING LIFT OF STAY**

This case is before the court on the motion of Red River State Bank for relief from the automatic stay imposed by 11 U.S.C. § 362(a). Based on the record, the court finds that grounds exist under 11 U.S.C. § 362(d) to warrant relief.

IT IS ORDERED:

1. The motion for relief from stay is granted as follows.
2. The automatic stay imposed by 11 U.S.C. § 362(a) is terminated to allow movant to exercise its rights and remedies under applicable non-bankruptcy law with respect to: the Ruins Personal Property; and the Ruins Real Property located at 315 East Kemp Ave., Watertown, South Dakota.

Dated:

_____
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

| In Re:<br><br>The Ruins, LLC,<br><br>                Debtor. | Case No.: 25-30004<br><br>Chapter 11 |
|---|---|

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2024, the following documents:

1. **Notice of Motion;**
2. **Motion to Lift Automatic Stay;**
3. **Affidavit of Charles W. Aarestad in Support of Motion for Relief from Automatic Stay;**
4. **Affidavit of Joshua W. Luther in Support of Motion for Relief from Automatic Stay (with Ex. 1);**
5. **Affidavit of Matthew Gehrtz in Support of Motion for Relief from Stay (with Ex. A, B and C);**
6. **Proposed Order Granting Relief from Stay**

were filed electronically with the Clerk of Court through ECF, and that ECF will send a Notice of Electronic Filing (NEF) to all parties who are registered to receive e-notices in this case.

Dated: July 15, 2025.

**VOGEL LAW FIRM**

BY:  */s/ Kesha L. Tanabe*
Kesha L. Tanabe
ktanabe@vogellaw.com
218 NP Avenue
PO Box 1389
Fargo, ND  58107-1389
701.237.6983
ATTORNEYS FOR RED RIVER STATE BANK