IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Case No. 25-30004 |
| | ) | |
| THE RUINS, LLC | ) | |
| | ) | |
| Debtor | ) | |
| | ) | |

**OPPOSITION TO MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

Comes now The Ruins, LLC ("Ruins" or the "Debtor"), by and through undersigned counsel, pursuant to Local Rule 9013-1, and in opposition to the Motion for Relief from the Automatic Stay (the "Motion," as found at DE #58) filed by Red River State Bank ("RRSB") states as follows:

**I.     Introduction**

The Motion should be denied for two separate-yet-related reasons: (i) RRSB is adequately protected by its lien on the Debtor's real estate asset (the "Property"); and (ii) the Motion does not comply with the Local Rules of this Honorable Court. The former point, while no doubt a familiar refrain from chapter 11 debtors, is particularly true in the prism of a case where the movant has elected to both undervalue the Property and overvalue the correlative secured claim. The latter point, while seemingly technical, speaks to a broader problem that has permeated this case from the outset: RRSB, for whatever reason, has failed to produce the sort of loan records expected of a commercial lender and those records, in the context of a motion seeking relief under Section 362 of Title 11 of the United States Code (the "Automatic Stay"), are required in this Honorable Court.

To be sure, there are other core problems with the Motion, not the least of which being the healthy divide between certain extant realities and the facts proffered by RRSB. In an effort to establish "cause" separate from a claimed lack of adequate protection, the bank points to an alleged

1

payment default but fails to mention such followed RRSB's *sua sponte* cessation of loan funding. The bank asserts hard assets to be illicitly missing from the Property without noting the circumstances of how certain items came to be removed. And the bank asserts there to be water damage but, in so doing, palpably overstates the scope of the issue while, once again, neglecting to mention that construction was not completed because the bank unilaterally elected to dishonor its loan commitments.

At core, though, the issues relevant to the Motion are (i) whether or not RRSB is adequately protected; and (ii) whether or not RRSB has satisfied the rigors attendant to seeking relief from the Automatic Stay. The former inquiry is answered in the affirmative; the latter inquiry is answered in the negative.

## II.    Standard

Title 11 of the United States Code (the "Bankruptcy Code") both provides for the Automatic Stay and various circumstances under which that stay may be lifted:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if—
>
> (A) the debtor does not have an equity in such property; and
>
> (B) such property is not necessary to an effective reorganization. . .

11 U.S.C. § 362(d)

The same statutory scheme provides that RRSB "has the burden of proof on the issue of the debtor's equity in property," 11 U.S.C. § 362(g), while Ruins carries the burden on all other issues, *id.*

2

**III.     Argument: The Motion Merits Denial**

    a.  There Does Not Exist "Cause" Under Section 362(d)(1)

A bank standing accused of myriad bad acts—including the illicit solicitation of a bribe aimed at financially benefiting the bank's equity holders—is seeking stay relief so as to permit foreclosure of the Debtor's lone tangible asset before adversary claims may be adjudicated or a plan of reorganization may be voted upon. In so doing, RRSB feigns the existence of "cause" under the alternative theories that (i) the Property is devoid of equity; and (ii) the Debtor is a bad company helmed by bad persons. Neither such theory is ultimately accurate.

As noted by the Eight Circuit Bankruptcy Appellate Panel, while an absence of equity does equate to "cause" under Section 362(d)(1), other showings of "cause" require a delicately-balanced analysis:

> A court may grant relief from the automatic stay for cause. Congress did not define cause; however, it contemplated relief from the automatic stay to allow litigation involving the debtor to proceed in another forum under appropriate circumstances. The court must balance the potential prejudice to the debtor, the bankruptcy estate, and the other creditors associated with a proceeding in another forum against the hardship to the movant if it is not allowed to proceed in the other forum. . .

*Wintroub v. Wintroub (In re Wintroub)*, 283 B.R. 743, 745 (B.A.P. 8th Cir. 2002) (citing 11 U.S.C. § 362); *In re Blan*, 237 B.R. 737, 739 (B.A.P. 8th Cir. 1999) (citing H.R. Rep. No. 95595, at 341 (1977) and S. Rep. No. 95-989, at 50 (1978))).

Here, the record will show both that (i) RRSB is adequately protected, being secured by an asset worth far more than the Motion posits, whilst holding a claim of far less than the Motion posits; and (ii) there does not otherwise exist "cause." The latter point is particularly true insofar as the broadsides against Ruins, in the Motion, are generally askew in nature while, equally, the Motion pays no attention to the interests of the Debtor, other creditors (including various

3

mechanic's lien holders that RRSB seeks to wipe out through a foreclosure), or reorganizational prospects.

### i. **RRSB is Adequately Protected**

On July 20, 2022, Joshua Luther ("Mr. Luther") signed an appraisal indicating the Property to have a then-current value of $6,980,000.00, an "as complete" value of $11,740,000.00, and an "as stabilized" value of $12,410,000.00. He also valued tax increment financing (the "TIF") supporting the Property to be worth an *additional* $1,810,000.00. In his new appraisal, the TIF is absent and the real estate values have dropped precipitously. *See* Appraisal, DE #59, at p. 5. All of which necessarily invites two options: either something has caused the Property value to plummet or Mr. Luther's appraisal is less-than-faithful.

Problematically, if something did cause the asset value to drop, the most logical intervening event would be the one that occurred roughly two weeks after the initial appraisal: RRSB unilaterally—and tortiously—cut off financing to the project. Despite having expressly promised to fund construction of Ruins' titular asset on certain terms, RRSB proved either unable or unwilling to honor its commitment, leading to a loss of funding and correlative cessation of construction. That the bank now looks to exploit its own wrongful conduct, as implicit rationale for garnering relief from the Automatic Stay, is both inequitable and improper.

To be sure, though, evidence adduced at a hearing on the Motion will show the Property has not actually seen a decrease in value between 2022 and the present. To the contrary, the record will reveal the at-issue asset to have held its value during the intervening years, notwithstanding the bank's reckless and brazen conduct. While construction may have ceased, care and maintenance of the building assuredly have not, with Ruins' equity holder dipping into his own pocket to ensure the upkeep of the project whilst a new lender is sought out.

4

Legally, the actions—and inactions—of RRSB are salient because any reduction in value (which is assuredly disputed) would be the direct and proximate consequence of RRSB's tortious conduct. Precedent makes clear that a creditor with unclean hands may not seek relief from the Automatic Stay on grounds correlative to the conduct that has dirtied one's hands. *See In re Robinson*, 2000 WL 1800604, 2000 Bankr. LEXIS 1433, at *13 (Bankr. N.D. Ill. Dec. 7, 2000) (applying the unclean hands doctrine to a stay relief motion); *In re Sterling*, 2018 Bankr. LEXIS 18, at *19 (Bankr. S.D.N.Y. Jan. 5, 2018)[1] (recognizing a defense of unclean hands may be raised in the stay relief context under the right circumstances).

Equally, and much more familiarly, the true value of the Property, alongside the true value of RRSB's claim (including any setoffs attendant thereto) is enormously relevant to establishing any entitlement to relief from the Automatic Stay. *See, e.g., In re Kurtenbach*, 2020 WL 7034405, 2020 Bankr. LEXIS 3336, at *10 (Bankr. N.D. Iowa Nov. 30, 2020) ("Given its status as an oversecured creditor, Farm Credit acknowledged that filing a motion for relief from stay would be futile. . ."); *In re Canty*, 662 B.R. 273, 277 (Bankr. D.S.C. 2024). ("Courts have previously held that adequate protection may be provided by a creditor's equity cushion in certain circumstances.") (citing *In re The West Nottingham Academy in Cecil County*, 2024 Bankr. LEXIS 1861, 2024 WL 3738924, at *9 (Bankr. D. Md. 2024); *In re O'Farrill*, 569 B.R. 586, 591 (Bankr. S.D.N.Y. 2017); *In re Henderson*, 395 B.R. 893, 899 (Bankr. D.S.C. 2008)).

Evidence adduced at a hearing on the Motion will show both that the Property is worth far more than RRSB asserts and, too, that RRSB's claim is likely to be allowed in a sum far lower than that being presently asserted. While the so-called "colorable claim" standard has long

---

[1] It is unclear if a Westlaw citation is available for this case, so a copy is appended hereto as Exhibit A.

governed stay relief proceedings, the Eighth Circuit Bankruptcy Appellate Panel has expressly recognized that the frailty of a putative secured creditor's claim may, in a court's discretion, be analyzed in connection with stay relief proceedings. *See, e.g.*, *Montgomery v. Dennis Joslin Co. II, LLC (In re Montgomery)*, 262 B.R. 772, 775 (B.A.P. 8th Cir. 2001). ("In its discretion, the court may consider evidence that the movant's interest as secured party or as post-foreclosure owner is potentially vulnerable to avoidance.") (citing S. REP. No. 989, 95th Cong., 2d Sess. 55 (1978); *In re Poughkeepsie Hotel Assoc.*, 132 B.R. 287, 291 (Bankr. S.D.N.Y. 1991)).[2] This allowance jibes harmoniously with the holding of *Wintroub*, where a more holistic analysis is encouraged in Section 362(d)(1) disputes.

Here, there exists a direct relationship between the frailty of RRSB's claim and the existence of an equity cushion. Ruins does not dispute that it owes the bank money. The Debtor does, however, vigorously dispute the amount that is owed, both on account of failures of documentation (discussed *infra*) and the existence of setoff claims being pursued through a pending adversary proceeding. And while it is recognized that stay relief proceedings are traditionally summary in nature, it is also recognized that it is a creditor's burden to prove an absence of equity in an implicated asset, *In re Harwood Hideout, Inc.*, 2005 Bankr. LEXIS 670, at *2 (Bankr. D.N.D. Mar. 4, 2005),[3] and such does not appear to be a showing RRSB can make in the context of a case where the size of its own claim is so thoroughly in doubt.

---

[2] *Montgomery* addresses a question concerning whether a secured creditor's claim may be avoided. The debtor does not dispute that avoidance and setoff are separate questions. Ruins contends, however, that the same principal ought to guide the case *sub judice*, for the reasons discussed *passim* and otherwise manifest from the docket of this case.

[3] It is unclear if a Westlaw citation is available for this case, so a copy is appended hereto as Exhibit B.

## ii.  There Does Not Exist Other "Cause" For Stay Relief

Insofar as the non-monetary theories of "cause" espoused in the Motion are uniformly either errant or devoid of materially informative context, it is difficult to meaningfully counter the same aside from observing that evidence adduced at a hearing will show the fallacy of the bank's contentions. Equally, however, and being mindful of the mandate of *Wintraub*, it bears notation that RRSB is not asking for leave to go litigate a claim elsewhere and then return to this Honorable Court with a judgment in hand; RRSB is seeking leave to take the Debtor's eponymous asset and, in so doing, turn this case into one built solely around litigation claims. Governing law simply does not support this approach of litigation defense by ambush.

RRSB is not the only creditor in this case; there exist (i) secured mechanic's lien holders; (ii) a TIF holder; and (iii) general unsecured creditors. Tellingly, despite many of these parties being represented by highly regarded attorneys, none have endeavored to inflict any mischief upon this chapter 11 case, nor have any cared to join in RRSB's Motion. And for good reason: the Debtor can—and will—complete construction of the building, then either paying creditors through a sale of the completed asset or via a stream of monies emerging from the rental of units therein.

While Ruins has asked its plan of reorganization to not yet be scheduled for balloting (and, indeed, the Debtor has intentionally resisted filing a disclosure statement until such a time as the objection to RRSB's claim is adjudicated at least in part), that plan is enormously relevant. This is not a fantastical case where an entity is proposing to sell trinkets on the street corner, use the proceeds thereof to purchase lottery tickets, and then repay creditors with next week's Powerball jackpot. This is, very much to the contrary, a carefully-managed case where an entity is trying to finish construction, monetize its asset, and repay creditors—in full.

Of course, none of that is possible if RRSB first takes the asset. And, under *Wintraub*, those ramifications are enormously important to any assessment of "cause." It surprises no one that RRSB is looking out for the best interests of itself and its insiders. But the Debtor is looking out for the interests of all creditors, carefully progressing this case in a manner that will benefit not merely RRSB but, too, all parties to whom money is owed. And de facto ending those efforts, so RRSB may be rewarded for its bad acts by being given leave to foreclose, is assuredly well beyond the scope of what Congress intended to imbed in the word "cause."

    b.  **The Property is Necessary to Reorganize**

The Section 362(d)(2) analysis does not differ extensively from the Section 362(d)(1) analysis, insofar as RRSB's oversecured position remains dispositive. Plainly, since there does exist equity in the Property, relief under Section 362(d)(2) is facially inapplicable. Yet even if, *arguendo*, such equity could be meaningfully challenged, there would still remain the fundamental reality that Ruins' self-named asset is assuredly necessary to reorganization.

The Motion cites to *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.,* 484 U.S. 365, 376 (1988) as requiring a reasonable possibility of reorganization within a reasonable time. Motion, DE #58, at p. 10. In so doing, however, RRSB conveniently ignores that the Debtor filed a viable plan of reorganization, before the exclusivity period lapsed, and has simply been unable to proceed with a disclosure statement and balloting because of RRSB's own intransigence. Indeed, and as discussed in greater detail *infra*, the bank is *still* yet to furnish a ledger for the at-

issue loans, despite the Local Rules of this Honorable Court literally requiring such in connection with a stay relief motion.[4]

Critically, per this Honorable Court's own precedent, "[u]nless the proposed plan is patently unconfirmable or clearly unfeasible, the debtor should be permitted to attempt to achieve confirmation." *Harwood Hideout*, 2005 Bankr. LEXIS 670, at *3-4[5] (citing *John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Associates*, 987 F.2d 154, 157 (3d Cir. 1993) (quoting *In re 266 Washington Associates*, 141 B.R. 275, 281 (Bankr. E.D.N.Y. 1992); *In re Dupell*, 235 B.R. 783, 790 (Bankr. E.D. Pa. 1999); *Creekstone Apartments Associates, L.P. v. Resolution Trust Corp. (In re Creekstone Apartments Associates, L.P.)*, 168 B.R. 639, 643 (Bankr. M.D. Tenn. 1994))).

Evidence adduced at a hearing on the Motion will show the plan filed by Ruins to be viable in nature. Evidence will also show that this case is eminently viable in nature. A plan may require some modicum of tinkering once a baseline claim amount is established, but the core structure proposed by the Debtor is neither surprising nor unorthodox. It makes sense to complete construction. It makes sense to lease out the completed premises. And it makes sense to then either sell the building, in a sum sufficient to pay claims in full, or to use the rental proceeds to pay such claims—also in full—over a reasonable period of time.

---

[4] Discovery in the related claim objection is still open, with Ruins yet to issue its intended documents requests but anticipating doing so in short order which, in turn, will allow for production within the discovery period set out by this Honorable Court. This will, too, permit the examination of at least one bank designee at deposition thereafter, also within the established discovery period. For the avoidance of doubt, Ruins is *not* accusing RRSB of ignoring any discovery request; the Debtor is simply noting that RRSB has now taken fairly noteworthy steps to repetitively avoid producing a loan ledger, despite such being (i) common practice when docketing a proof of claim; and (ii) a literal requirement when seeking stay relief.

[5] *See, supra,* n. 3.

It certainly does not make nearly as much sense, however, to reorganize an entity centered on an apartment building without keeping the apartment building. And RRSB seems to tacitly acknowledge as much, not genuinely disputing that the Property is necessary to reorganization but, rather, simply suggesting that reorganization is a fool's errand. This is not a surprising position for a litigation defendant to assume, nor is this a surprising position to be assumed by the bank that has done almost everything possible to stymie completion of the project. Equally, though, this is not a position that shows any probability of being supported by evidence or finding a foothold in applicable precedent. This is a case with a healthy quantity of creditors and an exceedingly committed Debtor; it seems the *only* party that does not want to see construction completed, and units actively rented, is RRSB.

### c. The Motion Does Not Comply with the Local Rules of this Honorable Court

Ruins has faith in the merits of the foregoing arguments. That faith notwithstanding, the Local Rules of this Honorable Court are not particularly lengthy in nature and necessarily demand adherence absent highly unusual circumstances. That the Motion does not comply with those rules is troubling; that the non-compliance is partially emblematic of a bigger issue in this case is telling.

Local Rule 4001-2 sets forth the minimum requirements for a motion seeking relief from the Automatic Stay:

> In all motions under section 362 seeking relief to enforce a debt secured by property of the estate, the moving party must provide the following information:
>
> (1) evidence that the moving party has standing to bring the motion, including, at a minimum:
>
> (a) a copy of the note;
>
> (b) a copy of the mortgage or security agreement;
>
> (c) evidence of perfection; and

10

> (d) evidence that the moving party holds the right to enforce the security interest and bring the motion, e.g., the moving party is the original mortgagee or a valid transferee;
>
> (2) a description of the property;
>
> (3) the moving party's estimated current market value of the property; and
>
> (4) a loan history indicating the dates and sums of missed payments and all advances made to or charges of any kind made against the debtor beginning on the date of the default applicable to this motion and ending on the date the motion is verified. . .

Local Rule 4001-2(A).

Bizarrely—if not inexplicably—RRSB has filed some 591 pages of exhibits to the Motion, yet nowhere therein is (i) "a copy of the note," Local Rule 4001-2(A)(1)(a); (ii) "a copy of the mortgage or security agreement," Local Rule 4001-2(A)(1)(b); (iii) "evidence of perfection," Local Rule 4001-2(A)(1)(c); (iv) or "a loan history indicating the dates and sums of missed payments and all advances made to or charges of any kind made against the debtor beginning on the date of the default applicable to this motion and ending on the date the motion is verified," Local Rule 4001-2(A)(4).

To be sure, Ruins does not dispute that there exists a note. Nor does Ruins dispute that there exists a mortgage which, in turn, has been recorded (thereby establishing perfection). But in a case where (i) actual banking records appear to be woefully confusing, and (ii) there are very real concerns promissory notes have been—or may still be—held by bank insiders, in lieu of the bank itself (as a means of circumventing lending limit laws), it would seem particularly important to attach these documents.

Those records, however, are nowhere near as important as the loan payment history that RRSB knows Ruins has long desired. Such is being requested through discovery on a related

11

matter (the pending claim objection).[6] And these records will presumably, in turn, be produced before a hearing on the Motion. But to whatever extent RRSB wishes to press the Motion more expediently (something that, upon information and belief, RRSB is *not* endeavoring to do), the failure to attach loan history records becomes enormously prejudicial.

To be sure, the failure to append these required documents may be more innocuously motivated (or unmotivated), and undersigned counsel certainly cannot nearly claim an unblemished record of compliance with just about any court's local rules. But in a case where RRSB's tight controls on pertinent records have been a point of contention from the outset, and where it is widely known and oft-observed that the bank's records are well less than what one would expect of a regulated lender, this omission strikes as particularly troubling. The Motion has every appearance of being an effort to commandeer collateral before an adversary proceeding may be adjudicated on the merits or before a claim objection can give rise to consideration of a plan of reorganization and accompanying disclosure statement. Such gamesmanship is every bit RRSB's prerogative to pursue, even if the pursuit appears ill-fated. But if gamesmanship is to be strategically employed, it would seem such ought to be in accord with governing rules.

### IV.     Conclusion

WHEREFORE, Ruins respectfully prays this Honorable Court (i) deny the Motion; (ii) continue the Automatic Stay in effect until such a time as a final hearing on the Motion may be had (with there being optimism such dates will coincide with a hearing on a related claim objection); and (iii) afford such other and further relief as may be just and proper.

*[Signature on Following Page]*

---

[6] *See, supra*, n. 4.

                                                            Respectfully Submitted,

Dated: July 29, 2025                  By:    /s/ Maurice B. VerStandig
                                                                 Maurice B. VerStandig, Esq.
                                                                 The Dakota Bankruptcy Firm
                                                                 1630 1st Avenue N
                                                                 Suite B PMB 24
                                                                 Fargo, North Dakota 58102-4246
                                                                 Phone: (701) 394-3215
                                                                 mac@dakotabankruptcy.com
                                                                 *Counsel for the Debtor*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of July, 2025, a copy of the foregoing was served electronically upon filing via the ECF system.

                                                                           /s/ Maurice B. VerStandig
                                                                          Maurice B. VerStandig