| Fill in this information to identify the case: | |
|---|---|
| Debtor 1 | Parkside Place LLC |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | District of North Dakota |
| Case number | 25-30003 |

## Official Form 410

# Proof of Claim

**12/24**

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

## Part 1: Identify the Claim

**1. Who is the current creditor?**

Red River State Bank
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Caren W. Stanley, Vogel Law Firm
Name

PO Box 1389
Number    Street

Fargo         ND
City          State          ZIP Code

Contact phone 701-237-6983

Contact email cstanley@vogellaw.com

Uniform claim identifier (if you use one):
_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

Where should payments to the creditor be sent? (if different)

Name

Number    Street

City          State          ZIP Code

Contact phone _____

Contact email _____

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____    Filed on ___ / ___ / ___
                                                                  MM  /  DD  /  YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

EXHIBIT 15
WIT: J Craig
DATE: 9-23-25
Deanna L. Sager

**Part 2:    Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___ ___ ___ ___ |

| | |
|---|---|
| 7. **How much is the claim?** | $ _____8,794,170.09_. Does this amount include interest or other charges?<br>☐ No<br>☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| | |
|---|---|
| 8. **What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br>Money Loaned |

| | |
|---|---|
| 9. **Is all or part of the claim secured?** | ☐ No<br>☑ Yes. The claim is secured by a lien on property.<br><br>**Nature of property:**<br>☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.<br>☐ Motor vehicle<br>☑ Other. Describe:   All personal property including rents<br><br>**Basis for perfection:**   SD & ND UCC Fin Stmt, Mortgage, Assignment of Rents<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:**   $ Unknown at this time<br>**Amount of the claim that is secured:**   $ Unknown at this time<br>**Amount of the claim that is unsecured:**   $ Unknown at this time (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:**   $ _____<br><br>**Annual Interest Rate (when case was filed)_____%**<br>☐ Fixed<br>☐ Variable |

| | |
|---|---|
| 10. **Is this claim based on a lease?** | ☑ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.**   $ _____ |

| | |
|---|---|
| 11. **Is this claim subject to a right of setoff?** | ☑ No<br>☐ Yes. Identify the property: _____ |

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | | Amount entitled to priority |
|---|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Yes. Check one: | | |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | | $_____ |
| | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | | $_____ |
| | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | | $_____ |
| | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | | |

## Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.
18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☑ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  1 / 8 / 2025
                 MM / DD / YYYY

Signature

Print the name of the person who is completing and signing this claim:

| Name | Charles Aarestad | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Vice President | | |
| Company | Red River State Bank | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 300 2nd Ave W | | |
| | Number  Street | | |
| | Halstad | MN | 56548 |
| | City | State | ZIP Code |
| Contact phone | 218-456-2187 | Email | charles.aarestad@redriverbank.com |

# ATTACHMENT TO PROOF OF CLAIM

**Promissory Notes:**

On or about December 13, 2021, Debtor **Parkside Place, LLC** ("<u>Debtor</u>") made in favor of, executed, and delivered to Red River State Bank ("<u>RRSB</u>") a promissory note in the principal sum of $4,200,000.00 ("<u>Parkside Note</u>"). The maturity date of the Parkside Note is December 1, 2026. A true and correct copy of the Parkside Note is attached hereto as **Exhibit A** and terms of the same incorporated herein by reference.

Mulinda Craig made in favor of, executed and delivered to RRSB the following instruments:

  a.    Promissory Note dated April 26, 2021 in the principal sum of $1,477,500.00 ("<u>First Mulinda Note</u>"). The original maturity date of the First Mulinda Note was December 15, 2022. A true and correct copy of the First Mulinda Note is attached hereto as **Exhibit B** and terms of the same incorporated herein by reference.

  b.    Promissory Note dated May 27, 2021 in the principal sum of $1,321,100.00 ("<u>Second Mulinda Note</u>"). The original maturity date of the Second Mulinda Note was December 15, 2022. A true and correct copy of the Second Mulinda Note is attached hereto as **Exhibit C** and terms of the same incorporated herein by reference.

  c.    Promissory Note dated June 22, 2021 in the principal sum of $1,652,500.00 ("<u>Third Mulinda Note</u>"). The original maturity date of the Third Mulinda Note was December 15, 2024. A true and correct copy of the Third Mulinda Note is attached hereto as **Exhibit D** and terms of the same incorporated herein by reference.

  d.    The First Mulinda Note, the Second Mulinda Note, and the Third Mulinda Note are hereinafter referred to collectively as the "<u>Mulinda Notes</u>.

The Mulinda Notes were modified to, among other things, revise the payment schedule and reaffirm and/or modify the maturity date to December 15, 2022 pursuant to three (3) Modification Agreements dated December 15, 2021 (collectively, the "<u>Mulinda Modification Agreements</u>"). True and correct copies of the Mulinda Modification Agreements are attached hereto as **Exhibit E** and terms of the same are incorporated herein by reference. Pursuant to a Forbearance Agreement dated February 17, 2023 by and between RRSB and Debtor, Mulinda Craig, and Jesse Craig, among others, the maturity date of the Mulinda Notes was further extended to May 31, 2023. A true and correct copy of the Forbearance Agreement is attached hereto as **Exhibit F**.

**Collateral:**

As security for payment of all of the indebtedness due RRSB on the Parkside Note and the Mulinda Notes, Debtor made in favor of, executed, and delivered to RRSB Commercial Security Agreements dated March 15, 2021, April 26, 2021, May 27, 2021, and June 22, 2021

(collectively, the "Security Agreements"). True and correct copies of the Security Agreements are attached hereto as **Exhibit G** and terms of the same incorporated herein by reference.

Under the Security Agreements, Debtor granted RRSB a security interest in the following collateral:

As security for the payment of the indebtedness and all other indebtedness, obligations and liabilities of the Debtor to Creditor, now existing or hereafter arising, directly or indirectly, by operation of law or otherwise (collectively the "liabilities"), Debtor assigns, transfers, pledges, hypothecates and grants to Creditor, its successors and assigns, a first priority security interest (the "security interest") in all Debtor's assets, including without limitation, all equipment, inventory, supplies, accounts, general intangibles, chattel paper and instruments, goods, assets, machinery, fixtures, furnishings and all other personal property together with all other accessories, accessions, attachments and appurtenances, appertaining to attached thereto, whether now owned or hereafter acquired, and all other substitutions, renewals, replacements and improvements and all proceeds, rents, issuers, income, profits and avails, including without limitation, insurance proceeds.  Further, Borrower grants Lender a purchase money security interest in specific equipment, furniture and fixtures purchased by Borrower and financed by Lender on or about the date of the loan or filing date thereafter (collectively the "collateral")

*See* **Exhibit G**.

RRSB perfected its security interest in the above-described personal property assets by virtue of having filed UCC financing statements with the South Dakota Secretary of State and the North Dakota Secretary of State. True and correct copies of the financing statements are attached hereto as **Exhibit H** and terms of the same incorporated herein by reference.

As additional security for all of the indebtedness due RRSB up to the sum of $5,440,000.00, Debtor made in favor of, executed, and delivered to RRSB a Mortgage – Collateral Real Estate Mortgage One Hundred Eighty Day Redemption (the "Parkside Mortgage") upon the following-described real property:

> Parkside Place Addition to the City of Watertown, Codington County, South Dakota, according to the recorded plat thereof.
>
> Street Address:          8 2nd St. NE, Watertown, SD 57201
>
> Tax ID:                          9358

(hereinafter the "Parkside Real Property").

The Parkside Mortgage was properly executed, acknowledged, and recorded in Book 990 on Page 8073 in the office of the Register of Deeds of Codington County, South Dakota, having been recorded on December 15, 2021 at 10:11 a.m. A true and correct copy of the Parkside Mortgage is attached hereto as **Exhibit I** and terms of the same incorporated herein by reference.

The indebtedness owing to RRSB under the Mulinda Notes is also secured by the Parkside Mortgage as set forth in the Mulinda Modification Agreements (**Exhibit E**).

On or about December 13, 2021, as security for all of the indebtedness due RRSB, Parkside made in favor of, executed, and delivered to RRSB an Assignment of Rents (the "Parkside AOR") with respect to the Parkside Real Property. The Parkside AOR was properly executed, acknowledged, and recorded in Book 990 on Page 8076 in the office of the Register of Deeds of Codington County, South Dakota, having been recorded on December 15, 2021 at 10:14 a.m. A

true and correct copy of the Parkside AOR is attached hereto as **Exhibit J** and terms of the same incorporated herein by reference.

RRSB began enforcement of its assignment of rents set forth in both the Parkside Mortgage and the Parkside AOR in February 2024 by sending notice to Parkside and to all of the known tenants of the Parkside Real Property. A receiver was appointed on or about October 1, 2024 to take possession of the rents and manage the Parkside Real Property. A true and correct copy of the Order Appointing Receiver is attached hereto as **Exhibit K** and terms of the same incorporated herein by reference.

As of the Petition Date, the receiver held rents from the Parkside Real Property in the sum of $110,948.58 (the "Parkside Prepetition Rents"). The Parkside Prepetition Rents held by the receiver are not property of the bankruptcy estate under 11 USC § 541(a)(6) because the Parkside AOR was enforced prepetition as an absolute assignment.

**Indebtedness:**

The following sums are due and owing to RRSB with respect to the Parkside Note and Mulinda Notes as of January 6, 2025:

| NOTE | BALANCE | PER DIEM INTEREST ACCRUAL |
|---|---|---|
| Parkside Note | $4,062,188.71 | $459.12 |
| First Mulinda Note | $1,119,755.71 | $159.14 |
| Second Mulinda Note | $1,610,444.59 | $235.26 |
| Third Mulinda Note | $2,001,781.08 | $294.28 |
| **Total due under Parkside Note and Mulinda Notes together with interest accruing from and after January 6, 2025, excluding\* costs and attorneys' fees incurred:** | **$8,794,170.09** | |

**\* The Debtor is also obligated to RRSB for all attorneys' fees and costs incurred by RRSB in collecting on the debt due and owing under the Parkside Note and the Mulinda Notes.**

**The filing of this proof of claim does not constitute a general appearance by the claimant. The claimant reserves all rights to challenge the personal or subject matter jurisdiction of this Court and to demand a jury trial in any adversary or other proceeding which may be initiated against the claimant in this bankruptcy proceeding.**

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In Re: | Bankruptcy No.: 25-30002 |
| | Chapter 11 |
| Generations on 1st, LLC, | |
| Debtor, Jointly Administered. | |
| Parkside Place, LLC, | Bankruptcy No.: 25-30003 |
| Debtor, Jointly Administered. | Chapter 11 |

## AFFIDAVIT OF CHARLES AARESTAD

### RE: THE PARKSIDE NOTE

STATE OF MINNESOTA      )
                        ) SS
COUNTY OF NORMAN        )

I, Charles Aarestad, hereby state and declare as follows:

1.      I am a Sr. Vice President at Red River State Bank ("RRSB"). I have held my current position since 2011.

2.      I hold a bachelor's degree in Agricultural Economics from North Dakota State University. I have also attended the Graduate School of Banking at the University of Wisconsin-Madison.

3.      I am personally familiar with the loan history between RRSB and Parkside Place, LLC (the "Debtor" or "Parkside") and I have personal knowledge of all events and transactions described in this affidavit.



EXHIBIT  16
WIT: J. Craig
DATE: 9-23-25
Deanna L. Sager

4.      Additionally, I have personally reviewed bank statements, transaction receipts,
deposits, and checks associated with several accounts, including without limitation:

      a.  a checking account ending in -6436 at RRSB owned by the Debtor (the
"RRSB Parkside Account");

      b.  a checking account ending in -4665 at RRSB, also known as the Assignment
of Rents Holding Account (the "AOR Account");

      c.  a checking account ending in -1711 at First Community Credit Union
("FCCU") owned by Craig Development, LLC (the "FCCU Craig
Development Account")

      d.  a checking account ending in -4695 at FCCU owned by Craig Properties
LLC (the "FCCU Craig Properties Account"); and

      e.  a checking account ending in -2258 at Starion Bank owned by non-debtor
affiliate CP Business Management Inc. – Apartments (the "CP Business
Account"); and

      f.  the debtor-in-possession checking account ending in -8688 at Starion Bank
(the "Parkside DIP Account").

With the exception of accounts for which RRSB is the depository institution, all of the
aforementioned documents were obtained through subpoenas issued in the Debtor's
bankruptcy case.

## The Parkside Note

2

5.       Debtor executed and delivered to RRSB a Promissory Note dated December 13, 2021 (the "Parkside Note")[1], pursuant to which Loan No. 51438 was disbursed in the original principal sum of $4,200,000.00. Interest accrues at a rate of 4.150% per annum and its stated maturity date is December 1, 2026. A schedule of the Debtor's repayment obligations under the Parkside Note follows:

      a.    Three (3) monthly consecutive interest payments from January 1, 2022, through March 1, 2022;

      b.    Fifty-six (56) monthly consecutive principal and interest payments of $22,525.00 each from April 1, 2022, through November 1, 2026; and

      c.    One (1) final principal and interest payment on December 1, 2026, comprised of all principal and accrued interest not yet paid, a sum estimated to be $3,720,631.03 if all payments were made exactly as scheduled.

A true and correct copy of a debit ticket dated December 13, 2021 confirming the disbursement of Loan 51438 is attached as **Exhibit A** and incorporated by reference.

6.       On December 13, 2021, RRSB disbursed proceeds of the Parkside Note totaling $4,200,000. Debtor used such proceeds to refinance three existing construction loans related to construction of Parkside Place in Watertown, South Dakota ("Parkside Place"). A true and correct copy of a Loan Disbursement Request and Authorization for the Parkside Note is attached as **Exhibit B** and incorporated by reference.

7.       First, Parkside Note proceeds were applied to pay down outstanding principal and interest on Loan 51393 in the amounts of $940,371.80 and $11,767.53, respectively. True

---

[1] A true and correct copy of the Parkside Note is attached to Proof of Claim No. 1 in the Debtor's bankruptcy case (the "RRSB Parkside POC") and incorporated by reference.

and correct copies of credit slips confirming the application of funds to pay down Loan 51393 are attached as **Exhibit C** and incorporated by reference.

8.      Second, Parkside Note proceeds were applied to pay down outstanding principal and interest on Loan 41120 in the amounts of $2,601,400 and $84,638.16, respectively. True and correct copies of credit slips confirming the application of funds to pay down Loan 41120 are attached as **Exhibit D** and incorporated by reference.

9.      Third, Parkside Note proceeds were applied to pay down outstanding principal only on Loan 41206 in the amount of $561,822.51. A true and correct copy of a credit slip confirming the application of funds to pay down Loan 41206 is attached as **Exhibit E** and incorporated by reference.

10.     To recap, when the December 2021 refinance was complete, Parkside Note proceeds totaling $4,200,000.00 had been disbursed and applied to refinance the three existing construction loans as follows:

| Loan # | Total Paid to Loan Account | Principal | Interest | Exhibit No. |
|---|---|---|---|---|
| 41120 | $2,686,038.16 | $2,601,400.00 | $84,638.16 | D |
| 51393 | $952,139.33 | $940,371.80 | $11,767.53 | C |
| 41206 | $561,822.51 | $561,822.51 | $0.00 | E |
| **TOTAL:** | **$4,200,000.00** | $4,103,594.31 | $96,405.69 | |

*[The remainder of this page is intentionally blank.]*

4

11.    RRSB filed Proof of Claim No. 1 in the Debtor's main bankruptcy case. The
following table was attached to such claim, confirming that as of the Petition Date, the
outstanding amount and of the Parkside Note was $4,062,188.71:

**Indebtedness:**

The following sums are due and owing to RRSB with respect to the Parkside Note and Mulinda
Notes as of January 6, 2025:

| NOTE | BALANCE | PER DIEM INTEREST ACCRUAL |
|------|---------|---------------------------|
| Parkside Note | $4,062,188.71 | $459.12 |
| First Mulinda Note | $1,119,755.71 | $159.14 |
| Second Mulinda Note | $1,610,444.59 | $235.26 |
| Third Mulinda Note | $2,001,781.08 | $294.28 |
| **Total due under Parkside Note and Mulinda Notes together with interest accruing from and after January 6, 2025, excluding" costs and attorneys' fees incurred:** | **$8,794,170.09** | |

*See* RRSB Parkside POC, p. 6.

12.    An Inquiry Statement for the Parkside Note generated by RRSB's computer
system is attached as **Exhibit F** and incorporated by reference. The Inquiry Statement does not
include a running balance but only identifies advances on the loan, late fees accrued, and
application of payments.

13.    For the convenience of the parties and the Court, a printout of an Excel
spreadsheet depicting the accrual of interest and late fees pursuant to the Parkside Note and
the application of all payments received by RRSB for the Parkside Note is attached as **Exhibit
G** and incorporated by reference.

## Parkside Note: Pre-Petition Payment History

14.     Prior to commencement of the Debtor's bankruptcy case on January 6, 2025 (the

"Petition Date"), RRSB received a total of twenty-eight (28) payments from Debtor, and such

payments were applied to reduce the outstanding balance of the Parkside Note as follows:

| Payment No. | Payment Description | Exhibit Description | Exhibit No. |
|---|---|---|---|
| 1 | Payment of **$10,505.75** was received on January 10, 2022, and applied to accrued interest. | RRSB Parkside Account Statement for the period ending January 31, 2022 (*See* p. 1). | H-1, F & G |
| 2 | Payment of **$13,370.96** was received on February 10, 2022, and applied to interest. | RRSB General Ledger slip dated February 10, 2022, memorializing an ACH transfer to RRSB in the sum of $13,370.96; and RRSB Loan Credit Slip dated February 10, 2022, in the sum of $13,370.96. | H-2, F & G |
| 3 | Payment of **$13,370.96** was received on February 17, 2022, and applied to accrued interest. | CP Business Account Check No. 3217 in the amount of $13,370.96; and RRSB Loan Credit Slip dated February 17, 2022, in the sum of $13,370.96. | H-3, F & G |
| 4 | Payment of **$22,525.00** was received on March 21, 2022. $9,550.68 was applied to accrued interest and $12,974.32 was applied to principal. | CP Business Account Check No. 3266 in the amount of $22,525.00 and RRSB Loan Credit Slip dated March 21, 2022, in the sum of $22,525.00. | H-4, F & G |
| 5 | Payment of **$22,525.00** was received on May 2, 2022. $19,994.49 was applied to accrued interest and $2,530.51 was applied to principal. | CP Business Account Check No. 3296 in the amount of $22,525.00 and RRSB Loan Credit Slip dated May 2, 2022, in the sum of $22,525.00. | H-5, F & G |
| 6 | Payment of **$22,525.00** was received on May 23, 2022. $10,466.97 was applied to accrued interest and | CP Business Account Check No. 3400 in the amount of $22,525.00 and RRSB Loan Credit Slip dated May 24, 2022, in the sum of $22,525.00. | H-6, F & G |

6

| | | | |
|---|---|---|---|
| | $12,058.03 was applied to principal on May 24, 2022. | | |
| 7 | Payment of **$22,525.00** was received on June 6, 2022. $6,167.20 was applied to accrued interest and $16,357.80 was applied to principal. | CP Business Account Check No. 3415 in the amount of $22,525.00 and RRSB Loan Credit Slip dated June 6, 2022, in the sum of $22,525.00. | **H-7, F & G** |
| 8 | Payment of **$22,525.00** was received on July 18, 2022. $19,846.70 was applied to accrued interest and $2,678.30 was applied to principal. | CP Business Account Check No. 3471 in the amount of $22,525.00 and RRSB Loan Credit Slip dated July 18, 2022, in the sum of $22,525.00. | **H-8, F & G** |
| 9 | Payment of **$22,525.00** was received on August 8, 2022. $9,916.96 was applied to accrued interest and $12,608.04 was applied to principal. | CP Business Account Check No. 3553 in the amount of $22,525.00 and RRSB Loan Credit Slip dated August 8, 2022, in the sum of $22,525.00. | **H-9, F & G** |
| 10 | Payment of **$22,525.00** was received on September 6, 2022. $13,653.27 was applied to accrued interest and $8,871.73 was applied to principal. | CP Business Account Check No. 3603 in the amount of $22,525.00 and RRSB Loan Credit Slip dated September 6, 2022, in the sum of $22,525.00. | **H-10, F & G** |
| 11 | Payment of **$22,525.00** was received on October 5, 2022. $13,624.02 was applied to accrued interest and $8,900.98 was applied to principal. | CP Business Account Check No. 3707 in the amount of $22,525.00 and RRSB Loan Credit Slip dated October 5, 2022, in the sum of $22,525.00. | **H-11, F & G** |
| 12 | Payment of **$22,525.00** was received on November 7, 2022. $15,469.80 was applied to accrued interest and $7,055.20 was applied to principal. | CP Business Account Check No. 3758 in the amount of $22,525.00 and RRSB Loan Credit Slip dated November 7, 2022, in the sum of $22,525.00. | **H-12, F & G** |

| | | | |
|---|---|---|---|
| 13 | Payment of **$22,525.00** was received on December 6, 2022. $13,571.41 was applied to accrued interest and $8,953.59 was applied to principal. | CP Business Account Check No. 3853 in the amount of $22,525.00 and RRSB Loan Credit Slip dated December 6, 2022, in the sum of $22,525.00. | **H-13, F & G** |
| 14 | Payment of **$22,525.00** was received on January 5, 2023. $14,008.85 was applied to accrued interest and $8,516.15 was applied to principal. | CP Business Account Check No. 3914 in the amount of $22,525.00 and RRSB Loan Credit Slip dated January 5, 2023, in the sum of $22,525.00. | **H-14, F & G** |
| 15 | Payment of **$22,525.00** was received on February 6, 2023. $14,911.78 was applied to accrued interest and $7,613.22 was applied to principal. | CP Business Account Check No. 3978 in the amount of $22,525.00 and RRSB Loan Credit Slip dated February 6, 2023, in the sum of $22,525.00. | **H-15, F & G** |
| 16 | Payment of **$22,525.00** was received on April 7, 2023. $22,525.00 was applied to accrued interest and $0.00 was applied to principal. | CP Business Account Check No. 4072 in the amount of $22,525.00 and RRSB Loan Credit Slip dated April 7, 2023, in the sum of $22,525.00. | **H-16, F & G** |
| 17 | Payment of **$22,525.00** was received on May 5, 2023. $18,406.24 was applied to accrued interest and $4,118.76 was applied to principal. | CP Business Account Check No. 4123 in the amount of $22,525.00 and RRSB Loan Credit Slip dated May 5, 2023, in the sum of $22,525.00. | **H-17, F & G** |
| 18 | Payment of **$22,525.00** was received on June 2, 2023. $13,010.46 was applied to accrued interest and $9,514.54 was applied to principal. | CP Business Account Check No. 4183* in the amount of $78,355.18 and RRSB Loan Credit Slip dated June 2, 2023, in the sum of $22,525.00.<br><br>* Check 4183 was divided between the Parkside and Eighth GO1st Notes. | **H-18, F & G** |

| | | *See* Eighth GO1st Note Aff., ¶ 14, Row 2 and Exh E-2. | |
|---|---|---|---|
| 19 | Payment of **$22,525.00** was received on July 10, 2023. $13,907.96 was applied to accrued interest and $8,617.04 was applied to principal. | CP Business Account Check No. 4275* in the amount of $78,355.18; RRSB Loan Credit Slips dated July 10, 2023, in the sums of $13,907.96, and $8,617.04.<br><br>* Check 4275 was divided between the Parkside and Eighth GO1st Notes. *See* Eighth GO1st Note Aff., ¶ 14, Row 3 and **Exh. E-3**. | **H-19, F & G** |
| 20 | Payment of **$22,525.00** was received on August 16, 2023. $20,824.11 was applied to accrued interest and $1,700.89 was applied to principal. | CP Business Account Check No. 4308* in the amount of $78,355.18 and RRSB Loan Credit Slip dated August 16, 2023, in the sum of $22,525.00.<br><br>* Check 4308 was divided between the Parkside and Eighth GO1st Notes. *See* Eighth GO1st Note Aff., ¶ 14, Row 4 and **Exh. E-4**. | **H-20, F & G** |
| 21 | Payment of **$22,525.00** was received on September 7, 2023. $10,172.90 was applied to accrued interest and $12,352.10 was applied to principal. | CP Business Account Check No. 4368* in the amount of $78,355.18 and RRSB Loan Credit Slip dated September 7, 2023, in the sum of $22,525.00.<br><br>* Check 4368 was divided between the Parkside and Eighth GO1st Notes. *See* Eighth GO1st Note Aff., ¶ 14, Row 5 and **Exh. E-5**. | **H-21, F & G** |
| 22 | Payment of **$22,525.00** was received on October 10, 2023. $15,213.00 was applied to accrued interest and $7,312.00 was applied to principal. | CP Business Account Check No. 4462* in the amount of $78,355.18 and RRSB Loan Credit Slip dated October 10, 2023, in the sum of $22,525.00.<br><br>* Check 4462 was divided between the Parkside and Eighth GO1st Note. | **H-22, F & G** |

| | | | |
|---|---|---|---|
| | | *See* Eighth GO1st Note Aff., ¶ 14, Row 6 and **Exh. E-6.** | |
| 23 | Payment of **$22,525.00** was received on November 7, 2023. $13,344.90 was applied to accrued interest and $9,180.10 was applied to principal on November 8, 2023. | CP Business Account Check No. 4506* in the amount of $78,355.18 and RRSB Loan Credit Slip dated November 7, 2023, in the sum of $22,525.00.<br><br>* Check 4506 was divided between the Parkside and Eighth GO1st Note. *See* Eighth GO1st Note Aff., ¶ 14 Row 7 and **Exh. E-7.** | **H-23, F & G** |
| 24 | Payment of **$22,525.00** was received on December 21, 2023. $19,742.37 was applied to accrued interest and $2,782.63 was applied to principal. | Craig Development, LLC Check No. 12690 in the amount of $22,525.00 and RRSB Loan Credit Slip dated December 22, 2023, in the sum of $22,525.00. | **H-24, F & G** |
| 25 | Payment of **$22,525.00** was received on January 15, 2024. $11,470.21 was applied to accrued interest and $11,054.79 was applied to principal. | Craig Development, LLC Check No. 12762 in the amount of $22,525.00 and RRSB Loan Credit Slip dated January 15, 2024, in the sum of $22,525.00. | **H-25, F & G** |
| 26 | Pursuant to right of offset, **$1,488.58** remaining in the RRSB Parkside Account was applied to principal on February 8, 2024. | RRSB Checking Withdrawal Slip dated February 7, 2024; and RRSB Loan Credit Slip dated February 7, 2024, in the sum of $1,488.58. | **H-26, F & G** |
| 27 | Payment of **$123,861.56** was received on December 30, 2024, and the same was applied to accrued interest. | Wire transfer receipt from HME Companies and RRSB Checking Withdrawal Slip dated December 30, 2024, in the amount of $123,861.56.<br><br>Five (5) RRSB Loan Credit Slips, all dated December 30, 2024, and each in the sum of $22,525.00 intended to reflect the monthly payments for Feb-June 2024 and one (1) RRSB Loan | **H-27, F & G** |

| | | Credit Slip dated December 30, 2024, in the sum of $11,236.56 intended to reflect a partial payment for July 2024. | |
| 28 | Payment of **$15,767.50** was received on January 2, 2025, and the same was applied to accrued interest. | ACH transfer from HME Companies to RRSB and RRSB Checking Withdrawal Slip dated January 2, 2025, in the amount of $15,767.50; and RRSB Credit Ticket dated January 2, 2025, in the sum of $15,767.50. | **H-28, F & G** |

### Post--Petition Payment History of the Parkside Note

15.    After the Petition Date, pursuant to the Stipulation(s) For Use of Cash Collateral By and Between Generations on 1st LLC, Parkside Place, LLC and Red River State Bank (*See* ECF 44, ECF 54, ECF 69, ECF 91, ECF 140), Debtor has made seven (7) adequate protection payments for the Parkside Note and RRSB has applied such payments to reduce the outstanding balance of the Parkside Note as follows:

| Payment No. | Payment Description | Exhibit Description | Exhibit No. |
|---|---|---|---|
| 29 | Payment of **$49,341.92** was received on February 4, 2025. $36,924.60 was applied to accrued interest and $12,417.32 was applied to principal. | RRSB General Ledger Slip dated February 4, 2025, in the sum of $49,341.92, memorializing a payment from account -7020 and RRSB Loan Credit Slip dated February 4, 2025, in the sum of $49,341.92. *See also* ECF 54; ¶ 5(i) | **H-29, F & G** |
| 30 | Payment of **$14,500.00** was received on February 14, 2025. $4,559.71 was applied to accrued interest and $49,940.29 was applied to principal. | Parkside DIP Account Check No. 20012 in the amount of $14,500.00; and RRSB Loan Credit Slip dated February 14, 2025, in the sum of $14,500.00. | **H-30, F & G** |
| 31 | Payment of **$14,500.00** was received on March 7, 2025. | Parkside DIP Account Check No. 20027 in the amount of $14,500.00; | **H-31, F & G** |

|    | | |
|----|--------------------------------------------------------------------------------------|------------------------------------------------------------------------------------------------------------------------|-----------|
|    | $9,551.65 was applied to accrued interest and $4,948.35 was applied to principal. | and RRSB Loan Credit Slip dated March 7, 2025, in the sum of $14,500.00. | |
| 32 | Payment of **$14,500.00** was received on April 14, 2025, and was applied to accrued interest. | Parkside DIP Account Check No. 20048 in the amount of $14,500.00; and RRSB Loan Credit Slip dated April 14, 2025, in the sum of $14,500.00. | **H-32, F & G** |
| 33 | Payment of **$14,500.00** was received on May 19, 2025, and was applied to accrued interest. | Parkside DIP Account Check No. 20067 in the amount of $14,500.00; and RRSB Loan Credit Slip dated May 19, 2025, in the sum of $14,500.00. | **H-33, F & G** |
| 34 | Payment of **$14,500.00** was received on June 13, 2025, and was applied to accrued interest. | Parkside DIP Account Check No. 20087 in the amount of $14,500.00; and RRSB Loan Credit Slip dated June 13, 2025, in the sum of $14,500.00. | **H-34, F & G** |
| 35 | Payment of **$14,500.00** was received on July 14, 2025, and was applied to accrued interest. | Parkside DIP Account Check No. 20103 in the amount of $14,500.00; and RRSB Loan Credit Slip dated July 14, 2025, in the sum of $14,500.00. | **H-35, F & G** |

16.    No further payments have been made by the Debtor towards the outstanding

balance of the Parkside Note except if additional cash collateral payments are not accounted

for yet.

*[The remainder of this page is intentionally blank.]*

I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 16, 2025.

_____
Charles Aarestad

Subscribed and sworn to before me this 16 day of September, 2025.

_____
Notary Public

LORI ANN MOEN
NOTARY PUBLIC - MINNESOTA
My Comm. Exp. Jan. 31, 2029

EXHIBIT

A

CUSTOMER NAME  Parkside Place LLC          DATE: 12/13/21    **DEBIT TICKET**

CUSTOMER NUMBER        NOTE NUMBER          BACK DATE ___ ___
                        51438
REV PRIN PAYMENT:      76 ___              NEW LOAN:         (34)____

REBATE INTEREST:       82 ___              RENEWAL LOAN:     70 ____
REBATE INSURANCE:      64 ___              DEBIT TO FINAL:   66 ____
                                             (Advance)
DB INT ADJUSTMENT:     80 ___              ESCROW:           86 ____
PLUS YEAR TO DATE:     2 ___
ADD LATE CHARGE:       94 ___

DESCRIPTION:                               TOTAL $    4 2 0 0 0 0 0 .00

            ⑆ 54000000 7⑈

0 12/13/2021      $4200000,00
010105000080 TC 0

RRSB Debit Ticket dated December 13, 2021 for the Parkside Note.

A

# DISBURSEMENT REQUEST AND AUTHORIZATION

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $4,200,000.00 | 12-13-2021 | 12-01-2026 | 51438 | | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

EXHIBIT B

**Borrower:** PARKSIDE PLACE, LLC (TIN [redacted])
1405 1ST AVE N
FARGO, ND 58102

**Lender:** Red River State Bank
Halstad
300 2nd Ave West
PO Box 25
Halstad, MN 56548-0025

**LOAN TYPE.** This is a Fixed Rate (4.150% initial rate) Nondisclosable Loan to a Limited Liability Company for $4,200,000.00 due on December 1, 2026.

**PRIMARY PURPOSE OF LOAN.** The primary purpose of this loan is for:

☐ Maintenance of Borrower's Primary Residence.

☐ Personal, Family or Household Purposes or Personal Investment.

☐ Agricultural Purposes.

☒ Business Purposes.

**SPECIFIC PURPOSE.** The specific purpose of this loan is: Refinance Apartment.

**DISBURSEMENT INSTRUCTIONS.** Borrower understands that no loan proceeds will be disbursed until all of Lender's conditions for making the loan have been satisfied. Please disburse the loan proceeds of $4,200,000.00 as follows:

| | |
|---|---|
| Amount paid on Borrower's account: | $4,200,000.00 |
| $4,200,000.00 Payment on Loan # Construction LOC | |
| Note Principal: | $4,200,000.00 |

**CHARGES PAID IN CASH.** Borrower has paid or will pay in cash as agreed the following charges:

| | |
|---|---|
| Prepaid Finance Charges Paid in Cash: | $14,375.00 |
| $4,500.00 CBRE Appraisal Dated 09/2021 | |
| $5,675.00 Title Comittment Estimation | |
| $4,200.00 RRSB Documentation Fee | |
| Total Charges Paid in Cash: | $14,375.00 |

**NOTICE OF RIGHT TO DISCONTINUE ESCROW.** If Borrower's mortgage loan involves an escrow account for taxes and homeowner's insurance, Borrower may have the right in five years to discontinue the account and pay Borrower's own taxes and homeowner's insurance. IF Borrower is eligible to discontinue the escrow account, Borrower will be notified in five years.

**FINANCIAL CONDITION.** BY SIGNING THIS AUTHORIZATION, BORROWER REPRESENTS AND WARRANTS TO LENDER THAT THE INFORMATION PROVIDED ABOVE IS TRUE AND CORRECT AND THAT THERE HAS BEEN NO MATERIAL ADVERSE CHANGE IN BORROWER'S FINANCIAL CONDITION AS DISCLOSED IN BORROWER'S MOST RECENT FINANCIAL STATEMENT TO LENDER. THIS AUTHORIZATION IS DATED DECEMBER 13, 2021.

**BORROWER:**

**PARKSIDE PLACE, LLC**

By: ______________________________
JESSE ROBERT CRAIG, Managing Member of PARKSIDE PLACE, LLC

LaserPro, Ver. 20.4.0.038 Copr. Finastra USA Corporation 1997, 2021. All Rights Reserved. - MN C:\HARLAND\CFI\LPL\Z20.FC TR-5707 PR-57

**EXHIBIT**

**C**



LOAN DEPARTMENT CREDIT
MCM 5002 (R 4/90)

Date 12/13/21    Approved by CBA

46  Principal Payment
50  Interest Payment
58  Late Charge
92  Principal Payment (End)
09  Regular Payment

CUSTOMER NAME

Parkside Place LLC

Customer Number    Loan Number    Tran Code

51393    50 $    11 767.53

⑆530 10000 1⑆

51393 12/13/2021    $11767.53
010105000030 TC 50

---

LOAN DEPARTMENT CREDIT
MCM 5002 (R 4/90)

Date 12/13/21    Approved by CBA

46  Principal Payment
50  Interest Payment
58  Late Charge
92  Principal Payment (End)
09  Regular Payment

CUSTOMER NAME

Parkside Place LLC

Customer Number    Loan Number    Tran Code

51 393    46 $    940371.80

⑆530 10000 1⑆

51393 12/13/2021    $940371.80
010105000040 TC 46

RRSB Loan Credit Slips memorializing payments to Loan 51393 dated December 13, 2021.

C



RRSB Loan Credit Slips memorializing payments to Loan 41120 dated December 13, 2021.

D



41206 12/13/2021    $561822.51
010105000070 TC 46

RRSB Loan Credit Slip memorializing payment to Loan 41206 dated December 13, 2021.

E

PAGE 1 -

# I N Q U I R Y   S T A T E M E N T

0.00

10852 PARKSIDE PLACE, LLC
PO BOX 426
FARGO ND 58107-0426

LOAN # 51438   COLL DESC 8 2ND ST NE, ORIG BAL 4,200,000.00   ORIG DATE 12/13/2021   ORIG DISC .04150   RENW BAL 0.00
RENW DATE   TMS EXT 0   LAST MATY 12/1/2026   RATE   TYPE CODE 4
APR OFF   CBA   COLL CODE FA

| DATE | TC1 | AMOUNT | TC2 | AMOUNT | POST DATE | DESCRIPTION | BALANCE |
|---|---|---|---|---|---|---|---|
| 12/13/2021 | 34 | 4,200,000.00 | 0 | 0.00 | | OPENING ADVANCE | 4,200,000.00 |
| 01/10/2022 | 50 | 10,505.75 | 0 | 0.00 | | ONL PMT FRM CHK 326436 | 4,200,000.00 |
| 02/10/2022 | 50 | 13,370.96 | 0 | 0.00 | | | 4,200,000.00 |
| 02/17/2022 | 50 | 13,370.96 | 0 | 0.00 | | | 4,200,000.00 |
| 03/21/2022 | 46 | 12,974.32 | 50 | 9,550.68 | | | 4,187,025.68 |
| 05/02/2022 | 46 | 2,530.51 | 50 | 19,994.49 | | | 4,184,495.17 |
| 05/24/2022 | 46 | 12,058.03 | 50 | 10,466.97 | | | 4,172,437.14 |
| 06/06/2022 | 46 | 16,357.80 | 50 | 6,167.20 | | | 4,156,079.34 |
| 07/18/2022 | 46 | 2,678.30 | 50 | 19,846.70 | | | 4,153,401.04 |
| 08/08/2022 | 46 | 12,608.04 | 50 | 9,916.96 | | | 4,140,793.00 |
| 09/06/2022 | 46 | 8,871.73 | 50 | 13,653.27 | | | 4,131,921.27 |
| 10/05/2022 | 46 | 8,900.98 | 50 | 13,624.02 | | | 4,123,020.29 |
| 11/07/2022 | 46 | 7,055.20 | 50 | 15,469.80 | | | 4,115,965.09 |
| 12/06/2022 | 46 | 8,953.59 | 50 | 13,571.41 | | | 4,107,011.50 |
| 01/05/2023 | 46 | 8,516.15 | 50 | 14,008.85 | | | 4,098,495.35 |
| 02/06/2023 | 46 | 7,613.22 | 50 | 14,911.78 | | | 4,090,882.13 |
| 04/07/2023 | 50 | 22,525.00 | 0 | 0.00 | | | 4,090,882.13 |
| 05/05/2023 | 46 | 4,118.76 | 50 | 18,406.24 | | | 4,086,763.37 |
| 06/02/2023 | 46 | 9,514.54 | 50 | 13,010.46 | | | 4,077,248.83 |
| 07/10/2023 | 46 | 8,617.04 | 50 | 0.00 | | | 4,068,631.79 |
| 07/10/2023 | 50 | 13,907.96 | 0 | 0.00 | | | 4,068,631.79 |
| 08/16/2023 | 46 | 1,700.89 | 50 | 20,834.11 | | | 4,066,930.90 |
| 09/07/2023 | 46 | 12,352.10 | 46 | 10,172.90 | | | 4,054,578.80 |
| 10/10/2023 | 46 | 7,312.00 | 50 | 15,213.00 | | | 4,047,266.80 |
| 11/08/2023 | 46 | 9,180.10 | 50 | 13,334.90 | | | 4,038,086.70 |
| 12/11/2023 | 94 | 1,126.25 | 0 | 0.00 | | | 4,038,086.70 |
| 12/21/2023 | 46 | 2,782.63 | 0 | 0.00 | | | 4,035,304.07 |
| 01/11/2024 | 94 | 1,126.25 | 0 | 0.00 | | | 4,035,304.07 |
| 01/15/2024 | 46 | 11,054.79 | 50 | 11,470.21 | | | 4,024,249.28 |
| 02/08/2024 | 92 | 1,488.58 | 0 | 0.00 | | | 4,022,760.70 |
| 02/12/2024 | 94 | 1,126.25 | 0 | 0.00 | | | 4,022,760.70 |
| 03/11/2024 | 94 | 1,126.25 | 0 | 0.00 | | | 4,022,760.70 |
| 04/11/2024 | 94 | 1,126.25 | 0 | 0.00 | | | 4,022,760.70 |
| 05/13/2024 | 94 | 1,126.25 | 0 | 0.00 | | | 4,022,760.70 |
| 05/28/2024 | 92 | 4,022,760.70 | 84 | 61,293.30 | | NON-ACCRUAL | 0.00 |
| 05/28/2024 | 366 | 4,022,760.70 | 380 | 61,293.30 | | NON-ACCRUAL | 4,022,760.70 |
| 06/11/2024 | 94 | 1,126.25 | 0 | 0.00 | | | 4,022,760.70 |
| 07/11/2024 | 94 | 1,126.25 | 0 | 0.00 | | | 4,022,760.70 |
| 08/12/2024 | 94 | 1,126.25 | 0 | 0.00 | | | 4,022,760.70 |
| 09/11/2024 | 94 | 1,126.25 | 0 | 0.00 | | | 4,022,760.70 |
| 10/11/2024 | 94 | 1,126.25 | 0 | 0.00 | | | 4,022,760.70 |

F

RRSB Parkside 02378

PAGE 2

10852 PARKSIDE PLACE, LLC
PO BOX 426
FARGO ND 58107-0426

LOAN #  51438   COLL DESC 8 2ND ST NE, ORIG BAL  4,200,000.00   ORIG DATE 12/13/2021   ORIG DISC  .04150
TMS EXT 0   LAST MATY 12/1/2026   RATE
COLL CODE  FA
RENW DATE
APR OFF  CBA

RENW BAL  0.00   TYPE CODE 4   0.00   0.00

| DATE | TC1 | AMOUNT | TC2 | AMOUNT | POST DATE | DESCRIPTION | BALANCE |
|---|---|---|---|---|---|---|---|
| 11/12/2024 | 94 | 1,126.25 | 0 | 0.00 | | | 4,022,760.70 |
| 12/11/2024 | 94 | 1,126.25 | 0 | 0.00 | | | 4,022,760.70 |
| 12/30/2024 | 350 | 22,525.00 | 0 | 0.00 | 01/07/2025 | Feb2024 | 4,022,760.70 |
| 12/30/2024 | 350 | 22,525.00 | 0 | 0.00 | | March2024 | 4,022,760.70 |
| 12/30/2024 | 350 | 22,525.00 | 0 | 0.00 | | April2024 | 4,022,760.70 |
| 12/30/2024 | 350 | 22,525.00 | 0 | 0.00 | | May2024 | 4,022,760.70 |
| 12/30/2024 | 350 | 22,525.00 | 0 | 0.00 | | June2024 | 4,022,760.70 |
| 12/30/2024 | 350 | 11,236.56 | 0 | 0.00 | | partial July2024 | 4,022,760.70 |
| 01/02/2025 | 350 | 15,767.50 | 0 | 0.00 | 01/07/2025 | remainder July24, par Aug24 | 4,022,760.70 |
| 01/13/2025 | 94 | 1,126.25 | 0 | 0.00 | | | 4,010,343.38 |
| 02/04/2025 | 346 | 12,417.32 | 350 | 36,924.60 | | | 4,010,343.38 |
| 02/11/2025 | 94 | 1,126.25 | 0 | 0.00 | | | 4,010,343.38 |
| 02/14/2025 | 346 | 9,940.29 | 350 | 4,559.71 | | 1st Cash Collateral pymt due | 4,000,403.09 |
| 03/07/2025 | 346 | 4,948.35 | 350 | 9,551.65 | | Nov24 partialpmt rem$7309.02 | 3,995,454.74 |
| 03/11/2025 | 94 | 1,126.25 | 0 | 0.00 | | | 3,995,454.74 |
| 04/11/2025 | 94 | 1,126.25 | 0 | 0.00 | | | 3,995,454.74 |
| 04/14/2025 | 350 | 14,500.00 | 0 | 0.00 | | April25 cash collateral | 3,995,454.74 |
| 05/12/2025 | 94 | 1,126.25 | 0 | 0.00 | | | 3,995,454.74 |
| 05/19/2025 | 350 | 14,500.00 | 0 | 0.00 | 05/20/2025 | | 3,995,454.74 |
| 06/11/2025 | 94 | 1,126.25 | 0 | 0.00 | | | 3,995,454.74 |
| 06/13/2025 | 350 | 14,500.00 | 0 | 0.00 | | | 3,995,454.74 |

Principal: 4,200,000.00       Min:          0.00
Interest:    357,046.95       Max:  4,200,000.00

**EXHIBIT G**

## The Parkside Note: Payment History and Accrual of Interest & Late Fees

Affidavit of Charles Azenstat re: Parkside Note

Dated 12/13/21    Originating Interest Rate: 4.15% per annum    Post-Forbearance Interest Rate: 4.15% per annum

| Date | Advance/Charge (+) | Payment (-) Total | Interest Pmt. | Principal Pmt. | Description | Per Diem | # of Days | Accrued Interest | (Principal Pmt.) | Interest | Principal | Late Fees | TOTAL | Payment No. | Corresponding Eighth Gen. Note Payment No. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/13/2021 | $4,200,000.00 | | | | Loan Account Opened - Opening Advance | $477.53 | 0 | $13,370.96 | 0 | | $4,200,000.00 | $ - | | | |
| 1/10/2022 | | $(10,505.75) | $(10,505.75) | $ - | Interest Calculation | $477.53 | 28 | $13,370.96 | | $13,370.96 | $4,200,000.00 | $ - | | | |
| 1/10/2022 | | | | | January 2022 Payment Received | $477.53 | | | | $2,865.21 | $4,200,000.00 | $ - | | 1 | |
| 2/1/2022 | | $(13,370.96) | $(13,370.96) | $ - | February 2022 Payment Due | $477.53 | 22 | $10,505.75 | | $13,370.96 | $4,200,000.00 | $ - | | | |
| 2/10/2022 | | | | | February 2022 Payment Received | $477.53 | | | | $0.00 | $4,200,000.00 | $ - | | 2 | |
| 3/1/2022 | | $(13,370.96) | $(13,370.96) | $ - | March 2022 Payment Due (paid early) | $477.53 | 28 | $13,370.96 | | $13,370.96 | $4,200,000.00 | $ - | | | |
| 3/17/2022 | | | | | March 2022 Payment Received (paid early) | $477.53 | | | | $0.00 | $4,200,000.00 | $ - | | 3 | |
| 3/21/2022 | | $(22,525.00) | $(9,550.68) | $(12,974.32) | Interest Calculation | $477.53 | 20 | $9,550.68 | $(12,974.32) | $9,550.68 | $4,187,025.68 | $ - | | | |
| 3/21/2022 | | | | | April 2022 Payment Received | $477.53 | | | | $0.01 | $4,187,025.68 | $ - | | 4 | |
| 4/1/2022 | | $(22,525.00) | $(19,994.49) | $(2,530.51) | Interest Calculation | $475.77 | 42 | $19,994.49 | $(2,530.51) | $19,994.49 | $4,184,495.17 | $ - | | | |
| 5/2/2022 | | | | | May 2022 Payment Received | $475.77 | | | | $0.00 | $4,184,495.17 | $ - | | 5 | |
| 5/2/2022 | | $(22,525.00) | $(10,466.97) | $(12,058.03) | Interest Calculation | $474.40 | 22 | $10,466.97 | $(12,058.03) | $10,466.97 | $4,172,437.14 | $ - | | | |
| 5/24/2022 | | | | | June 2022 Payment Received | $474.40 | | | | $(0.00) | $4,172,437.14 | $ - | | 6 | |
| 5/24/2022 | | $(22,525.00) | $(6,167.20) | $(16,357.80) | Interest Calculation | $474.40 | 13 | $6,167.21 | $(16,357.80) | $6,167.20 | $4,156,079.34 | $ - | | | |
| 6/6/2022 | | | | | July 2022 Payment Received | $472.54 | | | | $(0.00) | $4,156,079.34 | $ - | | 7 | |
| 6/6/2022 | | $(22,525.00) | $(19,846.70) | $(2,678.30) | Interest Calculation | $472.54 | 42 | $19,846.70 | $(2,678.30) | $19,846.71 | $4,153,401.04 | $ - | | | |
| 7/18/2022 | | | | | August 2022 Payment Received | $472.24 | | | | $0.01 | $4,153,401.04 | $ - | | 8 | |
| 8/8/2022 | | $(22,525.00) | $(9,916.96) | $(12,608.04) | Interest Calculation | $472.24 | 21 | $9,916.96 | $(12,608.04) | $9,916.96 | $4,140,793.00 | $ - | | | |
| 8/8/2022 | | | | | September 2022 Payment Received | $470.80 | | | | $0.00 | $4,140,793.00 | $ - | | 9 | |
| 9/6/2022 | | $(22,525.00) | $(13,653.27) | $(8,871.73) | Interest Calculation | $470.80 | 29 | $13,653.27 | $(8,871.73) | $13,653.27 | $4,131,921.27 | $ - | | | |
| 9/6/2022 | | | | | October 2022 Payment Received | $469.79 | | | | $0.00 | $4,131,921.27 | $ - | | 10 | |
| 10/5/2022 | | $(22,525.00) | $(13,624.02) | $(8,900.98) | Interest Calculation | $469.79 | 29 | $13,624.02 | $(8,900.98) | $13,624.02 | $4,123,020.29 | $ - | | | |
| 10/5/2022 | | | | | November 2022 Payment Received | $468.78 | | | | $(0.00) | $4,123,020.29 | $ - | | 11 | |
| 11/7/2022 | | $(22,525.00) | $(15,469.00) | $(7,055.59) | Interest Calculation | $468.78 | 33 | $15,469.80 | $(7,055.20) | $15,469.80 | $4,115,965.09 | $ - | | | |
| 11/7/2022 | | | | | December 2022 Payment Received | $467.58 | | | | $(0.00) | $4,115,965.09 | $ - | | 12 | |
| 12/6/2022 | | $(22,525.00) | $(13,571.41) | $(8,953.59) | Interest Calculation | $467.58 | 29 | $13,571.41 | $(8,953.59) | $13,571.41 | $4,107,011.50 | $ - | | | |
| 12/6/2022 | | | | | January 2023 Payment Received | $466.96 | | | | $(0.00) | $4,107,011.50 | $ - | | 13 | |
| 1/5/2023 | | $(22,525.00) | $(14,008.85) | $(8,516.15) | Interest Calculation | $466.96 | 30 | $14,008.85 | $(8,516.15) | $14,008.85 | $4,099,495.35 | $ - | | | |
| 1/5/2023 | | | | | February 2023 Payment Received | $465.99 | | | | $(0.00) | $4,099,495.35 | $ - | | 14 | |
| 2/6/2023 | | $(22,525.00) | $(14,911.78) | $(7,613.22) | Interest Calculation | $465.99 | 32 | $14,911.79 | $(7,613.22) | $14,911.79 | $4,090,882.13 | $ - | | | |
| 2/6/2023 | | | | | March 2023 Payment Received | $464.13 | | | | $0.00 | $4,090,882.13 | $ - | | 15 | |
| 4/7/2023 | | $(22,525.00) | $(22,525.00) | $ - | Interest Calculation | $464.13 | 60 | $27,907.66 | $(7,055.20) | $27,907.66 | $4,090,882.13 | $ - | | | |
| 4/7/2023 | | | | | April 2023 Payment Received | $465.13 | | | | $5,380.90 | $4,090,882.13 | $ - | | 16 | |
| 5/5/2023 | | $(22,525.00) | $(18,406.24) | $(4,118.76) | Interest Calculation | $465.13 | 28 | $18,406.24 | $(4,118.76) | $18,406.24 | $4,086,763.37 | $ - | | | |
| 5/5/2023 | | | | | May 2023 Payment Received | $464.66 | | | | $0.00 | $4,086,763.37 | $ - | | 17 | |
| 6/2/2023 | | $(22,525.00) | $(13,010.46) | $(9,514.54) | Interest Calculation | $464.66 | 28 | $13,010.46 | $(9,514.54) | $13,010.46 | $4,077,248.83 | $ - | | | |
| 6/2/2023 | | | | | June 2023 Payment Received | $459.58 | | | | $0.00 | $4,077,248.83 | $ - | | 18 | 2 |
| 7/10/2023 | $1,126.25 | | | | Late Fee Assessed | $459.58 | | | | $17,615.95 | $4,077,248.83 | $1,126.25 | | | |
| 8/10/2023 | | $(22,525.00) | $(15,907.96) | $(6,617.04) | Interest Calculation | $462.00 | 37 | $17,116.12 | $(1,708.89) | $20,824.11 | $4,068,831.79 | $1,126.25 | | 19 | 3 |
| 8/10/2023 | | | | | August 2023 Payment Received | $462.00 | | | | $0.00 | $4,068,831.79 | $1,126.25 | | | |
| 9/7/2023 | | $(22,525.00) | $(20,824.11) | $(1,700.89) | Interest Calculation | $462.40 | 22 | $10,172.90 | $(12,352.10) | $10,172.90 | $4,066,930.90 | $1,126.25 | | 20 | 4 |
| 9/7/2023 | | | | | September 2023 Payment Received | $462.40 | | | | $0.00 | $4,054,578.80 | $1,126.25 | | | |
| 10/10/2023 | | $(22,525.00) | $(10,172.90) | $(12,352.10) | Interest Calculation | $461.00 | 33 | $15,213.00 | $(7,311.00) | $15,213.00 | $4,054,578.80 | $1,126.25 | | 21 | 5 |
| 10/10/2023 | | | | | October 2023 Payment Received | $480.57 | | | | $0.00 | $4,047,268.80 | $1,126.25 | | | |
| 11/8/2023 | | $(22,525.00) | $(15,213.00) | $(7,312.00) | Interest Calculation | $480.57 | 29 | $13,344.80 | $(9,180.10) | $13,344.80 | $4,038,086.70 | $1,126.25 | | 22 | 6 |
| 11/8/2023 | | | | | November 2023 Payment Received | $459.12 | | | | $(0.00) | $4,038,086.70 | $1,126.25 | | | |
| 12/11/2023 | | $(22,525.00) | $(13,344.80) | $(9,180.10) | Interest Calculation | $459.12 | 43 | $19,742.37 | $(2,782.63) | $19,742.37 | $4,035,304.07 | $1,126.25 | | 23 | 7 |
| 12/11/2023 | $1,126.25 | | | | December 2023 Payment Received | $459.12 | | | | $(0.00) | $4,035,304.07 | $2,252.50 | | | |
| 12/21/2023 | $1,126.25 | | | | Late Fee Assessed | $458.81 | 25 | $11,470.21 | $(11,054.79) | $11,470.21 | $4,035,304.07 | $2,252.50 | | 24 | |
| 1/11/2024 | | $(22,628.00) | $(11,470.21) | $(11,054.79) | Interest Calculation | $457.55 | 24 | $10,981.24 | $(1,488.58) | $20,824.24 | $4,024,249.28 | $3,378.75 | | | |
| 1/15/2024 | | | | | Late Fee Assessed | $457.55 | | | | $0.00 | $4,024,249.28 | $3,378.75 | | 25 | |
| 2/8/2024 | | | | | Interest Calculation | | | | | $10,981.24 | $4,022,760.70 | $3,378.75 | | | |
| 2/8/2024 | | $(1,488.58) | | $(1,488.58) | February 2024 Payment Received / Set Off Applied | | | | | | | $3,378.75 | | 26 | |

Case 25-30002    Doc 164-1    Filed 09/16/25    Entered 09/16/25 10:32:21    Desc
Exhibits A-H    Page 9 of 49

| Date | | | | | Description | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 2/12/2024 | $ | 1,126.25 | $ | - | Late Fee Assessed | | | | $ 4,022,760.70 | $ 4,505.00 |
| 3/11/2024 | $ | 1,126.25 | $ | - | Late Fee Assessed | | | | $ 4,022,760.70 | $ 5,631.25 |
| 4/11/2024 | $ | 1,126.25 | $ | - | Late Fee Assessed | | | | $ 4,022,760.70 | $ 6,757.50 |
| 5/13/2024 | $ | 1,126.25 | $ | - | Late Fee Assessed | | | | $ 4,022,760.70 | $ 7,883.75 |
| 6/11/2024 | $ | 1,126.25 | $ | - | Late Fee Assessed | | | | $ 4,022,760.70 | $ 9,010.00 |
| 7/11/2024 | $ | 1,126.25 | $ | - | Late Fee Assessed | | | | $ 4,022,760.70 | $ 10,136.25 |
| 8/12/2024 | $ | 1,126.25 | $ | - | Late Fee Assessed | | | | $ 4,022,760.70 | $ 11,262.50 |
| 9/11/2024 | $ | 1,126.25 | $ | - | Late Fee Assessed | | | | $ 4,022,760.70 | $ 12,388.75 |
| 10/11/2024 | $ | 1,126.25 | $ | - | Late Fee Assessed | | | | $ 4,022,760.70 | $ 13,515.00 |
| 11/12/2024 | $ | 1,126.25 | $ | - | Late Fee Assessed | | | | $ 4,022,760.70 | $ 14,641.25 |
| 12/11/2024 | $ | 1,126.25 | $ | - | Late Fee Assessed | | | | $ 4,022,760.70 | $ 15,767.50 |
| 12/30/2024 | | | | | Interest Calculation | | | | $ 4,022,760.70 | $ 15,767.50 |
| 12/30/2024 | $ | (123,861.56) | $ | (123,861.56) | Feb - Jun 2024 and Partial Jul 2024 Pmt. Received | $ | 148,106.66 | 326 | $160,087.90 | |
| 1/2/2025 | | | | | Interest Payment | $ | (123,861.56) | 3 | $ 36,226.34 | $ 4,022,760.70 $ 15,767.50 |
| 1/2/2025 | $ | (15,767.50) | $ | (15,767.50) | Interest Calculation | $ | 1,372.15 | | $ 37,598.48 | $ 4,022,760.70 $ 15,767.50 |
| 1/2/2025 | $ | - | $ | - | Cash Collateral Payment | $ | (15,767.50) | | $ 21,830.98 | $ 4,022,760.70 $ 15,767.50 |
| 1/6/2025 | | | | | Remainder July and Partial Aug 2024 Pmt. Received | | | | | $ 4,022,760.70 $ 15,767.50 |
| | | | | | BANKRUPTCY PETITION FILED | | | | $ 23,840.51 | $ 4,022,760.70 $ 4,062,148.71 |
| 1/13/2025 | $ | 1,126.25 | $ | - | Late Fee Assessed | $ | 457.38 | | | |
| 2/4/2025 | | | | | Interest Calculation | $ | 13,264.09 | 29 | $ 36,924.60 | $ 4,022,760.70 $ 16,893.75 |
| 2/4/2025 | $ | (49,341.92) | $ | (112,417.32) | Cash Collateral Payment | $ | (36,924.60) | | $ | $ 4,022,760.70 $ 16,893.75 |
| 2/11/2025 | $ | 1,126.25 | $ | - | Late Fee Assessed | $ | 457.38 | 29 | $ (112,417.32) | $ 4,010,343.38 $ 16,893.75 |
| 2/14/2025 | | | | | Interest Calculation | $ | 4,559.71 | 10 | $ 4,569.71 | $ 4,010,343.38 $ 18,020.00 |
| 2/14/2025 | $ | (14,500.00) | $ | (9,940.29) | Cash Collateral Payment | $ | (4,559.71) | | $ (0.00) | $ 4,010,343.38 $ 18,020.00 |
| 3/7/2025 | | | | | Interest Calculation | $ | 9,551.65 | 21 | $ 9,551.64 | $ 4,000,403.09 $ 18,020.00 |
| 3/7/2025 | $ | (14,500.00) | $ | (4,948.35) | Cash Collateral Payment | $ | (9,551.65) | | $ (0.01) | $ 4,000,403.09 $ 18,020.00 |
| 3/11/2025 | $ | 1,126.25 | $ | - | Late Fee Assessed | $ | 454.84 | 21 | | $ 3,995,454.74 $ 19,146.25 |
| 4/11/2025 | $ | 1,126.25 | $ | - | Interest Calculation | $ | 17,262.55 | 38 | $ 17,262.55 | $ 3,995,454.74 $ 20,272.50 |
| 4/14/2025 | $ | (14,500.00) | $ | - | Cash Collateral Payment | $ | (14,500.00) | | $ 2,762.55 | $ 3,995,454.74 $ 20,272.50 |
| 4/14/2025 | | | | | Cash Collateral Payment | $ | (14,500.00) | | | $ 3,995,454.74 $ 20,272.50 |
| 5/12/2025 | $ | 1,126.25 | $ | - | Late Fee Assessed | $ | 15,899.72 | 35 | $ 18,662.27 | $ 3,995,454.74 $ 21,398.75 |
| 5/19/2025 | $ | - | $ | - | Interest Calculation | $ | (14,500.00) | | $ 4,162.27 | $ 3,995,454.74 $ 21,398.75 |
| 5/19/2025 | $ | (14,500.00) | $ | (14,500.00) | Cash Collateral Payment | $ | (14,500.00) | | | $ 3,995,454.74 $ 21,398.75 |
| 6/11/2025 | $ | 1,126.25 | $ | - | Late Fee Assessed | $ | 11,386.94 | 25 | $ 15,519.21 | $ 3,995,454.74 $ 22,525.00 |
| 6/13/2025 | | | | | Interest Calculation | $ | (14,500.00) | | $ 1,019.21 | $ 3,995,454.74 $ 22,525.00 |
| 6/13/2025 | $ | (14,500.00) | $ | (14,500.00) | Cash Collateral Payment | $ | (14,500.00) | | | $ 3,995,454.74 $ 22,525.00 |
| 7/14/2025 | | | | | Interest Calculation | $ | 14,082.61 | 31 | $ 15,101.82 | $ 3,995,454.74 $ 22,525.00 |
| 7/14/2025 | $ | - | $ | (14,500.00) | Cash Collateral Payment | $ | (14,500.00) | | $ 601.82 | $ 3,995,454.74 $ 22,525.00 $ 4,018,581.56 |

Row numbers column (right margin): 27, 28, 29, 30, 31, 32, 33, 34, 35



**EXHIBIT**

**H-1**

```
                                    1 - 32           PAGE  1
PARKSIDE PLACE, LLC                         ACCOUNT      6436
PO BOX 426
FARGO  ND 58107-0426                        STATEMENT PERIOD
                                            12/31/2021 TO 01/31/2022
```

```
----------------------- C H E C K I N G   S U M M A R Y -----------------------
            SIMP BUS W/O CA       -        6436
   CHECKING BALANCE LAST STATEMENT.......       44,744.42
                    DEPOSITS.............              .00
                9   OTHER CREDITS........       12,795.00
                1   CHECKS..............        40,444.42
                3   OTHER DEBITS.........       10,535.70
   CHECKING BALANCE THIS STATEMENT.......        6,559.30
--------------------------- F E E   S U M M A R Y -----------------------------
  PAPER STATEMENT FEE                                 5.00
                            TOTAL FEES IMPOSED         5.00
                                (LISTED BELOW)
----------------- SUMMARY OF OVERDRAFT AND RETURNED ITEM FEES -----------------
```

|   | TOTAL FOR THIS PERIOD | TOTAL YEAR-TO-DATE |
|---|---|---|
| TOTAL OVERDRAFT FEES | $0.00 | $0.00 |
| TOTAL RETURNED ITEM FEES | $0.00 | $0.00 |

```
-------------- A C C O U N T   C R E D I T   T R A N S A C T I O N S -------------

DATE.....AMOUNT....DESCRIPTION
01/04   2,785.00 PAYLEASE.COM      CREDIT              0014326906
01/05   1,465.00 PAYLEASE.COM      CREDIT              0017717979
01/05   1,555.00 PAYLEASE.COM      CREDIT              0017706977
01/06     950.00 PayLease          Settlement          4681327538
01/06   1,335.00 PAYLEASE.COM      CREDIT              0019720156
01/06   4,175.00 PAYLEASE.COM      CREDIT              0019701724
01/07      35.00 PAYLEASE.COM      CREDIT              0011327067
01/10     195.00 PAYLEASE.COM      CREDIT              0013180700
01/11     300.00 PAYLEASE.COM      CREDIT              0015123251

--------------- O T H E R   D E B I T   T R A N S A C T I O N S ---------------

DATE.....AMOUNT....DESCRIPTION
01/05      24.95 PAYLEASE.COM      INVOICE             0018077053
01/10  10,505.75 ONL PMN FRM CHK   6436 TO LN 51438
```

Parkside Note Payment 1

```
                                                    PAGE  2
     PARKSIDE PLACE, LLC                   ACCOUNT        6436
     PO BOX 426
     FARGO  ND 58107-0426                     STATEMENT PERIOD
                                          12/31/2021 TO 01/31/2022



   DATE.....AMOUNT....DESCRIPTION
   01/31     5.00 PAPER STATEMENT FEE

   ------------------------------- C H E C K S ---------------------------------

   DATE.........CHECK NO.......AMOUNT   DATE.........CHECK NO.......AMOUNT
   01/11       1102022   40,444.42

   --------------- D A I L Y   B A L A N C E   I N F O R M A T I O N ---------------

   DATE.......BALANCE      DATE.......BALANCE       DATE.......BALANCE
   01/04    47,529.42      01/07    57,019.47       01/31     6,559.30
   01/05    50,524.47      01/10    46,708.72
   01/06    56,984.47      01/11     6,564.30

   -----------------------------------------------------------------------------
```

Parkside Note Payment 1



EXHIBIT

**H-2**

**DEBIT**
MCM 5001 (R 7/16)

**GENERAL LEDGER**

ACCOUNT NAME    UBB

DESCRIPTION / REMARKS

DATE 2/10/22

APPROVED BY CBA

AMOUNT

Parkside Place
Feb Int. ACH

Account Number        Tran Code

7020        $    13370.96

⑆59000000 2⑈

---

**LOAN DEPARTMENT CREDIT**
MCM 5002 (R 4/16)

Date 2/10/22    Approved by CBA

CUSTOMER NAME

Parkside Place

Customer Number    Loan Number    Tran Code

51438    50  s    13370.96

46   Principal Payment
(50)  Interest Payment
58   Late Charge
92   Principal Payment (End)
09   Regular Payment

⑆53010000 1⑈

Parkside Note Payment 2

EXHIBIT
**H-3**

THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND ON WHITE PAPER

**CP BUSINESS MANAGEMENT - APARTMENTS**
PO BOX 9379
FARGO, ND 58106
701-237-3369

STARION FINANCIAL
2754 BRANT DR SOUTH
FARGO, ND 58106

3217

02/14/22

$13,370.96**

TO THE
ORDER OF    **** THIRTEEN THOUSAND THREE HUNDRED SEVENTY AND 96/100 DOLLARS

RED RIVER STATE BANK
300 2ND AVE W
HALSTAD, MN   56548

MEMO: PARKSIDE PLACE

THE BACK OF THIS DOCUMENT CONTAINS CHECK SECURITY WATERMARK AND COIN REACTIVE INK

⑆        ⑈2258⑈

**LOAN DEPARTMENT CREDIT**
MCM 5002 (R 4/10)

Date 2/17/22   Approved by CBA

CUSTOMER NAME

Parkside Place LLC

| Customer Number | Loan Number | Tran Code | |
|---|---|---|---|
| | 51438 | 50 | $ |

⑆530100001⑆

46  Principal Payment
�50�  Interest Payment      13,370.96
58  Late Charge
92  Principal Payment (End)
09  Regular Payment

13370.96

Parkside Note Payment 3



EXHIBIT

H-4

THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND ON WHITE PAPER

**CP BUSINESS MANAGEMENT - APARTMENTS**
PO BOX 9379
FARGO, ND 58106
701-237-3369

STARION FINANCIAL
2754 BRANT DR SOUTH
FARGO, ND 58106

3266

03/18/22                    $22,525.00**

**** TWENTY TWO THOUSAND FIVE HUNDRED TWENTY FIVE AND 00/100 DOLLARS

TO THE
ORDER OF

RED RIVER STATE BANK

300 2ND AVE W
HALSTAD, MN    56548

April

MEMO - PARKSIDE PLACE

THE BACK OF THIS DOCUMENT CONTAINS CHECK SECURITY WATERMARK AND COIN REACTIVE INK

⑈°                    2 2 5 8 ⑈°

LOAN DEPARTMENT CREDIT
RECEIVED
002 (R 4/10)

Date    MAR 21 2022    Approved by 𝓢𝓓 CR2A

RED RIVER STATE BANK
HALSTAD, MN 56548
CUSTOMER NAME

ParkSide Place

46    Principal Payment

50    Interest Payment

58    Late Charge

92    Principal Payment (End)

09    Regular Payment

| Customer Number | Loan Number | Tran Code | |
|---|---|---|---|
| | 51438 | 09 | $ 22525.00 |

⑈530 10000 1⑈

Parkside Note Payment 4



EXHIBIT
**H-5**

---

**CP BUSINESS MANAGEMENT - APARTMENTS**
PO BOX 9379
FARGO, ND 58106
701-237-3369

STARION FINANCIAL
2754 BRANT DR SOUTH
FARGO, ND 58106

3296

04/05/22

$22,525.00**

TO THE
ORDER OF

**** TWENTY TWO THOUSAND FIVE HUNDRED TWENTY FIVE AND 00/100 DOLLARS

RED RIVER STATE BANK

300 2ND AVE W
HALSTAD, MN    56548



⑆225811⑈

---

**LOAN DEPARTMENT CREDIT**
MCM 5002 (R 4/10)

| | |
|---|---|
| 46 | Principal Payment |
| 50 | Interest Payment |
| 58 | Late Charge |
| 92 | Principal Payment (End) |
| 09 | Regular Payment |

Date  5/2/22    Approved by  CBA

CUSTOMER NAME

Parkside Place

| Customer Number | Loan Number | Tran Code | |
|---|---|---|---|
| | 51 438 | 09 $ | 22525.00 |

⑆530100001⑈

---

Parkside Note Payment 5



**EXHIBIT**

**H-6**

---

THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND ON WHITE PAPER

**CP BUSINESS MANAGEMENT - APARTMENTS**
PO BOX 9379
FARGO, ND 58106
701-237-3369

STARION FINANCIAL
2754 BRANT DR SOUTH
FARGO, ND 58106

3400

05/02/22

$22,525.00**

TO THE
ORDER OF    **** TWENTY TWO THOUSAND FIVE HUNDRED TWENTY FIVE AND 00/100 DOLLARS

RED RIVER STATE BANK

300 2ND AVE W
HALSTAD, MN    56548



MEMO: PARKSIDE PLACE

THE BACK OF THIS DOCUMENT CONTAINS CHECK SECURITY WATERMARK AND COIN REACTIVE INK

ⅱ"                        2 2 5 8 ⅰ"

---

**LOAN DEPARTMENT CREDIT**
MCM 5002 (R 4/10)

Date  5-24-22   Approved by  *signature*  CPBA

CUSTOMER NAME

Parkside, Place

| Customer Number | Loan Number | Tran Code |
|---|---|---|
| | 5 1 4 3 8 | 09 $ |

46  Principal Payment

50  Interest Payment

58  Late Charge

92  Principal Payment (End)

09  Regular Payment

RECEIVED
MAY 23 2022
RED RIVER STATE BANK
HALSTAD MN 56548

2 2 5 2 5.00

ⅰ:5 3 0 1 0 0 0 0 1 ⅰ:

---

Parkside Note Payment 6



EXHIBIT
H-7

THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND ON WHITE PAPER

**CP BUSINESS MANAGEMENT - APARTMENTS**
PO BOX 9379
FARGO, ND 58106
701-237-3369

STARION FINANCIAL
2754 BRANT DR SOUTH
FARGO, ND 58106

3415

06/01/22

$22,525.00**

TO THE
ORDER OF

**** TWENTY TWO THOUSAND FIVE HUNDRED TWENTY FIVE AND 00/100 DOLLARS

RED RIVER STATE BANK

300 2ND AVE W
HALSTAD, MN    56548

MEMO: PARKSIDE PLACE

THE BACK OF THIS DOCUMENT CONTAINS CHECK SECURITY WATERMARK AND COIN REACTIVE INK

2258

---

**LOAN DEPARTMENT CREDIT**
MCM 5002 (R 4/10)

Date 6/6/22    Approved by CBA

CUSTOMER NAME

Parkside Place

46  Principal Payment
50  interest Payment
58  Late Charge
92  Principal Payment (End)
09  Regular Payment

| Customer Number | Loan Number | Tran Code | |
|---|---|---|---|
| | 5143B | 09 $ | 22525.00 |

530 10000 1

Parkside Note Payment 7



EXHIBIT
**H-8**

THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND ON WHITE PAPER

**CP BUSINESS MANAGEMENT - APARTMENTS**
PO BOX 9379
FARGO, ND 58106
701-237-3369

STARION FINANCIAL
2754 BRANT DR SOUTH
FARGO, ND 58106

3471

07/01/22

$22,525.00**

**** TWENTY TWO THOUSAND FIVE HUNDRED TWENTY FIVE AND 00/100 DOLLARS

TO THE
ORDER OF
RED RIVER STATE BANK
300 2ND AVE W
HALSTAD, MN 56548

THE BACK OF THIS DOCUMENT CONTAINS CHECK SECURITY WATERMARK AND COIN REACTIVE INK

⑈2256⑈

RECEIVED **LOAN DEPARTMENT CREDIT**
MCM 5002 (R 4/10)

Date JUL 1 8 2022    Approved by _____

RED RIVER STATE BANK

CUSTOMER NAME
_Parkside Place_

| | 46 | Principal Payment |
| 50 | Interest Payment |
| 58 | Late Charge |
| 92 | Principal Payment (End) |
| 09 | Regular Payment |

Customer Number     Loan Number     Tran Code

51438          $    22525.00

⑈530 10000 1⑈

Parkside Note Payment 8



EXHIBIT
H-9

**CP BUSINESS MANAGEMENT - APARTMENTS**
PO BOX 9379
FARGO, ND 58106
701-237-3369

STARION FINANCIAL
2754 BRANT DR SOUTH
FARGO, ND 58106

3553

08/01/22

$22,525.00**

**** TWENTY TWO THOUSAND FIVE HUNDRED TWENTY FIVE AND 00/100 DOLLARS

TO THE
ORDER OF:
RED RIVER STATE BANK
300 2ND AVE W
HALSTAD, MN   56548

MEMO: PARKSIDE PLACE

THE BACK OF THIS DOCUMENT CONTAINS CHECK SECURITY WATERMARK AND COIN REACTIVE INK

⑈ 2258⑈

---

**LOAN DEPARTMENT CREDIT**
MCM 5002 (R 4/10)
**RECEIVED**
Date
AUG 08 2022
Approved by

CREDIT TO RED RIVER STATE BANK
HALSTAD, MN 56548

*Parkside Place*

| Customer Number | Loan Number | Tran Code |
| --- | --- | --- |
| | 51438 | 09   $   2252500 |

⑈530 10000 1⑈

46   Principal Payment

50   Interest Payment

58   Late Charge

92   Principal Payment (End)

09   Regular Payment

---

Parkside Note Payment 9



EXHIBIT

**H-10**

FOR SECURITY PURPOSES, THE FACE OF THIS DOCUMENT CONTAINS A COLORED BACKGROUND AND MICROPRINTING IN THE BORDER

**CP BUSINESS MANAGEMENT - APARTMENTS**
PO BOX 9379
FARGO, ND 58106
701-237-3369

STARION FINANCIAL
2754 BRANT DR SOUTH
FARGO, ND 58106

3603

09/01/22

$22,525.00**

TO THE
ORDER OF
\*\*\*\* TWENTY TWO THOUSAND FIVE HUNDRED TWENTY FIVE AND 00/100 DOLLARS
RED RIVER STATE BANK
300 2ND AVE W
HALSTAD, MN 56548

MEMO: PARKSIDE PLACE                SECURITY LOCKS WILL DISAPPEAR WHEN COPIED OR WITH NORMAL BODY HEAT

⑈             2258⑈

---

**LOAN DEPARTMENT CREDIT**
MCM 8002 (R 4/10)

Date 9-6-22    Approved by LAm Hur

CUSTOMER NAME

Park Side Place

Customer Number        Loan Number        Tran Code

51438        09    $    2252500

⑆53010000⑆

46 Principal Payment
50 Interest Payment
58 Late Charge
92 Principal Payment (End)
09 Regular Payment

Parkside Note Payment 10



EXHIBIT
**H-11**

**CP BUSINESS MANAGEMENT - APARTMENTS**
PO BOX 9379
FARGO, ND 58106
701-237-3369

STARION FINANCIAL
2754 BRANT DR SOUTH
FARGO, ND 58106

3707

1205199< 010101000040 10-05-22 RED RIVER STATE BANK

10/02/22

$22,525.00**

TO THE
ORDER OF
**** TWENTY TWO THOUSAND FIVE HUNDRED TWENTY FIVE AND 00/100 DOLLARS
RED RIVER STATE BANK
300 2ND AVE W
HALSTAD, MN   56548

MEMO: PARKSIDE PLACE

SECURITY LOCKS WILL DISAPPEAR WHEN COPIED OR WITH NORMAL BODY HEAT

2258

---

**LOAN DEPARTMENT CREDIT**
MCM 5002 (R 4/10)

Date 10-5-22   Approved by

46  Principal Payment

59  Interest Payment

**RECEIVED**
58 OCT 05 2022
No Charge

CUSTOMER NAME 010101000050 10-05-22 RED RIVER STATE BANK

92  Principal Payment (End)

Parkside Place

(09) Regular Payment

Customer Number    Loan Number    Tran Code

51 438    09  $    22,525.00

⑇530 10000 1⑇

---

Parkside Note Payment 11



EXHIBIT

**H-12**

FOR SECURITY PURPOSES, THE FACE OF THIS DOCUMENT CONTAINS A COLORED BACKGROUND AND MICROPRINTING IN THE BORDER

**CP BUSINESS MANAGEMENT - APARTMENTS**
PO BOX 9379
FARGO, ND 58106
701-237-3359

STARION FINANCIAL
2754 BRANT DR SOUTH
FARGO, ND 58106

3758

11/04/22

$22,525.00**

TO THE
ORDER OF   **** TWENTY TWO THOUSAND FIVE HUNDRED TWENTY FIVE AND 00/100 DOLLARS
RED RIVER STATE BANK
300 2ND AVE W
HALSTAD, MN   56548

MEMO: PARKSIDE PLACE        SECURITY LOCKS WILL DISAPPEAR WHEN COPIED OR WITH NORMAL BODY HEAT

⑈"            ⑆2258⑆"

---

**LOAN DEPARTMENT CREDIT**
MCM 5002 (7/4/10)

Date 11/7/22    Approved by CU CRBA

CUSTOMER NAME

Parkside Place

Customer Number        Loan Number        Tran Code

51438        09   $   22525.00

⑆530 10000 1⑆

46  Principal Payment

50  Interest Payment

Late Charge

RECEIVED
NOV 07 2022
RED RIVER STATE
HALSTAD, .....09

Principal Payment (End)

Regular Payment

Parkside Note Payment 12



EXHIBIT
H-13

**CP BUSINESS MANAGEMENT - APARTMENTS**
PO BOX 9379
FARGO, ND 58106
701-237-3369

866-256-5581
www.compuchecks.com

STARION FINANCIAL
2754 BRANT DR SOUTH
FARGO, ND 58106

3853

12/01/22

$22,525.00**

TO THE
ORDER OF

**** TWENTY TWO THOUSAND FIVE HUNDRED TWENTY FIVE AND 00/100 DOLLARS

RED RIVER STATE BANK
300-2ND AVE W
HALSTAD, MN 56548

MEMO: PARKSIDE PLACE

SECURITY LOCKS WILL DISAPPEAR WHEN COPIED OR WITH NORMAL BODY HEAT

⑈ 2258⑈

---

**LOAN DEPARTMENT CREDIT**
MCM 5002 (R 4/10)

Date 12/6/22    Approved by LAM

CUSTOMER NAME

Parkside Place

| Customer Number | Loan Number | Tran Code |
|---|---|---|
| | 5 1 4 3 8 | 0 9 s |

⑈530 10000 1⑈

46  Principal Payment
50  Interest Payment
58  Late Charge
92  Principal Payment (End)
09  Regular Payment

22 525.00

ZENITH CITY BUSINESS SYSTEMS, INC

Parkside Note Payment 13

EXHIBIT

**H-14**



FOR SECURITY PURPOSES, THE FACE OF THIS DOCUMENT CONTAINS A COLORED BACKGROUND AND MICROPRINTING IN THE BORDER

**CP BUSINESS MANAGEMENT - APARTMENTS**
PO BOX 9379
FARGO, ND 58106
701-237-3368

STARION FINANCIAL
2754 BRANT DR SOUTH
FARGO, ND 58106

3914

01/02/23

$22,525.00**

**** TWENTY TWO THOUSAND FIVE HUNDRED TWENTY FIVE AND 00/100 DOLLARS

TO THE
ORDER OF
RED RIVER STATE BANK
300 2ND AVE W
HALSTAD, MN   56548

MEMO: PARKSIDE PLACE

SECURITY LOCKS WILL DISAPPEAR WHEN COPIED OR WITH NORMAL BODY HEAT

⑈     2258⑈



**LOAN DEPARTMENT CREDIT**
MCM 5002 (R-4/10)

Date 1/5/23     Approved by LAm JL

CUSTOMER NAME

Parkside Place LLC

46  Principal Payment

50  Interest Payment

58  Late Charge

92  Principal Payment (End)

09  Regular Payment

Customer Number     Loan Number     Tran Code

51438     09  $     22,525.00

⑆530 10000 1⑆

Parkside Note Payment 14



EXHIBIT
H-15



FOR SECURITY PURPOSES, THE FACE OF THIS DOCUMENT CONTAINS A COLORED BACKGROUND AND MICROPRINTING IN THE BORDER

**CP BUSINESS MANAGEMENT - APARTMENTS**
PO BOX 9379
FARGO, ND 58106
701-237-3369

STARION FINANCIAL
2754 BRANT DR SOUTH
FARGO, ND 58106

3978

02/01/23

$22,525.00**

**** TWENTY TWO THOUSAND FIVE HUNDRED TWENTY FIVE AND 00/100 DOLLARS

TO THE
ORDER OF    RED RIVER STATE BANK
300 2ND AVE W
HALSTAD, MN    56548

MEMO: PARKSIDE PLACE          SECURITY LOCKS WILL DISAPPEAR WHEN COPIED OR WITH NORMAL BODY HEAT

2258

**LOAN DEPARTMENT CREDIT**
MCM 5002 (R 4/10)

Date 2/6/23    Approved by LAm 2c

CUSTOMER NAME

Parkside Place LLC

Customer Number        Loan Number        Tran Code

51438        09    $    22525.00

530 10000

46  Principal Payment
50  Interest Payment
58  Late Charge
92  Principal Payment (End)
09  Regular Payment

Parkside Note Payment 15



EXHIBIT

H-16

FOR SECURITY PURPOSES, THE FACE OF THIS DOCUMENT CONTAINS A COLORED BACKGROUND AND MICROPRINTING IN THE BORDER

**CP BUSINESS MANAGEMENT - APARTMENTS**
PO BOX 9379
FARGO, ND 58106
701-237-3369

STARION FINANCIAL
2754 BRANT DR SOUTH
FARGO, ND 58106

4072

04/01/23

$22,525.00**

TO THE
ORDER OF

**** TWENTY TWO THOUSAND FIVE HUNDRED TWENTY FIVE AND 00/100 DOLLARS

RED RIVER STATE BANK
300 2ND AVE W
HALSTAD, MN 56548

MEMO: PARKSIDE PLACE

SECURITY LOCKS WILL DISAPPEAR WHEN COPIED OR WITH NORMAL BODY HEAT

⑈ 2258⑈

---

**LOAN DEPARTMENT CREDIT**
MCM 5002 (R 4/10)

DATE 4-7-23 APPROVED BY CPBA tv

CUSTOMER NAME

Parkside Place LLC

46 Principal Payment
50 Interest Payment
58 Late Charge
92 Principal Payment (End)
09 Regular Payment
Memo

| Customer Number | Loan Number | Tran Code | |
|---|---|---|---|
| | 51438 | 09 s | 22525.00 |

⑈530 10000 1⑈

Parkside Note Payment 16

EXHIBIT

H-17



FOR SECURITY PURPOSES, THE FACE OF THIS DOCUMENT CONTAINS A COLORED BACKGROUND AND MICROPRINTING IN THE BORDER

**CP BUSINESS MANAGEMENT - APARTMENTS**
PO BOX 9379
FARGO, ND 58106
701-237-3369

STARION FINANCIAL
2754 BRANT DR SOUTH
FARGO, ND 58106

4123

888-556-5581
www.compuchecks.com

05/01/23

$22,525.00**

TO THE
ORDER OF:

**** TWENTY TWO THOUSAND FIVE HUNDRED TWENTY FIVE AND 00/100 DOLLARS

RED RIVER STATE BANK
300 2ND AVE W
HALSTAD, MN   56548

MEMO: PARKSIDE PLACE

SECURITY LOCKS WILL DISAPPEAR WHEN COPIED OR WITH NORMAL BODY HEAT

2258

---

**LOAN DEPARTMENT CREDIT**
MCM 5002 (R 4/10)

DATE 5-5-23   APPROVED BY  HAM M

CUSTOMER NAME

Parkside Place, LLC

| Customer Number | Loan Number | Tran Code |
|---|---|---|
| | 51438 | 09  $   22525.00 |

:530 10000 ::

46   Principal Payment
50   Interest Payment
58   Late Charge
92   Principal Payment (End)
09   Regular Payment
Memo

---

Parkside Note Payment 17



EXHIBIT
**H-18**



\* Check 4183 was divided between The Parkside Note ($22,525.00) and The Eighth Generations Note ($55,830.18). *See* Eighth Generations Note Aff.; Payment 2.

Parkside Note Payment 18



EXHIBIT
**H-19**

---

FOR SECURITY PURPOSES, THE FACE OF THIS DOCUMENT CONTAINS A COLORED BACKGROUND AND MICROPRINTING IN THE BORDER

**CP BUSINESS MANAGEMENT - APARTMENTS**
PO BOX 9379
FARGO, ND 58106
701-237-3369

STARION FINANCIAL
2754 BRANT DR SOUTH
FARGO, ND 58106

4275

07/01/23

$78,355.18**

TO THE ORDER OF
**** SEVENTY EIGHT THOUSAND THREE HUNDRED FIFTY FIVE AND 18/100 DOLLARS
RED RIVER STATE BANK
300 2ND AVE W
HALSTAD, MN 56548

MEMO: Loan Payment

SECURITY LOCKS WILL DISAPPEAR WHEN COPIED OR WITH NORMAL BODY HEAT

2258

---

**LOAN DEPARTMENT CREDIT**
MCM 5002 (R 4/10)

Date 7-10-23 Approved by LAm

46 Principal Payment
(50) Interest Payment
58 Late Charge
92 Principal Payment (End)
09 Regular Payment

CUSTOMER NAME
Parkside Place, LLC

Customer Number | Loan Number 51438 | Tran Code | $ 13907.96

530 10000 1

---

**LOAN DEPARTMENT CREDIT**
MCM 5002 (R 4/10)

DATE 7-10-23 APPROVED BY LAm

(46) Principal Payment
50 Interest Payment
58 Late Charge
92 Principal Payment (End)
09 Regular Payment
Memo

CUSTOMER NAME
Parkside Place LLC

Customer Number | Loan Number 514.38 | Tran Code 46 | $ 8617.04

530 10000 1

---

* Check 4275 was divided between The Parkside Note ($22,525.00) and The Eighth Generations Note ($55,830.18). *See* Eighth Generations Note Aff.; Payment 3.

Parkside Note Payment 19



EXHIBIT
H-20



* Check 4308 was divided between The Parkside Note ($22,525.00) and The Eighth Generations Note ($55,830.18). *See* Eighth Generations Note Aff.; Payment 4.



EXHIBIT
**H-21**

WARNING: THIS DOCUMENT HAS SECURITY FEATURES IN THE PAPER

**CP BUSINESS MANAGEMENT - APARTMENTS**
PO BOX 9379
FARGO, ND 58106
701-237-3369

STARION FINANCIAL
2754 BRANT DR SOUTH
FARGO, ND 58106

4368

09/01/23

$78,355.18**

TO THE ORDER OF
**** SEVENTY EIGHT THOUSAND THREE HUNDRED FIFTY FIVE AND 18/100 DOLLARS
RED RIVER STATE BANK
300 2ND AVE W
HALSTAD, MN   56548

MEMO: Loan Payment

⑂"              2 2 5 8 ⑂"

**LOAN DEPARTMENT CREDIT**
MCM 5002 (R 4/10)

DATE 9-7-23  APPROVED BY

CUSTOMER NAME

Parkside Place, LLC

46  Principal Payment
50  Interest Payment
58  Late Charge
92  Principal Payment (End)
(09) Regular Payment
Memo

| Customer Number | Loan Number | Tran Code | |
|---|---|---|---|
| | 5 1 4 3 8 | 09 s | 22525.00 |

⑂530 10000 1⑂

* Check 4368 was divided between The Parkside Note ($22,525.00) and The Eighth Generations Note ($55,830.18). *See* Eighth Generations Note Aff.; Payment 5.

Parkside Note Payment 21



EXHIBIT

**H-22**

WARNING: THIS DOCUMENT HAS SECURITY FEATURES IN THE PAPER

**CP BUSINESS MANAGEMENT - APARTMENTS**

PO BOX 9379
FARGO, ND 58106
701-237-3369

STARION FINANCIAL
2754 BRANT DR SOUTH
FARGO, ND 58106

4462

10/02/23

$78,355.18**

TO THE
ORDER OF

-**** SEVENTY EIGHT THOUSAND THREE HUNDRED FIFTY FIVE AND 18/100 DOLLARS

RED RIVER STATE BANK
300 2ND AVE W
HALSTAD, MN 56548

MEMO: Loan Payment

2258

---

**LOAN DEPARTMENT CREDIT**
MCM 5602 (R 4/10)

DATE /0-/0-23 APPROVED BY L Am H

CUSTOMER NAME

Parkside Place, LLC

| Customer Number | Loan Number | Tran Code | |
|---|---|---|---|
| | 5 1 4 3 8 | 0 9 s | 2 2 5 2 5 . 0 0 |

46 Principal Payment
50 Interest Payment
58 Late Charge
92 Principal Payment (End)
09 Regular Payment
Memo

⑆ 5 3 0 1 0 0 0 0 ⑈

---

*Check 4462 was divided between The Parkside Note ($22,525.00) and The Eighth Generations Note
($55,830.18). *See* Eighth Generations Note Aff.; Payment 6.

Parkside Note Payment 22



EXHIBIT
**H-23**

WARNING: THIS DOCUMENT HAS SECURITY FEATURES IN THE PAPER

**CP BUSINESS MANAGEMENT - APARTMENTS**
PO BOX 9379
FARGO, ND 58106
701-237-3369

STARION FINANCIAL
2754 BRANT DR SOUTH
FARGO, ND 58106

4506

11/01/23

$78,355.18**

TO THE
ORDER OF

**** SEVENTY EIGHT THOUSAND THREE HUNDRED FIFTY FIVE AND 18/100 DOLLARS

RED RIVER STATE BANK
300 2ND AVE W
HALSTAD, MN 56548

MEMO: Loan Payment

⑂"⌐                              2 2 5 8 ⌐

---

**LOAN DEPARTMENT CREDIT**
MCM 5002 (R 4/10)

DATE 11-7-23   APPROVED BY ⌐ 1∪

CUSTOMER NAME

Parkside Place LLC

| Customer Number | Loan Number | Tran Code |
|---|---|---|
| | 5 1 4 8 3 | 0 9 s    2 2 5 2 5.0 0 |

46  Principal Payment
50  Interest Payment
58  Late Charge
92  Principal Payment (End)
⑨  Regular Payment
Memo

⑆530 ⑆0000 ⑆⑆

---

\* Check 4506 was divided between The Parkside Note ($22,525.00) and The Eighth Generations Note ($55,830.18). *See* Eighth Generations Note Aff.; Payment 7.

Parkside Note Payment 23



EXHIBIT
**H-24**

FOR SECURITY PURPOSES, THE FACE OF THIS DOCUMENT CONTAINS A COLORED BACKGROUND AND MICROPRINTING IN THE BORDER

Craig Development, LLC
PO Box 426
Fargo, ND 58107

First Community Credit Union
4521 19th Avenue South
Fargo, ND 58103

**12690**

77-7869/2913

\*\*\*\* TWENTY TWO THOUSAND FIVE HUNDRED TWENTY FIVE AND 00/100 DOLLARS

12/19/23        $22,525.00\*\*

TO THE
ORDER OF

RED RIVER STATE BANK
BOX 25
HALSTAD, MN    56548

Business Account

Authorized Signature

SECURITY FEATURES INCLUDED. DETAILS ON BACK.

⑈171⑈0⑈

⑈17110⑈

---

**LOAN DEPARTMENT CREDIT**
MCM 5002 (R 4/10)

Date 12·22·23    Approved by LAm

CUSTOMER NAME

Parkside Place LLC

| Customer Number | Loan Number | Tran Code |
|---|---|---|
| | 51438 | 09 |

46  Principal Payment

50  Interest Payment

58  Late Charge

92  Principal Payment (End)

09  Regular Payment

$  22525.00

⑈530⑈0000⑈

Parkside Note Payment 24



EXHIBIT
H-25

Craig Development, LLC
PO Box 426
Fargo, ND 58107

First Community Credit Union
4521 19th Avenue South
Fargo, ND 58103

12762

77-7869/2913

**** TWENTY TWO THOUSAND FIVE HUNDRED TWENTY FIVE AND 00/100 DOLLARS

TO THE
ORDER OF

01/05/24          $22,525.00**

RED RIVER STATE BANK
BOX 25
HALSTAD, MN   56548

Business Account

Authorized Signature

⑈          ⑈17⑈10⑈

---

**LOAN DEPARTMENT CREDIT**
MCM 5002 (R 4/10)

Date 1-15-24   Approved by LAm PA

CUSTOMER NAME

Parkside Place LLC

46  Principal Payment

50  Interest Payment

58  Late Charge

92  Principal Payment (End)

09  Regular Payment

Customer Number          Loan Number          Tran Code

51438          09  $          22525.00

⑈53010000⑈

Parkside Note Payment 25



**EXHIBIT**

**H-26**

CHECKING WITHDRAWAL

**RED RIVER STATE BANK**
PRS 4007 (R 11/15)

↑ TC ↑                    ↑ ACCOUNT NUMBER ↑

6436

DATE
2/7/24

SIGNATURE
X *Right of Offset*

PREPARED BY
CBA

NAME   *Parkside Place*                    $        1488.58

ADDRESS                                   ↑ AMOUNT CHARGED ↑

CITY, STATE, ZIP

⑊5000 2 2000⑊

---

**LOAN DEPARTMENT CREDIT**
MCM 5002 (R 4/10)

Date 2/7/24   Approved by CBA

CUSTOMER NAME
*Parkside Place*

Customer Number      Loan Number      Tran Code

51438      92   $      1488.58

⑊530 10000 1⑊

|   |   |   |
|---|---|---|
| 46 | Principal Payment | |
| 50 | Interest Payment | |
| 58 | Late Charge | |
| 92 | Principal Payment (End) | |
| 09 | Regular Payment | |

Parkside Note Payment 26

**EXHIBIT**

**H-27**

**File Information**

| | |
|---|---|
| Transaction Date | 12/30/2024 4:23:51 PM |
| File Date | Monday December 30, 2024 03:00 PM |
| Immediate Destination | 091205199 RED RIVER STATE BANK HA |

### Batch Information

| | | | |
|---|---|---|---|
| Service Class Code | 200 | Standard Entry Class Code | PPD |
| Settlement Date | 12/30/2024 | Originator Status Code | 1 |
| Effective Entry Date | 241230 | Company Entry Description | Parkside |
| Originating DFI Identification | 09140017 | | |
| Company Name | HME COMPANIES LL | Originator Identification | 9832282354 |
| Company Discretionary Data | | Company Descriptive Date | |
| Entry/Addenda Count | 1 | Batch Number | 19 |
| Credit Total | $123,861.56 | Debit Total | $0.00 |

### Entries

| | | | |
|---|---|---|---|
| Amount | $123,861.56 | Prenotification | |
| Receiving DFI Identification | 09120519 | Account Type | Checking |
| DFI Account Number | 4665 | Identification Number | 6427575 |
| Receiving Entity Name | Parkside Place, LLC | | |
| Discretionary Data | | | |
| Transaction Code | 22 | Trace Number | 91400179354135 |
| Return Code | | Return | |
| Standard Entry Class Code | PPD | | |
| Settlement Date | 12/30/2024 | | |

### Preview History

Last Viewed By DaniHarl32 Date First Viewed 12/31/2024 11:10:38 AM
Last Viewed By DaniHarl32 Date Last Viewed 12/31/2024 11:10:41 AM

Parkside Note Payment 27



CHECKING WITHDRAWAL

RED RIVER STATE BANK

4665

DATE 12/30/24

5 Full pymt : Feb 24, Mar 24, April 24, May 24, June 24
x1 Partial pymt : July 2024

PREPARED BY

Parkside Place LLC

$ 123 861.56

NAME
ADDRESS
CITY, STATE, ZIP

↑ ACCOUNT NUMBER ↑
↑ TO ↑
SIGNATURE
↑ AMOUNT CHARGED ↑

⑆5000 2 2000⑆

---

**LOAN DEPARTMENT CREDIT**
MCM 5002 (R 4/10)

DATE 12/30/24   APPROVED BY CBd

CUSTOMER NAME

Parkside Place LLC

| | |
|---|---|
| 46 | Principal Payment |
| 50 | Interest Payment |
| 58 | Late Charge |
| 92 | Principal Payment (End) |
| 09 | Regular Payment |

Memo Feb 2024

Customer Number      Loan Number      Tran Code

51 438      09  $  22 525.00

⑆530 10000 1⑆

---

**LOAN DEPARTMENT CREDIT**
MCM 5002 (R 4/10)

DATE 12/30/24   APPROVED BY   CBd

CUSTOMER NAME

Parkside Place LLC

| | |
|---|---|
| 46 | Principal Payment |
| 50 | Interest Payment |
| 58 | Late Charge |
| 92 | Principal Payment (End) |
| 09 | Regular Payment |

Memo March 2024

Customer Number      Loan Number      Tran Code

51 438      09  $  22525.00

⑆530 10000 1⑆

Parkside Note Payment 27

**LOAN DEPARTMENT CREDIT**
MCM 5002 (R 4/10)

DATE 12/30/24  APPROVED BY  CBA

CUSTOMER NAME

Parkside Place LLC

| Customer Number | Loan Number | Tran Code | |
|---|---|---|---|
| | 51438 | 09 $ | 22 525.00 |

46 Principal Payment
50 Interest Payment
58 Late Charge
92 Principal Payment (End)
09 Regular Payment
Memo April 2024

1:530 10000 1:

---

**LOAN DEPARTMENT CREDIT**
MCM 5002 (R 4/10)

DATE 12/30/24  APPROVED BY  CBA

CUSTOMER NAME

Parkside Place LLC

| Customer Number | Loan Number | Tran Code | |
|---|---|---|---|
| | 51438 | 09 $ | 2252500 |

46 Principal Payment
50 Interest Payment
58 Late Charge
92 Principal Payment (End)
09 Regular Payment
Memo May 2024

1:530 10000 1:

---

**LOAN DEPARTMENT CREDIT**
MCM 5002 (R 4/10)

DATE 12/30/24 APPROVED BY  CBA

CUSTOMER NAME

Parkside Place LLC

| Customer Number | Loan Number | Tran Code | |
|---|---|---|---|
| | 51438 | 09 $ | 22 525.00 |

46 Principal Payment
50 Interest Payment
58 Late Charge
92 Principal Payment (End)
09 Regular Payment
Memo June 2024

1:530 10000 1:

Parkside Note Payment 27

**LOAN DEPARTMENT CREDIT**
MCM 6002 (R 4/10)

DATE 12/30/24 APPROVED BY    CrBd

CUSTOMER NAME

Parkside Place LLC

| Customer Number | Loan Number | Tran Code |
|---|---|---|
| | 5 1 4 3 8 | 09   $   1 1 23 656 |

46  Principal Payment

50  Interest Payment

58  Late Charge

92  Principal Payment (End)

09  Regular Payment

Memo  July 2024 - Partial

⑆530 10000 ⑆

* A wire transfer of $123,861.56 from HME Companies was received by RRSB on 12/30/24, which was applied as five payments of $22,525.00 for the overdue February – June 2024 payments and one partial payment for the July 2024 payment ($11,236.56).

Parkside Note Payment 27

## ACH Cash Concentration

EXHIBIT

**H-28**

Transaction Date  1/2/2025 12:22:05 PM
Effective Date   1/2/2025
Account Number   1534
Origination Type: CCD - Cash Concentration

Prenotification Transaction
Transaction Date   1/2/2025 6:22:05 PM Entry Description ACH PYMT
Origination Company RRSB         Federal Tax ID   410497345

Credit ABA Number   091205199 Credit Account Type Checking
Credit Account Number   4665   Credit Account ID   51438
Credit Account Name   PARKSIDE PLACE LLC
Credit Addenda Info
Amount         $15,767.50

| Debit Amount | Prenotification | Account Name | ABA Number | Account Number | Account ID | Account Type | Addenda Info | Trace Number |
|---|---|---|---|---|---|---|---|---|
| $15,767.50 | | HME COMPANIES LLC | 091400172 | 1722 | | Checking | | |

Origination Description HME COMPANIES TO RRSB-PARKSIDE
Created By         HeidRoy93
Verified By         N/A
Created Date and Time 1/2/2025 12:22:05 PM
Verified Date and Time N/A

Parkside Note Payment 28



Parkside Note Payment 28

EXHIBIT
**H-29**

**DEBIT**
MCM 5001 (R 7/10)

**GENERAL LEDGER**

ACCOUNT NAME   UBB

DATE  2/4/2025
Zenith City Business Systems, Inc. 4/93

APPROVED BY

DESCRIPTION / REMARKS

Parkside #51438

AMOUNT

Account Number          Tran Code

7020                    $          49341.92

⑆59000000 2⑈

---

**LOAN DEPARTMENT CREDIT**
MCM 5002 (R 4/10)

DATE 2/4/25   APPROVED BY

CUSTOMER NAME

Parkside Place LLC

| | | |
|---|---|---|
| 46 | Principal Payment | 12,417.32 |
| 50 | Interest Payment | 36,924.60 |
| 58 | Late Charge | |
| 92 | Principal Payment (End) | |
| 09 | Regular Payment | |

Memo  Wire Pmt - BK CC order.

Customer Number     Loan Number     Tran Code

51 438        09  $      49341.92

⑆530 L0000 L⑈

Parkside Note Payment 29



**EXHIBIT**

**H-30**

THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND ON WHITE PAPER

**PARKSIDE PLACE, LLC**
DEBTOR IN POSESSION - CASE #25-30003
PO BOX 9379
FARGO, ND 58106

STARION FINANCIAL
2754 Brandt Dr S
FARGO, ND 58104

20012

02/12/25

$14,500.00**

TO THE
ORDER OF    **** FOURTEEN THOUSAND FIVE HUNDRED AND 00/100 DOLLARS

RED RIVER STATE BANK
Attn Danielle Harless
300 2ND AVE W
HALSTAD, MN    56548

THE BACK OF THIS DOCUMENT CONTAINS CHECK SECURITY WATERMARK AND COIN REACTIVE INK

⑈    8688⑈

**LOAN DEPARTMENT CREDIT**
MCM 5002 (R 4/10)

DATE 2/14/2025 APPROVED BY  Ⓥ CRAl

CUSTOMER NAME

Parkside Place LLC

| | |
|---|---|
| 46 | Principal Payment | 9,940.29 |
| 50 | Interest Payment | 4,559.71 |
| 58 | Late Charge | |
| 92 | Principal Payment (End) | |
| 09 | Regular Payment | |
| | Memo | |

Customer Number          Loan Number          Tran Code

51438          09  $          14500.00

⑈530100001⑈

Parkside Note Payment 30



EXHIBIT
H-31

THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND ON WHITE PAPER

**PARKSIDE PLACE, LLC**
DEBTOR IN POSESSION - CASE #25-30003
PO BOX 9379
FARGO, ND 58106

STARION FINANCIAL
2754 Brandt Dr S
FARGO, ND 58104

20027

03/05/25                    $14,500.00**

TO THE
ORDER OF     **** FOURTEEN THOUSAND FIVE HUNDRED AND 00/100 DOLLARS

RED RIVER STATE BANK
Attn Danielle Harless
300 2ND AVE W
HALSTAD, MN    56548

MEMO: Loan Payment

THE BACK OF THIS DOCUMENT CONTAINS CHECK SECURITY WATERMARK AND COIN REACTIVE INK

⑈⑈            8688⑈⑈

**LOAN DEPARTMENT CREDIT**
MCM 5002 (R 4/10)

DATE 3/7/2025  APPROVED BY  ⓄCPaL

CUSTOMER NAME

Porksize Place LLC

46  Principal Payment      4948.35
50  Interest Payment       9551.66
58  Late Charge
92  Principal Payment (End)
09  Regular Payment
Memo

| Customer Number | Loan Number | Tran Code | |
|---|---|---|---|
| | 51438 | 09 $ | 14500.00 |

⑈530 10000 ⑈

Parkside Note Payment 31

EXHIBIT
**H-32**

THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND ON WHITE PAPER

**PARKSIDE PLACE, LLC**
DEBTOR IN POSESSION - CASE #25-30003
PO BOX 9379
FARGO, ND 58106

STARION FINANCIAL
2754 Brandt Dr S
FARGO, ND 58104

20048

04/10/25

$14,500.00**

TO THE
ORDER OF     **** FOURTEEN THOUSAND FIVE HUNDRED AND 00/100 DOLLARS

RED RIVER STATE BANK
Attn Danielle Harless
300 2ND AVE W
HALSTAD, MN    56548

MEMO: Loan Payment

THE BACK OF THIS DOCUMENT CONTAINS CHECK SECURITY WATERMARK AND COIN REACTIVE INK

⑆ 8688⑆

**LOAN DEPARTMENT CREDIT**
MCM 5002 (R 4/10)

| | | |
|---|---|---|
| 46 | Principal Payment | |
| 50 | Interest Payment | 14,500— |
| 58 | Late Charge | |
| 92 | Principal Payment (End) | |
| 09 | Regular Payment | |
| | Memo | |

DATE 4/14/25   APPROVED BY CBA

CUSTOMER NAME

Parkside Place LLC

| Customer Number | Loan Number | Tran Code | |
|---|---|---|---|
| | 51438 | 09 $ | 14500.00 |

⑆530 10000 1⑆

Parkside Note Payment 32



THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND ON WHITE PAPER

**PARKSIDE PLACE, LLC**
DEBTOR IN POSESSION - CASE #25-30003
PO BOX 9379
FARGO, ND 58106

STARION FINANCIAL
2754 Brandt Dr S
FARGO, ND 58104

20067

05/12/25

$14,500.00**

TO THE
ORDER OF      **** FOURTEEN THOUSAND FIVE HUNDRED AND 00/100 DOLLARS

RED RIVER STATE BANK
Attn Danielle Harless
300 2ND AVE W
HALSTAD, MN   56548

MEMO: Loan Payment

THE BACK OF THIS DOCUMENT CONTAINS CHECK SECURITY WATERMARK AND COIN REACTIVE INK

‖⁣‖                                    ⅃⅃⅃‖⁣‖

**LOAN DEPARTMENT CREDIT**
MCM 5002 (R 4/10)

DATE 5/19/25  APPROVED BY CBA  ⊗

CUSTOMER NAME

Parkside Place LLC

| | | |
|---|---|---|
| 46 | Principal Payment | |
| 50 | Interest Payment | 14500 — |
| 58 | Late Charge | |
| 92 | Principal Payment (End) | |
| 09 | Regular Payment | |
| | Memo | |

Customer Number        Loan Number        Tran Code

51438        09  $        14500.00

⑆530⑈0000⑆

Parkside Note Payment 33

EXHIBIT

H-34

THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND ON WHITE PAPER

**PARKSIDE PLACE, LLC**
DEBTOR IN POSESSION - CASE #25-30003
PO BOX 9379
FARGO, ND 58106

STARION FINANCIAL
2754 Brandt Dr S
FARGO, ND 58104

20087

06/11/25        $14,500.00**

TO THE
ORDER OF        **** FOURTEEN THOUSAND FIVE HUNDRED AND 00/100 DOLLARS

RED RIVER STATE BANK
Attn Danielle Harless
300 2ND AVE W
HALSTAD, MN   56548

MEMO: Loan Payment

THE BACK OF THIS DOCUMENT CONTAINS CHECK SECURITY WATERMARK AND COIN REACTIVE INK

⑈"        8688⑈"

**LOAN DEPARTMENT CREDIT**
MCM 5002 (R 4/10)

DATE 6/13/25 APPROVED BY

CUSTOMER NAME

Parkside Place LLC

| | | |
|---|---|---|
| 46 | Principal Payment | |
| 50 | Interest Payment | 14500 — |
| 58 | Late Charge | |
| 92 | Principal Payment (End) | |
| 09 | Regular Payment | |
| Memo | | |

Customer Number        Loan Number        Tran Code

51 438        09  $        1450 0.00

⑈:530 10000 ⑈:

Parkside Note Payment 34

EXHIBIT
**H-35**

THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND ON WHITE PAPER

**PARKSIDE PLACE, LLC**
DEBTOR IN POSESSION - CASE #25-30003
PO BOX 9379
FARGO, ND 58106

STARION FINANCIAL
2754 Brandt Dr S
FARGO, ND 58104

20103

07/10/25                    $14,500.00**

TO THE
ORDER OF        **** FOURTEEN THOUSAND FIVE HUNDRED AND 00/100 DOLLARS

RED RIVER STATE BANK
Attn Danielle Harless
300 2ND AVE W
HALSTAD, MN    56548

MEMO: Loan Payment

THE BACK OF THIS DOCUMENT CONTAINS CHECK SECURITY WATERMARK AND COIN REACTIVE INK

8688

**LOAN DEPARTMENT CREDIT**
MCM 5002 (R 4/10)

DATE 7/14/25   APPROVED BY CPaul

CUSTOMER NAME

Parkside Place LLC

| | | |
|---|---|---|
| 46 | Principal Payment | |
| 50 | Interest Payment | 14,500 |
| 58 | Late Charge | |
| 92 | Principal Payment (End) | |
| 09 | Regular Payment | |
| Memo | | |

Customer Number          Loan Number          Tran Code

51438          09  s          1450000

⑈530⑊0000⑊⑈

Parkside Note Payment 35

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In Re: | Bankruptcy No.: 25-30002 |
| Generations on 1st, LLC, | Chapter 11 |
| Debtor, Jointly Administered. | |
| Parkside Place, LLC, | Bankruptcy No.: 25-30003 |
| Debtor, Jointly Administered. | Chapter 11 |

## AFFIDAVIT OF CHARLES AARESTAD

### RE: THE MULINDA NOTES

| | |
|---|---|
| STATE OF MINNESOTA | ) |
| | ) SS |
| COUNTY OF NORMAN | ) |

I, Charles Aarestad, hereby state and declare as follows:

1.    I am a Senior Vice President at Red River State Bank ("RRSB" or "Creditor"). I have held my current position since 2011.

2.    I hold a bachelor's degree in Agricultural Economics from North Dakota State University. I have also attended the Graduate School of Banking at the University of Wisconsin-Madison.

3.    I am personally familiar with the loan history between RRSB and Mulinda Craig ("Mulinda"), Generations on 1st, LLC ("Generations") , and Parkside Place, LLC ("Parkside") (Parkside and Generations, collectively, are hereinafter the "Debtors").

EXHIBIT 17
WIT: J.Craig
DATE: 9-23-25
Deanna L. Sager

4.      I have personally reviewed bank statements, transaction receipts, deposits, and
checks associated with several accounts, including without limitation:

a. a checking account ending in -4657 at RRSB also known as the Assignment of
   Rents Holding Account (the "Generations AOR Account");

b. a checking account ending in -6436 at RRSB owned by Parkside (the "RRSB
   Parkside Account");

c. a checking account ending in -4665 at RRSB, also known as the Assignment of
   Rents Holding Account (the "Parkside AOR Account");

d. a checking account ending in -1711 at First Community Credit Union ("FCCU")
   owned by Craig Development, LLC (the "FCCU Craig Development Account");

e. a checking account ending in -4695 at FCCU owned by Craig Properties LLC (the
   "FCCU Craig Properties Account");

f. a checking account ending in -2258 at Starion Bank owned by non-debtor affiliate
   CP Business Management Inc. – Apartments (the "CP Business Account");

g. a checking account ending in -8829 at Starion Bank owned by Craig Development
   LLC (the "Starion Craig Development Account").

h. a debtor-in-possession checking account ending in -8666 held by the estate at
   Starion Bank (the "Generations DIP Account"); and

i. a debtor-in-possession checking account ending in -8688 at Starion Bank (the
   "Parkside DIP Account").

With the exception of the accounts for which RRSB is the depository institution, all of the
aforementioned documents were obtained through subpoenas issued in the Debtor's
bankruptcy case.

2

## History of the Three Mulinda Notes

5.     RRSB previously filed Proof of Claim No. 1 in the Generation's bankruptcy case (the "RRSB Generations POC") and Proof of Claim No. 1 in the Parkside bankruptcy case (the "RRSB Parkside POC", and together with the RRSB Generations POC, the "RRSB POCs.") The RRSB POCs explain the business relationship between RRSB and Mulinda. This Affidavit pertains to the three loans referred to in the RRSB POCs as the First Mulinda Note, the Second Mulinda Note, and the Third Mulinda Note (collectively, the "Mulinda Notes").

6.     Proceeds of the Mulinda Notes were used for the construction of two apartment buildings in Watertown, South Dakota known as "Generations on 1st" (the "GO1 Real Property") and "Parkside Place" (the "Parkside Real Property").

## The First Mulinda Note

7.     Mulinda made in favor of, executed, and delivered to RRSB a Promissory Note dated April 26, 2021, pursuant to which Loan No. 41206 was issued in the original principal amount of $1,477,500.00 (the "First Mulinda Note"). A true and correct copy of the First Mulinda Note is attached as **Exhibit 1-A** and incorporated by reference.

8.     The stated maturity date of the First Mulinda Note was December 15, 2022.

9.     Interest accrued on the unpaid principal balance at a rate of 4.350% per annum. After the parties executed the Forbearance Agreement dated February 17, 2023 (the "Forbearance Agreement"), the rate increased to 6.500% per annum. Payments came due under the First Mulinda Note as follows:

  a.     One (1) payment of principal and interest in the sum of $775,426.43 due on December 15, 2021; and

  b.     One (1) final payment of principal and interest in the sum of $775,426.43 due on December 15, 2022.

3

### A.   Disbursement of Loan Proceeds for the First Mulinda Note

10.    Loan proceeds for the First Mulinda Note were authorized for disbursement

pursuant to a Loan Disbursement Request and Authorization executed by Mulinda (the "First

Mulinda DRA"). A true and correct copy of the First Mulinda DRA is attached as **Exhibit 1-**

**B** and incorporated by reference, and a relevant excerpt is reproduced below for reference.

SPECIFIC PURPOSE. The specific purpose of this loan is:  REAL ESTATE DEVELOPMENT LOAN.

DISBURSEMENT INSTRUCTIONS. Borrower understands that no loan proceeds will be disbursed until all of Lender's conditions for making the loan have been satisfied.  Please disburse the loan proceeds of $1,477,500.00 as follows:

| | |
|---|---|
| Amount paid on Borrower's account:<br>$230,254.14 Payment on Loan # 41099 | $230,254.14 |
| Other Disbursements:<br>$50,000.00 CASHIER'S CHECK TO CRAIG DEVELOPMENT<br>$86,562.46 CASHIER'S CHECK TO CRAIG DEVELOPMENT<br>$226,447.36 CASHIER'S CHECK TO CRAIG DEVELOPMENT<br>$226,447.35 CASHIER'S CHECK TO CRAIG DEVELOPMENT<br>$76,840.36 CASHIER'S CHECK TO CRAIG DEVELOPMENT<br>$100,000.00 CASHIER'S CHECK TO CRAIG DEVELOPMENT<br>$240,453.93 CASHIER'S CHECK TO CRAIG DEVELOPMENT<br>$240,453.94 CASHIER'S CHECK TO CRAIG DEVELOPMENT | $1,247,205.40 |
| Total Financed Prepaid Finance Charges:<br>$40.46  Loan Packaging Fee | $40.46 |
| Note Principal: | $1,477,600.00 |

11.    The First Mulinda Note proceeds were disbursed on April 26, 2021 in the

aggregate principal amount of $1,477,500. First, $230,534.14 was used to refinance Loan No.

41099, an existing construction loan. True and correct copies of RRSB's credit slips dated

April 27, 2021 for $229,080.19 and $1,173.95 are attached as **Exhibit 1-C**. The remaining

loan proceeds were disbursed to Craig Development via eight Cashier's Checks totaling

$1,247,205.40:

| Check No. | Check Amount | Corresponding Project and Draw No. |
|---|---|---|
| 201011 | $50,000.00 | Parkside Place Draw #8 |
| 201012 | $86,562.46 | Parkside Place Draw #9 |
| 201013 | $226,447.36 | Parkside Place Draw #9 |
| 201014 | $226,447.35 | Parkside Place Draw #9 |
| 201015 | $76,840.36 | Generations on 1st Draw #6 |
| 201016 | $100,000.00 | Generations on 1st Draw #7 |
| 201017 | $240,453.93 | Generations on 1st Draw #7 |
| 201018 | $240,453.94 | Generations on 1st Draw #7 |
| **TOTAL:** | **$1,247,205.40** | |

4

True and correct copies of the aforementioned Cashier's Checks and two (2) FCCU Craig
Development Account Transaction Receipts dated April 26, 2021, confirming receipt and
deposit of the First Mulinda Note loan proceeds are attached as **Exhibit 1-D**.

**B.    Payment History for the First Mulinda Note**

12.    To date, only two payments have been made on the First Mulinda Note.

13.    On December 13, 2021, a payment of $561,822.51 was applied to principal in
connection with refinancing of the Parkside Note. *See* Affidavit of Charles Aarestad re: The
Parkside Note; ¶ 9-10. True and correct copies of the Parkside DRA and a RRSB credit slip
dated December 13, 2021 for $561,822.51 are attached as **Exhibit 1-E.**

14.    On April 17, 2023, a payment of $22,053.82 was applied to principal in
connection with refinancing of the Eighth Generations Note. *See* Affidavit of Charles Aarestad
re: Eighth Generations Note; ¶ 13. True  and correct copies of the Eighth Generations DRA
and a Credit Ticket dated April 17, 2023 for $22,053.82 are attached hereto as **Exhibit 1-F**.

15.    No further payments have been made by the Debtors or Mulinda towards the
outstanding balance of the First Mulinda Note.

### The Second Mulinda Note

16.    Mulinda made in favor of, executed, and delivered to RRSB a Promissory Note
dated May 27, 2021, pursuant to which Loan No. 41240 was issued in the original principal
amount of $1,321,100.00 (the "Second Mulinda Note"). A true and correct copy of the Second
Mulinda Note is attached as **Exhibit 2-A** and incorporated by reference.

17.    The original maturity date of the First Mulinda Note was December 15, 2022.

18.     Interest accrued on the unpaid principal balance at a rate of 4.350% per annum.

After the parties executed the Forbearance Agreement, the rate increased to 6.500% per

annum. Payments came due under the Second Mulinda Note as follows:

      c.      One (1) payment of principal and interest in the sum of $690,851.70 due
            on December 15, 2021; and

      d.      One (1) final payment of principal and interest in the sum of $690,851.70
            due on December 15, 2022.

**C.      Disbursement of Loan Proceeds for the Second Mulinda Note**

19.     Proceeds of the Second Mulinda Note were authorized for disbursement

pursuant to a Loan Disbursement Request and Authorization contemporaneously executed by

Mulinda (the "Second Mulinda DRA"). A true and correct copy of the Second Mulinda DRA

is attached hereto as **Exhibit 2-B** and incorporated by reference, and a relevant excerpt is

reproduced below:

SPECIFIC PURPOSE. The specific purpose of this loan is: REAL ESTATE DEVELOPMENT LOAN.
DISBURSEMENT INSTRUCTIONS. Borrower understands that no loan proceeds will be disbursed until all of Lender's conditions for making the
loan have been satisfied. Please disburse the loan proceeds of $1,321,100.00 as follows:

| | |
|---|---:|
| **Amount paid to Borrower directly:** | $31,508.57 |
| $31,508.57 Deposited to  Account #  CASHIERS CHECK TO CRAIG DEVELOPMENT | |
| **Other Disbursements:** | $1,289,452.18 |
| $111,726.38 CASHIERS CHECK TO CRAIG DEVELOPMENT | |
| $294,876.42 CASHIERS CHECK TO CRAIG DEVELOPMENT | |
| $294,875.41 CASHIERS CHECK TO CRAIG DEVELOPMENT | |
| $293,987.49 CASHIERS CHECK TO CRAIG DEVELOPMENT | |
| $293,987.48 CASHIERS CHECK TO CRAIG DEVELOPMENT | |
| **Total Financed Prepaid Finance Charges:** | $139.25 |
| $139.25  Loan Packaging Fee | |
| **Note Principal:** | $1,321,100.00 |

20.     The Second Mulinda Note proceeds were disbursed to Craig Development, LLC

via Cashier's Checks on May 27, 2021 as follows:

| Check No. | Check Amount | Corresponding Project and Draw No. |
|---|---|---|
| 201052 | $31,508.57 | Parkside Place Draw #10 |
| 201049 | $111,726.38 | Generations on 1st Draw #8 |
| 201050 | $294,875.42 | Generations on 1st Draw #8 |

| 201051 | $294,875.41 | Generations on 1st Draw #8 |
|---|---|---|
| 201053 | $293,987.49 | Parkside Place Draw #10 |
| 201054 | $293,987.48 | Parkside Place Draw #10 |
| n/a | $139.25 | Loan Packaging Fee |
| **TOTAL:** | **$1,321,100.00** | |

True and correct copies of the aforementioned Cashier's Checks and Loan Packaging Fee

General Ledger ticket and a Starion Craig Development Account Statement dated May 28,

2021, confirming receipt and deposit of the Second Mulinda Note loan proceeds, are attached

hereto as **Exhibit 2-C** and incorporated by reference.

      **D.**    **Payment History for the Second Mulinda Note**

      21.    To date, no payments have been made by Debtors or Mulinda towards the

outstanding balance of the Second Mulinda Note.

<p align="center"><strong>The Third Mulinda Note</strong></p>

      22.    Mulinda made in favor of, executed, and delivered to RRSB a Promissory Note

dated June 22, 2021, pursuant to which Loan No. 41258 was issued in the original principal

amount of $1,652,500.00 (the "Third Mulinda Note"). A true and correct copy of the Third

Mulinda Note is attached as **Exhibit 3-A** and incorporated by reference.

      23.    The original maturity date of the Third Mulinda Note was December 15, 2024.

      24.    Interest accrues on the unpaid principal balance at a rate of 4.350% per annum.

After the Forbearance Agreement, the rate increased to 6.500% per annum. The Third Mulinda

Note was payable in annual installments of principal and interest equal to $449,112.37

beginning on December 15, 2021, and continuing through December 15, 2024.

<p align="center"><strong>Disbursement of Loan Proceeds for the Third Mulinda Note</strong></p>

      25.    Proceeds of the Third Mulinda Note were authorized for disbursement pursuant

to a Loan Disbursement Request and Authorization contemporaneously executed by Mulinda

<p align="center">7</p>

(the "Third Mulinda DRA"). A true and correct copy of the Third Mulinda DRA is attached

hereto as **Exhibit 3-B** and incorporated by reference, and a relevant excerpt is reproduced

below:

```
SPECIFIC PURPOSE.  The specific purpose of this loan is:  REAL ESTATE DEVELOPMENT LOAN.
DISBURSEMENT INSTRUCTIONS.  Borrower understands that no loan proceeds will be disbursed until all of Lender's conditions for making the
loan have been satisfied.  Please disburse the loan proceeds of $1,652,500.00 as follows:

Amount paid to Borrower directly:                                            $246,257.01
    $246,257.01 Deposited to  Account # CASHIERS CHECK TO
    CRAIG DEVELOPMENT
Amount paid to others on Borrower's behalf:                                  $246,412.62
    $246,257.01 to CASHIERS CHECK TO CRAIG DEVELOPMENT
    $155.61 to RED RIVER STATE BANK LOAN PACKAGING
Other Disbursements:                                                        $1,159,830.37
    $218,658.18 CASHIERS CHECK TO CRAIG DEVELOPMENT
    $218,658.17 CASHIERS CHECK TO CRAIG DEVELOPMENT
    $230,000.00 CASHIERS CHECK TO CRAIG DEVELOPMENT
    $246,257.01 CASHIERS CHECK TO CRAIG DEVELOPMENT
    $246,257.01 CASHIERS CHECK TO CRAIG DEVELOPMENT
                                                                           _____
Note Principal:                                                            $1,652,500.00
```

26.    The Third Mulinda Note proceeds were disbursed to Craig Development, LLC

on June 22, 2021 in the aggregate amount of $1,652,500 by six Cashier's Checks:

| Check No. | Check Amount | Corresponding Project and Draw No. |
|-----------|--------------|------------------------------------|
| 201075 | $246,257.01 | Generations on 1st Draw #9 |
| 201076 | $246,257.01 | Generations on 1st Draw #9 |
| 201072 | $218,658.18 | Parkside Place Draw #11 |
| 201073 | $218,658.17 | Parkside Place Draw #11 |
| 201074 | $230,000.00 | Generations on 1st Draw #9 |
| 201077 | $246,257.01 | Generations on 1st Draw #9 |
| 201078 | $246,257.01 | Generations on 1st Draw #9 |
| n/a | $155.61 | Loan Packaging Fee |
| **TOTAL:** | **$1,652,500.00** | |

True and correct copies of the aforementioned Cashier's Checks and two FCCU Craig

Development Account Transaction Receipts dated June 22, 2021, confirming receipt and

deposit of the Third Mulinda Note loan proceeds, are attached hereto as **Exhibit 3-C**.

**E.    Payment History for the Third Mulinda Note**

27.    To date, no payments have been made by the Debtors or Mulinda towards the

outstanding balance of the Third Mulinda Note.

## RRSB'S POCS AND THE MULINDA NOTES

28.     Three (3) Inquiry Statements for the Mulinda Notes generated by RRSB's computer system are attached as **Exhibit 4** and incorporated by reference. The Inquiry Statements set forth loan advances, late fees, and payments, if any. They do not include a running balance.

29.     For the convenience of the parties and the Court, printouts of three (3) Excel spreadsheets setting forth the accrual of interest and late fees pursuant to the Mulinda Notes and the application of all payments received by RRSB for the Mulinda Notes are attached as **Exhibit 5** and incorporated by reference.

30.     The following tables confirms the outstanding balance of the Mulinda Notes as of the Petition Date:

| | |
|---|---|
| First Mulinda Note: | $1,119,755.71 |
| Second Mulinda Note: | $1,610,444.59 |
| Third Mulinda Note: | $2,001,781.08 |

*See* RRSB Generations POC, p. 9; RRSB Parkside POC, p. 6.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this __17__ day of September, 2025.

Charles Aarestad

Subscribed and sworn to before me this __17__ day of September, 2025.

Notary Public

LORI ANN MOEN
NOTARY PUBLIC - MINNESOTA
My Comm. Exp. Jan. 31, 2029

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $1,477,500.00 | 04-26-2021 | 12-15-2022 | 41206 | JR | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** MULINDA SUE CRAIG (SSN: [redacted]
1405 1ST AVE N
FARGO, ND 58102

**Lender:** Red River State Bank
Fertile
114 N Mill St
PO Box 98
Fertile, MN 56540

EXHIBIT
1-A

**Principal Amount: $1,477,500.00** **Interest Rate: 4.350%** **Date of Note: April 26, 2021**

**PROMISE TO PAY.** MULINDA SUE CRAIG ("Borrower") promises to pay to Red River State Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Million Four Hundred Seventy-seven Thousand Five Hundred & 00/100 Dollars ($1,477,500.00), together with interest on the unpaid principal balance from April 26, 2021, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 4.350% per annum, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in 2 payments of $775,426.43 each payment. Borrower's first payment is due December 15, 2021, and all subsequent payments are due on the same day of each year after that. Borrower's final payment will be due on December 15, 2022, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Any accrued interest not paid when due is added to principal and thereafter will accrue interest as principal.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/365 basis; that is, by applying the ratio of the interest rate over the number of days in a year (365 for all years, including leap years), multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**RECEIPT OF PAYMENTS.** All payments must be made in U.S. dollars and must be received by Lender at:

Red River State Bank
Fertile
114 N Mill St
PO Box 98
Fertile, MN 56540

All payments must be received by Lender consistent with any written payment instructions provided by Lender. If a payment is made consistent with Lender's payment instructions but received after 2:00 PM CST on a business day, Lender will credit Borrower's payment on the next business day.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. **All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Red River State Bank, PO Box 25 Halstad, MN 56548.**

**LATE CHARGE.** If a payment is 11 days or more late, Borrower will be charged **5.000% of the unpaid portion of the regularly scheduled payment or $7.28, whichever is greater.**

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Note will continue to accrue interest at the interest rate under this Note.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf, or made by Guarantor, or any other guarantor, endorser, surety, or accommodation party, under this Note or the related documents in connection with the obtaining of the loan evidenced by this Note or any security document directly or indirectly securing repayment of this Note is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Execution; Attachment.** Any execution or attachment is levied against the Collateral, and such execution or attachment is not set aside, discharged or stayed within thirty (30) days after the same is levied.

**PROMISSORY NOTE**
**(Continued)**

Loan No: 41206                                                                                                       Page 2

**Change in Zoning or Public Restriction.** Any change in any zoning ordinance or regulation or any other public restriction is enacted, adopted or implemented, that limits or defines the uses which may be made of the Collateral such that the present or intended use of the Collateral, as specified in the related documents, would be in violation of such zoning ordinance or regulation or public restriction, as changed.

**Default Under Other Lien Documents.** A default occurs under any other mortgage, deed of trust or security agreement covering all or any portion of the Collateral.

**Judgment.** Unless adequately covered by insurance in the opinion of Lender, the entry of a final judgment for the payment of money involving more than ten thousand dollars ($10,000.00) against Borrower and the failure by Borrower to discharge the same, or cause it to be discharged, or bonded off to Lender's satisfaction, within thirty (30) days from the date of the order, decree or process under which or pursuant to which such judgment was entered.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor, or any other guarantor, endorser, surety, or accommodation party of any of the indebtedness or any Guarantor, or any other guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Minnesota without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Minnesota.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Polk County, State of Minnesota.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $28.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instrument listed herein:

(A) a Commercial Security Agreement dated April 26, 2021 made and executed between PARKSIDE PLACE, LLC and Lender on collateral described as As security for the payment of the indebtedness and all other indebtedness, obligations and liabilities of the Debtor to Creditor, now existing or hereafter arising, directly or indirectly, by operation of law or otherwise (collectively the "liabilities"), Debtor assigns, transfers, pledges, hypothecates and grants to Creditor, its successors and assigns, a first priority security interest (the "security interest") in all Debtor's assets, including without limitation, all equipment, inventory, supplies, accounts, general intangibles, chattel paper and instruments, goods, assets, machinery, fixtures, furnishings and all other personal property together with all other accessories, accessions, attachments and appurtenances, appertaining to attached thereto, whether now owned or hereafter acquired, and all other substitutions, renewals, replacements and improvements and all proceeds, rents, issuers, income, profits and avails, including without limitation, insurance proceeds. Further, Borrower grants Lender a purchase money security interest in specific equipment, furniture and fixtures purchased by Borrower and financed by Lender on or about the date of the loan or filing date thereafter (collectively the "collateral").

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: Red River State Bank PO Box 25 Halstad, MN 56548.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. In addition, Lender shall have all the rights and remedies provided in the related documents or available at law, in equity, or otherwise. Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower shall not affect Lender's right to declare a default and to exercise its rights and remedies. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**SECTION DISCLOSURE.** To the extent not preempted by federal law, this loan is made under Minnesota Statutes Section 47.59.

RRSB-Mulinda 02770

# PROMISSORY NOTE
## (Continued)

Loan No: 41206        Page 3

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

X _____
MULINDA SUE CRAIG

LENDER:

RED RIVER STATE BANK

X _____
MARTIN PETERSON, Loan Officer

LaserPro, Ver. 20.4.0.038 Copr. Finastra USA Corporation 1997, 2021. All Rights Reserved. - ND C:\HARLAND\CFI\LPL\D20.FC TR 5501 PR-5

RRSB-Mulinda 02771

# DISBURSEMENT REQUEST AND AUTHORIZATION

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $1,477,500.00 | 04-26-2021 | 12-15-2022 | 41206 | JR | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** MULINDA SUE CRAIG (SSN: [redacted])
1405 1ST AVE N
FARGO, ND 58102

**Lender:** Red River State Bank
Fertile
114 N Mill St
PO Box 98
Fertile, MN 56540

EXHIBIT
1-B

**LOAN TYPE.** This is a Fixed Rate (4.350%) Nondisclosable Loan to an Individual for $1,477,500.00 due on December 15, 2022.

**PRIMARY PURPOSE OF LOAN.** The primary purpose of this loan is for:

☐ Maintenance of Borrower's Primary Residence.

☐ Personal, Family or Household Purposes or Personal Investment.

☐ Agricultural Purposes.

☒ Business Purposes.

**SPECIFIC PURPOSE.** The specific purpose of this loan is: REAL ESTATE DEVELOPMENT LOAN.

**DISBURSEMENT INSTRUCTIONS.** Borrower understands that no loan proceeds will be disbursed until all of Lender's conditions for making the loan have been satisfied. Please disburse the loan proceeds of $1,477,500.00 as follows:

| | |
|---|---|
| Amount paid on Borrower's account: | $230,254.14 |
| $230,254.14 Payment on Loan # 41099 | |
| Other Disbursements: | $1,247,205.40 |
| $50,000.00 CASHIER'S CHECK TO CRAIG DEVELOPMENT | |
| $86,562.46 CASHIER'S CHECK TO CRAIG DEVELOPMENT | |
| $226,447.36 CASHIER'S CHECK TO CRAIG DEVELOPMENT | |
| $226,447.35 CASHIER'S CHECK TO CRAIG DEVELOPMENT | |
| $76,840.36 CASHIER'S CHECK TO CRAIG DEVELOPMENT | |
| $100,000.00 CASHIER'S CHECK TO CRAIG DEVELOPMENT | |
| $240,453.93 CASHIER'S CHECK TO CRAIG DEVELOPMENT | |
| $240,453.94 CASHIER'S CHECK TO CRAIG DEVELOPMENT | |
| Total Financed Prepaid Finance Charges: | $40.46 |
| $40.46 Loan Packaging Fee | |
| Note Principal: | $1,477,500.00 |

**CHARGES PAID IN CASH.** Borrower has paid or will pay in cash as agreed the following charges:

| | |
|---|---|
| Prepaid Finance Charges Paid in Cash: | $164.54 |
| $164.54 Loan Packaging Fee | |
| Total Charges Paid in Cash: | $164.54 |

**FINANCIAL CONDITION.** BY SIGNING THIS AUTHORIZATION, BORROWER REPRESENTS AND WARRANTS TO LENDER THAT THE INFORMATION PROVIDED ABOVE IS TRUE AND CORRECT AND THAT THERE HAS BEEN NO MATERIAL ADVERSE CHANGE IN BORROWER'S FINANCIAL CONDITION AS DISCLOSED IN BORROWER'S MOST RECENT FINANCIAL STATEMENT TO LENDER. THIS AUTHORIZATION IS DATED APRIL 26, 2021.

**BORROWER:**

X Mindy
MULINDA SUE CRAIG

LaserPro, Ver. 20.1.0.031 Copr. Finastra USA Corporation 1997, 2021. All Rights Reserved.

## LOAN DEPARTMENT CREDIT
MCM 5002 (R 4/10)

Date  4-27-21     Approved by  PL

CUSTOMER NAME

Mulinda Craig

| Customer Number | Loan Number | Tran Code |
|---|---|---|
| | 41099 | 46  $  229080.19 |

46  Principal Payment

50  Interest Payment

58  Late Charge

92  Principal Payment (End)

09  Regular Payment

**EXHIBIT 1-C**

ZENITH CITY BUSINESS SYSTEMS, INC.

⑆530 ⑈0000 ⑆

## LOAN DEPARTMENT CREDIT

MCM 5002 (R 4/10)

Date  4-27-21        Approved by  M

CUSTOMER NAME

mulinda craig

| Customer Number | Loan Number | Tran Code |
|---|---|---|
|  | 41099 | 50  $ |

46   Principal Payment

50   Interest Payment

58   Late Charge

92   Principal Payment (End)

09   Regular Payment

1173.95

⑊530 10000 ⑊

UNETexchange Item Summary          ECE Institution ISN: 8278543650          UNETexch

EXHIBIT

1-D





UNETexchange Item Summary      ECE Institution ISN: 8278543649      UNETexchange ISN: 210426922812414





UNETexchange Item Summary          ECE Institution ISN: 8278543648          UNETexchange ISN: 210426922812413



UNETexchange Item Summary          ECE Institution ISN: 8278543647          UNETexchange ISN: 210426922812412





11/1/2024 8:49:39 AM

UNETexchange Item Summary          ECE Institution ISN: 8278543654          UNETexchange ISN: 210426922812419





11/1/2024 8:50:00 AM

UNETexchange Item Summary                    ECE Institution ISN: 8278543653                    UNETexchange ISN: 210426922812418





11/1/2024 8:50:22 AM

UNETexchange Item Summary          ECE Institution ISN: 8278543652          UNETexchange ISN: 210426922812417



UNETexchange Item Summary          ECE Institution ISN: 8278543651          UNETexchange ISN: 210426922812416



CASHIER'S CHECK

**RED RIVER STATE BANK**
PO Box 25 • Halstad, MN • 56548 • (218) 456-2187
PO Box 98 • Fertile, MN • 56540 • (218) 945-6171

· Notice to Customer · ·
If this check is lost, destroyed, or stolen, the bank
will not accept a replacement request on the check
until 90 days after the issue date and then only with
the issuance of a "Declaration of Loss" certification.

MHP          April 26, 2021          **201018**

                                      **$240,453.94**

Purchaser:
DRAW #7 GENERATIONS

Two Hundred Forty Thousand Four Hundred Fifty Three Dollars And 94/100**************

PAY TO THE
ORDER OF          CRAIG DEVELOPMENT

                              Two Signatures Required

                              Authorized Signature

⑈2 0 1 0 1 8⑈ ⑇⑆ 5 1 9 9⑇⑆ 2 1 3 0⑈

11/1/2024 8:50:59 AM

First Community Credit Union

```
FP TRANSACTION  04-26-21  12:56:06  MEMBER  1711CR                    1 1516
                FOR CRAIG DEVELOPMENT, LLC  AS craig
DEPOSIT OF         589457.17  1711-2              SMALL BUSINESS CHECKING
  PREV BAL           368.64 NEW BAL       589825.81
  CHK#1011 CHK#1012 CHK#1013 CHK#1014 REDRIVERSTBNK CASH CHK
RECEIVED           589457.17 IN 4 CHECKS
  226447.35  226447.36  86562.46
  50000.00
```

Member Signature

FC First Community
CU Credit Union

FP TRANSACTION  04-26-21  12:59:10  MEMBER  1711CR                    1 1516
          FOR CRAIG DEVELOPMENT, LLC  AS craig
DEPOSIT OF        657748.23  1711-2          SMALL BUSINESS CHECKING
   PREV BAL       368.64 NEW BAL      658116.87
   CHK#1018 CHK#1017 CHK#1016 CHK#1015 REDRIVERSTBNK CASH CHK
RECEIVED         657748.23 IN 4 CHECKS
   240453.94   240453.93   100000.00
   76840.36

Member Signature

RRSB FCCU Subpoena 007393

# DISBURSEMENT REQUEST AND AUTHORIZATION

| Principal $4,200,000.00 | Loan Date 12-13-2021 | Maturity 12-01-2026 | Loan No 51438 | Call / Coll | Account | Officer *** | Initials |
|---|---|---|---|---|---|---|---|

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** PARKSIDE PLACE, LLC (TIN            )
1405 1ST AVE N
FARGO, ND 58102

**Lender:** Red River State Bank
Halstad
300 2nd Ave West
PO Box 25
Halstad, MN 56548-0025

```
EXHIBIT
1-E
```

**LOAN TYPE.** This is a Fixed Rate (4.150% initial rate) Nondisclosable Loan to a Limited Liability Company for $4,200,000.00 due on December 1, 2026.

**PRIMARY PURPOSE OF LOAN.** The primary purpose of this loan is for:

☐ Maintenance of Borrower's Primary Residence.

☐ Personal, Family or Household Purposes or Personal Investment.

☐ Agricultural Purposes.

☒ Business Purposes.

**SPECIFIC PURPOSE.** The specific purpose of this loan is: Refinance Apartment.

**DISBURSEMENT INSTRUCTIONS.** Borrower understands that no loan proceeds will be disbursed until all of Lender's conditions for making the loan have been satisfied. Please disburse the loan proceeds of $4,200,000.00 as follows:

Amount paid on Borrower's account:                                    $4,200,000.00
    $4,200,000.00 Payment on Loan # Construction LOC

Note Principal:                                                        $4,200,000.00

**CHARGES PAID IN CASH.** Borrower has paid or will pay in cash as agreed the following charges:

Prepaid Finance Charges Paid in Cash:                                 $14,375.00
    $4,500.00 CBRE Appraisal Dated 09/2021
    $5,675.00 Title Comittment Estimation
    $4,200.00 RRSB Documentation Fee

Total Charges Paid in Cash:                                           $14,375.00

**NOTICE OF RIGHT TO DISCONTINUE ESCROW.** If Borrower's mortgage loan involves an escrow account for taxes and homeowner's insurance, Borrower may have the right in five years to discontinue the account and pay Borrower's own taxes and homeowner's insurance. IF Borrower is eligible to discontinue the escrow account, Borrower will be notified in five years.

**FINANCIAL CONDITION.** BY SIGNING THIS AUTHORIZATION, BORROWER REPRESENTS AND WARRANTS TO LENDER THAT THE INFORMATION PROVIDED ABOVE IS TRUE AND CORRECT AND THAT THERE HAS BEEN NO MATERIAL ADVERSE CHANGE IN BORROWER'S FINANCIAL CONDITION AS DISCLOSED IN BORROWER'S MOST RECENT FINANCIAL STATEMENT TO LENDER. THIS AUTHORIZATION IS DATED DECEMBER 13, 2021.

**BORROWER:**

PARKSIDE PLACE, LLC

By: _____
    JESSE ROBERT CRAIG, Managing Member of
    PARKSIDE PLACE, LLC

LaserPro, Ver 20.4.0.038  Copr. Finastra USA Corporation 1997, 2021   All Rights Reserved   - MN  C:\HARLAND\CFI\LPL\J20.FC  TR-5307  PR-57



RRSB Loan Credit Slip memorializing payment to Loan 41206 dated December 13, 2021.

E

# DISBURSEMENT REQUEST AND AUTHORIZATION

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $8,100,000.00 | 04-17-2023 | 12-01-2026 | 51676 | JN | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

| Borrower: | GENERATIONS ON 1ST, LLC (TIN: ▮▮▮6148)<br>1405 1ST AVE N<br>FARGO, ND 58102 | Lender: | Red River State Bank<br>Halstad<br>300 2nd Ave West<br>PO Box 25<br>Halstad, MN 56548-0025 |
|---|---|---|---|

**EXHIBIT**

**1-F**

**LOAN TYPE.** This is a Fixed Rate (6.750%) Nondisclosable Loan to a Limited Liability Company for $8,100,000.00 due on December 1, 2026.

**PRIMARY PURPOSE OF LOAN.** The primary purpose of this loan is for:

☐ Maintenance of Borrower's Primary Residence.

☐ Personal, Family or Household Purposes or Personal Investment.

☐ Agricultural Purposes.

☒ Business Purposes.

**SPECIFIC PURPOSE.** The specific purpose of this loan is: Refinance Construction Loan.

**DISBURSEMENT INSTRUCTIONS.** Borrower understands that no loan proceeds will be disbursed until all of Lender's conditions for making the loan have been satisfied. Please disburse the loan proceeds of $8,100,000.00 as follows:

|  |  |
|---|---|
| Amount paid on Borrower's account:<br>  $46,418.19 Payment on Loan # 40869<br>  $142,789.38 Payment on Loan # 40881<br>  $57,880.80 Payment on Loan # 40910<br>  $1,565,200.00 Payment on Loan # 41121<br>  $2,976,430.98 Payment on Loan # 51404<br>  $1,094,025.15 Payment on Loan # 51425<br>  $424,259.84 Payment on Loan # 51437<br>  $843,168.59 Payment on Loan # 51449<br>  $653,729.65 Payment on Loan # 51471<br>  $274,043.60 Payment on Loan # 51488<br>  $22,053.82 Payment on Loan # 41206 | $8,100,000.00 |
| Note Principal: | $8,100,000.00 |

**NOTICE OF RIGHT TO DISCONTINUE ESCROW.** If Borrower's mortgage loan involves an escrow account for taxes and homeowner's insurance, Borrower may have the right in five years to discontinue the account and pay Borrower's own taxes and homeowner's insurance. IF Borrower is eligible to discontinue the escrow account, Borrower will be notified in five years.

**FINANCIAL CONDITION.** BY SIGNING THIS AUTHORIZATION, BORROWER REPRESENTS AND WARRANTS TO LENDER THAT THE INFORMATION PROVIDED ABOVE IS TRUE AND CORRECT AND THAT THERE HAS BEEN NO MATERIAL ADVERSE CHANGE IN BORROWER'S FINANCIAL CONDITION AS DISCLOSED IN BORROWER'S MOST RECENT FINANCIAL STATEMENT TO LENDER. THIS AUTHORIZATION IS DATED APRIL 17, 2023.

BORROWER:

GENERATIONS ON 1ST, LLC

By: _____
     JESSE ROBERT CRAIG, MANAGING MEMBER of
     GENERATIONS ON 1ST, LLC

LaserPro, Ver. 22.4.0.046  Copr. Finastra USA Corporation 1997, 2023.  All Rights Reserved.  MN C:\HARLAND\CFI\LPL\D20.FC  TR-8115  PR-67

CUSTOMER NAME  Mulinda Craig

CUSTOMER NUMBER  NOTE NUMBER
41206

| | | |
|---|---|---|
| REBATE INTEREST: | 82 < | > |
| REBATE INSURANCE: | C/L 64 < | > |
| REBATE INSURANCE: | AH 78 < | > |
| CREDIT TO FINAL: | 3 92 | |
| EXTENSION DATE: | 38 | |
| FEE: | 90 | |
| CR INT ADJUSTMENT: | 84 | |
| MINUS YEAR TO DATE: | 4 | |
| INSURANCE PAYMENT: | 88 | |

DESCRIPTION:

DATE: 4/17/23     **CREDIT TICKET**

BACK DATE

| | |
|---|---|
| PAY OFF: | 36 |
| PRINCIPAL PAYMENT: | 46 |
| INTEREST PAYMENT: | 50 |
| LATE CHARGE: | 58 |
| ESCROW: | 72 |

**TOTAL  $**     22053.82

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $1,321,100.00 | 05-27-2021 | 12-15-2022 | 41240 | JR | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing " * * * " has been omitted due to text length limitations.

Borrower: MULINDA SUE CRAIG (SSN: 9822)
1405 1ST AVE N
FARGO, ND 58102

Lender: Red River State Bank
Fertile
114 N Mill St
PO Box 98
Fertile, MN 56540

EXHIBIT

2-A

**Principal Amount: $1,321,100.00**   **Interest Rate: 4.350%**   **Date of Note: May 27, 2021**

**PROMISE TO PAY.** MULINDA SUE CRAIG ("Borrower") promises to pay to Red River State Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Million Three Hundred Twenty-one Thousand One Hundred & 00/100 Dollars ($1,321,100.00), together with interest on the unpaid principal balance from May 27, 2021, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 4.350% per annum, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in 2 payments of $690,851.70 each payment. Borrower's first payment is due December 15, 2021, and all subsequent payments are due on the same day of each year after that. Borrower's final payment will be due on December 15, 2022, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Any accrued interest not paid when due is added to principal and thereafter will accrue interest as principal.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/365 basis; that is, by applying the ratio of the interest rate over the number of days in a year (365 for all years, including leap years), multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**RECEIPT OF PAYMENTS.** All payments must be made in U.S. dollars and must be received by Lender at:

Red River State Bank
Fertile
114 N Mill St
PO Box 98
Fertile, MN 56540

All payments must be received by Lender consistent with any written payment instructions provided by Lender. If a payment is made consistent with Lender's payment instructions but received after 2:00 PM CST on a business day, Lender will credit Borrower's payment on the next business day.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Red River State Bank, PO Box 25 Halstad, MN 56548.

**LATE CHARGE.** If a payment is 11 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $7.28, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Note will continue to accrue interest at the interest rate under this Note.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf, or made by Guarantor, or any other guarantor, endorser, surety, or accommodation party, under this Note or the related documents in connection with the obtaining of the loan evidenced by this Note or any security document directly or indirectly securing repayment of this Note is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Execution; Attachment.** Any execution or attachment is levied against the Collateral, and such execution or attachment is not set aside, discharged or stayed within thirty (30) days after the same is levied.

PROMISSORY NOTE
(Continued)

Loan No: 41240                                                                                         Page 2

**Change in Zoning or Public Restriction.** Any change in any zoning ordinance or regulation or any other public restriction is enacted, adopted or implemented, that limits or defines the uses which may be made of the Collateral such that the present or intended use of the Collateral, as specified in the related documents, would be in violation of such zoning ordinance or regulation or public restriction, as changed.

**Default Under Other Lien Documents.** A default occurs under any other mortgage, deed of trust or security agreement covering all or any portion of the Collateral.

**Judgment.** Unless adequately covered by insurance in the opinion of Lender, the entry of a final judgment for the payment of money involving more than ten thousand dollars ($10,000.00) against Borrower and the failure by Borrower to discharge the same, or cause it to be discharged, or bonded off to Lender's satisfaction, within thirty (30) days from the date of the order, decree or process under which or pursuant to which such judgment was entered.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor, or any other guarantor, endorser, surety, or accommodation party of any of the indebtedness or any Guarantor, or any other guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Minnesota without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Minnesota.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Polk County, State of Minnesota.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $28.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instrument listed herein:

(A) a Commercial Security Agreement dated May 27, 2021 made and executed between PARKSIDE PLACE, LLC and Lender on collateral described as As security for the payment of the indebtedness and all other indebtedness, obligations and liabilities of the Debtor to Creditor, now existing or hereafter arising, directly or indirectly, by operation of law or otherwise (collectively the "liabilities"), Debtor assigns, transfers, pledges, hypothecates and grants to Creditor, its successors and assigns, a first priority security interest (the "security interest") in all Debtor's assets, including without limitation, all equipment, inventory, supplies, accounts, general intangibles, chattel paper and instruments, goods, assets, machinery, fixtures, furnishings and all other personal property together with all other accessories, accessions, attachments and appurtenances, appertaining to attached thereto, whether now owned or hereafter acquired, and all other substitutions, renewals, replacements and improvements and all proceeds, rents, issuers, income, profits and avails, including without limitation, insurance proceeds. Further, Borrower grants Lender a purchase money security interest in specific equipment, furniture and fixtures purchased by Borrower and financed by Lender on or about the date of the loan or filing date thereafter (collectively the "collateral").

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: Red River State Bank PO Box 25 Halstad, MN 56548.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. In addition, Lender shall have all the rights and remedies provided in the related documents or available at law, in equity, or otherwise. Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower shall not affect Lender's right to declare a default and to exercise its rights and remedies. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**SECTION DISCLOSURE.** To the extent not preempted by federal law, this loan is made under Minnesota Statutes, Section 47.59.

PROMISSORY NOTE
(Continued)

| Loan No: 41240 | | Page 3 |
|---|---|---|

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE.  BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

X _____
MULINDA SUE CRAIG

LENDER:

RED RIVER STATE BANK

X _____
MARTIN PETERSON, Loan Officer

LaserPro, Ver. 20.4.0.038  Copr. Finastra USA Corporation 1997, 2021.  All Rights Reserved.  - MN  C:\HARLAND\CFI\LPL\D20.FC  TR-1551  PR-5

# DISBURSEMENT REQUEST AND AUTHORIZATION

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $1,321,100.00 | 05-27-2021 | 12-15-2022 | 41240 | JR | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

EXHIBIT 2-B

**Borrower:** MULINDA SUE CRAIG (SSN: [redacted])
1405 1ST AVE N
FARGO, ND 58102

**Lender:** Red River State Bank
Fertile
114 N Mill St
PO Box 98
Fertile, MN 56540

**LOAN TYPE.** This is a Fixed Rate (4.350%) Nondisclosable Loan to an Individual for $1,321,100.00 due on December 15, 2022.

**PRIMARY PURPOSE OF LOAN.** The primary purpose of this loan is for:

- ☐ Maintenance of Borrower's Primary Residence.
- ☐ Personal, Family or Household Purposes or Personal Investment.
- ☐ Agricultural Purposes.
- ☒ Business Purposes.

**SPECIFIC PURPOSE.** The specific purpose of this loan is: REAL ESTATE DEVELOPMENT LOAN.

**DISBURSEMENT INSTRUCTIONS.** Borrower understands that no loan proceeds will be disbursed until all of Lender's conditions for making the loan have been satisfied. Please disburse the loan proceeds of $1,321,100.00 as follows:

| | |
|---|---|
| Amount paid to Borrower directly: | $31,508.57 |
| $31,508.57 Deposited to Account # CASHIERS CHECK TO CRAIG DEVELOPMENT | |
| Other Disbursements: | $1,289,452.18 |
| $111,726.38 CASHIERS CHECK TO CRAIG DEVELOPMENT | |
| $294,875.42 CASHIERS CHECK TO CRAIG DEVELOPMENT | |
| $294,875.41 CASHIERS CHECK TO CRAIG DEVELOPMENT | |
| $293,987.49 CASHIERS CHECK TO CRAIG DEVELOPMENT | |
| $293,987.48 CASHIERS CHECK TO CRAIG DEVELOPMENT | |
| Total Financed Prepaid Finance Charges: | $139.25 |
| $139.25 Loan Packaging Fee | |
| Note Principal: | $1,321,100.00 |

**FINANCIAL CONDITION.** BY SIGNING THIS AUTHORIZATION, BORROWER REPRESENTS AND WARRANTS TO LENDER THAT THE INFORMATION PROVIDED ABOVE IS TRUE AND CORRECT AND THAT THERE HAS BEEN NO MATERIAL ADVERSE CHANGE IN BORROWER'S FINANCIAL CONDITION AS DISCLOSED IN BORROWER'S MOST RECENT FINANCIAL STATEMENT TO LENDER. THIS AUTHORIZATION IS DATED MAY 27, 2021.

**BORROWER:**

X [signature]
MULINDA SUE CRAIG

RRSB Mulinda 00499

EXHIBIT

2-C

UNETexchange Item Summary ECE Institution ISN: 8870696325 UNETexchar





UNETexchange Item Summary                    ECE Institution ISN: 8870696327                    UNETexchange ISN: 210527931836775





UNETexchange Item Summary          ECE Institution ISN: 8870696326          UNETexchange ISN: 210527931836774



**CASHIER'S CHECK**

Notice to Customer
If this check is lost, destroyed, or stolen, the bank
will not accept a replacement request on the check
until 90 days after the issue date and then only with
the issuance of a "Declaration of Loss" certification.

RED RIVER STATE BANK
PO Box 25 • Halstad, MN • 56548 • (218) 456-2187
PO Box 58 • Fertile, MN • 56540 • (218) 945-6171

MdF          May 27, 2021          201050

Purchaser:          $294,875.42
GENERATIONS DRAW #8

Two Hundred Ninety Four Thousand Eight Hundred Seventy Five Dollars And 42/100********

PAY TO THE          CRAIG DEVELOPMENT
ORDER OF.

Two Signatures Required
Authorized Signature

⑆ 2 0 1 0 5 0 ⑆     5 1 9 9 ⑉     2 1 3 0 ⑈

UNETexchange Item Summary                    ECE Institution ISN: 8870696330                    UNETexchange ISN: 210527931836778





11/1/2024 8:52:48 AM

UNETexchange Item Summary      ECE Institution ISN: 8870696329      UNETexchange ISN: 210527931836777



UNETexchange Item Summary          ECE Institution ISN: 8870696328          UNETexchange ISN: 210527931836776







**CREDIT**
UCM 5001 (R 7/10)

**GENERAL LEDGER**

DATE 5/27/201

ACCOUNT NAME    Commercial Loan Fees

DESCRIPTION / REMARKS

APPROVED BY  mp

AMOUNT

#41240  Mulinder Sus Cruly
Loan Org Fee # 139.20

Account Number

7030

Tran Code

$

139.25

⑈5000000005⑈

200517030 5/27/2021    $139.25
020104000230 TC 0

# Starion Bank

*Statement Ending 05/28/2021*

PO Box 848
Mandan, ND 58554

**RETURN SERVICE REQUESTED**

CRAIG DEVELOPMENT LLC
PO BOX 9379
FARGO ND 58106-9379

*CRAIG DEVELOPMENT LLC*                                    *Page 1 of 4*
*Customer Number:*    **8829**



**Managing Your Accounts**

| | Branch | 2754 Brandt Dr S Fargo, ND 58104 |
|---|---|---|
| | Phone | 701.281.5600 |
| | Website | Starionbank.com |

## Summary of Accounts

Do you have questions about your statement? You can contact us by phone, email customerservice@starionbank.com or chat online with a Starion Bank representative. Our customer service hours are Monday through Friday from 7 a.m. to 6 p.m.

| Account Type | Account Number | Ending Balance |
|---|---|---|
| ND STAR CHECKING | 8829 | $1,323,078.75 |

## ND STAR CHECKING- 8829

### Account Summary

| Date | Description | Amount |
|---|---|---|
| 05/20/2021 | **Beginning Balance** | **$0.00** |
| | 3 Credit(s) This Period | $1,414,188.74 |
| | 3 Debit(s) This Period | $91,109.99 |
| 05/28/2021 | **Ending Balance** | **$1,323,078.75** |

### Deposits

| Date | Description | Amount |
|---|---|---|
| 05/27/2021 | DEPOSIT | $1,320,960.75 |

### Other Credits

| Date | Description | Amount |
|---|---|---|
| 05/20/2021 | Tranfer In Bank DDA | $93,227.09 |
| 05/26/2021 | XX5707 DDA CREDIT 05/25 20:29 019244 RBT CASEYS GEN S EASYSAVINGS NY | $0.90 |

### Other Debits

| Date | Description | Amount |
|---|---|---|
| 05/21/2021 | Debit DDA | $20.00 |
| 05/24/2021 | XX5707 SIG POS PURCH 05/20 05:03 008260 CASEYS GEN STORE WATERTOWN SD | $89.99 |

### Checks Cleared

| Check Nbr | Date | Amount |
|---|---|---|
| 2996 | 05/25/2021 | $91,000.00 |

* Indicates skipped check number



Member FDIC

RRSB-Starion Subpoena 00094

## INFORMATION FOR CONSUMER ACCOUNTS WITH ELECTRONIC TRANSFERS

In case of errors or questions about your electronic transfers, TELEPHONE OR WRITE US AT THE TELEPHONE NUMBER OR ADDRESS LOCATED ON THE FRONT OF THIS STATEMENT as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

(1) Tell us your name and account number (if any).
(2) Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
(3) Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will credit your account for the amount you think is in error, so that you will have use of the money during the time it takes us to complete our investigation.

## DISCLOSURE TO READY CREDIT CONSUMER CUSTOMERS

**Billing Rights Summary**

*What To Do If You Think You Find A Mistake On Your Statement*

If you think there is an error on your statement, write to us at the address shown on your statement

In your letter give us the following information:

(1) *Account information:* Your name and account number
(2) *Dollar amount:* The dollar amount of the suspected error
(3) *Description of Problem:* If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake

You must contact us within 60 days after the error appeared on your statement.

You must notify us of any potential errors in writing. You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

While we investigate whether or not there has been an error, the following are true:

(1) We cannot try to collect the amount in question, or report you as delinquent on that amount.
(2) The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
(3) While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
(4) We can apply any unpaid amount against your credit limit.

**Computing the Interest Charge on Ready Credit**

We figure the interest charge on your account by applying the periodic rate to the "daily balance" of your account for each day in the billing cycle. To get the "daily balance" we take the beginning balance of your account each day, add any new advances and fees and subtract any unpaid interest or other finance charges and any payments or credits. This gives us the daily balance.

**Your Rights If You Are Dissatisfied With Your Credit Card Purchases**

If you are dissatisfied with the goods or services that you have purchased with your credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the purchase.

To use this right, all of the following must be true:

(1) The purchase must have been made in your home state or within 100 miles of your current mailing address, and the purchase price must have been more than $50. (Note: Neither of these are necessary if your purchase was based on an advertisement we mailed to you, or if we own the company that sold you the goods or services.)
(2) You must have used your credit card for the purchase. Purchases made with cash advances from an ATM or with a check that accesses your credit card account do not quality.
(3) You must not yet have fully paid for the purchase.

If all of the criteria above are met and you are still dissatisfied with the purchase, contact us *in writing* at the address on the front of this statement.

While we investigate, the same rules apply to the disputed amount as discussed above. After we finish our investigation, we will tell you our decision. At that point, if we think you owe an amount and you do not pay we may report you as delinquent.

## HOW TO BALANCE YOUR ACCOUNT

1. Subtract from your check register any service, miscellaneous, or automatic charge(s) posted on this statement.
2. Mark (√) your register after each check listed on front of statement.
3. Check off deposits shown on the statement against those shown in your check register.
4. Complete the form below.
5. The final "balance" in the form below should agree with your check register balance. If it does not, read "HINTS FOR FINDING DIFFERENCES" below.

## HINTS FOR FINDING DIFFERENCES

Recheck all additions and subtractions or corrections.

Verify the carryover balance from page to page in your check register.

Make sure you have subtracted the service or miscellaneous charge(s) from your check register balance.

| NEW BALANCE | | $ | |
| --- | --- | --- | --- |
| TRANSFER AMOUNT FROM OTHER SIDE | | | |
| ADD | | | |
| DEPOSITS MADE SINCE ENDING DATE ON STATEMENT | | | |
| SUB TOTAL | | $ | |
| CHECKS NOT LISTED ON THIS OR PRIOR STATEMENTS | | | |
| NUMBER | AMOUNT | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| TOTAL CHECKS NOT LISTED | → | | |
| SUBTRACT TOTAL CHECKS NOT LISTED FROM SUB-TOTAL ABOVE | BALANCE | $ | |

THIS SHOULD AGREE WITH YOUR CHECK REGISTER BALANCE

Case 25-30002    Doc 167-1    Filed 09/17/25    Entered 09/17/25 13:36:12    Desc
Exhibits 1-5    Page 34 of 56

# Starion Bank

PO Box 848
Mandan, ND 58554

*Statement Ending 05/28/2021*

*Page 3 of 4*

CRAIG DEVELOPMENT LLC
Customer Number:      8829

## ND STAR CHECKING-      8829 (continued)

### Daily Balances

| Date | Amount | Date | Amount | Date | Amount |
|------|--------|------|--------|------|--------|
| 05/20/2021 | $93,227.09 | 05/24/2021 | $93,117.10 | 05/26/2021 | $2,118.00 |
| 05/21/2021 | $93,207.09 | 05/25/2021 | $2,117.10 | 05/27/2021 | $1,323,078.75 |

### Overdraft and Returned Item Fees

|  | Total for this period | Total year-to-date |
|--|----------------------|--------------------|
| Total Overdraft Fees | $0.00 | $0.00 |
| Total Returned Item Fees | $0.00 | $0.00 |

```
ISN:                        Date: 05/27/2021
                            Start Time: 4:49:27 PM
     1767                   Amount: 1,320,960.75
Branch: 60                  Account Number:        3829
Teller: 2503                    DDA Credit
                                Deposit
Comments:

     RT:    0767            TC: 9
```
$1,320,960.75   5/27/2021



2996   $91,000.00   5/25/2021

RRSB-Starion Subpoena 00097

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $1,652,500.00 | 06-22-2021 | 12-15-2024 | 41258 | JR | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

| Borrower: | MULINDA SUE CRAIG (SSN: ████████) | Lender: | Red River State Bank |
| | 1405 1ST AVE N | | Fertile |
| | FARGO, ND 58102 | | 114 N Mill St |
| | | | PO Box 98 |
| | | | Fertile, MN 56540 |

**EXHIBIT**

**3-A**

---

**Principal Amount: $1,652,500.00**     **Interest Rate: 4.350%**     **Date of Note: June 22, 2021**

**PROMISE TO PAY.** MULINDA SUE CRAIG ("Borrower") promises to pay to Red River State Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Million Six Hundred Fifty-two Thousand Five Hundred & 00/100 Dollars ($1,652,500.00), together with interest on the unpaid principal balance from June 22, 2021, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 4.350% per annum, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in 4 payments of $449,112.37 each payment. Borrower's first payment is due December 15, 2021, and all subsequent payments are due on the same day of each year after that. Borrower's final payment will be due on December 15, 2024, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Any accrued interest not paid when due is added to principal and thereafter will accrue interest as principal.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/365 basis; that is, by applying the ratio of the interest rate over the number of days in a year (365 for all years, including leap years), multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**RECEIPT OF PAYMENTS.** All payments must be made in U.S. dollars and must be received by Lender at:

Red River State Bank
Fertile
114 N Mill St
PO Box 98
Fertile, MN 56540

All payments must be received by Lender consistent with any written payment instructions provided by Lender. If a payment is made consistent with Lender's payment instructions but received after 2:00 PM CST on a business day, Lender will credit Borrower's payment on the next business day.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Red River State Bank, PO Box 25 Halstad, MN 56548.

**LATE CHARGE.** If a payment is 11 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $7.28, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Note will continue to accrue interest at the interest rate under this Note.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf, or made by Guarantor, or any other guarantor, endorser, surety, or accommodation party, under this Note or the related documents in connection with the obtaining of the loan evidenced by this Note or any security document directly or indirectly securing repayment of this Note is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Execution; Attachment.** Any execution or attachment is levied against the Collateral, and such execution or attachment is not set aside, discharged or stayed within thirty (30) days after the same is levied.

Loan No: 41258

## PROMISSORY NOTE
### (Continued)

Page 2

**Change in Zoning or Public Restriction.** Any change in any zoning ordinance or regulation or any other public restriction is enacted, adopted or implemented, that limits or defines the uses which may be made of the Collateral such that the present or intended use of the Collateral, as specified in the related documents, would be in violation of such zoning ordinance or regulation or public restriction, as changed.

**Default Under Other Lien Documents.** A default occurs under any other mortgage, deed of trust or security agreement covering all or any portion of the Collateral.

**Judgment.** Unless adequately covered by insurance in the opinion of Lender, the entry of a final judgment for the payment of money involving more than ten thousand dollars ($10,000.00) against Borrower and the failure by Borrower to discharge the same, or cause it to be discharged, or bonded off to Lender's satisfaction, within thirty (30) days from the date of the order, decree or process under which or pursuant to which such judgment was entered.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor, or any other guarantor, endorser, surety, or accommodation party of any of the indebtedness or any Guarantor, or any other guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Minnesota without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Minnesota.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Polk County, State of Minnesota.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $28.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by
(A) a Commercial Security Agreement dated June 22, 2021 made and executed between PARKSIDE PLACE, LLC and GENERATIONS ON 1ST, LLC and Lender on collateral described as As security for the payment of the indebtedness and all other indebtedness, obligations and liabilities of the Debtor to Creditor, now existing or hereafter arising, directly or indirectly, by operation of law or otherwise (collectively the "liabilities"), Debtor assigns, transfers, pledges, hypothecates and grants to Creditor, its successors and assigns, a first priority security interest (the "security interest") in all Debtor's assets, including without limitation, all equipment, inventory, supplies, accounts, general intangibles, chattel paper and instruments, goods, assets, machinery, fixtures, furnishings and all other personal property together with all other accessories, accessions, attachments and appurtenances, appertaining to attached thereto, whether now owned or hereafter acquired, and all other substitutions, renewals, replacements and improvements and all proceeds, rents, issuers, income, profits and avails, including without limitation, insurance proceeds. Further, Borrower grants Lender a purchase money security interest in specific equipment, furniture and fixtures purchased by Borrower and financed by Lender on or about the date of the loan or filing date thereafter (collectively the "collateral")

(B) a Commercial Security Agreement dated May 25, 2021 made and executed between PARKSIDE PLACE, LLC and GENERATIONS ON 1ST, LLC and Lender on collateral described as As security for the payment of the indebtedness and all other indebtedness, obligations and liabilities of the Debtor to Creditor, now existing or hereafter arising, directly or indirectly, by operation of law or otherwise (collectively the "liabilities"), Debtor assigns, transfers, pledges, hypothecates and grants to Creditor, its successors and assigns, a first priority security interest (the "security interest") in all Debtor's assets, including without limitation, all equipment, inventory, supplies, accounts, general intangibles, chattel paper and instruments, goods, assets, machinery, fixtures, furnishings and all other personal property together with all other accessories, accessions, attachments and appurtenances, appertaining to attached thereto, whether now owned or hereafter acquired, and all other substitutions, renewals, replacements and improvements and all proceeds, rents, issuers, income, profits and avails, including without limitation, insurance proceeds. Further, Borrower grants Lender a purchase money security interest in specific equipment, furniture and fixtures purchased by Borrower and financed by Lender on or about the date of the loan or filing date thereafter (collectively the "collateral")

(C) a Commercial Security Agreement dated April 26, 2021 made and executed between PARKSIDE PLACE, LLC and GENERATIONS ON 1ST, LLC and Lender on collateral described as As security for the payment of the indebtedness and all other indebtedness, obligations and liabilities of the Debtor to Creditor, now existing or hereafter arising, directly or indirectly, by operation of law or otherwise (collectively the "liabilities"), Debtor assigns, transfers, pledges, hypothecates and grants to Creditor, its successors and assigns, a first priority security interest (the "security interest") in all Debtor's assets, including without limitation, all equipment, inventory, supplies, accounts, general intangibles, chattel paper and instruments, goods, assets, machinery, fixtures, furnishings and all other personal property together with all other accessories, accessions, attachments and appurtenances, appertaining to attached thereto, whether now owned or hereafter acquired, and all other substitutions, renewals, replacements and improvements and all proceeds, rents, issuers, income, profits and avails, including without limitation, insurance proceeds. Further, Borrower grants Lender a purchase money security interest in specific equipment, furniture and fixtures purchased by Borrower and financed by Lender on or about the date of the loan or filing date thereafter (collectively the "collateral").

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**PROMISSORY NOTE**
(Continued)

Loan No: 41258                                                                                    Page 3

---

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: Red River State Bank PO Box 25 Halstad, MN 56548.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. In addition, Lender shall have all the rights and remedies provided in the related documents or available at law, in equity, or otherwise. Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower shall not affect Lender's right to declare a default and to exercise its rights and remedies. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**SECTION DISCLOSURE.** To the extent not preempted by federal law, this loan is made under Minnesota Statutes, Section 47.59.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

BORROWER:

X _____
MULINDA SUE CRAIG

LENDER:

RED RIVER STATE BANK

X _____
MARTIN PETERSON, Loan Officer

LaserPro, Ver. 20.4.0.034, Copr. Finastra USA Corporation 1997, 2021. All Rights Reserved. - MN, IC:\HARLAND\CFI\LPL\D20.FC. TR-5567. PR-5

RRSB-Mulinda 04532

# DISBURSEMENT REQUEST AND AUTHORIZATION

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $1,652,500.00 | 06-22-2021 | 12-15-2024 | 41258 | JR | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

| Borrower: | MULINDA SUE CRAIG (SSN: ▮▮▮▮) | Lender: | Red River State Bank | | EXHIBIT |
| | 1405 1ST AVE N | | Fertile | | |
| | FARGO, ND 58102 | | 114 N Mill St | | **3-B** |
| | | | PO Box 98 | | |
| | | | Fertile, MN 56540 | | |

**LOAN TYPE.** This is a Fixed Rate (4.350%) Nondisclosable Loan to an Individual for $1,652,500.00 due on December 15, 2024.

**PRIMARY PURPOSE OF LOAN.** The primary purpose of this loan is for:

☐ Maintenance of Borrower's Primary Residence.

☐ Personal, Family or Household Purposes or Personal Investment.

☐ Agricultural Purposes.

☒ Business Purposes.

**SPECIFIC PURPOSE.** The specific purpose of this loan is: REAL ESTATE DEVELOPMENT LOAN.

**DISBURSEMENT INSTRUCTIONS.** Borrower understands that no loan proceeds will be disbursed until all of Lender's conditions for making the loan have been satisfied. Please disburse the loan proceeds of $1,652,500.00 as follows:

| | | |
|---|---|---|
| Amount paid to Borrower directly: | | $246,257.01 |
| $246,257.01 Deposited to  Account # CASHIERS CHECK TO CRAIG DEVELOPMENT | | |
| Amount paid to others on Borrower's behalf: | | $246,412.62 |
| $246,257.01 to CASHIERS CHECK TO CRAIG DEVELOPMENT | | |
| $155.61 to RED RIVER STATE BANK LOAN PACKAGING | | |
| Other Disbursements: | | $1,159,830.37 |
| $218,658.18 CASHIERS CHECK TO CRAIG DEVELOPMENT | | |
| $218,658.17 CASHIERS CHECK TO CRAIG DEVELOPMENT | | |
| $230,000.00 CASHIERS CHECK TO CRAIG DEVELOPMENT | | |
| $246,257.01 CASHIERS CHECK TO CRAIG DEVELOPMENT | | |
| $246,257.01 CASHIERS CHECK TO CRAIG DEVELOPMENT | | |
| Note Principal: | | $1,652,500.00 |

**CHARGES PAID IN CASH.** Borrower has paid or will pay in cash as agreed the following charges:

| | |
|---|---|
| Prepaid Finance Charges Paid in Cash: | $155.61 |
| $155.61  Loan Packaging Fee | |
| Total Charges Paid in Cash: | $155.61 |

**FINANCIAL CONDITION.** BY SIGNING THIS AUTHORIZATION, BORROWER REPRESENTS AND WARRANTS TO LENDER THAT THE INFORMATION PROVIDED ABOVE IS TRUE AND CORRECT AND THAT THERE HAS BEEN NO MATERIAL ADVERSE CHANGE IN BORROWER'S FINANCIAL CONDITION AS DISCLOSED IN BORROWER'S MOST RECENT FINANCIAL STATEMENT TO LENDER. THIS AUTHORIZATION IS DATED JUNE 22, 2021.

**BORROWER:**

X _____
 MULINDA SUE CRAIG

EXHIBIT

3-C

UNETexchange Item Summary          ECE Institution ISN: 8550140269          UNETexcha



**CASHIER'S CHECK**

RED RIVER STATE BANK
PO Box 25 · Halstad, MN · 56548 · (218) 456-2187
PO Box 98 · Fertile, MN · 56540 · (218) 945-6171

Notice to Customer
If this check is lost, destroyed, or stolen, the bank
will not accept a replacement request on the check
until 90 days after the issue date and then only with
the issuance of a "Declaration of Loss" certification.

MIIP          June 22, 2021          201075

Purchaser:          $246,257.01
GENERATIONS DRAW #9

Two Hundred Forty Six Thousand Two Hundred Fifty Seven Dollars And 01/100************

PAY TO THE
ORDER OF          CRAIG DEVELOPMENT

Two Signatures Required

Authorized Signature

⑈201075⑈ ⑆ 5199⑈ 2130⑈



ECCUND 2913786931 2105224516

ENDORSEMENT GUARANTEED
PROCEEDS OF THIS CHECK
DEPOSITED IN
THE ACCOUNT
OF
FIRST COMMUNITY CREDIT UNION
FARGO NORTH DAKOTA

UNETexchange Item Summary      ECE Institution ISN: 8550140268      UNETexchange ISN: 210622938896177





UNETexchange Item Summary                ECE Institution ISN: 8550140271                UNETexchange ISN: 210622938896180





11/1/2024 8:54:45 AM

RRSB Parkside 02462

UNETexchange Item Summary                    ECE Institution ISN: 8550140270                    UNETexchange ISN: 210622938896179





UNETexchange Item Summary                    ECE Institution ISN: 8550140266                    UNETexchange ISN: 210622938896175





RRSB GO1st 04816

UNETexchange Item Summary      ECE Institution ISN: 8550140267      UNETexchange ISN: 210622938896176





11/1/2024 8:57:27 AM             RRSB GO1st 04819

UNETexchange Item Summary ECE Institution ISN: 8550140265 UNETexchange ISN: 210622938896174



9/17/25, 10:19 AM

Case 25-30004   Doc 114-2   Filed 09/28/25   Entered 09/28/25 14:34:46   Desc
Case 25-30002   Doc 101-1   Filed 09/15/25   Entered 09/17/25 13:36:12   Desc
Exhibits 15-21   Page 47 of 56   Page 125 of 415



CREDIT   GENERAL LEDGER   DATE 6/22/2021

ACCOUNT NAME   Commonal Loan Fees   APPROVED BY   AMOUNT
DESCRIPTION / REMARKS

# 41258 Melindo Curry
Loan Packaging Fee

Account Number   Tran Code

7 0 3 0   $   155.61

⑈500000005⑈

200517030 6/22/2021   $155.61
020102000070 TC 0



**FC CU** First Community Credit Union

```
FP TRANSACTION  06-22-21  13:35:11  MEMBER  1711CR              1 1516
               FOR CRAIG DEVELOPMENT, LLC  AS ellie
DEPOSIT OF         437316.35  1711-2         SMALL BUSINESS CHECKING
  PREV BAL          368.64 NEW BAL      437684.99
  REDRIVERSTBNK CASHCHK#201072, 201073
RECEIVED           437316.35 IN 2 CHECKS
  218658.17   218658.18
```

Member Signature





RRSB FCCU Subpoena 007400

First Community Credit Union

```
FP TRANSACTION  06-22-21  13:32:12  MEMBER  1711CR              1 1516
                FOR CRAIG DEVELOPMENT, LLC  AS ellie
DEPOSIT OF       1215028.04  1711-2        SMALL BUSINESS CHECKING
   PREV BAL          368.64 NEW BAL     1215396.68
   REDRIVERSTBNK CASHCHK#201077,201075, 201076, 201078, 201074
RECEIVED         1215028.04 IN 5 CHECKS
   246257.01   230000.00   246257.01
   246257.01   246257.01
```

Member Signature





RRSB FCCU Subpoena 007397





RRSB FCCU Subpoena 007398

```
                              I N Q U I R Y   S T A T E M E N T                              PAGE  1
                        Case 25-30002    Doc 167-1    Filed 09/17/25    Entered 09/17/25 Desc
10937 MULINDA SUE CRAIG                  Exhibits 1-5    Page 51 of 56            EXHIBIT
      1405 1ST AVE N
      FARGO ND 58102                                                               4

LOAN #       41206   COLL DESC A MORTGAGE OORIG BAL  1,477,500.00  ORIG DATE  4/26/2021  ORIG DISC        0.00  RENW BAL        0.00
                     RENW DATE                 TMS EXT  0          LAST MATY  5/31/2023  RATE      .06500  TYPE CODE  3
                     APR OFF   CBA             COLL CODE  FM

  DATE      TC1        AMOUNT        TC2       AMOUNT      POST DATE   DESCRIPTION                        BALANCE

04/26/2021   34   1,477,500.00      0           0.00      04/27/2021                                   1,477,500.00
12/13/2021   46     561,822.51      0           0.00                                                     915,677.49
12/09/2022   92     915,677.49     84       80,071.23                 NON-ACCRUAL                            0.00
12/09/2022  366     915,677.49    380       80,071.23                 NON-ACCRUAL                       915,677.49
12/27/2022   94       9,999.99      0           0.00                                                    915,677.49
04/17/2023  392      22,053.82      0           0.00                  GO1st Term                        893,623.67
06/12/2023   94       9,999.99      0           0.00                                                    893,623.67
06/26/2023   94       9,999.99      0           0.00                                                    893,623.67
12/29/2023  392     400,000.00      0           0.00                  NON-ACCRUAL                       893,623.67
12/29/2023  966     400,000.00      0           0.00                  CHARGE-OFF                        893,623.67
12/29/2023  392     300,000.00      0           0.00                  CHARGE DOWN                       593,623.67
12/29/2023  966     300,000.00      0           0.00      02/09/2024   CHARGE DOWN                      893,623.67

            Principal: 1,477,500.00          Min:         0.00
            Interest:         0.00           Max: 1,477,500.00
```

RRSB Mulinda 05731

INQUIRY STATEMENT

PAGE 1

Case 25-30002    Doc 167-1    Filed 09/17/25    Entered 09/17/25 13:36:12    Desc
Exhibits 1-5    Page 52 of 56

10937 MULINDA SUE CRAIG
1405 1ST AVE N
FARGO ND 58102

| LOAN # | 41240 | COLL DESC A MORTGAGE | OORIG BAL | 1,321,100.00 | ORIG DATE | 5/27/2021 | ORIG DISC | 0.00 | RENW BAL | 0.00 |
|--------|-------|----------------------|-----------|--------------|-----------|-----------|-----------|------|----------|------|
| | | RENW DATE | TMS EXT | 0 | LAST MATY | 5/31/2023 | RATE | .06500 | TYPE CODE 3 | |
| | | APR OFF    CBA | COLL CODE | FM | | | | | | |

| DATE | TC1 | AMOUNT | TC2 | AMOUNT | POST DATE | DESCRIPTION | BALANCE |
|------|-----|--------|-----|--------|-----------|-------------|---------|
| 05/27/2021 | 34 | 1,321,100.00 | 0 | 0.00 | | | 1,321,100.00 |
| 12/09/2022 | 92 | 1,321,100.00 | 84 | 88,327.31 | | NON-ACCRUAL | 0.00 |
| 12/09/2022 | 366 | 1,321,100.00 | 380 | 88,327.31 | | NON-ACCRUAL | 1,321,100.00 |
| 12/27/2022 | 94 | 9,999.99 | 0 | 0.00 | | | 1,321,100.00 |
| 06/12/2023 | 94 | 9,999.99 | 0 | 0.00 | | | 1,321,100.00 |
| 06/26/2023 | 94 | 9,999.99 | 0 | 0.00 | | | 1,321,100.00 |
| 12/29/2023 | 392 | 400,000.00 | 0 | 0.00 | | NON-ACCRUAL | 921,100.00 |
| 12/29/2023 | 966 | 400,000.00 | 0 | 0.00 | | CHARGE-OFF | 1,321,100.00 |
| 12/29/2023 | 392 | 300,000.00 | 0 | 0.00 | | CHARGE DOWN | 1,021,100.00 |
| 12/29/2023 | 966 | 300,000.00 | 0 | 0.00 | 02/09/2024 | CHARGE DOWN | 1,321,100.00 |

|  | |  | |
|--|--|--|--|
| Principal: | 1,321,100.00 | Min: | 0.00 |
| Interest: | 0.00 | Max: | 1,321,100.00 |

RRSB Mulinda 05732

INQUIRY STATEMENT                                                PAGE 1

10937 MULINDA SUE CRAIG
1405 1ST AVE N
FARGO ND 58102

LOAN #      41258   COLL DESC A MORTGAGE OORIG BAL  1,652,500.00  ORIG DATE  6/22/2021   ORIG DISC         0.00  RENN BAL          0.00
                   RENW DATE              TMS EXT   0              LAST MATY 5/31/2023    RATE     .06500    TYPE CODE 3
                   APR OFF    CBA         COLL CODE  FM

| DATE | TC1 | AMOUNT | TC2 | AMOUNT | POST DATE | DESCRIPTION | BALANCE |
|---|---|---|---|---|---|---|---|
| 06/22/2021 | 34 | 1,652,500.00 | 0 | 0.00 | | | 1,652,500.00 |
| 12/09/2022 | 92 | 1,652,500.00 | 84 | 105,363.86 | | NON-ACCRUAL | 0.00 |
| 12/09/2022 | 366 | 1,652,500.00 | 380 | 105,363.86 | | NON-ACCRUAL | 1,652,500.00 |
| 12/27/2022 | 94 | 9,999.99 | 0 | 0.00 | | | 1,652,500.00 |
| 06/12/2023 | 94 | 9,999.99 | 0 | 0.00 | | | 1,652,500.00 |
| 06/26/2023 | 94 | 9,999.99 | 0 | 0.00 | | | 1,652,500.00 |
| 12/29/2023 | 392 | 400,000.00 | 0 | 0.00 | | NON-ACCRUAL | 1,252,500.00 |
| 12/29/2023 | 966 | 400,000.00 | 0 | 0.00 | | CHARGE-OFF | 1,652,500.00 |
| 12/29/2023 | 392 | 300,000.00 | 0 | 0.00 | | | 1,352,500.00 |
| 12/29/2023 | 966 | 300,000.00 | 0 | 0.00 | 02/09/2024 | | 1,652,500.00 |

          Principal: 1,652,500.00        Min:        0.00
          Interest:         0.00         Max: 1,652,500.00

RRSB Mulinda 05733

Case 25-30002    Doc 167-1    Filed 09/17/25    Entered 09/17/25 13:36:12    Desc
Exhibits 1-5    Page 54 of 56

EXHIBIT
5

| | First Mulinda Note: Payments Applied and Interest + Late Fees Accrual | | | | | Interest Rate (per annum) 4.350% | | Origination Interest Rate | | Post-Forbearance Interest Rate 6.500% | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | **TRANSACTION TYPE AND AMOUNT** | | | | **INTEREST CALCULATION** | | | | **RUNNING BALANCE** | | | |
| Date | Transaction Description | Advance/Charge(+) | Payment (-) Total | Interest Pmt. | Principal Pmt. | Per Diem | # of Days | Accrued Interest | Principal Pmt. | Interest | Principal | Late Fees | TOTAL |
| 4/26/2021 | Opening Advance | $ 1,477,500.00 | $ - | $ - | $ - | $ 176.09 | 0 | $ - | | $ - | $ 1,477,500.00 | $ - | |
| 12/13/2021 | Interest Calculation | | | | | $ 176.09 | 231 | $ 40,675.78 | | $ 40,675.78 | $ 1,477,500.00 | $ - | |
| 12/13/2021 | Payment pursuant to the Parkside Note | - | $ (561,822.51) | $ - | $ (561,822.51) | Principal Payment: | | $ - | $ (561,822.51) | $ 40,675.78 | $ 915,677.49 | $ - | |
| 12/27/2021 | Late Fee Added | $ 9,999.99 | $ - | $ - | $ - | | | | | $ - | $ 915,677.49 | $ 9,999.99 | |
| 3/16/2023 | Interest Calculation | | | | | $ 109.13 | 458 | $ 49,980.94 | | $ 90,656.72 | $ 915,677.49 | $ 9,999.99 | |
| 3/16/2023 | Interest Rate Changed pursuant to Forbearance Agreement | | | | | | | Pre-Forbearance Totals: | | $ 90,656.72 | $ 915,677.49 | $ 9,999.99 | $ 1,016,334.20 |
| 4/17/2023 | Interest Calculation | | | | | $ 163.07 | 32 | $ 5,218.11 | | $ 95,874.82 | $ 915,677.49 | $ 9,999.99 | |
| 4/17/2023 | Payment pursuant to the Eighth Generations Note | | $ (22,053.82) | $ - | $ (22,053.82) | Principal Payment: | | $ - | $ (22,053.82) | $ 95,874.82 | $ 893,623.67 | $ 9,999.99 | |
| 6/12/2023 | Late Fee Added | $ 9,999.99 | $ - | $ - | $ - | | | | | $ - | $ 893,623.67 | $ 19,999.98 | |
| 6/26/2023 | Late Fee Added | $ 9,999.99 | $ - | $ - | $ - | | | | | $ - | $ 893,623.67 | $ 29,999.97 | |
| 1/6/2025 | BANKRUPTCY PETITIONS FILED | | | | | $ 150.14 | 630 | $ 100,357.33 | | $ 196,232.05 | $ 893,623.67 | $ 29,999.97 | $ 1,119,755.69 |

| | | | | | | | | Interest Rate (per annum) | Origination Interest Rate | Forbearance Interest Rate |
|---|---|---|---|---|---|---|---|---|---|---|
| | Second Mulinda Note: Interest and Late Fees Accrual | | | | | | | | 4.350% | 6.50% |
| | INTEREST CALCULATION | | | RUNNING BALANCE | | | | | | |
| Date | Per Diem | # of Days | Accrued Interest | Interest | Principal | Late Fees | TOTAL | Transaction Description | | |
| 5/27/2021 | | | $ - | $ - | $ 1,321,100.00 | $ - | | Opening Advance | | |
| 12/15/2021 | $ 157.45 | 202 | $ 31,804.13 | $ 31,804.13 | $ 1,321,100.00 | | | Modification Agreement - Maturity Extension 12/31/2022 | | |
| 12/27/2022 | $ 157.45 | 377 | $ 59,357.20 | $ 91,161.33 | $ 1,321,100.00 | $ 9,999.99 | | Late Fee Assesed | | |
| 3/16/2023 | $ 157.45 | 79 | $ 12,438.25 | $ 103,599.58 | $ 1,321,100.00 | $ 9,999.99 | | Interest Rate Change pursuant to Forbearance Agreement | | |
| 6/12/2023 | $ 235.26 | 167 | $ 39,289.15 | $ 130,450.48 | $ 1,321,100.00 | $ 19,999.98 | | Late Fee Assesed | | |
| 6/26/2023 | $ 235.26 | 102 | $ 23,996.97 | $ 127,596.54 | $ 1,321,100.00 | $ 29,999.97 | | Late Fee Assesed | | |
| 1/6/2025 | $ 235.26 | 560 | $ 131,748.05 | $ 259,344.60 | $ 1,321,100.00 | $ 29,999.97 | $ 1,610,444.57 | BANKRUPTCY PETITIONS FILED | | |

| Third Mulinda Note: Interest and Late Fee Accrual | | | | | | | | Interest Rate (per annum) 4.350% | Origination Interest Rate 4.350% | Forbearance Interest Rate 6.50% |
|---|---|---|---|---|---|---|---|---|---|---|
| | INTEREST CALCULATION | | | RUNNING BALANCE | | | | | | |
| Date | Per Diem | # of Days | Accrued Interest | Interest | Principal | Late Fees | TOTAL | Transaction Description | | |
| 6/22/2021 | | | $          - | $          - | $ 1,052,500.00 | $          - | | Opening Advance | | |
| 12/15/2021 | $ 196.94 | 176 | $ 34,661.75 | $ 34,661.75 | $ 1,052,500.00 | $          - | | Modification Agreement - Maturity Extension 12/31/2022 | | |
| 12/27/2022 | $ 196.94 | 377 | $ 74,247.05 | $ 108,908.80 | $ 1,052,500.00 | $ 9,999.99 | | Late Fee Assessed | | |
| 3/16/2023 | $ 196.94 | 79 | $ 15,558.40 | $ 124,467.21 | $ 1,052,500.00 | $ 9,999.99 | | Interest Rate Change pursuant to Forbearance Agreement | | |
| 6/12/2023 | $ 294.28 | 167 | $ 49,144.90 | $ 158,053.70 | $ 1,052,500.00 | $ 19,999.98 | | Late Fee Assessed | | |
| 6/26/2023 | $ 294.28 | 102 | $ 30,016.64 | $ 154,483.85 | $ 1,052,500.00 | $ 29,999.97 | | Late Fee Assessed | | |
| 1/6/2025 | $ 294.28 | 560 | $ 164,797.26 | $ 319,281.11 | $ 1,052,500.00 | $ 29,999.97 | $ 2,001,781.08 | BANKRUPTCY PETITIONS FILED | | |

Fill in this information to identify the case:

Debtor 1        Generations on 1st LLC

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the: District of North Dakota

Case number  25-30002

---

## Official Form 410

# Proof of Claim

12/24

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

### Part 1:   Identify the Claim

| | |
|---|---|
| 1. Who is the current creditor? | Red River State Bank <br> Name of the current creditor (the person or entity to be paid for this claim) <br><br> Other names the creditor used with the debtor |
| 2. Has this claim been acquired from someone else? | ☑ No <br> ☐ Yes. From whom? |

3. Where should notices and payments to the creditor be sent?

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Caren W. Stanley, Vogel Law Firm
Name

PO Box 1389
Number     Street

Fargo                         ND
City               State            ZIP Code

Contact phone 701-237-6983

Contact email cstanley@vogellaw.com

Uniform claim identifier (if you use one):

Where should payments to the creditor be sent? (if different)

Name

Number     Street

City               State            ZIP Code

Contact phone

Contact email

| | |
|---|---|
| 4. Does this claim amend one already filed? | ☐ No <br> ☑ Yes. Claim number on court claims registry (if known) 01      Filed on 01/10/2025 <br>     MM / DD / YYYY |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No <br> ☐ Yes. Who made the earlier filing? RRSB |

EXHIBIT 18
WIT: J. Craig
DATE: 9-23-25
Deanna L. Sager

Official Form 410                     Proof of Claim                     page 1

**Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed**

6. **Do you have any number you use to identify the debtor?**
   - ☑ No
   - ☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

7. **How much is the claim?** $ _____ 13,798,334.43 . **Does this amount include interest or other charges?**
   - ☐ No
   - ☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**

   Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

   Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

   Limit disclosing information that is entitled to privacy, such as health care information.

   Money Loaned (See Attachment)

9. **Is all or part of the claim secured?**
   - ☐ No
   - ☑ Yes. The claim is secured by a lien on property.

     **Nature of property:**
     - ☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
     - ☐ Motor vehicle
     - ☑ Other. Describe: All personal property including rents

     **Basis for perfection:** SD & ND UCC Fin Stmt, Mortgages, Assignment of Rents
     Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

     **Value of property:** $ _____
     **Amount of the claim that is secured:** $ _____
     **Amount of the claim that is unsecured:** $ _____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

     **Amount necessary to cure any default as of the date of the petition:** $ _____

     **Annual Interest Rate** (when case was filed) _____ %
     - ☐ Fixed
     - ☐ Variable

10. **Is this claim based on a lease?**
    - ☑ No
    - ☐ Yes. Amount necessary to cure any default as of the date of the petition. $ _____

11. **Is this claim subject to a right of setoff?**
    - ☑ No
    - ☐ Yes. Identify the property: _____

| | | |
|---|---|---|
| **12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ No<br><br>☐ Yes. *Check one:*<br><br>☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).<br><br>☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).<br><br>☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).<br><br>☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).<br><br>☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).<br><br>☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | **Amount entitled to priority**<br><br>$ _____<br><br>$ _____<br><br>$ _____<br><br>$ _____<br><br>$ _____<br><br>$ _____ |

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:  Sign Below

The person completing this claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☑ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   09/22/2025
              MM / DD / YYYY

/s/ Charles Aarestad
Signature

**Print the name of the person who is completing and signing this claim:**

| | |
|---|---|
| Name | Charles Aarestad |
| | First name      Middle name      Last name |
| Title | Vice President |
| Company | Red River State Bank |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | 300 2nd Ave W |
| | Number      Street |
| | Halstad                MN      56548 |
| | City             State    ZIP Code |
| Contact phone | 218-456-2187      Email charles.aarestad@redriverbank.com |

## AMENDED ATTACHMENT TO PROOF OF CLAIM

*In accordance with Federal Rule of Bankruptcy Procedure 3001(c)(1), Red River State Bank ("RRSB") attached the following promissory notes (collectively, the "Generations Notes") and other supporting documentation to its original proof of claim filed on January 10, 2025 (the "Original POC"):*

a.  Promissory Note dated March 15, 2021 in the original principal sum of $1,565,200.00 ("First Generations Note") (*See* **Exhibit A** to the Original POC).

b.  Promissory Note dated September 14, 2021 in the original principal sum of $2,976,430.98 ("Second Generations Note") (*See* **Exhibit B** to the Original POC).

c.  Promissory Note dated October 14, 2021 in the original principal sum of $1,094,025.15 ("Third Generations Note") (*See* **Exhibit C** to the Original POC).

d.  Promissory Note dated November 9, 2021 in the original principal sum of $424,259.84 ("Fourth Generations Note") (*See* **Exhibit D** to the Original POC).

e.  Promissory Note dated December 8, 2021 in the original principal sum of $843,168.59 ("Fifth Generations Note") (*See* **Exhibit E** to the Original POC).

f.  Promissory Note dated January 5, 2022 in the original principal sum of $653,729.65 ("Sixth Generations Note") (*See* **Exhibit F** to the Original POC).

g.  Promissory Note dated February 3, 2022 in the original principal sum of $274,043.60 ("Seventh Generations Note") (*See* **Exhibit G** to the Original POC).

h.  Promissory Note dated April 17, 2023 in the original principal sum of $8,100,000.00 ("Eighth Generations Note") (*See* **Exhibit H** to the Original POC).

i.  Promissory Note dated April 17, 2023 in the original principal sum of $561,365.10 ("Ninth Generations Note") (*See* **Exhibit I** to the Original POC).

Additionally, Mulinda Craig executed and delivered the following promissory notes to RRSB (collectively, the "Mulinda Notes"):

a.  Promissory Note dated April 26, 2021 in the original principal sum of $1,477,500.00 ("First Mulinda Note") (*See* **Exhibit J** to the Original POC).

b.  Promissory Note dated May 27, 2021 in the principal sum of $1,321,100.00 ("Second Mulinda Note") (*See* **Exhibit K** to the Original POC).

c.  Promissory Note dated June 22, 2021 in the principal sum of $1,652,500.00 ("Third Mulinda Note") (*See* **Exhibit L** to the Original POC).

The Mulinda Notes were modified to, among other things, revise the payment schedule and reaffirm and/or modify the maturity date to December 15, 2022 pursuant to three (3) Modification Agreements dated December 15, 2021 (collectively, the "Mulinda Modification

Agreements") (*See* **Exhibit M** to the Original POC). Pursuant to a Forbearance Agreement dated February 17, 2023 (the "Forbearance Agreement") by and between RRSB and Debtor, Mulinda Craig, and Jesse Craig, among others, the maturity date of the Mulinda Notes and the Generations Notes (with the sole exception of the Eighth Generations Note) was further extended to May 31, 2023. (*See* **Exhibit N** to the Original POC)

*In accordance with Rule 3001(d), RRSB attached the following evidence related to its security interests to the Original POC:*

As security for repayment of all of the indebtedness due RRSB on the Generations Notes and the Mulinda Notes, Debtor made in favor of, executed, and delivered to RRSB Commercial Security Agreements contemporaneous to the execution of each of the Generations Notes and the Mulinda Notes (collectively, the "Security Agreements") (*See* **Exhibit O** to the Original POC). An excerpt of the Security Agreements, setting forth RRSB's personal property collateral is reproduced below:

As security for the payment of the indebtedness and all other indebtedness, obligations and liabilities of the Debtor to Creditor, now existing or hereafter arising, directly or indirectly, by operation of law or otherwise (collectively the "liabilities"), Debtor assigns, transfers, pledges, hypothecates and grants to Creditor, its successors and assigns, a first priority security interest (the "security interest") in all Debtor's assets, including without limitation, all equipment, inventory, supplies, accounts, general intangibles, chattel paper and instruments, goods, assets, machinery, fixtures, furnishings and all other personal property together with all other accessories, accessions, attachments and appurtenances, appertaining to attached thereto, whether now owned or hereafter acquired, and all other substitutions, renewals, replacements and improvements and all proceeds, rents, issuers, income, profits and avails, including without limitation, insurance proceeds. Further, Borrower grants Lender a purchase money security interest in specific equipment, furniture and fixtures purchased by Borrower and financed by Lender on or about the date of the loan or filing date thereafter (collectively the "collateral")

RRSB perfected its security interest in the above-described personal property assets by virtue of filing UCC financing statements with the North Dakota Secretary of State and the South Dakota Secretary of State. (*See* **Exhibit P** to the Original POC).

As additional security for repayment of the indebtedness due RRSB, Debtor made in favor of, executed, and delivered to RRSB various mortgages upon the following-described real property located in Codington County, State of South Dakota, to wit:

2

Parcel I:
Lot 1 of Ohtness' Subdivision of Lots 12, 13, and 14 in Block 17 of Watertown, Codington County, South Dakota, according to the recorded plat thereof.

Parcel II:
Lot 2 of Ohtness' Subdivision of Lots 12, 13 and 14 in Block 17 of Watertown, AND the North 30 feet of the East 70 feet of Lot 11 in Block 17 of Watertown (commonly referred to as being in the original Plat), Codington County, South Dakota, according to the recorded plat thereof.

Parcel III:
Lot 3 of Ohtness' Subdivision of Lots 12, 13, and 14 in Block 17 of Watertown (commonly referred to as being the Original Plat), Codington County, South Dakota, according to the recorded plat thereof.

Parcel IV:
Lot 4 of Ohtness' Subdivision of Lots 12, 13, and 14 in Block 17 of Watertown (commonly referred to as being the Original Plat), Codington County, South Dakota, according to the recorded plat thereof.

Parcel V:
Lot 11, except the North 30 Feet of the East 70 Feet thereof, in Block 17, of the plat Entitled: "Watertown" Codington County, South Dakota, according to the recorded plat thereof

The Real Property or its address is commonly known as   26 1st Ave SW, Watertown, SD 57201. The Real Property tax identification number is 9582, 9583, 9580.

The real property identified above was later replatted pursuant to a plat recorded in Book OP Plat on Page 924 in the office of the Register of Deeds of Codington County, South Dakota, having been recorded on August 27, 2021 at 1:26 p.m. with the following new legal description:

> Generations on 1st Addition to the City of Watertown, Codington County, South Dakota according to the recorded plat thereof.
>
> Street Address: 26 1st Ave SW, Watertown, SD 57201
> Tax ID:       9580

(hereinafter the "Generations Real Property").

On or about March 15, 2021, as security for all of the indebtedness due RRSB with respect to the Generations Notes up to the sum of $8,340,000.00, Debtor made in favor of, executed, and delivered to RRSB a Construction Mortgage - One Hundred Eighty Day Redemption (the "First RRSB Mortgage") upon the Generations Real Property.

The First RRSB Mortgage was properly executed, acknowledged, and recorded in Book 990 on Page 7262 in the office of the Register of Deeds of Codington County, South Dakota, having been recorded on August 3, 2021 at 10:09 a.m. (*See* **Exhibit Q** to the Original POC).

RRSB also holds the following additional mortgages with respect to the Generations Real Property that remain of record:

a.     Mortgage – 180 Day Redemption dated July 6, 2020 and recorded in Book 990 on page 4387 in the office of the Register of Deeds of Codington County, South Dakota, having been recorded on July 8, 2020 (the "First Craig Holdings/RRSB Mortgage"). Said

mortgage references only Parcel II of the prior legal description for the Generations Real Property.

b.  Mortgage – 180 Day Redemption dated July 30, 2020 and recorded in Book 990 on page 4571 in the office of the Register of Deeds of Codington County, South Dakota, having been recorded on July 31, 2020 (the "Second Craig Holdings/RRSB Mortgage"). Said mortgage references only Parcel I of the prior legal description for the Generations Real Property.

c.  Mortgage – 180 Day Redemption dated September 30, 2020 and recorded in Book 990 on page 5036 in the office of the Register of Deeds of Codington County, South Dakota, having been recorded on October 1, 2020 (the "Third Craig Holdings/RRSB Mortgage"). Said mortgage references only Parcel V of the prior legal description for the Generations Real Property.

d.  Construction Mortgage – 180 Day Redemption dated October 14, 2021 and recorded in Book 990 on page 7791 in the office of the Register of Deeds of Codington County, South Dakota, having been recorded on October 25, 2021 (the "Second RRSB Mortgage").

e.  Construction Mortgage – 180 Day Redemption dated April 17, 2023 and recorded in Book 992 on page 142 in the office of the Register of Deeds of Codington County, South Dakota, having been recorded on May 5, 2023 (the "Third RRSB Mortgage").

RRSB and the Watertown Development Corporation ("WDC") entered into a Subordination Agreement dated April 7, 2021 with respect to the priority of their respective mortgages on the Generations Real Property ("Subordination Agreement"). Pursuant to the Subordination Agreement, the First RRSB Mortgage has priority over three (3) mortgages held by WDC. (*See* **Exhibit R** to the Original POC).

On or about April 17, 2023, as security for all of the indebtedness due RRSB, Debtor made in favor of, executed, and delivered to RRSB an Assignment of Rents (the "RRSB AOR") with respect to the Generations Real Property. The RRSB AOR was properly executed, acknowledged, and recorded in Book 992 on Page 143 in the office of the Register of Deeds of Codington County, South Dakota, having been recorded on May 5, 2023 at 10:12 a.m. (*See* **Exhibit S** to the Original POC).

RRSB began enforcement of its assignment of rents set forth in both the Parkside Mortgage and the Generations AOR in February 2024 by sending notice to Debtor and to all of the known tenants of the Generations Real Property. A receiver was appointed on or about October 1, 2024 to take possession of the rents and manage the Generations Real Property. (*See* **Exhibit T** to the Original POC).

As of the Petition Date, the receiver held rents from the Generations Real Property in the sum of $211,201.59 (the "Generations Prepetition Rents"). The Generations Prepetition Rents held by the receiver are not property of the bankruptcy estate under 11 USC § 541(a)(6) because the Generations AOR was enforced prepetition as an absolute assignment.

**Indebtedness:**

The following affidavits explain the loan history in more detail, and they are hereby incorporated by reference here:

- The Affidavit of Charles Aarestad re the Eighth Generations Note filed on September 16, 2025 [ECF No. 165]. As explained therein, on April 17, 2023, the proceeds of the Eighth Generations Note were used to refinance and payoff all outstanding principal of Generations Notes 1-7. Id. at ¶ 13.

- The Affidavit of Charles Aarestad re Generations Notes Nos. 1-7 & No. 9 filed on September 16, 2025 [ECF No. 166]. As explained therein, on April 17, 2023, all accrued unpaid interest on Generations Notes 1-7 was refinanced and paid off by the Ninth Generations Note. Id. ¶ 45.

- The Affidavit of Charles Aarestad re the Mulinda Notes filed on September 17, 2025 [ECF No. 167].

As of January 6, 2025, the outstanding balance of :

| NOTE | BALANCE | PER DIEM INTEREST |
|---|---|---|
| First Generations Note | $0 | $0.00 |
| Second Generations Note | $0 | $0.00 |
| Third Generations Note | $0 | $0.00 |
| Fourth Generations Note | $0 | $0.00 |
| Fifth Generations Note | $0 | $0.00 |
| Sixth Generations Note | $0 | $0.00 |
| Seventh Generations Note | $0 | $0.00 |
| Eighth Generations Note | $8,485,609.34 | $1,482.16 |
| Ninth Generations Note | $580,743.73 | $30.76 |
| **GENERATIONS NOTES TOTAL:** | 0 | |
| | 0 | |
| First Mulinda Note | $1,119,755.69 | $159.14 |
| Second Mulinda Note | $1,610,444.59 | $235.26 |
| Third Mulinda Note | $2,001,781.08 | $294.28 |
| **MULINDA NOTES TOTAL:** | 0 | |
| | 0 | |
| **Total due under the Generations Notes and the Mulinda Notes together with interest accruing from and after January 6, 2025, excluding* costs and attorneys fees incurred:** | **$13,798,334.43** | $2,201.60 per day |

**\*The Debtor is also obligated to RRSB for all attorneys' fees and costs incurred by RRSB in collecting on the debt due and owing under the Generations Notes and the Mulinda Notes.**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

| In Re: | Bankruptcy No.: 25-30002 |
|---|---|
| Generations on 1st, LLC, | Chapter 11 |
| Debtor, Jointly Administered. | |
| Parkside Place, LLC, | Bankruptcy No.: 25-30003 |
| Debtor, Jointly Administered. | Chapter 11 |

## AFFIDAVIT OF CHARLES AARESTAD

## RE: EIGHTH GENERATIONS NOTE

STATE OF MINNESOTA        )
                          )  SS
COUNTY OF NORMAN          )

I, Charles Aarestad, hereby state and declare as follows:

1.    I am a Senior Vice President at Red River State Bank ("RRSB" or "Creditor").
I have held my current position since 2011.

2.    I hold a Bachelor's Degree in Agricultural Economics from North Dakota State
University. I have also attended the Graduate School of Banking at the University of
Wisconsin-Madison.

3.    I am personally familiar with the loan history between RRSB and Generations
on 1st (the "Debtor" or "Generations").

4.    I have personally reviewed bank statements, transaction receipts, deposits, and
checks associated with several accounts, including without limitation:



EXHIBIT  19
WIT: J Craig
DATE:  9-23-25
Deanna L. Sager

a. a checking account ending in -4657 at RRSB, also known as the Assignment of Rents Holding Account (the "RRSB Generations Account");

b. a checking account ending in -1711 at First Community Credit Union ("FCCU") owned by Craig Development, LLC (the "FCCU Craig Development Account");

c. a checking account ending in -4695 at FCCU owned by Craig Properties LLC ;

d. a checking account ending in -2258 at Starion Bank owned by non-debtor affiliate CP Business Management Inc. – Apartments (the "CP Business Account"); and

e. a debtor-in-possession checking account ending in -8666 held by the estate at Starion Bank (the "Generations DIP Account").

With the exception of the accounts for which RRSB is the depository institution, all of the aforementioned documents were obtained through subpoenas issued in the Debtor's bankruptcy case.

### History of the Eighth Generations Note

5.    RRSB and Debtor are parties to a Forbearance Agreement dated as of February 17, 2023 (the "Forbearance Agreement"). Prior to execution of the Forbearance Agreement, RRSB made several loans that were used for the construction of an apartment building in Watertown, South Dakota known as "Generations on 1st" (the "GO1 Real Property").

6.    In connection with the forbearance, RRSB agreed to permit a total of 11 existing construction loans (the "Old Loans") to be refinanced by Loan No. 51676, which is memorialized in that certain Promissory Note dated April 17, 2023, for the original principal

sum of $8,100,000.00 ("Eighth Generations Note"). The maturity date of the Eighth

Generations Note is December 1, 2026. A true and correct copy of the Eighth Generations

Note is attached as **Exhibit A** and incorporated by reference.

      7.     Pursuant to the Eighth Generations Note, interest accrues on the unpaid

principal balance at a rate of 6.750% per annum and the Debtor's repayment obligation was as

follows:

      a.     Forty-three (43) monthly consecutive principal and interest payments of
$55,830.18 from May 15, 2023 through November 15, 2026; and

      b.     One (1) final principal and interest payment on December 1, 2026,
comprised of all principal and accrued interest not yet paid, a sum
estimated to be $7,624,288.42 if all payments were made exactly as
scheduled.

      8.     The Loan Disbursement Request and Authorization contemporaneously

executed by Debtor ("Eighth Generations DRA"), confirms that proceeds of the Eighth

Generations Note were applied to the 11 existing loans listed therein:

SPECIFIC PURPOSE. The specific purpose of this loan is: Refinance Construction Loan.
DISBURSEMENT INSTRUCTIONS. Borrower understands that no loan proceeds will be disbursed until all of Lender's conditions for making the
loan have been satisfied. Please disburse the loan proceeds of $8,100,000.00 as follows:

| Amount paid on Borrower's account: | $8,100,000.00 |
|---|---|
| $46,418.19 Payment on Loan # 40869 | |
| $142,789.38 Payment on Loan # 40881 | |
| $57,880.80 Payment on Loan # 40910 | |
| $1,565,200.00 Payment on Loan # 41121 | |
| $2,976,430.98 Payment on Loan # 51404 | |
| $1,094,025.15 Payment on Loan # 51425 | |
| $424,259.84 Payment on Loan # 51437 | |
| $843,168.59 Payment on Loan # 51448 | |
| $653,729.66 Payment on Loan # 51471 | |
| $274,043.80 Payment on Loan # 51488 | |
| $22,053.82 Payment on Loan # 41206 | |
| Note Principal: | $8,100,000.00 |

A true and correct copy of the Eighth Generations DRA is attached as **Exhibit B** and

incorporated by reference, and an excerpt has been reproduced above for reference.

      9.     Three of the existing loans were issued by RRSB to Craig Holdings, LLC to

purchase land for the GO1 Real Property (collectively, the "Lot Loans"). First, RRSB made

Loan No. 40869 (the "First Lot Loan") to Craig Holdings LLC on July 6, 2020 to finance the

purchase of a lot located at 110 1st St SW, Watertown, South Dakota. Loan proceeds in the

amount of $57,000 were remitted by RRSB to First Dakota Title – Watertown by delivery of

Cashier's Check No. 200757. True and correct copies of a Loan Disbursement Request and

Authorization (a "DRA"), a Debit Ticket dated July 6, 2020, and a Cashier's Check that

confirm disbursement of the proceeds of Loan 40869 for the benefit of the Debtor are attached

hereto as **Exhibit C-1** and incorporated herein by reference. For ease of reference, an excerpt

of the relevant portion of the DRA for the First Lot Loan is set forth below:

SPECIFIC PURPOSE. The specific purpose of this loan is: PURCHASE RENTAL PROPERTY 110 1ST ST SW WATERTOWN.

FLOOD INSURANCE. As reflected on Flood Map No. 46029C0338D dated 01-16-2009, for the community of Watertown, City of, some of the
property that will secure the loan is not located in an area that has been identified by the Administrator of the Federal Emergency Management
Agency as an area having special flood hazards. Therefore, although flood insurance may be available for the property, no special flood hazard
insurance protecting property not located in an area having special flood hazards is required by law for this loan at this time.

DISBURSEMENT INSTRUCTIONS. Borrower understands that no loan proceeds will be disbursed until all of Lender's conditions for making the
loan have been satisfied. Please disburse the loan proceeds of $57,000.00 as follows:

| | |
|---|---|
| Amount paid to others on Borrower's behalf:<br>$57,000.00 to CASHIER'S CHECK TO FIRST DAKOTA TITLE –<br>WATERTOWN | $57,000.00 |
| Note Principal: | $57,000.00 |

CHARGES PAID IN CASH. Borrower has paid or will pay in cash as agreed the following charges:

| | |
|---|---|
| Prepaid Finance Charges Paid in Cash:<br>$494.30  Loan Documentation Fee<br>$65.00  Laser Pro Loan Document Fee<br>$10.70  Credit Report | $570.00 |
| Total Charges Paid in Cash: | $570.00 |

    10.    RRSB made a second loan, Loan No. 40881 (the "Second Lot Loan"), to Craig

Holdings LLC on July 30, 2020 to finance the purchase of a lot located at 26 1st Ave SW,

Watertown, South Dakota. The original principal amount of the Second Lot Loan was

$155,150. Loan proceeds in the amount of $154,000 were remitted to First Dakota Title –

Watertown by a wire transfer.  True and correct copies of the DRA and wire transfer records

for the Second Lot Loan, both of which confirm disbursement of the proceeds of Loan 40881

for the benefit of the Debtor, are attached hereto as **Exhibit C-2** and incorporated herein by

reference. For ease of reference, an excerpt of the relevant portion of the DRA for the Second

Lot Loan is set forth below:

SPECIFIC PURPOSE. The specific purpose of this loan is: Purchase 26 1st Ave SW Watertown SD 57201.

FLOOD INSURANCE. As reflected on Flood Map No. 46029C0338D dated 01-18-2008, for the community of WATERTOWN, CITY OF, the property that will secure the loan is not located in an area that has been identified by the Administrator of the Federal Emergency Management Agency as an area having special flood hazards. Therefore, although flood insurance may be available for the property, no special flood hazard insurance protecting property not located in an area having special flood hazards is required by law for this loan at this time.

DISBURSEMENT INSTRUCTIONS. Borrower understands that no loan proceeds will be disbursed until all of Lender's conditions for making the loan have been satisfied. Please disburse the loan proceeds of $155,150.00 as follows:

| | |
|---|---|
| Amount paid to others on Borrower's behalf:<br>$154,000.00 to FIRST DAKOTA TITLE - WATERTOWN | $154,000.00 |
| Total Financed Prepaid Finance Charges:<br>$1,150.00  Loan Documentation Fee | $1,150.00 |
| Note Principal: | $155,150.00 |

11.    RRSB made a third loan, Loan No. 40910 (the "Third Lot Loan"), to Craig

Holdings LLC on September 30, 2020 to finance the purchase of a lot located at 114 1st St.

SW, Watertown, South Dakota. The original principal amount of the Third Lot Loan was

$72,450. Loan proceeds in the amount of $71,906.62 were remitted to First Dakota Title –

Watertown. True and correct copies of a DRA and a Debit Ticket dated September 30, 2020,

both of which confirm disbursement of the proceeds of Loan 40910 for the benefit of the

Debtor, are attached hereto as **Exhibit C-3** and incorporated herein by reference. For ease of

reference, an excerpt of the relevant portion of the DRA for the Third Lot Loan is set forth

below:

SPECIFIC PURPOSE. The specific purpose of this loan is: PURCHASE 114 1ST SW WATERTOWN SD 57201.

FLOOD INSURANCE. Some of the property that will secure the loan is not located in an area that has been identified by the Administrator of the Federal Emergency Management Agency as an area having special flood hazards. Therefore, although flood insurance may be available for the property, no special flood hazard insurance protecting property not located in an area having special flood hazards is required by law for this loan at this time.

DISBURSEMENT INSTRUCTIONS. Borrower understands that no loan proceeds will be disbursed until all of Lender's conditions for making the loan have been satisfied. Please disburse the loan proceeds of $72,450.00 as follows:

| | |
|---|---|
| Amount paid to others on Borrower's behalf:<br>$71,906.62 to Wire to First Dakota Title Watertown | $71,906.62 |
| Total Financed Prepaid Finance Charges:<br>$543.38  Loan Origination Fee | $543.38 |
| Note Principal: | $72,450.00 |

12.     Eight other existing loans were refinanced by the Eighth Generations Note. These loans are discussed at length in the Affidavit of Charles Aarestad Re: First through Seventh and Ninth Generations Notes and in the Affidavit of Charles Aarestad Re: Mulinda Notes.

13.     To recap, on April 17, 2023, Eighth Generations Note loan proceeds totaling $8,100,000.00 were disbursed and applied to eleven existing loans as follows:

| Loan # | Total Paid to Loan Account |
|---|---|
| First Lot Loan (40869) | $46,418.19 |
| Second Lot Loan (40881) | $142,789.38 |
| Third Lot Loan (40910) | $57,880.80 |
| First Gen Note (41121) | $1,565,200.00 |
| Second Gen Note (51404) | $2,976,430.98 |
| Third Gen. Note (51425) | $1,094,025.15 |
| Fourth Gen Note (51437) | $424,259.84 |
| Fifth Gen Note (51449) | $843,168.59 |
| Sixth Gen Note (51471) | $653,729.65 |
| Seventh Gen Note (51488) | $274,043.60 |
| First Mulinda Note (41206) | $22,053.82 |
| **TOTAL:** | **$8,100,000.00** |

True and correct copies of a Debit Ticket dated April 17, 2023 in the sum of $8,100,000.00, plus credit tickets dated April 17, 2023 confirming application of Eighth Generations Notes

proceeds in the aggregate amount of $8,100,000 to eleven existing loans are attached as

**Exhibit D** and incorporated herein by reference.

<div align="center">

**Pre-Petition Payment History of the Eighth Generations Note**

</div>

14.    Prior to the filing of Debtor's Chapter 11 Petition on January 6, 2025 ("<u>Petition</u>

<u>Date</u>"), eight (8) payments for the Parkside Note were received and applied to the outstanding

balance of the Parkside Note as follows:

| Payment No. | Payment Description | Exhibit Description | Exhibit No. |
|---|---|---|---|
| 1 | Payment of **$55,830.18** was received on May 15, 2023. $41,942.47 was applied to accrued interest and $13,887.71 was applied to principal. | CP Business Account Check No. 4160 in the amount of $55,830.18; and RRSB Credit Ticket dated May 15, 2923, in the sum of $55,830.18. | **E-1, F & G** |
| 2 | Payment of **$55,830.18** was received on June 2, 2023. $26,916.78 was applied to accrued interest and $28,913.40 was applied to principal. | CP Business Account Check No. 4183* in the amount of $78,355.18 and RRSB Loan Credit Slip dated June 2, 2023, in the sum of $55,830.18.<br><br>* Check 4183 was divided between the Eighth GO1st and Parkside Notes. *See* Parkside Note Aff., ¶ 14, Row 18 and **Exh H-18**. | **E-2, F & G** |
| 3 | Payment of **$55,830.18** was received on July 10, 2023, and applied to accrued interest. | CP Business Account Check No. 4275* in the amount of $78,355.18; RRSB Loan Credit Slip dated July 10, 2023, in the sum of $58,830.18.<br><br>* Check 4275 was divided between the Eighth GO1st and Parkside Notes. *See* Parkside Note Aff., ¶ 14, Row 19 and **Exh. H-19**. | **E-3, F & G** |

| 4 | Payment of **$55,830.18** was received on August 16, 2023, and applied to accrued interest. | CP Business Account Check No. 4308* in the amount of $78,355.18 and RRSB Loan Credit Slip dated August 16, 2023, in the sum of $55,830.18.<br><br>* Check 4308 was divided between the Eighth GO1st and Parkside Notes. *See* Parkside Note Aff., ¶ 14, Row 20 and **Exh. H-20**. | **E-4, F & G** |
| 5 | Payment of **$55,830.18** was received on September 7, 2023. $32,872.54 was applied to accrued interest and $22,957.64 was applied to principal. | CP Business Account Check No. 4368* in the amount of $78,355.18 and RRSB Loan Credit Slip dated September 7, 2023, in the sum of $55,830.18.<br><br>* Check 4368 was divided between the Eighth GO1st and Parkside Notes. *See* Parkside Note Aff., ¶ 14, Row 21 and **Exh. H-21**. | **E-5, F & G** |
| 6 | Payment of **$55,830.18** was received on October 10, 2023. $49,030.88 was applied to accrued interest and $6,799.30 was applied to principal on May 24, 2022. | CP Business Account Check No. 4462* in the amount of $78,355.18 and RRSB Loan Credit Slip dated October 10, 2023, in the sum of $55,830.18.<br><br>* Check 4462 was divided between the Eighth GO1st and Parkside Note. *See* Parkside Note Aff., ¶ 14, Row 22 and **Exh. H-22**. | **E-6, F & G** |
| 7 | Payment of **$55,830.18** was received on November 8, 2023. $43,051.29 was applied to accrued interest and $12,778.89 was applied to principal. | CP Business Account Check No. 4506* in the amount of $78,355.18 and RRSB Loan Credit Slip dated November 7, 2023, in the sum of $55,830.18.<br><br>* Check 4506 was divided between the Eighth GO1st and Parkside Notes. *See* Parkside Note Aff., ¶ 14, Row 23 and **Exh. H-23**. | **E-7, F & G** |

| 8 | Payment of **$195,262.92** was received on December 30, 2024, and applied to accrued interest. | Wire from receiver in the sum of $195,262.92 and RRSB Checking Withdrawal Slip dated December 30, 2024, in the amount of $195,262.92.<br><br>Three (3) RRSB Loan Credit Slips, all dated December 30, 2024, and each in the sum of $55,830.00 intended to reflect the monthly payments for Dec 2023-Feb 2024 and one (1) RRSB Loan Credit Slip dated December 30, 2024, in the sum of $22,772.92 intended to reflect a partial payment for March 2024. | **E-8, F & G** |

**Post-Petition Payments on the Eighth Generations Note**

15.     After the Petition Date, pursuant to the Stipulation(s) For Use of Cash Collateral

By and Between Generations on 1st LLC, Parkside Place, LLC, and Red River State Bank (*See*

ECF 44, ECF 54, ECF 69, ECF 91, ECF 140), the following cash collateral payments have

been paid by the Debtor and applied to the outstanding balance of the Eighth Generations Note:

| Payment No. | Payment Description | Exhibit Description | Exhibit No. |
|---|---|---|---|
| 9 | Payment of **$114,592.03** was received on February 4, 2025, and applied to accrued interest. | RRSB General Ledger Slip dated February 4, 2025, in the sum of $114,592.03 and RRSB Loan Credit Slip dated February 4, 2025, in the sum of $114,592.03.<br><br>*See also* ECF 54; ¶ 5(iii). | **E-9, F & G** |
| 10 | Payment of **$25,000.00** was received on February 14, 2025, and applied to accrued interest. | Generations DIP Account Check No. 30009 in the amount of $25,000.00; and RRSB Loan Credit Slip dated February 14, 2025, in the sum of $25,000.00. | **E-10, F & G** |
| 11 | Payment of **$35,000.00** was received on March 7, 2025, | Generations DIP Account Check No. 30031 in the amount of $35,000.00; | **E-11, F & G** |

|    | and applied to accrued interest. | and RRSB Loan Credit Slip dated March 7, 2025, in the sum of $35,000.00. |  |
|----|----|----|----|
| 12 | Payment of **$10,000.00** was received on March 18, 2025, and applied to accrued interest. | Loan Credit slip dated March 18, 2025, and wire transfer from The Verstandig Law Firm, LLC Account ending in -7208 to RRSB in the sum of $10,000.00. | **E-12, F & G** |
| 13 | Payment of **$35,000.00** was received on April 14, 2025, and applied to accrued interest. | Generations DIP Account Check No. 30053 in the amount of $35,000.00; and RRSB Loan Credit Slip dated April 14, 2025, in the sum of $35,000.00. | **E-13, F & G** |
| 14 | Payment of **$35,000.00** was received on May 19, 2025, and applied to accrued interest. | Generations DIP Account Check No. 30074 in the amount of $35,000.00; and RRSB Loan Credit Slip dated May 19, 2025, in the sum of $35,000.00. | **E-14, F & G** |
| 15 | Payment of **$35,000.00** was received on June 13, 2025, and applied to accrued interest. | Generations DIP Account Check No. 30100 in the amount of $35,000.00; and RRSB Loan Credit Slip dated June 13, 2025, in the sum of $35,000.00. | **E-15, F & G** |
| 16 | Payment of **$35,000.00** was received on July 14, 2025, and applied to accrued interest. | Generations DIP Account Check No. 30122 in the amount of $35,000.00; and RRSB Loan Credit Slip dated July 14, 2025, in the sum of $35,000.00. | **E-16, F & G** |

No further payments have been made by the Debtor towards the outstanding balance of the Eighth Generations Note.

16.     As of the Petition Date, the outstanding balance of the Eighth Generations Note was $8,485,609.34.

17.   An Inquiry Statement for the Eighth Generations Note generated by RRSB's computer system is attached as **Exhibit F** and incorporated by reference. The Inquiry Statement does not include a running balance but only identifies advances on the loan, late fees accrued, and application of payments.

18.   For the convenience of the parties and the Court, a printout of an Excel spreadsheet depicting the accrual of interest and late fees pursuant to the Eighth Generations Note and the application of all payments received by RRSB for the Eighth Generations Note is attached as **Exhibit G** and incorporated by reference.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this _16_ day of September, 2025.

Charles Aarestad

Subscribed and sworn to before me this _16_ day of September, 2025.

Notary Public

LORI ANN MOEN
NOTARY PUBLIC - MINNESOTA
My Comm. Exp. Jan. 31, 2029

**EXHIBIT A**

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | O |
|---|---|---|---|---|---|---|
| $8,100,000.00 | 04-17-2023 | 12-01-2026 | 51676 | JN | | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** GENERATIONS ON 1ST, LLC (TIN: ████6148)
1405 1ST AVE N
FARGO, ND 58102

**Lender:** Red River State Bank
Halstad
300 2nd Ave West
PO Box 25
Halstad, MN 56548-0025

---

**Principal Amount: $8,100,000.00**        **Date of Note: April 17, 2023**

**PROMISE TO PAY.** GENERATIONS ON 1ST, LLC ("Borrower") promises to pay to Red River State Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Eight Million One Hundred Thousand & 00/100 Dollars ($8,100,000.00), together with interest on the unpaid principal balance from April 17, 2023, until paid in full.

**PAYMENT.** Borrower will pay this loan in accordance with the following payment schedule, which calculates interest on the unpaid principal balances as described in the "INTEREST CALCULATION METHOD" paragraph using the interest rates described in this paragraph: 43 consecutive principal and interest payments of $55,830.18 each, beginning May 15, 2023, with interest calculated on the unpaid principal balances using an interest rate of 6.750% per annum; and one principal and interest payment of $7,624,288.42 on December 1, 2026, with interest calculated on the unpaid principal balances using an interest rate of 6.750% per annum. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Note. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Any accrued interest not paid when due is added to principal and thereafter will accrue interest as principal.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/365 basis; that is, by applying the ratio of the interest rate over the number of days in a year (365 for all years, including leap years), multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**RECEIPT OF PAYMENTS.** All payments must be made in U.S. dollars and must be received by Lender at:

Red River State Bank
Halstad
300 2nd Ave West
PO Box 25
Halstad, MN 56548-0025

All payments must be received by Lender consistent with any written payment instructions provided by Lender. If a payment is made consistent with Lender's payment instructions but received after 2:00 PM CST on a business day, Lender will credit Borrower's payment on the next business day.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Red River State Bank, PO Box 25 Halstad, MN 56548.

**LATE CHARGE.** If a payment is 11 days or more late, Borrower will be charged **5.000% of the unpaid portion of the regularly scheduled payment or $7.28, whichever is greater.**

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Note will continue to accrue interest at the interest rate under this Note, with the final interest rate described in this Note applying after maturity, or after maturity would have occurred had there been no default. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf, or made by Guarantor, or any other guarantor, endorser, surety, or accommodation party, under this Note or the related documents in connection with the obtaining of the loan evidenced by this Note or any security document directly or indirectly securing repayment of this Note is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**PROMISSORY NOTE**
**(Continued)**

Loan No: 51676                                                                                                          Page 2

Execution; Attachment. Any execution or attachment is levied against the Collateral, and such execution or attachment is not set aside, discharged or stayed within thirty (30) days after the same is levied.

Change in Zoning or Public Restriction. Any change in any zoning ordinance or regulation or any other public restriction is enacted, adopted or implemented, that limits or defines the uses which may be made of the Collateral such that the present or intended use of the Collateral, as specified in the related documents, would be in violation of such zoning ordinance or regulation or public restriction, as changed.

Default Under Other Lien Documents. A default occurs under any other mortgage, deed of trust or security agreement covering all or any portion of the Collateral.

Judgment. Unless adequately covered by insurance in the opinion of Lender, the entry of a final judgment for the payment of money involving more than ten thousand dollars ($10,000.00) against Borrower and the failure by Borrower to discharge the same, or cause it to be discharged, or bonded off to Lender's satisfaction, within thirty (30) days from the date of the order, decree or process under which or pursuant to which such judgment was entered.

Events Affecting Guarantor. Any of the preceding events occurs with respect to any Guarantor, or any other guarantor, endorser, surety, or accommodation party of any of the indebtedness or any Guarantor, or any other guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

Adverse Change. A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

Insecurity. Lender in good faith believes itself insecure.

LENDER'S RIGHTS. Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

ATTORNEYS' FEES; EXPENSES. Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

JURY WAIVER. Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

GOVERNING LAW. This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Minnesota without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Minnesota.

CHOICE OF VENUE. If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Norman County, State of Minnesota.

DISHONORED ITEM FEE. Borrower will pay a fee to Lender of $28.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

RIGHT OF SETOFF. To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

COLLATERAL. Borrower acknowledges this Note is secured by (A) a Mortgage executed by Generations on 1st, LLC in favor of Red River State Bank dated 03/15/2021 with legal description of Parcel # 9582, 9583, & 9580:
Parcel I:
Lot 1 of Ohtness' Subdivision of Lots 12, 13, and 14 in Block 17 of Watertown, Codington County, South Dakota, according to the recorded plat thereof.
Parcel II:
Lot 2 of Ohtness' Subdivision of Lots 12, 13 and 14 in Block 17 of Watertown, AND the North 30 feet of the East 70 feet of Lot 11 in Block 17 of Watertown (commonly referred to as being in the original Plat), Codington County, South Dakota, according to the recorded plat thereof.
Parcel III:
Lot 3 of Ohtness' Subdivision of Lots 12, 13, and 14 in Block 17 of Watertown (commonly referred to as being the Original Plat), Codington County, South Dakota, according to the recorded plat thereof.
Parcel IV:
Lot 4 of Ohtness' Subdivision of Lots 12, 13, and 14 in Block 17 of Watertown (commonly referred to as being the Original Plat), Codington County, South Dakota, according to the recorded plat thereof.
Parcel V:
Lot 11, except the North 30 Feet of the East 70 Feet thereof, in Block 17, of the plat Entitled: "Watertown" Codington County, South Dakota, according to the recorded plat thereof

AND

(B) a Mortgage executed by Craig Holdings, LLC in favor of Red River State Bank dated 10/14/2021 with legal description of: GENERATIONS ON 1ST ADDITION TO THE CITY OF WATERTOWN, CODINGTON COUNTY, SOUTH DAKOTA

AND

(C) a Mortgage executed by Generations on 1st, LLC in favor of Red River State Bank dated 03/15/2021 with legal description of: GENERATIONS ON 1ST ADDITION TO THE CITY OF WATERTOWN, CODINGTON COUNTY, SOUTH DAKOTA

AND

(D) a Mortgage executed by Generations on 1st, LLC in favor of Red River State Bank dated 04/17/2023 with legal description of: GENERATIONS ON 1ST ADDITION TO THE CITY OF WATERTOWN, CODINGTON COUNTY, SOUTH DAKOTA

FINANCIAL STATEMENTS. Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

RRSB GO1st 02447

# PROMISSORY NOTE
## (Continued)

Loan No: 51676

Page 3

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: Red River State Bank PO Box 25 Halstad, MN 56548.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. In addition, Lender shall have all the rights and remedies provided in the related documents or available at law, in equity, or otherwise. Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower shall not affect Lender's right to declare a default and to exercise its rights and remedies. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**SECTION DISCLOSURE.** To the extent not preempted by federal law, this loan is made under Minnesota Statutes, Section 47.59.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

GENERATIONS ON 1ST, LLC

By: _____

    JESSE ROBERT CRAIG, MANAGING MEMBER of
    GENERATIONS ON 1ST, LLC

LENDER:

RED RIVER STATE BANK

X _____

    CHARLES AARESTAD, Executive Vice President

LaserPro, Ver. 23.4.0.052  Copr. Finestra USA Corporation 1997, 2023.  All Rights Reserved.  - MN: C:\HARLAND\CFI\LPL\D20.FC  TR-6113  PR-77

EXHIBIT
**B**

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | |
|---|---|---|---|---|---|---|
| $8,100,000.00 | 04-17-2023 | 12-01-2026 | 51676 | JN | | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

Borrower: GENERATIONS ON 1ST, LLC (TIN: ████6148)   Lender: Red River State Bank
1406 1ST AVE N                                                Halstad
FARGO, ND 58102                                               300 2nd Ave West
                                                              PO Box 25
                                                              Halstad, MN 56548-0025

**LOAN TYPE.** This is a Fixed Rate (6.750%) Nondisclosable Loan to a Limited Liability Company for $8,100,000.00 due on December 1, 2026.

**PRIMARY PURPOSE OF LOAN.** The primary purpose of this loan is for:

☐ Maintenance of Borrower's Primary Residence.

☐ Personal, Family or Household Purposes or Personal Investment.

☐ Agricultural Purposes.

☒ Business Purposes.

**SPECIFIC PURPOSE.** The specific purpose of this loan is:  Refinance Construction Loan.

**DISBURSEMENT INSTRUCTIONS.** Borrower understands that no loan proceeds will be disbursed until all of Lender's conditions for making the loan have been satisfied.  Please disburse the loan proceeds of $8,100,000.00 as follows:

|  |  |
|---|---|
| Amount paid on Borrower's account: | $8,100,000.00 |
| $46,418.19 Payment on Loan # 40869 | |
| $142,789.38 Payment on Loan # 40881 | |
| $57,880.80 Payment on Loan # 40910 | |
| $1,565,200.00 Payment on Loan # 41121 | |
| $2,976,430.98 Payment on Loan # 51404 | |
| $1,094,025.15 Payment on Loan # 51425 | |
| $424,259.84 Payment on Loan # 51437 | |
| $843,168.59 Payment on Loan # 51449 | |
| $653,729.65 Payment on Loan # 51471 | |
| $274,043.60 Payment on Loan # 51488 | |
| $22,053.82 Payment on Loan # 41206 | |
| | |
| Note Principal: | $8,100,000.00 |

**NOTICE OF RIGHT TO DISCONTINUE ESCROW.**  If Borrower's mortgage loan involves an escrow account for taxes and homeowner's insurance, Borrower may have the right in five years to discontinue the account and pay Borrower's own taxes and homeowner's insurance.  IF Borrower is eligible to discontinue the escrow account, Borrower will be notified in five years.

**FINANCIAL CONDITION.**  BY SIGNING THIS AUTHORIZATION, BORROWER REPRESENTS AND WARRANTS TO LENDER THAT THE INFORMATION PROVIDED ABOVE IS TRUE AND CORRECT AND THAT THERE HAS BEEN NO MATERIAL ADVERSE CHANGE IN BORROWER'S FINANCIAL CONDITION AS DISCLOSED IN BORROWER'S MOST RECENT FINANCIAL STATEMENT TO LENDER.  THIS AUTHORIZATION IS DATED APRIL 17, 2023.

BORROWER:

GENERATIONS ON 1ST, LLC

By: _____
JESSE ROBERT CRAIG, MANAGING MEMBER of
GENERATIONS ON 1ST, LLC

LaserPro, Ver. 22.4.0.008  Copr. Finastra USA Corporation 1997, 2023.  All Rights Reserved.  - DN: C:\HARLAND\CFI\LPL\T20.FC  TR-6155  PR-17

RRSB GO1st 02419

# DISBURSEMENT REQUEST AND AUTHORIZATION

EXHIBIT C-1

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | O |
|---|---|---|---|---|---|---|
| $57,000.00 | 07-06-2020 | 07-15-2025 | 40869 | JN | | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Craig Holdings LLC (TIN: [redacted]3536)
1405 1ST AVE N
FARGO, ND 58102

**Lender:** Red River State Bank
Fertile
114 N Mill St
PO Box 98
Fertile, MN 56540

**LOAN TYPE.** This is a Fixed Rate (4.500%) Nondisclosable Loan to a Limited Liability Company for $57,000.00 due on July 15, 2025.

**PRIMARY PURPOSE OF LOAN.** The primary purpose of this loan is for:

☐ Maintenance of Borrower's Primary Residence.

☐ Personal, Family or Household Purposes or Personal Investment.

☐ Agricultural Purposes.

☒ Business Purposes.

**SPECIFIC PURPOSE.** The specific purpose of this loan is: PURCHASE RENTAL PROPERTY 110 1ST ST SW WATERTOWN.

**FLOOD INSURANCE.** As reflected on Flood Map No. 46029C0338D dated 01-16-2009, for the community of Watertown, City of, some of the property that will secure the loan is not located in an area that has been identified by the Administrator of the Federal Emergency Management Agency as an area having special flood hazards. Therefore, although flood insurance may be available for the property, no special flood hazard insurance protecting property not located in an area having special flood hazards is required by law for this loan at this time.

**DISBURSEMENT INSTRUCTIONS.** Borrower understands that no loan proceeds will be disbursed until all of Lender's conditions for making the loan have been satisfied. Please disburse the loan proceeds of $57,000.00 as follows:

| | |
|---|---|
| Amount paid to others on Borrower's behalf: | $57,000.00 |
| $57,000.00 to CASHIER'S CHECK TO FIRST DAKOTA TITLE - WATERTOWN | |
| Note Principal: | $57,000.00 |

**CHARGES PAID IN CASH.** Borrower has paid or will pay in cash as agreed the following charges:

| | |
|---|---|
| Prepaid Finance Charges Paid in Cash: | $570.00 |
| $494.30 Loan Documentation Fee | |
| $65.00 Laser Pro Loan Document Fee | |
| $10.70 Credit Report | |
| Total Charges Paid in Cash: | $570.00 |

**NOTICE OF RIGHT TO DISCONTINUE ESCROW.** If Borrower's mortgage loan involves an escrow account for taxes and homeowner's insurance, Borrower may have the right in five years to discontinue the account and pay Borrower's own taxes and homeowner's insurance. IF Borrower is eligible to discontinue the escrow account, Borrower will be notified in five years.

**FINANCIAL CONDITION.** BY SIGNING THIS AUTHORIZATION, BORROWER REPRESENTS AND WARRANTS TO LENDER THAT THE INFORMATION PROVIDED ABOVE IS TRUE AND CORRECT AND THAT THERE HAS BEEN NO MATERIAL ADVERSE CHANGE IN BORROWER'S FINANCIAL CONDITION AS DISCLOSED IN BORROWER'S MOST RECENT FINANCIAL STATEMENT TO LENDER. THIS AUTHORIZATION IS DATED JULY 6, 2020.

**BORROWER:**

CRAIG HOLDINGS LLC

By: ______________________
JESSE ROBERT CRAIG, Member of Craig Holdings LLC

LaserPro, Ver. 20.1.40.033 Copr. Finastra USA Corporation 1997, 2020. All Rights Reserved. - MN

| | | | | | |
|---|---|---|---|---|---|
| CUSTOMER NAME | | | DATE: | | **DEBIT TICKET** |
| CUSTOMER NUMBER | NOTE NUMBER | | BACK DATE | | |
| | | | NEW LOAN: | 34 | |
| REV PRIN PAYMENT: | 76 | | | | |
| | | | RENEWAL LOAN: | 70 | |
| REBATE INTEREST: | 82 | | | | |
| REBATE INSURANCE: | 64 | | DEBIT TO FINAL: | 66 | |
| | | | (Advance) | | |
| DB INT ADJUSTMENT: | 80 | | ESCROW: | 86 | |
| PLUS YEAR TO DATE: | 2 | | | | |
| ADD LATE CHARGE: | 94 | | | | |

DESCRIPTION:

**TOTAL $**

## CASHIER'S CHECK - CUSTOMER COPY

BMH          July 06, 2020                    **200757**

Purchaser:                                    **$57,000.00**

Craig Holdings LLC-Loan Proceeds

## NON NEGOTIABLE

PAY TO THE ORDER OF:

First Dakota Title - Watertown

Notice to Customer
If this check is lost, destroyed, or stolen, the bank
will not accept a replacement request on the check
until 90 days after the issue date and then only with
the issuance of a "Declaration of Loss" certification.

EXHIBIT
C-2

# DISBURSEMENT REQUEST AND AUTHORIZATION

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $155,150.00 | 07-30-2020 | 08-15-2025 | 40881 | JN | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** CRAIG HOLDINGS LLC (TIN: [redacted]3536)
1405 1ST AVE N
FARGO, ND 58102

**Lender:** Red River State Bank
Fertile
114 N Mill St
PO Box 98
Fertile, MN 56540

LOAN TYPE. This is a Fixed Rate (4.500%) Nondisclosable Loan to a Limited Liability Company for $155,150.00 due on August 15, 2025.

PRIMARY PURPOSE OF LOAN. The primary purpose of this loan is for:

- ☐ Maintenance of Borrower's Primary Residence.
- ☐ Personal, Family or Household Purposes or Personal Investment.
- ☐ Agricultural Purposes.
- ☒ Business Purposes.

SPECIFIC PURPOSE. The specific purpose of this loan is: Purchase 26 1st Ave SW Watertown SD 57201.

FLOOD INSURANCE. As reflected on Flood Map No. 46029C0338D dated 01-16-2009, for the community of WATERTOWN, CITY OF, the property that will secure the loan is not located in an area that has been identified by the Administrator of the Federal Emergency Management Agency as an area having special flood hazards. Therefore, although flood insurance may be available for the property, no special flood hazard insurance protecting property not located in an area having special flood hazards is required by law for this loan at this time.

DISBURSEMENT INSTRUCTIONS. Borrower understands that no loan proceeds will be disbursed until all of Lender's conditions for making the loan have been satisfied. Please disburse the loan proceeds of $155,150.00 as follows:

| | |
|---|---|
| Amount paid to others on Borrower's behalf:<br>$154,000.00 to FIRST DAKOTA TITLE - WATERTOWN | $154,000.00 |
| Total Financed Prepaid Finance Charges:<br>$1,150.00 Loan Documentation Fee | $1,150.00 |
| Note Principal: | $155,150.00 |

NOTICE OF RIGHT TO DISCONTINUE ESCROW. If Borrower's mortgage loan involves an escrow account for taxes and homeowner's insurance, Borrower may have the right in five years to discontinue the account and pay Borrower's own taxes and homeowner's insurance. IF Borrower is eligible to discontinue the escrow account, Borrower will be notified in five years.

FINANCIAL CONDITION. BY SIGNING THIS AUTHORIZATION, BORROWER REPRESENTS AND WARRANTS TO LENDER THAT THE INFORMATION PROVIDED ABOVE IS TRUE AND CORRECT AND THAT THERE HAS BEEN NO MATERIAL ADVERSE CHANGE IN BORROWER'S FINANCIAL CONDITION AS DISCLOSED IN BORROWER'S MOST RECENT FINANCIAL STATEMENT TO LENDER. THIS AUTHORIZATION IS DATED JULY 30, 2020.

BORROWER:

CRAIG HOLDINGS LLC

By: member
JESSE ROBERT CRAIG, Member of CRAIG HOLDINGS LLC

LaserPro, Ver. 20.1.40.065 Copr. Finastra USA Corporation 1997, 2020. All Rights Reserved. - MN C:\HARLAND\CFI\LPL\J20.FC TR-4906 PR-87

*  *  *  Communication Result Report ( Jul. 30. 2020 10:52AM )  *  *  *

1)
2) RED RIVER STATE BANK FERTILE

Date/Time: Jul. 30. 2020 10:52AM

| File No. Mode | Destination | Pg(s) | Result | Page Not Sent |
|---|---|---|---|---|
| 0382 Memory TX | RRSB Halstad | P. 2 | OK | |

Reason for error
E. 1) Hang up or line fail          E. 2) Busy
E. 3) No answer                      E. 4) No facsimile connection
E. 5) Exceeded max. E-mail size      E. 6) Destination does not support IP-Fax

## WIRE TRANSFER ORDER

| | |
|---|---|
| Date | 7/30/2020 |
| Sender ABA # | 091006109 |
| Bank Name | Red River State Bank |

☑ Customer
☐ Non-Customer — Check with Lori Ostberg

ORIGINATION INFORMATION

Name  Craig Holdings LLC
Street Address  1405 1st Ave N
City, State, Zip  Fargo ND 58102
Account Number  40981
Verified Collected Funds in Account  _MØ_  (initials)

WIRE THROUGH

Bank Name  Great Western Bank
ABA Number  ▮▮▮▮▮
Dollar Amount  $154,000.00

BENEFICIARY INFORMATION

For Credit To  First Dakota Title Watertown
Street Address  100 North Broadway
City, State, Zip  Watertown SD 57201
Account Number  ▮▮▮▮▮
For Further Credit To  _____
Account Number  Please Reference ▮▮▮▮▮
☐ OFAC Verified - by Lori

☐ IN-PERSON REQUEST:  ☐ Known Customer  ☐ Identity Verified                ☐ Internal Business Purpose
Verified Wire Transfer agreement on file  Yes / No    Initial  _____
CUSTOMER SIGNATURE  _____

☑ NOT IN-PERSON REQUEST
Request received: ☐ Telephone (time: _____)  ☑ Email Request (attached)  ☐ Fax request (attached)  ☐ Mail request (attached)
Call Back Verification details:
Date: 7/30/2020  Time:  10:35am  Who performed callback: Meah Roberson
Customer/Authorized Rep spoke with: Micheal Lunds
☑ Identity verified  ☐ Authority verified
Phone Number called to verify: 605-856-5139
If not known means funds, who must be agreement on file?    Yes / No

| | | | SOURCE OF FUNDS |
|---|---|---|---|
| Wire Transfer Amount | US $ | 154,000.00 | ☐ Cash |
| | | EBA OK? | ☐ Check |
| Wire Transfer Fee | $ | 12.00 / Initials | ☐ Deposit Acct |
| | | | ☑ Wire |

TELLER SIGNATURE

APPROVED BY OFFICER  _____  (Attach any supporting documents on reverse side )



**CREDIT**   MCM 5003 (R 7/10)   **GENERAL LEDGER**          DATE  7/30/2020

ACCOUNT NAME  UBB                              APPROVED BY  NP

DESCRIPTION / REMARKS                                         AMOUNT

Loan Proceeds Craig Holdings LLC              1 5 4, 0 0 0 0 0

Account Number        Tran Code

                                        $   1 5 4 0 0 0 . 0 0

100107020 7/30/2020    $154000.00
020111000080 TC 0

---

**CREDIT**   MCM 5003 (R 7/10)   **GENERAL LEDGER**          DATE  7/30/2020

ACCOUNT NAME  Commercial Loan Fees            APPROVED BY  NP

DESCRIPTION / REMARKS                                         AMOUNT

Doc fee Craig Holdings Loan # 40881           1 1 5 0 0 0

Account Number        Tran Code

                                        $   1 1 5 0 . 0 0

200517030 7/30/2020    $1150.00
020111000090 TC 0

---

CUSTOMER NAME  Craig Holdings LLC        DATE: 7/30/2020   **DEBIT TICKET**

CUSTOMER NUMBER    NOTE NUMBER           BACK DATE
                   40881
REV PRIN PAYMENT:  76                    NEW LOAN:        34  155,150.00

REBATE INTEREST:   82                    RENEWAL LOAN:    70
REBATE INSURANCE:  64                    DEBIT TO FINAL:  66
                                           (Advance)
DB INT ADJUSTMENT: 80                    ESCROW:          86
PLUS YEAR TO DATE:  2
ADD LATE CHARGE:   94

DESCRIPTION:                             TOTAL  $   1 5 5 1 5 0 . 0 0

0 7/30/2020    $155150.00
020111000100 TC 0

C-2

EXHIBIT
C-3

# DISBURSEMENT REQUEST AND AUTHORIZATION

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | O |
|---|---|---|---|---|---|---|
| $72,450.00 | 09-30-2020 | 09-30-2025 | 40910 | JN | | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** CRAIG HOLDINGS LLC (TIN: [redacted]3536)
1405 1ST AVE N
FARGO, ND 58102

**Lender:** Red River State Bank
Fertile
114 N Mill St
PO Box 98
Fertile, MN 56540

---

LOAN TYPE. This is a Fixed Rate (4.500%) Nondisclosable Loan to a Limited Liability Company for $72,450.00 due on September 30, 2025.

PRIMARY PURPOSE OF LOAN. The primary purpose of this loan is for:

- ☐ Maintenance of Borrower's Primary Residence.
- ☐ Personal, Family or Household Purposes or Personal Investment.
- ☐ Agricultural Purposes.
- ☒ Business Purposes.

SPECIFIC PURPOSE. The specific purpose of this loan is: PURCHASE 114 1ST SW WATERTOWN SD 57201.

FLOOD INSURANCE. Some of the property that will secure the loan is not located in an area that has been identified by the Administrator of the Federal Emergency Management Agency as an area having special flood hazards. Therefore, although flood insurance may be available for the property, no special flood hazard insurance protecting property not located in an area having special flood hazards is required by law for this loan at this time.

DISBURSEMENT INSTRUCTIONS. Borrower understands that no loan proceeds will be disbursed until all of Lender's conditions for making the loan have been satisfied. Please disburse the loan proceeds of $72,450.00 as follows:

| | |
|---|---|
| Amount paid to others on Borrower's behalf:<br>$71,906.62 to Wire to First Dakota Title Watertown | $71,906.62 |
| Total Financed Prepaid Finance Charges:<br>$543.38 Loan Origination Fee | $543.38 |
| Note Principal: | $72,450.00 |

NOTICE OF RIGHT TO DISCONTINUE ESCROW. If Borrower's mortgage loan involves an escrow account for taxes and homeowner's insurance, Borrower may have the right in five years to discontinue the account and pay Borrower's own taxes and homeowner's insurance. IF Borrower is eligible to discontinue the escrow account, Borrower will be notified in five years.

FINANCIAL CONDITION. BY SIGNING THIS AUTHORIZATION, BORROWER REPRESENTS AND WARRANTS TO LENDER THAT THE INFORMATION PROVIDED ABOVE IS TRUE AND CORRECT AND THAT THERE HAS BEEN NO MATERIAL ADVERSE CHANGE IN BORROWER'S FINANCIAL CONDITION AS DISCLOSED IN BORROWER'S MOST RECENT FINANCIAL STATEMENT TO LENDER. THIS AUTHORIZATION IS DATED SEPTEMBER 30, 2020.

BORROWER:

CRAIG HOLDINGS LLC

By: ______________________________
JESSE ROBERT CRAIG, Member of CRAIG HOLDINGS LLC

LaserPro, Ver. 20.1.40.065 Copr. Finastra USA Corporation 1997, 2020. All Rights Reserved. - MN C:\HARLAND\CFI\LPL\I20.FC TR-4383 PR-5

FIRST DAKOTA TITLE - WATERTOWN * GREAT WESTERN BANK • ESCROW ACCOUNT • 168 NORTH BROADWAY • WATERTOWN, SD 57201

27541
**27541**

DATE: 9/30/2020                         FILE: SD20303627                    CHECK AMOUNT: $543.38
BUYER/SELLER: Craig Holdings, LLC/Larry M. Bjerke and Lucy A. Bjerke     SETTLEMENT DATE: 9/30/2020
PROPERTY ADDRESS: 114 1st Street Southwest, Watertown, SD  57201
PAYEE: Red River State Bank

9/30/2020: Our origination charge $543.38                                              $543.38

CUSTOMER NAME

CUSTOMER NUMBER          NOTE NUMBER

DATE:                    **DEBIT TICKET**

BACK DATE

REV PRIN PAYMENT:        76          NEW LOAN:          34

REBATE INTEREST:         82          RENEWAL LOAN:      70
REBATE INSURANCE:        64

DB INT ADJUSTMENT:       80          DEBIT TO FINAL:    66
PLUS YEAR TO DATE:       2                (Advance)
ADD LATE CHARGE:         94          ESCROW:            86

DESCRIPTION:             **TOTAL  $**

## Outgoing Domestic

Account Number: 2501534

Transaction Date: 9/30/2020

| | | | |
|---|---|---|---|
| Business Function - {3600} | CTR | Type/SubType - {1510} | 1000 |
| Amount - {2000} | $72,450.00 ✓ | | |
| Paid With Cash | ☐ | | |
| Receiver Bank - {3400} | | | |
| ABA | 091408734 | Bank Name | Great Western Bank |

Originating Bank - {5100}

| | |
|---|---|
| Id Code | DDA Account Number |
| Identifier | 2501534 |
| Name | Red River State Bank Halstad |
| Address 1 | |
| Address 2 | |
| Address 3 | |

Originator - {5000}

| | |
|---|---|
| Id Code | Federal Routing Number |
| Identifier | ▮▮▮▮▮ |
| Name | CRAIG HOLDINGS LLC |
| Address 1 | 1405 1ST AVE N |
| Address 2 | FARGO ND 58102 |
| Address 3 | |

Beneficiary - {4200}

| | |
|---|---|
| Id Code | DDA Account Number |
| Identifier | ▮▮▮▮ ✓ |
| Name | FIRST DAKOTA TITLE - WATERTOWN |
| Address 1 | 168 NORTH BROADWAY |
| Address 2 | WATERTOWN SD 57201 |
| Address 3 | |
| Beneficiary Info - {6400} | FOR FURTHER CREDIT TO: SD 20303627 CRAIG HOLDINGS LLC 114 1ST SOUTHWEST WATERTOWN, SD 57201 |

_KK_

File Attachments  No Attachments

Transaction Description  CRAIG HOLDINGS LLC

Notes

**No OFAC Violation**

| | |
|---|---|
| Created By | KasiBakk14 |
| Date Created | 9/30/2020 11:01:08 AM |
| | Awaiting Verification |

First Viewed By    KasiBakk14
Date First Viewed 9/30/2020 10:58:42 AM
Last Viewed By    KasiBakk14
Date Last Viewed 9/30/2020 11:01:16 AM

Sep. 30. 2020

# WIRE TRANSFER ORDER

| Date | 9/30/2020 | ☑ Customer |
| Sender ABA # | 091205199 | ☐ Non-Customer -- Check with Lori DeLong |
| Bank Name | Red River State Bank | |

## ORIGINATOR INFORMATION

Name          Craig Holdings LLC

Street Address   1405 1st Ave N

City, State, Zip   Fargo ND 58102

Account Number   ▉

Verified Collected Funds in Account    (MP)      (initials)  KK      (initials)

## WIRE THROUGH

Bank Name     Great Western Bank

ABA Number    ▉

Dollar Amount   $72,450.00

## BENEFICIARY INFORMATION

For Credit To   First Dakota Title - Watertown

Street Address   168 North Broadway

City, State, Zip   Watertown SD 57201

Account Number   ▉

For Further Credit To _____

Account Number   ▉      Craig Holdings LLC

☑ OFAC Verified - by UBB

| ☐ IN-PERSON REQUEST:   ☐ Known Customer   ☐ Identity Verified | ☐ Internal Business Purpose |

Verified Wire Transfer agreement on file:  Yes / No     Initial: _____

CUSTOMER SIGNATURE _____

☑ NOT IN- PERSON REQUEST:
Request received: ☐ Telephone (Initial: _____)  ☑ Email Request (attached)  ☐ Fax request (attached)  ☐ Mail request (attached)

Call Back Verfioation details:
Date: _9/30/2020_ Time: __10:30am__.  Who performed callback: _Martha Peterson_

Customer/Authorized Rep spoke with: _Michael Lanards   First Dakota Title_
☑ Identity verified   ☐ Authority verified
Phone Number called to verify: _____

If not loan source funds, wire transfer agreement on file?     Yes / No

| | | | SOURCE OF FUNDS |
| Wire Transfer Amount | US $ | 72,450.00 ✓ | EBA OK? | ☐ Cash |
| | | | | ☐ Check |
| Wire Transfer Fee | $ | 12.00 | KK Initials | ☐ Deposit Acct |
| | | | | ☑ Loan |

TELLER SIGNATURE    _payton larson_    KK

APPROVED BY OFFICER    _____

(Attach any supporting documents on reverse side.)

Revised: 9/30/2020

EXHIBIT

**D**

CUSTOMER NAME Generations on 1st LLC    DATE: 4/17/23    **DEBIT TICKET**

| | | | |
|---|---|---|---|
| CUSTOMER NUMBER | NOTE NUMBER 51676 | BACK DATE | |
| REV PRIN PAYMENT: | 76 | NEW LOAN: | (34) |
| REBATE INTEREST: | 82 | RENEWAL LOAN: | 70 |
| REBATE INSURANCE: | 64 | | |
| | | DEBIT TO FINAL: | 66 |
| DB INT ADJUSTMENT: | 80 | (Advance) | |
| PLUS YEAR TO DATE: | 2 | ESCROW: | 86 |
| ADD LATE CHARGE: | 94 | | |

DESCRIPTION:

**TOTAL $**    81 0 0 0 0 0 0 .00

CUSTOMER NAME  Craig Hol.

CUSTOMER NUMBER          NOTE NUMBER
                              40869

REBATE INTEREST:          82 <        >
REBATE INSURANCE:     C/L 64 <        >
REBATE INSURANCE:     AH 78 <         >
CREDIT TO FINAL:          92
EXTENSION DATE:           38
        FEE:              90
CR INT ADJUSTMENT:        84
MINUS YEAR TO DATE:        4
INSURANCE PAYMENT:        88

DESCRIPTION:

DATE: 4/17/23        **CREDIT TICKET**

BACK DATE

PAY OFF:              36
PRINCIPAL PAYMENT:    046

INTEREST PAYMENT:     50
LATE CHARGE:          58
ESCROW:               72

**TOTAL $**         46418.19

CUSTOMER NAME _Craig Hol_

DATE: 4/17/23   **CREDIT TICKET**

CUSTOMER NUMBER      NOTE NUMBER
                                   40881

BACK DATE

| | | |
|---|---|---|
| REBATE INTEREST: | 82 < | > |
| REBATE INSURANCE: | C/L 64 < | > |
| REBATE INSURANCE: | AH 78 < | > |
| CREDIT TO FINAL: | 92 | |
| EXTENSION DATE: | 38 | |
| FEE: | 90 | |
| CR INT ADJUSTMENT: | 84 | |
| MINUS YEAR TO DATE: | 4 | |
| INSURANCE PAYMENT: | 88 | |

PAY OFF: 36

PRINCIPAL PAYMENT: (46)

INTEREST PAYMENT: 50
LATE CHARGE: 58
ESCROW: 72

DESCRIPTION:

**TOTAL $**   142789.38

CUSTOMER NAME    Craig Hol

CUSTOMER NUMBER    NOTE NUMBER
40910

| | | |
|---|---|---|
| REBATE INTEREST: | 82 < | > |
| REBATE INSURANCE: | C/L 64 < | > |
| REBATE INSURANCE: | AH 78 < | > |
| CREDIT TO FINAL: | 92 | |
| EXTENSION DATE: | 38 | |
| FEE: | 90 | |
| CR INT ADJUSTMENT: | 84 | |
| MINUS YEAR TO DATE: | 4 | |
| INSURANCE PAYMENT: | 88 | |

DESCRIPTION:

DATE: 4/17/23          **CREDIT TICKET**

BACK DATE

| | |
|---|---|
| PAY OFF: | 36 |
| PRINCIPAL PAYMENT: | (46) |
| INTEREST PAYMENT: | 50 |
| LATE CHARGE: | 58 |
| ESCROW: | 72 |

**TOTAL $**          57880.80

CUSTOMER NAME        Genoubono on 1st         DATE: 4|17/23        **CREDIT TICKET**

CUSTOMER NUMBER      NOTE NUMBER              BACK DATE
                     4112|

REBATE INTEREST:        82 <          >       PAY OFF:              36
REBATE INSURANCE:     C/L 64 <        >       PRINCIPAL PAYMENT:    46
REBATE INSURANCE:     AH 78 <         >
CREDIT TO FINAL:         92                   INTEREST PAYMENT:     50
EXTENSION DATE:          38                   LATE CHARGE:          58
          FEE:           90                   ESCROW:               72
CR INT ADJUSTMENT:       84
MINUS YEAR TO DATE:       4                   **TOTAL $**    156520000
INSURANCE PAYMENT:       88

DESCRIPTION:

CUSTOMER NAME    Generations

CUSTOMER NUMBER    NOTE NUMBER
51404

| | | |
|---|---|---|
| REBATE INTEREST: | 82 < | > |
| REBATE INSURANCE: | C/L 64 < | > |
| REBATE INSURANCE: | AH 78 < | > |
| CREDIT TO FINAL: | 3 92 | |
| EXTENSION DATE: | 38 | |
| FEE: | 90 | |
| CR INT ADJUSTMENT: | 84 | |
| MINUS YEAR TO DATE: | 4 | |
| INSURANCE PAYMENT: | 88 | |

DESCRIPTION:

DATE: 4/17/22    **CREDIT TICKET**

BACK DATE

| | |
|---|---|
| PAY OFF: | 36 |
| PRINCIPAL PAYMENT: | 46 |
| INTEREST PAYMENT: | 50 |
| LATE CHARGE: | 58 |
| ESCROW: | 72 |

**TOTAL $**    2976430.98

| CUSTOMER NAME | Gerenburg | | DATE: 4/17/23 | **CREDIT TICKET** |
|---|---|---|---|---|
| CUSTOMER NUMBER | NOTE NUMBER 60404 51425 | | BACK DATE | |

| | | | | |
|---|---|---|---|---|
| REBATE INTEREST: | 82 < | > | PAY OFF: | 36 |
| REBATE INSURANCE: | C/L 64 < | > | PRINCIPAL PAYMENT: | 46 |
| REBATE INSURANCE: | AH 78 < | > | INTEREST PAYMENT: | 50 |
| CREDIT TO FINAL: | 92 | | LATE CHARGE: | 58 |
| EXTENSION DATE: | 38 | | ESCROW: | 72 |
| FEE: | 90 | | | |
| CR INT ADJUSTMENT: | 84 | | | |
| MINUS YEAR TO DATE: | 4 | | | |
| INSURANCE PAYMENT: | 88 | | | |

DESCRIPTION:

**TOTAL $** 1094025.15

CUSTOMER NAME Concentura  51437

CUSTOMER NUMBER   NOTE NUMBER  51437

DATE: 4/17/23   **CREDIT TICKET**

BACK DATE

| | | |
|---|---|---|
| REBATE INTEREST: | 82 < | > |
| REBATE INSURANCE: | C/L 64 < | > |
| REBATE INSURANCE: | AH 78 < | > |
| CREDIT TO FINAL: | 3 92 | |
| EXTENSION DATE: | 38 | |
| FEE: | 90 | |
| CR INT ADJUSTMENT: | 84 | |
| MINUS YEAR TO DATE: | 4 | |
| INSURANCE PAYMENT: | 88 | |

PAY OFF:   36

PRINCIPAL PAYMENT:   46

INTEREST PAYMENT:   50

LATE CHARGE:   58

ESCROW:   72

**TOTAL $**   424259.84

DESCRIPTION:

CUSTOMER NAME  Generation

CUSTOMER NUMBER        NOTE NUMBER
                        51499

| | | | |
|---|---|---|---|
| REBATE INTEREST: | 82 < | > | |
| REBATE INSURANCE: | C/L 64 < | > | |
| REBATE INSURANCE: | AH 78 < | > | |
| CREDIT TO FINAL: | 3 92 | | |
| EXTENSION DATE: | 38 | | |
| FEE: | 90 | | |
| CR INT ADJUSTMENT: | 84 | | |
| MINUS YEAR TO DATE: | 4 | | |
| INSURANCE PAYMENT: | 88 | | |

DESCRIPTION:

DATE: 4/17/23        **CREDIT TICKET**

BACK DATE

| | |
|---|---|
| PAY OFF: | 36 |
| PRINCIPAL PAYMENT: | 46 |
| INTEREST PAYMENT: | 50 |
| LATE CHARGE: | 58 |
| ESCROW: | 72 |

**TOTAL $**        843 168.59

CUSTOMER NAME Generations

CUSTOMER NUMBER          NOTE NUMBER
                         51471

| | | | DATE: 4/17/23 | **CREDIT TICKET** |
|---|---|---|---|---|
| REBATE INTEREST: | 82 < | > | BACK DATE | |
| REBATE INSURANCE: | C/L 64 < | > | PAY OFF: | 36 |
| REBATE INSURANCE: | AH 78 < | > | PRINCIPAL PAYMENT: | 46 |
| CREDIT TO FINAL: | 392 | | INTEREST PAYMENT: | 50 |
| EXTENSION DATE: | 38 | | LATE CHARGE: | 58 |
| FEE: | 90 | | ESCROW: | 72 |
| CR INT ADJUSTMENT: | 84 | | | |
| MINUS YEAR TO DATE: | 4 | | | |
| INSURANCE PAYMENT: | 88 | | | |

DESCRIPTION:

**TOTAL $**   653 729.65

CUSTOMER NAME  Generators

CUSTOMER NUMBER                NOTE NUMBER
                                      51488

REBATE INTEREST:           82  <                    >
REBATE INSURANCE:      C/L 64  <                    >
REBATE INSURANCE:      AH 78  <                    >
CREDIT TO FINAL:              3 92
EXTENSION DATE:             38
            FEE:                  90
CR INT ADJUSTMENT:        84
MINUS YEAR TO DATE:       4
INSURANCE PAYMENT:       88

DESCRIPTION:

DATE: 4\17\23              **CREDIT TICKET**

    BACK DATE

PAY OFF:                    36
PRINCIPAL PAYMENT:          46

INTEREST PAYMENT:           50
LATE CHARGE:                58
ESCROW:                     72

**TOTAL $**        27404360

CUSTOMER NAME  Mulinda Crago

CUSTOMER NUMBER          NOTE NUMBER
                                                41206

REBATE INTEREST:              82 <              >
REBATE INSURANCE:        C/L 64 <              >
REBATE INSURANCE:        AH 78 <              >
CREDIT TO FINAL:                  92
EXTENSION DATE:                   38
          FEE:                                  90
CR INT ADJUSTMENT:           84
MINUS YEAR TO DATE:           4
INSURANCE PAYMENT:          88

DESCRIPTION:

DATE: 4/17/23          **CREDIT TICKET**

    BACK DATE

PAY OFF:                         36
PRINCIPAL PAYMENT:     46

INTEREST PAYMENT:      50
LATE CHARGE:               58
ESCROW:                        72

**TOTAL $**        22053.82



EXHIBIT

E-1

FOR SECURITY PURPOSES, THE FACE OF THIS DOCUMENT CONTAINS A COLORED BACKGROUND AND MICROPRINTING IN THE BORDER

**CP BUSINESS MANAGEMENT - APARTMENTS**
PO BOX 9379
FARGO, ND 58106
701-237-3369

STARION FINANCIAL
2754 BRANT DR SOUTH
FARGO, ND 58106

4160

05/11/23

$55,830.18**

**** FIFTY FIVE THOUSAND EIGHT HUNDRED THIRTY AND 18/100 DOLLARS

TO THE
ORDER OF

RED RIVER STATE BANK
300 2ND AVE W
HALSTAD, MN   56548

MEMO:

SECURITY LOCKS WILL DISAPPEAR WHEN COPIED OR WITH NORMAL BODY HEAT

225B

---

| CUSTOMER NAME | Generations | DATE: | | **CREDIT TICKET** |
|---|---|---|---|---|
| CUSTOMER NUMBER | NOTE NUMBER 51676 | BACK DATE 5/15/23 | | |
| | | PAY OFF: | 36 | |
| REBATE INTEREST: | 82 < | > PRINCIPAL PAYMENT: | 46 | 13,887.71 |
| REBATE INSURANCE: | C/L 64 < | > | | |
| REBATE INSURANCE: | AH 78 < | > INTEREST PAYMENT: | 50 | 41,942.47 |
| CREDIT TO FINAL: | 92 | LATE CHARGE: | 58 | |
| EXTENSION DATE: | 38 | ESCROW: | 72 | |
| FEE: | 90 | | | |
| CR INT ADJUSTMENT: | 84 | | | |
| MINUS YEAR TO DATE: | 4 | | | |
| INSURANCE PAYMENT: | 88 | **TOTAL $** | | 55 830.18 |

DESCRIPTION:

530000004

Eighth Generations Note Payment 1

EXHIBIT
E-2



FOR SECURITY PURPOSES, THE FACE OF THIS DOCUMENT CONTAINS A COLORED BACKGROUND AND MICROPRINTING IN THE BORDER

**CP BUSINESS MANAGEMENT - APARTMENTS**
PO BOX 9379
FARGO, ND 58106
701-237-3369

STARION FINANCIAL
2754 BRANT DR SOUTH
FARGO, ND 58106

4183

06/01/23

$78,355.18**

TO THE
ORDER OF

**** SEVENTY EIGHT THOUSAND THREE HUNDRED FIFTY FIVE AND 18/100 DOLLARS

RED RIVER STATE BANK
300 2ND AVE W
HALSTAD, MN 56548

MEMO: Loan Payment

SECURITY LOCKS WILL DISAPPEAR WHEN COPIED OR WITH NORMAL BODY HEAT

⑈ 2258⑈

**LOAN DEPARTMENT CREDIT**
MCM 5002 (R 4/10)

Date 6/2/23   Approved by CBP

CUSTOMER NAME

Eighth Generations

| Customer Number | Loan Number | Tran Code | |
|---|---|---|---|
| | 51676 | 09 s | 55830.18 |

46  Principal Payment
50  Interest Payment
58  Late Charge
92  Principal Payment (End)
09  Regular Payment

⑈53010000⑈

\* Check 4183 was divided between the Eighth Generations Note ($55,830.18) and Parkside Note
($22,525.00). *See* Parkside Note Aff., **Payment 18**.

Eighth Generations Note Payment 2



\* Check 4275 was divided between the Eighth Generations Note ($55,830.18) and Parkside Note ($13,907.96 and $8,617.04). *See* Parkside Note Aff., **Payment 19**.

EXHIBIT

E-4



FOR SECURITY PURPOSES, THE FACE OF THIS DOCUMENT CONTAINS A COLORED BACKGROUND AND MICROPRINTING IN THE BORDER

**CP BUSINESS MANAGEMENT - APARTMENTS**
PO BOX 9379
FARGO, ND 58106
701-237-3369

STARION FINANCIAL
2754 BRANT DR SOUTH
FARGO, ND 58106

4308

08/01/23

$78,355.18**

TO THE
ORDER OF    **** SEVENTY EIGHT THOUSAND THREE HUNDRED FIFTY FIVE AND 18/100 DOLLARS
RED RIVER STATE BANK
300 2ND AVE W
HALSTAD, MN   56548

MEMO: Loan Payment

SECURITY LOCKS WILL DISAPPEAR WHEN COPIED OR WITH NORMAL BODY HEAT.

2 258

**LOAN DEPARTMENT CREDIT**
MCM 5002 (R 4/10)

DATE 8-16-23   APPROVED BY CAM

CUSTOMER NAME

Generations on 1st LLC

| Customer Number | Loan Number | Tran Code | |
|---|---|---|---|
| | 5 1 6 7 6 | 0 9  s | 5 5 8 3 0 . 1 8 |

46  Principal Payment
50  Interest Payment
58  Late Charge
92  Principal Payment (End)
09  Regular Payment
Memo

530 10000

* Check 4308 was divided between the Eighth Generations Note ($55,830.18) and Parkside Note ($22,525.00). *See* Parkside Note Aff., **Payment 20**.

Eighth Generations Note Payment 4



* Check 4368 was divided between the Eighth Generations Note ($55,830.18) and Parkside Note ($22,525.00). *See* Parkside Note Aff., **Payment 21**.



EXHIBIT

**E-6**

WARNING: THIS DOCUMENT HAS SECURITY FEATURES IN THE PAPER

**CP BUSINESS MANAGEMENT - APARTMENTS**

PO BOX 9379
FARGO, ND 58106
701-237-3369

STARION FINANCIAL

2754 BRANT DR SOUTH
FARGO, ND 58106

4462

10/02/23

$78,355.18**

**** SEVENTY EIGHT THOUSAND THREE HUNDRED FIFTY FIVE AND 18/100 DOLLARS

TO THE
ORDER OF

RED RIVER STATE BANK
300 2ND AVE W
HALSTAD, MN    56548

MEMO: Loan Payment

2258

**LOAN DEPARTMENT CREDIT**
MCM 5002 (R 4/10)

DATE 10-10-23  APPROVED BY LAm+

CUSTOMER NAME

Generations on 1st LLC

46   Principal Payment
50   Interest Payment
58   Late Charge
92   Principal Payment (End)
09   Regular Payment
     Memo

| Customer Number | Loan Number | Tran Code | | |
|---|---|---|---|---|
| | 51676 | 09 | $ | 55830.18 |

⑈530 10000 ⑈

* Check 4462 was divided between the Eighth Generations Note ($55,830.18) and Parkside Note
($22,525.00). *See* Parkside Note Aff., **Payment 22**.

Eighth Generations Note Payment 6



EXHIBIT
E-7

WARNING: THIS DOCUMENT HAS SECURITY FEATURES IN THE PAPER

**CP BUSINESS MANAGEMENT - APARTMENTS**

PO BOX 9379
FARGO, ND 58106
701-237-3369

STARION FINANCIAL
2754 BRANT DR SOUTH
FARGO, ND 58106

4506

11/01/23

$78,355.18**

**** SEVENTY EIGHT THOUSAND THREE HUNDRED FIFTY FIVE AND 18/100 DOLLARS

TO THE
ORDER OF

RED RIVER STATE BANK
300 2ND AVE W
HALSTAD, MN   56548

MEMO: Loan Payment

⑈              2 2 5 8 ⑈

---

**LOAN DEPARTMENT CREDIT**
MCM 5003 (R 4/10)

DATE 11-7-23    APPROVED BY

CUSTOMER NAME

Generations on 1st LLC

| Customer Number | Loan Number | Tran Code |
|---|---|---|
| | 5 1 6 7 6 | 09   s   55,830.18 |

⑈530 10000 1⑈

46  Principal Payment
50  Interest Payment
58  Late Charge
92  Principal Payment (End)
09  Regular Payment
Memo

---

* Check 4506 was divided between the Eighth Generations Note ($55,830.18) and Parkside Note ($22,525.00). *See* Parkside Note Aff., **Payment 23**.

Eighth Generations Note Payment 7

**EXHIBIT**

**E-8**

**File Information**

| | |
|---|---|
| Transaction Date | 12/30/2024 4:23:51 PM |
| File Date | Monday December 30, 2024 03:00 PM |
| Immediate Destination | 091205199 RED RIVER STATE BANK HA |

**Batch Information**

| | | | |
|---|---|---|---|
| Service Class Code | 200 | Standard Entry Class Code | PPD |
| Settlement Date | 12/30/2024 | Originator Status Code | 1 |
| Effective Entry Date | 241230 | Company Entry Description | Generation |
| Originating DFI Identification | 09140017 | | |
| Company Name | HME COMPANIES LL | Originator Identification | 9832282354 |
| Company Discretionary Data | | Company Descriptive Date | |
| Entry/Addenda Count | 1 | Batch Number | 18 |
| Credit Total | $195,262.92 | Debit Total | $0.00 |

**Entries**

| | | | |
|---|---|---|---|
| Amount | $195,262.92 | Prenotification | |
| Receiving DFI Identification | 09120519 | Account Type | Checking |
| DFI Account Number | 4657 | Identification Number | 6427574 |
| Receiving Entity Name | Generations on First | | |
| Discretionary Data | | | |
| Transaction Code | 22 | Trace Number | 91400179354134 |
| Return Code | | Return | |
| Standard Entry Class Code | PPD | | |
| Settlement Date | 12/30/2024 | | |

**Preview History**

**Last Viewed By** DaniHarl32 **Date First Viewed** 12/31/2024 11:09:52 AM
**Last Viewed By** DaniHarl32 **Date Last Viewed** 12/31/2024 11:09:59 AM

Eighth Generations Note Payment 8





Eighth Generations Note Payment 8



**LOAN DEPARTMENT CREDIT**
MCM 5002 (R 4/10)

DATE 12/30/24 APPROVED BY    CBL

CUSTOMER NAME

Generations on 1st LLC

Customer Number          Loan Number

                              51676

46  Principal Payment
50  Interest Payment
58  Late Charge
92  Principal Payment (End)
09  Regular Payment
Memo february 2024

Tran Code

09  s      55830.00

⑈530⑊0000⑊⑈

**LOAN DEPARTMENT CREDIT**
MCM 5002 (R 4/10)

DATE 12/30/24 APPROVED BY    CBL

CUSTOMER NAME

Generations on 1st LLC

Customer Number          Loan Number

                              51676

46  Principal Payment
50  Interest Payment
58  Late Charge
92  Principal Payment (End)
09  Regular Payment
Memo Partial March 2024

Tran Code

09  s      27772.92

⑈530⑊0000⑊⑈

\* A withdrawal of $195,262.92 from HME Companies LLC was made on 12/30/24, totaling the full payment amount of $55,830.00 for the overdue December 2023 – February 2024 payments and part of the March 2024 payment ($27,772.92).

Eighth Generations Note Payment 8

# Incoming

EXHIBIT

E-9

Account Number:   1534

Transaction Date: 2/3/2025

To Return this wire

> Call/Email UBB should this wire require to be returned.

Submit

| | | | |
|---|---|---|---|
| TransactionDate | 2/3/2025 4:12:46 PM | Date Created | 2/3/2025 4:12:46 PM |
| Business Function - {3600} | CTR | Type/SubType - {1510} | 1000 |
| Amount - {2000} | $114,592.03 | | |
| Sender Reference | US BANKRUPTCY | | |

Receiver Bank - {3400}

| | | | |
|---|---|---|---|
| ABA | 1322 | Bank Name | UNITED BKRS MPLS |
| IMAD | 20250203MMQFMPN4000017 | | |
| OMAD | | | |
| Output Date | 0203 | Output FRB Appl ID | FT01 |
| Output Time | 1654 | | |
| OMAD | 20250203I1B78Q1C00110602031654 | | |

Sender Bank - {3100}

| | |
|---|---|
| ABA | 1258 |
| Bank Name | MIDDLETOWN VALLEY |

Originator - {5000}

| | |
|---|---|
| Id Code | DDA Account Number |
| Identifier | 7208 |
| Name | THE VERSTANDIG LAW FIRM, LLC |
| Address 1 | 9812 FALLS ROAD #114-160 |
| Address 2 | POTOMAC MD 20854 |
| Address 3 | |

Beneficiary Bank - {4100}

| | |
|---|---|
| Id Code | DDA Account Number |
| Identifier | 1534 |
| Name | |
| Address 1 | |
| Address 2 | |
| Address 3 | |

Eighth Generations Note Payment 9

Beneficiary - {4200}

| | |
|---|---|
| Id Code | DDA Account Number |
| Identifier | -1534 |
| Name | RED RIVER STATE BANK |
| Address 1 | |
| Address 2 | |
| Address 3 | |
| Originator to BNF info - {6000} | COURT FOR THE STATE OF NORTH DAKOTA |

Transaction Tracker Users

[ Add User ] [ Forward ] [ Remove User ]

**No OFAC Violation**

First Viewed By    amyfage70
Date First Viewed 2/3/2025 4:26:04 PM
Last Viewed By    amyfage70
Date Last Viewed 2/3/2025 4:26:04 PM

**DEBIT**
MCM 5001 (R 7/10)

**GENERAL LEDGER**

ACCOUNT NAME   UBB

DATE   2/4/2025

APPROVED BY

DESCRIPTION / REMARKS

AMOUNT

Generations # 51676

Account Number

7020

Tran Code

$  114592.03

1:59000000 2:

**LOAN DEPARTMENT CREDIT**
MCM 5002 (R 4/10)

DATE  02/04/2025   APPROVED BY   CBJ

CUSTOMER NAME

Generations on 1st LLC

Customer Number      Loan Number      Tran Code

51676      09  $   114592.03

46   Principal Payment
50   Interest Payment
58   Late Charge
92   Principal Payment (End)
09   Regular Payment
Memo

1:530 10000 1:

Eighth Generations Note Payment 9

EXHIBIT.

**E-10**

THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND ON WHITE PAPER

**GENERATIONS ON 1ST, LLC**
DEBTOR IN POSESSION - CASE #25-30002
PO BOX 9379
FARGO, ND 58106

STARION FINANCIAL
2754 Brandt Dr S
Fargo, ND 58104

30009

02/12/25

$25,000.00**

TO THE
ORDER OF     **** TWENTY FIVE THOUSAND AND 00/100 DOLLARS

RED RIVER STATE BANK
Attn Danielle Harless
300 2ND AVE W
HALSTAD, MN   56548

MEMO: Loan Payment

THE BACK OF THIS DOCUMENT CONTAINS CHECK SECURITY WATERMARK AND COIN REACTIVE INK

8666

**LOAN DEPARTMENT CREDIT**
MCM 5002 (R 4/10)

DATE 2|14|25 APPROVED BY

CUSTOMER NAME

Generations on 1st

| | | |
|---|---|---|
| 46 | Principal Payment | |
| 50 | Interest Payment | |
| 58 | Late Charge | |
| 92 | Principal Payment (End) | |
| 09 | Regular Payment | |

Memo Cash Collateral pymt due 2/15/25

Customer Number      Loan Number      Tran Code

51676      09  $      25000.00

⑆530⑈0000⑈

Eighth Generations Note Payment 10

THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND ON WHITE PAPER

**EXHIBIT**

**E-11**

**GENERATIONS ON 1ST, LLC**
DEBTOR IN POSESSION - CASE #25-30002
PO BOX 9379
FARGO, ND 58106

STARION FINANCIAL
2754 Brandt Dr S
Fargo, ND 58104

30031

03/05/25                              $35,000.00**

TO THE
ORDER OF      **** THIRTY FIVE THOUSAND AND 00/100 DOLLARS

RED RIVER STATE BANK
Attn Danielle Harless
300 2ND AVE W
HALSTAD, MN   56548

THE BACK OF THIS DOCUMENT CONTAINS CHECK SECURITY WATERMARK AND COIN REACTIVE INK

⑈ ⑆666⑈

**LOAN DEPARTMENT CREDIT**
MCM 5002 (R 4/10)

DATE 03/07/25 APPROVED BY

CUSTOMER NAME

Generations on 1st LLC

| | |
|---|---|
| 46 | Principal Payment |
| 50 | Interest Payment |
| 58 | Late Charge |
| 92 | Principal Payment (End) |
| 09 | Regular Payment |

Memo Cash Collateral March

Customer Number        Loan Number        Tran Code

51676        09 $        3500000

⑆530⑆0000⑆

Eighth Generations Note Payment 11



**LOAN DEPARTMENT CREDIT**
MCM 5002 (R 4/10)

DATE 03/18/2025 APPROVED BY CBA

CUSTOMER NAME

Generations on 1st LLC

Customer Number          Loan Number          Tran Code

51676          09  $          10 000.00

46  Principal Payment
50  Interest Payment
58  Late Charge
92  Principal Payment (End)
09  Regular Payment

Memo  Wire from Verstandig

⑊530⑊0000⑊⑊

\* A \$10,000.00 payment on 3/17/25 was wired from the Verstandig Law Firm Bank Acct. ending in -7208. *See* Wire Transaction p. 1, highlighted text.

Eighth Generations Note Payment 12

# Incoming

Account Number: 2501534

Transaction Date: 3/17/2025

| To Return this wire | Call/Email UBB should this wire require to be returned. | |
|---|---|---|
| | | Submit |

| | | | |
|---|---|---|---|
| TransactionDate | 3/17/2025 4:00:29 PM | Date Created | 3/17/2025 4:00:29 PM |
| Business Function - {3600} | CTR | Type/SubType - {1510} | 1000 |
| Amount - {2000} | $10,000.00 | | |
| Sender Reference | TO TRUST ACCT | | |
| Receiver Bank - {3400} | | | |
| ABA | 091001322 | Bank Name | UNITED BKRS MPLS |
| IMAD | 20250317MMQFMPN4000010 | | |
| OMAD | | | |
| Output Date | 0317 | Output FRB Appl ID | FT01 |
| Output Time | 1659 | | |
| OMAD | 20250317I1B78Q1C00096403171659 | | |

Sender Bank - {3100}

| | |
|---|---|
| ABA | 055001258 |
| Bank Name | MIDDLETOWN VALLEY |

Originator - {5000}

| | |
|---|---|
| Id Code | DDA Account Number |
| Identifier | 7208 |
| Name | THE VERSTANDIG LAW FIRM, LLC |
| Address 1 | 9812 FALLS ROAD #114-160 |
| Address 2 | POTOMAC MD 20854 |
| Address 3 | |

Beneficiary Bank - {4100}

| | |
|---|---|
| Id Code | DDA Account Number |
| Identifier | 1534 |
| Name | |
| Address 1 | |
| Address 2 | |
| Address 3 | |

Beneficiary - {4200}

| | |
|---|---|
| Id Code | DDA Account Number |
| Identifier | -1534 |
| Name | RED RIVER STATE BANK |
| Address 1 | 300 2ND AVENUE WEST |
| Address 2 | HALSTAD, MN 56548 |
| Address 3 | |
| Originator to BNF info - {6000} | FURTHER CREDIT |
| | ITEMS IN TRANSIT#100107030 |

Transaction Tracker Users

[ Add User ] [ Forward ] [ Remove User ]





**No OFAC Violation**

First Viewed By    HeidRoy93
Date First Viewed 3/17/2025 4:05:32 PM
Last Viewed By    HeidRoy93
Date Last Viewed 3/17/2025 4:05:32 PM



EXHIBIT

E-13

THE FACE OS THIS DOCUMENT HAS A COLORED BACKGROUND ON WHITE PAPER

**GENERATIONS ON 1ST, LLC**
DEBTOR IN POSESSION - CASE #25-30002
PO BOX 9379
FARGO, ND 58106

STARION FINANCIAL
2754 Brandt Dr S
Fargo, ND 58104

30053

04/10/25                    $35,000.00**

TO THE
ORDER OF      **** THIRTY FIVE THOUSAND AND 00/100 DOLLARS

RED RIVER STATE BANK
Attn Danielle Harless
300 2ND AVE W
HALSTAD, MN    56548

MEMO: Loan Payment

THE BACK OF THIS DOCUMENT CONTAINS CHECK SECURITY WATERMARK AND COIN REACTIVE INK

⑈    ⑊⑆⑆⑆⑊

**LOAN DEPARTMENT CREDIT**
MCM 5002 (R 4/10)

DATE 4/14/2025 APPROVED BY    CBad

CUSTOMER NAME

Generations on 1ˢᵗ LLC

Customer Number        Loan Number

            51676

46  Principal Payment

50  Interest Payment

58  Late Charge

92  Principal Payment (End)

09  Regular Payment

Memo  April Cash Collateral

Tran Code

09  $        35000.00

⑈530⑊0000⑈⑈

Eighth Generations Note Payment 13

**EXHIBIT**

**E-14**



THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND ON WHITE PAPER

**GENERATIONS ON 1ST, LLC**
DEBTOR IN POSESSION - CASE #25-30002
PO BOX 9379
FARGO, ND 58106

STARION FINANCIAL
2754 Brandt Dr S
Fargo, ND 58104

30074

05/12/25

$35,000.00**

TO THE
ORDER OF   **** THIRTY FIVE THOUSAND AND 00/100 DOLLARS

RED RIVER STATE BANK
Attn Danielle Harless
300 2ND AVE W
HALSTAD, MN   56548

MEMO: Loan Payment

THE BACK OF THIS DOCUMENT CONTAINS CHECK SECURITY WATERMARK AND COIN REACTIVE INK

**LOAN DEPARTMENT CREDIT**
MCM 5002 (R 4/10)

DATE 5/19/2025 APPROVED BY   CBA

CUSTOMER NAME

Generations on 1st LLC

| Customer Number | Loan Number | Tran Code |
|---|---|---|
| | 51676 | 09 $   35000.00 |

46  Principal Payment
50  Interest Payment
58  Late Charge
92  Principal Payment (End)
09  Regular Payment
Memo  May Cash Collateral

Eighth Generations Note Payment 14

EXHIBIT

**E-15**

THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND ON WHITE PAPER

**GENERATIONS ON 1ST, LLC**
DEBTOR IN POSESSION - CASE #25-30002
PO BOX 9379
FARGO, ND 58106

STARION FINANCIAL
2754 Brandt Dr S
Fargo, ND 58104

30100

06/11/25

$35,000.00**

TO THE
ORDER OF      **** THIRTY FIVE THOUSAND AND 00/100 DOLLARS

RED RIVER STATE BANK
Attn Danielle Harless
300 2ND AVE W
HALSTAD, MN   56548

MEMO: Loan Payment

THE BACK OF THIS DOCUMENT CONTAINS CHECK SECURITY WATERMARK AND COIN REACTIVE INK

⑈                            86668⑈

**LOAN DEPARTMENT CREDIT**
MCM 5002 (R 4/10)

DATE 6/13/25 APPROVED BY        CBR

CUSTOMER NAME

Generations on 1st LLC

| | |
|---|---|
| Customer Number | Loan Number |
| | 51676 |

46  Principal Payment
50  Interest Payment
58  Late Charge
92  Principal Payment (End)
09  Regular Payment
Memo  June Cash collateral

Tran Code
09  $        35000.00

⑈530100001⑈

Eighth Generations Note Payment 15

**EXHIBIT**

**E-16**

THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND ON WHITE PAPER

**GENERATIONS ON 1ST, LLC**
DEBTOR IN POSESSION - CASE #25-30002
PO BOX 9379
FARGO, ND 58106

STARION FINANCIAL
2754 Brandt Dr S
Fargo, ND 58104

30122

07/10/25

$35,000.00**

TO THE
ORDER OF    **** THIRTY FIVE THOUSAND AND 00/100 DOLLARS

RED RIVER STATE BANK
Attn Danielle Harless
300 2ND AVE W
HALSTAD, MN    56548

MEMO: Loan Payment

THE BACK OF THIS DOCUMENT CONTAINS CHECK SECURITY WATERMARK AND COIN REACTIVE INK

⑈            8666⑈

**LOAN DEPARTMENT CREDIT**
MCM 5002 (R 4/10)

DATE 7/14/25 APPROVED BY CBA

CUSTOMER NAME

Generatino on 1st LLC

| | | |
|---|---|---|
| 46 | Principal Payment | |
| 50 | Interest Payment | 35,000 — |
| 58 | Late Charge | |
| 92 | Principal Payment (End) | |
| 09 | Regular Payment | |
| | Memo | |

Customer Number        Loan Number        Tran Code

51676        09 $        35000.00

⑈530 10000 1⑈

Eighth Generations Note Payment 16

PAGE 1

0.00

11074 GENERATIONS ON 1ST LLC
PO BOX 426
FARGO ND 58107

Case 25-30002    Doc 165-1    Filed 09/16/25    Entered 09/16/25 12:27:58    Desc
Exhibits A-G    Page 51 of 53

I N Q U I R Y   S T A T E M E N T


EXHIBIT F

| LOAN # | 51676 | COLL DESC | 26 1ST AVE | SORIG BAL | 8,100,000.00 | ORIG DATE | 4/17/2023 | ORIG DISC | .06750 | RENW BAL | 0.00 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | RENW DATE | | TMS EXT 0 | | LAST MATY | 12/1/2026 | RATE | | TYPE CODE 4 | |
| | | APR OFF | CBA | COLL CODE | FA | | | | | | |

| DATE | TC1 | AMOUNT | TC2 | AMOUNT | POST DATE | DESCRIPTION | BALANCE |
|---|---|---|---|---|---|---|---|
| 04/17/2023 | 34 | 8,100,000.00 | 0 | 0.00 | | OPENING ADVANCE | 8,100,000.00 |
| 05/11/2023 | 94 | 2,791.51 | 0 | 0.00 | | | 8,100,000.00 |
| 05/15/2023 | 59 | 2,791.51 | 0 | 0.00 | | | 8,100,000.00 |
| 05/15/2023 | 46 | 13,887.71 | 50 | 41,942.47 | 05/16/2023 | Bank Error onPmt Schedule | 8,086,112.29 |
| 06/02/2023 | 46 | 28,913.40 | 50 | 26,916.78 | | | 8,057,198.89 |
| 07/10/2023 | 50 | 55,830.18 | 50 | 0.00 | | | 8,057,198.89 |
| 08/16/2023 | 50 | 55,830.18 | 0 | 0.00 | | | 8,057,198.89 |
| 09/07/2023 | 46 | 22,957.64 | 50 | 32,872.54 | | | 8,034,241.25 |
| 10/10/2023 | 46 | 6,799.30 | 50 | 49,030.88 | | | 8,027,441.95 |
| 11/08/2023 | 46 | 12,778.89 | 50 | 43,051.29 | | | 8,014,663.06 |
| 12/26/2023 | 94 | 2,791.51 | 0 | 0.00 | | | 8,014,663.06 |
| 01/25/2024 | 94 | 2,791.51 | 0 | 0.00 | | | 8,014,663.06 |
| 02/15/2024 | 92 | 8,014,663.06 | 84 | 146,734.20 | | NON-ACCRUAL | 0.00 |
| 02/15/2024 | 366 | 8,014,663.06 | 380 | 146,734.20 | | NON-ACCRUAL | 8,014,663.06 |
| 02/26/2024 | 94 | 2,791.51 | 0 | 0.00 | | | 8,014,663.06 |
| 02/29/2024 | 392 | 8,014,663.06 | 0 | 0.00 | | Correct errorin moving to N | 0.00 |
| 02/29/2024 | 384 | 167,484.49 | 0 | 0.00 | | Correct errorin moving to N | 0.00 |
| 02/29/2024 | 80 | 167,484.49 | 0 | 0.00 | | Correct errorin moving to N | 0.00 |
| 02/29/2024 | 66 | 8,014,663.06 | 0 | 0.00 | | Correct errorin moving to N | 8,014,663.06 |
| 03/25/2024 | 94 | 2,791.51 | 0 | 0.00 | | | 8,014,663.06 |
| 03/28/2024 | 92 | 8,014,663.06 | 84 | 208,985.08 | | NON-ACCRUAL | 0.00 |
| 03/28/2024 | 366 | 8,014,663.06 | 380 | 208,985.08 | | NON-ACCRUAL | 8,014,663.06 |
| 04/25/2024 | 94 | 2,791.51 | 0 | 0.00 | | | 8,014,663.06 |
| 05/28/2024 | 94 | 2,791.51 | 0 | 0.00 | | | 8,014,663.06 |
| 06/25/2024 | 94 | 2,791.51 | 0 | 0.00 | | | 8,014,663.06 |
| 07/25/2024 | 94 | 2,791.51 | 0 | 0.00 | | | 8,014,663.06 |
| 08/26/2024 | 94 | 2,791.51 | 0 | 0.00 | | | 8,014,663.06 |
| 09/25/2024 | 94 | 2,791.51 | 0 | 0.00 | | | 8,014,663.06 |
| 10/25/2024 | 94 | 2,791.51 | 0 | 0.00 | | | 8,014,663.06 |
| 11/25/2024 | 94 | 2,791.51 | 0 | 0.00 | | | 8,014,663.06 |
| 12/26/2024 | 94 | 2,791.51 | 0 | 0.00 | | | 8,014,663.06 |
| 12/30/2024 | 350 | 55,830.00 | 0 | 0.00 | 01/09/2025 | Dec2023 | 8,014,663.06 |
| 12/30/2024 | 350 | 55,830.00 | 0 | 0.00 | | Jan2024 | 8,014,663.06 |
| 12/30/2024 | 350 | 55,830.00 | 0 | 0.00 | | Feb2024 | 8,014,663.06 |
| 12/30/2024 | 350 | 27,772.92 | 0 | 0.00 | | partial Mar2024 | 8,014,663.06 |
| 01/27/2025 | 94 | 2,791.51 | 0 | 0.00 | | | 8,014,663.06 |
| 02/04/2025 | 350 | 114,592.03 | 0 | 0.00 | | | 8,014,663.06 |
| 02/14/2025 | 350 | 25,000.00 | 0 | 0.00 | | 1st cash collateral pymt due | 8,014,663.06 |
| 02/25/2025 | 94 | 2,791.51 | 0 | 0.00 | | | 8,014,663.06 |
| 03/07/2025 | 350 | 35,000.00 | 0 | 0.00 | | cash collateral pymt | 8,014,663.06 |
| 03/18/2025 | 350 | 10,000.00 | 0 | 0.00 | | | 8,014,663.06 |
| 03/25/2025 | 94 | 2,791.51 | 0 | 0.00 | | | 8,014,663.06 |

RRSB GO1st 04740

PAGE  2

I N Q U I R Y   S T A T E M E N T

Case 25-30002    Doc 165-1    Filed 09/16/25    Entered 09/16/25 12:27:58    Desc
Exhibits A-G    Page 52 of 53

11074  GENERATIONS ON 1ST LLC
       PO BOX 426
       FARGO ND 58107

LOAN #      51676  COLL DESC 26 1ST AVE SORIG BAL  8,100,000.00  ORIG DATE  4/17/2023  ORIG DISC
                   RENW DATE          TMS EXT  0              LAST MATY  12/1/2026  RATE    .06750
                   APR OFF    CBA     COLL CODE  FA

0.00  RENW BAL             0.00
      TYPE CODE 4

| DATE | TCI | AMOUNT | TC2 | AMOUNT | POST DATE | DESCRIPTION | BALANCE |
|------|-----|--------|-----|--------|-----------|-------------|---------|
| 04/14/2025 | 350 | 35,000.00 | 0 | 0.00 | | April25 cash collateral pymt | 8,014,663.06 |
| 04/25/2025 | 94 | 2,791.51 | 0 | 0.00 | | | 8,014,663.06 |
| 05/19/2025 | 350 | 35,000.00 | 0 | 0.00 | 05/20/2025 | | 8,014,663.06 |
| 05/27/2025 | 94 | 2,791.51 | 0 | 0.00 | | | 8,014,663.06 |
| 06/13/2025 | 350 | 35,000.00 | 0 | 0.00 | | | 8,014,663.06 |
| 06/25/2025 | 94 | 2,791.51 | 0 | 0.00 | | | 8,014,663.06 |

Principal: 16,114,663.06
Interest:     305,474.32

Min:       0.00
Max: 8,100,000.00

RRSB GO1st 04741

Case 25-30002 Doc 165-1 Filed 09/16/25 Entered 09/16/25 12:27:58 Desc
Exhibits A-G Page 53 of 53

EXHIBIT
G

Eighth Generations Note: Payments Applied and Accrual of Interest & Late Fees

Originating Interest Rate: 6.75% per annum

Affidavit of Choses (Executable: Eighth Generations Note)

Dated 4/17/23

| Date | Advance/Charge (+) | Payment (-) | Total | Interest Pmt. | Principal Pmt. | Transaction Description | Per Diem | # of Days | Accrued Interest | Principal Pmt. | Interest | Principal | Late Fees | TOTAL | Payment No. | Corresponding Periodic Note Payment No. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/17/2023 | 8,100,000.00 | | | | | Opening Advance | $ 1,497.95 | 0 | | | 0 | 8,100,000.00 | | | | |
| 5/15/2023 | | | | | | Interest Calculation | $ 1,497.95 | 29 | 41,942.47 | | 41,942.47 | 8,100,000.00 | | | | |
| 5/15/2023 | | (55,830.18) | (55,830.18) | (41,942.47) | (13,887.71) | May 2023 regular payment | $55,830.18 Payment: | | (41,942.47) | (13,887.71) | | 8,086,112.29 | | | 1 | |
| 6/2/2023 | | | | | | Interest Calculation | $ 1,495.38 | 18 | 26,916.78 | | 26,916.78 | 8,086,112.29 | | | | |
| 6/15/2023 | | (55,830.18) | (55,830.18) | (26,916.78) | (28,913.40) | June 2023 regular payment | $55,830.18 Payment: | | (26,916.78) | (28,913.40) | 0.00 | 8,057,198.89 | | | 2 | 18 |
| 7/10/2023 | | | | | | Interest Calculation | $ 1,490.03 | 38 | 56,621.14 | | 56,621.14 | 8,057,198.89 | | | | |
| 7/10/2023 | | (55,830.18) | (55,830.18) | (56,830.18) | | July 2023 regular payment | $55,830.18 Payment: | | (55,830.18) | | 790.96 | 8,057,198.89 | | | 3 | 19 |
| 8/16/2023 | | | | | | Interest Calculation | $ 1,490.03 | 37 | 55,121.11 | | 55,121.11 | 8,057,198.89 | | | | |
| 8/16/2023 | | (55,830.18) | (55,830.18) | (55,830.18) | | August 2023 regular payment | $55,830.18 Payment: | | (55,830.18) | | 56,927.07 | 8,057,198.89 | | | 4 | 20 |
| 9/7/2023 | | | | | | Interest Calculation | $ 1,490.03 | 22 | 32,780.66 | | 32,780.66 | 8,057,198.89 | | | | |
| 9/7/2023 | | (55,830.18) | (55,830.18) | (32,872.54) | (22,957.64) | September 2023 regular payment | $55,830.18 Payment: | | (32,872.54) | (22,957.64) | 32,872.54 | 8,034,241.25 | | | 5 | 21 |
| 10/10/2023 | | | | | | Interest Calculation | $ 1,485.78 | 33 | 49,000.86 | | 49,000.86 | 8,034,241.25 | | | | |
| 10/10/2023 | | (55,830.18) | (55,830.18) | (49,030.88) | (6,799.30) | October 2023 regular payment | $55,830.18 Payment: | | (49,030.88) | (6,799.30) | 0.00 | 8,027,441.95 | | | 6 | 22 |
| 11/8/2023 | | | | | | Interest Calculation | $ 1,484.53 | 29 | 43,051.29 | | 43,051.29 | 8,027,441.95 | | | | |
| 11/8/2023 | | (55,830.18) | (55,830.18) | (43,051.29) | (12,778.89) | November 2023 regular payment | $55,830.18 Payment: | | (43,051.29) | (12,778.89) | (0.00) | 8,014,663.06 | | | 7 | 23 |
| 12/26/2023 | 2,791.51 | | | | | Late Fee Assessed | | | | | | 8,014,663.06 | 2,791.51 | | | |
| 1/25/2024 | 2,791.51 | | | | | Late Fee Assessed | | | | | | 8,014,663.06 | 5,583.02 | | | |
| 2/26/2024 | 2,791.51 | | | | | Late Fee Assessed | | | | | | 8,014,663.06 | 8,374.53 | | | |
| 3/25/2024 | 2,791.51 | | | | | Late Fee Assessed | | | | | | 8,014,663.06 | 11,166.04 | | | |
| 4/25/2024 | 2,791.51 | | | | | Late Fee Assessed | | | | | | 8,014,663.06 | 13,957.55 | | | |
| 5/28/2024 | 2,791.51 | | | | | Late Fee Assessed | | | | | | 8,014,663.06 | 16,749.06 | | | |
| 6/25/2024 | 2,791.51 | | | | | Late Fee Assessed | | | | | | 8,014,663.06 | 19,540.57 | | | |
| 7/25/2024 | 2,791.51 | | | | | Late Fee Assessed | | | | | | 8,014,663.06 | 22,332.08 | | | |
| 8/26/2024 | 2,791.51 | | | | | Late Fee Assessed | | | | | | 8,014,663.06 | 25,123.59 | | | |
| 9/25/2024 | 2,791.51 | | | | | Late Fee Assessed | | | | | | 8,014,663.06 | 27,915.10 | | | |
| 10/25/2024 | 2,791.51 | | | | | Late Fee Assessed | | | | | | 8,014,663.06 | 30,706.61 | | | |
| 11/25/2024 | 2,791.51 | | | | | Late Fee Assessed | | | | | | 8,014,663.06 | 33,498.12 | | | |
| 12/26/2024 | 2,791.51 | | | | | Late Fee Assessed | | | | | | 8,014,663.06 | 36,289.63 | | | |
| 12/30/2024 | | (195,262.92) | (195,262.92) | | (112,778.89) | Dec 2023 -Feb 2024 & Partial May 2024 Prmts. | $ 1,482.16 Payment: | 418 | 619,544.43 | (112,778.89) | 619,544.43 | 8,014,663.06 | 36,289.63 | | 8 | |
| | | | | | | | | | (195,262.92) | | 424,281.51 | | | | | |

1/6/2025 | | | | | | BANKRUPTCY PETITION FILED | $ 1,482.16 | 7 | 10,375.13 | | 434,656.64 | 8,014,663.06 | 36,289.63 | 3,435,930.35 |

| 1/27/2025 | 2,791.51 | | | | | Late Fee Assessed | $ 1,482.16 | 29 | 42,982.59 | | 477,639.25 | 8,014,663.06 | 39,081.14 | | | |
| 2/4/2025 | | | | | | Interest Calculation | Interest Payment: | 29 | (114,592.01) | | (114,592.01) | 8,014,663.06 | 39,081.14 | 9 | |
| 2/4/2025 | | (114,592.01) | (114,592.01) | | | Funds from receivership | $ 1,482.16 | 10 | 14,821.58 | | 363,047.22 | 8,014,663.06 | 39,081.14 | | |
| 2/14/2025 | | | | | | Interest Calculation | $ 1,482.16 | | (35,000.00) | | 377,868.80 | 8,014,663.06 | 39,081.14 | | |
| 2/14/2025 | | (25,000.00) | (25,000.00) | | | Cash Collateral | Cash Collateral Pmt: | 21 | 31,135.44 | (25,000.00) | 352,868.80 | 8,014,663.06 | 39,081.14 | | |
| 2/14/2025 | 2,791.51 | | | | | Late Fee Assessed | | | | | | | 41,872.65 | 10 | |
| 3/7/2025 | | | | | | Interest Calculation | $ 1,482.16 | | 31,135.44 | | 383,994.24 | 8,014,663.06 | 41,872.65 | | |
| 3/7/2025 | | (35,000.00) | (35,000.00) | | | Cash Collateral | Cash Collateral Pmt: | | (35,000.00) | | 348,994.24 | 8,014,663.06 | 41,872.65 | | |
| 3/18/2025 | | | | | | Interest Calculation | $ 1,482.16 | 11 | 16,303.89 | | 365,298.04 | 8,014,663.06 | 41,872.65 | 11 | |
| 3/25/2025 | 2,791.51 | | | | | Late Fee Assessed | | | (10,000.00) | | 355,298.04 | 8,014,663.06 | 44,664.16 | | |
| 3/25/2025 | | (10,000.00) | (10,000.00) | | | Cash Collateral | Cash Collateral Pmt: | 27 | 40,018.42 | (35,000.00) | 395,316.46 | 8,014,663.06 | 44,664.16 | 12 | |
| 4/14/2025 | | | | | | Interest Calculation | $ 1,482.16 | | (35,000.00) | | 360,316.46 | 8,014,663.06 | 44,664.16 | | |
| 4/14/2025 | | (35,000.00) | (35,000.00) | | | Cash Collateral | Cash Collateral Pmt: | | | | | | | | |
| 4/25/2025 | 2,791.51 | | | | | Late Fee Assessed | $ 1,482.16 | 35 | 51,875.73 | | 412,192.19 | 8,014,663.06 | 47,455.67 | 13 | |
| 5/19/2025 | | | | | | Interest Calculation | $ 1,482.16 | | (35,000.00) | | 377,192.19 | 8,014,663.06 | 47,455.67 | | |
| 5/19/2025 | | (35,000.00) | (35,000.00) | | | Cash Collateral | Cash Collateral Pmt: | | | | | | | | |
| 5/27/2025 | 2,791.51 | | | | | Late Fee Assessed | $ 1,482.16 | 25 | 37,054.09 | | 414,246.29 | 8,014,663.06 | 50,247.18 | 14 | |
| 6/13/2025 | | | | | | Interest Calculation | $ 1,482.16 | | (35,000.00) | | 379,246.29 | 8,014,663.06 | 50,247.18 | | |
| 6/13/2025 | | (35,000.00) | (35,000.00) | | | Cash Collateral | Cash Collateral Pmt: | | | | | | | | |
| 6/25/2025 | 2,791.51 | | | | | Late Fee Assessed | $ 1,482.16 | 31 | 45,547.08 | | 425,180.36 | 8,014,663.06 | 53,038.69 | 15 | |
| 7/14/2025 | | | | | | Interest Calculation | $ 1,482.16 | | (35,000.00) | | 390,180.36 | 8,014,663.06 | 53,038.69 | | |
| 7/14/2025 | | (35,000.00) | (35,000.00) | | | Cash Collateral | Cash Collateral Pmt: | | | | | | | 53,038.69 | 16 | |

## U.S. BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

| In Re: | Bankruptcy No.: 25-30002 |
|---|---|
| Generations on 1st, LLC, | Chapter 11 |
| Debtor, Jointly Administered. | |
| Parkside Place, LLC, | Bankruptcy No.: 25-30003 |
| Debtor, Jointly Administered. | Chapter 11 |

### AFFIDAVIT OF CHARLES AARESTAD

### RE: GENERATIONS NOTES NOS. 1-7  & NO. 9

STATE OF MINNESOTA          )
                                                    )  SS
COUNTY OF NORMAN          )

I, Charles Aarestad, hereby state and declare as follows:

1.        I hold the title of Senior Vice President at Red River State Bank ("RRSB" or "Creditor"). I have held my current position since 2011.

2.        I hold a bachelor's degree in Agricultural Economics from North Dakota State University. I have also attended the Graduate School of Banking at the University of Wisconsin-Madison.

3.        I am personally familiar with the loan history between RRSB and Generations on 1st, LLC (the "Debtor").

4.        I have personally reviewed bank statements, transaction receipts, deposits, and checks associated with several bank accounts, including without limitation:



EXHIBIT 20
WIT: J. Craig
DATE: 9-23-25
Deanna L. Sager

a. a checking account ending in -4657 at RRSB, also known as the Assignment of Rents Holding Account (the "<u>RRSB Generations Account</u>");

b. a checking account ending in -1711 at First Community Credit Union ("<u>FCCU</u>") owned by Craig Development, LLC (the "<u>FCCU Craig Development Account</u>");

c. a checking account ending in -4695 at FCCU owned by Craig Properties, LLC (the "<u>FCCU Craig Properties Account</u>").;

d. a checking account ending in -2258 at Starion Bank owned by non-debtor affiliate CP Business Management Inc. – Apartments (the "<u>CP Business Account</u>"); and

e. a debtor-in-possession checking account ending in -8666 held by the estate at Starion Bank (the "<u>Generations DIP Account</u>").

With the exception of the account for which RRSB is the depository institution, all of the aforementioned documents were obtained through subpoenas issued in the Debtor's bankruptcy case.

5.      RRSB previously filed Proof of Claim No. 1 in the Debtor's bankruptcy case (the "<u>RRSB Generations POC</u>") The RRSB Generations POC explains the business relationship between RRSB and the Debtor. This Affidavit concerns the eight outstanding notes referred to in the RRSB Generations POC and hereinafter as the "<u>First Generations Note</u>," the "<u>Second Generations Note</u>," the <u>Third Generations Note</u>, the "<u>Fourth Generations Note</u>," the "<u>Fifth Generations Note</u>," the "<u>Sixth Generations Note</u>," the "<u>Seventh Generations Note</u>," and "<u>Ninth Generations Note</u>," hereinafter collectively the "<u>Generations Notes 1-7 and 9</u>."

## I.    THE FIRST GENERATIONS NOTE

6.    Debtor made in favor of, executed, and delivered to RRSB a Promissory Note dated March 15, 2021, pursuant to which Loan No. 41121 was disbursed in the original principal amount of $1,565,200.00 ("First Generations Note"). A true and correct copy of the First Generations Note is attached as **Exhibit 1-A** and incorporated by reference.

7.    Interest initially accrued at a rate of 4.350% per annum. Under the Forbearance Agreement dated February 17, 2023 (the "Forbearance Agreement"), the interest rate increased to 6.500% per annum. Debtor was obligated to make payments on a semiannual basis through March 15, 2023, the original maturity date.

### A.    Disbursement of Loan Proceeds on First Generations Note

8.    Loan proceeds for the First Generations Note were authorized for disbursement under a Loan Disbursement Request and Authorization contemporaneously executed by Debtor ("First Generations DRA"). A true and correct copy of the First Generations DRA is attached hereto as **Exhibit 1-B** and incorporated by reference, and an excerpt of relevant information is reproduced below for ease of reference:

> **SPECIFIC PURPOSE.** The specific purpose of this loan is: APARTMENT DRAW REQUESTS.
>
> **DISBURSEMENT INSTRUCTIONS.** Borrower understands that no loan proceeds will be disbursed until all of Lender's conditions for making the loan have been satisfied. Please disburse the loan proceeds of $1,565,200.00 as follows:
>
> | Amount paid to Borrower directly: | $1,565,200.00 |
> |---|---|
> | $269,628.78 Deposited to Loan Account # 40989 | |
> | $127,434.93 Deposited to Loan Account # 41062 | |
> | $214,227.46 Deposited to Loan Account # 41099 | |
> | $953,908.83 Lender's Check # CRAIG DEVELOPMENT | |
> | **Note Principal:** | $1,565,200.00 |

9.    On March 15, 2021, the First Generations Note proceeds were disbursed in the aggregate amount of $1,565,200.00. As demonstrated by the First Generations DRA, loan proceeds totaling $611,291.17 were used to refinance three existing loans to Debtor for

construction of an apartment building in Watertown, South Dakota known as "Generations on

1st" (the "GO1 Real Property"). Specifically, the loan proceeds were applied as follows:

> (a) $269,628.78 to Loan 40989,

> (b) $127,434.93 to Loan 41062, and

> (c) $214,227.46 to Loan 41099.

True and correct copies of the RRSB Debit Ticket confirming disbursement of the First

Generations Note (Loan No. 41121) and Credit Tickets confirming the deposit of such loan

proceeds to payoff Loan Nos. 40989, 41062, and 41099, are attached hereto as **Exhibit 1-C**.

10. The remaining loan proceeds in the amount of $953,908.83 were disbursed to

Craig Development in eight RRSB Cashier's Checks as follows:

| Check No. | Check Amount |
|---|---|
| 200950 | $149,005.53 |
| 200951 | $163,020.84 |
| 200952 | $320,941.23 |
| 200953 | $320,941.23 |
| **TOTAL:** | **$953,908.83** |

True and correct copies of the aforementioned Cashier's Checks and two FCCU Craig

Development Account Transaction Receipts dated March 15, 2021, confirming receipt and

deposit of such loan proceeds, are attached hereto as **Exhibit 1-D**.

**B.     Payment History on First Generations Note**

11.     On April 17, 2023, a payment in the amount of $1,565,200.00 was made on

account of the First Generations Note. Such payment was "received" by RRSB when proceeds

of the Eighth Generations Note were used, *inter alia*, to pay off all outstanding principal (but

not interest) due on the First Generations Note. *See* Eighth Generations Note Aff.; ¶ 6, 8; and

**Exhibit B** (Eighth Generations DRA). No further payments have been made by the Debtor to reduce the outstanding balance of the First Generations Note.

## II.    THE SECOND GENERATIONS NOTE

12.    Debtor made in favor of, executed, and delivered to RRSB a Promissory Note dated September 14, 2021, pursuant to which Loan No. 51404 was issued in the original principal amount of $2,976,430.98 (the "Second Generations Note"). A true and correct copy of the Second Generations Note is attached as **Exhibit 2-A** and incorporated by reference.

13.    Interest initially accrued on the unpaid principal balance at a rate of 4.350% per annum. Under the Forbearance Agreement, the rate increased to 6.500% per annum. Under the Second Generations Note, Debtor was obligated to pay all principal and accrued interest on March 31, 2022, the original maturity date.

### A.    Disbursement of Loan Proceeds

14.    Proceeds for the Second Generations Note were authorized for disbursement under the Loan Disbursement Request and Authorization contemporaneously executed by Debtor ("Second Generations DRA"). A true and correct copy of the Second Generations DRA is attached hereto as **Exhibit 2-B** and incorporated by reference, and an excerpt of relevant information is reproduced below for ease of reference:

> SPECIFIC PURPOSE. The specific purpose of this loan is:  Multi Family Home Construction Project Draw 10, 11, 12, & 13.
> DISBURSEMENT INSTRUCTIONS.  Borrower understands that no loan proceeds will be disbursed until all of Lender's conditions for making the loan have been satisfied.  Please disburse the loan proceeds of $2,976,430.98 as follows:
>
> Amount paid to others on Borrower's behalf:                 $2,976,430.98
>     $2,976,430.98 to Craig  Development LLC  for  Construction
> Draws and Construction Management Fees                      _____
>
> Note Principal:                                            $2,976,430.98

15.    On September 14, 2021, the Second Generations Note proceeds were disbursed in the aggregate amount of $2,976,430.98. The loan proceeds were disbursed via a wire transfer to the FCCU Craig Properties Account. True and correct copies of an RRSB Wire

Transfer Order and Transaction Receipt dated September 14, 2021, and a statement dated

September 30, 2021 for the FCCU Craig Properties Account (*See* p. 3), confirming receipt and

deposit of such loan proceeds, are attached hereto as **Exhibit 2-C**.

**B.    Payment History**

16.    On April 17, 2023, a payment in the amount of $2,976,430.98 was made on

account of the Second Generations Note. This payment was "received" by RRSB when

proceeds of the Eighth Generations Note were used *inter alia*, to pay off all outstanding

principal (but not interest) due on Second Generations Note. . *See* Eighth Generations Note

Aff.; ¶ 6, 8; and **Exhibit B** (Eighth Generations DRA). No further payments have been made

by the Debtor towards the outstanding balance of the Second Generations Note.

### III.    THE THIRD GENERATIONS NOTE

17.    Debtor made in favor of, executed, and delivered to RRSB a Promissory Note

dated October 14, 2021, pursuant to which Loan No. 51425 was issued in the original principal

amount of $1,094,025.15 (the "Third Generations Note"). A true and correct copy of the Third

Generations Note is attached as **Exhibit 3-A** and incorporated by reference.

18.    Interest initially accrued on the unpaid principal balance at a rate of 4.350% per

annum. Under the Forbearance Agreement, the rate increased to 6.500% per annum. Under the

Third Generations Note, Debtor was obligated to pay all principal and accrued interest on

March 31, 2022, the original maturity date.

**A.    Disbursement of Loan Proceeds**

19.    Proceeds for the Third Generations Note were authorized for disbursement

under to the Loan Disbursement Request and Authorization contemporaneously executed by

Debtor ("Third Generations DRA"). A true and correct copy of the Third Generations DRA is

attached hereto as **Exhibit 3-B** and incorporated by reference, and an excerpt of relevant
information is reproduced below for ease of reference:

> **SPECIFIC PURPOSE.** The specific purpose of this loan is:  Multi Family Home Construction Project Draw 10, 11, 12, & 13.
>
> **DISBURSEMENT INSTRUCTIONS.** Borrower understands that no loan proceeds will be disbursed until all of Lender's conditions for making the loan have been satisfied.  Please disburse the loan proceeds of $1,094,025.15 as follows:
>
> | | |
> |---|---|
> | Amount paid to others on Borrower's behalf: | $1,094,025.15 |
> | $1,094,025.15 to Craig Development LLC for Construction Draws and Construction Management Fees | |
> | Note Principal: | $1,094,025.15 |

20.     On October 14, 2021, the Third Generations Note proceeds were disbursed in
the amount of $1,095,025.15. The loan proceeds were disbursed via wire transfer to the FCCU
Craig Properties Account. True and correct copies of RRSB's Wire Transfer Order and
Transaction Receipt dated October 14, 2021, and an FCCU Craig Properties Account
Statement dated October 31, 2021 (*See* p. 3), all of which confirm receipt of such loan
proceeds, are attached hereto as **Exhibit 3-C**.

**B.     Payment History**

21.     On April 17, 2023, a payment in the amount of $1,094,025.15 was made on
account of the Third Generations Note. Such payment was "received" by RRSB when proceeds
of the Eighth Generations Note were used, *inter alia*, to pay off all outstanding principal (but
not interest) due on Third Generations Note. *See* Eighth Generations Note Aff.; ¶ 6, 8; and
**Exhibit B** (Eighth Generations DRA). No further payments have been received by RRSB for
the Third Generations Note.

## IV.     THE FOURTH GENERATIONS NOTE

22.     Debtor made in favor of, executed, and delivered to RRSB a Promissory Note
dated November 9, 2021, pursuant to which Loan No. 51437 was issued in the original

principal amount of $424,259.84 (the "Fourth Generations Note"). A true and correct copy of the Fourth Generations Note is attached as **Exhibit 4-A** and incorporated by reference.

23.     Interest initially accrued on the unpaid principal balance at a rate of 4.350% per annum. Under the Forbearance Agreement, the rate increased to 6.500% per annum. Under the Fourth Generations Note, Debtor was obligated to pay all principal and accrued interest on March 31, 2022, the original maturity date.

A.     **Disbursement of Loan Proceeds**

24.     Proceeds of the Fourth Generations Note were authorized for disbursement under the Loan Disbursement Request and Authorization contemporaneously executed by Debtor ("Fourth Generations DRA"). A true and correct copy of the Fourth Generations DRA is attached hereto as **Exhibit 4-B** and incorporated by reference, and an excerpt of relevant information is reproduced below for ease of reference:

**DISBURSEMENT INSTRUCTIONS.** Borrower understands that no loan proceeds will be disbursed until all of Lender's conditions for making the loan have been satisfied. Please disburse the loan proceeds of $424,259.84 as follows:

| | |
|---|---|
| Amount paid to others on Borrower's behalf: | $424,259.84 |
| $424,259.84 to Craig Development LLC for Construction Draws and Construction Management Fees | |
| Note Principal: | $424,259.84 |

25.     On November 9, 2021, the Fourth Generations Note proceeds were disbursed in the amount of $424,259.84. The loan proceeds were disbursed via a wire transfer to the FCCU Craig Properties Account. True and correct copies of RRSB's Wire Transfer Order and Transaction Receipt dated November 9, 2021, and an FCCU Craig Properties Account Statement dated November 30, 2021 (*See* p. 2), all of which confirm receipt of such loan proceeds, are attached hereto as **Exhibit 4-C**.

8

**B.**    **Payment History**

26.    On April 17, 2023, a payment of $424,259.84 was made on account of the Fourth Generations Note. Such payment was "received" by RRSB when proceeds of the Eighth Generations Note were used, *inter alia*, to pay off all outstanding principal (but not interest) due on the Fourth Generations Note. *See* Eighth Generations Note Aff.; ¶ 6, 8; and **Exhibit B** (Eighth Generations DRA). No further payments have been made by the Debtor towards the outstanding balance of the Fourth Generations Note.

<div align="center">

**V.    THE FIFTH GENERATIONS NOTE**

</div>

27.    Debtor made in favor of, executed, and delivered to RRSB a Promissory Note dated December 8, 2021, pursuant to which Loan No. 51449 was issued in the original principal amount of $843,168.59 (the "Fifth Generations Note"). A true and correct copy of the Fifth Generations Note is attached as **Exhibit 5-A** and incorporated by reference.

28.    Interest initially accrued on the unpaid principal balance at a rate of 4.350% per annum. Under the Forbearance Agreement, the rate increased to 6.500% per annum. Under the Fifth Generations Note, Debtor was obligated to pay all principal and accrued interest on March 31, 2022, the original maturity date.

**A.**    **Disbursement of Loan Proceeds**

29.    Proceeds of the Fifth Generations Note were authorized for disbursement under the Loan Disbursement Request and Authorization contemporaneously executed by Debtor ("Fifth Generations DRA"). A true and correct copy of the Fourth Generations DRA is attached hereto as **Exhibit 5-B** and incorporated by reference, and an excerpt of relevant information is reproduced below for ease of reference:

DISBURSEMENT INSTRUCTIONS. Borrower understands that no loan proceeds will be disbursed until all of Lender's conditions for making the loan have been satisfied. Please disburse the loan proceeds of $843,168.59 as follows:

| | |
|---|---|
| Amount paid to others on Borrower's behalf: | $843,168.59 |
| $843,168.59 to Craig Development LLC for Construction Draws and Construction Management Fees | |
| Note Principal: | $843,168.59 |

30.     On December 9, 2021, the Fifth Generations Note proceeds were disbursed in the amount of $843,168.59. The loan proceeds were disbursed via a wire transfer to the FCCU Craig Properties Account. True and correct copies of an RRSB Wire Transfer Order and Transaction Receipt dated December 9, 2021, and an FCCU Craig Properties Account Statement dated December 31, 2021 (*See* p. 2), all memorializing the Fifth Generations Note disbursement, are attached hereto as **Exhibit 5-C**.

**B.     Payment History**

31.     On April 17, 2023, a payment of $843,168.59 was made on account of the Fifth Generations Note. Such payment was "received" by RRSB when proceeds of the Eighth Generations Note were used, *inter alia*, to pay off all outstanding principal (but not interest) due on the Fifth Generations Note. *See* Eighth Generations Note Aff.; ¶ 6, 8; and **Exhibit B** (Eighth Generations DRA). No further payments have been made by the Debtor towards the outstanding balance of the Fifth Generations Note.

## VI.     THE SIXTH GENERATIONS NOTE

32.     Debtor made in favor of, executed, and delivered to RRSB a Promissory Note dated January 5, 2022, pursuant to which Loan No. 51471 was issued in the original principal amount of $653,729.65 (the "Sixth Generations Note"). A true and correct copy of the Sixth Generations Note is attached as **Exhibit 6-A** and incorporated by reference.

33.     Interest initially accrued on the unpaid principal balance at a rate of 4.350% per annum. Under the Forbearance Agreement, the rate increased to 6.500% per annum. Under the

10

Sixth Generations Note, Debtor was obligated to pay all principal and accrued interest on December 31, 2022, the original maturity date.

## A.   **Disbursement of Loan Proceeds**

34.    Proceeds of the of the Sixth Generations Note were authorized for disbursement under the Loan Disbursement Request and Authorization contemporaneously executed by Debtor (the "Sixth Generations DRA"). A true and correct copy of the Sixth Generations DRA is attached hereto as **Exhibit 6-B** and incorporated by reference, and an excerpt of relevant information is reproduced below for ease of reference:

**DISBURSEMENT INSTRUCTIONS.** Borrower understands that no loan proceeds will be disbursed until all of Lender's conditions for making the loan have been satisfied. Please disburse the loan proceeds of $653,729.65 as follows:

| | |
|---|---|
| Amount paid to others on Borrower's behalf:<br>$653,729.65 to Craig Development LLC for Construction Draws<br>and Construction Management Fees | $653,729.65 |
| Note Principal: | $653,729.65 |

35.    On January 5, 2022, the Sixth Generations Note proceeds were disbursed in the amount of $653,729.65. The loan proceeds were disbursed via Cashier's Check No. 101723 made payable to Craig Development. True and correct copies of RRSB's Cashier's Check and an FCCU Craig Development Account Transaction Receipt dated January 5, 2022, confirming receipt and deposit of the Sixth Generations Note proceeds, are attached as **Exhibit 6-C**.

## B.   **Payment History**

36.    On April 17, 2023, a payment of $653,729.65 was made on account of the Sixth Generations Note.  Such payment was "received" by RRSB when proceeds of the Eighth Generations Note were used, *inter alia*, to pay off all outstanding principal (but not interest) due on the Fifth Generations Note.  *See* Eighth Generations Note Aff.; ¶ 6, 8; and **Exhibit B** (Eighth Generations DRA). No further payments have been made by the Debtor towards the outstanding balance of the Sixth Generations Note.

11

## VII.    THE SEVENTH GENERATIONS NOTE

37.    Debtor made in favor of, executed, and delivered to RRSB a Promissory Note dated February 3, 2022, pursuant to which Loan No. 51488 was issued in the original principal amount of $274,043.60 ("Seventh Generations Note"). A true and correct copy of the Seventh Generations Note is attached as **Exhibit 7-A** and incorporated by reference.

38.    Interest initially accrued on the unpaid principal balance at a rate of 4.350% per annum. Under the Forbearance Agreement, the rate increased to 6.500% per annum. Under the Seventh Generations Note, Debtor was obligated to pay all principal and accrued interest on December 31, 2022, the original maturity date.

### A.    Disbursement of Loan Proceeds

39.    Proceeds of the of the Seventh Generations Note were authorized for disbursement under the Loan Disbursement Request and Authorization contemporaneously executed by Debtor ("Seventh Generations DRA"). A true and correct copy of the Seventh Generations DRA is attached hereto as **Exhibit 7-B** and incorporated by reference, and an excerpt of relevant information is reproduced below for ease of reference:

> **DISBURSEMENT INSTRUCTIONS.** Borrower understands that no loan proceeds will be disbursed until all of Lender's conditions for making the loan have been satisfied. Please disburse the loan proceeds of $274,043.60 as follows:
>
> | | |
> |---|---|
> | Amount paid to others on Borrower's behalf: | $274,043.60 |
> | $274,043.60 to Craig Development LLC for Construction Draws and Construction Management Fees | |
> | Note Principal: | $274,043.60 |

40.    On February 3, 2022, the Seventh Generations Note proceeds were disbursed in the amount of $274,043.60. The loan proceeds were disbursed via a wire transfer to the FCCU Craig Properties Account. True and correct copies of an RRSB Wire Transfer Order and Transaction Receipt dated February 3, 2022, and an FCCU Craig Properties Account

Statement dated February 28, 2022 (*See* p. 2), all memorializing the Seventh Generations Note

disbursement, are attached hereto as **Exhibit 7-C**.

**B.**     **Payment History**

41.     On April 17, 2023, a payment of $274,043.60 made on account of the Seventh

Generations Note. Such payment was "received" by RRSB when proceeds of the Eighth

Generations Note were used, *inter alia*, to pay off all outstanding principal (but not interest)

due on the Seventh Generations Note. *See* Eighth Generations Note Aff.; ¶ 6, 8; and **Exhibit
B** (Eighth Generations DRA). No further payments have been made by the Debtor towards the

outstanding balance of the Seventh Generations Note.

## VIII.   THE NINTH GENERATIONS NOTE

42.     Debtor made in favor of, executed, and delivered to RRSB a Promissory Note

dated April 17, 2023, pursuant to which Loan No. 451677 was issued in the original principal

amount of $561,365.10 (the "Ninth Generations Note"). A true and correct copy of the Ninth

Generations Note is attached as **Exhibit 9-A** and incorporated by reference.

43.     No further interest accrued on Generations Notes 1-7 after April 17, 2023. All

outstanding principal for such notes as of April 17, 2023 was refinanced and paid off with

proceeds of the Eighth Generations Note.   Similarly, all accrued unpaid interest for

Generations Notes 1-7 was refinanced and paid off by the Ninth Generations Note, which has

been accruing interest at a rate of 2.000% per annum since April 17, 2023.

**A.**     **Disbursement of Loan Proceeds**

44.     Proceeds of the Ninth Generations Note were authorized for disbursement under

the Loan Disbursement Request and Authorization contemporaneously executed by Debtor

("Ninth Generations DRA"). A true and correct copy of the Ninth Generations DRA is attached

hereto as **Exhibit 9-B** and incorporated by reference, and a relevant excerpt is reproduced

below for ease of reference:

SPECIFIC PURPOSE. The specific purpose of this loan is: Refinance Construction Loan Accrued Interst.

DISBURSEMENT INSTRUCTIONS. Borrower understands that no loan proceeds will be disbursed until all of Lender's conditions for making the
loan have been satisfied. Please disburse the loan proceeds of $561,365.10 as follows:

| | |
|---|---|
| Amount paid on Borrower's account: | $561,365.10 |
| $145,278.42 Payment on Loan # 41121 | |
| $211,351.05 Payment on Loan # 51404 | |
| $73,773.26 Payment on Loan # 51425 | |
| $27,294.44 Payment on Loan # 51437 | |
| $51,229.99 Payment on Loan # 51449 | |
| $37,616.31 Payment on Loan # 51471 | |
| $14,821.63 Payment on Loan # 51488 | |
| Note Principal: | $561,365.10 |

45.    On April 17, 2023, Ninth Generations Note proceeds in the sum of $561,365.10

were disbursed to pay off all accrued unpaid interest on Generations Notes 1-7 as follows:

| Loan | Interest Accrued as of April 17, 2023<br>(Date of Ninth Gen. Note) |
|---|---|
| First Gen. Note<br>(41121) | $145,278.42 |
| Second Gen. Note<br>(51404) | $211,351.05 |
| Third Gen. Note<br>(51425) | $73,773.26 |
| Fourth Gen. Note<br>(51437) | $27,294.44 |
| Fifth Gen. Note<br>(51449) | $51,229.99 |
| Sixth Gen. Note<br>(51471) | $37,616.31 |
| Seventh Gen. Note<br>(51488) | $14,821.63 |
| **TOTAL:** | **$561,365.10** |

**B.**    **Payment History**

46.    No payments have been made by Debtor to reduce the outstanding balance of the Ninth Generations Note.

## IX.    LOAN HISTORY OF GENERATIONS NOTES 1-7 & 9

47.    Inquiry Statements for Generations Notes 1-7 and 9 generated by RRSB's computer system are attached as **Exhibit E** and incorporated by reference. The Inquiry Statements do not include a running balance. But they do list all loan advances, late fees, and payments made.

48.    For the convenience of the parties and the Court, a printout of an Excel spreadsheet setting forth the history of loan payments, accrual of interest and late fees on Generations Notes 1-7 and the Ninth Generations Note is attached as **Exhibit F** and incorporated by reference.

*[The remainder of this page is intentionally blank.]*

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this /6 day of September, 2025.

Charles Aarestad

Subscribed and sworn to before me this /6 day of September, 2025.

Notary Public

LORI ANN MOEN
NOTARY PUBLIC - MINNESOTA
My Comm. Exp. Jan. 31, 2029

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $1,565,200.00 | 03-15-2021 | 03-15-2023 | 41121 | JL | | *** | CBA 07/30/21 |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

EXHIBIT

1-A

**Borrower:** GENERATIONS ON 1ST, LLC (TIN: [redacted]6148)
1405 1ST AVE N
FARGO, ND 58102

**Lender:** Red River State Bank
Fertile
114 N Mill St
PO Box 98
Fertile, MN 56540

**Principal Amount: $1,565,200.00** **Interest Rate: 4.350%** **Date of Note: March 15, 2021**

**PROMISE TO PAY.** GENERATIONS ON 1ST, LLC ("Borrower") promises to pay to Red River State Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Million Five Hundred Sixty-five Thousand Two Hundred & 00/100 Dollars ($1,565,200.00), together with interest on the unpaid principal balance from March 15, 2021, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 4.350% per annum, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in 4 payments of $412,842.30 each payment. Borrower's first payment is due September 15, 2021, and all subsequent payments are due on the same day of each half-year after that. Borrower's final payment will be due on March 15, 2023, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Any accrued interest not paid when due is added to principal and thereafter will accrue interest as principal.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/365 basis; that is, by applying the ratio of the interest rate over the number of days in a year (365 for all years, including leap years), multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**RECEIPT OF PAYMENTS.** All payments must be made in U.S. dollars and must be received by Lender at:

Red River State Bank
Fertile
114 N Mill St
PO Box 98
Fertile, MN 56540

All payments must be received by Lender consistent with any written payment instructions provided by Lender. If a payment is made consistent with Lender's payment instructions but received after 2:00 PM CST on a business day, Lender will credit Borrower's payment on the next business day.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Red River State Bank, PO Box 25 Halstad, MN 56548.

**LATE CHARGE.** If a payment is 11 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $7.28, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Note will continue to accrue interest at the interest rate under this Note.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf, or made by Guarantor, or any other guarantor, endorser, surety, or accommodation party, under this Note or the related documents in connection with the obtaining of the loan evidenced by this Note or any security document directly or indirectly securing repayment of this Note is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Execution; Attachment.** Any execution or attachment is levied against the Collateral, and such execution or attachment is not set aside, discharged or stayed within thirty (30) days after the same is levied.

**Change in Zoning or Public Restriction.** Any change in any zoning ordinance or regulation or any other public restriction is enacted, adopted

Loan No: 41121                                                                                      Page 2

or implemented, that limits or defines the uses which may be made of the Collateral such that the present or intended use of the Collateral, as specified in the related documents, would be in violation of such zoning ordinance or regulation or public restriction, as changed.

**Default Under Other Lien Documents.** A default occurs under any other mortgage, deed of trust or security agreement covering all or any portion of the Collateral.

**Judgment.** Unless adequately covered by insurance in the opinion of Lender, the entry of a final judgment for the payment of money involving more than ten thousand dollars ($10,000.00) against Borrower and the failure by Borrower to discharge the same, or cause it to be discharged, or bonded off to Lender's satisfaction, within thirty (30) days from the date of the order, decree or process under which or pursuant to which such judgment was entered.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor, or any other guarantor, endorser, surety, or accommodation party of any of the indebtedness or any Guarantor, or any other guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Minnesota without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Minnesota.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Polk County, State of Minnesota.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $28.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instruments listed herein:

(A)  a Mortgage dated March 15, 2021, to Lender on real property located in Codington County, State of South Dakota.

(B)  a Commercial Security Agreement dated March 15, 2021 made and executed between GENERATIONS ON 1ST, LLC and Lender on collateral described as As security for the payment of the indebtedness and all other indebtedness, obligations and liabilities of the Debtor to Creditor, now existing or hereafter arising, directly or indirectly, by operation of law or otherwise (collectively the "liabilities"), Debtor assigns, transfers, pledges, hypothecates and grants to Creditor, its successors and assigns, a first priority security interest (the "security interest") in all Debtor's assets, including without limitation, all equipment, inventory, supplies, accounts, general intangibles, chattel paper and instruments, goods, assets, machinery, fixtures, furnishings and all other personal property together with all other accessories, accessions, attachments and appurtenances, appertaining to attached thereto, whether now owned or hereafter acquired, and all other substitutions, renewals, replacements and improvements and all proceeds, rents, issuers, income, profits and avails, including without limitation, insurance proceeds. Further, Borrower grants Lender a purchase money security interest in specific equipment, furniture and fixtures purchased by Borrower and financed by Lender on or about the date of the loan or filing date thereafter (collectively the "collateral").

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: Red River State Bank PO Box 25 Halstad, MN 56548.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. In addition, Lender shall have all the rights and remedies provided in the related documents or available at law, in equity, or otherwise. Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower shall not affect Lender's right to declare a default and to exercise its rights and remedies. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

Loan No: 41121

Page 3

SECTION DISCLOSURE. To the extent not preempted by federal law, this loan is made under Minnesota Statutes, Section 47.59.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

GENERATIONS ON 1ST, LLC

By: _____
    JESSE  ROBERT  CRAIG,  MANAGING  MEMBER  of
    GENERATIONS ON 1ST, LLC

LENDER:

RED RIVER STATE BANK

X _____
    MARTIN PETERSON, Loan Officer

LaserPro, Ver. 20.4.0.038  Copr. Finastra USA Corporation 1997- 2021   All Rights Reserved.   - MN  C:\HARLAND\CFI\LPL\D20.FC  TR-5362  PR-61

RRSB GO1st 00324

# DISBURSEMENT REQUEST AND AUTHORIZATION

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $1,565,200.00 | 03-15-2021 | 03-15-2023 | 41121 | JL | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** GENERATIONS ON 1ST, LLC (TIN: [redacted]6148)
1405 1ST AVE N
FARGO, ND 58102

**Lender:** Red River State Bank
Fertile
114 N Mill St
PO Box 98
Fertile, MN 56540

EXHIBIT
tabbles
1-B

**LOAN TYPE.** This is a Fixed Rate (4.350%) Nondisclosable Loan to a Limited Liability Company for $1,565,200.00 due on March 15, 2023.

**PRIMARY PURPOSE OF LOAN.** The primary purpose of this loan is for:

- ☐ Maintenance of Borrower's Primary Residence.
- ☐ Personal, Family or Household Purposes or Personal Investment.
- ☐ Agricultural Purposes.
- ☒ Business Purposes.

**SPECIFIC PURPOSE.** The specific purpose of this loan is: APARTMENT DRAW REQUESTS.

**DISBURSEMENT INSTRUCTIONS.** Borrower understands that no loan proceeds will be disbursed until all of Lender's conditions for making the loan have been satisfied. Please disburse the loan proceeds of $1,565,200.00 as follows:

| | |
|---|---|
| Amount paid to Borrower directly: | $1,565,200.00 |
| $269,628.78 Deposited to Loan Account # 40989 | |
| $127,434.93 Deposited to Loan Account # 41062 | |
| $214,227.46 Deposited to Loan Account # 41099 | |
| $953,908.83 Lender's Check # CRAIG DEVELOPMENT | |
| Note Principal: | $1,565,200.00 |

**FINANCIAL CONDITION.** BY SIGNING THIS AUTHORIZATION, BORROWER REPRESENTS AND WARRANTS TO LENDER THAT THE INFORMATION PROVIDED ABOVE IS TRUE AND CORRECT AND THAT THERE HAS BEEN NO MATERIAL ADVERSE CHANGE IN BORROWER'S FINANCIAL CONDITION AS DISCLOSED IN BORROWER'S MOST RECENT FINANCIAL STATEMENT TO LENDER. THIS AUTHORIZATION IS DATED MARCH 15, 2021.

BORROWER:

GENERATIONS ON 1ST, LLC

By: ______________________
JESSE ROBERT CRAIG, MANAGING MEMBER of GENERATIONS ON 1ST, LLC

LaserPro, Ver. 20.4.0.038 Copr. Finastra USA Corporation 1997, 2021. All Rights Reserved. - MN C:\HARLAND\CFI\LPL\D20.FC TR-6352 PR-61

RRSB GO1st 00317

EXHIBIT

**1-C**

CUSTOMER NAME  _Gernachens on 1st LLC_  DATE: _3/16/2021_  **DEBIT TICKET**

CUSTOMER NUMBER  NOTE NUMBER  BACK DATE _3/15/2021_
_41121_

REV PRIN PAYMENT:  76  NEW LOAN:  (34)

REBATE INTEREST:  82  RENEWAL LOAN:  70

REBATE INSURANCE:  64  DEBIT TO FINAL:  66
(Advance)
DB INT ADJUSTMENT:  80  ESCROW:  86
PLUS YEAR TO DATE:  2
ADD LATE CHARGE:  94

DESCRIPTION:  **TOTAL $**  _1565200.00_

_Lan Finding Refi_

⑆54000000⑈

41121 3/16/2021  $1565200.00
020205000260 TC 34

## LOAN 40989 CREDIT TICKETS:



40989 3/16/2021    $829003.51
020205000110 TC 46



40989 3/16/2021    $5335.15
020205000020 TC 50

Two (2) RRSB Credit Tickets confirming a deposit in the sum of $834,388.66 to payoff Loan 40989.

Proceeds from the First Generations Note in the sum of $269,628.78 were applied to the balance of Loan 40989. The remaining balance of $564759.88 was proceeds of Loan 41120 (a Parkside Note).

## LOAN 41062 CREDIT TICKETS:

CUSTOMER NAME Momentum Properties
CUSTOMER NUMBER   NOTE NUMBER 41062
DATE: 3/16/2021
BACKDATE 3/5/2021   **CREDIT TICKET**

| | | |
|---|---|---|
| REBATE INTEREST: | 82 < | > |
| REBATE INSURANCE: | C/L 64 < | > |
| REBATE INSURANCE: | AH 78 < | > |
| REBATE INSURANCE: | INS3 68 < | > |
| CREDIT TO FINAL: | 92 | |
| EXTENSION DATE: | 38 | |
| FEE: | 90 | |
| CR INT ADJUSTMENT: | 84 | |
| MINUS YEAR TO DATE: | 4 | |

36 PAY OFF
(46) PRINCIPAL PAYMENT
50 INTEREST PAYMENT
58 LATE CHARGE
72 ESCROW
59 WAIVE LATE CHARGE

DESCRIPTION: Loan Payoff

TOTAL $   12690558

⑊530000004⑊

41062 3/16/2021     $126905.58
020205000100 TC 46

---

CUSTOMER NAME Momentum Properties
CUSTOMER NUMBER   NOTE NUMBER 41062
DATE: 3/16/2021
BACKDATE 3/15/2021   **CREDIT TICKET**

| | | |
|---|---|---|
| REBATE INTEREST: | 82 < | > |
| REBATE INSURANCE: | C/L 64 < | > |
| REBATE INSURANCE: | AH 78 < | > |
| REBATE INSURANCE: | INS3 68 < | > |
| CREDIT TO FINAL: | 92 | |
| EXTENSION DATE: | 38 | |
| FEE: | 90 | |
| CR INT ADJUSTMENT: | 84 | |
| MINUS YEAR TO DATE: | 4 | |

36 PAY OFF
46 PRINCIPAL PAYMENT
(50) INTEREST PAYMENT
58 LATE CHARGE
72 ESCROW
59 WAIVE LATE CHARGE

DESCRIPTION: Interest Payment

TOTAL $   52935

⑊530000004⑊

41062 3/16/2021     $529.35
020205000010 TC 50

## LOAN 41099 CREDIT TICKETS:



CUSTOMER NAME Melinda Craig
CUSTOMER NUMBER    NOTE NUMBER
41099

DATE: 3/16/2021    **CREDIT TICKET**
BACKDATE 3/15/2021

| REBATE INTEREST: | 82 < | > | | 36 | PAY OFF |
| REBATE INSURANCE: | C/L 64 < | > | | (48) | PRINCIPAL PAYMENT |
| REBATE INSURANCE: | AH 78 < | > | | 50 | INTEREST PAYMENT |
| REBATE INSURANCE: | INS3 68 < | > | | 58 | LATE CHARGE |
| CREDIT TO FINAL: | 92 | | | 72 | ESCROW |
| EXTENSION DATE: | 38 | | | 59 | WAIVE LATE CHARGE |
| FEE: | 90 | | | | |
| OR INT ADJUSTMENT: | 84 | | | | |
| MINUS YEAR TO DATE: | 4 | | | | |

DESCRIPTION:
Loan Paydown

TOTAL $    229327.37

⑆530000004⑆

41099 3/16/2021    $229327.37
020205000150 TC 46

---

CUSTOMER NAME Melinda Craig
CUSTOMER NUMBER    NOTE NUMBER
41099

DATE: 3/16/2021    **CREDIT TICKET**
BACKDATE 3/15/2021

| REBATE INTEREST: | 82 < | > | | 36 | PAY OFF |
| REBATE INSURANCE: | C/L 64 < | > | | 48 | PRINCIPAL PAYMENT |
| REBATE INSURANCE: | AH 78 < | > | | (50) | INTEREST PAYMENT |
| REBATE INSURANCE: | INS3 68 < | > | | 55 | LATE CHARGE |
| CREDIT TO FINAL: | 92 | | | 72 | ESCROW |
| EXTENSION DATE: | 38 | | | 59 | WAIVE LATE CHARGE |
| FEE: | 90 | | | | |
| OR INT ADJUSTMENT: | 84 | | | | |
| MINUS YEAR TO DATE: | 4 | | | | |

DESCRIPTION:
Interest Payment

TOTAL $    928.75

⑆530000004⑆

41099 3/16/2021    $928.75
020205000060 TC 50

---

TO VERIFY AUTHENTICITY, SEE REVERSE SIDE FOR DESCRIPTION OF THE # SECURITY FEATURES

Craig Properties, LLC
PO Box 425
Fargo, ND 58107

First Community Credit Union
4521 15th Avenue South
Fargo, ND 58103

77-7869/2913

37674

**** SIXTEEN THOUSAND SEVEN HUNDRED SEVENTY NINE AND 59/100 DOLLARS

TO THE
ORDER OF

RED RIVER STATE BANK
114 N MILL ST
FERTILE, MN    00005-6540

03/15/21    $16,779.59**

Business Account

Authorized Signature

⑆037674⑆ ⑆ 8693⑆    46957⑆

2000546957 3/16/2021    $16779.59
020205000090 TC 0

RRSB Credit Tickets confirming two deposits was made on March 15, 2021 in the sum of $230,256.12. The top ticket was to payoff outstanding principal of Loan 41099. The bottom ticket was used to payoff accrued interest on Loan 41099.

This deposit consists of loan proceeds from the First Generations Note in the amount of $214,277.46. Craig Properties LLC also paid $16,779.59 by Check No. 37674, totaling $230,256.12.



EXHIBIT

1-D

UNETexchange Item Summary        ECE Institution ISN: 8656545200        UNETexch





Case 25-30004   Doc 114-2   Filed 09/28/25   Entered 09/28/25 14:34:46   Desc
Case 25-30002   Doc 160-1   Filed 09/16/25   Entered 09/16/25 16:19:25   Desc
Exhibits 1-A to F   Page 232 of 415
Exhibits 1-A to F   Page 10 of 108

UNETexchange Item Summary          ECE Institution ISN: 8656545199          UNETexchange ISN: 210316911855564





UNETexchange Item Summary ECE Institution ISN: 8656545206 UNETexchange ISN: 210316911855571





Case 25-30004   Doc 114-2   Filed 09/28/25   Entered 09/28/25 14:34:46   Desc
Case 25-30002   Doc 155   Exhibits 1-A to F   Page 235 of 415 16:19:25   Desc
Exhibits 1-A to F   Page 12 of 108

UNETexchange Item Summary          ECE Institution ISN: 8656545198          UNETexchange ISN: 210316911855563





*FC First community*
*CU Credit Union*

```
FP TRANSACTION  03-16-21  08:03:44  MEMBER  1711CR                    1 1504
                FOR CRAIG DEVELOPMENT, LLC  AS Jesse
DEPOSIT OF      2024870.60  1711-2          SMALL BUSINESS CHECKING
   PREV BAL         368.64 NEW BAL     2025239.24
RECEIVED         2024870.60 IN 9 CHECKS
   320941.23   163020.84   149005.53
   340531.68   319424.32   319424.33
    71874.19    19707.25   320941.23
```

Member Signature

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,976,430.98 | 09-14-2021 | 03-31-2022 | 51404 | | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

EXHIBIT
2-A

**Borrower:** GENERATIONS ON 1ST, LLC (TIN: [redacted]6148)
1405 1ST AVE N
FARGO, ND 58102

**Lender:** Red River State Bank
300 2nd Ave West
P.O. Box 25
Halstad, MN 56548

**Principal Amount: $2,976,430.98** **Interest Rate: 4.350%** **Date of Note: September 14, 2021**

**PROMISE TO PAY.** GENERATIONS ON 1ST, LLC ("Borrower") promises to pay to Red River State Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Million Nine Hundred Seventy-six Thousand Four Hundred Thirty & 98/100 Dollars ($2,976,430.98), together with interest on the unpaid principal balance from September 15, 2021, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 4.350% per annum, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in one principal payment of $2,976,430.98 plus interest on March 31, 2022. This payment due on March 31, 2022, will be for all principal and all accrued interest not yet paid. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Any accrued interest not paid when due is added to principal and thereafter will accrue interest as principal.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/365 basis; that is, by applying the ratio of the interest rate over the number of days in a year (365 for all years, including leap years), multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**RECEIPT OF PAYMENTS.** All payments must be made in U.S. dollars and must be received by Lender at:

Red River State Bank
300 2nd Ave West
P.O. Box 25
Halstad, MN 56548

All payments must be received by Lender consistent with any written payment instructions provided by Lender. If a payment is made consistent with Lender's payment instructions but received after 2:00 PM CST on a business day, Lender will credit Borrower's payment on the next business day.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Red River State Bank, PO Box 25 Halstad, MN 56548.

**LATE CHARGE.** If a payment is 11 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $7.28, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Note will continue to accrue interest at the interest rate under this Note.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf, or made by Guarantor, or any other guarantor, endorser, surety, or accommodation party, under this Note or the related documents in connection with the obtaining of the loan evidenced by this Note or any security document directly or indirectly securing repayment of this Note is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Execution; Attachment.** Any execution or attachment is levied against the Collateral, and such execution or attachment is not set aside, discharged or stayed within thirty (30) days after the same is levied.

**Change in Zoning or Public Restriction.** Any change in any zoning ordinance or regulation or any other public restriction is enacted, adopted or implemented, that limits or defines the uses which may be made of the Collateral such that the present or intended use of the Collateral, as specified in the related documents, would be in violation of such zoning ordinance or regulation or public restriction, as changed.

**Default Under Other Lien Documents.** A default occurs under any other mortgage, deed of trust or security agreement covering all or any

Loan No: 51404                                                                      Page 2

portion of the Collateral.

**Judgment.** Unless adequately covered by insurance in the opinion of Lender, the entry of a final judgment for the payment of money involving more than ten thousand dollars ($10,000.00) against Borrower and the failure by Borrower to discharge the same, or cause it to be discharged, or bonded off to Lender's satisfaction, within thirty (30) days from the date of the order, decree or process under which or pursuant to which such judgment was entered.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor, or any other guarantor, endorser, surety, or accommodation party of any of the indebtedness or any Guarantor, or any other guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Minnesota without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Minnesota.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Norman County, State of Minnesota.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $28.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the debt against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by a Mortgage executed by Generations on 1st, LLC in favor of Red River State Bank dated 03/15/2021 with legal description of Parcel # 9582, 9583, & 9580:
Parcel I:
Lot 1 of Ohtness' Subdivision of Lots 12, 13, and 14 in Block 17 of Watertown, Codington County, South Dakota, according to the recorded plat thereof.
Parcel II:
Lot 2 of Ohtness' Subdivision of Lots 12, 13 and 14 in Block 17 of Watertown, AND the North 30 feet of the East 70 feet of Lot 11 in Block 17 of Watertown (commonly referred to as being in the original Plat), Codington County, South Dakota, according to the recorded plat thereof.
Parcel III:
Lot 3 of Ohtness' Subdivision of Lots 12, 13, and 14 in Block 17 of Watertown (commonly referred to as being the Original Plat), Codington County, South Dakota, according to the recorded plat thereof.
Parcel IV:
Lot 4 of Ohtness' Subdivision of Lots 12, 13, and 14 in Block 17 of Watertown (commonly referred to as being the Original Plat), Codington County, South Dakota, according to the recorded plat thereof.
Parcel V:
Lot 11, except the North 30 Feet of the East 70 Feet thereof, in Block 17, of the plat Entitled: "Watertown" Codington County, South Dakota, according to the recorded plat thereof.

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: Red River State Bank PO Box 25 Halstad, MN 56548.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of this Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. In addition, Lender shall have all the rights and remedies provided in the related documents or available at law, in equity, or otherwise. Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower shall not affect Lender's right to declare a default and to exercise its rights and remedies. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

RRSB GO1st 01132

**PROMISSORY NOTE**
**(Continued)**

Loan No: 51404                                                                                    Page 3

---

**SECTION DISCLOSURE.** To the extent not preempted by federal law, this loan is made under Minnesota Statutes, Section 47.59.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

GENERATIONS ON 1ST, LLC

By: _____
    JESSE ROBERT CRAIG, MANAGING MEMBER of
    GENERATIONS ON 1ST, LLC

LENDER:

RED RIVER STATE BANK

X _____
    CHARLES AARESTAD, Vice President

LaserPro, Ver. 20.4.0.036  Copr. Finastra USA Corporation 1997, 2021.  All Rights Reserved.  - MN  C:\HARLAND\CFI\LPL\D20.FC  TR-5069  PR-57

RRSB GO1st 01133

## DISBURSEMENT REQUEST AND AUTHORIZATION

| Principal<br>$2,976,430.98 | Loan Date<br>09-14-2021 | Maturity<br>03-31-2022 | Loan No<br>51404 | Call / Coll | Account | Officer<br>*** | Initials |
|---|---|---|---|---|---|---|---|

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

Borrower: GENERATIONS ON 1ST, LLC (TIN: ██████6148)
1405 1ST AVE N
FARGO, ND 58102

Lender: Red River State Bank
300 2nd Ave West
P.O. Box 25
Halstad, MN 56548

**EXHIBIT**

**2-B**

LOAN TYPE. This is a Fixed Rate (4.350%) Nondisclosable Loan to a Limited Liability Company for $2,976,430.98 due on March 31, 2022.

PRIMARY PURPOSE OF LOAN. The primary purpose of this loan is for:

☐ Maintenance of Borrower's Primary Residence.

☐ Personal, Family or Household Purposes or Personal Investment.

☐ Agricultural Purposes.

☒ Business Purposes.

SPECIFIC PURPOSE. The specific purpose of this loan is: Multi Family Home Construction Project Draw 10, 11, 12, & 13.

DISBURSEMENT INSTRUCTIONS. Borrower understands that no loan proceeds will be disbursed until all of Lender's conditions for making the loan have been satisfied. Please disburse the loan proceeds of $2,976,430.98 as follows:

Amount paid to others on Borrower's behalf: $2,976,430.98
$2,976,430.98 to Craig Development LLC for Construction
Draws and Construction Management Fees

Note Principal: $2,976,430.98

FINANCIAL CONDITION. BY SIGNING THIS AUTHORIZATION, BORROWER REPRESENTS AND WARRANTS TO LENDER THAT THE INFORMATION PROVIDED ABOVE IS TRUE AND CORRECT AND THAT THERE HAS BEEN NO MATERIAL ADVERSE CHANGE IN BORROWER'S FINANCIAL CONDITION AS DISCLOSED IN BORROWER'S MOST RECENT FINANCIAL STATEMENT TO LENDER. THIS AUTHORIZATION IS DATED SEPTEMBER 14, 2021.

BORROWER:

GENERATIONS ON 1ST, LLC

By: _____
JESSE ROBERT CRAIG, MANAGING MEMBER of
GENERATIONS ON 1ST, LLC

**WIRE TRANSFER ORDER**

| | | EXHIBIT |
|---|---|---|
| Date | 9/14/2021 | |
| Sender ABA # | 091205199 | **2-C** |
| Bank Name | Red River State Bank | |

☑ Customer
☐ Non-Customer -- Check with Lori DeLong

## ORIGINATOR INFORMATION

Name          Generations on 1st LLC ✓

Street Address    1405 1st Ave N ✓

City, State, Zip    Fargo, ND 58102 ✓

Account Number    51404

**Verified Collected Funds in Account**    CBA    (initials)    (initials)

## WIRE THROUGH

Bank Name    First Community Credit Union ✓

ABA Number    291378693 ✓

Dollar Amount    $2,976,430.98 ✓

## BENEFICIARY INFORMATION

For Credit To    Craig Properties LLC ✓

Street Address    1405 1st Ave N ✓

City, State, Zip    Fargo, ND 58102 ✓

Account Number    46957 ✓

For Further Credit To

Account Number

☑ OFAC Verified - by UBB

☑ IN-PERSON REQUEST:    ☐ Known Customer    ☐ Identity Verified    ☐ Internal Business Purpose

Verified Wire Transfer agreement on file:  Yes / No    Initial:    CD RATELINE

**CUSTOMER SIGNATURE**

---

☐ NOT IN- PERSON REQUEST:    Call Back Verfication details:

Wire Instructions on File    Date:    Time:

☐ Yes  ☐ NO  -- Written instructions from customer attached    Who performed callback:

Instructions received by:    Customer/Authorized Rep spoke with:

☐ Telephone Initial:    ☐ Identity verified    ☐ Authority verified
☐ Email Request (attached) Initial:
☐ Fax request (attached) Initial    Phone Number called to verify:
☐ Mail request (attached) Initial

If not loan source funds, wire transfer agreement on file? YES/NO

---

| | | | **SOURCE OF FUNDS** |
|---|---|---|---|
| Wire Transfer Amount | US $ | 2,976,430.98 | ☐ Cash |
| | | **EBA OK?** | ☐ Check |
| Wire Transfer Fee | $ | 0.00 | ☐ Deposit Acct |
| | | Initials | ☑ Loan |
| | | | ☐ General Ledger |

**EMPLOYEE SIGNATURE**

**APPROVED BY OFFICER**

(Attach any supporting documents on reverse side.)    RRSB GO1st 04822

Revised: 9/14/2021

## Outgoing Domestic

Account Number:   1534

Transaction Date: 9/14/2021

Business Function - {3600} CTR                    Type/SubType - {1510} 1000
Amount - {2000}        $2,976,430.98
Paid With Cash         ☐
Receiver Bank - {3400}
ABA                    291378693          Bank Name         First Community CU

Originating Bank - {5100}

Id Code
Identifier             DDA Account Number
Name                   534
Address 1              Red River State Bank Halstad
Address 2
Address 3

Originator - {5000}

Id Code
Identifier             DDA Account Number
Name                   5199
Address 1              GENERATIONS ON 1ST LLC
Address 2              1405 1ST AVE N
Address 3              FARGO, ND 58102

Beneficiary - {4200}

Id Code
Identifier             DDA Account Number
Name                   46957
Address 1              CRAIG PROPERTIES LLC
Address 2              1405 1ST AVE N
Address 3              FARGO, ND 58102

File Attachments  No Attachments

Transaction Description GENERATIONS ON 1ST LLC
Notes

**No OFAC Violation**

Created By          DGustaf72
Date Created        9/14/2021 12:39:35 PM
                    Awaiting Verification

First Viewed By    DGustaf72
Date First Viewed 9/14/2021 12:39:43 PM
Last Viewed By    DGustaf72
Date Last Viewed 9/14/2021 12:39:43 PM

**FC First Community**
**CU Credit Union**
310 10th St SE | PO Box 2180
Jamestown, ND 58401-2180
*myFCCU.com*

**Account Number:** *****4695
**Statement End Date:** 09-30-21
**Page:** 1 of 8
**MC:** P

ADDRESS SERVICE REQUESTED

On Tues, October 19, 2021 at 11:00am, a special membership meeting will be held at First Community Credit Union's headquarters, 310 10th St SE, Jamestown, ND. The agenda is a membership vote to allow Elm River Credit Union to merge with FCCU.

CRAIG PROPERTIES LLC
1405 1ST AVE N
FARGO, ND 58102

## Account Summary

| Account | Description | Beginning Balance | Ending Balance | Account | Description | Beginning Balance | Ending Balance |
|---------|-------------|-------------------|----------------|---------|-------------|-------------------|----------------|
| 1 | PRIME SHARES | 0.01 | 0.01 | 2 | BUSINESS REWARDS | 719,477.45 | 86,047.45 |
| 3 | MEMBERSHIP SAVINGS | 5.00 | 5.00 | | | | |

## Account Detail

**PRIME SHARES** ACCT# **1**       **09-01-21** THRU **09-30-21**                PREVIOUS BALANCE **0.01**

ENDING BALANCE                                                                **0.01**

**BUSINESS REWARDS** ACCT# **2**       **09-01-21** THRU **09-30-21**           PREVIOUS BALANCE **719,477.45**

| Date | Transaction Description | Amount | Balance |
|------|------------------------|--------|---------|
| SEP 01 | SERVICE CHARGE   CRAIG PROPERTIES LLC. TOTAL NON COMPENSABLE CHARGE | -15.00 | 719462.45 |
| SEP 01 | EFT ACH Master  STARCAPITAL Mnthly pmt210830 | -2701.61 | 716760.84 |
| SEP 01 | EFT ACH Master  CAPITAL ONE MOBILE PMT210831 | -13000.00 | 703760.84 |
| SEP 01 | DEPOSIT | 7889.15 | 711649.99 |
| SEP 01 | SHARE DRAFT 38388 TRACE#: 00200805 | -150.92 | 711499.07 |
| SEP 01 | SHARE DRAFT 38601 TRACE#: 00212880 | -239.00 | 711260.07 |
| SEP 01 | SHARE DRAFT 8625 TRACE#: 00213210 | -750.00 | 710510.07 |
| SEP 01 | SHARE DRAFT 38377 TRACE#: 00200810 | -1024.36 | 709485.71 |
| SEP 01 | SHARE DRAFT 38621 TRACE#: 00213435 | -1138.80 | 708346.91 |
| SEP 01 | SHARE DRAFT 38604 TRACE#: 00205005 | -1515.00 | 706831.91 |
| SEP 01 | SHARE DRAFT 38615 TRACE#: 00211890 | -2054.91 | 704777.00 |
| SEP 01 | SHARE DRAFT 38629 TRACE#: 50400060 | -2670.50 | 702106.50 |
| SEP 01 | SHARE DRAFT 38576 TRACE#: 00205345 | -2836.70 | 699269.80 |
| SEP 01 | SHARE DRAFT 38614 TRACE#: 00205015 | -2840.45 | 696429.35 |
| SEP 01 | SHARE DRAFT 38611 TRACE#: 00205010 | -2970.70 | 693458.65 |
| SEP 01 | SHARE DRAFT 38563 TRACE#: 00211280 | -3000.00 | 690458.65 |
| SEP 01 | SHARE DRAFT 38567 TRACE#: 00211285 | -3374.55 | 687084.10 |
| SEP 01 | SHARE DRAFT 38598 TRACE#: 00205190 | -4108.25 | 682975.85 |
| SEP 01 | SHARE DRAFT 38553 TRACE#: 00205320 | -4500.00 | 678475.85 |
| SEP 01 | SHARE DRAFT 38379 TRACE#: 00204425 | -59670.00 | 618805.85 |
| SEP 01 | SHARE DRAFT 38375 TRACE#: 00209690 | -61125.40 | 557680.45 |
| SEP 01 | SHARE DRAFT 38381 TRACE#: 00204430 | -70794.54 | 486885.91 |
| SEP 02 | EFT ACH Master  CRAIG PROPERTIESRENT 210902 | 22330.00 | 509215.91 |
| SEP 02 | EFT ACH Master  BCBSNDPREMIUM EDI PYMNTS | -956.20 | 508259.71 |
| SEP 02 | DEPOSIT | 6849.50 | 515109.21 |
| SEP 02 | SHARE DRAFT 38572 TRACE#: 00210000 | -20.00 | 515089.21 |
| SEP 02 | SHARE DRAFT 38623 TRACE#: 00213145 | -108.11 | 514981.10 |
| SEP 02 | SHARE DRAFT 38632 TRACE#: 00205250 | -180.00 | 514801.10 |
| SEP 02 | SHARE DRAFT 38593 TRACE#: 00211550 | -250.58 | 514550.52 |
| SEP 02 | SHARE DRAFT 38554 TRACE#: 00204570 | -563.32 | 513987.20 |

*- Continued -*                RRSB FCCU Subpoena 021279

**FCCU First Community Credit Union**

910 11th St SE | PO Box 280
Jamestown, ND 58401-280
*myFCCU.com*

**Account Number:** *****4695
**Statement End Date:** 09-30-21
**Page:** 2 of 8

| Date | Transaction Description | Amount | Balance |
|------|------------------------|--------|---------|
| SEP 02 | SHARE DRAFT 38613 TRACE#: 00207655 | -785.75 | 513201.45 |
| SEP 02 | SHARE DRAFT 38627 TRACE#: 00203890 | -852.00 | 512349.45 |
| SEP 02 | SHARE DRAFT 38631 TRACE#: 00212950 | -913.50 | 511435.95 |
| SEP 02 | SHARE DRAFT 38628 TRACE#: 00203785 | -1000.00 | 510435.95 |
| SEP 02 | SHARE DRAFT 38610 TRACE#: 00207650 | -1062.73 | 509373.22 |
| SEP 02 | SHARE DRAFT 38630 TRACE#: 00207570 | -1561.25 | 507811.97 |
| SEP 02 | SHARE DRAFT 38378 TRACE#: 00203660 | -1588.19 | 506223.78 |
| SEP 02 | SHARE DRAFT 38555 TRACE#: 00213085 | -1932.60 | 504291.18 |
| SEP 02 | SHARE DRAFT 38603 TRACE#: 00207660 | -2426.50 | 501864.68 |
| SEP 02 | SHARE DRAFT 38579 TRACE#: 00208485 | -2503.46 | 499361.22 |
| SEP 02 | SHARE DRAFT 38600 TRACE#: 00212265 | -3173.14 | 496188.08 |
| SEP 02 | SHARE DRAFT 38373 TRACE#: 00213150 | -3746.53 | 492441.55 |
| SEP 02 | SHARE DRAFT 38591 TRACE#: 00203780 | -5020.16 | 487421.39 |
| SEP 02 | SHARE DRAFT 38590 TRACE#: 00213555 | -5208.33 | 482213.06 |
| SEP 02 | SHARE DRAFT 38389 TRACE#: 00200675 | -31102.20 | 451110.86 |
| SEP 03 | DEPOSIT | 10275.00 | 461385.86 |
| SEP 03 | SHARE DRAFT 38616 TRACE#: 00204155 | -9.12 | 461376.74 |
| SEP 03 | SHARE DRAFT 38589 TRACE#: 00207170 | -90.00 | 461286.74 |
| SEP 03 | SHARE DRAFT 38565 TRACE#: 00203535 | -142.90 | 461143.84 |
| SEP 03 | SHARE DRAFT 38365 TRACE#: 00210485 | -175.73 | 460968.11 |
| SEP 03 | SHARE DRAFT 38383 TRACE#: 00210490 | -175.73 | 460792.38 |
| SEP 03 | SHARE DRAFT 38626 TRACE#: 00209600 | -269.20 | 460523.18 |
| SEP 03 | SHARE DRAFT 38612 TRACE#: 00210840 | -676.09 | 459847.09 |
| SEP 03 | SHARE DRAFT 38577 TRACE#: 00207965 | -900.00 | 458947.09 |
| SEP 03 | SHARE DRAFT 38595 TRACE#: 00212530 | -1353.65 | 457593.44 |
| SEP 03 | SHARE DRAFT 38607 TRACE#: 00209760 | -1718.66 | 455874.78 |
| SEP 03 | SHARE DRAFT 38362 TRACE#: 00204215 | -2225.00 | 453649.78 |
| SEP 03 | SHARE DRAFT 38574 TRACE#: 00205675 | -2581.21 | 451068.57 |
| SEP 03 | SHARE DRAFT 38571 TRACE#: 00207525 | -3000.00 | 448068.57 |
| SEP 03 | SHARE DRAFT 38368 TRACE#: 00210705 | -3353.00 | 444715.57 |
| SEP 03 | SHARE DRAFT 38374 TRACE#: 00210815 | -5000.00 | 439715.57 |
| SEP 03 | SHARE DRAFT 38585 TRACE#: 00204130 | -5333.34 | 434382.23 |
| SEP 03 | SHARE DRAFT 38584 TRACE#: 00207955 | -6166.67 | 428215.56 |
| SEP 03 | SHARE DRAFT 38382 TRACE#: 00204210 | -18960.73 | 409254.83 |
| SEP 03 | SHARE DRAFT 38619 TRACE#: 00204320 | -22087.36 | 387167.47 |
| SEP 03 | SHARE DRAFT 38372 TRACE#: 00207960 | -35512.31 | 351655.16 |
| SEP 06 | WITHDRAWAL  POS 0906 1224 327144 MNRD-MOORHEAD MOORHEAD MN | -134.08 | 351521.08 |
| SEP 07 | DEBIT CARD DEBIT  000019149714 CASEYS GEN STORE 3354 FARGO ND 09-05-21 | -91.35 | 351429.73 |
| SEP 07 | EFT ACH Master  CAPITAL ONE MOBILE PMT210905 | -12000.00 | 339429.73 |
| SEP 07 | DEPOSIT | 11795.00 | 351224.73 |
| SEP 07 | SHARE DRAFT 38592 TRACE#: 00211720 | -241.88 | 350982.85 |
| SEP 07 | SHARE DRAFT 38582 TRACE#: 00211035 | -464.48 | 350518.37 |
| SEP 07 | SHARE DRAFT 38620 TRACE#: 00203875 | -505.00 | 350013.37 |
| SEP 07 | SHARE DRAFT 38569 TRACE#: 00204010 | -746.44 | 349266.93 |
| SEP 07 | SHARE DRAFT 38561 TRACE#: 00211245 | -773.61 | 348493.32 |
| SEP 07 | SHARE DRAFT 38570 TRACE#: 00209165 | -1311.89 | 347181.43 |
| SEP 07 | SHARE DRAFT 38566 TRACE#: 00211040 | -1612.01 | 345569.42 |
| SEP 07 | SHARE DRAFT 38514 TRACE#: 00211220 | -2349.22 | 343220.20 |
| SEP 07 | SHARE DRAFT 38608 TRACE#: 00211030 | -2765.88 | 340454.32 |
| SEP 07 | SHARE DRAFT 38624 TRACE#: 00211425 | -3435.00 | 337019.32 |
| SEP 07 | SHARE DRAFT 38617 TRACE#: 00214510 | -7533.28 | 329486.04 |
| SEP 07 | SHARE DRAFT 38385 TRACE#: 00215150 | -35000.00 | 294486.04 |
| SEP 07 | SHARE DRAFT 38386 TRACE#: 00215595 | -72000.00 | 222486.04 |
| SEP 07 | SHARE DRAFT 38371 TRACE#: 00215590 | -72061.20 | 150424.84 |
| SEP 08 | DEPOSIT | 4714.00 | 155138.84 |
| SEP 08 | SHARE DRAFT 38562 TRACE#: 00200665 | -327.00 | 154811.84 |
| SEP 08 | SHARE DRAFT 38606 TRACE#: 00205305 | -749.76 | 154062.08 |
| SEP 08 | SHARE DRAFT 38384 TRACE#: 00213130 | -3680.00 | 150382.08 |
| SEP 08 | SHARE DRAFT 38369 TRACE#: 00213125 | -5096.52 | 145285.56 |
| SEP 09 | EFT GRINNELL MUTUAL  Grinnell Mutual PREM PYMT 090921 | -154.91 | 145130.65 |

*- Continued -*   RRSB FCCU Subpoena 021280

**First Community**
Credit Union
310 10th St SE | PO Box 280
Jamestown, ND 58401-280
*myFCCU.com*

**Account Number:** *****4695
**Statement End Date:** 09-30-21
**Page:** 3 of 8

| Date | Transaction Description | Amount | Balance |
|---|---|---|---|
| SEP 09 | SHARE DRAFT 38586 TRACE#: 00206380 | -84.00 | 145046.65 |
| SEP 09 | SHARE DRAFT 38557 TRACE#: 00205135 | -866.00 | 144180.65 |
| SEP 09 | SHARE DRAFT 38575 TRACE#: 00206410 | -1153.00 | 143027.65 |
| SEP 09 | SHARE DRAFT 38556 TRACE#: 00205665 | -4000.00 | 139027.65 |
| SEP 10 | DEPOSIT | 2555.00 | 141582.65 |
| SEP 10 | SHARE DRAFT 38599 TRACE#: 00203585 | -80.63 | 141502.02 |
| SEP 11 | DEBIT CARD DEBIT  000023982263 CASEYS GEN STORE 3354 FARGO ND 09-09-21 | -42.65 | 141459.37 |
| SEP 13 | EFT ACH Master  State Auto - InbVENDOR PMT210910 | -378.31 | 141081.06 |
| SEP 13 | EFT ACH Master  State Auto - InbVENDOR PMT210910 | -230.15 | 140850.91 |
| SEP 13 | EFT ACH Master  State Auto - InbVENDOR PMT210910 | -632.54 | 140218.37 |
| SEP 13 | DEPOSIT | 1600.00 | 141818.37 |
| SEP 13 | TRANSFER 2  per Jesse's request | 104000.00 | 245818.37 |
| SEP 14 | EFT ACH Master  State Auto - InbVENDOR PMT210913 | -837.61 | 244980.76 |
| SEP 14 | DEPOSIT | 1175.00 | 246155.76 |
| SEP 14 | DEPOSIT  Incoming Wire Transfer-259799135 | 2976430.98 | 3222586.74 |
| SEP 14 | WITHDRAWAL  Wire Transfer Fee-259799138 | -20.00 | 3222566.74 |
| SEP 14 | SHARE DRAFT 38605 TRACE#: 00201400 | -589.73 | 3221977.01 |
| SEP 15 | EFT ACH Master  IRS TREAS 310 CHILDCTC091521 | 500.00 | 3222477.01 |
| SEP 15 | DEPOSIT | 1460.00 | 3223937.01 |
| SEP 15 | TRANSFER 2  TRF $7000 TO SYDNEY | -7000.00 | 3216937.01 |
| SEP 15 | DEPOSIT | 17630.12 | 3234567.13 |
| SEP 15 | SHARE DRAFT 38370 TRACE#: 00200690 | -266.25 | 3234300.88 |
| SEP 15 | SHARE DRAFT 1111 TRACE#: 77500155 | -1825.25 | 3232475.63 |
| SEP 15 | SHARE DRAFT 38519 TRACE#: 00211300 | -8571.50 | 3223904.13 |
| SEP 15 | SHARE DRAFT 38573 TRACE#: 51900045 | -11492.30 | 3212411.83 |
| SEP 15 | SHARE DRAFT 38558 TRACE#: 00205005 | -24630.00 | 3187781.83 |
| SEP 15 | SHARE DRAFT 38525 TRACE#: 00211305 | -57375.01 | 3130406.82 |
| SEP 15 | SHARE DRAFT 38541 TRACE#: 00211310 | -58500.00 | 3071906.82 |
| SEP 16 | DEBIT CARD DEBIT  000015976210 CASEYS GEN STORE 3354 FARGO ND 09-14-21 | -80.55 | 3071826.27 |
| SEP 16 | EFT ACH Master  CAPITAL ONE MOBILE PMT210915 | -10000.00 | 3061826.27 |
| SEP 16 | SHARE DRAFT 38546 TRACE#: 00200605 | -46.12 | 3061780.15 |
| SEP 16 | SHARE DRAFT 38560 TRACE#: 00211195 | -92.00 | 3061688.15 |
| SEP 16 | SHARE DRAFT 38580 TRACE#: 00205215 | -850.00 | 3060838.15 |
| SEP 16 | SHARE DRAFT 38678 TRACE#: 00208695 | -1412.75 | 3059425.40 |
| SEP 16 | SHARE DRAFT 38638 TRACE#: 00213585 | -1423.86 | 3058001.54 |
| SEP 16 | SHARE DRAFT 38650 TRACE#: 00202390 | -1639.22 | 3056362.32 |
| SEP 16 | SHARE DRAFT 38539 TRACE#: 00207375 | -4527.00 | 3051835.32 |
| SEP 16 | SHARE DRAFT 38655 TRACE#: 00202395 | -4650.31 | 3047185.01 |
| SEP 16 | SHARE DRAFT 38675 TRACE#: 00211865 | -5871.25 | 3041313.76 |
| SEP 16 | SHARE DRAFT 38640 TRACE#: 00203765 | -7500.00 | 3033813.76 |
| SEP 16 | SHARE DRAFT 38587 TRACE#: 00215150 | -9893.86 | 3023919.90 |
| SEP 16 | SHARE DRAFT 38517 TRACE#: 00209670 | -35750.00 | 2988169.90 |
| SEP 16 | SHARE DRAFT 38618 TRACE#: 00207090 | -36000.00 | 2952169.90 |
| SEP 16 | SHARE DRAFT 38532 TRACE#: 00203865 | -36530.00 | 2915639.90 |
| SEP 16 | SHARE DRAFT 38530 TRACE#: 00209650 | -52473.00 | 2863166.90 |
| SEP 16 | SHARE DRAFT 38545 TRACE#: 00209655 | -89552.33 | 2773614.57 |
| SEP 16 | SHARE DRAFT 38549 TRACE#: 00203860 | -99000.00 | 2674614.57 |
| SEP 16 | SHARE DRAFT 38534 TRACE#: 00203870 | -141588.08 | 2533026.49 |
| SEP 16 | SHARE DRAFT 38636 TRACE#: 00203985 | -150000.00 | 2383026.49 |
| SEP 17 | SHARE DRAFT 38597 TRACE#: 00212775 | -8261.50 | 2374764.99 |
| SEP 17 | SHARE DRAFT 38637 TRACE#: 00203910 | -50.00 | 2374714.99 |
| SEP 17 | SHARE DRAFT 38646 TRACE#: 00209035 | -56.52 | 2374658.47 |
| SEP 17 | SHARE DRAFT 38634 TRACE#: 00207965 | -272.93 | 2374385.54 |
| SEP 17 | SHARE DRAFT 38662 TRACE#: 00212660 | -430.81 | 2373954.73 |
| SEP 17 | SHARE DRAFT 38645 TRACE#: 00205010 | -843.48 | 2373111.25 |
| SEP 17 | SHARE DRAFT 38654 TRACE#: 00204035 | -1823.42 | 2371287.83 |
| SEP 17 | SHARE DRAFT 38643 TRACE#: 00204030 | -3497.89 | 2367789.94 |
| SEP 17 | SHARE DRAFT 37009 TRACE#: 00203350 | -4894.37 | 2362895.57 |
| SEP 17 | SHARE DRAFT 37162 TRACE#: 00203360 | -4894.37 | 2358001.20 |
| SEP 17 | SHARE DRAFT 37297 TRACE#: 00203355 | -4894.37 | 2353106.83 |

*- Continued -*    RRSB FCCU Subpoena 021281

**FCCU First Community Credit Union**

318 10th St SE | PO Box 280
Jamestown, ND 58401-280
*myFCCU.com*

Account Number: *****4695
Statement End Date: 09-30-21
Page: 4 of 8

| Date | Transaction Description | Amount | Balance |
|---|---|---|---|
| SEP 17 | SHARE DRAFT 37477 TRACE#: 00203345 | -4894.37 | 2348212.46 |
| SEP 17 | SHARE DRAFT 8518 TRACE#: 00203270 | -5065.03 | 2343147.43 |
| SEP 17 | SHARE DRAFT 38647 TRACE#: 00209075 | -11690.52 | 2331456.91 |
| SEP 17 | SHARE DRAFT 38526 TRACE#: 00204020 | -13122.47 | 2318334.44 |
| SEP 17 | SHARE DRAFT 38542 TRACE#: 00204015 | -15408.19 | 2302926.25 |
| SEP 17 | SHARE DRAFT 38578 TRACE#: 00204040 | -22953.62 | 2279972.63 |
| SEP 17 | SHARE DRAFT 38664 TRACE#: 00200630 | -37076.36 | 2242896.27 |
| SEP 17 | SHARE DRAFT 38669 TRACE#: 00209470 | -166765.72 | 2076130.55 |
| SEP 17 | SHARE DRAFT 8552 TRACE#: 00203265 | -229896.66 | 1846233.89 |
| SEP 17 | SHARE DRAFT 8536 TRACE#: 00203275 | -509495.88 | 1336738.01 |
| SEP 18 | DEBIT CARD DEBIT  000015410118 CASEYS GEN STORE 3370 FARGO ND 09-16-21 | -77.09 | 1336660.92 |
| SEP 18 | DEBIT CARD DEBIT  000023419149 CASEYS GEN STORE 3362 DILWORTH MN 09-16-21 | -86.51 | 1336574.41 |
| SEP 18 | DEBIT CARD DEBIT  000012401699 CASEYS GEN STORE 2089 WATERTOWN SD 09-16-21 | -97.91 | 1336476.50 |
| SEP 20 | DEPOSIT | 1799.00 | 1338275.50 |
| SEP 20 | SHARE DRAFT 38633 TRACE#: 00204235 | -110.95 | 1338164.55 |
| SEP 20 | SHARE DRAFT 38522 TRACE#: 00204490 | -213.00 | 1337951.55 |
| SEP 20 | SHARE DRAFT 38648 TRACE#: 00204480 | -220.87 | 1337730.68 |
| SEP 20 | SHARE DRAFT 38644 TRACE#: 00203610 | -280.00 | 1337450.68 |
| SEP 20 | SHARE DRAFT 38635 TRACE#: 00200220 | -725.00 | 1336725.68 |
| SEP 20 | SHARE DRAFT 38543 TRACE#: 00207450 | -970.49 | 1335755.19 |
| SEP 20 | SHARE DRAFT 38651 TRACE#: 00204055 | -2645.00 | 1333110.19 |
| SEP 20 | SHARE DRAFT 38220 TRACE#: 00203530 | -230301.45 | 1102808.74 |
| SEP 21 | SHARE DRAFT 38649 TRACE#: 00200500 | -136.48 | 1102672.26 |
| SEP 21 | SHARE DRAFT 38639 TRACE#: 00201995 | -294.52 | 1102377.74 |
| SEP 21 | SHARE DRAFT 38652 TRACE#: 00204250 | -336.00 | 1102041.74 |
| SEP 21 | SHARE DRAFT 38548 TRACE#: 00219725 | -407.36 | 1101634.38 |
| SEP 21 | SHARE DRAFT 38516 TRACE#: 00201120 | -560.00 | 1101074.38 |
| SEP 21 | SHARE DRAFT 38653 TRACE#: 00202000 | -568.46 | 1100505.92 |
| SEP 21 | SHARE DRAFT 38596 TRACE#: 00226555 | -612.92 | 1099893.00 |
| SEP 21 | SHARE DRAFT 38684 TRACE#: 00202270 | -640.00 | 1099253.00 |
| SEP 21 | SHARE DRAFT 38679 TRACE#: 00201085 | -750.88 | 1098502.12 |
| SEP 21 | SHARE DRAFT 38673 TRACE#: 00201080 | -1864.50 | 1096637.62 |
| SEP 21 | SHARE DRAFT 38672 TRACE#: 00201990 | -4560.33 | 1092077.29 |
| SEP 21 | SHARE DRAFT 38533 TRACE#: 00207425 | -4609.80 | 1087467.49 |
| SEP 21 | SHARE DRAFT 38685 TRACE#: 00201795 | -8000.00 | 1079467.49 |
| SEP 21 | SHARE DRAFT 38659 TRACE#: 00201255 | -10600.00 | 1068867.49 |
| SEP 21 | SHARE DRAFT 38535 TRACE#: 00201115 | -10657.50 | 1058209.99 |
| SEP 21 | SHARE DRAFT 38551 TRACE#: 00223375 | -12960.00 | 1045249.99 |
| SEP 21 | SHARE DRAFT 38663 TRACE#: 00216770 | -27762.05 | 1017487.94 |
| SEP 21 | SHARE DRAFT 38523 TRACE#: 00202140 | -28440.00 | 989047.94 |
| SEP 21 | SHARE DRAFT 38667 TRACE#: 00201260 | -30918.42 | 958129.52 |
| SEP 21 | SHARE DRAFT 38658 TRACE#: 00202005 | -48346.19 | 909783.33 |
| SEP 21 | SHARE DRAFT 38529 TRACE#: 00201710 | -53484.30 | 856299.03 |
| SEP 21 | SHARE DRAFT 38550 TRACE#: 00207420 | -64165.80 | 792133.23 |
| SEP 21 | SHARE DRAFT 38665 TRACE#: 00219730 | -67500.00 | 724633.23 |
| SEP 21 | SHARE DRAFT 38670 TRACE#: 00202160 | -157500.00 | 567133.23 |
| SEP 22 | DEBIT CARD DEBIT  000006201542 CASEYS GEN STORE 3354 FARGO ND 09-20-21 | -82.63 | 567050.60 |
| SEP 22 | SHARE DRAFT 38547 TRACE#: 00228100 | -8062.50 | 558988.10 |
| SEP 22 | SHARE DRAFT 38521 TRACE#: 00214035 | -175.73 | 558812.37 |
| SEP 22 | SHARE DRAFT 38641 TRACE#: 00214040 | -175.73 | 558636.64 |
| SEP 22 | SHARE DRAFT 38680 TRACE#: 00204150 | -248.33 | 558388.31 |
| SEP 22 | SHARE DRAFT 38687 TRACE#: 00203995 | -335.84 | 558052.47 |
| SEP 22 | SHARE DRAFT 38660 TRACE#: 00214045 | -351.45 | 557701.02 |
| SEP 22 | SHARE DRAFT 38538 TRACE#: 00214030 | -527.18 | 557173.84 |
| SEP 22 | SHARE DRAFT 38642 TRACE#: 00203985 | -1393.23 | 555780.61 |
| SEP 22 | SHARE DRAFT 38661 TRACE#: 00204550 | -2781.70 | 552998.91 |
| SEP 22 | SHARE DRAFT 38681 TRACE#: 00203765 | -3350.00 | 549648.91 |
| SEP 22 | SHARE DRAFT 38564 TRACE#: 00207095 | -5283.20 | 544365.71 |
| SEP 22 | SHARE DRAFT 38671 TRACE#: 00208930 | -6682.61 | 537683.10 |
| SEP 22 | SHARE DRAFT 38594 TRACE#: 00203975 | -7502.13 | 530180.97 |

- Continued -

RRSB FCCU Subpoena 021282

**First Community Credit Union**

910-19th St SE | PO Box 280
Jamestown, ND 58401-280
*myFCCU.com*

**Account Number:** *****4695
**Statement End Date:** 09-30-21
**Page:** 5 of 8

| Date | Transaction Description | Amount | Balance |
|---|---|---|---|
| SEP 22 | SHARE DRAFT 38588 TRACE#: 00212515 | -8450.24 | 521730.73 |
| SEP 22 | SHARE DRAFT 38666 TRACE#: 00214585 | -65000.00 | 456730.73 |
| SEP 23 | WITHDRAWAL POS 0923 0940 024399 MNRD-MOORHEAD MOORHEAD MN | -53.62 | 456677.11 |
| SEP 23 | SHARE DRAFT 38668 TRACE#: 00211215 | -86650.00 | 370027.11 |
| SEP 24 | DEPOSIT | 395.21 | 370422.32 |
| SEP 24 | SHARE DRAFT 38695 TRACE#: 00203170 | -829.56 | 369592.76 |
| SEP 24 | SHARE DRAFT 38524 TRACE#: 00208185 | -1477.69 | 368115.07 |
| SEP 24 | SHARE DRAFT 38531 TRACE#: 00202770 | -1922.10 | 366192.97 |
| SEP 24 | SHARE DRAFT 38691 TRACE#: 00209430 | -3750.36 | 362442.61 |
| SEP 24 | SHARE DRAFT 38540 TRACE#: 00206490 | -30535.43 | 331907.18 |
| SEP 24 | SHARE DRAFT 38528 TRACE#: 00200710 | -98000.00 | 233907.18 |
| SEP 27 | DEPOSIT | 494.00 | 234401.18 |
| SEP 27 | DEPOSIT | 180.35 | 234581.53 |
| SEP 27 | DEPOSIT | 8.75 | 234590.28 |
| SEP 27 | DEPOSIT | 174.75 | 234765.03 |
| SEP 28 | EFT ACH Master Square Inc 210928P2 210928 | 709.12 | 235474.15 |
| SEP 28 | EFT ACH Master NODAK INSURANCE EFTM DESC | -339.36 | 235134.79 |
| SEP 28 | WITHDRAWAL POS 0928 1548 244427 MNRD-FARGO WEST FARGO ND | -200.78 | 234934.01 |
| SEP 28 | SHARE DRAFT 38686 TRACE#: 00217245 | -1382.30 | 233551.71 |
| SEP 28 | SHARE DRAFT 38690 TRACE#: 00213150 | -4297.31 | 229254.40 |
| SEP 28 | SHARE DRAFT 38674 TRACE#: 00213165 | -11400.00 | 217854.40 |
| SEP 28 | SHARE DRAFT 38692 TRACE#: 00211700 | -35951.00 | 181903.40 |
| SEP 29 | DEBIT CARD DEBIT 000019647543 CASEYS GEN STORE 3354 FARGO ND 09-27-21 | -86.42 | 181816.98 |
| SEP 29 | EFT ACH Master Square Inc 210929P2 210929 | 1215.75 | 183032.73 |
| SEP 29 | DEPOSIT | 1707.00 | 184739.73 |
| SEP 29 | SHARE DRAFT 38688 TRACE#: 00204185 | -1200.00 | 183539.73 |
| SEP 29 | SHARE DRAFT 38696 TRACE#: 00203580 | -9281.45 | 174258.28 |
| SEP 29 | SHARE DRAFT 38656 TRACE#: 00203530 | -88487.78 | 85770.50 |
| SEP 30 | EFT ACH Master Square Inc 210930P2 210930 | 1357.60 | 87128.10 |
| SEP 30 | ID THEFT COVERAGE | -5.00 | 87123.10 |
| SEP 30 | SHARE DRAFT 38544 TRACE#: 00102450 | -1075.65 | 86047.45 |

ENDING BALANCE 86,047.45

**Check Summary**
* = break in check sequence

| SD# | Date | Amount |
|---|---|---|
| 1111 | 09-15-21 | 1825.25 |
| 8518 * | 09-17-21 | 5065.03 |
| 8536 * | 09-17-21 | 509495.88 |
| 8552 * | 09-17-21 | 229896.66 |
| 8625 * | 09-01-21 | 750.00 |
| 37009 * | 09-17-21 | 4894.37 |
| 37162 * | 09-17-21 | 4894.37 |
| 37297 * | 09-17-21 | 4894.37 |
| 37477 * | 09-17-21 | 4894.37 |
| 38220 * | 09-20-21 | 230301.45 |
| 38362 * | 09-03-21 | 2225.00 |
| 38365 * | 09-03-21 | 175.73 |
| 38368 * | 09-03-21 | 3353.00 |
| 38369 | 09-08-21 | 5096.52 |
| 38370 | 09-15-21 | 266.25 |
| 38371 | 09-07-21 | 72061.20 |
| 38372 | 09-03-21 | 35512.31 |
| 38373 | 09-02-21 | 3746.53 |
| 38374 | 09-03-21 | 5000.00 |
| 38375 | 09-01-21 | 61125.40 |

**Check Summary**
* = break in check sequence

| SD# | Date | Amount |
|---|---|---|
| 38377 * | 09-01-21 | 1024.36 |
| 38378 | 09-02-21 | 1588.19 |
| 38379 | 09-01-21 | 59670.00 |
| 38381 * | 09-01-21 | 70794.54 |
| 38382 | 09-03-21 | 18960.73 |
| 38383 | 09-03-21 | 175.73 |
| 38384 | 09-08-21 | 3680.00 |
| 38385 | 09-07-21 | 35000.00 |
| 38386 | 09-07-21 | 72000.00 |
| 38388 * | 09-01-21 | 150.92 |
| 38389 | 09-02-21 | 31102.20 |
| 38514 * | 09-07-21 | 2349.22 |
| 38516 * | 09-21-21 | 560.00 |
| 38517 | 09-16-21 | 35750.00 |
| 38519 * | 09-15-21 | 8571.50 |
| 38521 * | 09-22-21 | 175.73 |
| 38522 | 09-20-21 | 213.00 |
| 38523 | 09-21-21 | 28440.00 |
| 38524 | 09-24-21 | 1477.69 |
| 38525 | 09-15-21 | 57375.01 |

- Continued -

RRSB FCCU Subpoena 021283

**First Community**
CU Credit Union

310 10th St SE | PO Box 280
Jamestown, ND 58401-280
*myFCCU.com*

**Account Number:** *****4695
**Statement End Date:** 09-30-21
**Page:** 6 of 8

## Check Summary
* = break in check sequence

| SD# | Date | Amount |
|---|---|---|
| 38526 | 09-17-21 | 13122.47 |
| 38528 * | 09-24-21 | 98000.00 |
| 38529 | 09-21-21 | 53484.30 |
| 38530 | 09-16-21 | 52473.00 |
| 38531 | 09-24-21 | 1922.10 |
| 38532 | 09-16-21 | 36530.00 |
| 38533 | 09-21-21 | 4609.80 |
| 38534 | 09-16-21 | 141588.08 |
| 38535 | 09-21-21 | 10657.50 |
| 38538 * | 09-22-21 | 527.18 |
| 38539 | 09-16-21 | 4527.00 |
| 38540 | 09-24-21 | 30535.43 |
| 38541 | 09-15-21 | 58500.00 |
| 38542 | 09-17-21 | 15408.19 |
| 38543 | 09-20-21 | 970.49 |
| 38544 | 09-30-21 | 1075.65 |
| 38545 | 09-16-21 | 89552.33 |
| 38546 | 09-16-21 | 46.12 |
| 38547 | 09-21-21 | 8062.50 |
| 38548 | 09-21-21 | 407.36 |
| 38549 | 09-16-21 | 99000.00 |
| 38550 | 09-21-21 | 64165.80 |
| 38551 | 09-21-21 | 12960.00 |
| 38553 * | 09-01-21 | 4500.00 |
| 38554 | 09-02-21 | 563.32 |
| 38555 | 09-02-21 | 1932.60 |
| 38556 | 09-09-21 | 4000.00 |
| 38557 | 09-09-21 | 866.00 |
| 38558 | 09-15-21 | 24630.00 |
| 38560 * | 09-16-21 | 92.00 |
| 38561 | 09-07-21 | 773.61 |
| 38562 | 09-08-21 | 327.00 |
| 38563 | 09-01-21 | 3000.00 |
| 38564 | 09-22-21 | 5283.20 |
| 38565 | 09-03-21 | 142.90 |
| 38566 | 09-07-21 | 1612.01 |
| 38567 | 09-01-21 | 3374.55 |
| 38569 * | 09-07-21 | 746.44 |
| 38570 | 09-07-21 | 1311.89 |
| 38571 | 09-03-21 | 3000.00 |
| 38572 | 09-02-21 | 20.00 |
| 38573 | 09-15-21 | 11492.30 |
| 38574 | 09-03-21 | 2581.21 |
| 38575 | 09-09-21 | 1153.00 |
| 38576 | 09-01-21 | 2836.70 |
| 38577 | 09-03-21 | 900.00 |
| 38578 | 09-17-21 | 22953.62 |
| 38579 | 09-02-21 | 2503.46 |
| 38580 | 09-16-21 | 850.00 |

## Check Summary
* = break in check sequence

| SD# | Date | Amount |
|---|---|---|
| 38582 * | 09-07-21 | 464.48 |
| 38584 * | 09-03-21 | 6166.67 |
| 38585 | 09-03-21 | 5333.34 |
| 38586 | 09-09-21 | 84.00 |
| 38587 | 09-16-21 | 9893.86 |
| 38588 | 09-22-21 | 8450.24 |
| 38589 | 09-03-21 | 90.00 |
| 38590 | 09-02-21 | 5208.33 |
| 38591 | 09-02-21 | 5020.16 |
| 38592 | 09-07-21 | 241.88 |
| 38593 | 09-02-21 | 250.58 |
| 38594 | 09-22-21 | 7502.13 |
| 38595 | 09-03-21 | 1353.65 |
| 38596 | 09-21-21 | 612.92 |
| 38597 | 09-16-21 | 8261.50 |
| 38598 | 09-01-21 | 4108.25 |
| 38599 | 09-10-21 | 80.63 |
| 38600 | 09-02-21 | 3173.14 |
| 38601 | 09-01-21 | 239.00 |
| 38603 * | 09-02-21 | 2426.50 |
| 38604 | 09-01-21 | 1515.00 |
| 38605 | 09-14-21 | 589.73 |
| 38606 | 09-08-21 | 749.76 |
| 38607 | 09-03-21 | 1718.66 |
| 38608 | 09-07-21 | 2765.88 |
| 38610 * | 09-02-21 | 1062.73 |
| 38611 | 09-01-21 | 2970.70 |
| 38612 | 09-03-21 | 676.09 |
| 38613 | 09-02-21 | 785.75 |
| 38614 | 09-01-21 | 2840.45 |
| 38615 | 09-01-21 | 2054.91 |
| 38616 | 09-03-21 | 9.12 |
| 38617 | 09-07-21 | 7533.28 |
| 38618 | 09-16-21 | 36000.00 |
| 38619 | 09-03-21 | 22087.36 |
| 38620 | 09-07-21 | 505.00 |
| 38621 | 09-01-21 | 1138.80 |
| 38623 * | 09-02-21 | 108.11 |
| 38624 | 09-07-21 | 3435.00 |
| 38626 * | 09-03-21 | 269.20 |
| 38627 | 09-02-21 | 852.00 |
| 38628 | 09-02-21 | 1000.00 |
| 38629 | 09-01-21 | 2670.50 |
| 38630 | 09-02-21 | 1561.25 |
| 38631 | 09-02-21 | 913.50 |
| 38632 | 09-02-21 | 180.00 |
| 38633 | 09-20-21 | 110.95 |
| 38634 | 09-17-21 | 272.93 |
| 38635 | 09-20-21 | 725.00 |

*- Continued -*

RRSB FCCU Subpoena 021284

**FCCU First Community Credit Union**
1316 14th St SE | PO Box 39160
Jamestown, ND 58401-280
*myFCCU.com*

**Account Number:** *****4695
**Statement End Date:** 09-30-21
**Page:** 7 of 8

### Check Summary
*\* = break in check sequence*

| SD# | Date | Amount |
|---|---|---|
| 38636 | 09-16-21 | 150000.00 |
| 38637 | 09-17-21 | 50.00 |
| 38638 | 09-16-21 | 1423.86 |
| 38639 | 09-21-21 | 294.52 |
| 38640 | 09-16-21 | 7500.00 |
| 38641 | 09-22-21 | 175.73 |
| 38642 | 09-22-21 | 1393.23 |
| 38643 | 09-17-21 | 3497.89 |
| 38644 | 09-20-21 | 280.00 |
| 38645 | 09-17-21 | 843.48 |
| 38646 | 09-17-21 | 56.52 |
| 38647 | 09-17-21 | 11690.52 |
| 38648 | 09-20-21 | 220.87 |
| 38649 | 09-21-21 | 136.48 |
| 38650 | 09-16-21 | 1639.22 |
| 38651 | 09-20-21 | 2645.00 |
| 38652 | 09-21-21 | 336.00 |
| 38653 | 09-21-21 | 568.46 |
| 38654 | 09-17-21 | 1823.42 |
| 38655 | 09-16-21 | 4650.31 |
| 38656 | 09-29-21 | 88487.78 |
| 38658 * | 09-21-21 | 48346.19 |
| 38659 | 09-21-21 | 10600.00 |
| 38660 | 09-22-21 | 351.45 |
| 38661 | 09-22-21 | 2781.70 |
| 38662 | 09-17-21 | 430.81 |
| 38663 | 09-21-21 | 27762.05 |

### Check Summary
*\* = break in check sequence*

| SD# | Date | Amount |
|---|---|---|
| 38664 | 09-17-21 | 37076.36 |
| 38665 | 09-21-21 | 67500.00 |
| 38666 | 09-22-21 | 65000.00 |
| 38667 | 09-21-21 | 30918.42 |
| 38668 | 09-23-21 | 86650.00 |
| 38669 | 09-17-21 | 166765.72 |
| 38670 | 09-21-21 | 157500.00 |
| 38671 | 09-22-21 | 6682.61 |
| 38672 | 09-21-21 | 4560.33 |
| 38673 | 09-21-21 | 1864.50 |
| 38674 | 09-28-21 | 11400.00 |
| 38675 | 09-16-21 | 5871.25 |
| 38678 * | 09-16-21 | 1412.75 |
| 38679 | 09-21-21 | 750.88 |
| 38680 | 09-22-21 | 248.33 |
| 38681 | 09-22-21 | 3350.00 |
| 38684 * | 09-21-21 | 640.00 |
| 38685 | 09-21-21 | 8000.00 |
| 38686 | 09-28-21 | 1382.30 |
| 38687 | 09-22-21 | 335.84 |
| 38688 | 09-29-21 | 1200.00 |
| 38690 * | 09-28-21 | 4297.31 |
| 38691 | 09-24-21 | 3750.36 |
| 38692 | 09-28-21 | 35951.00 |
| 38695 * | 09-24-21 | 829.56 |
| 38696 | 09-29-21 | 9281.45 |

| | TOTAL FOR THIS PERIOD | TOTAL YEAR-TO-DATE |
|---|---|---|
| TOTAL OVERDRAFT FEES | 0.00 | 27.00 |
| TOTAL OVERDRAFT FEES WAIVED | 0.00 | 0.00 |
| TOTAL RETURNED ITEM FEES | 0.00 | 0.00 |
| TOTAL RETURNED ITEM FEES WAIVED | 0.00 | 0.00 |

### Deposits, Dividends and Other Credits

| Date | Amount |
|---|---|
| 09-01-2021 | 7889.15 |
| 09-02-2021 | 22330.00 |
| 09-02-2021 | 6849.50 |
| 09-03-2021 | 10275.00 |
| 09-07-2021 | 11795.00 |
| 09-08-2021 | 4714.00 |
| 09-10-2021 | 2555.00 |
| 09-13-2021 | 1600.00 |

### Deposits, Dividends and Other Credits

| Date | Amount |
|---|---|
| 09-13-2021 | 104000.00 |
| 09-14-2021 | 1175.00 |
| 09-14-2021 | 2976430.98 |
| 09-15-2021 | 500.00 |
| 09-15-2021 | 1460.00 |
| 09-15-2021 | 17630.12 |
| 09-20-2021 | 1799.00 |
| 09-24-2021 | 395.21 |

### Deposits, Dividends and Other Credits

| Date | Amount |
|---|---|
| 09-27-2021 | 494.00 |
| 09-27-2021 | 180.35 |
| 09-27-2021 | 8.75 |
| 09-27-2021 | 174.75 |
| 09-28-2021 | 709.12 |
| 09-29-2021 | 1215.75 |
| 09-29-2021 | 1707.00 |
| 09-30-2021 | 1357.60 |

| Total Dividends | 0 | 0.00 |
|---|---|---|
| Total Deposits and Other Credits | 24 | 3177245.28 |

*- Continued -*

RRSB FCCU Subpoena 021285

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $1,094,025.15 | 10-14-2021 | 03-31-2022 | 51425 | | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any pa_____
Any item above containing "****" has been omitted due to text length limitations.

**EXHIBIT 3-A**

Borrower:  GENERATIONS ON 1ST, LLC (TIN: _____6148)
1405 1ST AVE N
FARGO, ND 58102

Lender:  Red River State Bank
300 2nd Ave West
P.O. Box 25
Halstad, MN 56548

---

Principal Amount: $1,094,025.15          Interest Rate: 4.350%          Date of Note: October 14, 2021

PROMISE TO PAY.  GENERATIONS ON 1ST, LLC ("Borrower") promises to pay to Red River State Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Million Ninety-four Thousand Twenty-five & 15/100 Dollars ($1,094,025.15), together with interest on the unpaid principal balance from October 14, 2021, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 4.350% per annum, until paid in full.  The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

PAYMENT.  Borrower will pay this loan in one principal payment of $1,094,025.15 plus interest on March 31, 2022.  This payment due on March 31, 2022, will be for all principal and all accrued interest not yet paid.  Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs.  Any accrued interest not paid when due is added to principal and thereafter will accrue interest as principal.

INTEREST CALCULATION METHOD.  Interest on this Note is computed on a 365/365 basis; that is, by applying the ratio of the interest rate over the number of days in a year (365 for all years, including leap years), multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding.  All interest payable under this Note is computed using this method.

RECEIPT OF PAYMENTS.  All payments must be made in U.S. dollars and must be received by Lender at:

Red River State Bank
300 2nd Ave West
P.O. Box 25
Halstad, MN 56548

All payments must be received by Lender consistent with any written payment instructions provided by Lender. If a payment is made consistent with Lender's payment instructions but received after 2:00 PM CST on a business day, Lender will credit Borrower's payment on the next business day.

PREPAYMENT.  Borrower may pay without penalty all or a portion of the amount owed earlier than it is due.  Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule.  Rather, early payments will reduce the principal balance due.  Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language.  If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender.  All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to:  Red River State Bank, PO Box 25 Halstad, MN  56548.

LATE CHARGE.  If a payment is 11 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $7.28, whichever is greater.

INTEREST AFTER DEFAULT.  Upon default, including failure to pay upon final maturity, the total sum due under this Note will continue to accrue interest at the interest rate under this Note.

DEFAULT.  Each of the following shall constitute an event of default ("Event of Default") under this Note:

Payment Default.  Borrower fails to make any payment when due under this Note.

Other Defaults.  Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

False Statements.  Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf, or made by Guarantor, or any other guarantor, endorser, surety, or accommodation party, under this Note or the related documents in connection with the obtaining of the loan evidenced by this Note or any security document directly or indirectly securing repayment of this Note is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

Death or Insolvency.  The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

Creditor or Forfeiture Proceedings.  Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender.  However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

Execution; Attachment.  Any execution or attachment is levied against the Collateral, and such execution or attachment is not set aside, discharged or stayed within thirty (30) days after the same is levied.

Change in Zoning or Public Restriction.  Any change in any zoning ordinance or regulation or any other public restriction is enacted, adopted or implemented, that limits or defines the uses which may be made of the Collateral such that the present or intended use of the Collateral, as specified in the related documents, would be in violation of such zoning ordinance or regulation or public restriction, as changed.

Default Under Other Lien Documents.  A default occurs under any other mortgage, deed of trust or security agreement covering all or any

RRSB GO1st 01245

**First Community Credit Union**
310 10th St SE | PO Box 9160
Jamestown, ND 58401-280
*myFCCU.com*

**Account Number:** *****4695
**Statement End Date:** 09-30-21
**Page:** 8 of 8

| Withdrawals, Fees and Other Debits ||
| Date | Amount |
| --- | --- |
| 09-01-2021 | -15.00 |
| 09-01-2021 | -2701.61 |
| 08-31-2021 | -13000.00 |
| 09-02-2021 | -956.20 |
| 09-06-2021 | -134.08 |
| 09-07-2021 | -91.35 |
| 09-06-2021 | -12000.00 |
| 09-09-2021 | -154.91 |
| 09-11-2021 | -42.65 |

| Withdrawals, Fees and Other Debits ||
| Date | Amount |
| --- | --- |
| 09-13-2021 | -378.31 |
| 09-13-2021 | -230.15 |
| 09-13-2021 | -632.54 |
| 09-14-2021 | -837.61 |
| 09-14-2021 | -20.00 |
| 09-15-2021 | -7000.00 |
| 09-16-2021 | -80.55 |
| 09-15-2021 | -10000.00 |
| 09-18-2021 | -77.09 |

| Withdrawals, Fees and Other Debits ||
| Date | Amount |
| --- | --- |
| 09-18-2021 | -86.51 |
| 09-18-2021 | -97.91 |
| 09-22-2021 | -82.63 |
| 09-23-2021 | -53.62 |
| 09-28-2021 | -339.36 |
| 09-28-2021 | -200.78 |
| 09-29-2021 | -86.42 |
| 09-30-2021 | -5.00 |

| **Total Fees** | 2 | -20.00 |
| --- | --- | --- |
| **Total withdrawal and Other Debits** | 24 | -49284.28 |

**MEMBERSHIP SAVINGS** ACCT# 3 **09-01-21** THRU **09-30-21**    PREVIOUS BALANCE **5.00**

ENDING BALANCE    **5.00**

**Dividend Summary**

| Account Number | New Balance | Dividends YTD |
| --- | --- | --- |
| 1 | 0.01 | 0.00 |
| 2 | 86,047.45 | 0.00 |
| 3 | 5.00 | 0.00 |
| Total Dividends YTD: **$0.00** |||

*- End of Statement -*

RRSB FCCU Subpoena 021286

Loan No: 51425                                              **PROMISSORY NOTE**
                                                            **(Continued)**                                              Page 2

portion of the Collateral.

**Judgment.** Unless adequately covered by insurance in the opinion of Lender, the entry of a final judgment for the payment of money involving more than ten thousand dollars ($10,000.00) against Borrower and the failure by Borrower to discharge the same, or cause it to be discharged, or bonded off to Lender's satisfaction, within thirty (30) days from the date of the order, decree or process under which or pursuant to which such judgment was entered.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor, or any other guarantor, endorser, surety, or accommodation party of any of the indebtedness or any Guarantor, or any other guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Minnesota without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Minnesota.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Norman County, State of Minnesota.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $28.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by (A) a Mortgage executed by Generations on 1st, LLC in favor of Red River State Bank dated 03/15/2021 with legal description of Parcel # 9582, 9583, & 9580:
Parcel I:
Lot 1 of Ohtness' Subdivision of Lots 12, 13, and 14 in Block 17 of Watertown, Codington County, South Dakota, according to the recorded plat thereof.
Parcel II:
Lot 2 of Ohtness' Subdivision of Lots 12, 13 and 14 in Block 17 of Watertown, AND the North 30 feet of the East 70 feet of Lot 11 in Block 17 of Watertown (commonly referred to as being in the original Plat), Codington County, South Dakota, according to the recorded plat thereof.
Parcel III:
Lot 3 of Ohtness' Subdivision of Lots 12, 13, and 14 in Block 17 of Watertown (commonly referred to as being the Original Plat), Codington County, South Dakota, according to the recorded plat thereof.
Parcel IV:
Lot 4 of Ohtness' Subdivision of Lots 12, 13, and 14 in Block 17 of Watertown (commonly referred to as being the Original Plat), Codington County, South Dakota, according to the recorded plat thereof.
Parcel V:
Lot 11, except the North 30 Feet of the East 70 Feet thereof, in Block 17, of the plat Entitled: "Watertown" Codington County, South Dakota, according to the recorded plat thereof

AND

(B) a Mortgage executed by Craig Holdings, LLC in favor of Red River State Bank dated 10/14/2021 with legal description of: LOT 1 OF GENERATIONS ON 1ST ADDITION TO THE CITY OF WATERTOWN, CODINGTON COUNTY, SOUTH DAKOTA

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: Red River State Bank PO Box 25 Halstad, MN 56548.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. In addition, Lender shall have all the rights and remedies provided in the related documents or available at law, in equity, or otherwise. Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower shall not affect Lender's right to declare a default and to exercise its rights and remedies. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change RRSB GO 1st 01246 and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be

Loan No: 51425                           **(Continued)**                           Page 3

---

released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**SECTION DISCLOSURE.** To the extent not preempted by federal law, this loan is made under Minnesota Statutes, Section 47.59.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

GENERATIONS ON 1ST, LLC

By: _____
JESSE ROBERT CRAIG, MANAGING MEMBER of
GENERATIONS ON 1ST, LLC

LENDER:

RED RIVER STATE BANK

X _____
CHARLES AARESTAD, Vice President

RRSB GO1st 01247

# DISBURSEMENT REQUEST AND AUTHORIZATION

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $1,094,025.15 | 10-14-2021 | 03-31-2022 | 51425 | | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** GENERATIONS ON 1ST, LLC (TIN: [redacted]6148)
1405 1ST AVE N
FARGO, ND 58102

**Lender:** Red River State Bank
300 2nd Ave West
P.O. Box 25
Halstad, MN 56548

EXHIBIT
3-B

**LOAN TYPE.** This is a Fixed Rate (4.350%) Nondisclosable Loan to a Limited Liability Company for $1,094,025.15 due on March 31, 2022.

**PRIMARY PURPOSE OF LOAN.** The primary purpose of this loan is for:

- ☐ Maintenance of Borrower's Primary Residence.
- ☐ Personal, Family or Household Purposes or Personal Investment.
- ☐ Agricultural Purposes.
- ☒ Business Purposes.

**SPECIFIC PURPOSE.** The specific purpose of this loan is: Multi Family Home Construction Project Draw 10, 11, 12, & 13.

**DISBURSEMENT INSTRUCTIONS.** Borrower understands that no loan proceeds will be disbursed until all of Lender's conditions for making the loan have been satisfied. Please disburse the loan proceeds of $1,094,025.15 as follows:

| | |
|---|---|
| Amount paid to others on Borrower's behalf: | $1,094,025.15 |
| $1,094,025.15 to Craig Development LLC for Construction Draws and Construction Management Fees | |
| Note Principal: | $1,094,025.15 |

**NOTICE OF RIGHT TO DISCONTINUE ESCROW.** If Borrower's mortgage loan involves an escrow account for taxes and homeowner's insurance, Borrower may have the right in five years to discontinue the account and pay Borrower's own taxes and homeowner's insurance. IF Borrower is eligible to discontinue the escrow account, Borrower will be notified in five years.

**FINANCIAL CONDITION.** BY SIGNING THIS AUTHORIZATION, BORROWER REPRESENTS AND WARRANTS TO LENDER THAT THE INFORMATION PROVIDED ABOVE IS TRUE AND CORRECT AND THAT THERE HAS BEEN NO MATERIAL ADVERSE CHANGE IN BORROWER'S FINANCIAL CONDITION AS DISCLOSED IN BORROWER'S MOST RECENT FINANCIAL STATEMENT TO LENDER. THIS AUTHORIZATION IS DATED OCTOBER 14, 2021.

**BORROWER:**

GENERATIONS ON 1ST, LLC

By: ______________________________
JESSE ROBERT CRAIG, MANAGING MEMBER of GENERATIONS ON 1ST, LLC

LaserPro, Ver. 20.4.0.036 Copr. Finastra USA Corporation 1997, 2021. All Rights Reserved. - MN C:\HARLAND\CFI\LPL\I20.FC TR-6483 PR-47

**LOAN WIRE TRANSFER ORDER**

EXHIBIT
**3-C**

| | |
|---|---|
| Date | 10/14/2021 |
| Sender ABA # | 199 |
| Bank Name | Red River State Bank |

☑ Customer
☐ Non-Customer -- Check with Lori DeLong

### ORIGINATOR INFORMATION

| | |
|---|---|
| Name | Generations on 1st LLC |
| Street Address | 1405 1st Ave N |
| City, State, Zip | Fargo, ND 58102 |
| Account Number | 51425 |
| **Originating Loan Officer Signature** | |

### WIRE THROUGH

| | |
|---|---|
| Bank Name | First Community Credit Union |
| ABA Number | 8693 |
| Dollar Amount | $1,094,025.15 |

### BENEFICIARY INFORMATION

| | |
|---|---|
| For Credit To | Craig Properties LLC |
| Street Address | 1405 1st Ave N |
| City, State, Zip | Fargo, ND 58102 |
| Account Number | 6957 |
| For Further Credit To | |
| Account Number | |

☐ OFAC Verified - by UBB

☐ IN-PERSON REQUEST: ☒ Known Customer ☐ Identity Verified ☐ Internal Business Purpose

Verified Wire Transfer agreement on file: Yes / No Initial: _____

**CUSTOMER SIGNATURE** _____

☒ NOT IN- PERSON REQUEST:

Wire Instructions on File
☒ Yes ☐ NO — Written instructions from customer attached
Instructions received by:
☒ Telephone Initial: ___
☐ Email Request (attached) Initial:___
☐ Fax request (attached) Initial___
☐ Mail request (attached) Initial ___
☒ In-person Last man't

If not loan source funds, wire transfer agreement on file? YES/NO

Call Back Verification details:
Date: 10/14/21 Time: 11:30
Who performed callback: DAH
Customer/Authorized Rep spoke with: Jesse (raig - Sole Member
☒ Identity verified ☒ Authority verified
Phone Number called to verify: 701-371-9887

| | | | |
|---|---|---|---|
| Wire Transfer Amount | US $ | 1,094,025.15 | |
| Wire Transfer Fee | $ | 0.00 | |

**EBA OK?** ___ Initials

**SOURCE OF FUNDS**
☐ Cash
☐ Check
☐ Deposit Acct
☑ Loan
☐ General Ledger

**UBB DESK SIGNATURE** _Deaunina Gustafson_

**WIRE APPROVAL OFFICER** _____

(Attach any supporting documents on reverse side.) RRSB GO1st 04838

Revised: 10/14/2021

## Outgoing Domestic

Account Number:     1534

Transaction Date: 10/14/2021

| | | | |
|---|---|---|---|
| Business Function - {3600} CTR | | Type/SubType - {1510} 1000 | |
| Amount - {2000} | $1,094,025.15 | | |
| Paid With Cash | ☐ | | |
| Receiver Bank - {3400} | | | |
| ABA | 8693 | Bank Name | First Community CU |

Originating Bank - {5100}

| | |
|---|---|
| Id Code | DDA Account Number |
| Identifier | 1534 |
| Name | Red River State Bank Halstad |
| Address 1 | 300 2nd Ave West |
| Address 2 | PO Box 25 |
| Address 3 | Halstad, MN 56548-0025 |

Originator - {5000}

| | |
|---|---|
| Id Code | DDA Account Number |
| Identifier | 5199 |
| Name | GENERATIONS ON 1ST LLC |
| Address 1 | 1405 1ST AVE N |
| Address 2 | FARGO, ND 58102 |
| Address 3 | |

Beneficiary - {4200}

| | |
|---|---|
| Id Code | DDA Account Number |
| Identifier | 6957 |
| Name | CRAIG PROPERTIES LLC |
| Address 1 | 1405 1ST AVE N |
| Address 2 | FARGO, ND 58102 |
| Address 3 | |

File Attachments No Attachments

Transaction Description GENERATIONS ON 1ST LLC
Notes

**No OFAC Violation**

| | |
|---|---|
| Created By | DGustaf72 |
| Date Created | 10/14/2021 12:50:34 PM |
| | Awaiting Verification |

First Viewed By   DGustaf72
Date First Viewed 10/14/2021 12:50:48 PM
Last Viewed By   DGustaf72
Date Last Viewed 10/14/2021 12:50:48 PM

**FCCU First Community Credit Union**
310 10th St SE | PO Box 2180
Jamestown, ND 58401-2180
*myFCCU.com*

| | |
|---|---|
| **Account Number:** | *****4695 |
| **Statement End Date:** | 10-31-21 |
| **Page:** | 1 of 7 |
| **MC:** | P |

ADDRESS SERVICE REQUESTED

Stuck inside and looking to do some house projects? We can help! We have Home Equity Loans as low as 2.99% APR. Apply online or give us a call today. Loans subject to credit approval.

CRAIG PROPERTIES LLC
1405 1ST AVE N
FARGO, ND 58102

## Account Summary

| Account | Description | Beginning Balance | Ending Balance | Account | Description | Beginning Balance | Ending Balance |
|---|---|---|---|---|---|---|---|
| 1 | PRIME SHARES | 0.01 | 0.01 | 2 | BUSINESS REWARDS | 86,047.45 | 122,157.07 |
| 3 | MEMBERSHIP SAVINGS | 5.00 | 5.00 | | | | |

## Account Detail

**PRIME SHARES** ACCT# **1** **10-01-21** THRU **10-31-21** PREVIOUS BALANCE **0.01**

ENDING BALANCE **0.01**

**BUSINESS REWARDS** ACCT# **2** **10-01-21** THRU **10-31-21** PREVIOUS BALANCE **86,047.45**

| Date | Transaction Description | Amount | Balance |
|---|---|---|---|
| OCT 01 | DEBIT CARD DEBIT 000012029325 CASEYS GEN STORE 3362 DILWORTH MN 09-29-21 | -40.25 | 86007.20 |
| OCT 01 | SERVICE CHARGE CRAIG PROPERTIES LLC. TOTAL NON COMPENSABLE CHARGE | -15.00 | 85992.20 |
| OCT 01 | EFT ACH Master STARCAPITAL Monthlypmt210929 | -2701.61 | 83290.59 |
| OCT 01 | DEPOSIT | 5042.50 | 88333.09 |
| OCT 01 | WITHDRAWAL POS 1001 1519 369829 AUTOZONE 3095 FARGO ND | -62.33 | 88270.76 |
| OCT 01 | DEPOSIT | 3555.00 | 91825.76 |
| OCT 01 | SHARE DRAFT 38697 TRACE#: 00211135 | -80.00 | 91745.76 |
| OCT 01 | SHARE DRAFT 1111 TRACE#: 71700030 | -2327.50 | 89418.26 |
| OCT 01 | SHARE DRAFT 38704 TRACE#: 00203310 | -2836.70 | 86581.56 |
| OCT 01 | SHARE DRAFT 38698 TRACE#: 00202935 | -4500.00 | 82081.56 |
| OCT 01 | SHARE DRAFT 38693 TRACE#: 00202985 | -14318.40 | 67763.16 |
| OCT 04 | EFT ACH Master CRAIG PROPERTIESRENT 211004 | 19305.00 | 87068.16 |
| OCT 04 | EFT FOREMOST FOREMOST EPM PYMT 100421 | -158.28 | 86909.88 |
| OCT 04 | EFT ACH Master BCBSNDPREMIUM EDI PYMNTS | -956.20 | 85953.68 |
| OCT 04 | DEPOSIT | 7872.00 | 93825.68 |
| OCT 04 | WITHDRAWAL POS 1004 1306 497091 NNT ACME TOOLS FARGO ND | -64.49 | 93761.19 |
| OCT 04 | SHARE DRAFT 38706 TRACE#: 00205745 | -144.00 | 93617.19 |
| OCT 04 | SHARE DRAFT 38702 TRACE#: 00215395 | -417.50 | 93199.69 |
| OCT 04 | SHARE DRAFT 38705 TRACE#: 00210505 | -639.00 | 92560.69 |
| OCT 04 | SHARE DRAFT 38708 TRACE#: 00209255 | -1205.00 | 91355.69 |
| OCT 04 | SHARE DRAFT 37871 TRACE#: 00211585 | -10000.00 | 81355.69 |
| OCT 04 | SHARE DRAFT 1111 TRACE#: 53100080 | -10623.00 | 70732.69 |
| OCT 05 | DEPOSIT | 9898.00 | 80630.69 |
| OCT 05 | SHARE DRAFT 38700 TRACE#: 00203950 | -322.29 | 80308.40 |
| OCT 05 | SHARE DRAFT 1111 TRACE#: 53100110 | -833.46 | 79474.94 |
| OCT 05 | SHARE DRAFT 1111 TRACE#: 53100100 | -973.23 | 78501.71 |
| OCT 05 | SHARE DRAFT 38784 TRACE#: 00216670 | -1023.76 | 77477.95 |
| OCT 05 | SHARE DRAFT 38780 TRACE#: 00216605 | -2500.00 | 74977.95 |
| OCT 05 | DEBIT CARD DEBIT 000023054659 SQUARESPACE INC. NEW YORK NY 10-05-21 | -216.00 | 74761.95 |
| OCT 06 | DEBIT CARD DEBIT 000019146201 CASEYS GEN STORE 3354 FARGO ND 10-04-21 | -94.51 | 74667.44 |

*- Continued -* RRSB FCCU Subpoena 021309

**First Community CU Credit Union**
918 19th St SE | PO Box 280
Jamestown, ND 58401-280
myFCCU.com

**Account Number:** *****4695
**Statement End Date:** 10-31-21
**Page:** 2 of 7

| Date | Transaction Description | Amount | Balance |
|---|---|---|---|
| OCT 06 | EFT ACH Master Square Inc 211006P2 211006 | 934.36 | 75601.80 |
| OCT 06 | EFT ACH Master CAPITAL ONE MOBILE PMT211005 | -5000.00 | 70601.80 |
| OCT 06 | DEPOSIT | 5588.00 | 76189.80 |
| OCT 06 | SHARE DRAFT 38759 TRACE#: 00220380 | -3173.14 | 73016.66 |
| OCT 06 | SHARE DRAFT 38699 TRACE#: 00201400 | -3902.50 | 69114.16 |
| OCT 07 | DEBIT CARD DEBIT 000006294480 CASEYS GEN STORE 2089 WATERTOWN SD 10-05-21 | -66.19 | 69047.97 |
| OCT 07 | WITHDRAWAL Per Jesse's email, TRF from CP to Sydney | -500.00 | 68547.97 |
| OCT 07 | DEPOSIT | 963.00 | 69510.97 |
| OCT 07 | SHARE DRAFT 38746 TRACE#: 00200240 | -160.00 | 69350.97 |
| OCT 07 | SHARE DRAFT 38755 TRACE#: 00210690 | -295.97 | 69055.00 |
| OCT 07 | SHARE DRAFT 38741 TRACE#: 00209220 | -402.71 | 68652.29 |
| OCT 07 | SHARE DRAFT 38777 TRACE#: 00208140 | -760.75 | 67891.54 |
| OCT 07 | SHARE DRAFT 38732 TRACE#: 00203710 | -829.56 | 67061.98 |
| OCT 07 | SHARE DRAFT 38762 TRACE#: 00208145 | -1037.73 | 66024.25 |
| OCT 07 | SHARE DRAFT 38772 TRACE#: 00208150 | -2426.50 | 63597.75 |
| OCT 07 | SHARE DRAFT 38728 TRACE#: 00207995 | -2581.21 | 61016.54 |
| OCT 07 | SHARE DRAFT 38747 TRACE#: 00214900 | -5208.33 | 55808.21 |
| OCT 08 | EFT ACH Master Square Inc 211008P2 211008 | 734.46 | 56542.67 |
| OCT 08 | SHARE DRAFT 38731 TRACE#: 00203345 | -11.18 | 56531.49 |
| OCT 08 | SHARE DRAFT 38757 TRACE#: 00203540 | -96.75 | 56434.74 |
| OCT 08 | SHARE DRAFT 38726 TRACE#: 00203200 | -110.95 | 56323.79 |
| OCT 08 | SHARE DRAFT 38716 TRACE#: 00203980 | -138.90 | 56184.89 |
| OCT 08 | SHARE DRAFT 38766 TRACE#: 00212755 | -208.75 | 55976.14 |
| OCT 08 | SHARE DRAFT 38752 TRACE#: 00203295 | -233.00 | 55743.14 |
| OCT 08 | SHARE DRAFT 38742 TRACE#: 00212385 | -334.08 | 55409.06 |
| OCT 08 | SHARE DRAFT 38774 TRACE#: 00212005 | -464.04 | 54945.02 |
| OCT 08 | SHARE DRAFT 38724 TRACE#: 00209675 | -5000.00 | 49945.02 |
| OCT 08 | SHARE DRAFT 38740 TRACE#: 00203315 | -5333.34 | 44611.68 |
| OCT 11 | DEPOSIT | 6348.00 | 50959.68 |
| OCT 11 | DEPOSIT | 714.00 | 51673.68 |
| OCT 12 | EFT GRINNELL MUTUAL Grinnell Mutual PREM PYMT 101221 | -154.91 | 51518.77 |
| OCT 12 | EFT ACH Master State Auto - InbVENDOR PMT211011 | -632.54 | 50886.23 |
| OCT 12 | EFT ACH Master State Auto - InbVENDOR PMT211011 | -378.31 | 50507.92 |
| OCT 12 | EFT ACH Master State Auto - InbVENDOR PMT211011 | -230.15 | 50277.77 |
| OCT 12 | DEPOSIT | 633.25 | 50911.02 |
| OCT 12 | WITHDRAWAL | -14260.44 | 36650.58 |
| OCT 12 | DEPOSIT | 12500.00 | 49150.58 |
| OCT 12 | WITHDRAWAL | -20005.00 | 29145.58 |
| OCT 12 | TRANSFER 2 TRF WIRED FUNDS TO CP | 239068.74 | 268214.32 |
| OCT 12 | WITHDRAWAL | -3005.00 | 265209.32 |
| OCT 12 | SHARE DRAFT 38717 TRACE#: 00213150 | -74.40 | 265134.92 |
| OCT 12 | SHARE DRAFT 38749 TRACE#: 00211180 | -250.61 | 264884.31 |
| OCT 12 | SHARE DRAFT 38730 TRACE#: 00203360 | -450.00 | 264434.31 |
| OCT 12 | SHARE DRAFT 38764 TRACE#: 00200195 | -603.42 | 263830.89 |
| OCT 12 | SHARE DRAFT 38721 TRACE#: 00210795 | -714.51 | 263116.38 |
| OCT 12 | SHARE DRAFT 38715 TRACE#: 00203775 | -840.00 | 262276.38 |
| OCT 12 | SHARE DRAFT 38792 TRACE#: 00203740 | -922.29 | 261354.09 |
| OCT 12 | SHARE DRAFT 38719 TRACE#: 00212740 | -3374.55 | 257979.54 |
| OCT 12 | SHARE DRAFT 38738 TRACE#: 00203355 | -6166.67 | 251812.87 |
| OCT 12 | SHARE DRAFT 38694 TRACE#: 00203280 | -6290.00 | 245522.87 |
| OCT 13 | DEBIT CARD DEBIT 000015075519 HOLIDAY STATIONS 3818 FARGO ND 10-12-21 | -83.73 | 245439.14 |
| OCT 13 | DEBIT CARD DEBIT 000006064977 CASEYS GEN STORE 3354 FARGO ND 10-11-21 | -95.84 | 245343.30 |
| OCT 13 | EFT ACH Master Square Inc 211013P2 211013 | 1825.58 | 247168.88 |
| OCT 13 | DEPOSIT | 500.00 | 247668.88 |
| OCT 13 | WITHDRAWAL Outgoing Wire Transfer-263133199 | -53086.08 | 194582.80 |
| OCT 13 | WITHDRAWAL Wire Transfer Fee-263133201 | -25.00 | 194557.80 |
| OCT 13 | SHARE DRAFT 38725 TRACE#: 00222215 | -111.00 | 194446.80 |
| OCT 13 | SHARE DRAFT 38711 TRACE#: 00227845 | -755.00 | 193691.80 |
| OCT 13 | SHARE DRAFT 38712 TRACE#: 00228610 | -3000.00 | 190691.80 |
| OCT 13 | SHARE DRAFT 38756 TRACE#: 00204350 | -4108.25 | 186583.55 |

- Continued -

RRSB FCCU Subpoena 021310

**First Community**
**CU** Credit Union

319-18th St SE | PO Box 1160
Jamestown, ND 58401-280
*myFCCU.com*

**Account Number:** *****4695
**Statement End Date:** 10-31-21
**Page:** 3 of 7

| Date | Transaction Description | Amount | Balance |
|------|------------------------|--------|---------|
| OCT 13 | SHARE DRAFT 38748 TRACE#: 00204455 | -5020.16 | 181563.39 |
| OCT 13 | SHARE DRAFT 38768 TRACE#: 00228615 | -7500.00 | 174063.39 |
| OCT 13 | SHARE DRAFT 1111 TRACE#: 51700025 | -11492.30 | 162571.09 |
| OCT 14 | EFT ACH Master CAPITAL ONE MOBILE PMT211013 | -15000.00 | 147571.09 |
| OCT 14 | EFT ACH Master State Auto - InbVENDOR PMT211013 | -837.61 | 146733.48 |
| OCT 14 | TRANSFER 2 PER EMAIL, TRANSFER TO SYDNEY | -2000.00 | 144733.48 |
| OCT 14 | DEPOSIT | 2871.50 | 147604.98 |
| OCT 14 | DEPOSIT Incoming Wire Transfer-263249018 | 1094025.15 | 1241630.13 |
| OCT 14 | WITHDRAWAL Wire Transfer Fee-263249020 | -20.00 | 1241610.13 |
| OCT 14 | DEPOSIT | 14200.00 | 1255810.13 |
| OCT 14 | SHARE DRAFT 38729 TRACE#: 00206175 | -158.28 | 1255651.85 |
| OCT 14 | SHARE DRAFT 38743 TRACE#: 00206195 | -236.00 | 1255415.85 |
| OCT 14 | SHARE DRAFT 38713 TRACE#: 00215170 | -460.10 | 1254955.75 |
| OCT 14 | SHARE DRAFT 38775 TRACE#: 00204560 | -464.48 | 1254491.27 |
| OCT 14 | SHARE DRAFT 38793 TRACE#: 00213105 | -1423.86 | 1253067.41 |
| OCT 14 | SHARE DRAFT 38718 TRACE#: 00204555 | -1612.01 | 1251455.40 |
| OCT 14 | SHARE DRAFT 38800 TRACE#: 00207685 | -1639.22 | 1249816.18 |
| OCT 14 | SHARE DRAFT 38799 TRACE#: 00207690 | -4650.31 | 1245165.87 |
| OCT 15 | EFT ACH Master IRS TREAS 310 CHILDCTC101521 | 500.00 | 1245665.87 |
| OCT 15 | WITHDRAWAL POS 1015 1056 940063 MNRD-FARGO WEST FARGO ND | -227.20 | 1245438.67 |
| OCT 15 | SHARE DRAFT 38758 TRACE#: 00204040 | -32.25 | 1245406.42 |
| OCT 15 | SHARE DRAFT 38841 TRACE#: 00209275 | -213.00 | 1245193.42 |
| OCT 15 | SHARE DRAFT 38786 TRACE#: 00216090 | -214.29 | 1244979.13 |
| OCT 15 | SHARE DRAFT 38709 TRACE#: 00211670 | -257.70 | 1244721.43 |
| OCT 15 | SHARE DRAFT 38765 TRACE#: 00209460 | -569.51 | 1244151.92 |
| OCT 15 | SHARE DRAFT 1111 TRACE#: 00205195 | -843.48 | 1243308.44 |
| OCT 15 | SHARE DRAFT 38737 TRACE#: 00209655 | -850.00 | 1242458.44 |
| OCT 15 | SHARE DRAFT 38791 TRACE#: 00213240 | -887.00 | 1241571.44 |
| OCT 15 | SHARE DRAFT 38723 TRACE#: 00215455 | -1100.60 | 1240470.84 |
| OCT 15 | SHARE DRAFT 38734 TRACE#: 00210460 | -1160.33 | 1239310.51 |
| OCT 15 | SHARE DRAFT 38843 TRACE#: 00208240 | -1513.25 | 1237797.26 |
| OCT 15 | SHARE DRAFT 38778 TRACE#: 00212650 | -1515.00 | 1236282.26 |
| OCT 15 | SHARE DRAFT 38832 TRACE#: 00204455 | -1823.42 | 1234458.84 |
| OCT 15 | SHARE DRAFT 38779 TRACE#: 00212960 | -2405.71 | 1232053.13 |
| OCT 15 | SHARE DRAFT 38773 TRACE#: 00212640 | -2840.45 | 1229212.68 |
| OCT 15 | SHARE DRAFT 38763 TRACE#: 00212645 | -2970.70 | 1226241.98 |
| OCT 15 | SHARE DRAFT 38767 TRACE#: 00213025 | -3168.43 | 1223073.55 |
| OCT 15 | SHARE DRAFT 38795 TRACE#: 00204460 | -3497.89 | 1219575.66 |
| OCT 15 | SHARE DRAFT 38833 TRACE#: 00213860 | -5871.25 | 1213704.41 |
| OCT 15 | SHARE DRAFT 38797 TRACE#: 00203790 | -6000.00 | 1207704.41 |
| OCT 15 | SHARE DRAFT 38831 TRACE#: 00203965 | -13425.00 | 1194279.41 |
| OCT 16 | DEBIT CARD DEBIT 000023738323 CASEYS GEN STORE 3362 DILWORTH MN 10-14-21 | -92.86 | 1194186.55 |
| OCT 16 | DEBIT CARD DEBIT 000023140163 CASEYS GEN STORE 3354 FARGO ND 10-16-21 | -91.34 | 1194095.21 |
| OCT 18 | EFT ACH Master AVFUEL3252 EFTTRANSFE | -2958.94 | 1191136.27 |
| OCT 18 | EFT ACH Master CAPITAL ONE MOBILE PMT211016 | -7000.00 | 1184136.27 |
| OCT 18 | SHARE DRAFT 38751 TRACE#: 00205635 | -2503.00 | 1181633.27 |
| OCT 18 | DEPOSIT | 665.91 | 1182299.18 |
| OCT 18 | SHARE DRAFT 38789 TRACE#: 00206365 | -457.88 | 1181841.30 |
| OCT 18 | SHARE DRAFT 38842 TRACE#: 00201335 | -750.00 | 1181091.30 |
| OCT 18 | SHARE DRAFT 38783 TRACE#: 00209955 | -2236.55 | 1178854.75 |
| OCT 18 | SHARE DRAFT 38848 TRACE#: 71000010 | -2254.00 | 1176600.75 |
| OCT 18 | SHARE DRAFT 38733 TRACE#: 00201595 | -3955.00 | 1172645.75 |
| OCT 18 | SHARE DRAFT 38814 TRACE#: 00215940 | -35000.00 | 1137645.75 |
| OCT 18 | SHARE DRAFT 38822 TRACE#: 00205105 | -100110.00 | 1037535.75 |
| OCT 19 | EFT ACH Master Square Inc 211019P2 211019 | 734.46 | 1038270.21 |
| OCT 19 | EFT COMMONWEALTH CU APPLECARD GSBANKPAYMENT 101821 | -18000.00 | 1020270.21 |
| OCT 19 | SHARE DRAFT 38840 TRACE#: 00217705 | -56.52 | 1020213.69 |
| OCT 19 | SHARE DRAFT 38788 TRACE#: 00217215 | -136.48 | 1020077.21 |
| OCT 19 | SHARE DRAFT 38703 TRACE#: 00218000 | -140.00 | 1019937.21 |
| OCT 19 | SHARE DRAFT 38838 TRACE#: 00219620 | -211.30 | 1019725.91 |

*- Continued -*     RRSB FCCU Subpoena 021311

**FCCU First Community Credit Union**

318 18th St SE PO Box 280
Jamestown, ND 58401-280
myFCCU.com

Account Number: *****4695
Statement End Date: 10-31-21
Page: 4 of 7

| Date | Transaction Description | Amount | Balance |
|------|------------------------|--------|---------|
| OCT 19 | SHARE DRAFT 38527 TRACE#: 00200805 | -213.00 | 1019512.91 |
| OCT 19 | SHARE DRAFT 38813 TRACE#: 00203930 | -838.69 | 1018674.22 |
| OCT 19 | SHARE DRAFT 38710 TRACE#: 00201245 | -1039.57 | 1017634.65 |
| OCT 19 | SHARE DRAFT 38801 TRACE#: 00218005 | -5190.00 | 1012444.65 |
| OCT 19 | SHARE DRAFT 38714 TRACE#: 00210650 | -5204.54 | 1007240.11 |
| OCT 19 | SHARE DRAFT 38805 TRACE#: 00225325 | -5521.52 | 1001718.59 |
| OCT 19 | SHARE DRAFT 38787 TRACE#: 00200720 | -11690.52 | 990028.07 |
| OCT 19 | SHARE DRAFT 38820 TRACE#: 00218010 | -13702.22 | 976325.85 |
| OCT 19 | SHARE DRAFT 38812 TRACE#: 00216970 | -34170.00 | 942155.85 |
| OCT 19 | SHARE DRAFT 38823 TRACE#: 00223870 | -52400.00 | 889755.85 |
| OCT 20 | EFT ACH Master CAPITAL ONE MOBILE PMT211019 | -16370.00 | 873385.85 |
| OCT 20 | SHARE DRAFT 38798 TRACE#: 00201495 | -4560.33 | 868825.52 |
| OCT 20 | SHARE DRAFT 38847 TRACE#: 00204430 | -750.00 | 868075.52 |
| OCT 20 | SHARE DRAFT 38760 TRACE#: 00205395 | -840.33 | 867235.19 |
| OCT 20 | SHARE DRAFT 38839 TRACE#: 00212380 | -1110.00 | 866125.19 |
| OCT 20 | SHARE DRAFT 38825 TRACE#: 00200575 | -1818.39 | 864306.80 |
| OCT 20 | SHARE DRAFT 38834 TRACE#: 00212405 | -2920.00 | 861386.80 |
| OCT 20 | SHARE DRAFT 38828 TRACE#: 00210605 | -3331.71 | 858055.09 |
| OCT 20 | SHARE DRAFT 38816 TRACE#: 00210610 | -3500.00 | 854555.09 |
| OCT 20 | SHARE DRAFT 38818 TRACE#: 00205850 | -7200.00 | 847355.09 |
| OCT 20 | SHARE DRAFT 38829 TRACE#: 00200585 | -20174.40 | 827180.69 |
| OCT 20 | SHARE DRAFT 3802 TRACE#: 00210550 | -30817.50 | 796363.19 |
| OCT 20 | SHARE DRAFT 38806 TRACE#: 00211175 | -70349.61 | 726013.58 |
| OCT 20 | SHARE DRAFT 38815 TRACE#: 00210615 | -116045.00 | 609968.58 |
| OCT 21 | DEPOSIT | 700.00 | 610668.58 |
| OCT 21 | SHARE DRAFT 38809 TRACE#: 00212100 | -351.45 | 610317.13 |
| OCT 21 | SHARE DRAFT 38753 TRACE#: 00209495 | -612.92 | 609704.21 |
| OCT 21 | SHARE DRAFT 38750 TRACE#: 00203080 | -14633.89 | 595070.32 |
| OCT 21 | SHARE DRAFT 38830 TRACE#: 00206730 | -28963.00 | 566107.32 |
| OCT 21 | SHARE DRAFT 38827 TRACE#: 00203105 | -100000.00 | 466107.32 |
| OCT 21 | SHARE DRAFT 38821 TRACE#: 00209680 | -201500.00 | 264607.32 |
| OCT 22 | EFT ACH Master CAPITAL ONE MOBILE PMT211021 | -15000.00 | 249607.32 |
| OCT 22 | WITHDRAWAL POS 1022 0823 233762 AUTOZONE 3095 FARGO ND | -39.76 | 249567.56 |
| OCT 22 | SHARE DRAFT 38811 TRACE#: 00208495 | -10000.00 | 239567.56 |
| OCT 22 | SHARE DRAFT 38889 TRACE#: 00206080 | -600.00 | 238967.56 |
| OCT 22 | SHARE DRAFT 38846 TRACE#: 00200035 | -1072.00 | 237895.56 |
| OCT 22 | SHARE DRAFT 38850 TRACE#: 00206275 | -1864.50 | 236031.06 |
| OCT 22 | SHARE DRAFT 38807 TRACE#: 00206805 | -5284.00 | 230747.06 |
| OCT 22 | SHARE DRAFT 38804 TRACE#: 00202825 | -12053.59 | 218693.47 |
| OCT 22 | SHARE DRAFT 38845 TRACE#: 00200595 | -20822.00 | 197871.47 |
| OCT 23 | DEBIT CARD DEBIT 000023206743 CASEYS GEN STORE 3354 FARGO ND 10-21-21 | -101.05 | 197770.42 |
| OCT 25 | EFT ACH Master Square Inc 211025P2 211025 | 1215.75 | 198986.17 |
| OCT 25 | WITHDRAWAL-CASH | -2320.00 | 196666.17 |
| OCT 25 | DEPOSIT | 5606.54 | 202272.71 |
| OCT 25 | WITHDRAWAL-CASH | -3008.00 | 199264.71 |
| OCT 25 | SHARE DRAFT 38745 TRACE#: 00210705 | -8450.24 | 190814.47 |
| OCT 26 | SHARE DRAFT 38810 TRACE#: 00201590 | -2570.80 | 188243.67 |
| OCT 26 | SHARE DRAFT 38769 TRACE#: 00201165 | -2765.88 | 185477.79 |
| OCT 26 | SHARE DRAFT 38781 TRACE#: 00220655 | -18000.00 | 167477.79 |
| OCT 27 | DEBIT CARD DEBIT 000009964521 FARGO RENTALL 25TH FARGO ND 10-26-21 | -152.59 | 167325.20 |
| OCT 27 | DEBIT CARD DEBIT 000009964521 CASEYS GEN STORE 3354 FARGO ND 10-25-21 | -99.72 | 167225.48 |
| OCT 27 | EFT ACH Master Square Inc 211027P2 211027 | 506.47 | 167731.95 |
| OCT 27 | EFT ACH Master CAPITAL ONE MOBILE PMT211026 | -6000.00 | 161731.95 |
| OCT 27 | WITHDRAWAL POS 1027 1215 445799 MNRD-MOORHEAD MOORHEAD MN | -200.57 | 161531.38 |
| OCT 27 | WITHDRAWAL POS 1027 1343 448757 LOWE.S #1650 FARGO ND | -85.98 | 161445.40 |
| OCT 27 | DEPOSIT LAUNDRY COIN PER GRACE | 854.25 | 162299.65 |
| OCT 27 | SHARE DRAFT 38860 TRACE#: 00208610 | -12.56 | 162287.09 |
| OCT 27 | SHARE DRAFT 38856 TRACE#: 00207125 | -48.38 | 162238.71 |
| OCT 27 | SHARE DRAFT 38808 TRACE#: 00211045 | -4260.00 | 157978.71 |
| OCT 27 | SHARE DRAFT 38771 TRACE#: 00203760 | -21860.59 | 136118.12 |

*- Continued -*

**FC CU First Community Credit Union**

318 10th St SE, PO Box 280
Jamestown, ND 58401-280
myFCCU.com

**Account Number:** *****4695
**Statement End Date:** 10-31-21
**Page:** 5 of 7

| Date | Transaction Description | Amount | Balance |
|---|---|---|---|
| OCT 28 | DEBIT CARD DEBIT  000012153535 CASEYS GEN STORE 3370 FARGO ND 10-26-21 | -13.31 | 136104.81 |
| OCT 28 | EFT ACH Master  NODAK INSURANCE EFTM DESC | -339.36 | 135765.45 |
| OCT 28 | DEPOSIT | 3740.00 | 139505.45 |
| OCT 28 | DEPOSIT | 150.00 | 139655.45 |
| OCT 28 | SHARE DRAFT 38682 TRACE#: 00208620 | -300.00 | 139355.45 |
| OCT 28 | SHARE DRAFT 38826 TRACE#: 00208860 | -2687.50 | 136667.95 |
| OCT 28 | SHARE DRAFT 38857 TRACE#: 00208915 | -3079.00 | 133588.95 |
| OCT 29 | SHARE DRAFT 38824 TRACE#: 00204600 | -11300.00 | 122288.95 |
| OCT 30 | DEBIT CARD DEBIT  000009596910 MARATHON PETRO264531 FARGO ND 10-29-21 | -90.00 | 122198.95 |
| OCT 30 | DEBIT CARD DEBIT  000006611468 HOLIDAY STATIONS 0124 FARGO ND 10-29-21 | -36.88 | 122162.07 |
| OCT 31 | ID THEFT COVERAGE | -5.00 | 122157.07 |

ENDING BALANCE **122,157.07**

**Check Summary**
\* = break in check sequence

| SD# | Date | Amount |
|---|---|---|
| 1111 | 10-01-21 | 2327.50 |
| 1111 | 10-04-21 | 10623.00 |
| 1111 | 10-05-21 | 833.46 |
| 1111 | 10-05-21 | 973.23 |
| 1111 | 10-13-21 | 11492.30 |
| 1111 | 10-15-21 | 843.48 |
| 3802 * | 10-20-21 | 30817.50 |
| 37871 * | 10-04-21 | 10000.00 |
| 38527 * | 10-19-21 | 213.00 |
| 38682 * | 10-28-21 | 300.00 |
| 38693 * | 10-01-21 | 14318.40 |
| 38694 | 10-12-21 | 6290.00 |
| 38697 * | 10-01-21 | 80.00 |
| 38698 | 10-01-21 | 4500.00 |
| 38699 | 10-06-21 | 3902.50 |
| 38700 | 10-05-21 | 322.29 |
| 38702 * | 10-04-21 | 417.50 |
| 38703 | 10-19-21 | 140.00 |
| 38704 | 10-01-21 | 2836.70 |
| 38705 | 10-04-21 | 639.00 |
| 38706 | 10-04-21 | 144.00 |
| 38708 * | 10-04-21 | 1205.00 |
| 38709 | 10-15-21 | 257.70 |
| 38710 | 10-19-21 | 1039.57 |
| 38711 | 10-13-21 | 755.00 |
| 38712 | 10-13-21 | 3000.00 |
| 38713 | 10-14-21 | 460.10 |
| 38714 | 10-19-21 | 5204.54 |
| 38715 | 10-12-21 | 840.00 |
| 38716 | 10-08-21 | 138.90 |
| 38717 | 10-12-21 | 74.40 |
| 38718 | 10-14-21 | 1612.01 |
| 38719 | 10-12-21 | 3374.55 |
| 38721 * | 10-12-21 | 714.51 |
| 38723 * | 10-15-21 | 1100.60 |
| 38724 | 10-08-21 | 5000.00 |
| 38725 | 10-13-21 | 111.00 |

**Check Summary**
\* = break in check sequence

| SD# | Date | Amount |
|---|---|---|
| 38726 | 10-08-21 | 110.95 |
| 38728 * | 10-07-21 | 2581.21 |
| 38729 | 10-14-21 | 158.28 |
| 38730 | 10-12-21 | 450.00 |
| 38731 | 10-08-21 | 11.18 |
| 38732 | 10-07-21 | 829.56 |
| 38733 | 10-18-21 | 3955.00 |
| 38734 | 10-15-21 | 1160.33 |
| 38737 * | 10-15-21 | 850.00 |
| 38738 | 10-12-21 | 6166.67 |
| 38740 * | 10-08-21 | 5333.34 |
| 38741 | 10-07-21 | 402.71 |
| 38742 | 10-08-21 | 334.08 |
| 38743 | 10-14-21 | 236.00 |
| 38745 * | 10-25-21 | 8450.24 |
| 38746 | 10-07-21 | 160.00 |
| 38747 | 10-07-21 | 5208.33 |
| 38748 | 10-13-21 | 5020.16 |
| 38749 | 10-12-21 | 250.61 |
| 38750 | 10-21-21 | 14633.89 |
| 38751 | 10-15-21 | 2503.00 |
| 38752 | 10-08-21 | 233.00 |
| 38753 | 10-21-21 | 612.92 |
| 38755 * | 10-07-21 | 295.97 |
| 38756 | 10-13-21 | 4108.25 |
| 38757 | 10-08-21 | 96.75 |
| 38758 | 10-15-21 | 32.25 |
| 38759 | 10-06-21 | 3173.14 |
| 38760 | 10-20-21 | 840.33 |
| 38762 * | 10-07-21 | 1037.73 |
| 38763 | 10-15-21 | 2970.70 |
| 38764 | 10-12-21 | 603.42 |
| 38765 | 10-15-21 | 569.51 |
| 38766 | 10-08-21 | 208.75 |
| 38767 | 10-15-21 | 3168.43 |
| 38768 | 10-13-21 | 7500.00 |
| 38769 | 10-26-21 | 2765.88 |

- Continued -

RRSB FCCU Subpoena 021313

**FCCU First Community Credit Union**
313 10th St SE, PO Box 280
Jamestown, ND 58401-280
myFCCU.com

Account Number:    *****4695
Statement End Date:    10-31-21
Page:    6 of 7

### Check Summary
\* = break in check sequence

| SD# | Date | Amount |
|---|---|---|
| 38771 * | 10-27-21 | 21860.59 |
| 38772 | 10-07-21 | 2426.50 |
| 38773 | 10-15-21 | 2840.45 |
| 38774 | 10-08-21 | 464.04 |
| 38775 | 10-14-21 | 464.48 |
| 38777 * | 10-07-21 | 760.75 |
| 38778 | 10-15-21 | 1515.00 |
| 38779 | 10-15-21 | 2405.71 |
| 38780 | 10-05-21 | 2500.00 |
| 38781 | 10-26-21 | 18000.00 |
| 38783 * | 10-18-21 | 2236.55 |
| 38784 | 10-05-21 | 1023.76 |
| 38786 * | 10-15-21 | 214.29 |
| 38787 | 10-19-21 | 11690.52 |
| 38788 | 10-19-21 | 136.48 |
| 38789 | 10-18-21 | 457.88 |
| 38791 * | 10-15-21 | 887.00 |
| 38792 | 10-12-21 | 922.29 |
| 38793 | 10-14-21 | 1423.86 |
| 38795 * | 10-15-21 | 3497.89 |
| 38797 * | 10-15-21 | 6000.00 |
| 38798 | 10-19-21 | 4560.33 |
| 38799 | 10-14-21 | 4650.31 |
| 38800 | 10-14-21 | 1639.22 |
| 38801 | 10-19-21 | 5190.00 |
| 38804 * | 10-22-21 | 12053.59 |
| 38805 | 10-19-21 | 5521.52 |
| 38806 | 10-20-21 | 70349.61 |
| 38807 | 10-22-21 | 5284.00 |
| 38808 | 10-27-21 | 4260.00 |
| 38809 | 10-21-21 | 351.45 |
| 38810 | 10-26-21 | 2570.80 |
| 38811 | 10-21-21 | 10000.00 |
| 38812 | 10-19-21 | 34170.00 |
| 38813 | 10-19-21 | 838.69 |

### Check Summary
\* = break in check sequence

| SD# | Date | Amount |
|---|---|---|
| 38814 | 10-18-21 | 35000.00 |
| 38815 | 10-20-21 | 116045.00 |
| 38816 | 10-20-21 | 3500.00 |
| 38818 * | 10-20-21 | 7200.00 |
| 38820 * | 10-19-21 | 13702.22 |
| 38821 | 10-21-21 | 201500.00 |
| 38822 | 10-18-21 | 100110.00 |
| 38823 | 10-19-21 | 52400.00 |
| 38824 | 10-29-21 | 11300.00 |
| 38825 | 10-20-21 | 1818.39 |
| 38826 | 10-28-21 | 2687.50 |
| 38827 | 10-21-21 | 100000.00 |
| 38828 | 10-20-21 | 3331.71 |
| 38829 | 10-20-21 | 20174.40 |
| 38830 | 10-21-21 | 28963.00 |
| 38831 | 10-15-21 | 13425.00 |
| 38832 | 10-15-21 | 1823.42 |
| 38833 | 10-15-21 | 5871.25 |
| 38834 | 10-20-21 | 2920.00 |
| 38838 * | 10-19-21 | 211.30 |
| 38839 | 10-20-21 | 1110.00 |
| 38840 | 10-19-21 | 56.52 |
| 38841 | 10-15-21 | 213.00 |
| 38842 | 10-18-21 | 750.00 |
| 38843 | 10-15-21 | 1513.25 |
| 38845 * | 10-22-21 | 20822.00 |
| 38846 | 10-22-21 | 1072.00 |
| 38847 | 10-20-21 | 750.00 |
| 38848 | 10-18-21 | 2254.00 |
| 38849 | 10-22-21 | 600.00 |
| 38850 | 10-22-21 | 1864.50 |
| 38856 * | 10-27-21 | 48.38 |
| 38857 | 10-28-21 | 3079.00 |
| 38860 * | 10-27-21 | 12.56 |

|  | TOTAL FOR THIS PERIOD | TOTAL YEAR-TO-DATE |
|---|---|---|
| TOTAL OVERDRAFT FEES | 0.00 | 27.00 |
| TOTAL OVERDRAFT FEES WAIVED | 0.00 | 0.00 |
| TOTAL RETURNED ITEM FEES | 0.00 | 0.00 |
| TOTAL RETURNED ITEM FEES WAIVED | 0.00 | 0.00 |

### Deposits, Dividends and Other Credits

| Date | Amount |
|---|---|
| 10-01-2021 | 5042.50 |
| 10-01-2021 | 3555.00 |
| 10-04-2021 | 19305.00 |
| 10-04-2021 | 7872.00 |

### Deposits, Dividends and Other Credits

| Date | Amount |
|---|---|
| 10-05-2021 | 9898.00 |
| 10-06-2021 | 934.36 |
| 10-06-2021 | 5588.00 |
| 10-07-2021 | 963.00 |

### Deposits, Dividends and Other Credits

| Date | Amount |
|---|---|
| 10-08-2021 | 734.46 |
| 10-11-2021 | 6348.00 |
| 10-11-2021 | 714.00 |
| 10-12-2021 | 633.25 |

- Continued -

RRSB FCCU Subpoena 021314

FCCU
First Community
Credit Union

319-19th St SE, PO Box 280
Jamestown, ND 58401-280
myFCCU.com

**Account Number:** *****4695
**Statement End Date:** 10-31-21
**Page:** 7 of 7

| Deposits, Dividends and Other Credits | |
|---|---|
| Date | Amount |
| 10-12-2021 | 12500.00 |
| 10-12-2021 | 239068.74 |
| 10-13-2021 | 1825.58 |
| 10-13-2021 | 500.00 |
| 10-14-2021 | 2871.50 |
| 10-14-2021 | 1094025.15 |

| Deposits, Dividends and Other Credits | |
|---|---|
| Date | Amount |
| 10-14-2021 | 14200.00 |
| 10-15-2021 | 500.00 |
| 10-18-2021 | 665.91 |
| 10-19-2021 | 734.46 |
| 10-21-2021 | 700.00 |
| 10-25-2021 | 1215.75 |

| Deposits, Dividends and Other Credits | |
|---|---|
| Date | Amount |
| 10-25-2021 | 5606.54 |
| 10-27-2021 | 506.47 |
| 10-27-2021 | 854.25 |
| 10-28-2021 | 3740.00 |
| 10-28-2021 | 150.00 |

| Total Dividends | 0 | 0.00 |
|---|---|---|
| Total Deposits and Other Credits | 29 | 1441251.92 |

| Withdrawals, Fees and Other Debits | |
|---|---|
| Date | Amount |
| 10-01-2021 | -40.25 |
| 10-01-2021 | -15.00 |
| 10-01-2021 | -2701.61 |
| 10-01-2021 | -62.33 |
| 10-04-2021 | -158.28 |
| 10-04-2021 | -956.20 |
| 10-04-2021 | -64.49 |
| 10-05-2021 | -216.00 |
| 10-06-2021 | -94.51 |
| 10-05-2021 | -5000.00 |
| 10-07-2021 | -66.19 |
| 10-07-2021 | -500.00 |
| 10-12-2021 | -154.91 |
| 10-12-2021 | -632.54 |
| 10-12-2021 | -378.31 |
| 10-12-2021 | -230.15 |
| 10-12-2021 | -14260.44 |

| Withdrawals, Fees and Other Debits | |
|---|---|
| Date | Amount |
| 10-12-2021 | -20005.00 |
| 10-12-2021 | -3005.00 |
| 10-13-2021 | -83.73 |
| 10-13-2021 | -95.84 |
| 10-13-2021 | -53086.08 |
| 10-13-2021 | -25.00 |
| 10-13-2021 | -15000.00 |
| 10-14-2021 | -837.61 |
| 10-14-2021 | -2000.00 |
| 10-14-2021 | -20.00 |
| 10-15-2021 | -227.20 |
| 10-16-2021 | -92.86 |
| 10-18-2021 | -91.34 |
| 10-18-2021 | -2958.94 |
| 10-16-2021 | -7000.00 |
| 10-19-2021 | -18000.00 |
| 10-19-2021 | -16370.00 |

| Withdrawals, Fees and Other Debits | |
|---|---|
| Date | Amount |
| 10-21-2021 | -15000.00 |
| 10-22-2021 | -39.76 |
| 10-23-2021 | -101.05 |
| 10-25-2021 | -2320.00 |
| 10-25-2021 | -3008.00 |
| 10-26-2021 | -152.59 |
| 10-27-2021 | -99.72 |
| 10-26-2021 | -6000.00 |
| 10-27-2021 | -200.57 |
| 10-27-2021 | -85.98 |
| 10-28-2021 | -13.31 |
| 10-28-2021 | -339.36 |
| 10-30-2021 | -90.00 |
| 10-30-2021 | -36.88 |
| 10-31-2021 | -5.00 |

| Total Fees | 2 | -20.00 |
|---|---|---|
| Total withdrawal and Other Debits | 47 | -191902.03 |

**MEMBERSHIP SAVINGS** ACCT# 3    **10-01-21** THRU **10-31-21**      PREVIOUS BALANCE **5.00**

ENDING BALANCE      **5.00**

**Dividend Summary**

| Account Number | New Balance | Dividends YTD |
|---|---|---|
| 1 | 0.01 | 0.00 |
| 2 | 122,157.07 | 0.00 |
| 3 | 5.00 | 0.00 |
| Total Dividends YTD: **$0.00** | | |

*- End of Statement -*

RRSB FCCU Subpoena 021315

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $424,259.84 | 11-09-2021 | 03-31-2022 | 51437 | | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**  GENERATIONS ON 1ST, LLC (TIN: ████6148)
1405 1ST AVE N
FARGO, ND 58102

**Lender:**  Red River State Bank
300 2nd Ave West
P.O. Box 25
Halstad, MN 56548

**EXHIBIT**
**4-A**

Principal Amount: $424,259.84          Interest Rate: 4.350%          Date of Note: November 9, 2021

**PROMISE TO PAY.** GENERATIONS ON 1ST, LLC ("Borrower") promises to pay to Red River State Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Four Hundred Twenty-four Thousand Two Hundred Fifty-nine & 84/100 Dollars ($424,259.84), together with interest on the unpaid principal balance from November 9, 2021, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 4.350% per annum, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in one principal payment of $424,259.84 plus interest on March 31, 2022. This payment due on March 31, 2022, will be for all principal and all accrued interest not yet paid. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Any accrued interest not paid when due is added to principal and thereafter will accrue interest as principal.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/365 basis; that is, by applying the ratio of the interest rate over the number of days in a year (365 for all years, including leap years), multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**RECEIPT OF PAYMENTS.** All payments must be made in U.S. dollars and must be received by Lender at:

Red River State Bank
300 2nd Ave West
P.O. Box 25
Halstad, MN 56548

All payments must be received by Lender consistent with any written payment instructions provided by Lender. If a payment is made consistent with Lender's payment instructions but received after 2:00 PM CST on a business day, Lender will credit Borrower's payment on the next business day.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full," "without recourse," or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Red River State Bank, PO Box 25 Halstad, MN 56548.

**LATE CHARGE.** If a payment is 11 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $7.28, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Note will continue to accrue interest at the interest rate under this Note.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf, or made by Guarantor, or any other guarantor, endorser, surety, or accommodation party, under this Note or the related documents in connection with the obtaining of the loan evidenced by this Note or any security document directly or indirectly securing repayment of this Note is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Execution; Attachment.** Any execution or attachment is levied against the Collateral, and such execution or attachment is not set aside, discharged or stayed within thirty (30) days after the same is levied.

**Change in Zoning or Public Restriction.** Any change in any zoning ordinance or regulation or any other public restriction is enacted, adopted or implemented, that limits or defines the uses which may be made of the Collateral such that the present or intended use of the Collateral, as specified in the related documents, would be in violation of such zoning ordinance or regulation or public restriction, as changed.

**Default Under Other Lien Documents.** A default occurs under any other mortgage, deed of trust or security agreement covering all or any

RRSB GO1st 01340

Loan No: 51437                                                               Page 2

portion of the Collateral.

**Judgment.** Unless adequately covered by insurance in the opinion of Lender, the entry of a final judgment for the payment of money involving more than ten thousand dollars ($10,000.00) against Borrower and the failure by Borrower to discharge the same, or cause it to be discharged, or bonded off to Lender's satisfaction, within thirty (30) days from the date of the order, decree or process under which or pursuant to which such judgment was entered.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor, or any other guarantor, endorser, surety, or accommodation party of any of the indebtedness or any Guarantor, or any other guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law,

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Minnesota without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Minnesota.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Norman County, State of Minnesota.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $28.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by (A) a Mortgage executed by Generations on 1st, LLC in favor of Red River State Bank dated 03/15/2021 with legal description of Parcel # 9582, 9583, & 9580:
Parcel I:
Lot 1 of Ohtness' Subdivision of Lots 12, 13, and 14 in Block 17 of Watertown, Codington County, South Dakota, according to the recorded plat thereof.
Parcel II:
Lot 2 of Ohtness' Subdivision of Lots 12, 13 and 14 in Block 17 of Watertown, AND the North 30 feet of the East 70 feet of Lot 11 in Block 17 of Watertown (commonly referred to as being in the original Plat), Codington County, South Dakota, according to the recorded plat thereof.
Parcel III:
Lot 3 of Ohtness' Subdivision of Lots 12, 13, and 14 in Block 17 of Watertown (commonly referred to as being the Original Plat), Codington County, South Dakota, according to the recorded plat thereof.
Parcel IV:
Lot 4 of Ohtness' Subdivision of Lots 12, 13, and 14 in Block 17 of Watertown (commonly referred to as being the Original Plat), Codington County, South Dakota, according to the recorded plat thereof.
Parcel V:
Lot 11, except the North 30 Feet of the East 70 Feet thereof, in Block 17, of the plat Entitled: "Watertown" Codington County, South Dakota, according to the recorded plat thereof

AND

(B) a Mortgage executed by Craig Holdings, LLC in favor of Red River State Bank dated 10/14/2021 with legal description of: GENERATIONS ON 1ST ADDITION TO THE CITY OF WATERTOWN, CODINGTON COUNTY, SOUTH DAKOTA

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: Red River State Bank PO Box 25 Halstad, MN 56548.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. In addition, Lender shall have all the rights and remedies provided in the related documents or available at law, in equity, or otherwise. Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower shall not affect Lender's right to declare a default and to exercise its rights and remedies. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be

Loan No: 51437      **PROMISSORY NOTE**
(Continued)      Page 3

---

released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**SECTION DISCLOSURE.** To the extent not preempted by federal law, this loan is made under Minnesota Statutes, Section 47.59.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

GENERATIONS ON 1ST, LLC

By: _____

     JESSE ROBERT CRAIG, MANAGING MEMBER of
     GENERATIONS ON 1ST, LLC

LENDER:

RED RIVER STATE BANK

_____

CHARLES AARESTAD, Vice President

LaserPro Ver. 20.4.0.036 Copr. Finastra USA Corporation 1997, 2021. All Rights Reserved. - MN C:\HARLAND\CFI\LPL\D20.FC TR-5094 PR-31

RRSB GO1st 01342

# DISBURSEMENT REQUEST AND AUTHORIZATION

| Principal<br>$424,259.84 | Loan Date<br>11-09-2021 | Maturity<br>03-31-2022 | Loan No<br>51437 | Call / Coll | Account | Officer<br>*** | Initials |
|---|---|---|---|---|---|---|---|

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** GENERATIONS ON 1ST, LLC (TIN: ▮▮▮6148)
1405 1ST AVE N
FARGO, ND 58102

**Lender:** Red River State Bank
300 2nd Ave West
P.O. Box 25
Halstad, MN 56548

<div style="border:1px solid">
EXHIBIT

**4-B**
</div>

**LOAN TYPE.** This is a Fixed Rate (4.350%) Nondisclosable Loan to a Limited Liability Company for $424,259.84 due on March 31, 2022.

**PRIMARY PURPOSE OF LOAN.** The primary purpose of this loan is for:

☐ Maintenance of Borrower's Primary Residence.

☐ Personal, Family or Household Purposes or Personal Investment.

☐ Agricultural Purposes.

☒ Business Purposes.

**SPECIFIC PURPOSE.** The specific purpose of this loan is: Multi Family Home Construction Project Draw 14.

**REAL ESTATE DOCUMENTS.** If any party to this transaction is granting a security interest in any real property to Lender and Borrower is not also a party to the real estate document or documents (the "Real Estate Documents") granting such security interest, Borrower agrees to perform and comply with the Real Estate Documents just as if Borrower has signed as a direct and original party to the Real Estate Documents. This means Borrower agrees to all the representations and warranties made in the Real Estate Documents. In addition, Borrower agrees to perform and comply strictly with all the terms, obligations and covenants to be performed by either Borrower or any Grantor or Trustor, or both, as those words are defined in the Real Estate Documents. Lender need not tell Borrower about any action or inaction Lender takes in connection with the Real Estate Documents. Borrower assumes the responsibility for being and keeping informed about the property. Borrower also waives any defenses that may arise because of any action or inaction of Lender, including without limitation any failure of Lender to realize upon the property, or any delay by Lender in realizing upon the property.

**DISBURSEMENT INSTRUCTIONS.** Borrower understands that no loan proceeds will be disbursed until all of Lender's conditions for making the loan have been satisfied. Please disburse the loan proceeds of $424,259.84 as follows:

| | |
|---|---|
| Amount paid to others on Borrower's behalf: | $424,259.84 |
| $424,259.84 to Craig Development LLC for Construction Draws and Construction Management Fees | |
| Note Principal: | $424,259.84 |

**NOTICE OF RIGHT TO DISCONTINUE ESCROW.** If Borrower's mortgage loan involves an escrow account for taxes and homeowner's insurance, Borrower may have the right in five years to discontinue the account and pay Borrower's own taxes and homeowner's insurance. IF Borrower is eligible to discontinue the escrow account, Borrower will be notified in five years.

**FINANCIAL CONDITION.** BY SIGNING THIS AUTHORIZATION, BORROWER REPRESENTS AND WARRANTS TO LENDER THAT THE INFORMATION PROVIDED ABOVE IS TRUE AND CORRECT AND THAT THERE HAS BEEN NO MATERIAL ADVERSE CHANGE IN BORROWER'S FINANCIAL CONDITION AS DISCLOSED IN BORROWER'S MOST RECENT FINANCIAL STATEMENT TO LENDER. THIS AUTHORIZATION IS DATED NOVEMBER 9, 2021.

**BORROWER:**

GENERATIONS ON 1ST, LLC

By: _____
JESSE ROBERT CRAIG, MANAGING MEMBER of
GENERATIONS ON 1ST, LLC

LaserPro, Ver. 20.4.0.039 Copr. Finastra USA Corporation 1997, 2021. All Rights Reserved. - MN C:\HFRE\AND\CFI\LPL\I20.FC. TR-6569 PR-57

## LOAN WIRE TRANSFER ORDER

**EXHIBIT**

**4-C**

| | |
|---|---|
| Date | 11/9/2021 |
| Sender ABA # | 5199 |
| Bank Name | Red River State Bank |

☑ Customer
☐ Non-Customer -- Check with Lori DeLong

### ORIGINATOR INFORMATION

| | |
|---|---|
| Name | Generations on 1st LLC |
| Street Address | 1405 1st Ave N |
| City, State, Zip | Fargo, ND 58102 |
| Account Number | 51437 |

**Originating Loan Officer Signature**

### WIRE THROUGH

| | |
|---|---|
| Bank Name | First Community Credit Union |
| ABA Number | 8693 |
| Dollar Amount | $424,259.84 |

### BENEFICIARY INFORMATION

| | |
|---|---|
| For Credit To | Craig Properties LLC |
| Street Address | 1405 1st Ave N |
| City, State, Zip | Fargo, ND 58102 |
| Account Number | 6957 |
| For Further Credit To | |
| Account Number | |

☐ OFAC Verified - by UBB

☐ IN-PERSON REQUEST:   ☐ Known Customer   ☐ Identity Verified                    ☐ Internal Business Purpose

Verified Wire Transfer agreement on file:  Yes / No     Initial: _____

**CUSTOMER SIGNATURE** _____

☑ NOT IN- PERSON REQUEST:
Wire Instructions on File
☐ Yes   ☐ NO  -- Written instructions from customer attached
Instructions received by:
☑ Telephone Initial: AM
☑ Email Request (attached) Initial: UAm
☐ Fax request (attached) Initial_____
☐ Mail request (attached) Initial _____

Call Back Verication details:
Date: 11/9/21    Time: 10:38 Am
Who performed callback: Ai M.
Customer/Authorized Rep spoke with: Jesse Craig
   ☐ Identity verified    ☐ Authority verified
Phone Number called to verify: 701-371-9887

If not loan source funds, wire transfer agreement on file? YES/NO

| | | | SOURCE OF FUNDS |
|---|---|---|---|
| Wire Transfer Amount | US $ | 424,259.84 | ☐ Cash |
| | | **EBA OK?** | ☐ Check |
| Wire Transfer Fee | $ | 0.00 | ☐ Deposit Acct |
| | | Initials | ☑ Loan |
| | | | ☐ General Ledger |

**UBB DESK SIGNATURE**   _Jeanina Gustafson_

**WIRE APPROVAL OFFICER**   _Ai Moen_

(Attach any supporting documents on reverse side)   RRSB GO1st 04843

Revised: 11/9/2021

## Outgoing Domestic

Account Number:    1534

Transaction Date: 11/B2021

Fusiness - unction { 63}00CRTy                    TpSe/$ubTpSe { 61510C 1000

Amount { 62000C          , 42495BP4

daiWh itv Rasv              ☐

y eceiker Fan7 { 63400C

AFA              P}B3                Fan7 Name          - irst Rommunitp RU

Originating Fan7 { 65100C

| | |
|---|---|
| IWRoW | DDA Account Number |
| IWentifier | 1534 |
| Name | y eWy iker $tate Fan7 HalstaW |
| AWWess 1 | 300 2nWAke h est |
| AWWess 2 | dO Fox 25 |
| AWWess 3 | HalstaWMN 5}54P{0025 |

Originator { 65000C

| | |
|---|---|
| IWRoW | DDA Account Number |
| IWentifier | 51BB |
| Name | GENEy ATION$ ON 1$T LLR |
| AWWess 1 | 1405 1$T AVE N |
| AWWess 2 | - Ay GO9ND 5P102 |
| AWWess 3 | |

Feneficiarp { 64200C

| | |
|---|---|
| IWRoW | DDA Account Number |
| IWentifier | }B58 |
| Name | Ry AIG dy OdEy TIE$ LLR |
| AWWess 1 | 1405 1$T AVE N |
| AWWess 2 | - Ay GO9ND 5P102 |
| AWWess 3 | |

- ile Attacvments No Attacvments

Transaction DescriStion GENEy ATION$ ON 1$T LLR

Notes

**No OFAC Violation**

| | |
|---|---|
| RreateWFp | DGustaf82 |
| Date RreateW | 11/B2021 11:01:42 AM |
| | Awaiting Verification |

- irst VieweWFp   DGustaf82
Date - irst VieweWl 1/B2021 11:01:48 AM
Last VieweWFp   DGustaf82
Date Last VieweWl 1/B2021 11:01:48 AM

**FCCU First Community Credit Union**
310 10th St SE | PO Box 2180
Jamestown, ND 58401-2180
myFCCU.com

**Account Number:** *****4695
**Statement End Date:** 11-30-21
**Page:** 1 of 8
**MC:** P

ADDRESS SERVICE REQUESTED

Protect your identity. Protect your future. With IDSafeChoice, you can rest easy knowing that if you're a victim of identity theft, you'll have access to industry experts that will help restore your good name. Stop by FCCU or call 1-800-850-7676 for more info!

CRAIG PROPERTIES LLC
1405 1ST AVE N
FARGO, ND 58102

## Account Summary

| Account | Description | Beginning Balance | Ending Balance | Account | Description | Beginning Balance | Ending Balance |
|---|---|---|---|---|---|---|---|
| 1 | PRIME SHARES | 0.01 | 0.01 | 2 | BUSINESS REWARDS | 122,157.07 | 110,625.37 |
| 3 | MEMBERSHIP SAVINGS | 5.00 | 5.00 | | | | |

## Account Detail

**PRIME SHARES** ACCT# 1    **11-01-21 THRU 11-30-21**    PREVIOUS BALANCE **0.01**

ENDING BALANCE    **0.01**

**BUSINESS REWARDS** ACCT# 2    **11-01-21 THRU 11-30-21**    PREVIOUS BALANCE **122,157.07**

| Date | Transaction Description | Amount | Balance |
|---|---|---|---|
| NOV 01 | SERVICE CHARGE   CRAIG PROPERTIES LLC. TOTAL NON COMPENSABLE CHARGE | -15.00 | 122142.07 |
| NOV 01 | EFT ACH Master  STARCAPITAL Monthlypmt211027 | -2701.61 | 119440.46 |
| NOV 01 | DEPOSIT | 5712.50 | 125152.96 |
| NOV 01 | WITHDRAWAL   TRANSFER PER JESSE TO SYDNEY'S CHECKING | -500.00 | 124652.96 |
| NOV 01 | TRANSFER 1 | 554345.25 | 678998.21 |
| NOV 01 | SHARE DRAFT 38817 TRACE#: 00103420 | -250.00 | 678748.21 |
| NOV 01 | SHARE DRAFT 38870 TRACE#: 00113405 | -541.07 | 678207.14 |
| NOV 01 | SHARE DRAFT 38876 TRACE#: 71000065 | -2168.25 | 676038.89 |
| NOV 01 | SHARE DRAFT 1111 TRACE#: 51700275 | -7582.50 | 668456.39 |
| NOV 02 | EFT ACH Master  CRAIG PROPERTIESRENT 211102 | 18705.00 | 687161.39 |
| NOV 02 | EFT ACH Master  BCBSNDPREMIUM EDI PYMNTS | -956.20 | 686205.19 |
| NOV 02 | WITHDRAWAL | -50005.00 | 636200.19 |
| NOV 02 | WITHDRAWAL-CASH | -2696.50 | 633503.69 |
| NOV 02 | DEPOSIT | 775.00 | 634278.69 |
| NOV 02 | DEPOSIT | 9408.00 | 643686.69 |
| NOV 02 | SHARE DRAFT 38879 TRACE#: 00217310 | -180.00 | 643506.69 |
| NOV 02 | SHARE DRAFT 38853 TRACE#: 00201500 | -210.00 | 643296.69 |
| NOV 02 | SHARE DRAFT 38701 TRACE#: 00221005 | -282.60 | 643014.09 |
| NOV 02 | SHARE DRAFT 38948 TRACE#: 00224700 | -967.50 | 642046.59 |
| NOV 02 | SHARE DRAFT 38877 TRACE#: 00212885 | -2073.00 | 639973.59 |
| NOV 02 | SHARE DRAFT 38722 TRACE#: 00203205 | -2310.00 | 637663.59 |
| NOV 02 | SHARE DRAFT 38871 TRACE#: 00202140 | -4231.39 | 633432.20 |
| NOV 02 | SHARE DRAFT 38851 TRACE#: 00202230 | -4500.00 | 628932.20 |
| NOV 02 | SHARE DRAFT 38744 TRACE#: 00224220 | -9893.86 | 619038.34 |
| NOV 02 | SHARE DRAFT 38944 TRACE#: 50500150 | -10000.00 | 609038.34 |
| NOV 02 | SHARE DRAFT 38794 TRACE#: 00202150 | -100000.00 | 509038.34 |
| NOV 03 | EFT ACH Master  US ASSURE-INSURA8558727787B21306 | -4351.00 | 504687.34 |
| NOV 03 | DEPOSIT | 3978.00 | 508665.34 |
| NOV 03 | SHARE DRAFT 38863 TRACE#: 00111120 | -343.93 | 508321.41 |
| NOV 03 | SHARE DRAFT 38520 TRACE#: 00115720 | -4776.10 | 503545.31 |
| NOV 03 | SHARE DRAFT 38537 TRACE#: 00115715 | -5607.15 | 497938.16 |

*- Continued -*

RRSB FCCU Subpoena 021336

First Community Credit Union
316-10th St SE | PO Box 80
Jamestown, ND 58401-280
*myFCCU.com*

**Account Number:** *****4695
**Statement End Date:** 11-30-21
**Page:** 2 of 8

| Date | Transaction Description | Amount | Balance |
|------|-------------------------|--------|---------|
| NOV 03 | SHARE DRAFT 38844 TRACE#: 00103800 | -150000.00 | 347938.16 |
| NOV 04 | DEBIT CARD DEBIT 000006274119 CASEYS GEN STORE 3370 FARGO ND 11-02-21 | -101.73 | 347836.43 |
| NOV 04 | WITHDRAWAL POS 1104 0835 771314 MNRD-FARGO WEST FARGO ND | -91.98 | 347744.45 |
| NOV 04 | DEPOSIT | 8591.98 | 356336.43 |
| NOV 04 | SHARE DRAFT 38873 TRACE#: 00113755 | -3000.00 | 353336.43 |
| NOV 04 | DEPOSIT | 8224.48 | 361560.91 |
| NOV 04 | SHARE DRAFT 38862 TRACE#: 00112230 | -401.88 | 361159.03 |
| NOV 04 | SHARE DRAFT 38868 TRACE#: 00113955 | -426.88 | 360732.15 |
| NOV 04 | SHARE DRAFT 38790 TRACE#: 00110815 | -546.35 | 360185.80 |
| NOV 04 | SHARE DRAFT 38903 TRACE#: 00113780 | -747.00 | 359438.80 |
| NOV 04 | SHARE DRAFT 38935 TRACE#: 50500205 | -848.46 | 358590.34 |
| NOV 04 | SHARE DRAFT 38940 TRACE#: 50500210 | -973.23 | 357617.11 |
| NOV 04 | SHARE DRAFT 38882 TRACE#: 00113845 | -3000.00 | 354617.11 |
| NOV 04 | SHARE DRAFT 38869 TRACE#: 00109875 | -3902.50 | 350714.61 |
| NOV 04 | SHARE DRAFT 38895 TRACE#: 50500200 | -11492.30 | 339222.31 |
| NOV 04 | SHARE DRAFT 38754 TRACE#: 00112325 | -16817.55 | 322404.76 |
| NOV 05 | EFT COMMONWEALTH CU APPLECARD GSBANKPAYMENT 110421 | -1874.63 | 320530.13 |
| NOV 05 | DEPOSIT | 5813.00 | 326343.13 |
| NOV 05 | SHARE DRAFT 38956 TRACE#: 00104445 | -32.25 | 326310.88 |
| NOV 05 | SHARE DRAFT 38911 TRACE#: 00109445 | -72.93 | 326237.95 |
| NOV 05 | SHARE DRAFT 38927 TRACE#: 00101400 | -85.00 | 326152.95 |
| NOV 05 | SHARE DRAFT 38885 TRACE#: 00109270 | -142.90 | 326010.05 |
| NOV 05 | SHARE DRAFT 38945 TRACE#: 00104375 | -172.51 | 325837.54 |
| NOV 05 | SHARE DRAFT 38924 TRACE#: 00113320 | -447.00 | 325390.54 |
| NOV 05 | SHARE DRAFT 38949 TRACE#: 00104440 | -735.48 | 324655.06 |
| NOV 05 | SHARE DRAFT 38926 TRACE#: 00108450 | -785.75 | 323869.31 |
| NOV 05 | SHARE DRAFT 38936 TRACE#: 00104845 | -871.04 | 322998.27 |
| NOV 05 | SHARE DRAFT 38942 TRACE#: 00108445 | -1062.73 | 321935.54 |
| NOV 05 | SHARE DRAFT 38943 TRACE#: 00111360 | -2016.51 | 319919.03 |
| NOV 05 | SHARE DRAFT 38854 TRACE#: 00107335 | -2126.10 | 317792.93 |
| NOV 05 | SHARE DRAFT 38906 TRACE#: 00107345 | -2127.00 | 315665.93 |
| NOV 05 | SHARE DRAFT 38938 TRACE#: 00108455 | -2426.50 | 313239.43 |
| NOV 05 | SHARE DRAFT 38955 TRACE#: 00104850 | -3497.89 | 309741.54 |
| NOV 05 | SHARE DRAFT 38912 TRACE#: 00104895 | -5020.16 | 304721.38 |
| NOV 05 | SHARE DRAFT 38875 TRACE#: 00114475 | -5208.33 | 299513.05 |
| NOV 05 | SHARE DRAFT 38782 TRACE#: 00107340 | -7800.00 | 291713.05 |
| NOV 05 | SHARE DRAFT 38966 TRACE#: 00111300 | -11420.84 | 280292.21 |
| NOV 05 | SHARE DRAFT 38950 TRACE#: 00107655 | -52191.59 | 228100.62 |
| NOV 06 | DEBIT CARD DEBIT 000015738444 NORTHERN TOOL EQUIP FARGO ND 11-05-21 | -75.24 | 228025.38 |
| NOV 06 | DEBIT CARD DEBIT 000009133319 CASEYS GEN STORE 3370 FARGO ND 11-06-21 | -104.31 | 227921.07 |
| NOV 08 | EFT ACH Master Square Inc 211108P2 211108 | 921.91 | 228842.98 |
| NOV 08 | DEPOSIT | 11355.04 | 240198.02 |
| NOV 08 | SHARE DRAFT 38923 TRACE#: 00114430 | -2687.50 | 237510.52 |
| NOV 08 | WITHDRAWAL | -3005.00 | 234505.52 |
| NOV 08 | SHARE DRAFT 38918 TRACE#: 00101840 | -96.75 | 234408.77 |
| NOV 08 | SHARE DRAFT 38913 TRACE#: 00114075 | -105.13 | 234303.64 |
| NOV 08 | SHARE DRAFT 38964 TRACE#: 00112850 | -107.50 | 234196.14 |
| NOV 08 | SHARE DRAFT 38865 TRACE#: 00100195 | -326.88 | 233869.26 |
| NOV 08 | SHARE DRAFT 38894 TRACE#: 00100340 | -334.11 | 233535.15 |
| NOV 08 | SHARE DRAFT 38902 TRACE#: 00100465 | -475.00 | 233060.15 |
| NOV 08 | SHARE DRAFT 38919 TRACE#: 00110770 | -490.35 | 232569.80 |
| NOV 08 | SHARE DRAFT 38959 TRACE#: 00101825 | -843.48 | 231726.32 |
| NOV 08 | SHARE DRAFT 38947 TRACE#: 00113945 | -943.63 | 230782.69 |
| NOV 08 | SHARE DRAFT 38896 TRACE#: 00106775 | -2581.21 | 228201.48 |
| NOV 08 | SHARE DRAFT 38858 TRACE#: 00105355 | -10451.47 | 217750.01 |
| NOV 08 | SHARE DRAFT 38785 TRACE#: 00108650 | -28108.73 | 189641.28 |
| NOV 09 | EFT GRINNELL MUTUAL Grinnell Mutual PREM PYMT 110921 | -154.91 | 189486.37 |
| NOV 09 | DEPOSIT | 1000.00 | 190486.37 |
| NOV 09 | DEPOSIT Incoming Wire Transfer-266257462 | 424259.84 | 614746.21 |
| NOV 09 | WITHDRAWAL Wire Transfer Fee-266257464 | -20.00 | 614726.21 |

*- Continued -*

RRSB FCCU Subpoena 021337

**First Community Credit Union**
310 10th St SE | PO Box 280
Jamestown, ND 58401-280
myFCCU.com

Account Number: *****4695
Statement End Date: 11-30-21
Page: 3 of 8

| Date | Transaction Description | Amount | Balance |
|---|---|---|---|
| NOV 09 | SHARE DRAFT 38898 TRACE#: 00101430 | -9.12 | 614717.09 |
| NOV 09 | SHARE DRAFT 38971 TRACE#: 00102545 | -17.70 | 614699.39 |
| NOV 09 | SHARE DRAFT 38884 TRACE#: 00112670 | -140.00 | 614559.39 |
| NOV 09 | SHARE DRAFT 38931 TRACE#: 00120345 | -159.75 | 614399.64 |
| NOV 09 | SHARE DRAFT 38905 TRACE#: 00118770 | -293.41 | 614106.23 |
| NOV 09 | SHARE DRAFT 38852 TRACE#: 00115030 | -381.52 | 613724.71 |
| NOV 09 | SHARE DRAFT 38901 TRACE#: 00111415 | -394.38 | 613330.33 |
| NOV 09 | SHARE DRAFT 38916 TRACE#: 00101380 | -424.00 | 612906.33 |
| NOV 09 | SHARE DRAFT 38819 TRACE#: 00100985 | -426.00 | 612480.33 |
| NOV 09 | SHARE DRAFT 38904 TRACE#: 00120085 | -544.96 | 611935.37 |
| NOV 09 | SHARE DRAFT 38962 TRACE#: 00117760 | -545.00 | 611390.37 |
| NOV 09 | SHARE DRAFT 38881 TRACE#: 00117655 | -557.37 | 610833.00 |
| NOV 09 | SHARE DRAFT 38917 TRACE#: 00119720 | -612.92 | 610220.08 |
| NOV 09 | SHARE DRAFT 38889 TRACE#: 00101485 | -771.88 | 609448.20 |
| NOV 09 | SHARE DRAFT 38900 TRACE#: 00114940 | -850.00 | 608598.20 |
| NOV 09 | SHARE DRAFT 38910 TRACE#: 00122330 | -1023.76 | 607574.44 |
| NOV 09 | SHARE DRAFT 38921 TRACE#: 00124710 | -3173.14 | 604401.30 |
| NOV 09 | SHARE DRAFT 38887 TRACE#: 00122335 | -3374.55 | 601026.75 |
| NOV 09 | SHARE DRAFT 38963 TRACE#: 00103670 | -3559.33 | 597467.42 |
| NOV 09 | SHARE DRAFT 38883 TRACE#: 00106130 | -4205.93 | 593261.49 |
| NOV 09 | SHARE DRAFT 38891 TRACE#: 00101190 | -5000.00 | 588261.49 |
| NOV 09 | SHARE DRAFT 38874 TRACE#: 00101405 | -6166.67 | 582094.82 |
| NOV 09 | SHARE DRAFT 38932 TRACE#: 00122325 | -7500.00 | 574594.82 |
| NOV 09 | SHARE DRAFT 38914 TRACE#: 00117750 | -17413.29 | 557181.53 |
| NOV 09 | SHARE DRAFT 38951 TRACE#: 00117580 | -19350.00 | 537831.53 |
| NOV 10 | DEBIT CARD DEBIT 000015895068 CASEYS GEN STORE 3354 FARGO ND 11-08-21 | -31.37 | 537800.16 |
| NOV 10 | DEPOSIT | 2014.00 | 539814.16 |
| NOV 10 | SHARE DRAFT 38953 TRACE#: 00110080 | -20.00 | 539794.16 |
| NOV 10 | SHARE DRAFT 38907 TRACE#: 00105860 | -84.00 | 539710.16 |
| NOV 10 | SHARE DRAFT 38893 TRACE#: 00110845 | -110.95 | 539599.21 |
| NOV 10 | SHARE DRAFT 38892 TRACE#: 00110090 | -175.00 | 539424.21 |
| NOV 10 | SHARE DRAFT 38867 TRACE#: 00109205 | -227.08 | 539197.13 |
| NOV 10 | SHARE DRAFT 38897 TRACE#: 00106030 | -673.40 | 538523.73 |
| NOV 10 | SHARE DRAFT 38872 TRACE#: 00113085 | -700.00 | 537823.73 |
| NOV 10 | SHARE DRAFT 38954 TRACE#: 00114680 | -782.73 | 537041.00 |
| NOV 10 | SHARE DRAFT 38957 TRACE#: 00110490 | -1174.16 | 535866.84 |
| NOV 10 | SHARE DRAFT 38928 TRACE#: 00113130 | -2970.70 | 532896.14 |
| NOV 10 | SHARE DRAFT 38952 TRACE#: 00115085 | -3009.97 | 529886.17 |
| NOV 10 | SHARE DRAFT 38961 TRACE#: 00105335 | -4064.03 | 525822.14 |
| NOV 10 | SHARE DRAFT 38920 TRACE#: 00105120 | -4108.25 | 521713.89 |
| NOV 10 | SHARE DRAFT 39008 TRACE#: 00114060 | -5871.25 | 515842.64 |
| NOV 12 | DEBIT CARD DEBIT 000015317915 CASEYS GEN STORE 3354 FARGO ND 11-10-21 | -103.85 | 515738.79 |
| NOV 12 | EFT ACH Master CAPITAL ONE MOBILE PMT211110 | -20000.00 | 495738.79 |
| NOV 12 | EFT ACH Master State Auto - InbVENDOR PMT211110 | -632.54 | 495106.25 |
| NOV 12 | EFT ACH Master State Auto - InbVENDOR PMT211110 | -378.31 | 494727.94 |
| NOV 12 | EFT ACH Master State Auto - InbVENDOR PMT211110 | -230.15 | 494497.79 |
| NOV 12 | DEPOSIT | 1324.00 | 495821.79 |
| NOV 12 | TRANSFER 2 PER PHONE | -3000.00 | 492821.79 |
| NOV 12 | TRANSFER 2 | 126231.63 | 619053.42 |
| NOV 12 | SHARE DRAFT 38979 TRACE#: 00108620 | -56.52 | 618996.90 |
| NOV 12 | SHARE DRAFT 38973 TRACE#: 00109905 | -91.27 | 618905.63 |
| NOV 12 | SHARE DRAFT 38930 TRACE#: 00109805 | -670.89 | 618234.74 |
| NOV 12 | SHARE DRAFT 38982 TRACE#: 00108530 | -1078.03 | 617156.71 |
| NOV 12 | SHARE DRAFT 38974 TRACE#: 00113410 | -1423.86 | 615732.85 |
| NOV 12 | SHARE DRAFT 38984 TRACE#: 00108535 | -1519.96 | 614212.89 |
| NOV 12 | SHARE DRAFT 38981 TRACE#: 00108490 | -1639.22 | 612573.67 |
| NOV 12 | SHARE DRAFT 38978 TRACE#: 00110365 | -4560.33 | 608013.34 |
| NOV 12 | SHARE DRAFT 37610 TRACE#: 00110390 | -4894.37 | 603118.97 |
| NOV 12 | SHARE DRAFT 37771 TRACE#: 00110395 | -4894.37 | 598224.60 |
| NOV 12 | SHARE DRAFT 38899 TRACE#: 00110460 | -21860.59 | 576364.01 |

*- Continued -*

RRSB FCCU Subpoena 021338

First Community CU
Credit Union
314 10th St SE | PO Box 2160
Jamestown, ND 58401-280
*myFCCU.com*

**Account Number:** *****4695
**Statement End Date:** 11-30-21
**Page:** 4 of 8

| Date | Transaction Description | Amount | Balance |
|------|------------------------|--------|---------|
| NOV 12 | SHARE DRAFT 38803 TRACE#: 00104475 | -36094.96 | 540269.05 |
| NOV 15 | DEBIT CARD DEBIT  000012560881 CASEYS GEN STORE 3370 FARGO ND 11-13-21 | -94.20 | 540174.85 |
| NOV 15 | EFT ACH Master  IRS TREAS 310 CHILDCTC111521 | 500.00 | 540674.85 |
| NOV 15 | EFT ACH Master  CAPITAL ONE MOBILE PMT211112 | -5000.00 | 535674.85 |
| NOV 15 | SHARE DRAFT 38977 TRACE#: 00100030 | -52.55 | 535622.30 |
| NOV 15 | SHARE DRAFT 38969 TRACE#: 00111475 | -100.00 | 535522.30 |
| NOV 15 | SHARE DRAFT 39005 TRACE#: 00114790 | -252.00 | 535270.30 |
| NOV 15 | SHARE DRAFT 38946 TRACE#: 00114465 | -1140.21 | 534130.09 |
| NOV 15 | SHARE DRAFT 38996 TRACE#: 00107155 | -1708.61 | 532421.48 |
| NOV 15 | SHARE DRAFT 38976 TRACE#: 00110620 | -2790.50 | 529630.98 |
| NOV 16 | EFT ACH Master  Square Inc 211116P2 211116 | 861.11 | 530492.09 |
| NOV 16 | EFT ACH Master  State Auto - InbVENDOR PMT211115 | -837.61 | 529654.48 |
| NOV 16 | SHARE DRAFT 39006 TRACE#: 00108805 | -197.71 | 529456.77 |
| NOV 16 | WITHDRAWAL  POS 1116 1415 280176 MNRD-MOORHEAD MOORHEAD MN | -149.25 | 529307.52 |
| NOV 16 | SHARE DRAFT 39000 TRACE#: 00111380 | -81.29 | 529226.23 |
| NOV 16 | SHARE DRAFT 38972 TRACE#: 00100485 | -136.48 | 529089.75 |
| NOV 16 | SHARE DRAFT 38859 TRACE#: 00100835 | -377.92 | 528711.83 |
| NOV 16 | SHARE DRAFT 39003 TRACE#: 00101895 | -471.41 | 528240.42 |
| NOV 16 | SHARE DRAFT 38992 TRACE#: 00127460 | -856.80 | 527383.62 |
| NOV 16 | SHARE DRAFT 8965 TRACE#: 00108400 | -1006.25 | 526377.37 |
| NOV 16 | SHARE DRAFT 39010 TRACE#: 00115345 | -1556.00 | 524821.37 |
| NOV 16 | SHARE DRAFT 38968 TRACE#: 00111385 | -1581.91 | 523239.46 |
| NOV 16 | SHARE DRAFT 38958 TRACE#: 00119755 | -1680.46 | 521559.00 |
| NOV 16 | SHARE DRAFT 39011 TRACE#: 71800015 | -2278.50 | 519280.50 |
| NOV 16 | SHARE DRAFT 38970 TRACE#: 00115325 | -2722.99 | 516557.51 |
| NOV 16 | SHARE DRAFT 38997 TRACE#: 00119750 | -4624.65 | 511932.86 |
| NOV 16 | SHARE DRAFT 38995 TRACE#: 00119745 | -5506.05 | 506426.81 |
| NOV 16 | SHARE DRAFT 38980 TRACE#: 00101710 | -11690.52 | 494736.29 |
| NOV 16 | SHARE DRAFT 38991 TRACE#: 00119740 | -22977.37 | 471758.92 |
| NOV 16 | SHARE DRAFT 38986 TRACE#: 00117810 | -24285.00 | 447473.92 |
| NOV 16 | SHARE DRAFT 38994 TRACE#: 00119760 | -28500.00 | 418973.92 |
| NOV 16 | DEPOSIT | 1863.80 | 420837.72 |
| NOV 16 | DEPOSIT | 500.00 | 421337.72 |
| NOV 16 | DEPOSIT | 86.88 | 421424.60 |
| NOV 17 | TRANSFER 2  CORRECTION TO 11/16/21 DEPOSIT, FIXED PER MANAGEMENT | -86.88 | 421337.72 |
| NOV 17 | SHARE DRAFT 38855 TRACE#: 00109760 | -2500.00 | 418837.72 |
| NOV 17 | SHARE DRAFT 39004 TRACE#: 00100770 | -2521.80 | 416315.92 |
| NOV 17 | SHARE DRAFT 38993 TRACE#: 00112950 | -8011.52 | 408304.40 |
| NOV 17 | SHARE DRAFT 38909 TRACE#: 00115030 | -8450.24 | 399854.16 |
| NOV 17 | SHARE DRAFT 38998 TRACE#: 00112425 | -32880.00 | 366974.16 |
| NOV 17 | SHARE DRAFT 39002 TRACE#: 00104675 | -48600.00 | 318374.16 |
| NOV 17 | SHARE DRAFT 39007 TRACE#: 00110140 | -59846.50 | 258527.66 |
| NOV 18 | DEBIT CARD DEBIT  000023209434 MARATHON PETRO265439 PELICAN RAPIDMN 11-15-21 | -90.00 | 258437.66 |
| NOV 18 | EFT ACH Master  CAPITAL ONE MOBILE PMT211117 | -20000.00 | 238437.66 |
| NOV 18 | EFT ACH Master  CAPITAL ONE MOBILE PMT211117 | -10000.00 | 228437.66 |
| NOV 18 | DEPOSIT | 266.00 | 228703.66 |
| NOV 18 | SHARE DRAFT 39001 TRACE#: 00104810 | -224.23 | 228479.43 |
| NOV 18 | SHARE DRAFT 38989 TRACE#: 00112185 | -351.45 | 228127.98 |
| NOV 18 | SHARE DRAFT 38990 TRACE#: 00104745 | -8086.52 | 220041.46 |
| NOV 18 | SHARE DRAFT 38988 TRACE#: 00104805 | -16167.37 | 203874.09 |
| NOV 19 | EFT ACH Master  Square Inc 211119P2 211119 | 54.57 | 203928.66 |
| NOV 19 | SHARE DRAFT 38967 TRACE#: 00106495 | -6810.13 | 197118.53 |
| NOV 19 | DEPOSIT | 499.00 | 197617.53 |
| NOV 20 | DEBIT CARD DEBIT  000019689100 CASEYS GEN STORE 3354 FARGO ND 11-18-21 | -81.08 | 197536.45 |
| NOV 22 | EFT ACH Master  CAPITAL ONE MOBILE PMT211119 | -5000.00 | 192536.45 |
| NOV 22 | EFT ACH Master  CAPITAL ONE MOBILE PMT211119 | -5001.00 | 187535.45 |
| NOV 22 | DEPOSIT | 621.00 | 188156.45 |
| NOV 22 | DEPOSIT | 624.50 | 188780.95 |
| NOV 22 | DEPOSIT | 149.25 | 188930.20 |
| NOV 22 | SHARE DRAFT 38960 TRACE#: 00109825 | -2750.00 | 186180.20 |

*- Continued -*                    RRSB FCCU Subpoena 021339

**First Community Credit Union**
314 10th St SE | PO Box 2180
Jamestown, ND 58401-280
*myFCCU.com*

**Account Number:** *****4695
**Statement End Date:** 11-30-21
**Page:** 5 of 8

| Date | Transaction Description | Amount | Balance |
|------|------------------------|--------|---------|
| NOV 23 | SHARE DRAFT 38880 TRACE#: 00116825 | -92.00 | 186088.20 |
| NOV 23 | SHARE DRAFT 38985 TRACE#: 00116430 | -236.25 | 185851.95 |
| NOV 23 | SHARE DRAFT 38933 TRACE#: 00101970 | -464.48 | 185387.47 |
| NOV 23 | SHARE DRAFT 38939 TRACE#: 00101965 | -1612.01 | 183775.46 |
| NOV 23 | SHARE DRAFT 38886 TRACE#: 00101960 | -2765.88 | 181009.58 |
| NOV 23 | SHARE DRAFT 38983 TRACE#: 00116425 | -11435.00 | 169574.58 |
| NOV 24 | WITHDRAWAL POS 1124 1003 610817 MNRD-FARGO WEST FARGO ND | -330.22 | 169244.36 |
| NOV 24 | DEPOSIT | 330.22 | 169574.58 |
| NOV 26 | DEBIT CARD DEBIT 000023888804 CASEYS GEN STORE 3354 FARGO ND 11-24-21 | -87.95 | 169486.63 |
| NOV 26 | SHARE DRAFT 39015 TRACE#: 00107605 | -1864.50 | 167622.13 |
| NOV 26 | SHARE DRAFT 39014 TRACE#: 00107610 | -3902.50 | 163719.63 |
| NOV 26 | SHARE DRAFT 38908 TRACE#: 00113305 | -9893.86 | 153825.77 |
| NOV 29 | EFT ACH Master CAPITAL ONE MOBILE PMT211126 | -20000.00 | 133825.77 |
| NOV 29 | DEPOSIT | 561.75 | 134387.52 |
| NOV 29 | DEPOSIT | 166.50 | 134554.02 |
| NOV 29 | DEPOSIT | 250.75 | 134804.77 |
| NOV 29 | DEPOSIT | 20.00 | 134824.77 |
| NOV 29 | WITHDRAWAL POS 1129 1514 819200 MNRD-MOORHEAD MOORHEAD MN | -188.34 | 134636.43 |
| NOV 29 | DEPOSIT | 400.00 | 135036.43 |
| NOV 29 | SHARE DRAFT 39010 TRACE#: 00100785 | -1823.42 | 133213.01 |
| NOV 30 | EFT ACH Master Square Inc 211130P2 211130 | 541.94 | 133754.95 |
| NOV 30 | EFT ACH Master NODAK INSURANCE EFTM DESC | -336.40 | 133418.55 |
| NOV 30 | ID THEFT COVERAGE | -5.00 | 133413.55 |
| NOV 30 | SHARE DRAFT 39009 TRACE#: 00114600 | -550.00 | 132863.55 |
| NOV 30 | SHARE DRAFT 39014 TRACE#: 00100975 | -750.88 | 132112.67 |
| NOV 30 | SHARE DRAFT 39017 TRACE#: 00111240 | -3132.06 | 128980.61 |
| NOV 30 | SHARE DRAFT 39012 TRACE#: 00114420 | -8045.00 | 120935.61 |
| NOV 30 | SHARE DRAFT 39011 TRACE#: 00109460 | -10310.24 | 110625.37 |
| ENDING BALANCE | | | **110,625.37** |

### Check Summary
*= break in check sequence*

| SD# | Date | Amount |
|-----|------|--------|
| 1111 | 11-01-21 | 7582.50 |
| 8965 * | 11-16-21 | 1006.25 |
| 37610 * | 11-12-21 | 4894.37 |
| 37771 * | 11-12-21 | 4894.37 |
| 38520 * | 11-03-21 | 4776.10 |
| 38537 * | 11-03-21 | 5607.15 |
| 38701 * | 11-02-21 | 282.60 |
| 38722 * | 11-02-21 | 2310.00 |
| 38744 * | 11-02-21 | 9893.86 |
| 38754 * | 11-04-21 | 16817.55 |
| 38782 * | 11-05-21 | 7800.00 |
| 38785 * | 11-08-21 | 28108.73 |
| 38790 * | 11-04-21 | 546.35 |
| 38794 * | 11-02-21 | 100000.00 |
| 38803 * | 11-12-21 | 36094.96 |
| 38817 * | 11-01-21 | 250.00 |
| 38819 * | 11-09-21 | 426.00 |
| 38844 * | 11-03-21 | 150000.00 |
| 38851 * | 11-02-21 | 4500.00 |
| 38852 | 11-09-21 | 381.52 |
| 38853 | 11-02-21 | 210.00 |
| 38854 | 11-05-21 | 2126.10 |

### Check Summary
*= break in check sequence*

| SD# | Date | Amount |
|-----|------|--------|
| 38855 | 11-17-21 | 2500.00 |
| 38858 * | 11-08-21 | 10451.47 |
| 38859 | 11-16-21 | 377.92 |
| 38862 * | 11-04-21 | 401.88 |
| 38863 | 11-03-21 | 343.93 |
| 38865 * | 11-08-21 | 326.88 |
| 38867 * | 11-10-21 | 227.08 |
| 38868 | 11-04-21 | 426.88 |
| 38869 | 11-04-21 | 3902.50 |
| 38870 | 11-01-21 | 541.07 |
| 38871 | 11-02-21 | 4231.39 |
| 38872 | 11-10-21 | 700.00 |
| 38873 | 11-03-21 | 3000.00 |
| 38874 | 11-09-21 | 6166.67 |
| 38875 | 11-05-21 | 5208.33 |
| 38876 | 11-01-21 | 2168.25 |
| 38877 | 11-02-21 | 2073.00 |
| 38879 * | 11-02-21 | 180.00 |
| 38880 | 11-23-21 | 92.00 |
| 38881 | 11-09-21 | 557.37 |
| 38882 | 11-04-21 | 3000.00 |
| 38883 | 11-09-21 | 4205.93 |

*- Continued -*

RRSB FCCU Subpoena 021340

**First Community Credit Union**
810 10th St SE | PO Box 280
Jamestown, ND 58401-280
*myFCCU.com*

**Account Number:** *****4695
**Statement End Date:** 11-30-21
**Page:** 6 of 8

### Check Summary
\* = break in check sequence

| SD# | Date | Amount |
|---|---|---|
| 38884 | 11-09-21 | 140.00 |
| 38885 | 11-05-21 | 142.90 |
| 38886 | 11-23-21 | 2765.88 |
| 38887 | 11-09-21 | 3374.55 |
| 38889 * | 11-09-21 | 771.88 |
| 38891 * | 11-09-21 | 5000.00 |
| 38892 | 11-10-21 | 175.00 |
| 38893 | 11-10-21 | 110.95 |
| 38894 | 11-08-21 | 334.11 |
| 38895 | 11-04-21 | 11492.30 |
| 38896 | 11-08-21 | 2581.21 |
| 38897 | 11-10-21 | 673.40 |
| 38898 | 11-09-21 | 9.12 |
| 38899 | 11-12-21 | 21860.59 |
| 38900 | 11-09-21 | 850.00 |
| 38901 | 11-09-21 | 394.38 |
| 38902 | 11-08-21 | 475.00 |
| 38903 | 11-04-21 | 747.00 |
| 38904 | 11-09-21 | 544.96 |
| 38905 | 11-09-21 | 293.41 |
| 38906 | 11-05-21 | 2127.00 |
| 38907 | 11-10-21 | 84.00 |
| 38908 | 11-26-21 | 9893.86 |
| 38909 | 11-17-21 | 8450.24 |
| 38910 | 11-09-21 | 1023.76 |
| 38911 | 11-05-21 | 72.93 |
| 38912 | 11-05-21 | 5020.16 |
| 38913 | 11-08-21 | 105.13 |
| 38914 | 11-09-21 | 17413.29 |
| 38916 * | 11-09-21 | 424.00 |
| 38917 | 11-09-21 | 612.92 |
| 38918 | 11-08-21 | 96.75 |
| 38919 | 11-08-21 | 490.35 |
| 38920 | 11-10-21 | 4108.25 |
| 38921 | 11-09-21 | 3173.14 |
| 38923 * | 11-05-21 | 2687.50 |
| 38924 | 11-05-21 | 447.00 |
| 38926 * | 11-05-21 | 785.75 |
| 38927 | 11-05-21 | 85.00 |
| 38928 | 11-10-21 | 2970.70 |
| 38930 * | 11-12-21 | 670.89 |
| 38931 | 11-09-21 | 159.75 |
| 38932 | 11-09-21 | 7500.00 |
| 38933 | 11-23-21 | 464.48 |
| 38935 * | 11-04-21 | 848.46 |
| 38936 | 11-05-21 | 871.04 |
| 38938 * | 11-05-21 | 2426.50 |
| 38939 | 11-23-21 | 1612.01 |
| 38940 | 11-04-21 | 973.23 |

### Check Summary
\* = break in check sequence

| SD# | Date | Amount |
|---|---|---|
| 38942 * | 11-05-21 | 1062.73 |
| 38943 | 11-05-21 | 2016.51 |
| 38944 | 11-02-21 | 10000.00 |
| 38945 | 11-05-21 | 172.51 |
| 38946 | 11-15-21 | 1140.21 |
| 38947 | 11-08-21 | 943.63 |
| 38948 | 11-02-21 | 967.50 |
| 38949 | 11-05-21 | 735.48 |
| 38950 | 11-05-21 | 52191.59 |
| 38951 | 11-09-21 | 19350.00 |
| 38952 | 11-10-21 | 3009.97 |
| 38953 | 11-10-21 | 20.00 |
| 38954 | 11-10-21 | 782.73 |
| 38955 | 11-05-21 | 3497.89 |
| 38956 | 11-05-21 | 32.25 |
| 38957 | 11-10-21 | 1174.16 |
| 38958 | 11-16-21 | 1680.46 |
| 38959 | 11-08-21 | 843.48 |
| 38960 | 11-22-21 | 2750.00 |
| 38961 | 11-10-21 | 4064.03 |
| 38962 | 11-09-21 | 545.00 |
| 38963 | 11-09-21 | 3559.33 |
| 38964 | 11-08-21 | 107.50 |
| 38966 * | 11-05-21 | 11420.84 |
| 38967 | 11-19-21 | 6810.13 |
| 38968 | 11-16-21 | 1581.91 |
| 38969 | 11-15-21 | 100.00 |
| 38970 | 11-16-21 | 2722.99 |
| 38971 | 11-09-21 | 17.70 |
| 38972 | 11-16-21 | 136.48 |
| 38973 | 11-12-21 | 91.27 |
| 38974 | 11-12-21 | 1423.86 |
| 38976 * | 11-15-21 | 2790.50 |
| 38977 | 11-15-21 | 52.55 |
| 38978 | 11-12-21 | 4560.33 |
| 38979 | 11-12-21 | 56.52 |
| 38980 | 11-16-21 | 11690.52 |
| 38981 | 11-12-21 | 1639.22 |
| 38982 | 11-12-21 | 1078.03 |
| 38983 | 11-23-21 | 11435.00 |
| 38984 | 11-12-21 | 1519.96 |
| 38985 | 11-23-21 | 236.25 |
| 38986 | 11-16-21 | 24285.00 |
| 38988 * | 11-18-21 | 16167.37 |
| 38989 | 11-18-21 | 351.45 |
| 38990 | 11-18-21 | 8086.52 |
| 38991 | 11-16-21 | 22977.37 |
| 38992 | 11-16-21 | 856.80 |
| 38993 | 11-17-21 | 8011.52 |

*- Continued -*

RRSB FCCU Subpoena 021341

**FCCU First Community Credit Union**
319 1st St SE | PO Box 280
Jamestown, ND 58401-280
myFCCU.com

**Account Number:** *****4695
**Statement End Date:** 11-30-21
**Page:** 7 of 8

### Check Summary
*= break in check sequence*

| SD# | Date | Amount |
|---|---|---|
| 38994 | 11-16-21 | 28500.00 |
| 38995 | 11-16-21 | 5506.05 |
| 38996 | 11-15-21 | 1708.61 |
| 38997 | 11-16-21 | 4624.65 |
| 38998 | 11-17-21 | 32880.00 |
| 39000 * | 11-16-21 | 81.29 |
| 39001 | 11-18-21 | 224.23 |
| 39002 | 11-17-21 | 48600.00 |
| 39003 | 11-16-21 | 471.41 |
| 39004 | 11-17-21 | 2521.80 |
| 39005 | 11-15-21 | 252.00 |
| 39006 | 11-15-21 | 197.71 |

### Check Summary
*= break in check sequence*

| SD# | Date | Amount |
|---|---|---|
| 39007 | 11-17-21 | 59846.50 |
| 39008 | 11-10-21 | 5871.25 |
| 39009 | 11-30-21 | 550.00 |
| 39010 | 11-16-21 | 1556.00 |
| 39010 | 11-29-21 | 1823.42 |
| 39011 | 11-16-21 | 2278.50 |
| 39011 | 11-30-21 | 10310.24 |
| 39012 | 11-30-21 | 8045.00 |
| 39014 * | 11-26-21 | 3902.50 |
| 39014 | 11-30-21 | 750.88 |
| 39015 | 11-26-21 | 1864.50 |
| 39017 * | 11-30-21 | 3132.06 |

| | TOTAL FOR THIS PERIOD | TOTAL YEAR-TO-DATE |
|---|---|---|
| TOTAL OVERDRAFT FEES | 0.00 | 27.00 |
| TOTAL OVERDRAFT FEES WAIVED | 0.00 | 0.00 |
| TOTAL RETURNED ITEM FEES | 0.00 | 0.00 |
| TOTAL RETURNED ITEM FEES WAIVED | 0.00 | 0.00 |

### Deposits, Dividends and Other Credits

| Date | Amount |
|---|---|
| 11-01-2021 | 5712.50 |
| 11-01-2021 | 554345.25 |
| 11-02-2021 | 18705.00 |
| 11-02-2021 | 775.00 |
| 11-02-2021 | 9408.00 |
| 11-03-2021 | 3978.00 |
| 11-04-2021 | 8591.98 |
| 11-04-2021 | 8224.48 |
| 11-05-2021 | 5813.00 |
| 11-08-2021 | 921.91 |
| 11-08-2021 | 11355.04 |
| 11-09-2021 | 1000.00 |

### Deposits, Dividends and Other Credits

| Date | Amount |
|---|---|
| 11-09-2021 | 424259.84 |
| 11-10-2021 | 2014.00 |
| 11-12-2021 | 1324.00 |
| 11-12-2021 | 126231.63 |
| 11-15-2021 | 500.00 |
| 11-16-2021 | 861.11 |
| 11-16-2021 | 1863.80 |
| 11-16-2021 | 500.00 |
| 11-16-2021 | 86.88 |
| 11-18-2021 | 266.00 |
| 11-19-2021 | 54.57 |
| 11-19-2021 | 499.00 |

### Deposits, Dividends and Other Credits

| Date | Amount |
|---|---|
| 11-22-2021 | 621.00 |
| 11-22-2021 | 624.50 |
| 11-22-2021 | 149.25 |
| 11-24-2021 | 330.22 |
| 11-29-2021 | 561.75 |
| 11-29-2021 | 166.50 |
| 11-29-2021 | 250.75 |
| 11-29-2021 | 20.00 |
| 11-29-2021 | 400.00 |
| 11-30-2021 | 541.94 |

| Total Dividends | 0 | 0.00 |
|---|---|---|
| **Total Deposits and Other Credits** | **34** | **1190956.90** |

### Withdrawals, Fees and Other Debits

| Date | Amount |
|---|---|
| 11-01-2021 | -15.00 |
| 11-01-2021 | -2701.61 |
| 11-01-2021 | -500.00 |
| 11-02-2021 | -956.20 |
| 11-02-2021 | -50005.00 |
| 11-02-2021 | -2696.50 |
| 11-03-2021 | -4351.00 |
| 11-04-2021 | -101.73 |
| 11-04-2021 | -91.98 |
| 11-05-2021 | -1874.63 |

### Withdrawals, Fees and Other Debits

| Date | Amount |
|---|---|
| 11-06-2021 | -75.24 |
| 11-08-2021 | -104.31 |
| 11-08-2021 | -3005.00 |
| 11-09-2021 | -154.91 |
| 11-09-2021 | -20.00 |
| 11-10-2021 | -31.37 |
| 11-12-2021 | -103.85 |
| 11-10-2021 | -20000.00 |
| 11-12-2021 | -632.54 |
| 11-12-2021 | -378.31 |

### Withdrawals, Fees and Other Debits

| Date | Amount |
|---|---|
| 11-12-2021 | -230.15 |
| 11-12-2021 | -3000.00 |
| 11-15-2021 | -94.20 |
| 11-12-2021 | -5000.00 |
| 11-16-2021 | -837.61 |
| 11-16-2021 | -149.25 |
| 11-17-2021 | -86.88 |
| 11-18-2021 | -90.00 |
| 11-17-2021 | -20000.00 |
| 11-17-2021 | -10000.00 |

*- Continued -*

RRSB FCCU Subpoena 021342

**First Community Credit Union**
310 10th St SE | PO Box 6100
Jamestown, ND 58401-280
*myFCCU.com*

**Account Number:** *****4695
**Statement End Date:** 11-30-21
**Page:** 8 of 8

| Withdrawals, Fees and Other Debits | |
|---|---|
| Date | Amount |
| 11-20-2021 | -81.08 |
| 11-19-2021 | -5000.00 |
| 11-19-2021 | -5001.00 |

| Withdrawals, Fees and Other Debits | |
|---|---|
| Date | Amount |
| 11-24-2021 | -330.22 |
| 11-26-2021 | -87.95 |
| 11-26-2021 | -20000.00 |

| Withdrawals, Fees and Other Debits | |
|---|---|
| Date | Amount |
| 11-29-2021 | -188.34 |
| 11-30-2021 | -336.40 |
| 11-30-2021 | -5.00 |

| | | |
|---|---|---|
| **Total Fees** | 2 | -20.00 |
| **Total withdrawal and Other Debits** | 37 | -158297.26 |

---

**MEMBERSHIP SAVINGS**   ACCT# **3**        **11-01-21** THRU **11-30-21**        PREVIOUS BALANCE **5.00**

ENDING BALANCE        **5.00**

### Dividend Summary

| Account Number | New Balance | Dividends YTD |
|---|---|---|
| 1 | 0.01 | 0.00 |
| 2 | 110,625.37 | 0.00 |
| 3 | 5.00 | 0.00 |
| Total Dividends YTD: **$0.00** | | |

*- End of Statement -*

RRSB FCCU Subpoena 021343

# PROMISSORY NOTE

| Principal $843,168.59 | Loan Date 12-08-2021 | Maturity 03-31-2022 | Loan No 51449 | Call / Coll | Account | Officer *** | Initials |
|---|---|---|---|---|---|---|---|

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any p
Any item above containing "****" has been omitted due to text length limitations.

**EXHIBIT**

**5-A**

Borrower: GENERATIONS ON 1ST, LLC (TIN: ▮6148)
1405 1ST AVE N
FARGO, ND 58102

Lender: Red River State Bank
300 2nd Ave West
P.O. Box 25
Halstad, MN 56548

**Principal Amount: $843,168.59**        **Interest Rate: 4.350%**        **Date of Note: December 8, 2021**

**PROMISE TO PAY.** GENERATIONS ON 1ST, LLC ("Borrower") promises to pay to Red River State Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Eight Hundred Forty-three Thousand One Hundred Sixty-eight & 59/100 Dollars ($843,168.59), together with interest on the unpaid principal balance from December 8, 2021, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 4.350% per annum, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in one principal payment of $843,168.59 plus interest on March 31, 2022. This payment due on March 31, 2022, will be for all principal and all accrued interest not yet paid. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Any accrued interest not paid when due is added to principal and thereafter will accrue interest as principal.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/365 basis; that is, by applying the ratio of the interest rate over the number of days in a year (365 for all years, including leap years), multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**RECEIPT OF PAYMENTS.** All payments must be made in U.S. dollars and must be received by Lender at:

Red River State Bank
300 2nd Ave West
P.O. Box 25
Halstad, MN 56548

All payments must be received by Lender consistent with any written payment instructions provided by Lender. If a payment is made consistent with Lender's payment instructions but received after 2:00 PM CST on a business day, Lender will credit Borrower's payment on the next business day.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Red River State Bank, PO Box 25 Halstad, MN 56548.

**LATE CHARGE.** If a payment is 11 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $7.28, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Note will continue to accrue interest at the interest rate under this Note.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf, or made by Guarantor, or any other guarantor, endorser, surety, or accommodation party, under this Note or the related documents in connection with the obtaining of the loan evidenced by this Note or any security document directly or indirectly securing repayment of this Note is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Execution; Attachment.** Any execution or attachment is levied against the Collateral, and such execution or attachment is not set aside, discharged or stayed within thirty (30) days after the same is levied.

**Change in Zoning or Public Restriction.** Any change in any zoning ordinance or regulation or any other public restriction is enacted, adopted or implemented, that limits or defines the uses which may be made of the Collateral such that the present or intended use of the Collateral, as specified in the related documents, would be in violation of such zoning ordinance or regulation or public restriction, as changed.

**Default Under Other Lien Documents.** A default occurs under any other mortgage, deed of trust or security agreement covering all or any

RRSB-GO1st-01446

**PROMISSORY NOTE**
**(Continued)**

Loan No: 51449                                                                                                                    Page 2

portion of the Collateral.

**Judgment.** Unless adequately covered by insurance in the opinion of Lender, the entry of a final judgment for the payment of money involving more than ten thousand dollars ($10,000.00) against Borrower and the failure by Borrower to discharge the same, or cause it to be discharged, or bonded off to Lender's satisfaction, within thirty (30) days from the date of the order, decree or process under which or pursuant to which such judgment was entered.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor, or any other guarantor, endorser, surety, or accommodation party of any of the indebtedness or any Guarantor, or any other guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Minnesota without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Minnesota.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Norman County, State of Minnesota.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $28.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by (A) a Mortgage executed by Generations on 1st, LLC in favor of Red River State Bank dated 03/15/2021 with legal description of Parcel # 9582, 9583, & 9580:
Parcel I:
Lot 1 of Ohtness' Subdivision of Lots 12, 13, and 14 in Block 17 of Watertown, Codington County, South Dakota, according to the recorded plat thereof.
Parcel II:
Lot 2 of Ohtness' Subdivision of Lots 12, 13 and 14 in Block 17 of Watertown, AND the North 30 feet of the East 70 feet of Lot 11 in Block 17 of Watertown (commonly referred to as being in the original Plat), Codington County, South Dakota, according to the recorded plat thereof.
Parcel III:
Lot 3 of Ohtness' Subdivision of Lots 12, 13, and 14 in Block 17 of Watertown (commonly referred to as being the Original Plat), Codington County, South Dakota, according to the recorded plat thereof.
Parcel IV:
Lot 4 of Ohtness' Subdivision of Lots 12, 13, and 14 in Block 17 of Watertown (commonly referred to as being the Original Plat), Codington County, South Dakota, according to the recorded plat thereof.
Parcel V:
Lot 11, except the North 30 Feet of the East 70 Feet thereof, in Block 17, of the plat Entitled: "Watertown" Codington County, South Dakota, according to the recorded plat thereof

AND

(B) a Mortgage executed by Craig Holdings, LLC in favor of Red River State Bank dated 10/14/2021 with legal description of: GENERATIONS ON 1ST ADDITION TO THE CITY OF WATERTOWN, CODINGTON COUNTY, SOUTH DAKOTA

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: Red River State Bank PO Box 25 Halstad, MN 56548.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. In addition, Lender shall have all the rights and remedies provided in the related documents or available at law, in equity, or otherwise. Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower shall not affect Lender's right to declare a default and to exercise its rights and remedies. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be

RRSB GO1st 01447

## PROMISSORY NOTE
### (Continued)

| Loan No: 51449 | Page 3 |
|---|---|

released from liability.  All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone.  All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made.  The obligations under this Note are joint and several.

**SECTION DISCLOSURE.**  To the extent not preempted by federal law, this loan is made under Minnesota Statutes, Section 47.59.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE.  BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

GENERATIONS ON 1ST, LLC

By: _____    Signed
                                          Dec 08, 2021
   JESSE ROBERT CRAIG, MANAGING MEMBER of     8:11 PM UTC
   GENERATIONS ON 1ST, LLC

LENDER:

RED RIVER STATE BANK

x _____    Signed
                                          Dec 08, 2021
   CHARLES AARESTAD, Vice President     3:36 PM UTC

LaserPro, Ver. 20.4.0.036  Copr. Finastra USA Corporation 1997, 2021.  All Rights Reserved.  - MN  E:\HARLAND.CFI\LPL\D20.FC  TR-5722  PR-57

RRSB GO1st 01448

# DISBURSEMENT REQUEST AND AUTHORIZATION

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $843,168.59 | 12-08-2021 | 03-31-2022 | 51449 | | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

EXHIBIT
5-B

**Borrower:** GENERATIONS ON 1ST, LLC (TIN: [redacted]6148)
1405 1ST AVE N
FARGO, ND 58102

**Lender:** Red River State Bank
300 2nd Ave West
P.O. Box 25
Halstad, MN 56548

**LOAN TYPE.** This is a Fixed Rate (4.350%) Nondisclosable Loan to a Limited Liability Company for $843,168.59 due on March 31, 2022.

**PRIMARY PURPOSE OF LOAN.** The primary purpose of this loan is for:

☐ Maintenance of Borrower's Primary Residence.

☐ Personal, Family or Household Purposes or Personal Investment.

☐ Agricultural Purposes.

☒ Business Purposes.

**SPECIFIC PURPOSE.** The specific purpose of this loan is: Multi Family Home Construction Project Draw 15.

**REAL ESTATE DOCUMENTS.** If any party to this transaction is granting a security interest in any real property to Lender and Borrower is not also a party to the real estate document or documents (the "Real Estate Documents") granting such security interest, Borrower agrees to perform and comply with the Real Estate Documents just as if Borrower has signed as a direct and original party to the Real Estate Documents. This means Borrower agrees to all the representations and warranties made in the Real Estate Documents. In addition, Borrower agrees to perform and comply strictly with all the terms, obligations and covenants to be performed by either Borrower or any Grantor or Trustor, or both, as those words are defined in the Real Estate Documents. Lender need not tell Borrower about any action or inaction Lender takes in connection with the Real Estate Documents. Borrower assumes the responsibility for being and keeping informed about the property. Borrower also waives any defenses that may arise because of any action or inaction of Lender, including without limitation any failure of Lender to realize upon the property, or any delay by Lender in realizing upon the property.

**DISBURSEMENT INSTRUCTIONS.** Borrower understands that no loan proceeds will be disbursed until all of Lender's conditions for making the loan have been satisfied. Please disburse the loan proceeds of $843,168.59 as follows:

| | |
|---|---|
| Amount paid to others on Borrower's behalf: | $843,168.59 |
| $843,168.59 to Craig Development LLC for Construction Draws and Construction Management Fees | |
| Note Principal: | $843,168.59 |

**NOTICE OF RIGHT TO DISCONTINUE ESCROW.** If Borrower's mortgage loan involves an escrow account for taxes and homeowner's insurance, Borrower may have the right in five years to discontinue the account and pay Borrower's own taxes and homeowner's insurance. IF Borrower is eligible to discontinue the escrow account, Borrower will be notified in five years.

**FINANCIAL CONDITION.** BY SIGNING THIS AUTHORIZATION, BORROWER REPRESENTS AND WARRANTS TO LENDER THAT THE INFORMATION PROVIDED ABOVE IS TRUE AND CORRECT AND THAT THERE HAS BEEN NO MATERIAL ADVERSE CHANGE IN BORROWER'S FINANCIAL CONDITION AS DISCLOSED IN BORROWER'S MOST RECENT FINANCIAL STATEMENT TO LENDER. THIS AUTHORIZATION IS DATED DECEMBER 8, 2021.

**BORROWER:**

**GENERATIONS ON 1ST, LLC**

By: ______________________ Signed Dec 08, 2021 5:12 PM UTC
JESSE ROBERT CRAIG, MANAGING MEMBER of GENERATIONS ON 1ST, LLC

LaserPro, Ver. 20.4.0.038 Copr. Finastra USA Corporation 1997, 2021. All Rights Reserved. - MN C:\HARLAND\CFI\LPL\I20.FC TR-5722 PR-37

# LOAN WIRE TRANSFER ORDER

**Desc EXHIBIT**

**5-C**

| | |
|---|---|
| Date | 12/9/2021 |
| Sender ABA # | 5199 |
| Bank Name | Red River State Bank |

☑ Customer
☐ Non-Customer -- Check with Lori DeLong

## ORIGINATOR INFORMATION

Name  Generations on 1st LLC ✓

Street Address  1405 1st Ave N ✓

City, State, Zip  Fargo, ND 58102 ✓

Account Number  51449

**Originating Loan Officer Signature**

## WIRE THROUGH

Bank Name  First Community Credit Union ✓

ABA Number  8693 ✓

Dollar Amount  $843,168.59 ✓

## BENEFICIARY INFORMATION

For Credit To  Craig Properties LLC ✓

Street Address  1405 1st Ave N ✓

City, State, Zip  Fargo, ND 58102 ✓

Account Number  46957 ✓

For Further Credit To

Account Number

☐ OFAC Verified - by UBB

---

| ☐ IN-PERSON REQUEST: | ☐ Known Customer | ☐ Identity Verified | ☐ Internal Business Purpose |
|---|---|---|---|

Verified Wire Transfer agreement on file:  Yes / No    Initial: _____

**CUSTOMER SIGNATURE**  _____

---

☒ NOT IN- PERSON REQUEST:
Wire Instructions on File
☐ Yes    ☐ NO  -- Written instructions from customer attached
Instructions received by:
☒ Telephone Initial: AM
☐ Email Request (attached) Initial: _____
☐ Fax request (attached) Initial _____
☐ Mail request (attached) Initial _____

If not loan source funds, wire transfer agreement on file?  YES/NO

Call Back Verfication details:
Date: 12-9-21    Time: 8:48 AM
Who performed callback: AM M
Customer/Authorized Rep spoke with: Jesse Craig
    ☒ Identity verified    ☒ Authority verified

Phone Number called to verify: 701-371-9887

---

| | | | | SOURCE OF FUNDS |
|---|---|---|---|---|
| Wire Transfer Amount | US $ | 843,168.59 ✓ | **EBA OK?** | ☐ Cash |
| | | | | ☐ Check |
| Wire Transfer Fee | $ | 0.00 | _____ Initials | ☐ Deposit Acct |
| | | | | ☑ Loan |
| **UBB DESK SIGNATURE** | | | | ☐ General Ledger |

**WIRE APPROVAL OFFICER**    CV

(Attach any supporting documents on reverse side.)  RRSB GO1st 04848

Revised: 12/9/2021

## Outgoing Domestic

Account Number: 1534

Transaction Date: 12/B2021

$CV$

Fusiness - unction {63}00CRTy          TpSe/$ubTpSe {61510C1000
Amount {62000C          , 943.1}9I5B          $dg$
daiWh itv Rasv          ☐
yeceiker Fan7 {63400C
AFA                    9}B3          Fan7 Name          - irst Rommunitp RU

Originating Fan7 {65100C

IWRoW          DDA Account Number
IWentifier          1534
Name          yeWyiker $tate Fan7 HalstaW
AWWess 1          300 2nWAke h est
AWWess 2          dO Fox 25
AWWess 3          HalstaWMN 5}549{0025

Originator {65000C

IWRoW          DDA Account Number
IWentifier          51BB
Name          GENEyATION$ ON 1$T LLR
AWWess 1          1405 1$T AVE N
AWWess 2          - AyGO. ND 59102
AWWess 3

Feneficiarp {64200C

IWRoW          DDA Account Number
IWentifier
Name          Ry AIG dy OdEy TIE$ LLR
AWWess 1          1405 1$T AVE N
AWWess 2          - AyGO. ND 59102
AWWess 3

- ile Attacvments  No Attacvments

Transaction DescriStion GENEyATION$ ON 1$T LLR
Notes

**No OFAC Violation**

RreateWFp          DGustaf82
Date RreateW          12/B2021 9:59:10 AM
                    Awaiting Verification

- irst VieweWFp  DGustaf82
Date - irst VieweW12/B2021 9:59:1} AM
Last VieweWFp  DGustaf82
Date Last VieweW12/B2021 9:59:1} AM

RRSB GO1st 04849

**FCCU First Community Credit Union**
310 10th St SE | PO Box 2180
Jamestown, ND 58401-2180
myFCCU.com

| | |
|---|---|
| **Account Number:** | *****4695 |
| **Statement End Date:** | 12-31-21 |
| **Page:** | 1 of 8 |
| **MC:** | P |

ADDRESS SERVICE REQUESTED

Our auditors, Brady Martz & Associates, are performing an audit of the Credit Union. Please review your share and loan balances. If you feel there are discrepancies, contact: Brady, Martz & Associates at PO Box 848, Minot, ND 58702 or 701-852-0196.

CRAIG PROPERTIES LLC
1405 1ST AVE N
FARGO, ND 58102

## Account Summary

| Account | Description | Beginning Balance | Ending Balance | Account | Description | Beginning Balance | Ending Balance |
|---|---|---|---|---|---|---|---|
| 1 | PRIME SHARES | 0.01 | 0.01 | 2 | BUSINESS REWARDS | 110,625.37 | 3,290.03 |
| 3 | MEMBERSHIP SAVINGS | 5.00 | 5.00 | | | | |

## Account Detail

**PRIME SHARES**  ACCT# 1        **12-01-21 THRU 12-31-21**                    PREVIOUS BALANCE **0.01**

ENDING BALANCE                                                                          **0.01**

**BUSINESS REWARDS**  ACCT# 2    **12-01-21 THRU 12-31-21**          PREVIOUS BALANCE **110,625.37**

| Date | Transaction Description | Amount | Balance |
|---|---|---|---|
| DEC 01 | DEBIT CARD DEBIT  000006916539 CASEYS GEN STORE 3354 FARGO ND 11-29-21 | -77.36 | 110548.01 |
| DEC 01 | SERVICE CHARGE   CRAIG PROPERTIES LLC. TOTAL NON COMPENSABLE CHARGE | -15.00 | 110533.01 |
| DEC 01 | EFT ACH Master STARCAPITAL Monthlypmt211130 | -2701.61 | 107831.40 |
| DEC 01 | EFT FOREMOST  FOREMOST EPM PYMT 120121 | -156.28 | 107675.12 |
| DEC 01 | EFT ACH Master  CAPITAL ONE MOBILE PMT211130 | -15000.00 | 92675.12 |
| DEC 01 | EFT COMMONWEALTH CU  APPLECARD GSBANKPAYMENT 113021 | -3052.97 | 89622.15 |
| DEC 01 | DEPOSIT | 11384.08 | 101006.23 |
| DEC 01 | SHARE DRAFT 38915 TRACE#: 00111970 | -100.00 | 100906.23 |
| DEC 01 | SHARE DRAFT 39013 TRACE#: 00111975 | -1630.00 | 99276.23 |
| DEC 01 | SHARE DRAFT 37802 TRACE#: 00115705 | -2455.15 | 96821.08 |
| DEC 01 | SHARE DRAFT 39016 TRACE#: 00103770 | -4500.00 | 92321.08 |
| DEC 01 | SHARE DRAFT 1111 TRACE#: 71500110 | -10811.00 | 81510.08 |
| DEC 01 | SHARE DRAFT 38975 TRACE#: 00107965 | -33933.53 | 47576.55 |
| DEC 02 | EFT ACH Master  CRAIG PROPERTIESRENT 211202 | 22325.00 | 69901.55 |
| DEC 02 | EFT ACH Master  BCBSNDPREMIUM EDI PYMNTS | -956.20 | 68945.35 |
| DEC 02 | DEPOSIT | 7467.00 | 76412.35 |
| DEC 02 | SHARE DRAFT 39054 TRACE#: 00308955 | -144.00 | 76268.35 |
| DEC 02 | SHARE DRAFT 39059 TRACE#: 00306935 | -338.25 | 75930.10 |
| DEC 02 | SHARE DRAFT 1111 TRACE#: 71000085 | -535.00 | 75395.10 |
| DEC 02 | SHARE DRAFT 39023 TRACE#: 00313270 | -661.50 | 74733.60 |
| DEC 02 | SHARE DRAFT 39055 TRACE#: 71800005 | -2339.75 | 72393.85 |
| DEC 02 | SHARE DRAFT 39020 TRACE#: 00307705 | -4231.39 | 68162.46 |
| DEC 03 | WITHDRAWAL   TRANSFER FROM CP TO SYDNEY | -2000.00 | 66162.46 |
| DEC 03 | DEPOSIT | 3245.00 | 69407.46 |
| DEC 03 | SHARE DRAFT 39012 TRACE#: 00103920 | -156.28 | 69251.18 |
| DEC 03 | SHARE DRAFT 39073 TRACE#: 00103505 | -432.00 | 68819.18 |
| DEC 03 | SHARE DRAFT 38922 TRACE#: 00108750 | -1200.00 | 67619.18 |
| DEC 03 | SHARE DRAFT 39019 TRACE#: 00103390 | -12504.88 | 55114.30 |
| DEC 05 | DEBIT CARD DEBIT  000019813643 CASEYS GEN STORE 3354 FARGO ND 12-03-21 | -86.03 | 55028.27 |
| DEC 06 | EFT ACH Master  Square Inc 211206P2 211206 | 759.79 | 55788.06 |
| DEC 06 | SHARE DRAFT 39064 TRACE#: 00103360 | -54.00 | 55734.06 |

RRSB FCCU Subpoena 021372

**First Community** Credit Union
310 10th St SE | PO Box 280
Jamestown, ND 58401-280
myFCCU.com

**Account Number:** *****4695
**Statement End Date:** 12-31-21
**Page:** 2 of 8

| Date | Transaction Description | Amount | Balance |
|---|---|---|---|
| DEC 06 | SHARE DRAFT 39062 TRACE#: 00103365 | -850.00 | 54884.06 |
| DEC 06 | DEPOSIT | 20340.00 | 75224.06 |
| DEC 06 | SHARE DRAFT 39108 TRACE#: 00110950 | -2000.00 | 73224.06 |
| DEC 06 | SHARE DRAFT 39101 TRACE#: 00106385 | -4743.31 | 68480.75 |
| DEC 07 | EFT ACH Master Square Inc 211207P2 211207 | 557.14 | 69037.89 |
| DEC 07 | EFT ACH Master CAPITAL ONE MOBILE PMT211205 | -5000.00 | 64037.89 |
| DEC 07 | WITHDRAWAL POS 1207 1104 161477 MNRD-FARGO WEST FARGO ND | -200.98 | 63836.91 |
| DEC 07 | DEPOSIT | 3528.14 | 67365.05 |
| DEC 07 | DEPOSIT | 816.00 | 68181.05 |
| DEC 07 | SHARE DRAFT 1111 TRACE#: 71500010 | -81.00 | 68100.05 |
| DEC 07 | SHARE DRAFT 39013 TRACE#: 00101560 | -142.50 | 67957.55 |
| DEC 07 | SHARE DRAFT 39018 TRACE#: 00118020 | -476.88 | 67480.67 |
| DEC 07 | SHARE DRAFT 39076 TRACE#: 00117785 | -662.50 | 66818.17 |
| DEC 07 | SHARE DRAFT 39089 TRACE#: 00113630 | -785.75 | 66032.42 |
| DEC 07 | SHARE DRAFT 39100 TRACE#: 00113640 | -1062.73 | 64969.69 |
| DEC 07 | SHARE DRAFT 39099 TRACE#: 00113645 | -1078.03 | 63891.66 |
| DEC 07 | SHARE DRAFT 39098 TRACE#: 00113625 | -1519.96 | 62371.70 |
| DEC 07 | SHARE DRAFT 39096 TRACE#: 00113635 | -2426.50 | 59945.20 |
| DEC 08 | EFT ACH Master Square Inc 211208P2 211208 | 2069.53 | 62014.73 |
| DEC 08 | SHARE DRAFT 39022 TRACE#: 00115450 | -3000.00 | 59014.73 |
| DEC 08 | SHARE DRAFT 39079 TRACE#: 00115605 | -5208.33 | 53806.40 |
| DEC 09 | DEBIT CARD DEBIT 000006674397 CASEYS GEN STORE 3354 FARGO ND 12-07-21 | -94.26 | 53712.14 |
| DEC 09 | EFT GRINNELL MUTUAL Grinnell Mutual PREM PYMT 120921 | -154.91 | 53557.23 |
| DEC 09 | DEPOSIT Incoming Wire Transfer-269685763 | 843168.59 | 896725.82 |
| DEC 09 | WITHDRAWAL Wire Transfer Fee-269685765 | -20.00 | 896705.82 |
| DEC 09 | DEPOSIT | 775.00 | 897480.82 |
| DEC 09 | DEPOSIT | 1000.00 | 898480.82 |
| DEC 09 | DEPOSIT | 1396.00 | 899876.82 |
| DEC 09 | WITHDRAWAL | -5.00 | 899871.82 |
| DEC 09 | GENERAL LEDGER PASS THROUGH FOR CC#000781184 CORRECTION TO CC WAS MENT TO BE WITHDRAWL NOT CASH CH | -3000.00 | 896871.82 |
| DEC 09 | SHARE DRAFT 39046 TRACE#: 00107155 | -90.00 | 896781.82 |
| DEC 09 | SHARE DRAFT 39038 TRACE#: 00107995 | -100.26 | 896681.56 |
| DEC 09 | SHARE DRAFT 39115 TRACE#: 00101840 | -568.75 | 896112.81 |
| DEC 09 | SHARE DRAFT 39141 TRACE#: 00103375 | -750.00 | 895362.81 |
| DEC 09 | SHARE DRAFT 39102 TRACE#: 00103430 | -829.56 | 894533.25 |
| DEC 09 | SHARE DRAFT 39153 TRACE#: 00103365 | -1148.70 | 893384.55 |
| DEC 09 | SHARE DRAFT 38999 TRACE#: 00107140 | -1231.63 | 892152.92 |
| DEC 09 | SHARE DRAFT 39075 TRACE#: 00109075 | -6166.67 | 885986.25 |
| DEC 09 | WITHDRAWAL POS 1209 1813 258150 MNRD-MOORHEAD MOORHEAD MN | -107.35 | 885878.90 |
| DEC 10 | EFT ACH Master Square Inc 211210P2 211210 | 1197.76 | 887076.66 |
| DEC 10 | EFT ACH Master CAPITAL ONE MOBILE PMT211209 | -20000.00 | 867076.66 |
| DEC 10 | WITHDRAWAL POS 1210 1030 285080 LOWE.S #1650 FARGO ND | -96.71 | 866979.95 |
| DEC 10 | DEPOSIT POS 1210 1040 285345 MNRD-FARGO WEST FARGO ND | 128.99 | 867108.94 |
| DEC 10 | WITHDRAWAL POS 1210 1223 289561 MAC.S FARGO FARGO ND | -70.42 | 867038.52 |
| DEC 10 | SHARE DRAFT 39106 TRACE#: 00109490 | -49.54 | 866988.98 |
| DEC 10 | SHARE DRAFT 39042 TRACE#: 00113485 | -87.69 | 866901.29 |
| DEC 10 | SHARE DRAFT 39050 TRACE#: 00111085 | -306.47 | 866594.82 |
| DEC 10 | SHARE DRAFT 39107 TRACE#: 00109080 | -307.10 | 866287.72 |
| DEC 10 | SHARE DRAFT 39060 TRACE#: 00112020 | -669.76 | 865617.96 |
| DEC 10 | SHARE DRAFT 39052 TRACE#: 00110390 | -725.93 | 864892.03 |
| DEC 10 | SHARE DRAFT 39058 TRACE#: 00112015 | -799.93 | 864092.10 |
| DEC 10 | SHARE DRAFT 1111 TRACE#: 51700020 | -833.46 | 863258.64 |
| DEC 10 | SHARE DRAFT 1111 TRACE#: 51700015 | -973.23 | 862285.41 |
| DEC 10 | SHARE DRAFT 39067 TRACE#: 00113980 | -1023.76 | 861261.65 |
| DEC 10 | SHARE DRAFT 39111 TRACE#: 00113870 | -2000.00 | 859261.65 |
| DEC 10 | SHARE DRAFT 39035 TRACE#: 00107645 | -2581.21 | 856680.44 |
| DEC 10 | SHARE DRAFT 39085 TRACE#: 00114125 | -3173.14 | 853507.30 |
| DEC 10 | SHARE DRAFT 39068 TRACE#: 00113985 | -3374.55 | 850132.75 |
| DEC 10 | SHARE DRAFT 39080 TRACE#: 00104370 | -3958.46 | 846174.29 |

*- Continued -*

**FCCU First Community Credit Union**
113-14th St SE | PO Box 280
Jamestown, ND 58401-280
myFCCU.com

**Account Number:** *****4695
**Statement End Date:** 12-31-21
**Page:** 3 of 8

| Date | Transaction Description | Amount | Balance |
|---|---|---|---|
| DEC 10 | SHARE DRAFT 39033 TRACE#: 00109720 | -5000.00 | 841174.29 |
| DEC 10 | SHARE DRAFT 39158 TRACE#: 00113875 | -5871.25 | 835303.04 |
| DEC 10 | SHARE DRAFT 39066 TRACE#: 00113990 | -7500.00 | 827803.04 |
| DEC 10 | SHARE DRAFT 1111 TRACE#: 51700010 | -11492.30 | 816310.74 |
| DEC 10 | SHARE DRAFT 39016 TRACE#: 00114605 | -150000.00 | 666310.74 |
| DEC 11 | TRANSFER 2  99 BANK FORWARD J STREET PROPERTIES | 200000.00 | 866310.74 |
| DEC 12 | DEBIT CARD DEBIT  000023314785 SQUARESPACE INC. NEW YORK NY 12-11-21 | -20.00 | 866290.74 |
| DEC 12 | DEBIT CARD DEBIT  000015440206 CASEYS GEN STORE 3354 FARGO ND 12-10-21 | -93.67 | 866197.07 |
| DEC 13 | EFT ACH Master  State Auto - InbVENDOR PMT211210 | -632.54 | 865564.53 |
| DEC 13 | EFT ACH Master  State Auto - InbVENDOR PMT211210 | -378.30 | 865186.23 |
| DEC 13 | EFT ACH Master  State Auto - InbVENDOR PMT211210 | -355.15 | 864831.08 |
| DEC 13 | DEPOSIT | 2403.00 | 867234.08 |
| DEC 13 | DEPOSIT | 725.00 | 867959.08 |
| DEC 13 | WITHDRAWAL-CASH | -200.00 | 867759.08 |
| DEC 13 | SHARE DRAFT 39029 TRACE#: 00110570 | -80.75 | 867678.33 |
| DEC 13 | SHARE DRAFT 39031 TRACE#: 00104605 | -110.95 | 867567.38 |
| DEC 13 | SHARE DRAFT 39045 TRACE#: 00100410 | -135.00 | 867432.38 |
| DEC 13 | SHARE DRAFT 39154 TRACE#: 00104685 | -751.00 | 866681.38 |
| DEC 13 | SHARE DRAFT 39155 TRACE#: 00104675 | -1003.61 | 865677.77 |
| DEC 13 | SHARE DRAFT 39044 TRACE#: 00110190 | -1034.86 | 864642.91 |
| DEC 13 | SHARE DRAFT 39114 TRACE#: 00106620 | -1639.22 | 863003.69 |
| DEC 13 | SHARE DRAFT 39116 TRACE#: 00104545 | -3497.89 | 859505.80 |
| DEC 13 | SHARE DRAFT 39070 TRACE#: 00104680 | -4108.25 | 855397.55 |
| DEC 13 | SHARE DRAFT 39103 TRACE#: 00104550 | -22953.62 | 832443.93 |
| DEC 14 | EFT ACH Master  State Auto - InbVENDOR PMT211213 | -837.61 | 831606.32 |
| DEC 14 | SHARE DRAFT 39091 TRACE#: 00101845 | -5.66 | 831600.66 |
| DEC 14 | SHARE DRAFT 39119 TRACE#: 00113750 | -140.00 | 831460.66 |
| DEC 14 | SHARE DRAFT 39043 TRACE#: 00103630 | -144.00 | 831316.66 |
| DEC 14 | SHARE DRAFT 39105 TRACE#: 00102155 | -225.00 | 831091.66 |
| DEC 14 | SHARE DRAFT 39040 TRACE#: 00108850 | -394.38 | 830697.28 |
| DEC 14 | SHARE DRAFT 39049 TRACE#: 00121180 | -560.46 | 830136.82 |
| DEC 14 | SHARE DRAFT 39041 TRACE#: 00101275 | -600.00 | 829536.82 |
| DEC 14 | SHARE DRAFT 39140 TRACE#: 00115685 | -612.72 | 828924.10 |
| DEC 14 | SHARE DRAFT 39030 TRACE#: 00101980 | -767.81 | 828156.29 |
| DEC 14 | SHARE DRAFT 39117 TRACE#: 00104965 | -843.48 | 827312.81 |
| DEC 14 | SHARE DRAFT 39074 TRACE#: 00113975 | -850.00 | 826462.81 |
| DEC 14 | SHARE DRAFT 39053 TRACE#: 00103050 | -1000.00 | 825462.81 |
| DEC 14 | SHARE DRAFT 39118 TRACE#: 00111590 | -1092.00 | 824370.81 |
| DEC 14 | SHARE DRAFT 39109 TRACE#: 00124005 | -1423.86 | 822946.95 |
| DEC 14 | SHARE DRAFT 39129 TRACE#: 00122220 | -1432.16 | 821514.79 |
| DEC 14 | SHARE DRAFT 39143 TRACE#: 00200565 | -1781.00 | 819733.79 |
| DEC 14 | SHARE DRAFT 39061 TRACE#: 00122005 | -1913.11 | 817820.68 |
| DEC 14 | SHARE DRAFT 39090 TRACE#: 00120335 | -2970.70 | 814849.98 |
| DEC 14 | SHARE DRAFT 39094 TRACE#: 00114955 | -3886.35 | 810963.63 |
| DEC 14 | SHARE DRAFT 39134 TRACE#: 00102215 | -4465.55 | 806498.08 |
| DEC 14 | SHARE DRAFT 39110 TRACE#: 00119140 | -5000.00 | 801498.08 |
| DEC 14 | SHARE DRAFT 39167 TRACE#: 00113755 | -5371.60 | 796126.48 |
| DEC 14 | SHARE DRAFT 39160 TRACE#: 00120330 | -6000.00 | 790126.48 |
| DEC 14 | SHARE DRAFT 39048 TRACE#: 00123500 | -6143.50 | 783982.98 |
| DEC 14 | SHARE DRAFT 39125 TRACE#: 00125240 | -8223.00 | 775759.98 |
| DEC 14 | SHARE DRAFT 39082 TRACE#: 00114960 | -11690.52 | 764069.46 |
| DEC 14 | SHARE DRAFT 39135 TRACE#: 00124795 | -13850.00 | 750219.46 |
| DEC 14 | SHARE DRAFT 39132 TRACE#: 00125200 | -32171.50 | 718047.96 |
| DEC 15 | DEBIT CARD DEBIT  000023997788 HOLIDAY STATIONS 0124 FARGO ND 12-14-21 | -38.62 | 718009.34 |
| DEC 15 | EFT ACH Master  IRS TREAS 310 CHILDCTC121521 | 500.00 | 718509.34 |
| DEC 15 | SHARE DRAFT 39028 TRACE#: 00110830 | -30.00 | 718479.34 |
| DEC 15 | SHARE DRAFT 39137 TRACE#: 00100590 | -54.80 | 718424.54 |
| DEC 15 | SHARE DRAFT 39034 TRACE#: 00110230 | -116.00 | 718308.54 |
| DEC 15 | SHARE DRAFT 39150 TRACE#: 00107455 | -141.63 | 718166.91 |
| DEC 15 | SHARE DRAFT 39157 TRACE#: 00104255 | -183.18 | 717983.73 |

*- Continued -*

RRSB FCCU Subpoena 021374

**First Community** Credit Union
319 19th St SE | PO Box 6160
Jamestown, ND 58401-280
*myFCCU.com*

**Account Number:** *****4695
**Statement End Date:** 12-31-21
**Page:** 4 of 8

| Date | Transaction Description | Amount | Balance |
|---|---|---|---|
| DEC 15 | SHARE DRAFT 39072 TRACE#: 00101840 | -460.00 | 717523.73 |
| DEC 15 | SHARE DRAFT 39021 TRACE#: 00104920 | -1039.78 | 716483.95 |
| DEC 15 | SHARE DRAFT 39142 TRACE#: 00104530 | -1735.00 | 714748.95 |
| DEC 15 | SHARE DRAFT 39032 TRACE#: 00112230 | -1964.08 | 712784.87 |
| DEC 15 | SHARE DRAFT 39178 TRACE#: 71800030 | -2180.50 | 710604.37 |
| DEC 15 | SHARE DRAFT 39138 TRACE#: 00112315 | -2687.50 | 707916.87 |
| DEC 15 | SHARE DRAFT 39024 TRACE#: 00101315 | -3766.96 | 704149.91 |
| DEC 15 | SHARE DRAFT 39159 TRACE#: 00104400 | -4405.20 | 699744.71 |
| DEC 15 | SHARE DRAFT 39123 TRACE#: 00110400 | -4977.00 | 694767.71 |
| DEC 15 | SHARE DRAFT 39145 TRACE#: 00110930 | -6600.00 | 688167.71 |
| DEC 15 | SHARE DRAFT 39078 TRACE#: 00113725 | -8450.24 | 679717.47 |
| DEC 15 | SHARE DRAFT 39081 TRACE#: 00110890 | -11226.28 | 668491.19 |
| DEC 15 | SHARE DRAFT 39130 TRACE#: 00110840 | -28500.00 | 639991.19 |
| DEC 15 | SHARE DRAFT 39131 TRACE#: 00116625 | -89000.00 | 550991.19 |
| DEC 15 | SHARE DRAFT 39128 TRACE#: 00110835 | -156725.40 | 394265.79 |
| DEC 16 | SHARE DRAFT 39104 TRACE#: 00112105 | -92.00 | 394173.79 |
| DEC 16 | SHARE DRAFT 39057 TRACE#: 00104555 | -887.48 | 393286.31 |
| DEC 16 | SHARE DRAFT 39180 TRACE#: 00107050 | -1588.00 | 391698.31 |
| DEC 16 | SHARE DRAFT 39051 TRACE#: 00104560 | -1660.94 | 390037.37 |
| DEC 16 | SHARE DRAFT 39026 TRACE#: 00109600 | -3100.51 | 386936.86 |
| DEC 16 | SHARE DRAFT 39086 TRACE#: 00110225 | -3350.00 | 383586.86 |
| DEC 16 | SHARE DRAFT 39017 TRACE#: 00103775 | -13587.54 | 369999.32 |
| DEC 16 | SHARE DRAFT 39171 TRACE#: 00113505 | -23160.00 | 346839.32 |
| DEC 16 | SHARE DRAFT 39122 TRACE#: 00108770 | -58995.45 | 287843.87 |
| DEC 17 | DEPOSIT  CHK#1067 MEADOWLARK CAP UNION STATE BANK | 37389.09 | 325232.96 |
| DEC 17 | WITHDRAWAL  TRANSFER FROM CP TO SYDNEY | -500.00 | 324732.96 |
| DEC 17 | DEPOSIT | 1301.35 | 326034.31 |
| DEC 17 | WITHDRAWAL  POS 1217 1337 598326 LOWE.S #1650 FARGO ND | -321.43 | 325712.88 |
| DEC 17 | SHARE DRAFT 39175 TRACE#: 00107875 | -56.52 | 325656.36 |
| DEC 17 | SHARE DRAFT 39121 TRACE#: 00107990 | -136.48 | 325519.88 |
| DEC 17 | SHARE DRAFT 39181 TRACE#: 00102735 | -559.50 | 324960.38 |
| DEC 17 | SHARE DRAFT 39169 TRACE#: 00102580 | -1823.42 | 323136.96 |
| DEC 17 | SHARE DRAFT 39133 TRACE#: 00108760 | -4005.83 | 319131.13 |
| DEC 17 | SHARE DRAFT 39124 TRACE#: 00108355 | -28921.03 | 290210.10 |
| DEC 19 | DEBIT CARD DEBIT  000019963973 CASEYS GEN STORE 3354 FARGO ND 12-17-21 | -84.90 | 290125.20 |
| DEC 20 | EFT ACH Master  Square Inc 211220P2 211220 | 719.26 | 290844.46 |
| DEC 20 | SHARE DRAFT 39027 TRACE#: 00111100 | -60.00 | 290784.46 |
| DEC 20 | DEPOSIT  BUSINESS DEPOSIT | 40000.00 | 330784.46 |
| DEC 20 | SHARE DRAFT 39126 TRACE#: 00111965 | -366.36 | 330418.10 |
| DEC 20 | SHARE DRAFT 39097 TRACE#: 00104180 | -464.48 | 329953.62 |
| DEC 20 | SHARE DRAFT 39084 TRACE#: 00104175 | -1612.01 | 328341.61 |
| DEC 20 | SHARE DRAFT 39095 TRACE#: 00104170 | -2765.88 | 325575.73 |
| DEC 20 | SHARE DRAFT 39147 TRACE#: 00112910 | -3600.00 | 321975.73 |
| DEC 20 | SHARE DRAFT 38987 TRACE#: 00104045 | -27763.32 | 294212.41 |
| DEC 20 | DEBIT CARD DEBIT  000012237187 MARATHON PETRO265439 PELICAN RAPIDMN 12-19-21 | -88.79 | 294123.62 |
| DEC 21 | EFT ACH Master  Square Inc 211221P2 211221 | 506.47 | 294630.09 |
| DEC 21 | WITHDRAWAL  POS 1221 1610 779606 CASEYS GE 1901 FARGO ND | -75.00 | 294555.09 |
| DEC 21 | SHARE DRAFT 39127 TRACE#: 00101785 | -6430.50 | 288124.59 |
| DEC 21 | SHARE DRAFT 39148 TRACE#: 00112105 | -11051.00 | 277073.59 |
| DEC 21 | SHARE DRAFT 39182 TRACE#: 00120510 | -37389.09 | 239684.50 |
| DEC 21 | SHARE DRAFT 39164 TRACE#: 00114215 | -38859.72 | 200824.78 |
| DEC 21 | SHARE DRAFT 39161 TRACE#: 00112885 | -138609.77 | 62215.01 |
| DEC 22 | DEPOSIT  LAUNDRY COIN 12/22/2021 815 | 792.25 | 63007.26 |
| DEC 22 | DEPOSIT | 700.00 | 63707.26 |
| DEC 22 | SHARE DRAFT 39156 TRACE#: 00112305 | -355.00 | 63352.26 |
| DEC 22 | SHARE DRAFT 39087 TRACE#: 00106635 | -2127.00 | 61225.26 |
| DEC 22 | SHARE DRAFT 39162 TRACE#: 00106640 | -30000.00 | 31225.26 |
| DEC 23 | TRANSFER 2 | 106395.23 | 137620.49 |
| DEC 23 | SHARE DRAFT 39179 TRACE#: 00110255 | -260.00 | 137360.49 |
| DEC 23 | SHARE DRAFT 39173 TRACE#: 00107070 | -492.00 | 136868.49 |

*- Continued -*

RRSB FCCU Subpoena 021375

Case 25-30002   Doc 166-1   Filed 09/16/25   Entered 09/16/25 16:19:25   Desc
Exhibit 4   Page 65 of 108

**FCCU First Community Credit Union**
310 10th St SE | PO Box 280
Jamestown, ND 58401-280
myFCCU.com

**Account Number:** *****4695
**Statement End Date:** 12-31-21
**Page:** 5 of 8

| Date | Transaction Description | Amount | Balance |
|---|---|---|---|
| DEC 24 | EFT ACH Master  Square Inc 211224P2 211224 | 607.80 | 137476.29 |
| DEC 24 | SHARE DRAFT 39047 TRACE#: 00109385 | -166.25 | 137310.04 |
| DEC 24 | SHARE DRAFT 39120 TRACE#: 00109380 | -172.50 | 137137.54 |
| DEC 24 | SHARE DRAFT 39163 TRACE#: 00110485 | -250.00 | 136887.54 |
| DEC 24 | SHARE DRAFT 39056 TRACE#: 00107135 | -500.00 | 136387.54 |
| DEC 24 | SHARE DRAFT 39112 TRACE#: 00114225 | -1250.00 | 135137.54 |
| DEC 24 | SHARE DRAFT 39036 TRACE#: 00107140 | -1500.00 | 133637.54 |
| DEC 24 | SHARE DRAFT 39146 TRACE#: 00114985 | -4331.00 | 129306.54 |
| DEC 24 | SHARE DRAFT 39186 TRACE#: 00105810 | -9393.62 | 119912.92 |
| DEC 24 | SHARE DRAFT 39077 TRACE#: 00114230 | -9893.86 | 110019.06 |
| DEC 24 | SHARE DRAFT 39149 TRACE#: 00103380 | -51100.00 | 58919.06 |
| DEC 26 | DEBIT CARD DEBIT  000012510553 SQUARESPACE INC. NEW YORK NY 12-26-21 | -216.00 | 58703.06 |
| DEC 27 | EFT COMMONWEALTH CU  APPLECARD GSBANKPAYMENT 122621 | -726.13 | 57976.93 |
| DEC 27 | EFT ACH Master  CAPITAL ONE MOBILE PMT211224 | -15000.00 | 42976.93 |
| DEC 27 | SHARE DRAFT 39015 TRACE#: 70201525 | -2000.00 | 40976.93 |
| DEC 27 | WITHDRAWAL  POS 1227 1837 002070 CASEYS GE 5680 FARGO ND | -70.73 | 40906.20 |
| DEC 28 | DEBIT CARD DEBIT  000015643286 CASEYS GEN STORE 3354 FARGO ND 12-26-21 | -91.51 | 40814.69 |
| DEC 28 | SHARE DRAFT 39185 TRACE#: 00100225 | -1372.50 | 39442.19 |
| DEC 28 | SHARE DRAFT 39184 TRACE#: 00100975 | -1864.50 | 37577.69 |
| DEC 28 | SHARE DRAFT 39170 TRACE#: 00110425 | -4614.22 | 32963.47 |
| DEC 29 | EFT ACH Master  CAPITAL ONE MOBILE PMT211228 | -10000.00 | 22963.47 |
| DEC 29 | TRANSFER 2  TRANSFER FROM CP TO SYDNEY | -1000.00 | 21963.47 |
| DEC 29 | WITHDRAWAL  TRANSFER FROM CP TO SYNDEY | -675.00 | 21288.47 |
| DEC 29 | SHARE DRAFT 39188 TRACE#: 00103520 | -1000.00 | 20288.47 |
| DEC 29 | SHARE DRAFT 39152 TRACE#: 00106500 | -12408.73 | 7879.74 |
| DEC 30 | DEPOSIT | 750.00 | 8629.74 |
| DEC 31 | SHARE DRAFT 39253 TRACE#: 85300045 | -525.00 | 8104.74 |
| DEC 31 | DEPOSIT | 5467.00 | 13571.74 |
| DEC 31 | ID THEFT COVERAGE | -5.00 | 13566.74 |
| DEC 31 | SHARE DRAFT 39190 TRACE#: 00103700 | -232.00 | 13334.74 |
| DEC 31 | SHARE DRAFT 39172 TRACE#: 00112015 | -4188.46 | 9146.28 |
| DEC 31 | SHARE DRAFT 1111 TRACE#: 81600005 | -5856.25 | 3290.03 |
| DEC 31 | SHARE DRAFT 1111 TRACE#: 52000155 |  | 3290.03 |
| ENDING BALANCE | | | **3,290.03** |

### Check Summary
* = break in check sequence

| SD# | Date | Amount |
|---|---|---|
| 1111 | 12-01-21 | 10811.00 |
| 1111 | 12-02-21 | 535.00 |
| 1111 | 12-07-21 | 81.00 |
| 1111 | 12-10-21 | 833.46 |
| 1111 | 12-10-21 | 973.23 |
| 1111 | 12-10-21 | 11492.30 |
| 1111 | 12-31-21 | 5856.25 |
| 37802 * | 12-01-21 | 2455.15 |
| 38915 * | 12-01-21 | 100.00 |
| 38922 * | 12-03-21 | 1200.00 |
| 38975 * | 12-01-21 | 33933.53 |
| 38987 * | 12-20-21 | 27763.32 |
| 38999 * | 12-09-21 | 1231.63 |
| 39012 * | 12-03-21 | 156.28 |
| 39013 | 12-01-21 | 1630.00 |
| 39013 | 12-07-21 | 142.50 |
| 39015 * | 12-27-21 | 2000.00 |
| 39016 | 12-01-21 | 4500.00 |

### Check Summary
* = break in check sequence

| SD# | Date | Amount |
|---|---|---|
| 39016 | 12-10-21 | 150000.00 |
| 39017 | 12-16-21 | 13587.54 |
| 39018 | 12-07-21 | 476.88 |
| 39019 | 12-03-21 | 12504.88 |
| 39020 | 12-02-21 | 4231.39 |
| 39021 | 12-15-21 | 1039.78 |
| 39022 | 12-08-21 | 3000.00 |
| 39023 | 12-02-21 | 661.50 |
| 39024 | 12-15-21 | 3766.96 |
| 39026 * | 12-16-21 | 3100.51 |
| 39027 | 12-17-21 | 60.00 |
| 39028 | 12-15-21 | 30.00 |
| 39029 | 12-13-21 | 80.75 |
| 39030 | 12-14-21 | 767.81 |
| 39031 | 12-13-21 | 110.95 |
| 39032 | 12-15-21 | 1964.08 |
| 39033 | 12-10-21 | 5000.00 |
| 39034 | 12-15-21 | 116.00 |

- Continued -   RRSB FCCU Subpoena 021376

**First Community Credit Union**
918-19th St SE | PO Box 280
Jamestown, ND 58401-280
*myFCCU.com*

**Account Number:** *****4695
**Statement End Date:** 12-31-21
**Page:** 6 of 8

### Check Summary
* = break in check sequence

| SD# | Date | Amount |
|-----|------|--------|
| 39035 | 12-10-21 | 2581.21 |
| 39036 | 12-24-21 | 1500.00 |
| 39038 * | 12-09-21 | 100.26 |
| 39040 * | 12-14-21 | 394.38 |
| 39041 | 12-14-21 | 600.00 |
| 39042 | 12-10-21 | 87.69 |
| 39043 | 12-14-21 | 144.00 |
| 39044 | 12-13-21 | 1034.86 |
| 39045 | 12-13-21 | 135.00 |
| 39046 | 12-09-21 | 90.00 |
| 39047 | 12-24-21 | 166.25 |
| 39048 | 12-14-21 | 6143.50 |
| 39049 | 12-14-21 | 560.46 |
| 39050 | 12-10-21 | 306.47 |
| 39051 | 12-16-21 | 1660.94 |
| 39052 | 12-10-21 | 725.93 |
| 39053 | 12-14-21 | 1000.00 |
| 39054 | 12-02-21 | 144.00 |
| 39055 | 12-02-21 | 2339.75 |
| 39056 | 12-24-21 | 500.00 |
| 39057 | 12-16-21 | 887.48 |
| 39058 | 12-10-21 | 799.93 |
| 39059 | 12-02-21 | 338.25 |
| 39060 | 12-10-21 | 669.76 |
| 39061 | 12-14-21 | 1913.11 |
| 39062 | 12-03-21 | 850.00 |
| 39064 * | 12-03-21 | 54.00 |
| 39066 * | 12-10-21 | 7500.00 |
| 39067 | 12-10-21 | 1023.76 |
| 39068 | 12-10-21 | 3374.55 |
| 39070 * | 12-13-21 | 4108.25 |
| 39072 * | 12-15-21 | 460.00 |
| 39073 | 12-03-21 | 432.00 |
| 39074 | 12-14-21 | 850.00 |
| 39075 | 12-09-21 | 6166.67 |
| 39076 | 12-07-21 | 662.50 |
| 39077 | 12-24-21 | 9893.86 |
| 39078 | 12-15-21 | 8450.24 |
| 39079 | 12-08-21 | 5208.33 |
| 39080 | 12-10-21 | 3958.46 |
| 39081 | 12-15-21 | 11226.28 |
| 39082 | 12-14-21 | 11690.52 |
| 39084 * | 12-20-21 | 1612.01 |
| 39085 | 12-10-21 | 3173.14 |
| 39086 | 12-16-21 | 3350.00 |
| 39087 | 12-22-21 | 2127.00 |
| 39089 * | 12-07-21 | 785.75 |
| 39090 | 12-14-21 | 2970.70 |
| 39091 | 12-14-21 | 5.66 |

### Check Summary
* = break in check sequence

| SD# | Date | Amount |
|-----|------|--------|
| 39094 * | 12-14-21 | 3886.35 |
| 39095 | 12-20-21 | 2765.88 |
| 39096 | 12-07-21 | 2426.50 |
| 39097 | 12-20-21 | 464.48 |
| 39098 | 12-07-21 | 1519.96 |
| 39099 | 12-07-21 | 1078.03 |
| 39100 | 12-07-21 | 1062.73 |
| 39101 | 12-06-21 | 4743.31 |
| 39102 | 12-09-21 | 829.56 |
| 39103 | 12-13-21 | 22953.62 |
| 39104 | 12-16-21 | 92.00 |
| 39105 | 12-14-21 | 225.00 |
| 39106 | 12-10-21 | 49.54 |
| 39107 | 12-10-21 | 307.10 |
| 39108 | 12-06-21 | 2000.00 |
| 39109 | 12-14-21 | 1423.86 |
| 39110 | 12-14-21 | 5000.00 |
| 39111 | 12-10-21 | 2000.00 |
| 39112 | 12-24-21 | 1250.00 |
| 39114 * | 12-13-21 | 1639.22 |
| 39115 | 12-09-21 | 568.75 |
| 39116 | 12-13-21 | 3497.89 |
| 39117 | 12-14-21 | 843.48 |
| 39118 | 12-14-21 | 1092.00 |
| 39119 | 12-14-21 | 140.00 |
| 39120 | 12-24-21 | 172.50 |
| 39121 | 12-17-21 | 136.48 |
| 39122 | 12-16-21 | 58995.45 |
| 39123 | 12-15-21 | 4977.00 |
| 39124 | 12-17-21 | 28921.03 |
| 39125 | 12-14-21 | 8223.00 |
| 39126 | 12-20-21 | 366.36 |
| 39127 | 12-21-21 | 6430.50 |
| 39128 | 12-15-21 | 156725.40 |
| 39129 | 12-14-21 | 1432.16 |
| 39130 | 12-15-21 | 28500.00 |
| 39131 | 12-15-21 | 89000.00 |
| 39132 | 12-14-21 | 32171.50 |
| 39133 | 12-17-21 | 4005.83 |
| 39134 | 12-14-21 | 4465.55 |
| 39135 | 12-14-21 | 13850.00 |
| 39137 * | 12-15-21 | 54.80 |
| 39138 | 12-15-21 | 2687.50 |
| 39140 * | 12-14-21 | 612.72 |
| 39141 | 12-09-21 | 750.00 |
| 39142 | 12-15-21 | 1735.00 |
| 39143 | 12-14-21 | 1781.00 |
| 39145 * | 12-15-21 | 6600.00 |
| 39146 | 12-24-21 | 4331.00 |

*- Continued -*

RRSB FCCU Subpoena 021377

**First Community CU**
Credit Union
310 10th St SE | PO Box 280
Jamestown, ND 58401-280
*myFCCU.com*

Account Number: *****4695
Statement End Date: 12-31-21
Page: 7 of 8

### Check Summary
\* = break in check sequence

| SD# | Date | Amount |
|---|---|---|
| 39147 | 12-20-21 | 3600.00 |
| 39148 | 12-21-21 | 11051.00 |
| 39149 | 12-24-21 | 51100.00 |
| 39150 | 12-15-21 | 141.63 |
| 39152 * | 12-29-21 | 12408.73 |
| 39153 | 12-09-21 | 1148.70 |
| 39154 | 12-13-21 | 751.00 |
| 39155 | 12-13-21 | 1003.61 |
| 39156 | 12-22-21 | 355.00 |
| 39157 | 12-15-21 | 183.18 |
| 39158 | 12-10-21 | 5871.25 |
| 39159 | 12-15-21 | 4405.20 |
| 39160 | 12-14-21 | 6000.00 |
| 39161 | 12-21-21 | 138609.77 |
| 39162 | 12-22-21 | 30000.00 |
| 39163 | 12-24-21 | 250.00 |
| 39164 | 12-21-21 | 38859.72 |
| 39167 * | 12-14-21 | 5371.60 |

### Check Summary
\* = break in check sequence

| SD# | Date | Amount |
|---|---|---|
| 39169 * | 12-17-21 | 1823.42 |
| 39170 | 12-28-21 | 4614.22 |
| 39171 | 12-16-21 | 23160.00 |
| 39172 | 12-31-21 | 4188.46 |
| 39173 | 12-23-21 | 492.00 |
| 39175 * | 12-17-21 | 56.52 |
| 39178 * | 12-15-21 | 2180.50 |
| 39179 | 12-23-21 | 260.00 |
| 39180 | 12-16-21 | 1588.00 |
| 39181 | 12-17-21 | 559.50 |
| 39182 | 12-21-21 | 37389.09 |
| 39184 * | 12-28-21 | 1864.50 |
| 39185 | 12-28-21 | 1372.50 |
| 39186 | 12-24-21 | 9393.62 |
| 39188 * | 12-29-21 | 1000.00 |
| 39190 * | 12-31-21 | 232.00 |
| 39253 * | 12-30-21 | 525.00 |

| | TOTAL FOR THIS PERIOD | TOTAL YEAR-TO-DATE |
|---|---|---|
| TOTAL OVERDRAFT FEES | 0.00 | 27.00 |
| TOTAL OVERDRAFT FEES WAIVED | 0.00 | 0.00 |
| TOTAL RETURNED ITEM FEES | 0.00 | 0.00 |
| TOTAL RETURNED ITEM FEES WAIVED | 0.00 | 0.00 |

### Deposits, Dividends and Other Credits

| Date | Amount |
|---|---|
| 12-01-2021 | 11384.08 |
| 12-02-2021 | 22325.00 |
| 12-02-2021 | 7467.00 |
| 12-03-2021 | 3245.00 |
| 12-06-2021 | 759.79 |
| 12-06-2021 | 20340.00 |
| 12-07-2021 | 557.14 |
| 12-07-2021 | 3528.14 |
| 12-07-2021 | 816.00 |
| 12-08-2021 | 2069.53 |
| 12-09-2021 | 843168.59 |

### Deposits, Dividends and Other Credits

| Date | Amount |
|---|---|
| 12-09-2021 | 775.00 |
| 12-09-2021 | 1000.00 |
| 12-09-2021 | 1396.00 |
| 12-10-2021 | 1197.76 |
| 12-10-2021 | 128.99 |
| 12-11-2021 | 200000.00 |
| 12-13-2021 | 2403.00 |
| 12-13-2021 | 725.00 |
| 12-15-2021 | 500.00 |
| 12-17-2021 | 37389.09 |
| 12-17-2021 | 1301.35 |

### Deposits, Dividends and Other Credits

| Date | Amount |
|---|---|
| 12-20-2021 | 719.26 |
| 12-20-2021 | 40000.00 |
| 12-21-2021 | 506.47 |
| 12-22-2021 | 792.25 |
| 12-22-2021 | 700.00 |
| 12-23-2021 | 106395.23 |
| 12-24-2021 | 607.80 |
| 12-30-2021 | 750.00 |
| 12-31-2021 | 5467.00 |

| Total Dividends | 0 | 0.00 |
|---|---|---|
| Total Deposits and Other Credits | 31 | 1318414.47 |

### Withdrawals, Fees and Other Debits

| Date | Amount |
|---|---|
| 12-01-2021 | -77.36 |
| 12-01-2021 | -15.00 |
| 12-01-2021 | -2701.61 |
| 12-01-2021 | -156.28 |
| 11-30-2021 | -15000.00 |

### Withdrawals, Fees and Other Debits

| Date | Amount |
|---|---|
| 12-01-2021 | -3052.97 |
| 12-02-2021 | -956.20 |
| 12-03-2021 | -2000.00 |
| 12-05-2021 | -86.03 |
| 12-06-2021 | -5000.00 |

### Withdrawals, Fees and Other Debits

| Date | Amount |
|---|---|
| 12-07-2021 | -200.98 |
| 12-09-2021 | -94.26 |
| 12-09-2021 | -154.91 |
| 12-09-2021 | -20.00 |
| 12-09-2021 | -5.00 |

*- Continued -*

RRSB FCCU Subpoena 021378

**FCCU First Community Credit Union**

318-19th St SE | PO Box 6160
Jamestown, ND 58401-280
*myFCCU.com*

**Account Number:** *****4695
**Statement End Date:** 12-31-21
**Page:** 8 of 8

### Withdrawals, Fees and Other Debits

| Date | Amount |
|------|--------|
| 12-09-2021 | -3000.00 |
| 12-09-2021 | -107.35 |
| 12-09-2021 | -20000.00 |
| 12-10-2021 | -96.71 |
| 12-10-2021 | -70.42 |
| 12-11-2021 | -20.00 |
| 12-12-2021 | -93.67 |
| 12-13-2021 | -632.54 |
| 12-13-2021 | -378.30 |

### Withdrawals, Fees and Other Debits

| Date | Amount |
|------|--------|
| 12-13-2021 | -355.15 |
| 12-13-2021 | -200.00 |
| 12-14-2021 | -837.61 |
| 12-15-2021 | -38.62 |
| 12-17-2021 | -500.00 |
| 12-17-2021 | -321.43 |
| 12-19-2021 | -84.90 |
| 12-20-2021 | -88.79 |
| 12-21-2021 | -75.00 |

### Withdrawals, Fees and Other Debits

| Date | Amount |
|------|--------|
| 12-26-2021 | -216.00 |
| 12-27-2021 | -726.13 |
| 12-24-2021 | -15000.00 |
| 12-27-2021 | -70.73 |
| 12-28-2021 | -91.51 |
| 12-28-2021 | -10000.00 |
| 12-29-2021 | -1000.00 |
| 12-29-2021 | -675.00 |
| 12-31-2021 | -5.00 |

| | | |
|---|---|---|
| **Total Fees** | 3 | -3020.00 |
| **Total withdrawal and Other Debits** | 39 | -81185.46 |

**MEMBERSHIP SAVINGS**   ACCT# 3        **12-01-21 THRU 12-31-21**        PREVIOUS BALANCE **5.00**

ENDING BALANCE                                                                                5.00

### Dividend Summary

| Account Number | New Balance | Dividends YTD |
|----------------|-------------|---------------|
| 1 | 0.01 | 0.00 |
| 2 | 3,290.03 | 0.00 |
| 3 | 5.00 | 0.00 |
| Total Dividends YTD: **$0.00** | | |

*- End of Statement -*

RRSB FCCU Subpoena 021379

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $653,729.65 | 01-05-2022 | 12-31-2022 | 51471 | | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** GENERATIONS ON 1ST, LLC (TIN: ▓▓▓6148)
1405 1ST AVE N
FARGO, ND 58102

**Lender:** Red River State Bank
300 2nd Ave West
P.O. Box 25
Halstad, MN 56548

**EXHIBIT**

**6-A**

---

**Principal Amount: $653,729.65**     **Interest Rate: 4.350%**     **Date of Note: January 5, 2022**

**PROMISE TO PAY.** GENERATIONS ON 1ST, LLC ("Borrower") promises to pay to Red River State Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Six Hundred Fifty-three Thousand Seven Hundred Twenty-nine & 65/100 Dollars ($653,729.65), together with interest on the unpaid principal balance from January 5, 2022, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 4.350% per annum, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in one principal payment of $653,729.65 plus interest on December 31, 2022. This payment due on December 31, 2022, will be for all principal and all accrued interest not yet paid. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Any accrued interest not paid when due is added to principal and thereafter will accrue interest as principal.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/365 basis; that is, by applying the ratio of the interest rate over the number of days in a year (365 for all years, including leap years), multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**RECEIPT OF PAYMENTS.** All payments must be made in U.S. dollars and must be received by Lender at:

Red River State Bank
300 2nd Ave West
P.O. Box 25
Halstad, MN 56548

All payments must be received by Lender consistent with any written payment instructions provided by Lender. If a payment is made consistent with Lender's payment instructions but received after 2:00 PM CST on a business day, Lender will credit Borrower's payment on the next business day.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Red River State Bank, PO Box 25 Halstad, MN 56548.

**LATE CHARGE.** If a payment is 11 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $7.28, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Note will continue to accrue interest at the interest rate under this Note.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf, or made by Guarantor, or any other guarantor, endorser, surety, or accommodation party, under this Note or the related documents in connection with the obtaining of the loan evidenced by this Note or any security document directly or indirectly securing repayment of this Note is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Execution; Attachment.** Any execution or attachment is levied against the Collateral, and such execution or attachment is not set aside, discharged or stayed within thirty (30) days after the same is levied.

**Change in Zoning or Public Restriction.** Any change in any zoning ordinance or regulation or any other public restriction is enacted, adopted or implemented, that limits or defines the uses which may be made of the Collateral such that the present or intended use of the Collateral, as specified in the related documents, would be in violation of such zoning ordinance or regulation or public restriction, as changed.

**Default Under Other Lien Documents.** A default occurs under any other mortgage, deed of trust or security agreement covering all or any

RRSB GO1st 01931

**PROMISSORY NOTE**
**(Continued)**

portion of the Collateral.

**Judgment.** Unless adequately covered by insurance in the opinion of Lender, the entry of a final judgment for the payment of money involving more than ten thousand dollars ($10,000.00) against Borrower and the failure by Borrower to discharge the same, or cause it to be discharged, or bonded off to Lender's satisfaction, within thirty (30) days from the date of the order, decree or process under which or pursuant to which such judgment was entered.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor, or any other guarantor, endorser, surety, or accommodation party of any of the indebtedness or any Guarantor, or any other guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Minnesota without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Minnesota.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Norman County, State of Minnesota.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $28.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by (A) a Mortgage executed by Generations on 1st, LLC in favor of Red River State Bank dated 03/15/2021 with legal description of Parcel # 9582, 9583, & 9580:
Parcel I:
Lot 1 of Ohtness' Subdivision of Lots 12, 13, and 14 in Block 17 of Watertown, Codington County, South Dakota, according to the recorded plat thereof.
Parcel II:
Lot 2 of Ohtness' Subdivision of Lots 12, 13 and 14 in Block 17 of Watertown, AND the North 30 feet of the East 70 feet of Lot 11 in Block 17 of Watertown (commonly referred to as being in the original Plat), Codington County, South Dakota, according to the recorded plat thereof.
Parcel III:
Lot 3 of Ohtness' Subdivision of Lots 12, 13, and 14 in Block 17 of Watertown (commonly referred to as being the Original Plat), Codington County, South Dakota, according to the recorded plat thereof.
Parcel IV:
Lot 4 of Ohtness' Subdivision of Lots 12, 13, and 14 in Block 17 of Watertown (commonly referred to as being the Original Plat), Codington County, South Dakota, according to the recorded plat thereof.
Parcel V:
Lot 11, except the North 30 Feet of the East 70 Feet thereof, in Block 17, of the plat Entitled: "Watertown" Codington County, South Dakota, according to the recorded plat thereof

AND

(B) a Mortgage executed by Craig Holdings, LLC in favor of Red River State Bank dated 10/14/2021 with legal description of: GENERATIONS ON 1ST ADDITION TO THE CITY OF WATERTOWN, CODINGTON COUNTY, SOUTH DAKOTA

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: Red River State Bank PO Box 25 Halstad, MN 56548.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. In addition, Lender shall have all the rights and remedies provided in the related documents or available at law, in equity, or otherwise. Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower shall not affect Lender's right to declare a default and to exercise its rights and remedies. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be

RRSB GO1st 01932

**PROMISSORY NOTE**
**(Continued)**

Loan No: 51471                                                                                          Page 3

released from liability.  All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone.  All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made.  The obligations under this Note are joint and several.

**SECTION DISCLOSURE.**  To the extent not preempted by federal law, this loan is made under Minnesota Statutes, Section 47.59.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE.  BORROWER AGREES TO THE TERMS OF THE NOTE.**

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

GENERATIONS ON 1ST, LLC

By: _____                    Signed:
                                                Jan 04, 2022
                                                6:04 PM UTC
     JESSE ROBERT CRAIG, MANAGING MEMBER  of
     GENERATIONS ON 1ST, LLC

LENDER:

RED RIVER STATE BANK

X _____                      Signed:
                                                Jan 04, 2022
                                                5:36 PM UTC
     CHARLES AARESTAD, Vice President

LaserPro, Ver. 20.4.0.036  Copr. Finastra USA Corporation 1997, 2022.  All Rights Reserved.  - MN  C:\HARLAND\CFN.PL\D20.FC  TR-5748  PR-57.

Case 25-30002 Doc 166-1 Filed 09/16/25 Entered 09/16/25 16:19:25 Desc
Exhibits 1-A to F Page 72 of 108

# DISBURSEMENT REQUEST AND AUTHORIZATION

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $653,729.65 | 01-05-2022 | 12-31-2022 | 51471 | | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

EXHIBIT
6-B

**Borrower:** GENERATIONS ON 1ST, LLC (TIN: [redacted]6148)
1405 1ST AVE N
FARGO, ND 58102

**Lender:** Red River State Bank
300 2nd Ave West
P.O. Box 25
Halstad, MN 56548

**LOAN TYPE.** This is a Fixed Rate (4.350%) Nondisclosable Loan to a Limited Liability Company for $653,729.65 due on December 31, 2022.

**PRIMARY PURPOSE OF LOAN.** The primary purpose of this loan is for:

☐ Maintenance of Borrower's Primary Residence.

☐ Personal, Family or Household Purposes or Personal Investment.

☐ Agricultural Purposes.

☒ Business Purposes.

**SPECIFIC PURPOSE.** The specific purpose of this loan is: Multi Family Home Construction Project Draw 14.

**REAL ESTATE DOCUMENTS.** If any party to this transaction is granting a security interest in any real property to Lender and Borrower is not also a party to the real estate document or documents (the "Real Estate Documents") granting such security interest, Borrower agrees to perform and comply with the Real Estate Documents just as if Borrower has signed as a direct and original party to the Real Estate Documents. This means Borrower agrees to all the representations and warranties made in the Real Estate Documents. In addition, Borrower agrees to perform and comply strictly with all the terms, obligations and covenants to be performed by either Borrower or any Grantor or Trustor, or both, as those words are defined in the Real Estate Documents. Lender need not tell Borrower about any action or inaction Lender takes in connection with the Real Estate Documents. Borrower assumes the responsibility for being and keeping informed about the property. Borrower also waives any defenses that may arise because of any action or inaction of Lender, including without limitation any failure of Lender to realize upon the property, or any delay by Lender in realizing upon the property.

**DISBURSEMENT INSTRUCTIONS.** Borrower understands that no loan proceeds will be disbursed until all of Lender's conditions for making the loan have been satisfied. Please disburse the loan proceeds of $653,729.65 as follows:

| | |
|---|---|
| Amount paid to others on Borrower's behalf:<br>$653,729.65 to Craig Development LLC for Construction Draws and Construction Management Fees | $653,729.65 |
| Note Principal: | $653,729.65 |

**NOTICE OF RIGHT TO DISCONTINUE ESCROW.** If Borrower's mortgage loan involves an escrow account for taxes and homeowner's insurance, Borrower may have the right in five years to discontinue the account and pay Borrower's own taxes and homeowner's insurance. IF Borrower is eligible to discontinue the escrow account, Borrower will be notified in five years.

**FINANCIAL CONDITION. BY SIGNING THIS AUTHORIZATION, BORROWER REPRESENTS AND WARRANTS TO LENDER THAT THE INFORMATION PROVIDED ABOVE IS TRUE AND CORRECT AND THAT THERE HAS BEEN NO MATERIAL ADVERSE CHANGE IN BORROWER'S FINANCIAL CONDITION AS DISCLOSED IN BORROWER'S MOST RECENT FINANCIAL STATEMENT TO LENDER. THIS AUTHORIZATION IS DATED JANUARY 5, 2022.**

**BORROWER:**

**GENERATIONS ON 1ST, LLC**

By: ______________________ Signed Jan 04, 2022 6:08 PM UTC
JESSE ROBERT CRAIG, MANAGING MEMBER of GENERATIONS ON 1ST, LLC

LaserPro, Ver. 20.4.0.038 Copr. Finastra USA Corporation 1997, 2022. All Rights Reserved. - MN C:\HARLAND\CFI\LPL\I20.FC TR-5746 PR-67

UNETexchange Item Summary                ECE Institution ISN: 8751483683                UNETexch

**EXHIBIT**

**6-C**



CASHIER'S CHECK

**RED RIVER STATE BANK**

PO Box 25 • Halstad, MN • 56548 • (218) 456-2157
PO Box 98 • Fertile, MN • 56540 • (218) 945-6171

Notice to Customer
If this check is lost, destroyed, or stolen, the bank will
not accept a replacement request on the check until
90 days after the issue date and then only with the
issuance of a "Declaration of Loss" certification.

FLO      January 04, 2022                **101723**

Purchaser:
GO1 LLC Draw #16                                    **$653,729.65**

Six Hundred Fifty Three Thousand Seven Hundred Twenty Nine Dollars And 65/100********

PAY TO THE:   Craig Development
              Fargo, ND 58107

Two Signatures Required

Authorized Signature

⑆101723⑆ ⑈ 5199⑉ 2130⑈

ENDORSE HERE

11/1/2024 12:01:01 PM                                        RRSB GO1st 04852



```
FP TRANSACTION  01-05-22  15:22:45  MEMBER  1711CR                 1 1517
              FOR CRAIG DEVELOPMENT, LLC  AS JESSE R CRAIG
DEPOSIT OF          653729.65  1711-2          SMALL BUSINESS CHECKING
   PREV BAL       50368.64 NEW BAL       704098.29
   CASHIERS CHK# 101723, RED RIVER STATE BANK
RECEIVED          653729.65 IN 1 CHECK
   653729.65
```

Member Signature

RRSB FCCU Subpoena 007417

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $274,043.60 | 02-03-2022 | 12-31-2022 | 51488 | | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any ~~~~ loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** GENERATIONS ON 1ST, LLC (TIN: ████6148)
1405 1ST AVE N
FARGO, ND 58102

**Lender:** Red River State Bank
300 2nd Ave West
P.O. Box 25
Halstad, MN 56548

**EXHIBIT**

**7-A**

---

**Principal Amount: $274,043.60**      **Interest Rate: 4.350%**      **Date of Note: February 3, 2022**

PROMISE TO PAY. GENERATIONS ON 1ST, LLC ("Borrower") promises to pay to Red River State Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Hundred Seventy-four Thousand Forty-three & 60/100 Dollars ($274,043.60), together with interest on the unpaid principal balance from February 3, 2022, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 4.350% per annum, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

PAYMENT. Borrower will pay this loan in one principal payment of $274,043.60 plus interest on December 31, 2022. This payment due on December 31, 2022, will be for all principal and all accrued interest not yet paid. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Any accrued interest not paid when due is added to principal and thereafter will accrue interest as principal.

INTEREST CALCULATION METHOD. Interest on this Note is computed on a 365/365 basis; that is, by applying the ratio of the interest rate over the number of days in a year (365 for all years, including leap years), multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

RECEIPT OF PAYMENTS. All payments must be made in U.S. dollars and must be received by Lender at:

Red River State Bank
300 2nd Ave West
P.O. Box 25
Halstad, MN 56548

All payments must be received by Lender consistent with any written payment instructions provided by Lender. If a payment is made consistent with Lender's payment instructions but received after 2:00 PM CST on a business day, Lender will credit Borrower's payment on the next business day.

PREPAYMENT. Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Red River State Bank, PO Box 25 Halstad, MN 56548.

LATE CHARGE. If a payment is 11 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $7.28, whichever is greater.

INTEREST AFTER DEFAULT. Upon default, including failure to pay upon final maturity, the total sum due under this Note will continue to accrue interest at the interest rate under this Note.

DEFAULT. Each of the following shall constitute an event of default ("Event of Default") under this Note:

Payment Default. Borrower fails to make any payment when due under this Note.

Other Defaults. Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

False Statements. Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf, or made by Guarantor, or any other guarantor, endorser, surety, or accommodation party, under this Note or the related documents in connection with the obtaining of the loan evidenced by this Note or any security document directly or indirectly securing repayment of this Note is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

Death or Insolvency. The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

Creditor or Forfeiture Proceedings. Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

Execution; Attachment. Any execution or attachment is levied against the Collateral, and such execution or attachment is not set aside, discharged or stayed within thirty (30) days after the same is levied.

Change in Zoning or Public Restriction. Any change in any zoning ordinance or regulation or any other public restriction is enacted, adopted or implemented, that limits or defines the uses which may be made of the Collateral such that the present or intended use of the Collateral, as specified in the related documents, would be in violation of such zoning ordinance or regulation or public restriction, as changed.

Default Under Other Lien Documents. A default occurs under any other mortgage, deed of trust or security agreement covering all or any

RRSB GO1st 02229

## PROMISSORY NOTE
### (Continued)

Loan No: 51488                                                                                      Page 2

portion of the Collateral.

**Judgment.** Unless adequately covered by insurance in the opinion of Lender, the entry of a final judgment for the payment of money involving more than ten thousand dollars ($10,000.00) against Borrower and the failure by Borrower to discharge the same, or cause it to be discharged, or bonded off to Lender's satisfaction, within thirty (30) days from the date of the order, decree or process under which or pursuant to which such judgment was entered.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor, or any other guarantor, endorser, surety, or accommodation party of any of the indebtedness or any Guarantor, or any other guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Minnesota without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Minnesota.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Norman County, State of Minnesota.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $28.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by (A) a Mortgage executed by Generations on 1st, LLC in favor of Red River State Bank dated 03/15/2021 with legal description of Parcel # 9582, 9583, & 9580:
Parcel I:
Lot 1 of Ohtness' Subdivision of Lots 12, 13, and 14 in Block 17 of Watertown, Codington County, South Dakota, according to the recorded plat thereof.
Parcel II:
Lot 2 of Ohtness' Subdivision of Lots 12, 13 and 14 in Block 17 of Watertown, AND the North 30 feet of the East 70 feet of Lot 11 in Block 17 of Watertown (commonly referred to as being in the original Plat), Codington County, South Dakota, according to the recorded plat thereof.
Parcel III:
Lot 3 of Ohtness' Subdivision of Lots 12, 13, and 14 in Block 17 of Watertown (commonly referred to as being the Original Plat), Codington County, South Dakota, according to the recorded plat thereof.
Parcel IV:
Lot 4 of Ohtness' Subdivision of Lots 12, 13, and 14 in Block 17 of Watertown (commonly referred to as being the Original Plat), Codington County, South Dakota, according to the recorded plat thereof.
Parcel V:
Lot 11, except the North 30 Feet of the East 70 Feet thereof, in Block 17, of the plat Entitled: "Watertown" Codington County, South Dakota, according to the recorded plat thereof

AND

(B) a Mortgage executed by Craig Holdings, LLC in favor of Red River State Bank dated 10/14/2021 with legal description of: GENERATIONS ON 1ST ADDITION TO THE CITY OF WATERTOWN, CODINGTON COUNTY, SOUTH DAKOTA

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: Red River State Bank PO Box 25 Halstad, MN 56548.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. In addition, Lender shall have all the rights and remedies provided in the related documents or available at law, in equity, or otherwise. Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower shall not affect Lender's right to declare a default and to exercise its rights and remedies. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be

RRSB GO1St 02230

# PROMISSORY NOTE
## (Continued)

| | | |
|---|---|---|
| Loan No: 51488 | | Page 3 |

released from liability.  All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral, or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone.  All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made.  The obligations under this Note are joint and several.

**SECTION DISCLOSURE.**  To the extent not preempted by federal law, this loan is made under Minnesota Statutes, Section 47.59.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE.  BORROWER AGREES TO THE TERMS OF THE NOTE.**

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

**BORROWER:**

**GENERATIONS ON 1ST, LLC**

By: _____    Signed:
                                          Feb 02, 2022
                                          3:50 PM UTC
JESSE ROBERT CRAIG, MANAGING MEMBER of
GENERATIONS ON 1ST, LLC

**LENDER:**

**RED RIVER STATE BANK**

X _____    Signed:
                                       Feb 02, 2022
                                       6:49 PM UTC
CHARLES AARESTAD, Vice President

LaserPro, Ver. 20.4.0.038  Copr. Finacra USA Corporation 1997, 2022   All Rights Reserved.  - MN  C:\HARLAND\CFI\LPL\D20.FC  TR-5771  PR-37

# DISBURSEMENT REQUEST AND AUTHORIZATION

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $274,043.60 | 02-03-2022 | 12-31-2022 | 51488 | | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

EXHIBIT
7-B

**Borrower:** GENERATIONS ON 1ST, LLC (TIN: [redacted]6148)
1405 1ST AVE N
FARGO, ND 58102

**Lender:** Red River State Bank
300 2nd Ave West
P.O. Box 25
Halstad, MN 56548

**LOAN TYPE.** This is a Fixed Rate (4.350%) Nondisclosable Loan to a Limited Liability Company for $274,043.60 due on December 31, 2022.

**PRIMARY PURPOSE OF LOAN.** The primary purpose of this loan is for:

- ☐ Maintenance of Borrower's Primary Residence.
- ☐ Personal, Family or Household Purposes or Personal Investment.
- ☐ Agricultural Purposes.
- ☒ Business Purposes.

**SPECIFIC PURPOSE.** The specific purpose of this loan is: Multi Family Home Construction Project Draw 17.

**REAL ESTATE DOCUMENTS.** If any party to this transaction is granting a security interest in any real property to Lender and Borrower is not also a party to the real estate document or documents (the "Real Estate Documents") granting such security interest, Borrower agrees to perform and comply with the Real Estate Documents just as if Borrower has signed as a direct and original party to the Real Estate Documents. This means Borrower agrees to all the representations and warranties made in the Real Estate Documents. In addition, Borrower agrees to perform and comply strictly with all the terms, obligations and covenants to be performed by either Borrower or any Grantor or Trustor, or both, as those words are defined in the Real Estate Documents. Lender need not tell Borrower about any action or inaction Lender takes in connection with the Real Estate Documents. Borrower assumes the responsibility for being and keeping informed about the property. Borrower also waives any defenses that may arise because of any action or inaction of Lender, including without limitation any failure of Lender to realize upon the property, or any delay by Lender in realizing upon the property.

**DISBURSEMENT INSTRUCTIONS.** Borrower understands that no loan proceeds will be disbursed until all of Lender's conditions for making the loan have been satisfied. Please disburse the loan proceeds of $274,043.60 as follows:

| | |
|---|---|
| Amount paid to others on Borrower's behalf:<br>$274,043.60 to Craig Development LLC for Construction Draws and Construction Management Fees | $274,043.60 |
| Note Principal: | $274,043.60 |

**NOTICE OF RIGHT TO DISCONTINUE ESCROW.** If Borrower's mortgage loan involves an escrow account for taxes and homeowner's insurance, Borrower may have the right in five years to discontinue the account and pay Borrower's own taxes and homeowner's insurance. IF Borrower is eligible to discontinue the escrow account, Borrower will be notified in five years.

**FINANCIAL CONDITION.** BY SIGNING THIS AUTHORIZATION, BORROWER REPRESENTS AND WARRANTS TO LENDER THAT THE INFORMATION PROVIDED ABOVE IS TRUE AND CORRECT AND THAT THERE HAS BEEN NO MATERIAL ADVERSE CHANGE IN BORROWER'S FINANCIAL CONDITION AS DISCLOSED IN BORROWER'S MOST RECENT FINANCIAL STATEMENT TO LENDER. THIS AUTHORIZATION IS DATED FEBRUARY 3, 2022.

**BORROWER:**

**GENERATIONS ON 1ST, LLC**

By: ______________________ Signed Feb 02, 2022 9:51 PM UTC
JESSE ROBERT CRAIG, MANAGING MEMBER of GENERATIONS ON 1ST, LLC

LaserPro, Ver. 20.4.0.038 Copr. Finastra USA Corporation 1997, 2022. All Rights Reserved. - MN C:\HARLAND\CFI\LPL\I20.FC TR-5771 PR-57

# LOAN WIRE TRANSFER ORDER

**EXHIBIT**

**7-C**

| | |
|---|---|
| Date | 2/3/2022 |
| Sender ABA # | 5199 |
| Bank Name | Red River State Bank |

☑ Customer
☐ Non-Customer -- Check with Lori DeLong

## ORIGINATOR INFORMATION

Name    Generations on 1st LLC ✓

Street Address    1405 1st Ave N ✓

City, State, Zip    Fargo, ND 58102 ✓

Account Number 51488

**Originating Loan Officer Signature**

## WIRE THROUGH

Bank Name    First Community Credit Union ✓

ABA Number ✓

Dollar Amount    $274,043.60 ✓

## BENEFICIARY INFORMATION

For Credit To    Craig Properties LLC ✓

Street Address    1405 1st Ave N ✓

City, State, Zip    Fargo, ND 58102 ✓

Account Number ✓

For Further Credit To

Account Number

☐ OFAC Verified - by UBB

---

☐ IN-PERSON REQUEST:    ☐ Known Customer    ☐ Identity Verified        ☐ Internal Business Purpose

Verified Wire Transfer agreement on file:  Yes / No    Initial: _____

**CUSTOMER SIGNATURE** _____

---

☐ NOT IN- PERSON REQUEST:

Wire Instructions on File

☐ Yes    ☐ NO  — Written instructions from customer attached

Instructions received by:
☑ Telephone Initial: ATM
☐ Email Request (attached) Initial: _____
☐ Fax request (attached) Initial _____
☐ Mail request (attached) Initial _____

If not loan source funds, wire transfer agreement on file? YES/NO

Call Back Verfication details:
Date: 2-3-22    Time: 8:13 am
Who performed callback: LOV.J M
Customer/Authorized Rep spoke with: Jesse Craig
☐ Identity verified    ☐ Authority verified

Phone Number called to verify: 701-371-9887

---

| | | | | SOURCE OF FUNDS |
|---|---|---|---|---|
| Wire Transfer Amount | US $ | 274,043.60 ✓ | **EBA OK?** | ☐ Cash |
| | | | | ☐ Check |
| Wire Transfer Fee | $ | 0.00 | ___ Initials | ☐ Deposit Acct |
| | | | | ☑ Loan |
| | | | | ☐ General Ledger |

UBB DESK SIGNATURE    Jeannina Gustafson

WIRE APPROVAL OFFICER    Ai Moen

(Attach any supporting documents on reverse side.)    RRSB GO1st 04854

Revised: 2/3/2022

## Outgoing Domestic

Account Number:

*C V*

Transaction Date: 2/3/2022

| | | | |
|---|---|---|---|
| Business Function - {3600} CTR | | Type/SubType - {1510} 1000 | *dg* |
| Amount - {2000} | $2, 49043.60 | | |
| Paid With Cash | ☐ | | |
| Receiver Bank - {3400} | | | |
| ABA | 2713, 8673 | Bank Name | First Community CU |

Originating Bank - {5100}

| | |
|---|---|
| Id Code | DDA Account Number |
| Identifier | |
| Name | Red River State Bank Halstad |
| Address 1 | 300 2nd Ave West |
| Address 2 | PO Box 25 |
| Address 3 | Halstad9MN 56548-0025 |

Originator - {5000}

| | |
|---|---|
| Id Code | DDA Account Number |
| Identifier | |
| Name | GENERATIONS ON 1ST LLC |
| Address 1 | 1405 1ST AVE N |
| Address 2 | FARGO9ND 58102 |
| Address 3 | |

Beneficiary - {4200}

| | |
|---|---|
| Id Code | DDA Account Number |
| Identifier | |
| Name | CRAIG PROPERTIES LLC |
| Address 1 | 1405 1ST AVE N |
| Address 2 | FARGO9ND 58102 |
| Address 3 | |

File Attachments  No Attachments

Transaction Description GENERATIONS ON 1ST LLC
Notes

**No OFAC Violation**

| | |
|---|---|
| Created By | DGustaf, 2 |
| Date Created | 2/3/2022 10:05:41 AM |
| | Awaiting Verification |

First Viewed By  DGustaf, 2
Date First Viewed 2/3/2022 10:0, :04 AM
Last Viewed By  DGustaf, 2
Date Last Viewed 2/3/2022 10:0, :04 AM

RRSB GO1st 04856

**FCCU First Community Credit Union**
310 10th St SE | PO Box 2180
Jamestown, ND 58401-2180
myFCCU.com

**Account Number:** *****4695
**Statement End Date:** 02-28-22
**Page:** 1 of 8
**MC:** P

ADDRESS SERVICE REQUESTED

Take advantage of the equity you have in your home by getting a great rate on a home equity loan. You could remodel your home, take a vacation or pay for things like college, taxes, or even a wedding! Stop in and visit with a loan officer today!

CRAIG PROPERTIES LLC
1405 1ST AVE N
FARGO, ND 58102

## Account Summary

| Account | Description | Beginning Balance | Ending Balance | Account | Description | Beginning Balance | Ending Balance |
|---|---|---|---|---|---|---|---|
| 1 | PRIME SHARES | 0.01 | 0.01 | 2 | BUSINESS REWARDS | 315,876.13 | 210,993.69 |
| 3 | MEMBERSHIP SAVINGS | 5.00 | 5.00 | | | | |

## Account Detail

**PRIME SHARES** ACCT# 1       02-01-22 THRU 02-28-22                PREVIOUS BALANCE 0.01

ENDING BALANCE                                                                                      0.01

**BUSINESS REWARDS** ACCT# 2       02-01-22 THRU 02-28-22          PREVIOUS BALANCE 315,876.13

| Date | Transaction Description | Amount | Balance |
|---|---|---|---|
| FEB 01 | SERVICE CHARGE   CRAIG PROPERTIES LLC. TOTAL NON COMPENSABLE CHARGE | -15.00 | 315861.13 |
| FEB 01 | EFT FOREMOST  FOREMOST EPM PYMT 020122 | -158.28 | 315702.85 |
| FEB 01 | EFT ACH Master  STARCAPITAL Monthlypmt220131 | -2701.61 | 313001.24 |
| FEB 01 | DEPOSIT | 4939.50 | 317940.74 |
| FEB 01 | TRANSFER 2  1014 RED RIVER STATE BANK INTUITION LLC | 40000.00 | 357940.74 |
| FEB 01 | TRANSFER 2  TRNSFER PER JESSE TO SYDNEY | -12500.00 | 345440.74 |
| FEB 01 | SHARE DRAFT 39324 TRACE#: 00111945 | -1120.00 | 344320.74 |
| FEB 01 | SHARE DRAFT 39325 TRACE#: 00117450 | -1275.00 | 343045.74 |
| FEB 01 | SHARE DRAFT 39272 TRACE#: 00117490 | -1464.38 | 341581.36 |
| FEB 01 | SHARE DRAFT 39329 TRACE#: 00103375 | -1517.60 | 340063.76 |
| FEB 01 | SHARE DRAFT 39342 TRACE#: 00101790 | -3000.00 | 337063.76 |
| FEB 01 | SHARE DRAFT 39330 TRACE#: 00111845 | -3205.00 | 333858.76 |
| FEB 01 | SHARE DRAFT 39446 TRACE#: 71000125 | -3218.50 | 330640.26 |
| FEB 01 | SHARE DRAFT 39345 TRACE#: 00102075 | -3866.16 | 326774.10 |
| FEB 01 | SHARE DRAFT 39337 TRACE#: 00103365 | -6920.38 | 319853.72 |
| FEB 01 | SHARE DRAFT 39351 TRACE#: 00116605 | -10000.00 | 309853.72 |
| FEB 01 | SHARE DRAFT 39352 TRACE#: 00101055 | -12882.40 | 296971.32 |
| FEB 01 | SHARE DRAFT 39309 TRACE#: 00116235 | -24683.00 | 272288.32 |
| FEB 02 | DEBIT CARD DEBIT  000015798457 CASEYS #3354 FARGO ND 01-31-22 | -100.99 | 272187.33 |
| FEB 02 | EFT ACH Master  CRAIG PROPERTIESRENT 220202 | 22040.00 | 294227.33 |
| FEB 02 | EFT ACH Master  BCBSNDPREMIUM EDI PYMNTS | -1705.85 | 292521.48 |
| FEB 02 | DEPOSIT | 6585.00 | 299106.48 |
| FEB 02 | SHARE DRAFT 39449 TRACE#: 00106840 | -180.00 | 298926.48 |
| FEB 02 | SHARE DRAFT 39328 TRACE#: 00113130 | -183.18 | 298743.30 |
| FEB 02 | SHARE DRAFT 39447 TRACE#: 00106680 | -723.11 | 298020.19 |
| FEB 02 | SHARE DRAFT 39274 TRACE#: 00103185 | -1495.31 | 296524.88 |
| FEB 02 | SHARE DRAFT 39356 TRACE#: 00111750 | -2000.00 | 294524.88 |
| FEB 02 | SHARE DRAFT 39355 TRACE#: 00103190 | -5306.48 | 289218.40 |
| FEB 02 | SHARE DRAFT 39443 TRACE#: 00109360 | -12200.00 | 277018.40 |
| FEB 03 | DEBIT CARD DEBIT  000009878703 TARGET.COM * 800-591-3869 MN 02-02-22 | -12.88 | 277005.52 |
| FEB 03 | DEBIT CARD DEBIT  000015996250 CENEX PETRO SE09900549 HARWOOD ND 02-02-22 | -99.03 | 276906.49 |

*- Continued -*

RRSB FCCU Subpoena 021066

**First Community Credit Union**
919-10th St SE | PO Box 680
Jamestown, ND 58401-280
*myFCCU.com*

**Account Number:** \*\*\*\*\*4695
**Statement End Date:** 02-28-22
**Page:** 2 of 8

| Date | Transaction Description | Amount | Balance |
|------|-------------------------|--------|---------|
| FEB 03 | DEPOSIT  Incoming Wire Transfer-275809656 | 274043.60 | 550950.09 |
| FEB 03 | WITHDRAWAL  Wire Transfer Fee-275809658 | -20.00 | 550930.09 |
| FEB 03 | DEPOSIT | 1100.00 | 552030.09 |
| FEB 03 | SHARE DRAFT 39348 TRACE#: 00106495 | -540.00 | 551490.09 |
| FEB 03 | SHARE DRAFT 1111 TRACE#: 53100305 | -848.46 | 550641.63 |
| FEB 03 | SHARE DRAFT 1111 TRACE#: 53100310 | -973.23 | 549668.40 |
| FEB 03 | SHARE DRAFT 39442 TRACE#: 00111485 | -1064.50 | 548603.90 |
| FEB 03 | SHARE DRAFT 9439 TRACE#: 00104570 | -1639.22 | 546964.68 |
| FEB 03 | SHARE DRAFT 1111 TRACE#: 50100805 | -2500.00 | 544464.68 |
| FEB 03 | SHARE DRAFT 39382 TRACE#: 00102490 | -6203.07 | 538261.61 |
| FEB 03 | SHARE DRAFT 1111 TRACE#: 50100800 | -7408.38 | 530853.23 |
| FEB 03 | SHARE DRAFT 39340 TRACE#: 00105525 | -7555.50 | 523297.73 |
| FEB 03 | SHARE DRAFT 39340 TRACE#: 00105525 | -7801.00 | 515496.73 |
| FEB 04 | DEBIT CARD DEBIT  000012195805 HOLIDAY STATIONS 0124 FARGO ND 02-03-22 | -21.87 | 515474.86 |
| FEB 04 | EFT ACH Master  Square Inc 220204P2 220204 | 171.65 | 515646.51 |
| FEB 04 | EFT ACH Master  CRAIG PROPERTIESACH Chgbck | -1200.00 | 514446.51 |
| FEB 04 | DEPOSIT | 6280.00 | 520726.51 |
| FEB 05 | DEBIT CARD DEBIT  000019291425 CASEYS #3354 FARGO ND 02-03-22 | -86.64 | 520639.87 |
| FEB 05 | DEBIT CARD DEBIT  000006396831 DEEKS PIZZA II - UNIVE FARGO ND 02-04-22 | -53.75 | 520586.12 |
| FEB 07 | DEBIT CARD DEBIT  000006775174 CASEYS #3354 FARGO ND 02-05-22 | -93.21 | 520492.91 |
| FEB 07 | SHARE DRAFT 39389 TRACE#: 00109450 | -148.90 | 520344.01 |
| FEB 07 | SHARE DRAFT 39350 TRACE#: 00300030 | -200.00 | 520144.01 |
| FEB 07 | SHARE DRAFT 39440 TRACE#: 00108630 | -370.61 | 519773.40 |
| FEB 07 | SHARE DRAFT 39433 TRACE#: 00109170 | -397.00 | 519376.40 |
| FEB 07 | SHARE DRAFT 39397 TRACE#: 00107165 | -785.75 | 518590.65 |
| FEB 07 | SHARE DRAFT 39357 TRACE#: 00109195 | -861.64 | 517729.01 |
| FEB 07 | SHARE DRAFT 39404 TRACE#: 00108635 | -1046.34 | 516682.67 |
| FEB 07 | SHARE DRAFT 39417 TRACE#: 00107175 | -1062.64 | 515619.94 |
| FEB 07 | SHARE DRAFT 39145 TRACE#: 00107180 | -1078.03 | 514541.91 |
| FEB 07 | SHARE DRAFT 39413 TRACE#: 00107185 | -1519.96 | 513021.95 |
| FEB 07 | SHARE DRAFT 39401 TRACE#: 00109940 | -1931.08 | 511090.87 |
| FEB 07 | SHARE DRAFT 39416 TRACE#: 00107170 | -2426.50 | 508664.37 |
| FEB 07 | SHARE DRAFT 3941 TRACE#: 00106905 | -3551.00 | 505113.37 |
| FEB 07 | SHARE DRAFT 39381 TRACE#: 00112900 | -5208.33 | 499905.04 |
| FEB 07 | SHARE DRAFT 39377 TRACE#: 00109040 | -6166.67 | 493738.37 |
| FEB 07 | WITHDRAWAL  POS 0207 1031 610778 MNRD-FARGO WEST FARGO ND | -217.04 | 493521.33 |
| FEB 07 | WITHDRAWAL  POS 0207 1100 611492 MNRD-FARGO WEST FARGO ND | -139.29 | 493382.04 |
| FEB 07 | DEPOSIT | 15858.00 | 509240.04 |
| FEB 07 | WITHDRAWAL | -3005.00 | 506235.04 |
| FEB 07 | SHARE DRAFT 39387 TRACE#: 00108930 | -80.63 | 506154.41 |
| FEB 07 | SHARE DRAFT 39405 TRACE#: 00111480 | -491.39 | 505663.02 |
| FEB 07 | SHARE DRAFT 39378 TRACE#: 00108190 | -586.40 | 505076.62 |
| FEB 07 | SHARE DRAFT 39379 TRACE#: 00109005 | -778.35 | 504298.27 |
| FEB 07 | SHARE DRAFT 39364 TRACE#: 00109475 | -2192.24 | 502106.03 |
| FEB 07 | SHARE DRAFT 39402 TRACE#: 00106830 | -2581.21 | 499524.82 |
| FEB 07 | SHARE DRAFT 39386 TRACE#: 00112565 | -3173.14 | 496351.68 |
| FEB 07 | SHARE DRAFT 39428 TRACE#: 00107090 | -8000.00 | 488351.68 |
| FEB 08 | DEBIT CARD DEBIT  000015906850 HOLIDAY STATIONS 0124 FARGO ND 02-07-22 | -27.94 | 488323.74 |
| FEB 08 | DEPOSIT | 3331.00 | 491654.74 |
| FEB 08 | WITHDRAWAL-CASH | -3000.00 | 488654.74 |
| FEB 08 | DEPOSIT | 6235.29 | 494890.03 |
| FEB 08 | SHARE DRAFT 39410 TRACE#: 00101365 | -96.75 | 494793.28 |
| FEB 08 | SHARE DRAFT 39369 TRACE#: 00101750 | -116.95 | 494676.33 |
| FEB 08 | SHARE DRAFT 39398 TRACE#: 00125745 | -255.54 | 494420.79 |
| FEB 08 | SHARE DRAFT 39445 TRACE#: 00121725 | -423.00 | 493997.79 |
| FEB 08 | SHARE DRAFT 39438 TRACE#: 00120350 | -544.96 | 493452.83 |
| FEB 08 | SHARE DRAFT 39412 TRACE#: 00120720 | -600.00 | 492852.83 |
| FEB 08 | SHARE DRAFT 39400 TRACE#: 00101290 | -763.24 | 492089.59 |
| FEB 08 | SHARE DRAFT 39366 TRACE#: 00123680 | -1023.76 | 491065.83 |
| FEB 08 | SHARE DRAFT 39358 TRACE#: 00123670 | -3000.00 | 488065.83 |

*- Continued -*

RRSB FCCU Subpoena 021067

**FCCU First Community Credit Union**

313 10th St SE | PO Box 1280
Jamestown, ND 58401-280
myFCCU.com

**Account Number:** *****4695
**Statement End Date:** 02-28-22
**Page:** 3 of 8

| Date | Transaction Description | Amount | Balance |
|------|------------------------|-------:|--------:|
| FEB 08 | SHARE DRAFT 39367 TRACE#: 00123685 | -3374.55 | 484691.28 |
| FEB 08 | SHARE DRAFT 39370 TRACE#: 00113920 | -4108.25 | 480583.03 |
| FEB 08 | SHARE DRAFT 39374 TRACE#: 00118685 | -4619.42 | 475963.61 |
| FEB 08 | SHARE DRAFT 39444 TRACE#: 00101230 | -5089.50 | 470874.11 |
| FEB 08 | SHARE DRAFT 39365 TRACE#: 00123675 | -7500.00 | 463374.11 |
| FEB 08 | SHARE DRAFT 39483 TRACE#: 00111700 | -24696.25 | 438677.86 |
| FEB 09 | EFT GRINNELL MUTUAL  Grinnell Mutual PREM PYMT 020922 | -154.91 | 438522.95 |
| FEB 09 | EFT ACH Master  CAPITAL ONE MOBILE PMT220208 | -10000.00 | 428522.95 |
| FEB 09 | SHARE DRAFT 39393 TRACE#: 00101245 | -194.74 | 428328.21 |
| FEB 09 | SHARE DRAFT 1111 TRACE#: 71000005 | -135.00 | 428193.21 |
| FEB 09 | SHARE DRAFT 39484 TRACE#: 00111220 | -169.56 | 428023.65 |
| FEB 09 | SHARE DRAFT 39406 TRACE#: 00104635 | -175.00 | 427848.65 |
| FEB 09 | SHARE DRAFT 1111 TRACE#: 53100125 | -11492.30 | 416356.35 |
| FEB 09 | SHARE DRAFT 39463 TRACE#: 00104480 | -41772.70 | 374583.65 |
| FEB 10 | DEBIT CARD DEBIT  000006326038 CASEYS #3354 FARGO ND 02-08-22 | -92.93 | 374490.72 |
| FEB 10 | EFT ACH Master  Square Inc 220210P2 220210 | 1060.72 | 375551.44 |
| FEB 10 | DEPOSIT | 3191.00 | 378742.44 |
| FEB 10 | SHARE DRAFT 39456 TRACE#: 00108340 | -55.67 | 378686.77 |
| FEB 10 | SHARE DRAFT 39385 TRACE#: 00108030 | -64.50 | 378622.27 |
| FEB 10 | SHARE DRAFT 39414 TRACE#: 00105290 | -75.24 | 378547.03 |
| FEB 10 | SHARE DRAFT 39403 TRACE#: 00103810 | -158.28 | 378388.75 |
| FEB 10 | SHARE DRAFT 39411 TRACE#: 00107435 | -508.27 | 377880.48 |
| FEB 10 | SHARE DRAFT 39407 TRACE#: 00103665 | -657.98 | 377222.50 |
| FEB 10 | SHARE DRAFT 39392 TRACE#: 00103860 | -673.40 | 376549.10 |
| FEB 10 | SHARE DRAFT 39391 TRACE#: 00107900 | -779.39 | 375769.71 |
| FEB 10 | SHARE DRAFT 39426 TRACE#: 00102335 | -1323.97 | 374445.74 |
| FEB 10 | SHARE DRAFT 39388 TRACE#: 00102340 | -2127.00 | 372318.74 |
| FEB 10 | SHARE DRAFT 39436 TRACE#: 00107565 | -3902.50 | 368416.24 |
| FEB 10 | SHARE DRAFT 39409 TRACE#: 00112000 | -5520.37 | 362895.87 |
| FEB 11 | EFT ACH Master  State Auto - InbVENDOR PMT220210 | -632.53 | 362263.34 |
| FEB 11 | EFT ACH Master  State Auto - InbVENDOR PMT220210 | -378.30 | 361885.04 |
| FEB 11 | EFT ACH Master  State Auto - InbVENDOR PMT220210 | -725.65 | 361159.39 |
| FEB 11 | DEPOSIT | 910.00 | 362069.39 |
| FEB 11 | WITHDRAWAL  POS 0211 1533 777625 CASEYS GE 5680 23RD AV FARGO ND | -1.61 | 362067.78 |
| FEB 11 | WITHDRAWAL  POS 0211 1537 777813 CASEYS GE 5680 23RD AV FARGO ND | -76.62 | 361991.16 |
| FEB 11 | WITHDRAWAL-CASH | -3200.00 | 358791.16 |
| FEB 11 | SHARE DRAFT 39458 TRACE#: 00108730 | -23.68 | 358767.48 |
| FEB 11 | SHARE DRAFT 39360 TRACE#: 00110335 | -74.40 | 358693.08 |
| FEB 11 | SHARE DRAFT 39372 TRACE#: 00107215 | -125.00 | 358568.08 |
| FEB 11 | SHARE DRAFT 39450 TRACE#: 00110225 | -152.75 | 358415.33 |
| FEB 11 | SHARE DRAFT 39452 TRACE#: 00107710 | -401.87 | 358013.46 |
| FEB 11 | SHARE DRAFT 39451 TRACE#: 00111300 | -639.25 | 357374.21 |
| FEB 11 | SHARE DRAFT 39430 TRACE#: 00102770 | -829.56 | 356544.65 |
| FEB 11 | SHARE DRAFT 39376 TRACE#: 00106300 | -850.00 | 355694.65 |
| FEB 11 | SHARE DRAFT 39485 TRACE#: 00110410 | -1423.86 | 354270.79 |
| FEB 11 | SHARE DRAFT 1111 TRACE#: 81600005 | -2200.00 | 352070.79 |
| FEB 11 | SHARE DRAFT 39384 TRACE#: 00102725 | -2542.50 | 349528.29 |
| FEB 11 | SHARE DRAFT 39437 TRACE#: 00102765 | -3497.89 | 346030.40 |
| FEB 11 | SHARE DRAFT 39487 TRACE#: 00111780 | -3976.08 | 342054.32 |
| FEB 11 | SHARE DRAFT 39332 TRACE#: 00103460 | -4800.00 | 337254.32 |
| FEB 11 | SHARE DRAFT 39399 TRACE#: 00109775 | -4800.00 | 332454.32 |
| FEB 11 | SHARE DRAFT 39390 TRACE#: 00108735 | -4840.52 | 327613.80 |
| FEB 11 | SHARE DRAFT 1111 TRACE#: 71000005 | -5871.25 | 321742.55 |
| FEB 11 | SHARE DRAFT 39359 TRACE#: 00104245 | -6007.60 | 315734.95 |
| FEB 11 | SHARE DRAFT 39371 TRACE#: 00107365 | -10000.00 | 305734.95 |
| FEB 11 | SHARE DRAFT 39491 TRACE#: 00108450 | -15593.02 | 290141.93 |
| FEB 13 | WITHDRAWAL  POS 0213 1615 863100 CASEYS GE 5680 23RD AV FARGO ND | -84.27 | 290057.66 |
| FEB 14 | EFT ACH Master  Square Inc 220214P2 220214 | 677.71 | 290735.37 |
| FEB 14 | DEPOSIT  Incoming Wire Transfer-276999610 | 52500.00 | 343235.37 |
| FEB 14 | WITHDRAWAL  Wire Transfer Fee-276999612 | -20.00 | 343215.37 |

- Continued -

RRSB FCCU Subpoena 021068

**First Community Credit Union**
319 18th St SE | PO Box 2180
Jamestown, ND 58401-280
*myFCCU.com*

**Account Number:** *****4695
**Statement End Date:** 02-28-22
**Page:** 4 of 8

| Date | Transaction Description | Amount | Balance |
|------|-------------------------|--------|---------|
| FEB 14 | TRANSFER 2 | 50000.00 | 393215.37 |
| FEB 14 | WITHDRAWAL-CASH | -3000.00 | 390215.37 |
| FEB 14 | DEPOSIT | 1334.00 | 391549.37 |
| FEB 14 | DEPOSIT | 600.00 | 392149.37 |
| FEB 14 | DEPOSIT | 1200.00 | 393349.37 |
| FEB 14 | SHARE DRAFT 39494 TRACE#: 00211720 | -178.81 | 393170.56 |
| FEB 14 | SHARE DRAFT 39488 TRACE#: 00204920 | -843.48 | 392327.08 |
| FEB 14 | SHARE DRAFT 39434 TRACE#: 00213910 | -3875.97 | 388451.11 |
| FEB 14 | SHARE DRAFT 39327 TRACE#: 00212120 | -68945.09 | 319506.02 |
| FEB 15 | EFT ACH Master  Square Inc 220215P2 220215 | 921.91 | 320427.93 |
| FEB 15 | EFT ACH Master  State Auto - InbVENDOR PMT220214 | -837.60 | 319590.33 |
| FEB 15 | WITHDRAWAL  TRANSFER FROM CP TO SYDNEY | -1200.00 | 318390.33 |
| FEB 15 | SHARE DRAFT 39493 TRACE#: 00115930 | -125.00 | 318265.33 |
| FEB 15 | SHARE DRAFT 39497 TRACE#: 00101065 | -125.00 | 318140.33 |
| FEB 15 | SHARE DRAFT 39486 TRACE#: 00111250 | -324.81 | 317815.52 |
| FEB 15 | SHARE DRAFT 39517 TRACE#: 00113100 | -910.00 | 316905.52 |
| FEB 15 | SHARE DRAFT 39518 TRACE#: 00111305 | -1084.88 | 315820.64 |
| FEB 15 | SHARE DRAFT 39457 TRACE#: 00109095 | -1393.75 | 314426.89 |
| FEB 15 | SHARE DRAFT 39513 TRACE#: 00113015 | -1421.11 | 313005.78 |
| FEB 15 | SHARE DRAFT 39501 TRACE#: 00112820 | -1500.00 | 311505.78 |
| FEB 15 | SHARE DRAFT 39490 TRACE#: 00112995 | -4788.35 | 306717.43 |
| FEB 15 | SHARE DRAFT 39492 TRACE#: 00112815 | -5150.00 | 301567.43 |
| FEB 16 | DEBIT CARD DEBIT  000023045553 CASEYS #3354 FARGO ND 02-14-22 | -52.63 | 301514.80 |
| FEB 16 | EFT ACH Master  CAPITAL ONE MOBILE PMT220215 | -7000.00 | 294514.80 |
| FEB 16 | SHARE DRAFT 39347 TRACE#: 00111160 | -412.71 | 294102.09 |
| FEB 16 | SHARE DRAFT 39395 TRACE#: 00109650 | -464.48 | 293637.61 |
| FEB 16 | SHARE DRAFT 39383 TRACE#: 00109655 | -1612.01 | 292025.60 |
| FEB 16 | SHARE DRAFT 39408 TRACE#: 00109660 | -2765.88 | 289259.72 |
| FEB 16 | SHARE DRAFT 39478 TRACE#: 00109230 | -4049.00 | 285210.72 |
| FEB 16 | SHARE DRAFT 39441 TRACE#: 00104790 | -7675.07 | 277535.65 |
| FEB 16 | SHARE DRAFT 39380 TRACE#: 00114835 | -8450.24 | 269085.41 |
| FEB 16 | SHARE DRAFT 39361 TRACE#: 00115550 | -76459.45 | 192625.96 |
| FEB 17 | DEBIT CARD CREDIT  000015233179 WF WAYFAIR3705234823 8662638325 MA 02-16-22 | 128.99 | 192754.95 |
| FEB 17 | DEBIT CARD DEBIT  000019296190 LAKELAND GENERAL STORE PELICAN RAPIDMN 02-16-22 | -5.15 | 192749.80 |
| FEB 17 | WITHDRAWAL  POS 0217 0926 008537 MNRD-FARGO WEST FARGO ND | -53.74 | 192696.06 |
| FEB 17 | SHARE DRAFT 39520 TRACE#: 00108795 | -57.58 | 192638.48 |
| FEB 17 | SHARE DRAFT 39495 TRACE#: 00110210 | -262.50 | 192375.98 |
| FEB 17 | SHARE DRAFT 39505 TRACE#: 00110725 | -330.00 | 192045.98 |
| FEB 17 | SHARE DRAFT 39512 TRACE#: 00105175 | -7000.00 | 185045.98 |
| FEB 17 | SHARE DRAFT 39335 TRACE#: 00107330 | -98499.94 | 86546.04 |
| FEB 17 | TRANSFER 2  PER JESSE | 50000.00 | 136546.04 |
| FEB 17 | DEBIT CARD DEBIT  000012377237 MARATHON PETRO265439 PELICAN RAPIDMN 02-16-22 | -90.00 | 136456.04 |
| FEB 18 | DEBIT CARD DEBIT  000019472983 CASEYS #2207 DILWORTH MN 02-16-22 | -101.33 | 136354.71 |
| FEB 18 | EFT ACH Master  Square Inc 220218P2 220218 | 962.44 | 137317.15 |
| FEB 18 | WITHDRAWAL  TRANSFER FROM CP TO SYDNEY | -2000.00 | 135317.15 |
| FEB 18 | DEPOSIT | 2297.68 | 137614.83 |
| FEB 18 | WITHDRAWAL-CASH | -1400.00 | 136214.83 |
| FEB 18 | SHARE DRAFT 39919 TRACE#: 00101310 | -204.15 | 136010.68 |
| FEB 18 | SHARE DRAFT 39516 TRACE#: 00100235 | -83.11 | 135927.57 |
| FEB 18 | SHARE DRAFT 39504 TRACE#: 00100035 | -148.90 | 135778.67 |
| FEB 18 | SHARE DRAFT 39453 TRACE#: 00114290 | -366.36 | 135412.31 |
| FEB 18 | SHARE DRAFT 39514 TRACE#: 00108140 | -750.88 | 134661.43 |
| FEB 18 | SHARE DRAFT 39521 TRACE#: 00109475 | -1823.42 | 132838.01 |
| FEB 18 | SHARE DRAFT 39527 TRACE#: 71800105 | -2000.00 | 130838.01 |
| FEB 18 | SHARE DRAFT 39419 TRACE#: 00108885 | -2891.62 | 127946.39 |
| FEB 18 | SHARE DRAFT 39523 TRACE#: 00109450 | -3400.00 | 124546.39 |
| FEB 18 | SHARE DRAFT 39515 TRACE#: 00106345 | -10000.00 | 114546.39 |
| FEB 18 | SHARE DRAFT 39502 TRACE#: 00109030 | -15000.00 | 99546.39 |
| FEB 18 | SHARE DRAFT 39431 TRACE#: 00109480 | -21860.59 | 77685.80 |

*- Continued -*

RRSB FCCU Subpoena 021069

**First Community Credit Union**
313 10th St SE PO Box 280
Jamestown, ND 58401-280
myFCCU.com

**Account Number:** *****4695
**Statement End Date:** 02-28-22
**Page:** 5 of 8

| Date | Transaction Description | Amount | Balance |
|------|------|------|------|
| FEB 19 | DEBIT CARD DEBIT  000006802556 MARATHON PETRO265439 PELICAN RAPIDMN 02-18-22 | -90.00 | 77595.80 |
| FEB 19 | DEBIT CARD DEBIT  000019844222 MARATHON PETRO265439 PELICAN RAPIDMN 02-18-22 | -26.60 | 77569.20 |
| FEB 20 | DEBIT CARD DEBIT  000006950540 CENEX PETRO SE09900549 HARWOOD ND 02-19-22 | -48.39 | 77520.81 |
| FEB 20 | DEBIT CARD DEBIT  000019998857 SIMONSON FAR10200137 FARGO ND 02-19-22 | -91.29 | 77429.52 |
| FEB 22 | EFT ACH Master  CAPITAL ONE MOBILE PMT220221 | -10000.00 | 67429.52 |
| FEB 22 | EFT ACH Master  Square Inc 220222P2 220222 | 506.47 | 67935.99 |
| FEB 22 | SHARE DRAFT 39524 TRACE#: 00108865 | -26.57 | 67909.42 |
| FEB 22 | SHARE DRAFT 60235 TRACE#: 71000050 | -2594.87 | 65314.55 |
| FEB 23 | DEPOSIT | 1114.99 | 66429.54 |
| FEB 23 | DEPOSIT | 2558.75 | 68988.29 |
| FEB 23 | SHARE DRAFT 60236 TRACE#: 00102810 | -65.00 | 68923.29 |
| FEB 23 | SHARE DRAFT 39508 TRACE#: 00106900 | -136.48 | 68786.81 |
| FEB 23 | SHARE DRAFT 39522 TRACE#: 00112205 | -1000.00 | 67786.81 |
| FEB 23 | SHARE DRAFT 39528 TRACE#: 00101215 | -1372.50 | 66414.31 |
| FEB 23 | SHARE DRAFT 39526 TRACE#: 00104770 | -4650.31 | 61764.00 |
| FEB 24 | DEBIT CARD DEBIT  000019664389 CASEYS #3354 FARGO ND 02-22-22 | -36.81 | 61727.19 |
| FEB 24 | WITHDRAWAL  POS 0224 1444 284616 MNRD-MOORHEAD MOORHEAD MN | -168.51 | 61558.68 |
| FEB 24 | DEPOSIT  LAUNDRY COIN, BAG 815, 2/24/2022 | 894.00 | 62452.68 |
| FEB 24 | WITHDRAWAL  POS 0224 1700 289629 CASEYS FA 5151 PROSPER FARGO ND | -110.89 | 62341.79 |
| FEB 25 | DEBIT CARD DEBIT  000019870864 CASEYS #3893 FARGO ND 02-23-22 | -100.14 | 62241.65 |
| FEB 25 | DEPOSIT  Incoming Wire Transfer-278206191 | 100000.00 | 162241.65 |
| FEB 25 | WITHDRAWAL  Wire Transfer Fee-278206193 | -20.00 | 162221.65 |
| FEB 25 | DEPOSIT | 70000.00 | 232221.65 |
| FEB 25 | SHARE DRAFT 39507 TRACE#: 00105440 | -560.00 | 231661.65 |
| FEB 25 | SHARE DRAFT 39500 TRACE#: 00103045 | -1389.00 | 230272.65 |
| FEB 25 | SHARE DRAFT 39498 TRACE#: 00102205 | -1666.67 | 228605.98 |
| FEB 27 | DEBIT CARD DEBIT  000006337825 CASEYS #3354 FARGO ND 02-25-22 | -61.18 | 228544.80 |
| FEB 28 | DEBIT CARD DEBIT  000019589636 CASEYS #3354 FARGO ND 02-26-22 | -94.97 | 228449.83 |
| FEB 28 | DEBIT CARD DEBIT  000019590523 CENEX PETRO SE09900549 HARWOOD ND 02-27-22 | -28.46 | 228421.37 |
| FEB 28 | EFT COMMONWEALTH CU  APPLECARD GSBANKPAYMENT 022522 | -5458.80 | 222962.57 |
| FEB 28 | WITHDRAWAL  TRANSFER FROM CP TO SYDNEY'S CHECKING | -3500.00 | 219462.57 |
| FEB 28 | DEPOSIT | 3473.70 | 222936.27 |
| FEB 28 | ID THEFT COVERAGE | -5.00 | 222931.27 |
| FEB 28 | SHARE DRAFT 39461 TRACE#: 00105565 | -1792.58 | 221138.69 |
| FEB 28 | SHARE DRAFT 39310 TRACE#: 00106940 | -10145.00 | 210993.69 |

ENDING BALANCE **210,993.69**

### Check Summary
* = break in check sequence

| SD# | Date | Amount |
|------|------|------|
| 1111 | 02-03-22 | 848.46 |
| 1111 | 02-03-22 | 973.23 |
| 1111 | 02-03-22 | 2500.00 |
| 1111 | 02-03-22 | 7408.38 |
| 1111 | 02-09-22 | 135.00 |
| 1111 | 02-09-22 | 11492.30 |
| 1111 | 02-11-22 | 2200.00 |
| 1111 | 02-11-22 | 5871.25 |
| 3941 * | 02-04-22 | 3551.00 |
| 9439 * | 02-03-22 | 1639.22 |
| 39145 * | 02-04-22 | 1078.03 |
| 39151 * | 02-03-22 | 7555.50 |
| 39272 * | 02-01-22 | 1464.38 |
| 39274 * | 02-02-22 | 1495.31 |
| 39309 * | 02-01-22 | 24683.00 |
| 39310 | 02-28-22 | 10145.00 |

### Check Summary
* = break in check sequence

| SD# | Date | Amount |
|------|------|------|
| 39324 * | 02-01-22 | 1120.00 |
| 39325 | 02-01-22 | 1275.00 |
| 39327 * | 02-14-22 | 68945.09 |
| 39328 | 02-02-22 | 183.18 |
| 39329 | 02-01-22 | 1517.60 |
| 39330 | 02-01-22 | 3205.00 |
| 39332 * | 02-11-22 | 4800.00 |
| 39335 * | 02-17-22 | 98499.94 |
| 39337 * | 02-01-22 | 6920.38 |
| 39340 * | 02-03-22 | 7801.00 |
| 39342 * | 02-01-22 | 3000.00 |
| 39345 * | 02-01-22 | 3866.16 |
| 39347 * | 02-16-22 | 412.71 |
| 39348 | 02-03-22 | 540.00 |
| 39350 * | 02-04-22 | 200.00 |
| 39351 | 02-01-22 | 10000.00 |

- Continued -

RRSB FCCU Subpoena 021070

**First Community Credit Union**
314 10th St SE | PO Box 280
Jamestown, ND 58401-280
*myFCCU.com*

**Account Number:** *****4695
**Statement End Date:** 02-28-22
**Page:** 6 of 8

## Check Summary
\* = break in check sequence

| SD# | Date | Amount |
|---|---|---|
| 39352 | 02-01-22 | 12882.40 |
| 39355 * | 02-02-22 | 5306.48 |
| 39356 | 02-02-22 | 2000.00 |
| 39357 | 02-04-22 | 861.64 |
| 39358 | 02-08-22 | 3000.00 |
| 39359 | 02-11-22 | 6007.60 |
| 39360 | 02-11-22 | 74.40 |
| 39361 | 02-16-22 | 76459.45 |
| 39364 * | 02-07-22 | 2192.24 |
| 39365 | 02-08-22 | 7500.00 |
| 39366 | 02-08-22 | 1023.76 |
| 39367 | 02-08-22 | 3374.55 |
| 39369 * | 02-08-22 | 116.95 |
| 39370 | 02-08-22 | 4108.25 |
| 39371 | 02-11-22 | 10000.00 |
| 39372 | 02-11-22 | 125.00 |
| 39374 * | 02-08-22 | 4619.42 |
| 39376 * | 02-11-22 | 850.00 |
| 39377 | 02-04-22 | 6166.67 |
| 39378 | 02-07-22 | 586.40 |
| 39379 | 02-07-22 | 778.35 |
| 39380 | 02-16-22 | 8450.24 |
| 39381 | 02-04-22 | 5208.33 |
| 39382 | 02-03-22 | 6203.07 |
| 39383 | 02-16-22 | 1612.01 |
| 39384 | 02-11-22 | 2542.50 |
| 39385 | 02-10-22 | 64.50 |
| 39386 | 02-07-22 | 3173.14 |
| 39387 | 02-07-22 | 80.63 |
| 39388 | 02-10-22 | 2127.00 |
| 39389 | 02-04-22 | 148.90 |
| 39390 | 02-11-22 | 4840.52 |
| 39391 | 02-10-22 | 779.39 |
| 39392 | 02-10-22 | 673.40 |
| 39393 | 02-08-22 | 194.74 |
| 39395 * | 02-16-22 | 464.48 |
| 39397 * | 02-04-22 | 785.75 |
| 39398 | 02-08-22 | 255.54 |
| 39399 | 02-11-22 | 4800.00 |
| 39400 | 02-08-22 | 763.24 |
| 39401 | 02-04-22 | 1931.08 |
| 39402 | 02-07-22 | 2581.21 |
| 39403 | 02-10-22 | 158.28 |
| 39404 | 02-04-22 | 1046.34 |
| 39405 | 02-07-22 | 491.39 |
| 39406 | 02-09-22 | 175.00 |
| 39407 | 02-10-22 | 657.98 |
| 39408 | 02-16-22 | 2765.88 |
| 39409 | 02-10-22 | 5520.37 |

## Check Summary
\* = break in check sequence

| SD# | Date | Amount |
|---|---|---|
| 39410 | 02-08-22 | 96.75 |
| 39411 | 02-10-22 | 508.27 |
| 39412 | 02-08-22 | 600.00 |
| 39413 | 02-04-22 | 1519.96 |
| 39414 | 02-10-22 | 75.24 |
| 39416 * | 02-04-22 | 2426.50 |
| 39417 | 02-04-22 | 1062.73 |
| 39419 * | 02-18-22 | 2891.62 |
| 39426 * | 02-10-22 | 1323.97 |
| 39428 * | 02-07-22 | 8000.00 |
| 39430 * | 02-11-22 | 829.56 |
| 39431 | 02-18-22 | 21860.59 |
| 39433 * | 02-04-22 | 397.00 |
| 39434 | 02-14-22 | 3875.97 |
| 39436 * | 02-10-22 | 3902.50 |
| 39437 | 02-11-22 | 3497.89 |
| 39438 | 02-08-22 | 544.96 |
| 39440 * | 02-04-22 | 370.61 |
| 39441 | 02-16-22 | 7675.07 |
| 39442 | 02-03-22 | 1064.50 |
| 39443 | 02-02-22 | 12200.00 |
| 39444 | 02-08-22 | 5089.50 |
| 39445 | 02-08-22 | 423.00 |
| 39446 | 02-01-22 | 3218.50 |
| 39447 | 02-02-22 | 723.11 |
| 39449 * | 02-02-22 | 180.00 |
| 39450 | 02-11-22 | 152.75 |
| 39451 | 02-11-22 | 639.25 |
| 39452 | 02-11-22 | 401.87 |
| 39453 | 02-18-22 | 366.36 |
| 39456 * | 02-10-22 | 55.67 |
| 39457 | 02-15-22 | 1393.75 |
| 39458 | 02-11-22 | 23.68 |
| 39461 * | 02-28-22 | 1792.58 |
| 39463 * | 02-09-22 | 41772.70 |
| 39478 * | 02-16-22 | 4049.00 |
| 39483 * | 02-08-22 | 24696.25 |
| 39484 | 02-09-22 | 169.56 |
| 39485 | 02-11-22 | 1423.86 |
| 39486 | 02-15-22 | 324.81 |
| 39487 | 02-11-22 | 3976.08 |
| 39488 | 02-14-22 | 843.48 |
| 39490 * | 02-15-22 | 4788.35 |
| 39491 | 02-11-22 | 15593.02 |
| 39492 | 02-15-22 | 5150.00 |
| 39493 | 02-15-22 | 125.00 |
| 39494 | 02-14-22 | 178.81 |
| 39495 | 02-17-22 | 262.50 |
| 39497 * | 02-15-22 | 125.00 |

*- Continued -*

RRSB FCCU Subpoena 021071

**FCCU First Community Credit Union**
313 10th St SE | PO Box 1280
Jamestown, ND 58401-280
*myFCCU.com*

**Account Number:** *****4695
**Statement End Date:** 02-28-22
**Page:** 7 of 8

## Check Summary
*\* = break in check sequence*

| SD# | Date | Amount |
|---|---|---|
| 39498 | 02-25-22 | 1666.67 |
| 39500 * | 02-25-22 | 1389.00 |
| 39501 | 02-15-22 | 1500.00 |
| 39502 | 02-18-22 | 15000.00 |
| 39504 * | 02-18-22 | 148.90 |
| 39505 | 02-17-22 | 330.00 |
| 39507 * | 02-25-22 | 560.00 |
| 39508 | 02-23-22 | 136.48 |
| 39512 * | 02-17-22 | 7000.00 |
| 39513 | 02-15-22 | 1421.11 |
| 39514 | 02-18-22 | 750.88 |
| 39515 | 02-18-22 | 10000.00 |
| 39516 | 02-18-22 | 83.11 |

## Check Summary
*\* = break in check sequence*

| SD# | Date | Amount |
|---|---|---|
| 39517 | 02-15-22 | 910.00 |
| 39518 | 02-15-22 | 1084.88 |
| 39520 * | 02-17-22 | 57.58 |
| 39521 | 02-18-22 | 1823.42 |
| 39522 | 02-23-22 | 1000.00 |
| 39523 | 02-18-22 | 3400.00 |
| 39524 | 02-22-22 | 26.57 |
| 39526 * | 02-23-22 | 4650.31 |
| 39527 | 02-18-22 | 2000.00 |
| 39528 | 02-23-22 | 1372.50 |
| 39919 * | 02-17-22 | 204.15 |
| 60235 * | 02-22-22 | 2594.87 |
| 60236 | 02-23-22 | 65.00 |

## Deposits, Dividends and Other Credits

| Date | Amount |
|---|---|
| 02-01-2022 | 4939.50 |
| 02-01-2022 | 40000.00 |
| 02-02-2022 | 22040.00 |
| 02-02-2022 | 6585.00 |
| 02-03-2022 | 274043.60 |
| 02-03-2022 | 1100.00 |
| 02-04-2022 | 171.65 |
| 02-04-2022 | 6280.00 |
| 02-07-2022 | 15858.00 |
| 02-08-2022 | 3331.00 |
| 02-08-2022 | 6235.29 |

## Deposits, Dividends and Other Credits

| Date | Amount |
|---|---|
| 02-10-2022 | 1060.72 |
| 02-10-2022 | 3191.00 |
| 02-11-2022 | 910.00 |
| 02-14-2022 | 677.71 |
| 02-14-2022 | 52500.00 |
| 02-14-2022 | 50000.00 |
| 02-14-2022 | 1334.00 |
| 02-14-2022 | 600.00 |
| 02-14-2022 | 1200.00 |
| 02-15-2022 | 921.91 |
| 02-17-2022 | 128.99 |

## Deposits, Dividends and Other Credits

| Date | Amount |
|---|---|
| 02-17-2022 | 50000.00 |
| 02-18-2022 | 962.44 |
| 02-18-2022 | 2297.68 |
| 02-22-2022 | 506.47 |
| 02-23-2022 | 1114.99 |
| 02-23-2022 | 2558.75 |
| 02-24-2022 | 894.00 |
| 02-25-2022 | 100000.00 |
| 02-25-2022 | 70000.00 |
| 02-28-2022 | 3473.70 |

| | | |
|---|---|---|
| **Total Dividends** | 0 | 0.00 |
| **Total Deposits and Other Credits** | 32 | 724916.40 |

## Withdrawals, Fees and Other Debits

| Date | Amount |
|---|---|
| 02-01-2022 | -15.00 |
| 02-01-2022 | -158.28 |
| 02-01-2022 | -2701.61 |
| 02-01-2022 | -12500.00 |
| 02-02-2022 | -100.99 |
| 02-02-2022 | -1705.85 |
| 02-02-2022 | -12.88 |
| 02-03-2022 | -99.03 |
| 02-03-2022 | -20.00 |
| 02-04-2022 | -21.87 |
| 02-04-2022 | -1200.00 |
| 02-05-2022 | -86.64 |
| 02-05-2022 | -53.75 |
| 02-07-2022 | -93.21 |
| 02-07-2022 | -217.04 |
| 02-07-2022 | -139.29 |
| 02-07-2022 | -3005.00 |

## Withdrawals, Fees and Other Debits

| Date | Amount |
|---|---|
| 02-08-2022 | -27.94 |
| 02-08-2022 | -3000.00 |
| 02-09-2022 | -154.91 |
| 02-08-2022 | -10000.00 |
| 02-10-2022 | -92.93 |
| 02-11-2022 | -632.53 |
| 02-11-2022 | -378.30 |
| 02-11-2022 | -725.65 |
| 02-11-2022 | -1.61 |
| 02-11-2022 | -76.62 |
| 02-11-2022 | -3200.00 |
| 02-13-2022 | -84.27 |
| 02-14-2022 | -20.00 |
| 02-14-2022 | -3000.00 |
| 02-15-2022 | -837.60 |
| 02-15-2022 | -1200.00 |
| 02-16-2022 | -52.63 |

## Withdrawals, Fees and Other Debits

| Date | Amount |
|---|---|
| 02-15-2022 | -7000.00 |
| 02-17-2022 | -5.15 |
| 02-17-2022 | -53.74 |
| 02-17-2022 | -90.00 |
| 02-18-2022 | -101.33 |
| 02-18-2022 | -2000.00 |
| 02-18-2022 | -1400.00 |
| 02-19-2022 | -90.00 |
| 02-19-2022 | -26.60 |
| 02-20-2022 | -48.39 |
| 02-20-2022 | -91.29 |
| 02-21-2022 | -10000.00 |
| 02-24-2022 | -36.81 |
| 02-24-2022 | -168.51 |
| 02-24-2022 | -110.89 |
| 02-25-2022 | -100.14 |
| 02-25-2022 | -20.00 |

*- Continued -*

RRSB FCCU Subpoena 021072

**FCCU** *First Community Credit Union*

318 10th St SE | PO Box 6180
Jamestown, ND 58401-280
*myFCCU.com*

**Account Number:** \*\*\*\*\*4695
**Statement End Date:** 02-28-22
**Page:** 8 of 8

| Withdrawals, Fees and Other Debits | |
|---|---|
| Date | Amount |
| 02-27-2022 | -61.18 |
| 02-28-2022 | -94.97 |

| Withdrawals, Fees and Other Debits | |
|---|---|
| Date | Amount |
| 02-28-2022 | -28.46 |
| 02-28-2022 | -5458.80 |

| Withdrawals, Fees and Other Debits | |
|---|---|
| Date | Amount |
| 02-28-2022 | -3500.00 |
| 02-28-2022 | -5.00 |

| Total Fees | 2 | -20.00 |
|---|---|---|
| Total withdrawal and Other Debits | 55 | -76086.69 |

**MEMBERSHIP SAVINGS**   ACCT# **3**      **02-01-22** THRU **02-28-22**                          PREVIOUS BALANCE **5.00**

ENDING BALANCE                                                                                                    **5.00**

**Dividend Summary**

| Account Number | New Balance | Dividends YTD |
|---|---|---|
| 1 | 0.01 | 0.00 |
| 2 | 210,993.69 | 0.00 |
| 3 | 5.00 | 0.00 |
| Total Dividends YTD: **$0.00** | | |

*- End of Statement -*

RRSB FCCU Subpoena 021073

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $561,365.10 | 04-17-2023 | 05-31-2023 | 451677 | JN | | * * * | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

Borrower:   GENERATIONS ON 1ST, LLC (TIN: [____]6148)          Lender:   Red River State Bank
1405 1ST AVE N                                                         Halstad
FARGO, ND 58102                                                        300 2nd Ave West
                                                                        PO Box 25
                                                                        Halstad, MN 56548-0025

**EXHIBIT 9-A**

---

Principal Amount: $561,365.10                Interest Rate: 2.000%                Date of Note: April 17, 2023

PROMISE TO PAY. GENERATIONS ON 1ST, LLC ("Borrower") promises to pay to Red River State Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Five Hundred Sixty-one Thousand Three Hundred Sixty-five & 10/100 Dollars ($561,365.10), together with interest on the unpaid principal balance from April 17, 2023, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 2.000% per annum, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

PAYMENT. Borrower will pay this loan in one principal payment of $561,365.10 plus interest on May 31, 2023. This payment due on May 31, 2023, will be for all principal and all accrued interest not yet paid. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Any accrued interest not paid when due is added to principal and thereafter will accrue interest as principal.

INTEREST CALCULATION METHOD. Interest on this Note is computed on a 365/365 basis; that is, by applying the ratio of the interest rate over the number of days in a year (365 for all years, including leap years), multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

RECEIPT OF PAYMENTS. All payments must be made in U.S. dollars and must be received by Lender at:

Red River State Bank
Halstad
300 2nd Ave West
PO Box 25
Halstad, MN 56548-0025

All payments must be received by Lender consistent with any written payment instructions provided by Lender. If a payment is made consistent with Lender's payment instructions but received after 2:00 PM CST on a business day, Lender will credit Borrower's payment on the next business day.

PREPAYMENT. Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Red River State Bank, PO Box 25 Halstad, MN 56548.

LATE CHARGE. If a payment is 11 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $7.26, whichever is greater.

INTEREST AFTER DEFAULT. Upon default, including failure to pay upon final maturity, the total sum due under this Note will continue to accrue interest at the interest rate under this Note.

DEFAULT. Each of the following shall constitute an event of default ("Event of Default") under this Note:

Payment Default. Borrower fails to make any payment when due under this Note.

Other Defaults. Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

False Statements. Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf, or made by Guarantor, or any other guarantor, endorser, surety, or accommodation party, under this Note or the related documents in connection with the obtaining of the loan evidenced by this Note or any security document directly or indirectly securing repayment of this Note is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

Death or Insolvency. The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

Creditor or Forfeiture Proceedings. Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

Execution; Attachment. Any execution or attachment is levied against the Collateral, and such execution or attachment is not set aside, discharged or stayed within thirty (30) days after the same is levied.

Change in Zoning or Public Restriction. Any change in any zoning ordinance or regulation or any other public restriction is enacted, adopted or implemented, that limits or defines the uses which may be made of the Collateral such that the present or intended use of the Collateral,

RRSB (GO4) 022885

Loan No: 451677                                                                              Page 2

as specified in the related documents, would be in violation of such zoning ordinance or regulation or public restriction, as changed.

**Default Under Other Lien Documents.** A default occurs under any other mortgage, deed of trust or security agreement covering all or any portion of the Collateral.

**Judgment.** Unless adequately covered by insurance in the opinion of Lender, the entry of a final judgment for the payment of money involving more than ten thousand dollars ($10,000.00) against Borrower and the failure by Borrower to discharge the same, or cause it to be discharged, or bonded off to Lender's satisfaction, within thirty (30) days from the date of the order, decree or process under which or pursuant to which such judgment was entered.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor, or any other guarantor, endorser, surety, or accommodation party of any of the indebtedness or any Guarantor, or any other guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Minnesota without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Minnesota.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Norman County, State of Minnesota.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $28.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by (A) a Mortgage executed by Generations on 1st, LLC in favor of Red River State Bank dated 03/15/2021 with legal description of Parcel # 9582, 9583, & 9580:
Parcel I:
Lot 1 of Ohtness' Subdivision of Lots 12, 13, and 14 in Block 17 of Watertown, Codington County, South Dakota, according to the recorded plat thereof.
Parcel II:
Lot 2 of Ohtness' Subdivision of Lots 12, 13 and 14 in Block 17 of Watertown, AND the North 30 feet of the East 70 feet of Lot 11 in Block 17 of Watertown (commonly referred to as being in the original Plat), Codington County, South Dakota, according to the recorded plat thereof.
Parcel III:
Lot 3 of Ohtness' Subdivision of Lots 12, 13, and 14 in Block 17 of Watertown (commonly referred to as being the Original Plat), Codington County, South Dakota, according to the recorded plat thereof.
Parcel IV:
Lot 4 of Ohtness' Subdivision of Lots 12, 13, and 14 in Block 17 of Watertown (commonly referred to as being the Original Plat), Codington County, South Dakota, according to the recorded plat thereof.
Parcel V:
Lot 11, except the North 30 Feet of the East 70 Feet thereof, in Block 17, of the plat Entitled: "Watertown" Codington County, South Dakota, according to the recorded plat thereof

AND

(B) a Mortgage executed by Craig Holdings, LLC in favor of Red River State Bank dated 10/14/2021 with legal description of; GENERATIONS ON 1ST ADDITION TO THE CITY OF WATERTOWN, CODINGTON COUNTY, SOUTH DAKOTA

AND

(C) a Mortgage executed by Generations on 1st, LLC in favor of Red River State Bank dated 03/15/2021 with legal description of; GENERATIONS ON 1ST ADDITION TO THE CITY OF WATERTOWN, CODINGTON COUNTY, SOUTH DAKOTA

AND

(D) a Mortgage executed by Generations on 1st, LLC in favor of Red River State Bank dated 04/17/2023 with legal description of; GENERATIONS ON 1ST ADDITION TO THE CITY OF WATERTOWN, CODINGTON COUNTY, SOUTH DAKOTA

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

RRSB GO1st 02486

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender

Loan No: 451677

Page 3

reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: Red River State Bank PO Box 25 Halstad, MN 56548.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. In addition, Lender shall have all the rights and remedies provided in the related documents or available at law, in equity, or otherwise. Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower shall not affect Lender's right to declare a default and to exercise its rights and remedies. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**SECTION DISCLOSURE.** To the extent not preempted by federal law, this loan is made under Minnesota Statutes, Section 47.59.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

GENERATIONS ON 1ST, LLC

By: _____

JESSE ROBERT CRAIG, MANAGING MEMBER of
GENERATIONS ON 1ST, LLC

LENDER:

RED RIVER STATE BANK

X _____

CHARLES AARESTAD, Executive Vice President

LaserPro, Ver. 23.4.0.0v8 Copr. Finastra USA Corporation 1997, 2025. All Rights Reserved. - MN  C:\HARLAND\CFI\LPL\D20.FC  TR-1116  PR-51

# DISBURSEMENT REQUEST AND AUTHORIZATION

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $561,365.10 | 04-17-2023 | 05-31-2023 | 451677 | JN | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** GENERATIONS ON 1ST, LLC (TIN: ▓▓6148)
1405 1ST AVE N
FARGO, ND 58102

**Lender:** Red River State Bank
Halstad
300 2nd Ave West
PO Box 25
Halstad, MN 56548-0025

**EXHIBIT**

**9-B**

**LOAN TYPE.** This is a Fixed Rate (2.000%) Nondisclosable Loan to a Limited Liability Company for $561,365.10 due on May 31, 2023.

**PRIMARY PURPOSE OF LOAN.** The primary purpose of this loan is for:

☐ Maintenance of Borrower's Primary Residence.

☐ Personal, Family or Household Purposes or Personal Investment.

☐ Agricultural Purposes.

☒ Business Purposes.

**SPECIFIC PURPOSE.** The specific purpose of this loan is: Refinance Construction Loan Accrued Interst.

**DISBURSEMENT INSTRUCTIONS.** Borrower understands that no loan proceeds will be disbursed until all of Lender's conditions for making the loan have been satisfied. Please disburse the loan proceeds of $561,365.10 as follows:

Amount paid on Borrower's account: $561,365.10
    $145,278.42 Payment on Loan # 41121
    $211,351.05 Payment on Loan # 51404
    $73,773.26 Payment on Loan # 51425
    $27,294.44 Payment on Loan # 51437
    $51,229.99 Payment on Loan # 51449
    $37,616.31 Payment on Loan # 51471
    $14,821.63 Payment on Loan # 51488

Note Principal: $561,365.10

**NOTICE OF RIGHT TO DISCONTINUE ESCROW.** If Borrower's mortgage loan involves an escrow account for taxes and homeowner's insurance, Borrower may have the right in five years to discontinue the account and pay Borrower's own taxes and homeowner's insurance. IF Borrower is eligible to discontinue the escrow account, Borrower will be notified in five years.

**FINANCIAL CONDITION.** BY SIGNING THIS AUTHORIZATION, BORROWER REPRESENTS AND WARRANTS TO LENDER THAT THE INFORMATION PROVIDED ABOVE IS TRUE AND CORRECT AND THAT THERE HAS BEEN NO MATERIAL ADVERSE CHANGE IN BORROWER'S FINANCIAL CONDITION AS DISCLOSED IN BORROWER'S MOST RECENT FINANCIAL STATEMENT TO LENDER. THIS AUTHORIZATION IS DATED APRIL 17, 2023.

**BORROWER:**

GENERATIONS ON 1ST, LLC

By: _____
    JESSE ROBERT CRAIG, MANAGING MEMBER of
    GENERATIONS ON 1ST, LLC

LaserPro, Ver. 22.4.0.056 Copr. Finastra USA Corporation 1997, 2023. All Rights Reserved. - MN C:\HARLAND\CFI\LPL\I20.FC TR-9119 PR-87



**First Generations Note**    Case 25-30002    Doc 166-1  Filed 09/16/25  Entered 09/16/25 16:EXHIBITDesc    PAGE 1
Exhibits 1-A to F    Page 93 of 108

**E**

11074 GENERATIONS ON 1ST LLC
PO BOX 426
FARGO ND 58107

| LOAN # | 41121 | COLL DESC REM, BLANKETORIG BAL | 1,565,200.00 | ORIG DATE 3/15/2021 | ORIG DISC | 0.00 | RENW BAL | 0.00 |
|--------|-------|-------------------------------|-------------|-------------------|-----------|------|----------|------|
| | | RENW DATE | TMS EXT 0 | LAST MATY 5/31/2023 | RATE .06500 | | TYPE CODE 3 | |
| | | APR OFF    CBA | COLL CODE FM | | | | | |

| DATE | TC1 | AMOUNT | TC2 | AMOUNT | POST DATE | DESCRIPTION | BALANCE |
|------|-----|--------|-----|--------|-----------|-------------|---------|
| 03/15/2021 | 34 | 1,565,200.00 | 0 | 0.00 | 03/16/2021 | | 1,565,200.00 |
| 01/10/2023 | 94 | 9,999.99 | 0 | 0.00 | | | 1,565,200.00 |
| 01/25/2023 | 94 | 9,999.99 | 0 | 0.00 | | | 1,565,200.00 |
| 04/17/2023 | 92 | 1,565,200.00 | 0 | 0.00 | | GO1st Term | 0.00 |

RRSB GO1st 04745

**Second Generations Note**

PAGE 1

11074 GENERATIONS ON 1ST LLC
        PO BOX 426
        FARGO ND 58107

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| LOAN # | 51404 | COLL DESC RE MULTI | FAMORIG BAL 2,976,430.98 | ORIG DATE 9/14/2021 | ORIG DISC | 0.00 RENW BAL | 0.00 |
| | | RENW DATE | TMS EXT 0 | LAST MATY 5/31/2023 | RATE .06500 | TYPE CODE 3 | |
| | | APR OFF CBA | COLL CODE FM | | | | |

| DATE | TC1 | AMOUNT | TC2 | AMOUNT | POST DATE | DESCRIPTION | BALANCE |
|---|---|---|---|---|---|---|---|
| 09/14/2021 | 34 | 2,976,430.98 | 0 | 0.00 | | OPENING ADVANCE | 2,976,430.98 |
| 01/10/2023 | 94 | 9,999.99 | 0 | 0.00 | | | 2,976,430.98 |
| 04/17/2023 | 92 | 2,976,430.98 | 0 | 0.00 | | GO1st Term | 0.00 |

RRSB GO1st 04747

**Third Generations Note**

PAGE 1

11074 GENERATIONS ON 1ST LLC
       PO BOX 426
       FARGO ND 58107

LOAN #     51825  COLL DESC 26 1ST AVE S ORIG BAL  1,094,025.15  ORIG DATE  10/14/2021  ORIG DISC       0.00  RENW BAL       0.00
                  RENW DATE                  TMS EXT    0        LAST MATY  5/31/2023   RATE     .06500  TYPE CODE 3
                  APR OFF    CBA             COLL CODE  FM

| DATE | TC1 | AMOUNT | TC2 | AMOUNT | POST DATE | DESCRIPTION | BALANCE |
|------|-----|--------|-----|--------|-----------|-------------|---------|
| 10/14/2021 | 34 | 1,094,025.15 | 0 | 0.00 | | OPENING ADVANCE | 1,094,025.15 |
| 01/10/2023 | 94 | 9,999.99 | 0 | 0.00 | | | 1,094,025.15 |
| 04/17/2023 | 92 | 1,094,025.15 | 0 | 0.00 | | GO1st Term | 0.00 |

RRSB GO1st 04749

**Fourth Generations Note**   Case 25-30002   Doc 166-1 Filed 09/16/25   Entered 09/16/25 16:19:25   Desc
Exhibits 1-A to F   Page 96 of 108                                                    PAGE  1

11074 GENERATIONS ON 1ST LLC
        PO BOX 426
        FARGO ND 58107

| LOAN # | 51437 | COLL DESC 26 1ST AVE S | ORIG BAL | 424,259.84 | ORIG DATE | 11/9/2021 | ORIG DISC | | 0.00 | RENW BAL | 0.00 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | RENW DATE | TMS EXT | 0 | LAST MATY | 5/31/2023 | RATE | .06500 | | TYPE CODE 3 | |
| | | APR OFF   CBA | COLL CODE FM | | | | | | | | |

| DATE | TC1 | AMOUNT | TC2 | AMOUNT | POST DATE | DESCRIPTION | BALANCE |
|---|---|---|---|---|---|---|---|
| | | | | | | | 424,259.84 |
| 11/09/2021 | 34 | 424,259.84 | 0 | 0.00 | | OPENING ADVANCE | 424,259.84 |
| 01/10/2023 | 94 | 9,999.99 | 0 | 0.00 | | | |
| 04/17/2023 | 392 | 424,259.84 | 0 | 0.00 | | GO1st Term | 0.00 |

RRSB GO1st 04751

**Fifth Generations Note**    Case 25-30002    Doc 166-1    Filed 09/16/25    Entered 09/16/25 16:19:25    Desc
Exhibits 1-A to F    Page 97 of 108

11074 GENERATIONS ON 1ST LLC
PO BOX 425
FARGO ND 58107

LOAN #    51449   COLL DESC 26 1ST AVE WORTG BAL    843,168.59  ORIG DATE  12/8/2021  ORIG DISC        0.00  RENW BAL        0.00
                  RENW DATE             TMS EXT  0          LAST MATY  5/31/2023  RATE     .06500  TYPE CODE 3
                  APR OFF  CBA        COLL CODE  FM

| DATE | TC1 | AMOUNT | TC2 | AMOUNT | POST DATE | DESCRIPTION | BALANCE |
|------|-----|--------|-----|--------|-----------|-------------|---------|
| 12/09/2021 | 34 | 843,168.59 | 0 | 0.00 | | OPENING ADVANCE | 843,168.59 |
| 01/10/2023 | 94 | 9,999.99 | 0 | 0.00 | | | 843,168.59 |
| 04/17/2023 | 392 | 843,168.59 | 0 | 0.00 | | GO1st Term | 0.00 |

RRSB GO1st 04753

**Sixth Generations Note**    Case 25-30002    Doc 166-1    Filed 09/16/25    Entered 09/16/25 16:19:25    Desc
Exhibits 1-A to F    Page 98 of 108                    PAGE 1

11074 GENERATIONS ON 1ST LLC
1405 1ST AVE N
FARGO ND 58102

LOAN #    51471  COLL DESC REAL ESTATE ORIG BAL    653,729.65  ORIG DATE  1/5/2022  ORIG DISC              0.00  RENW BAL        0.00
                 RENW DATE                TMS EXT   0        LAST MATY  5/31/2023  RATE        .06500  TYPE CODE 3
                 APR OFF   CBA            COLL CODE  FM

| DATE | TC1 | AMOUNT | TC2 | AMOUNT | POST DATE | DESCRIPTION | BALANCE |
|------|-----|--------|-----|--------|-----------|-------------|---------|
| 01/05/2022 | 34 | 653,729.65 | 0 | 0.00 | | OPENING ADVANCE | 653,729.65 |
| 01/10/2023 | 94 | 9,999.99 | 0 | 0.00 | | | 653,729.65 |
| 04/17/2023 | 392 | 653,729.65 | 0 | 0.00 | | GO1st Term | 0.00 |

RRSB GO1st 04755

**Seventh Generations Note**

11074 GENERATIONS ON 1ST LLC
PO BOX 426
FARGO ND 58107

| LOAN # | 51488 | COLL DESC RE, 26 | 1ST AORIG BAL | 274,043.60 | ORIG DATE | 2/3/2022 | ORIG DISC | 0.00 | RENW BAL | 0.00 |
|--------|-------|------------------|---------------|------------|-----------|----------|-----------|------|----------|------|
| | | RENW DATE | TMS EXT | 0 | LAST MATY | 5/31/2023 | RATE | .06500 | TYPE CODE 3 | |
| | | APR OFF   CBA | COLL CODE   FM | | | | | | | |

| DATE | TC1 | AMOUNT | TC2 | AMOUNT | POST DATE | DESCRIPTION | BALANCE |
|------|-----|--------|-----|--------|-----------|-------------|---------|
| 02/03/2022 | 34 | 276,043.60 | 0 | 0.00 | | OPENING ADVANCE | 274,043.60 |
| 01/18/2023 | 94 | 9,999.99 | 0 | 0.00 | | | 274,043.60 |
| 04/17/2023 | 392 | 274,043.60 | 0 | 0.00 | | GO1st Term | 0.00 |

PAGE  1

**Ninth Generations Note**

11074 GENERATIONS ON 1ST LLC
PO BOX 426
FARGO ND 58107

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| LOAN # | 451677 | COLL DESC 26 1ST AVE S | ORIG BAL | 561,365.10 | ORIG DATE 4/17/2023 | ORIG DISC | 0.00 RENW BAL | 0.00 |
| | | RENW DATE | TMS EXT 0 | | LAST MATY 5/31/2023 | RATE .02000 | TYPE CODE 3 | |
| | | APR OFF  CBA | COLL CODE  JN | | | | | |

| DATE | TC1 | AMOUNT | TC2 | AMOUNT | POST DATE | DESCRIPTION | BALANCE |
|---|---|---|---|---|---|---|---|
| 04/17/2023 | 434 | 561,365.10 | 0 | 0.00 | 04/18/2023 | OPENING ADVANCE | 561,365.10 |

RRSB GO1st 04759

**EXHIBIT**

**F**

First Generations Note: Payment Applied and Accrual of Interest & Late Fees

Dated 3/15/21　　RRSB Loan 41121　　　　　　　　　Originating Interest Rate:　4.350% per annum　　　　　　　Post-Forbearance Rate:　6.500%

| Date | Transaction Type and Amount | | Description | INTEREST CALCULATION | | | BALANCE | |
| | Advance/Charge (+) | Payment (-) | | Per Diem | # of Days | Accrued Interest | Interest | Principal |
|---|---|---|---|---|---|---|---|---|
| 3/15/2021 | $ 1,565,200.00 | $　　- | Opening Advance | $ 186.54 | 0 | $　　- | $　　- | $ 1,565,200.00 |
| 1/10/2023 | $ 9,999.99 | $　　- | Late Fee Assessed | $ 186.54 | | | | $ 1,565,200.00 |
| 1/25/2023 | $ 9,999.99 | $　　- | Late Fee Assessed | $ 186.54 | | | | $ 1,565,200.00 |
| 3/16/2023 | $　　- | $　　- | Interest Calculation | $ 186.54 | 731 | $ 136,358.94 | $ 136,358.94 | $ 1,565,200.00 |
| 3/16/2023 | $　　- | $　　- | Interest Rate Change pursuant to Forbearance Agreement | $ 278.73 | 0 | $　　- | $ 136,358.94 | $ 1,565,200.00 |
| 4/17/2023 | $　　- | $ (1,565,200.00) | Principal Payoff - Refinanced principal into Eighth Gen Note | $ 278.73 | 32 | $ 8,919.36 | $ 145,278.30 | $　　- |

| 4/17/2023 | | | Interest Refinanced into Ninth Generations Note | | | | $ 145,278.30 | |

**Second Generations Note: Payment Applied and Accrual of Interest & Late Fees**

Dated 9/14/21      Originating Interest Rate: 4.350% per annum      Post-Forbearance Rate: 6.500%

| Date | Transaction Type and Amount | | Description | INTEREST CALCULATION | | | BALANCE | |
| | Advance/Charge (+) | Payment (-) | | Per Diem | # of Days | Accrued Interest | Interest | Principal |
|---|---|---|---|---|---|---|---|---|
| 9/14/2021 | $ 2,976,430.98 | $ - | Opening Advance | $ 354.73 | 0 | $ - | $ - | $ 2,976,430.98 |
| 1/10/2023 | $ 9,999.99 | $ - | Late Fee Assessed | $ 354.73 | | | $ - | $ 2,976,430.98 |
| 3/16/2023 | $ - | $ - | Interest Calculation | $ 354.73 | 548 | $ 194,389.48 | $ 194,389.48 | $ 2,976,430.98 |
| 3/16/2023 | $ - | $ - | Interest Rate Change pursuant to Forbearance Agreement | $ 530.05 | 0 | $ - | $ 194,389.48 | $ 2,976,430.98 |
| 4/17/2023 | | $ (2,976,430.98) | Principal Payoff - Refinanced principal into Eighth Gen Note | $ 530.05 | 32 | $ 16,961.60 | $ 211,351.08 | $ - |

| | | |
|---|---|---|
| 4/17/2023 | Interest Refinanced into Ninth Generations Note | $ 211,351.08 |

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Third Generations Note: Payment Applied and Accrual of Interest & Late Fees | | | | | | | | | | | | | | |
| Dated 10/14/21 | | | | | Originating Interest Rate: | | 4.350% per annum | | Forbearance Rate: | | | 6.50% per annum | | |
| | Transaction Type and Amount | | | | | INTEREST CALCULATION | | | | | BALANCE | | | |
| Date | Advance/Charge (+) | | Payment (-) | | Description | | Per Diem | | # of Days | Accrued Interest | | Interest | | Principal |
| 10/14/2021 | $ | 1,094,025.15 | $ | - | Opening Advance | | $ | 130.38 | 0 | $ | - | $ | - | $ 1,094,025.15 |
| 1/10/2023 | $ | 9,999.99 | $ | - | Late Fee Assessed | | $ | 130.38 | | | | | | $ 1,094,025.15 |
| 3/16/2023 | $ | - | $ | - | Interest Calculation | | $ | 130.38 | 518 | $ | 67,538.82 | $ | 67,538.82 | $ 1,094,025.15 |
| 3/16/2023 | $ | - | $ | - | Interest Rate Change pursuant to Forbearance Agreement | | $ | 194.83 | 0 | $ | - | $ | 67,538.82 | $ 1,094,025.15 |
| 4/17/2023 | | | $ | (1,094,025.15) | Principal Payoff - Refinanced principal into Eighth Gen Note | | $ | 194.83 | 32 | $ | 6,234.44 | $ | 73,773.26 | $ - |

| | | | |
|---|---|---|---|
| 4/17/2023 | Interest Refinanced into Ninth Generations Note | | $ 73,773.26 |

| | Fourth Generations Note: Payment Applied and Accrual of Interest & Late Fees | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Dated 11/9/21 | | | | Originating Interest Rate: | 4.350% per annum | | | | Forbearance Interest Rate: | |
| | Transaction Type and Amount | | | | INTEREST CALCULATION | | | | BALANCE | |
| Date | Advance/Charge (+) | Payment (-) | Description | Per Diem | # of Days | Accrued Interest | | Interest | Principal | |
| 11/9/2021 | $ 424,259.84 | $ - | Opening Advance | $ 50.56 | 0 | $ - | $ | - | $ 424,259.84 | |
| 1/10/2023 | $ 9,999.99 | $ - | Late Fee Assessed | $ 50.56 | | | $ | | $ 424,259.84 | |
| 3/16/2023 | $ - | $ - | Interest Calculation | $ 50.56 | 492 | $ 24,876.74 | $ | 24,876.74 | $ 424,259.84 | |
| 3/16/2023 | $ - | $ - | Interest Rate Change pursuant to Forbearance Agreement | $ 75.55 | 0 | $ - | $ | 24,876.74 | $ 424,259.84 | |
| 4/17/2023 | | $ (424,259.84) | Principal Payoff - Refinanced principal into Eighth Gen Note | $ 75.55 | 32 | $ 2,417.70 | $ | 27,294.44 | $ - | |

| 4/17/2023 | Interest Refinanced into Ninth Generations Note | $ 27,294.44 |
|---|---|---|

| | Fifth Generations Note: Payment Applied and Accrual of Interest & Late Fees | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Dated 12/8/21 | | | | Originating Interest Rate: | | 4.350% per annum | | Post-Forbearance Rate: | | 6.50% |
| | Transaction Type and Amount | | | | INTEREST CALCULATION | | | | BALANCE | |
| Date | Advance/Charge (+) | Payment (-) | Description | Per Diem | # of Days | Accrued Interest | | Interest | | Principal |
| 12/9/2021 | $ 843,168.59 | $ - | Opening Advance | $ 100.49 | | | | $ | $ - | $ 843,168.59 |
| 1/10/2023 | $ 9,999.99 | $ - | Late Fee Assessed | $ 100.49 | | | | | $ | 843,168.59 |
| 3/16/2023 | $ - | $ - | Interest Calculation | $ 100.49 | 462 | $ 46,425.09 | | $ 46,425.09 | $ | 843,168.59 |
| 3/16/2023 | $ - | $ - | Interest Rate Change pursuant to Forbearance Agreement | $ 150.15 | 0 | $ - | | $ 46,425.09 | $ | 843,168.59 |
| 4/17/2023 | | $ (843,168.59) | Principal Payoff - Refinanced principal into Eighth Gen Note | $ 150.15 | 32 | $ 4,804.91 | | $ 51,230.00 | $ | - |

| 4/17/2023 | Interest Refinanced into Ninth Generations Note | $ 51,230.00 |
|---|---|---|

| Sixth Generations Note: Payment Applied and Accrual of Interest & Late Fees | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Dated 1/5/22 | Claim 001 Exhibit F | Sixth GO1st Note | | Originating Interest Rate: | | 4.350% per annum | | Forbearance Interest Rate: | | 6.50% |
| | Transaction Type and Amount | | | INTEREST CALCULATION | | | BALANCE | | | |
| Date | Advance/Charge (+) | Payment (-) | Description | Per Diem | # of Days | Accrued Interest | | Interest | | Principal |
| 1/5/2022 | $ 653,729.65 | $ - | Opening Advance | $ 77.91 | 0 | $ - | $ | - | $ | 653,729.65 |
| 1/10/2023 | $ 9,999.99 | $ - | Late Fee Assessed | $ 77.91 | | | $ | | $ | 653,729.65 |
| 3/16/2023 | $ - | $ - | Interest Calculation | $ 77.91 | 435 | $ 33,890.96 | $ | 33,890.96 | $ | 653,729.65 |
| 3/16/2023 | $ - | $ - | Interest Rate Change pursuant to Forbearance Agreement | $ 116.42 | 0 | $ - | $ | 33,890.96 | $ | 653,729.65 |
| 4/17/2023 | | $ (653,729.65) | Principal Payoff - Refinanced principal into Eighth Gen Note | $ 116.42 | 32 | $ 3,725.36 | $ | 37,616.32 | $ | - |
| 4/17/2023 | | | Interest Refinanced into Ninth Generations Note | | | | $ | 37,616.32 | | |

| | Seventh Generations Note: Payment Applied and Accrual of Interest & Late Fees | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Dated 2/3/22 | | | | Originating Interest Rate: | 4.350% per annum | | Forbearance Interest Rate: | | | 6.50% |
| | **Transaction Type and Amount** | | | | **INTEREST CALCULATION** | | | **BALANCE** | | |
| Date | Advance/Charge (+) | Payment (-) | | Description | Per Diem | # of Days | Accrued Interest | | Interest | Principal |
| 2/3/2022 | $ 274,043.60 | $ | - | Opening Advance | $ 32.66 | 0 | $ - | $ | - | $ 274,043.60 |
| 1/10/2023 | $ 9,999.99 | $ | - | Late Fee Assessed | $ 32.66 | | | | | $ 274,043.60 |
| 3/19/2023 | $ - | $ | - | Interest Calculation | $ 32.66 | 406 | $ 13,259.96 | $ | 13,259.96 | $ 274,043.60 |
| 3/16/2023 | $ - | $ | - | Interest Rate Change pursuant to Forbearance Agreement | $ 48.80 | 0 | $ - | $ | 13,259.96 | $ 274,043.60 |
| 4/17/2023 | | $ | (274,043.60) | Principal Payoff - Refinanced principal into Eighth Gen Note | $ 48.80 | 32 | $ 1,561.67 | $ | 14,821.63 | $ - |
| 4/17/2023 | | | | Interest Refinanced into Ninth Generations Note | | | | $ | 14,821.63 | |

| Ninth Generations Note: Accrual of Interest & Late Fees | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Dated 4/17/23 | | Interest Rate: | 2.00% per annum | | | | | | |
| | | INTEREST CALCULATION | | | | | BALANCE | | |
| Date | Description | Per Diem | # of Days | Accrued Interest | | Interest | Principal | Late Fees | TOTAL |
| 4/17/2023 | Opening Advance = All Interest Accrued on GO1st Loans | $ 30.76 | 0 | $ - | $ | - | $ 561,365.10 | $ - | $ 561,365.10 |
| 1/6/2025 | BANKRUPTCY PETITION FILED | $ 30.76 | 630 | $ 19,378.63 | $ | 19,378.63 | $ 561,365.10 | $ - | $ 580,743.73 |

Case 25-30004    Claim Exhibit 15 Part 2 Page 332 of 415 Document    Page 1 of 84

Fill in this information to identify the case:

| | |
|---|---|
| Debtor 1 | The Ruins, LLC |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | District of North Dakota |
| Case number | 25-30004 |

## Official Form 410

# Proof of Claim

04/25

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

### Part 1:    Identify the Claim

| | |
|---|---|
| 1. Who is the current creditor? | **Red River State Bank** <br> Name of the current creditor (the person or entity to be paid for this claim) <br><br> Other names the creditor used with the debtor _____ |
| 2. Has this claim been acquired from someone else? | ☑ No <br> ☐ Yes. From whom? _____ |

3. Where should notices and payments to the creditor be sent?

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Caren W. Stanley, Vogel Law Firm
Name

PO Box 1389
Number    Street

Fargo                ND            58107
City                State        ZIP Code

Contact phone (701) 237-6983

Contact email cstanley@vogellaw.com

Where should payments to the creditor be sent? (if different)

Name

Number    Street

City                State        ZIP Code

Contact phone _____

Contact email _____

Uniform claim identifier (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

| | |
|---|---|
| 4. Does this claim amend one already filed? | ☐ No <br> ☑ Yes. Claim number on court claims registry (if known) 1 ____      Filed on 02/05/2025 <br> MM / DD / YYYY |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☐ No <br> ☑ Yes. Who made the earlier filing? First Nat'l Bank & Trust |

Official Form 410                        Proof of Claim                        page 1

EXHIBIT  21
WIT: J Craig
DATE: 9-23-25
Deanna L. Sager

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---------|--------------------------------------------------------------------|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___ ___ ___ ___

**7. How much is the claim?**

$ 11,658,331.25 . Does this amount include interest or other charges?

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Money Loaned

**9. Is all or part of the claim secured?**

☐ No

☑ Yes. The claim is secured by a lien on property.

Nature of property:

☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☑ Other. Describe: All Personal Property

Basis for perfection: SD UCC Financing Statement, Mortgages

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:                                    $ Unknown

Amount of the claim that is secured:     $ Unknown

Amount of the claim that is unsecured: $ Unknown (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:     $

Annual Interest Rate (when case was filed) _____ %

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition.     $

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $17,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/28 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:  Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.
18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  9 / 12 / 2025
  MM / DD / YYYY

_____
Signature

Print the name of the person who is completing and signing this claim:

| Name | Charles Aarestad | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Vice President | | |
| Company | Red River State Bank | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 300 2nd Ave W | | |
| | Number   Street | | |
| | Halstad | MN | 56548 |
| | City | State | ZIP Code |
| Contact phone | (218) 456-2187 | Email charles.aarestad@redriverbank.com | |

## ATTACHMENT TO PROOF OF CLAIM

**Promissory Notes:**

Debtor **The Ruins, LLC** ("Debtor") made in favor of, executed, and delivered to Red River State Bank ("RRSB") the following instruments:

      a.     Promissory Note dated March 9, 2022, in the original principal sum of $7,740,000.00 ("First Ruins Note"). The maturity date of the First Ruins Note is March 15, 2027. A true and correct copy of the First Ruins Note is attached hereto as **Exhibit A** and terms of the same incorporated herein by reference.

      b.     Promissory Note dated August 1, 2022, in the original principal sum of $2,750,000.00 ("Second Ruins Note"). The maturity date of the Second Ruins Note is March 15, 2027. A true and correct copy of the Second Ruins Note is attached hereto as **Exhibit B** and terms of the same incorporated herein by reference.

Debtor, Craig Development, LLC, Craig Holdings, LLC, Craig Properties, LLC, and Jesse Craig made in favor of, executed and delivered to RRSB the following instrument:

      a.     Promissory Note dated February 17, 2023, in the original principal sum of $600,000.00 ("Third Ruins Note"). The original maturity date of the Third Ruins Note was December 31, 2023. A true and correct copy of the Third Ruins Note is attached hereto as **Exhibit C** and terms of the same incorporated herein by reference.

The First Ruins Note, the Second Ruins Note, and the Third Ruins Note are hereinafter referred to collectively as the "Ruins Notes".

**Collateral:**

As security for payment of all of the indebtedness due RRSB on the Ruins Notes, Debtor, Craig Development, LLC, and Jesse Craig made in favor of, executed, and delivered to RRSB Commercial Security Agreements contemporaneous to the execution of each of the Ruins Notes (collectively, the "Security Agreements"). True and correct copies of the Security Agreements with respect to the First Ruins Note (Grantor – Ruins), Second Ruins Note (Grantors – Ruins and Jesse Craig), and Third Ruins Note (Grantors – Craig Development and Jesse Craig) are attached hereto as **Exhibits E-1, E-2, and E-3 respectively** and terms of the same incorporated herein by reference .

Under the Security Agreements, Debtor, Craig Development, LLC, and Jesse Craig granted RRSB a security interest in the following collateral:

As security for the payment of the indebtedness and all other indebtedness, obligations and liabilities of the Debtor to Creditor, now existing or hereafter arising, directly or indirectly, by operation of law or otherwise (collectively the "liabilities"), Debtor assigns, transfers, pledges, hypothecates and grants to Creditor, its successors and assigns, a first priority security interest (the "security interest") in all Debtor's assets, including without limitation, all equipment, inventory, supplies, accounts, general intangibles, chattel paper and instruments, goods, assets, machinery, fixtures, furnishings and all other personal property together with all other accessories, accessions, attachments and appurtenances, appertaining to attached thereto, whether now owned or hereafter acquired, and all other substitutions, renewals, replacements and improvements and all proceeds, rents, issuers, income, profits and avails, including without limitation, insurance proceeds. Further, Borrower grants Lender a purchase money security interest in specific equipment, furniture and fixtures purchased by Borrower and financed by Lender on or about the date of the loan or filing date thereafter (collectively the "collateral")

*See* **Exhibits E-1, E-2, and E-3**.

RRSB perfected its security interest in the above-described personal property assets by virtue of having filed a UCC financing statement with the South Dakota Secretary of State. A true and correct copy of the financing statement ius attached hereto as **Exhibit F** and terms of the same incorporated herein by reference.

Debtor made in favor of, executed, and delivered to RRSB mortgages upon the following-described real property located in Codington County, State of North Dakota, to wit:

The Ruins Addition to the City of Watertown, Codington County, South Dakota.

Street Address:     315 East Kemp Avenue, Watertown, SD 57201

Tax ID:             9352

(hereinafter the "Ruins Real Property").

RRSB's mortgages are as follows:

a.     On or about March 9, 2022, as security for all of the indebtedness due RRSB with respect to the Ruins Notes up to the sum of $9,875,000.00, Debtor made in favor of, executed, and delivered to RRSB a Construction Mortgage - One Hundred Eighty Day Redemption (the "First RRSB Mortgage") upon the Ruins Real Property.

The First RRSB Mortgage was properly executed, acknowledged, and recorded in Book 990 on Page 8555 in the office of the Register of Deeds of Codington County, South Dakota, having been recorded on March 10, 2022 at 9:57 a.m. A true and correct copy of the First RRSB Mortgage is attached hereto as **Exhibit G** and terms of the same incorporated herein by reference.

b.     On or about August 1, 2022, as security for all of the indebtedness due RRSB with respect to the Ruins Notes up to the sum of $615,000.00, Debtor made in favor of, executed, and delivered to RRSB a Construction Mortgage - One Hundred Eighty Day Redemption (the "Second RRSB Mortgage") upon the Ruins Real Property.

    c.    The Second RRSB Mortgage was properly executed, acknowledged, and recorded in Book 990 on Page 9258 in the office of the Register of Deeds of Codington County, South Dakota, having been recorded on August 4, 2022 at 11:10 a.m. A true and correct copy of the Second RRSB Mortgage is attached hereto as **Exhibit H** and terms of the same incorporated herein by reference.

RRSB and the Watertown Development Corporation ("WDC") entered into Subordination Agreements dated March 7, 2022 and August 22, 2022 with respect to the priority of their respective mortgages on the Ruins Real Property ("Subordination Agreements"). Pursuant to the Subordination Agreements, the First RRSB Mortgage has priority over two (2) mortgages held by WDC. True and correct copies of the Subordination Agreements are attached hereto as **Exhibit I** and terms of the same incorporated herein by reference.

**Indebtedness:**

The following sums are due and owing to RRSB with respect to the Ruins Notes as of January 6, 2025:

| NOTE | BALANCE | PER DIEM INTEREST ACCRUAL |
|---|---|---|
| First Ruins Note | $8,169,647.92 | $900.66 |
| Second Ruins Note | $2,911,499.84 | $346.47 |
| Third Ruins Note | $ 577,183.49 | $106.38 |
| **Total due under the Ruins Notes together with interest accruing from and after January 6, 2025, excluding\* costs and attorneys' fees incurred:** | **$11,658,331.25** | |

**Excel Spreadsheets of Payment History and Accrual of Interest + Late Fees for the Notes are attached as Exhibit J.**

**\*The Debtor is also obligated to RRSB for all attorneys' fees and costs incurred by RRSB in collecting on the debt due and owing under the Ruins Notes.**

**The filing of this proof of claim does not constitute a general appearance by the claimant. The claimant reserves all rights to challenge the personal or subject matter jurisdiction of this Court and to demand a jury trial in any adversary or other proceeding which may be initiated against the claimant in this bankruptcy proceeding.**

4935-6140-1613 v.2

3

# PROMISSORY NOTE

| Principal<br>$7,740,000.00 | Loan Date<br>03-09-2022 | Maturity<br>03-15-2027 | Loan No<br>51500 | Call / Coll | Account | | EXHIBIT<br>A |
|---|---|---|---|---|---|---|---|

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any pa[...]
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**  THE RUINS, LLC (TIN:         )
         PO BOX 426
         FARGO, ND  58107-0426

**Lender:**  Red River State Bank
         Halstad
         300 2nd Ave West
         PO Box 25
         Halstad, MN  56548-0025

---

**Principal Amount: $7,740,000.00**                                                     **Date of Note: March 9, 2022**

**PROMISE TO PAY.** THE RUINS, LLC ("Borrower") promises to pay to Red River State Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Seven Million Seven Hundred Forty Thousand & 00/100 Dollars ($7,740,000.00), together with interest on the unpaid principal balance from March 9, 2022, until paid in full.

**PAYMENT.** Borrower will pay this loan in accordance with the following payment schedule, which calculates interest on the unpaid principal balances as described in the "INTEREST CALCULATION METHOD" paragraph using the interest rates described in this paragraph: 18 monthly consecutive interest payments, beginning April 15, 2022, with interest calculated on the unpaid principal balances using an interest rate of 4.250% per annum; 41 monthly consecutive principal and interest payments of $42,390.00 each, beginning October 15, 2023, with interest calculated on the unpaid principal balances using an interest rate of 4.250% per annum; and one principal and interest payment of $7,105,121.10 on March 15, 2027, with interest calculated on the unpaid principal balances using an interest rate of 4.250% per annum. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Note. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Any accrued interest not paid when due is added to principal and thereafter will accrue interest as principal.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/365 basis; that is, by applying the ratio of the interest rate over the number of days in a year (365 for all years, including leap years), multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**RECEIPT OF PAYMENTS.** All payments must be made in U.S. dollars and must be received by Lender at:

     Red River State Bank
     Halstad
     300 2nd Ave West
     PO Box 25
     Halstad, MN  56548-0025

All payments must be received by Lender consistent with any written payment instructions provided by Lender. If a payment is made consistent with Lender's payment instructions but received after 2:00 PM CST on a business day, Lender will credit Borrower's payment on the next business day.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law.    Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Red River State Bank, PO Box 25 Halstad, MN  56548.

**LATE CHARGE.** If a payment is 11 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $7.28, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Note will continue to accrue interest at the interest rate under this Note, with the final interest rate described in this Note applying after maturity, or after maturity would have occurred had there been no default. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

     **Payment Default.** Borrower fails to make any payment when due under this Note.

     **Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

     **False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf, or made by Guarantor, or any other guarantor, endorser, surety, or accommodation party, under this Note or the related documents in connection with the obtaining of the loan evidenced by this Note or any security document directly or indirectly securing repayment of this Note is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

     **Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

     **Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or

**PROMISSORY NOTE**

**(Continued)**

forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Execution; Attachment.** Any execution or attachment is levied against the Collateral, and such execution or attachment is not set aside, discharged or stayed within thirty (30) days after the same is levied.

**Change in Zoning or Public Restriction.** Any change in any zoning ordinance or regulation or any other public restriction is enacted, adopted or implemented, that limits or defines the uses which may be made of the Collateral such that the present or intended use of the Collateral, as specified in the related documents, would be in violation of such zoning ordinance or regulation or public restriction, as changed.

**Default Under Other Lien Documents.** A default occurs under any other mortgage, deed of trust or security agreement covering all or any portion of the Collateral.

**Judgment.** Unless adequately covered by insurance in the opinion of Lender, the entry of a final judgment for the payment of money involving more than ten thousand dollars ($10,000.00) against Borrower and the failure by Borrower to discharge the same, or cause it to be discharged, or bonded off to Lender's satisfaction, within thirty (30) days from the date of the order, decree or process under which or pursuant to which such judgment was entered.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor, or any other guarantor, endorser, surety, or accommodation party of any of the indebtedness or any Guarantor, or any other guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Minnesota without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Minnesota.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Norman County, State of Minnesota.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $28.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instruments listed herein:

(A) a Mortgage dated March 9, 2022, to Lender on real property located in CODINGTON County, State of South Dakota.

(B) a Commercial Security Agreement dated March 9, 2022 made and executed between THE RUINS, LLC and Lender on collateral described as: inventory, chattel paper, accounts, equipment, general intangibles and consumer goods.

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: Red River State Bank PO Box 25 Halstad, MN 56548.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. In addition, Lender shall have all the rights and remedies provided in the related documents or available at law, in equity, or otherwise. Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower shall not affect Lender's right to declare a default and to exercise its rights and remedies. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**SECTION DISCLOSURE.** To the extent not preempted by federal law, this loan is made under Minnesota Statutes, Section 47.59.

**PROMISSORY NOTE**
**(Continued)**

Loan No: 51500                                                                                                Page 3

---

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

THE RUINS, LLC

By: _____
     JESSE ROBERT CRAIG, Member of THE RUINS, LLC

LENDER:

RED RIVER STATE BANK

X _____
     CHARLES AARESTAD, Executive Vice President

LaserPro, Ver. 20.4.0.038  Copr.  Finastra USA Corporation 1997, 2022.  All Rights Reserved.  - MN  C:\HARLAND\CFI\LPL\D20.FC  TR-5788  PR-5

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | EXHIBIT |
|---|---|---|---|---|---|---|
| $2,750,000.00 | 08-01-2022 | 03-15-2027 | 51576 | | | **B** |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** THE RUINS, LLC (TIN:
PO BOX 426
FARGO, ND 58107-0426

**Lender:** Red River State Bank
Halstad
300 2nd Ave West
PO Box 25
Halstad, MN 56548-0025

**Principal Amount: $2,750,000.00**                                    **Date of Note: August 1, 2022**

**PROMISE TO PAY.** THE RUINS, LLC ("Borrower") promises to pay to Red River State Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Million Seven Hundred Fifty Thousand & 00/100 Dollars ($2,750,000.00), together with interest on the unpaid principal balance from August 1, 2022, until paid in full.

**PAYMENT.** Borrower will pay this loan in accordance with the following payment schedule, which calculates interest on the unpaid principal balances as described in the "INTEREST CALCULATION METHOD" paragraph using the interest rates described in this paragraph: 14 monthly consecutive interest payments, beginning September 15, 2022, with interest calculated on the unpaid principal balances using an interest rate of 4.600% per annum; 40 monthly consecutive principal and interest payments of $15,525.00 each, beginning November 15, 2023, with interest calculated on the unpaid principal balances using an interest rate of 4.600% per annum; and one principal and interest payment of $2,544,784.85 on March 15, 2027, with interest calculated on the unpaid principal balances using an interest rate of 4.600% per annum. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Note. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Any accrued interest not paid when due is added to principal and thereafter will accrue interest as principal.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/365 basis; that is, by applying the ratio of the interest rate over the number of days in a year (365 for all years, including leap years), multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**RECEIPT OF PAYMENTS.** All payments must be made in U.S. dollars and must be received by Lender at:

Red River State Bank
Halstad
300 2nd Ave West
PO Box 25
Halstad, MN 56548-0025

All payments must be received by Lender consistent with any written payment instructions provided by Lender. If a payment is made consistent with Lender's payment instructions but received after 2:00 PM CST on a business day, Lender will credit Borrower's payment on the next business day.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Red River State Bank, PO Box 25 Halstad, MN 56548.

**LATE CHARGE.** If a payment is 11 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $7.28, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Note will continue to accrue interest at the interest rate under this Note, with the final interest rate described in this Note applying after maturity, or after maturity would have occurred had there been no default. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf, or made by Guarantor, or any other guarantor, endorser, surety, or accommodation party, under this Note or the related documents in connection with the obtaining of the loan evidenced by this Note or any security document directly or indirectly securing repayment of this Note is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or

| Loan No: 51576 | **PROMISSORY NOTE**<br>**(Continued)** | Page 2 |

forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Execution; Attachment.** Any execution or attachment is levied against the Collateral, and such execution or attachment is not set aside, discharged or stayed within thirty (30) days after the same is levied.

**Change in Zoning or Public Restriction.** Any change in any zoning ordinance or regulation or any other public restriction is enacted, adopted or implemented, that limits or defines the uses which may be made of the Collateral such that the present or intended use of the Collateral, as specified in the related documents, would be in violation of such zoning ordinance or regulation or public restriction, as changed.

**Default Under Other Lien Documents.** A default occurs under any other mortgage, deed of trust or security agreement covering all or any portion of the Collateral.

**Judgment.** Unless adequately covered by insurance in the opinion of Lender, the entry of a final judgment for the payment of money involving more than ten thousand dollars ($10,000.00) against Borrower and the failure by Borrower to discharge the same, or cause it to be discharged, or bonded off to Lender's satisfaction, within thirty (30) days from the date of the order, decree or process under which or pursuant to which such judgment was entered.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor, or any other guarantor, endorser, surety, or accommodation party of any of the indebtedness or any Guarantor, or any other guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Minnesota without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Minnesota.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Norman County, State of Minnesota.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $28.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by

(A) a Mortgage dated March 9, 2022, to Lender on real property located in CODINGTON County, State of South Dakota.

(B) A Mortgage dated August 1st, 2022, to Lender on real property located in CODINGTON County, State of South Dakota.

(C) a Commercial Security Agreement dated March 9, 2022 made and executed between THE RUINS, LLC and Lender on collateral described as: inventory, chattel paper, accounts, equipment, general intangibles and consumer goods.

(D) a Commercial Security Agreement dated August 1, 2022 made and executed between THE RUINS, LLC and Jesse Robert Craig and Lender on collateral described as: inventory, chattel paper, accounts, equipment, general intangibles and consumer goods.

(E) a Assignment of Life Insurance Policy Number H358265 in the amount of $3,000,000.00 on the life of Jesse Craig, issued by Genworth Life and Annuity Insurance Company

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: Red River State Bank PO Box 25 Halstad, MN 56548.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. In addition, Lender shall have all the rights and remedies provided in the related documents or available at law, in equity, or otherwise. Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower shall not affect Lender's right to declare a default and to exercise its rights and remedies. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be

## PROMISSORY NOTE
### (Continued)

**Loan No: 51576**                                                                      **Page 3**

released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**SECTION DISCLOSURE.** To the extent not preempted by federal law, this loan is made under Minnesota Statutes, Section 47.59.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

THE RUINS, LLC

By: _____

JESSE ROBERT CRAIG, Member of THE RUINS, LLC

LENDER:

RED RIVER STATE BANK

X _____

CHARLES AARESTAD, Executive Vice President

# PROMISSORY NOTE

| Principal $600,000.00 | Loan Date 02-17-2023 | Maturity 12-30-2023 | Loan No 51658 | Call / Coll JN | Account | EXHIBIT C |
|---|---|---|---|---|---|---|

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any pa
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** JESSE ROBERT CRAIG (SSN:        );
CRAIG DEVELOPMENT, LLC (TIN:        );
CRAIG HOLDINGS LLC (TIN:        ; CRAIG
PROPERTIES LLC (TIN:        ; and THE
RUINS LLC (TIN:
PO BOX 426
FARGO, ND  58107-0426

**Lender:** Red River State Bank
Halstad
300 2nd Ave West
PO Box 25
Halstad, MN  56548-0025

**Principal Amount: $600,000.00**                                      **Date of Note: February 17, 2023**

**PROMISE TO PAY.** JESSE ROBERT CRAIG; CRAIG DEVELOPMENT, LLC; CRAIG HOLDINGS LLC; CRAIG PROPERTIES LLC; and THE RUINS LLC ("Borrower") jointly and severally promise to pay to Red River State Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Six Hundred Thousand & 00/100 Dollars ($600,000.00), together with interest on the unpaid principal balance from February 20, 2023, until paid in full.

**PAYMENT.** Borrower will pay this loan in accordance with the following payment schedule, which calculates interest on the unpaid principal balances as described in the "INTEREST CALCULATION METHOD" paragraph using the interest rates described in this paragraph: 4 monthly consecutive principal and interest payments of $25,000.00 each, beginning March 31, 2023, with interest calculated on the unpaid principal balances using an interest rate of 7.750% per annum; 5 monthly consecutive principal and interest payments of $87,920.85 each, beginning July 30, 2023, with interest calculated on the unpaid principal balances using an interest rate of 7.750% per annum; and one principal and interest payment of $87,920.84 on December 30, 2023, with interest calculated on the unpaid principal balances using an interest rate of 7.750% per annum. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Note. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Any accrued interest not paid when due is added to principal and thereafter will accrue interest as principal.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/365 basis; that is, by applying the ratio of the interest rate over the number of days in a year (365 for all years, including leap years), multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**RECEIPT OF PAYMENTS.** All payments must be made in U.S. dollars and must be received by Lender at:

Red River State Bank
Halstad
300 2nd Ave West
PO Box 25
Halstad, MN  56548-0025

All payments must be received by Lender consistent with any written payment instructions provided by Lender. If a payment is made consistent with Lender's payment instructions but received after 2:00 PM CST on a business day, Lender will credit Borrower's payment on the next business day.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Red River State Bank, PO Box 25 Halstad, MN  56548.

**LATE CHARGE.** If a payment is 11 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $7.28, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Note will continue to accrue interest at the interest rate under this Note, with the final interest rate described in this Note applying after maturity, or after maturity would have occurred had there been no default. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf, or made by Guarantor, or any other guarantor, endorser, surety, or accommodation party, under this Note or the related documents in connection with the obtaining of the loan evidenced by this Note or any security document directly or indirectly securing repayment of this Note is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan.

**PROMISSORY NOTE**
**(Continued)**

Loan No: 51658                                                                Page 2

This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Execution; Attachment.** Any execution or attachment is levied against the Collateral, and such execution or attachment is not set aside, discharged or stayed within thirty (30) days after the same is levied.

**Change in Zoning or Public Restriction.** Any change in any zoning ordinance or regulation or any other public restriction is enacted, adopted or implemented, that limits or defines the uses which may be made of the Collateral such that the present or intended use of the Collateral, as specified in the related documents, would be in violation of such zoning ordinance or regulation or public restriction, as changed.

**Default Under Other Lien Documents.** A default occurs under any other mortgage, deed of trust or security agreement covering all or any portion of the Collateral.

**Judgment.** Unless adequately covered by insurance in the opinion of Lender, the entry of a final judgment for the payment of money involving more than ten thousand dollars ($10,000.00) against Borrower and the failure by Borrower to discharge the same, or cause it to be discharged, or bonded off to Lender's satisfaction, within thirty (30) days from the date of the order, decree or process under which or pursuant to which such judgment was entered.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor, or any other guarantor, endorser, surety, or accommodation party of any of the indebtedness or any Guarantor, or any other guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Minnesota without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Minnesota.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Norman County, State of Minnesota.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $28.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by (A) a Commercial Security Agreement dated February 17th, 2023 made and executed between Jesse Robert Craig, Craig Development LLC and Lender on collateral described as: As security for the payment of the indebtedness and all other indebtedness, obligations and liabilities of the Debtor to Creditor, now existing or hereafter arising, directly or indirectly, by operation of law or otherwise (collectively the "liabilities"), Debtor assigns, transfers, pledges, hypothecates and grants to Creditor, its successors and assigns, a first priority security interest (the "security interest") in all Debtor's assets, including without limitation, all equipment, inventory, supplies, accounts, general intangibles, chattel paper and instruments, goods, assets, machinery, fixtures, furnishings and all other personal property together with all other accessories, accessions, attachments and appurtenances, appertaining to attached thereto, whether now owned or hereafter acquired, and all other substitutions, renewals, replacements and improvements and all proceeds, rents, issuers, income, profits and avails, including without limitation, insurance proceeds. Further, Borrower grants Lender a purchase money security interest in specific equipment, furniture and fixtures purchased by Borrower and financed by Lender on or about the date of the loan or filing date thereafter (collectively the "collateral")

AND

(B) a Commercial Security Agreement dated December 9, 2022 made and executed between Jesse Robert Craig, Craig Holdings LLC, and Craig Development, LLC and Lender on collateral described as: 1st Lien on all accounts receivable regarding a Developer Agreement Proceeds with City of Harrisburg, a Political Subdivision of the State of South Dakota, the Sioux Metro Growth Alliance, a South Dakota Non-Profit Corporation, and Craig Development, LLC, a North Dakota Limited Liability Company, for two properties owned by Sioux Metro Growth Alliance in Downtown Harrisburg, known as 47523 West Willow respectively, and legally described as: TBD with new plat.

Developer Agreement has been outlined to have $1,800,000 paid as Developer Compensation for the Development Project known as 47523 West Willow respectively and will be funded via a Tax Increment Financing (TIF) District for the Project.

AND

(C) a Mortgage dated December 23, 2021 by Craig Holdings, LLC to Lender on real property located in OTTERTAIL County, State of Minnesota.

AND

(C) a Mortgage dated December 9, 2022 by Craig Holdings, LLC to Lender on real property located in OTTERTAIL County, State of Minnesota.

# PROMISSORY NOTE
## (Continued)

**Loan No: 51658**    Page 3

AND

(D) a Mortgage dated March 9, 2022 by The Ruins, LLC to Lender on real property located in Codington County, State of South Dakota.

AND

(E) a Mortgage dated August 1, 2022 by The Ruins, LLC to Lender on real property located in Codington County, State of South Dakota.

AND

(F) a Assignment of Life Insurance Policy Number H358265 in the amount of $3,000,000 on the life of Jesse Craig, issued by Genworth Life and Annuity Insurance Company

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: Red River State Bank PO Box 25 Halstad, MN 56548.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. In addition, Lender shall have all the rights and remedies provided in the related documents or available at law, in equity, or otherwise. Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower shall not affect Lender's right to declare a default and to exercise its rights and remedies. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**SECTION DISCLOSURE.** To the extent not preempted by federal law, this loan is made under Minnesota Statutes, Section 334.01.

## PROMISSORY NOTE
### (Continued)

Loan No: 51658

Page 4

PRIOR TO SIGNING THIS NOTE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. EACH BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

X_____
  JESSE ROBERT CRAIG, Individually

CRAIG DEVELOPMENT, LLC

By:_____
  JESSE    ROBERT    CRAIG,    Member    of    CRAIG
  DEVELOPMENT, LLC

CRAIG HOLDINGS LLC

By:_____
  JESSE    ROBERT    CRAIG,    Managing    Member    of
  CRAIG HOLDINGS LLC

CRAIG PROPERTIES LLC

By:_____
  JESSE ROBERT CRAIG

THE RUINS LLC

By:_____
  JESSE ROBERT CRAIG, Member of THE RUINS LLC

LENDER:

RED RIVER STATE BANK

X_____
  CHARLES AARESTAD, Executive Vice President

LaserPro, Ver. 22.4.0.066  Copr. Finastra USA Corporation 1997, 2022  All Rights Reserved.  - MN  C:\HARLAND\CFI\LPL\D20.FC  TR-6564  PR-5

Case 25-30004 Claim 2-2 Part 2 Filed 08/04/25 Desc Document Page 17 of 84

# COMMERCIAL SECURITY AGREEMENT

EXHIBIT
E-1

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $7,740,000.00 | 03-09-2022 | 03-15-2027 | 51500 | | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Grantor:** THE RUINS, LLC (TIN:
PO BOX 426
FARGO, ND 58107-0426

**Lender:** Red River State Bank
Halstad
300 2nd Ave West
PO Box 25
Halstad, MN 56548-0025

**THIS COMMERCIAL SECURITY AGREEMENT dated March 9, 2022, is made and executed between THE RUINS, LLC ("Grantor") and Red River State Bank ("Lender").**

**GRANT OF SECURITY INTEREST. For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.**

**COLLATERAL DESCRIPTION.** The word "Collateral" as used in this Agreement means the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

> **As security for the payment of the indebtedness and all other indebtedness, obligations and liabilities of the Debtor to Creditor, now existing or hereafter arising, directly or indirectly, by operation of law or otherwise (collectively the "liabilities"), Debtor assigns, transfers, pledges, hypothecates and grants to Creditor, its successors and assigns, a first priority security interest (the "security interest") in all Debtor's assets, including without limitation, all equipment, inventory, supplies, accounts, general intangibles, chattel paper and instruments, goods, assets, machinery, fixtures, furnishings and all other personal property together with all other accessories, accessions, attachments and appurtenances, appertaining to attached thereto, whether now owned or hereafter acquired, and all other substitutions, renewals, replacements and improvements and all proceeds, rents, issuers, income, profits and avails, including without limitation, insurance proceeds. Further, Borrower grants Lender a purchase money security interest in specific equipment, furniture and fixtures purchased by Borrower and financed by Lender on or about the date of the loan or filing date thereafter (collectively the "collateral")**

The word "Collateral" also includes all proceeds of the above described collateral, including without limitation, any equipment purchased with proceeds, as well as all accessories, attachments, accessions, replacements and additions, whether added now or later, together with all insurance proceeds and refunds of insurance premiums, if any, and all sums that may be due from third parties who may cause damage to any of the foregoing, whether due to judgment, settlement or other process.

**FUTURE ADVANCES.** In addition to the Note, this Agreement secures all future advances made by Lender to Grantor regardless of whether the advances are made a) pursuant to a commitment or b) for the same purposes.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** With respect to the Collateral, Grantor represents and promises to Lender that:

**Perfection of Security Interest.** Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender. **This is a continuing Security Agreement and will continue in effect even though all or any part of the Indebtedness is paid in full and even though for a period of time Grantor may not be indebted to Lender.**

**Notices to Lender.** Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the management or in the members or managers of the limited liability company Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice.

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its membership agreement does not prohibit any term or condition of this Agreement.

**Enforceability of Collateral.** To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. At the time any account becomes subject to a security interest in favor of Lender, the account shall be a good and valid account representing an undisputed, bona fide indebtedness incurred by the account debtor, for merchandise held subject to delivery instructions or previously shipped or delivered pursuant to a contract of sale, or for services previously performed by Grantor with or for the account debtor. So long as this Agreement remains in effect, Grantor shall not, without Lender's prior written consent, compromise, settle, adjust, or extend payment under or with regard to any such Accounts. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

**Location of the Collateral.** Except in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral (or to the extent the Collateral consists of intangible property such as accounts or general intangibles, the records concerning the Collateral) at Grantor's address shown above, or at the location specified in the Collateral definition in this Agreement, or at such other locations as are acceptable to Lender. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2) all real property Grantor is renting or leasing; (3) all storage facilities Grantor owns, rents, leases, or uses; and (4) all other properties where Collateral is or may be located.

**Removal of the Collateral.** Except in the ordinary course of Grantor's business, including the sales of inventory, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certificates of title for the vehicles outside the State of South Dakota, without Lender's prior written consent. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

**Transactions Involving Collateral.** Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. While Grantor is not in default under this Agreement, Grantor may sell inventory, but only in the ordinary course of its business and only to buyers who qualify as a buyer in the ordinary course of business. A sale in the ordinary course of Grantor's business does not include a transfer in partial or total satisfaction of a debt or any bulk sale. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.** Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**COMMERCIAL SECURITY AGREEMENT**
**(Continued)**

| Loan No: 51500 | Page 2 |
|---|---|

**Repairs and Maintenance.** Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

**Inspection of Collateral.** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized in Lender's sole opinion. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify and defend shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral, whether or not such casualty or loss is covered by insurance. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. This includes making sure Lender is shown as the first and only security interest holder on the title covering the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement.

**GRANTOR'S RIGHT TO POSSESSION AND TO COLLECT ACCOUNTS.** Until default and except as otherwise provided below with respect to accounts, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. Until otherwise notified by Lender, Grantor may collect any of the Collateral consisting of accounts. At any time and even though no Event of Default exists, Lender may exercise its rights to collect the accounts and to notify account debtors to make payments directly to Lender for application to the Indebtedness. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon the occurrence of any Event of Default.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

| Loan No: 51500 | **COMMERCIAL SECURITY AGREEMENT**<br>(Continued) | Page 3 |
|---|---|---|

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution of Grantor (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Grantor's existence as a going business or the death of any member, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or Guarantor dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the South Dakota Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately due and payable, without notice of any kind to Grantor.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person when, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Grantor for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Grantor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** With respect to procedural matters related to the perfection and enforcement of Lender's rights against the Collateral, this Agreement will be governed by federal law applicable to Lender and to the extent not preempted by federal law, the laws of the State of South Dakota. In all other respects, this Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Minnesota without regard to its conflicts of law provisions. However, if there ever is a question about whether any provision of this Agreement is valid or enforceable, the provision that is questioned will be governed by whichever state or federal law would find the provision to be valid and enforceable. The loan transaction that is evidenced by the Note and this Agreement has been applied for, considered, approved and made, and all necessary loan documents have been accepted by Lender in the State of Minnesota.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Norman County,

Loan No: 51500
## COMMERCIAL SECURITY AGREEMENT
**(Continued)**
Page 4

State of Minnesota.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Borrower.** The word "Borrower" means THE RUINS, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means THE RUINS, LLC.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents. Specifically, without limitation, Indebtedness includes the future advances set forth in the Future Advances provision of this Agreement together with all interest thereon.

**Lender.** The word "Lender" means Red River State Bank, its successors and assigns.

**Note.** The word "Note" means the Note dated March 9, 2022 and executed by THE RUINS, LLC in the principal amount of $7,740,000.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED MARCH 9, 2022.

GRANTOR:

THE RUINS, LLC

By: _____
JESSE ROBERT CRAIG, Member of THE RUINS, LLC

| COMMERCIAL SECURITY AGREEMENT | |
|---|---|
| Loan No: 51500 | (Continued) | Page 5 |

LENDER:

RED RIVER STATE BANK

X _____

CHARLES AARESTAD, Executive Vice President

LaserPro, Ver. 20.4.0.038  Copr. Finastra USA Corporation 1997, 2021.  All Rights Reserved.  - EONW  C:\HARLAND\CFI\LPL\E40.FC  TR-6705  PR-5

# COMMERCIAL SECURITY AGREEMENT

EXHIBIT E-2

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer |
|---|---|---|---|---|---|---|
| $2,750,000.00 | 08-01-2022 | 03-15-2027 | 51576 | | | *** |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** THE RUINS, LLC (TIN:
PO BOX 426
FARGO, ND 58107-0426

**Lender:** Red River State Bank
Halstad
300 2nd Ave West
PO Box 25
Halstad, MN 56548-0025

**Grantor:** THE RUINS, LLC (TIN:
JESSE ROBERT CRAIG (SSN:
PO BOX 426
FARGO, ND 58107-0426

THIS COMMERCIAL SECURITY AGREEMENT dated August 1, 2022, is made and executed among THE RUINS, LLC; and JESSE ROBERT CRAIG ("Grantor"); THE RUINS, LLC ("Borrower"); and Red River State Bank ("Lender").

**GRANT OF SECURITY INTEREST.** For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.** The word "Collateral" as used in this Agreement means the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

**As security for the payment of the indebtedness and all other indebtedness, obligations and liabilities of the Debtor to Creditor, now existing or hereafter arising, directly or indirectly, by operation of law or otherwise (collectively the "liabilities"), Debtor assigns, transfers, pledges, hypothecates and grants to Creditor, its successors and assigns, a first priority security interest (the "security interest") in all Debtor's assets, including without limitation, all equipment, inventory, supplies, accounts, general intangibles, chattel paper and instruments, goods, assets, machinery, fixtures, furnishings and all other personal property together with all other accessories, accessions, attachments and appurtenances, appertaining to attached thereto, whether now owned or hereafter acquired, and all other substitutions, renewals, replacements and improvements and all proceeds, rents, issuers, income, profits and avails, including without limitation, insurance proceeds. Further, Borrower grants Lender a purchase money security interest in specific equipment, furniture and fixtures purchased by Borrower and financed by Lender on or about the date of the loan or filing date thereafter (collectively the "collateral")**

The word "Collateral" also includes all proceeds of the above described collateral, including without limitation, any equipment purchased with proceeds, as well as all accessories, attachments, accessions, replacements and additions, whether added now or later, together with all insurance proceeds and refunds of insurance premiums, if any, and all sums that may be due from third parties who may cause damage to any of the foregoing, whether due to judgment, settlement or other process.

**FUTURE ADVANCES.** In addition to the Note, this Agreement secures all future advances made by Lender to Borrower regardless of whether the advances are made a) pursuant to a commitment or b) for the same purposes.

**BORROWER'S WAIVERS AND RESPONSIBILITIES.** Except as otherwise required under this Agreement or by applicable law, (A) Borrower agrees that Lender need not tell Borrower about any action or inaction Lender takes in connection with this Agreement; (B) Borrower assumes the responsibility for being and keeping informed about the Collateral; and (C) Borrower waives any defenses that may arise because of any action or inaction of Lender, including without limitation any failure of Lender to realize upon the Collateral or any delay by Lender in realizing upon the Collateral; and Borrower agrees to remain liable under the Note no matter what action Lender takes or fails to take under this Agreement.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that: (A) this Agreement is executed at Borrower's request and not at the request of Lender; (B) Grantor has the full right, power and authority to enter into this Agreement and to pledge the Collateral to Lender; (C) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (D) Lender has made no representation to Grantor about Borrower or Borrower's creditworthiness.

**GRANTOR'S WAIVERS.** Grantor waives all requirements of presentment, protest, demand, and notice of dishonor or non-payment to Borrower or Grantor, or any other party to the Indebtedness or the Collateral. Lender may do any of the following with respect to any obligation of any Borrower, without first obtaining the consent of Grantor: (A) grant any extension of time for any payment, (B) grant any renewal, (C) permit any modification of payment terms or other terms, or (D) exchange or release any Collateral or other security. No such act or failure to act shall affect Lender's rights against Grantor or the Collateral.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** With respect to the Collateral, Grantor represents and promises to Lender that:

**Perfection of Security Interest.** Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender. **This is a continuing Security Agreement and will continue in effect even though all or any part of the Indebtedness is paid in full and even though for a period of time Borrower may not be indebted to Lender.**

**Notices to Lender.** Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the management or in the members or managers of the limited liability company Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice.

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its membership agreement does not prohibit any term or condition of this Agreement.

**Enforceability of Collateral.** To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. At the time any account becomes subject to a security interest in favor of Lender, the account shall be a good and valid account representing an undisputed, bona fide indebtedness incurred by the account debtor, for merchandise held subject to delivery instructions or previously shipped or delivered pursuant to a contract of sale, or for services previously performed by Grantor with or for the account debtor. So long as this Agreement remains in effect, Grantor shall not, without Lender's prior written consent, compromise, settle, adjust, or extend payment under or with regard to any such Accounts. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

**Location of the Collateral.** Except in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral (or to the extent the Collateral consists of intangible property such as accounts or general intangibles, the records concerning the Collateral) at Grantor's address shown above, or at the location specified in the Collateral definition in this Agreement, or at such other locations as are acceptable to Lender. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2) all real property Grantor is renting or leasing; (3) all storage facilities Grantor owns, rents, leases, or uses; and (4) all other properties where Collateral is or may be located.

**COMMERCIAL SECURITY AGREEMENT**
**(Continued)**

Loan No: 51576                                                                                                Page 2

**Removal of the Collateral.** Except in the ordinary course of Grantor's business, including the sales of inventory, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certificates of title for the vehicles outside the State of South Dakota, without Lender's prior written consent. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

**Transactions Involving Collateral.** Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. While Grantor is not in default under this Agreement, Grantor may sell inventory, but only in the ordinary course of its business and only to buyers who qualify as a buyer in the ordinary course of business. A sale in the ordinary course of Grantor's business does not include a transfer in partial or total satisfaction of a debt or any bulk sale. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.** Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Repairs and Maintenance.** Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

**Inspection of Collateral.** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized in Lender's sole opinion. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify and defend shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral, whether or not such casualty or loss is covered by insurance. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. This includes making sure Lender is shown as the first and only security interest holder on the title covering the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement. Grantor will promptly notify Lender of any change to Grantor's name or the name of any individual Grantor, any individual who is a partner for a Grantor, and any individual who is a trustee or settlor or trustor for a Grantor under this Agreement. Grantor will also promptly notify Lender of any change to the name that appears on the most recently issued, unexpired driver's license or state-issued identification card, any expiration of the most recently issued driver's license or state-issued identification card for Grantor or any individual for whom Grantor is required to provide notice regarding name changes.

**GRANTOR'S RIGHT TO POSSESSION AND TO COLLECT ACCOUNTS.** Until default and except as otherwise provided below with respect to accounts, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful

Case 25-30004    Doc 114-2    Filed 09/28/25    Entered 09/28/25 14:34:46    Desc
Exhibits 15-21 / 23 Pages Maintain Document    Page 355 of 415

Case 25-30004    Claim 1-2    Part 2    Filed 04/29/25    Document    Page 24 of 84

**COMMERCIAL SECURITY AGREEMENT**
**(Continued)**

Loan No: 51576    Page 3

manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. Until otherwise notified by Lender, Grantor may collect any of the Collateral consisting of accounts. At any time and even though no Event of Default exists, Lender may exercise its rights to collect the accounts and to notify account debtors to make payments directly to Lender for application to the Indebtedness. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will  (A)  be payable on demand;  (B)  be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either  (1)  the term of any applicable insurance policy; or  (2)  the remaining term of the Note; or  (C)  be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon the occurrence of any Event of Default.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower or Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Grantor.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of Borrower or Grantor or the dissolution or termination of Borrower's or Grantor's existence as a going business, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower's or Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Borrower's or Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or Guarantor dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Borrower's or Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the South Dakota Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Borrower would be required to pay, immediately due and payable, without notice of any kind to Borrower or Grantor.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Borrower for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Borrower shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to

**COMMERCIAL SECURITY AGREEMENT**
**(Continued)**

Loan No: 51576    Page 4

perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** With respect to procedural matters related to the perfection and enforcement of Lender's rights against the Collateral, this Agreement will be governed by federal law applicable to Lender and to the extent not preempted by federal law, the laws of the State of South Dakota. In all other respects, this Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Minnesota without regard to its conflicts of law provisions. However, if there ever is a question about whether any provision of this Agreement is valid or enforceable, the provision that is questioned will be governed by whichever state or federal law would find the provision to be valid and enforceable. The loan transaction that is evidenced by the Note and this Agreement has been applied for, considered, approved and made, and all necessary loan documents have been accepted by Lender in the State of Minnesota.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Norman County, State of Minnesota.

**Joint and Several Liability.** All obligations of Borrower and Grantor under this Agreement shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower. This means that each Borrower and Grantor signing below is responsible for all obligations in this Agreement. Where any one or more of the parties is a corporation, partnership, limited liability company or similar entity, it is not necessary for Lender to inquire into the powers of any of the officers, directors, partners, members, or other agents acting or purporting to act on the entity's behalf, and any obligations made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Agreement.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any person or circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other person or circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Borrower.** The word "Borrower" means THE RUINS, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means THE RUINS, LLC; and JESSE ROBERT CRAIG.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous

**COMMERCIAL SECURITY AGREEMENT**

| Loan No: 51576 | (Continued) | Page 5 |
|---|---|---|

Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents. Specifically, without limitation, Indebtedness includes the future advances set forth in the Future Advances provision of this Agreement together with all interest thereon.

**Lender.** The word "Lender" means Red River State Bank, its successors and assigns.

**Note.** The word "Note" means the Note dated August 1, 2022 and executed by THE RUINS, LLC in the principal amount of $2,750,000.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

BORROWER AND GRANTOR HAVE READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREE TO ITS TERMS. THIS AGREEMENT IS DATED AUGUST 1, 2022.

**GRANTOR:**

**THE RUINS, LLC**

By: _____
   JESSE ROBERT CRAIG, Member of THE RUINS, LLC

X _____
   JESSE ROBERT CRAIG, Individually

**BORROWER:**

**THE RUINS, LLC**

By: _____
   JESSE ROBERT CRAIG, Member of THE RUINS, LLC

**LENDER:**

**RED RIVER STATE BANK**

X _____
   CHARLES AARESTAD, Executive Vice President

# COMMERCIAL SECURITY AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $600,000.00 | 02-17-2023 | 12-30-2023 | 51658 | JN | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan
Any item above containing "*****" has been omitted due to text length limitations.

**EXHIBIT E-3**

| | | |
|---|---|---|
| **Borrower:** | JESSE ROBERT CRAIG (SSN:<br>CRAIG DEVELOPMENT, LLC (TIN:<br>CRAIG HOLDINGS LLC (TIN:<br>PROPERTIES LLC (TIN:<br>RUINS LLC (TIN:<br>PO BOX 426<br>FARGO, ND 58107-0426 | **Lender:** Red River State Bank<br>Halstad<br>300 2nd Ave West<br>PO Box 25<br>Halstad, MN 56548-0025 |
| **Grantor:** | JESSE ROBERT CRAIG (SSN:<br>CRAIG DEVELOPMENT, LLC (TIN:<br>PO BOX 426<br>FARGO, ND 58107-0426 | |

(annotations near Borrower: ":", "; CRAIG", ": CRAIG", ": and THE")

THIS COMMERCIAL SECURITY AGREEMENT dated February 17, 2023, is made and executed among JESSE ROBERT CRAIG; and CRAIG DEVELOPMENT, LLC ("Grantor"); JESSE ROBERT CRAIG; CRAIG DEVELOPMENT, LLC; CRAIG HOLDINGS LLC; CRAIG PROPERTIES LLC; and THE RUINS LLC ("Borrower"); and Red River State Bank ("Lender").

GRANT OF SECURITY INTEREST. For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

COLLATERAL DESCRIPTION. The word "Collateral" as used in this Agreement means the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

As security for the payment of the indebtedness and all other indebtedness, obligations and liabilities of the Debtor to Creditor, now existing or hereafter arising, directly or indirectly, by operation of law or otherwise (collectively the "liabilities"), Debtor assigns, transfers, pledges, hypothecates and grants to Creditor, its successors and assigns, a first priority security interest (the "security interest") in all Debtor's assets, including without limitation, all equipment, inventory, supplies, accounts, general intangibles, chattel paper and instruments, goods, assets, machinery, fixtures, furnishings and all other personal property together with all other accessories, accessions, attachments and appurtenances, appertaining to attached thereto, whether now owned or hereafter acquired, and all other substitutions, renewals, replacements and improvements and all proceeds, rents, issuers, income, profits and avails, including without limitation, insurance proceeds. Further, Borrower grants Lender a purchase money security interest in specific equipment, furniture and fixtures purchased by Borrower and financed by Lender on or about the date of the loan or filing date thereafter (collectively the "collateral")

The word "Collateral" also includes all proceeds of the above described collateral, including without limitation, any equipment purchased with proceeds, as well as all accessories, attachments, accessions, replacements and additions, whether added now or later, together with all insurance proceeds and refunds of insurance premiums, if any, and all sums that may be due from third parties who may cause damage to any of the foregoing, whether due to judgment, settlement or other process.

CROSS-COLLATERALIZATION. In addition to the Note, this Agreement secures all obligations, debts and liabilities, plus interest thereon, of either Grantor or Borrower to Lender, or any one or more of them, as well as all claims by Lender against Borrower and Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Borrower or Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

FUTURE ADVANCES. In addition to the Note, this Agreement secures all future advances made by Lender to Borrower regardless of whether the advances are made a) pursuant to a commitment or b) for the same purposes.

BORROWER'S WAIVERS AND RESPONSIBILITIES. Except as otherwise required under this Agreement or by applicable law, (A) Borrower agrees that Lender need not tell Borrower about any action or inaction Lender takes in connection with this Agreement; (B) Borrower assumes the responsibility for being and keeping informed about the Collateral; and (C) Borrower waives any defenses that may arise because of any action or inaction of Lender, including without limitation any failure of Lender to realize upon the Collateral or any delay by Lender in realizing upon the Collateral; and Borrower agrees to remain liable under the Note no matter what action Lender takes or fails to take under this Agreement.

GRANTOR'S REPRESENTATIONS AND WARRANTIES. Grantor warrants that: (A) this Agreement is executed at Borrower's request and not at the request of Lender; (B) Grantor has the full right, power and authority to enter into this Agreement and to pledge the Collateral to Lender; (C) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (D) Lender has made no representation to Grantor about Borrower's or Borrower's creditworthiness.

GRANTOR'S WAIVERS. Grantor waives all requirements of presentment, protest, demand, and notice of dishonor or non-payment to Borrower or Grantor, or any other party to the Indebtedness or the Collateral. Lender may do any of the following with respect to any obligation of any Borrower, without first obtaining the consent of Grantor: (A) grant any extension of time for any payment, (B) grant any renewal, (C) permit any modification of payment terms or other terms, or (D) exchange or release any Collateral or other security. No such act or failure to act shall affect Lender's rights against Grantor or the Collateral.

RIGHT OF SETOFF. To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL. With respect to the Collateral, Grantor represents and promises to Lender that:

Perfection of Security Interest. Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender. This is a continuing Security Agreement and will continue in effect even though all or any part of the Indebtedness is paid in full and even though for a period of time Borrower may not be indebted to Lender.

Notices to Lender. Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the management or in the members or managers of the limited liability company Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice.

No Violation. The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its membership agreement does not prohibit any term or condition of this Agreement.

Enforceability of Collateral. To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. At the time any account becomes subject to a security interest in favor of Lender, the account shall be a good and valid account representing an undisputed, bona fide indebtedness incurred by the account debtor, for merchandise held subject to delivery instructions or previously shipped or delivered pursuant to a contract of sale, or for services previously performed by Grantor with or for the account debtor. So long as this Agreement

**COMMERCIAL SECURITY AGREEMENT**
**(Continued)**

| Loan No: 51658 | | Page 2 |
|---|---|---|

remains in effect, Grantor shall not, without Lender's prior written consent, compromise, settle, adjust, or extend payment under or with regard to any such Accounts. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

**Location of the Collateral.** Except in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral (or to the extent the Collateral consists of intangible property such as accounts or general intangibles, the records concerning the Collateral) at Grantor's address shown above, or at the location specified in the Collateral definition in this Agreement, or at such other locations as are acceptable to Lender. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2) all real property Grantor is renting or leasing; (3) all storage facilities Grantor owns, rents, leases, or uses; and (4) all other properties where Collateral is or may be located.

**Removal of the Collateral.** Except in the ordinary course of Grantor's business, including the sales of inventory, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certificates of title for the vehicles outside the State of North Dakota, without Lender's prior written consent. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

**Transactions Involving Collateral.** Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. While Grantor is not in default under this Agreement, Grantor may sell inventory, but only in the ordinary course of its business and only to buyers who qualify as a buyer in the ordinary course of business. A sale in the ordinary course of Grantor's business does not include a transfer in partial or total satisfaction of a debt or any bulk sale. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.** Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Repairs and Maintenance.** Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

**Inspection of Collateral.** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized in Lender's sole opinion. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, reasonable attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify and defend shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral, whether or not such casualty or loss is covered by insurance. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect,

**COMMERCIAL SECURITY AGREEMENT**
**(Continued)**

protect, and continue Lender's security interest in the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement. Grantor will promptly notify Lender of any change to Grantor's name or the name of any individual Grantor, any individual who is a partner for a Grantor, and any individual who is a trustee or settlor or trustor for a Grantor under this Agreement. Grantor will also promptly notify Lender of any change to the name that appears on the most recently issued, unexpired driver's license or state-issued identification card, any expiration of the most recently issued driver's license or state-issued identification card for Grantor or any individual for whom Grantor is required to provide notice regarding name changes.

**GRANTOR'S RIGHT TO POSSESSION AND TO COLLECT ACCOUNTS.** Until default and except as otherwise provided below with respect to accounts, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. Until otherwise notified by Lender, Grantor may collect any of the Collateral consisting of accounts. At any time and even though no Event of Default exists, Lender may exercise its rights to collect the accounts and to notify account debtors to make payments directly to Lender for application to the Indebtedness. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents. Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon the occurrence of any Event of Default.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower or Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Grantor.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of Borrower or Grantor or the dissolution or termination of Borrower's or Grantor's existence as a going business, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower's or Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Borrower's or Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or guarantor, endorser, surety, or accommodation party dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Borrower's or Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the North Dakota Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Borrower would be required to pay, immediately due and payable, without notice of any kind to Borrower or Grantor.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**COMMERCIAL SECURITY AGREEMENT**
**(Continued)**

| Loan No: 51658 | Page 4 |
|---|---|

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Borrower for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Borrower shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** With respect to procedural matters related to the perfection and enforcement of Lender's rights against the Collateral, this Agreement will be governed by federal law applicable to Lender and to the extent not preempted by federal law, the laws of the State of North Dakota. In all other respects, this Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Minnesota without regard to its conflicts of law provisions. However, if there ever is a question about whether any provision of this Agreement is valid or enforceable, the provision that is questioned will be governed by whichever state or federal law would find the provision to be valid and enforceable. The loan transaction that is evidenced by the Note and this Agreement has been applied for, considered, approved and made, and all necessary loan documents have been accepted by Lender in the State of Minnesota.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Norman County, State of Minnesota.

**Joint and Several Liability.** All obligations of Borrower and Grantor under this Agreement shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower. This means that each Borrower and Grantor signing below is responsible for all obligations in this Agreement. Where any one or more of the parties is a corporation, partnership, limited liability company or similar entity, it is not necessary for Lender to inquire into the powers of any of the officers, directors, partners, members, or other agents acting or purporting to act on the entity's behalf, and any obligations made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Agreement.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any person or circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other person or circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Borrower.** The word "Borrower" means JESSE ROBERT CRAIG; CRAIG DEVELOPMENT, LLC; CRAIG HOLDINGS LLC; CRAIG PROPERTIES LLC; and THE RUINS LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

Loan No: 51658

## COMMERCIAL SECURITY AGREEMENT
(Continued)

Page 5

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means JESSE ROBERT CRAIG; and CRAIG DEVELOPMENT, LLC.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents. Specifically, without limitation, Indebtedness includes the future advances set forth in the Future Advances provision, together with all interest thereon and all amounts that may be indirectly secured by the Cross-Collateralization provision of this Agreement.

**Lender.** The word "Lender" means Red River State Bank, its successors and assigns.

**Note.** The word "Note" means the Note dated February 17, 2023 and executed by JESSE ROBERT CRAIG; CRAIG DEVELOPMENT, LLC; CRAIG HOLDINGS LLC; CRAIG PROPERTIES LLC; and THE RUINS LLC in the principal amount of $600,000.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

BORROWER AND GRANTOR HAVE READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREE TO ITS TERMS. THIS AGREEMENT IS DATED FEBRUARY 17, 2023.

GRANTOR:

X _____
JESSE ROBERT CRAIG, Individually


CRAIG DEVELOPMENT, LLC

By: _____
JESSE ROBERT CRAIG, Member of CRAIG
DEVELOPMENT, LLC

BORROWER:

X _____
JESSE ROBERT CRAIG, Individually


CRAIG DEVELOPMENT, LLC

By: _____
JESSE ROBERT CRAIG, Member of CRAIG
DEVELOPMENT, LLC


CRAIG HOLDINGS LLC

By: _____
JESSE ROBERT CRAIG, Managing Member of
CRAIG HOLDINGS LLC


CRAIG PROPERTIES LLC

By: _____
JESSE ROBERT CRAIG


THE RUINS LLC

By: _____
JESSE ROBERT CRAIG, Member of THE RUINS LLC

LENDER:

RED RIVER STATE BANK

X _____
CHARLES AARESTAD, Executive Vice President





EXHIBIT

**F**

20220680794833

B0213-2853  03/09/2022  8:04AM  Rec'd by SD SOS

## FINANCING STATEMENT

| A. NAME & PHONE OF CONTACT AT FILER (Optional) |
| B. EMAIL OF CONTACT AT FILER (Optional) |

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

RED RIVER STATE BANK
300 2ND AVE W
PO BOX 25
HALSTAD, MN  56548

This document is a representation of a filing made electronically through the South Dakota Secretary of State's web site.

Financing Statement Doc #: 20220680794833
Filing Date: 3/9/2022 8:04 AM
Secretary of State, Steve Barnett

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

### DEBTORS

1. TAX IDENTIFICATION NUMBER

b. DEBTOR'S NAME

| OR | ORGANIZATION'S NAME THE RUINS, LLC | | | |
|---|---|---|---|---|
| | INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S) INITIAL(S) | SUFFIX |

d. MAILING ADDRESS
315 EAST KEMP AVENUE

| e. CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|
| WATERTOWN | SD | 57201 | USA |

2. TAX IDENTIFICATION NUMBER

b. DEBTOR'S NAME

| OR | ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| | INDIVIDUAL'S SURNAME CRAIG | FIRST PERSONAL NAME JESSE | ADDITIONAL NAME(S) INITIAL(S) ROBERT | SUFFIX |

d. MAILING ADDRESS
405 20TH AVE E

| e. CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|
| WEST FARGO | ND | 58078 | USA |

### SECURED PARTIES

1. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY)

| OR | a. ORGANIZATION'S NAME RED RIVER STATE BANK | | | |
|---|---|---|---|---|
| | b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S) INITIAL(S) | SUFFIX |

c. MAILING ADDRESS
300 2ND AVE W, PO BOX 25

| d. CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|
| HALSTAD | MN | 56548 | USA |

COLLATERAL: This financing statement covers the following collateral:

All Inventory, Chattel Paper, Accounts, Equipment, General Intangibles, Farm Products, Livestock (including all increase and supplies), Farm Equipment and Consumer Goods; whether any of the foregoing is owned now or acquired later; whether any of the foregoing is now existing or hereafter born or grown; all accessions, additions, replacements, and substitutions relating to any of the foregoing (including all entitlements, rights to payment, and payments, in whatever form received, including but not limited to, payments under any governmental agricultural

FINANCING STATEMENT (Form UCC1)                                    Page 1 of 2

South Dakota Secretary of State · UCC Division - 500 E. Capitol Ave · Pierre, SD  57501-5070
(605) 773-4422 · sos.ucc@state.sd.us

B0213-2854  03/09/2022  8:04AM  Rec'd  by  SD  SOS



## FINANCING STATEMENT

This document is a representation of a filing made electronically through the South Dakota Secretary of State's web site.

Financing Statement Doc #: 20220680794833
Filing Date: 3/9/2022 8:04 AM
Secretary of State, Steve Barnett

| A. NAME & PHONE OF CONTACT AT FILER (Optional) |
| --- |
| B. EMAIL OF CONTACT AT FILER (Optional) |
| C. SEND ACKNOWLEDGMENT TO: (Name and Address) |

RED RIVER STATE BANK
300 2ND AVE W
PO BOX 25
HALSTAD, MN  56548

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

diversion programs, governmental agricultural assistance programs, the Farm Services Agency Wheat Feed Grain Program, and any other such program of the United States Department of Agriculture, or any other general intangibles or programs); all records of any kind relating to any of the foregoing

| Check only if applicable and check only one box: Collateral is | ☐ held in a Trust |
| --- | --- |
| | ☐ being administered by a Decedent's Personal Representative |

| Check only if applicable and check only one box: | | | Check only if applicable and check only one box: | |
| --- | --- | --- | --- | --- |
| ☐ Public-Finance Transaction | ☐ Manufactured-Home Transaction | ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien | ☐ Non-UCC Filing |

| ALTERNATIVE DESIGNATION (if applicable): | ☐ Lessee/Lessor | ☐ Consignee/Consignor | ☐ Seller/Buyer | ☐ Bailee/Bailor | ☐ Licensee/Licensor |
| --- | --- | --- | --- | --- | --- |

OPTIONAL FILER REFERENCE DATA:
THE RUINS, LLC

NOTE: All information on this form is public record.

**FINANCING STATEMENT (Form UCC1)**                                Page 2 of 2

**South Dakota Secretary of State · UCC Division - 500 E. Capitol Ave · Pierre, SD  57501-5070**
**(605) 773-4422 · sos.ucc@state.sd.us**

EXHIBIT

G

This Mortgage was prepared by:
BRIANNA AARESTAD, LOAN OFFICER
Red River State Bank
300 2nd Ave West
Halstad, MN 56548-0025
(218) 456-2187

INSTRUMENT NO. 202201073 Pages: 18
BOOK: 990  MORTGAGE
PAGE: 8555

3/10/2022 9:57:44 AM

*Ann Rasmussen*

ANN RASMUSSEN, REGISTER OF DEEDS
CODINGTON COUNTY, SOUTH DAKOTA
Recording Fee: 30.00
Return To: FIRST DAKOTA TITLE - WTN

SD 224130

## CONSTRUCTION MORTGAGE
## - 180 DAY REDEMPTION

RECORDATION REQUESTED BY:
Red River State Bank
Halstad
300 2nd Ave West
PO Box 25
Halstad, MN  56548-0025

WHEN RECORDED MAIL TO:
Red River State Bank
Halstad
300 2nd Ave West
PO Box 25
Halstad, MN  56548-0025

SEND TAX NOTICES TO:
THE RUINS, LLC
PO BOX 426
FARGO, ND  58107-0426

**MAXIMUM LIEN.  The lien of this Mortgage shall not exceed at any one time $9,875,000.00.**

**THIS MORTGAGE** dated March 9, 2022, is made and executed between THE RUINS, LLC; A
SOUTH DAKOTA LIMITED LIABILITY CORPORATION ("Mortgagor", referred to below as
"Grantor") and Red River State Bank, whose address is 300 2nd Ave West, PO Box 25,
Halstad, MN  56548-0025 ("Mortgagee", referred to below as "Lender").

**GRANT OF MORTGAGE.  For valuable consideration, Grantor** mortgages and conveys to Lender
all of Grantor's right, title, and interest in and to the following described real property, together
with all existing or subsequently erected or affixed buildings, improvements and fixtures; all
easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch
rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties,

## MORTGAGE
**(Continued)**

Loan No: 51500                                                             Page 2

and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in CODINGTON County, State of South Dakota:

    The Ruins Addition to the City of Watertown, Codington County, South Dakota

The Real Property or its address is commonly known as **315 EAST KEMP AVENUE, WATERTOWN, SD 57201.** The Real Property tax identification number is 9352.

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**FUTURE ADVANCES.** In addition to the Note, this Mortgage secures all future advances made by Lender to Grantor whether or not the advances are made pursuant to a commitment. Specifically, without limitation, this Mortgage secures, in addition to the amounts specified in the Note, all future amounts Lender in its discretion may loan to Grantor, together with all interest thereon.

**THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS MORTGAGE. THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS ALSO GIVEN TO SECURE ANY AND ALL OF GRANTOR'S OBLIGATIONS UNDER THAT CERTAIN CONSTRUCTION LOAN AGREEMENT BETWEEN GRANTOR AND LENDER OF EVEN DATE HEREWITH. ANY EVENT OF DEFAULT UNDER THE CONSTRUCTION LOAN AGREEMENT, OR ANY OF THE RELATED DOCUMENTS REFERRED TO THEREIN, SHALL ALSO BE AN EVENT OF DEFAULT UNDER THIS MORTGAGE. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Mortgage, Grantor shall pay to Lender all amounts secured by this Mortgage as they become due and shall strictly perform all of Grantor's obligations under this Mortgage.

**CONSTRUCTION MORTGAGE.** This Mortgage is a "construction mortgage" for the purposes of Sections 9-334 and 2A-309 of the Uniform Commercial Code, as those sections have been adopted by the State of South Dakota.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

    **Possession and Use.** Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

    **Duty to Maintain.** Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

    **Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any

# MORTGAGE
## (Continued)

Loan No: 51500                                                                                    Page 3

Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

Without otherwise limiting Grantor's covenants as provided herein, Grantor shall not without Lender's prior written consent, remove or permit the removal of sand, gravel or topsoil, or engage in borrow pit operations, or use or permit the use of the Property as a land fill or dump, or store, burn or bury or permit the storage, burning or burying of any material or product which may result in contamination of the Property or the groundwater or which may require the issuance of a permit by the Environmental Protection Agency or any state or local government agency governing the issuance of hazardous or toxic waste permits, or request or permit a change in zoning or land use classification, or cut or remove or suffer the cutting or removal of any trees or timber from the Property.

At its sole cost and expense, Grantor shall comply with and shall cause all occupants of the Property to comply with all Environmental Laws with respect to the disposal of industrial refuse or waste, and/or the discharge, processing, manufacture, generation, treatment, removal, transportation, storage and handling of Hazardous Substances, and pay immediately when due the cost of removal of any such wastes or substances from, and keep the Property free of any lien imposed pursuant to such laws, rules, regulations and

| Loan No: 51500 | **MORGAGE**<br>**(Continued)** | **Page 4** |

---

orders.

Grantor shall not install or permit to be installed in or on the Property, friable asbestos or any substance containing asbestos and deemed hazardous by federal, state or local laws, rules, regulations or orders respecting such material. Grantor shall further not install or permit the installation of any machinery, equipment or fixtures containing polychlorinated biphenyls (PCBs) on or in the Property. With respect to any such material or materials currently present in or on the Property, Grantor shall promptly comply with all applicable Environmental Laws regarding the safe removal thereof, at Grantor's expense.

Grantor shall indemnify and defend Lender and hold Lender harmless from and against all loss, cost, damage and expense (including, without limitation, attorneys' fees and costs incurred in the investigation, defense and settlement of claims) that Lender may incur as a result of or in connection with the assertion against Lender of any claim relating to the presence or removal of any Hazardous Substance, or compliance with any Environmental Law. No notice from any governmental body has ever been served upon Grantor or, to Grantor's knowledge after due inquiry, upon any prior owner of the Property, claiming a violation of or under any Environmental Law or concerning the environmental state, condition or quality of the Property, or the use thereof, or requiring or calling attention to the need for any work, repairs, construction, removal, cleanup, alterations, demolition, renovation or installation on, or in connection with, the Property in order to comply with any Environmental Law; and upon receipt of any such notice, Grantor shall take any and all steps, and shall perform any and all actions necessary or appropriate to comply with the same, at Grantor's expense. In the event Grantor fails to do so, Lender may declare this Mortgage to be in default.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably

Loan No: 51500

## MORTGAGE
### (Continued)

Page 5

satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any restructuring of the legal entity (whether by merger, division or otherwise) or any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by South Dakota law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments

| | **MORTGAGE** | |
|---|---|---|
| **Loan No: 51500** | **(Continued)** | **Page 6** |

against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of thirty (30) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain flood insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan. Flood insurance may be purchased under the National Flood Insurance Program, from private insurers providing "private flood insurance" as defined by applicable federal flood insurance statutes and regulations, or from another flood insurance provider that is both acceptable to Lender in its sole discretion and permitted by applicable federal flood insurance statutes and regulations.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if

## MORTGAGE
### (Continued)

**Loan No: 51500**                                                           **Page 7**

Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Unexpired Insurance at Sale.** Any unexpired insurance shall inure to the benefit of, and pass to, the purchaser of the Property covered by this Mortgage at any trustee's sale or other sale held under the provisions of this Mortgage, or at any foreclosure sale of such Property.

**Grantor's Report on Insurance.** Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Mortgage or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Mortgage or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Mortgage also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon the occurrence of any Event of Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and

**MORTGAGE**
**(Continued)**

Loan No: 51500                                                              Page 8

will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Notice of Proceedings.** Grantor shall immediately notify Lender in writing should all or any part of the Property become subject to any condemnation or expropriation proceedings or other similar proceedings, including without limitation, any condemnation, confiscation, eminent domain, inverse condemnation or temporary requisition or taking of the mortgaged Property, or any part or parts of the Property. Grantor further agrees to promptly take such steps as may be necessary and proper within Lender's sole judgment and at Grantor's expense, to defend any such condemnation or expropriation proceedings and obtain the proceeds derived from such proceedings. Grantor shall not agree to any settlement or compromise or any condemnation or expropriation claim without Lender's prior written consent.

**Lender's Participation.** Lender may, at Lender's sole option, elect to participate in any such condemnation or expropriation proceedings and be represented by counsel of Lender's choice. Grantor agrees to provide Lender with such documentation as Lender may request to permit Lender to so participate and to reimburse Lender for Lender's costs associated with Lender's participation, including Lender's reasonable attorneys' fees.

**Conduct of Proceedings.** If Grantor fails to defend any such condemnation or expropriation proceedings to Lender's satisfaction, Lender may undertake the defense of such a proceeding for and on behalf of Grantor. To this end, Grantor irrevocably appoints Lender as Grantor's agent and attorney-in-fact, such agency being coupled with an interest, to bring, defend, adjudicate, settle, or otherwise compromise such condemnation or expropriation claims; it being understood, however, that, unless one or more Events of Default (other than the condemnation or expropriation of the Property) then exists under this Mortgage, Lender will not agree to any final settlement or compromise of any such condemnation or expropriation claim without Grantor's prior approval, which approval shall not be unreasonably withheld.

**Application of Net Proceeds.** Lender shall have the right to receive all proceeds derived or to be derived from the condemnation, expropriation, confiscation, eminent domain, inverse

**MORTGAGE**

Loan No: 51500                          **(Continued)**                          **Page 9**

condemnation, or any permanent or temporary requisition or taking of the Property, or any part or parts of the Property ("condemnation proceeds"). In the event that Grantor should receive any such condemnation proceeds, Grantor agrees to immediately turn over and to pay such proceeds to Lender. All condemnation proceeds, which are received by, or which are payable to either Grantor or Lender, shall be applied, at Lender's sole option and discretion, and in such manner as Lender may determine (after payment of all reasonable costs, expenses and attorneys' fees necessarily paid or incurred by Grantor and/or Lender), for the purpose of: (a) replacing or restoring the condemned, expropriated, confiscated, or taken Property; or (b) reducing the then outstanding balance of the Indebtedness, together with interest thereon, with such payments being applied in the manner provided in this Mortgage. Lender's receipt of such condemnation proceeds and the application of such proceeds as provided in this Mortgage shall not affect the lien of this Mortgage.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies

**MORTGAGE**
**(Continued)**

Loan No: 51500                                                                              Page 10

or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Note, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness, including without limitation all future advances, when due, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Mortgage:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing

## MORTGAGE
### (Continued)

**Loan No: 51500**

**Page 11**

of or to effect discharge of any lien.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Mortgage or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf, or made by Guarantor, or any other guarantor, endorser, surety, or accommodation party, under this Mortgage or the Related Documents in connection with the obtaining of the Indebtedness evidenced by the Note or any security document directly or indirectly securing repayment of the Note is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution of Grantor's (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Grantor's existence as a going business or the death of any member, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Execution; Attachment.** Any execution or attachment is levied against the Property, and such execution or attachment is not set aside, discharged or stayed within thirty (30) days after the same is levied.

**Change in Zoning or Public Restriction.** Any change in any zoning ordinance or regulation or any other public restriction is enacted, adopted or implemented, that limits or defines the uses which may be made of the Property such that the present or intended use of the Property, as specified in the Related Documents, would be in violation of such zoning ordinance or regulation or public restriction, as changed.

**Default Under Other Lien Documents.** A default occurs under any other mortgage, deed of trust or security agreement covering all or any portion of the Property.

**Judgment.** Unless adequately covered by insurance in the opinion of Lender, the entry of a

# MORTGAGE

**Loan No: 51500**                                  **(Continued)**                                  **Page 12**

---

final judgment for the payment of money involving more than ten thousand dollars ($10,000.00) against Grantor and the failure by Grantor to discharge the same, or cause it to be discharged, or bonded off to Lender's satisfaction, within thirty (30) days from the date of the order, decree or process under which or pursuant to which such judgment was entered.

**Breach of Other Agreement.** Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor, or any other guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any Guarantor, or any other guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty that Grantor would be required to pay.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Grantor shall have the right, prior to default or abandonment of the Property, to collect and retain the Rents as they become due and payable. The assignment of Rents contained in this Mortgage shall be effective until the payment of all Indebtedness secured by this Mortgage, or in the event of foreclosure, until the period of redemption expires. Regardless of the extinguishment of the Indebtedness by a foreclosure sale, this benefit shall continue for the benefit of the purchaser at the foreclosure sale.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

## MORTGAGE
**Loan No: 51500**             **(Continued)**            **Page 13**

**Nonjudicial Sale.** If permitted by applicable law, Lender may foreclose Grantor's interest in all or in any part of the Personal Property or the Real Property by non-judicial sale.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Redemption.** THE PARTIES AGREE THAT THE PROVISIONS OF THE 180-DAY REDEMPTION MORTGAGE ACT GOVERN THIS MORTGAGE. THIS SHALL CONSTITUTE AND AUTHORIZE A POWER OF SALE UNDER THE PROVISIONS OF SUCH ACT. Grantor agrees that, in the event of a foreclosure of this Mortgage by action, the holder of the certificate of sale conducted as a result of the foreclosure may apply to the appropriate court for a reduction of the redemption period if Grantor has abandoned the Property. Grantor agrees that if, after notice to the parties as the court may direct, the court finds that the Property has been abandoned, then the redemption period may be reduced to a period of not less than sixty (60) days from the date of recording of the certificate of sale issued as a result of the foreclosure of this Mortgage.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Mortgage, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies. Nothing under this Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the Indebtedness.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the

| Loan No: 51500 | **MORTGAGE**<br>**(Continued)** | Page 14 |
|---|---|---|

terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Any notice required to be given under this Mortgage, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage shall be sent to Lender's address, as shown near the beginning of this Mortgage. Any party may change its address for notices under this Mortgage by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law.** With respect to procedural matters related to the perfection and enforcement of Lender's rights against the Property, this Mortgage will be governed by federal law applicable to Lender and to the extent not preempted by federal law, the laws of

**MORTGAGE**

the State of South Dakota. In all other respects, this Mortgage will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Minnesota without regard to its conflicts of law provisions. However, if there ever is a question about whether any provision of this Mortgage is valid or enforceable, the provision that is questioned will be governed by whichever state or federal law would find the provision to be valid and enforceable. The loan transaction that is evidenced by the Note and this Mortgage has been applied for, considered, approved and made, and all necessary loan documents have been accepted by Lender in the State of Minnesota.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Norman County, State of Minnesota.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Mortgage unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Mortgage shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Mortgage. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Mortgage to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Mortgage. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Mortgage shall not affect the legality, validity or enforceability of any other provision of this Mortgage.

**Non-Liability of Lender.** The relationship between Grantor and Lender created by this Mortgage is strictly a debtor and creditor relationship and not fiduciary in nature, nor is the relationship to be construed as creating any partnership or joint venture between Lender and Grantor. Grantor is exercising Grantor's own judgment with respect to Grantor's business. All information supplied to Lender is for Lender's protection only and no other party is entitled to rely on such information. There is no duty for Lender to review, inspect, supervise or inform Grantor of any matter with respect to Grantor's business. Lender and Grantor intend that Lender may reasonably rely on all information supplied by Grantor to Lender, together with all representations and warranties given by Grantor to Lender, without investigation or confirmation by Lender and that any investigation or failure to investigate will not diminish Lender's right to so rely.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**MORTGAGE**
Loan No: 51500
**(Continued)**
Page 16

**Sole Discretion of Lender.** Whenever Lender's consent or approval is required under this Mortgage, the decision as to whether or not to consent or approve shall be in the sole and exclusive discretion of Lender and Lender's decision shall be final and conclusive.

**Successors and Assigns.** Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**Waiver of Homestead Exemption.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of South Dakota as to all Indebtedness secured by this Mortgage.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means THE RUINS, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean individually, collectively, and interchangeably any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Grantor.** The word "Grantor" means THE RUINS, LLC.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness, and, in each case, the successors, assigns, heirs, personal representatives, executors and administrators of any guarantor, surety, or accommodation party.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor, or any other guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

## MORTGAGE
**Loan No: 51500** (Continued) **Page 17**

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage. Specifically, without limitation, Indebtedness includes the future advances set forth in the Future Advances provision of this Mortgage, together with all interest thereon.

**Lender.** The word "Lender" means Red River State Bank, its successors and assigns.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Note.** The word "Note" means the promissory note dated March 9, 2022, **in the original principal amount of $7,740,000.00** from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues,

| Loan No: 51500 | **MORTGAGE**<br>**(Continued)** | **Page 18** |
|---|---|---|

royalties, profits, and other benefits derived from the Property.

**GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND GRANTOR AGREES TO ITS TERMS.**

**GRANTOR:**

**THE RUINS, LLC**

By:_____
    **JESSE ROBERT CRAIG, Member of THE RUINS, LLC**

---

## LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

STATE OF _Minnesota_ )
                                   ) SS

COUNTY OF _Norman_ )

On this _4th_ day of _March_, 20 _22_, before me, the undersigned Notary Public, personally appeared **JESSE ROBERT CRAIG, Member of THE RUINS, LLC**, and known to me to be a member or designated agent of the limited liability company that executed the Mortgage and acknowledged the Mortgage to be the free and voluntary act and deed of the limited liability company, by authority of statute, its articles of organization or its operating agreement, for the uses and purposes therein mentioned, and on oath stated that he or she is authorized to execute this Mortgage and in fact executed the Mortgage on behalf of the limited liability company.

By _[signature]_

Notary Public in and for the State of _MN_    My commission expires _01/31/2023_

CHARLES BENNITT AARESTAD
Notary Public-Minnesota
My Commission Expires Jan 31, 2023

---

LaserPro, Ver. 20.4.0.038 Copr. Finastra USA Corporation 1997, 2022. All Rights Reserved.
    - SD/MN C:\HARLAND\CFI\LPL\G03.FC TR-5788 PR-5

This Mortgage was prepared by:
BRIANNA AARESTAD, LOAN OFFICER
Red River State Bank
300 2nd Ave West
Halstad, MN 56548-0025
218-456-2187

INSTRUMENT NO. 202203397  Pages: 18
BOOK: 990  MORTGAGE
PAGE: 9258

EXHIBIT
H

8/4/2022 11:10:00 AM

*Ann Rasmussen*

ANN RASMUSSEN, REGISTER OF DEEDS
CODINGTON COUNTY, SOUTH DAKOTA
Recording Fee: 30.00
Return To: RED RIVER STATE BANK

## CONSTRUCTION MORTGAGE
## - 180 DAY REDEMPTION

**RECORDATION REQUESTED BY:**
Red River State Bank
Halstad
300 2nd Ave West
PO Box 25
Halstad, MN  56548-0025

**WHEN RECORDED MAIL TO:**
Red River State Bank
Halstad
300 2nd Ave West
PO Box 25
Halstad, MN  56548-0025

**SEND TAX NOTICES TO:**
THE RUINS, LLC
PO BOX 426
FARGO, ND  58107-0426

**MAXIMUM LIEN.** The lien of this Mortgage shall not exceed at any one time $615,000.00.

**THIS MORTGAGE** dated August 1, 2022, is made and executed between THE RUINS, LLC; A SOUTH DAKOTA LIMITED LIABILITY CORPORATION ("Mortgagor", referred to below as "Grantor") and Red River State Bank, whose address is 300 2nd Ave West, PO Box 25, Halstad, MN  56548-0025 ("Mortgagee", referred to below as "Lender").

**GRANT OF MORTGAGE.** For valuable consideration, Grantor mortgages and conveys to Lender all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties,

| | MORTGAGE | |
|---|---|---|
| Loan No: 51576 | (Continued) | Page 2 |

and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in CODINGTON County, State of South Dakota:

The Ruins Addition to the City of Watertown, Codington County, South Dakota

The Real Property or its address is commonly known as  315 EAST KEMP AVENUE, WATERTOWN, SD  57201.  The Real Property tax identification number is 9352.

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property.  In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**FUTURE ADVANCES.**  In addition to the Note, this Mortgage secures all future advances made by Lender to Grantor whether or not the advances are made pursuant to a commitment. Specifically, without limitation, this Mortgage secures, in addition to the amounts specified in the Note, all future amounts Lender in its discretion may loan to Grantor, together with all interest thereon.

**THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE  (A)  PAYMENT OF THE INDEBTEDNESS AND  (B)  PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS MORTGAGE.  THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS ALSO GIVEN TO SECURE ANY AND ALL OF GRANTOR'S OBLIGATIONS UNDER THAT CERTAIN CONSTRUCTION LOAN AGREEMENT BETWEEN GRANTOR AND LENDER OF EVEN DATE HEREWITH.  ANY EVENT OF DEFAULT UNDER THE CONSTRUCTION LOAN AGREEMENT, OR ANY OF THE RELATED DOCUMENTS REFERRED TO THEREIN, SHALL ALSO BE AN EVENT OF DEFAULT UNDER THIS MORTGAGE.  THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**PAYMENT AND PERFORMANCE.**  Except as otherwise provided in this Mortgage, Grantor shall pay to Lender all amounts secured by this Mortgage as they become due and shall strictly perform all of Grantor's obligations under this Mortgage.

**CONSTRUCTION MORTGAGE.**  This Mortgage is a "construction mortgage" for the purposes of Sections 9-334 and 2A-309 of the Uniform Commercial Code, as those sections have been adopted by the State of South Dakota.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.**  Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.**  Until the occurrence of an Event of Default, Grantor may  (1)  remain in possession and control of the Property;  (2)  use, operate or manage the Property; and (3)  collect the Rents from the Property.

**Duty to Maintain.**  Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.**  Grantor represents and warrants to Lender that:  (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any

**MORTGAGE**
**(Continued)**

Loan No: 51576                                                                   Page 3

Hazardous Substance by any person on, under, about or from the Property;  (2)  Grantor
has no knowledge of, or reason to believe that there has been, except as previously
disclosed to and acknowledged by Lender in writing,  (a)  any breach or violation of any
Environmental Laws,  (b)  any use, generation, manufacture, storage, treatment, disposal,
release or threatened release of any Hazardous Substance on, under, about or from the
Property by any prior owners or occupants of the Property, or  (c)  any actual or threatened
litigation or claims of any kind by any person relating to such matters; and  (3)  Except as
previously disclosed to and acknowledged by Lender in writing,  (a)  neither Grantor nor any
tenant, contractor, agent or other authorized user of the Property shall use, generate,
manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about
or from the Property; and  (b)  any such activity shall be conducted in compliance with all
applicable federal, state, and local laws, regulations and ordinances, including without
limitation all Environmental Laws.  Grantor authorizes Lender and its agents to enter upon
the Property to make such inspections and tests, at Grantor's expense, as Lender may deem
appropriate to determine compliance of the Property with this section of the Mortgage.  Any
inspections or tests made by Lender shall be for Lender's purposes only and shall not be
construed to create any responsibility or liability on the part of Lender to Grantor or to any
other person.  The representations and warranties contained herein are based on Grantor's
due diligence in investigating the Property for Hazardous Substances.  Grantor hereby  (1)
releases and waives any future claims against Lender for indemnity or contribution in the
event Grantor becomes liable for cleanup or other costs under any such laws; and   (2)
agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses,
liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain
or suffer resulting from a breach of this section of the Mortgage or as a consequence of any
use, generation, manufacture, storage, disposal, release or threatened release occurring
prior to Grantor's ownership or interest in the Property, whether or not the same was or
should have been known to Grantor.  The provisions of this section of the Mortgage,
including the obligation to indemnify and defend, shall survive the payment of the
Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall
not be affected by Lender's acquisition of any interest in the Property, whether by
foreclosure or otherwise.

Without otherwise limiting Grantor's covenants as provided herein, Grantor shall not
without Lender's prior written consent, remove or permit the removal of sand, gravel or
topsoil, or engage in borrow pit operations, or use or permit the use of the Property as a
land fill or dump, or store, burn or bury or permit the storage, burning or burying of any
material or product which may result in contamination of the Property or the groundwater or
which may require the issuance of a permit by the Environmental Protection Agency or any
state or local government agency governing the issuance of hazardous or toxic waste
permits, or request or permit a change in zoning or land use classification, or cut or remove
or suffer the cutting or removal of any trees or timber from the Property.

At its sole cost and expense, Grantor shall comply with and shall cause all occupants of the
Property to comply with all Environmental Laws with respect to the disposal of industrial
refuse or waste, and/or the discharge, processing, manufacture, generation, treatment,
removal, transportation, storage and handling of Hazardous Substances, and pay
immediately when due the cost of removal of any such wastes or substances from, and
keep the Property free of any lien imposed pursuant to such laws, rules, regulations and

|  | **MORTGAGE** |  |
|---|---|---|
| **Loan No: 51576** | **(Continued)** | **Page 4** |

orders.

Grantor shall not install or permit to be installed in or on the Property, friable asbestos or any substance containing asbestos and deemed hazardous by federal, state or local laws, rules, regulations or orders respecting such material. Grantor shall further not install or permit the installation of any machinery, equipment or fixtures containing polychlorinated biphenyls (PCBs) on or in the Property. With respect to any such material or materials currently present in or on the Property, Grantor shall promptly comply with all applicable Environmental Laws regarding the safe removal thereof, at Grantor's expense.

Grantor shall indemnify and defend Lender and hold Lender harmless from and against all loss, cost, damage and expense (including, without limitation, attorneys' fees and costs incurred in the investigation, defense and settlement of claims) that Lender may incur as a result of or in connection with the assertion against Lender of any claim relating to the presence or removal of any Hazardous Substance, or compliance with any Environmental Law. No notice from any governmental body has ever been served upon Grantor or, to Grantor's knowledge after due inquiry, upon any prior owner of the Property, claiming a violation of or under any Environmental Law or concerning the environmental state, condition or quality of the Property, or the use thereof, or requiring or calling attention to the need for any work, repairs, construction, removal, cleanup, alterations, demolition, renovation or installation on, or in connection with, the Property in order to comply with any Environmental Law; and upon receipt of any such notice, Grantor shall take any and all steps, and shall perform any and all actions necessary or appropriate to comply with the same, at Grantor's expense. In the event Grantor fails to do so, Lender may declare this Mortgage to be in default.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably

**MORTGAGE**
**(Continued)**

Loan No: 51576                                                              Page 5

---

satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any restructuring of the legal entity (whether by merger, division or otherwise) or any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by South Dakota law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments

**MORTGAGE**
Loan No: 51576                          **(Continued)**                          Page 6

---

against the Property.

**Notice of Construction.**  Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials.  Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.**  The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.**  Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender.  Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insureds in such liability insurance policies.  Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require.  Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender.  Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of thirty (30) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice.  Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person.   Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain flood insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.  Flood insurance may be purchased under the National Flood Insurance Program, from private insurers providing "private flood insurance" as defined by applicable federal flood insurance statutes and regulations, or from another flood insurance provider that is both acceptable to Lender in its sole discretion and permitted by applicable federal flood insurance statutes and regulations.

**Application of Proceeds.**  Grantor shall promptly notify Lender of any loss or damage to the Property.  Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty.  Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property.  If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender.  Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if

Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Unexpired Insurance at Sale.** Any unexpired insurance shall inure to the benefit of, and pass to, the purchaser of the Property covered by this Mortgage at any trustee's sale or other sale held under the provisions of this Mortgage, or at any foreclosure sale of such Property.

**Grantor's Report on Insurance.** Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Mortgage or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Mortgage or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Mortgage also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon the occurrence of any Event of Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and

| Loan No: 51576 | MORGAGE<br>(Continued) | Page 8 |
|---|---|---|

will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Notice of Proceedings.** Grantor shall immediately notify Lender in writing should all or any part of the Property become subject to any condemnation or expropriation proceedings or other similar proceedings, including without limitation, any condemnation, confiscation, eminent domain, inverse condemnation or temporary requisition or taking of the mortgaged Property, or any part or parts of the Property. Grantor further agrees to promptly take such steps as may be necessary and proper within Lender's sole judgment and at Grantor's expense, to defend any such condemnation or expropriation proceedings and obtain the proceeds derived from such proceedings. Grantor shall not agree to any settlement or compromise or any condemnation or expropriation claim without Lender's prior written consent.

**Lender's Participation.** Lender may, at Lender's sole option, elect to participate in any such condemnation or expropriation proceedings and be represented by counsel of Lender's choice. Grantor agrees to provide Lender with such documentation as Lender may request to permit Lender to so participate and to reimburse Lender for Lender's costs associated with Lender's participation, including Lender's reasonable attorneys' fees.

**Conduct of Proceedings.** If Grantor fails to defend any such condemnation or expropriation proceedings to Lender's satisfaction, Lender may undertake the defense of such a proceeding for and on behalf of Grantor. To this end, Grantor irrevocably appoints Lender as Grantor's agent and attorney-in-fact, such agency being coupled with an interest, to bring, defend, adjudicate, settle, or otherwise compromise such condemnation or expropriation claims; it being understood, however, that, unless one or more Events of Default (other than the condemnation or expropriation of the Property) then exists under this Mortgage, Lender will not agree to any final settlement or compromise of any such condemnation or expropriation claim without Grantor's prior approval, which approval shall not be unreasonably withheld.

**Application of Net Proceeds.** Lender shall have the right to receive all proceeds derived or to be derived from the condemnation, expropriation, confiscation, eminent domain, inverse

**MORTGAGE**
**(Continued)**

Loan No: 51576                                                   Page 9

condemnation, or any permanent or temporary requisition or taking of the Property, or any part or parts of the Property ("condemnation proceeds"). In the event that Grantor should receive any such condemnation proceeds, Grantor agrees to immediately turn over and to pay such proceeds to Lender. All condemnation proceeds, which are received by, or which are payable to either Grantor or Lender, shall be applied, at Lender's sole option and discretion, and in such manner as Lender may determine (after payment of all reasonable costs, expenses and attorneys' fees necessarily paid or incurred by Grantor and/or Lender), for the purpose of: (a) replacing or restoring the condemned, expropriated, confiscated, or taken Property; or (b) reducing the then outstanding balance of the Indebtedness, together with interest thereon, with such payments being applied in the manner provided in this Mortgage. Lender's receipt of such condemnation proceeds and the application of such proceeds as provided in this Mortgage shall not affect the lien of this Mortgage.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies

**MORTGAGE**

Loan No: 51576                    **(Continued)**                    **Page 10**

---

or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Note, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness, including without limitation all future advances, when due, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Mortgage:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing

| Loan No: 51576 | **MORGAGE**<br>**(Continued)** | Page 11 |
|---|---|---|

of or to effect discharge of any lien.

**Other Defaults.**  Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Mortgage or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**False Statements.**  Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf, or made by Guarantor, or any other guarantor, endorser, surety, or accommodation party, under this Mortgage or the Related Documents in connection with the obtaining of the Indebtedness evidenced by the Note or any security document directly or indirectly securing repayment of the Note is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.**  This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.**  The dissolution of Grantor's (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Grantor's existence as a going business or the death of any member, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.**  Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender.  However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Execution; Attachment.**  Any execution or attachment is levied against the Property, and such execution or attachment is not set aside, discharged or stayed within thirty (30) days after the same is levied.

**Change in Zoning or Public Restriction.**  Any change in any zoning ordinance or regulation or any other public restriction is enacted, adopted or implemented, that limits or defines the uses which may be made of the Property such that the present or intended use of the Property, as specified in the Related Documents, would be in violation of such zoning ordinance or regulation or public restriction, as changed.

**Default Under Other Lien Documents.**  A default occurs under any other mortgage, deed of trust or security agreement covering all or any portion of the Property.

**Judgment.**  Unless adequately covered by insurance in the opinion of Lender, the entry of a

# MORGTAGE
## (Continued)

Loan No: 51576                                                            Page 12

final judgment for the payment of money involving more than ten thousand dollars ($10,000.00) against Grantor and the failure by Grantor to discharge the same, or cause it to be discharged, or bonded off to Lender's satisfaction, within thirty (30) days from the date of the order, decree or process under which or pursuant to which such judgment was entered.

**Breach of Other Agreement.** Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor, or any other guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any Guarantor, or any other guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty that Grantor would be required to pay.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Grantor shall have the right, prior to default or abandonment of the Property, to collect and retain the Rents as they become due and payable. The assignment of Rents contained in this Mortgage shall be effective until the payment of all Indebtedness secured by this Mortgage, or in the event of foreclosure, until the period of redemption expires. Regardless of the extinguishment of the Indebtedness by a foreclosure sale, this benefit shall continue for the benefit of the purchaser at the foreclosure sale.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

<div align="center">

**MORTGAGE**
**(Continued)**

</div>

**Loan No: 51576**                                                                                   **Page 13**

**Nonjudicial Sale.** If permitted by applicable law, Lender may foreclose Grantor's interest in all or in any part of the Personal Property or the Real Property by non-judicial sale.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Redemption.** **THE PARTIES AGREE THAT THE PROVISIONS OF THE 180-DAY REDEMPTION MORTGAGE ACT GOVERN THIS MORTGAGE. THIS SHALL CONSTITUTE AND AUTHORIZE A POWER OF SALE UNDER THE PROVISIONS OF SUCH ACT.** Grantor agrees that, in the event of a foreclosure of this Mortgage by action, the holder of the certificate of sale conducted as a result of the foreclosure may apply to the appropriate court for a reduction of the redemption period if Grantor has abandoned the Property. Grantor agrees that if, after notice to the parties as the court may direct, the court finds that the Property has been abandoned, then the redemption period may be reduced to a period of not less than sixty (60) days from the date of recording of the certificate of sale issued as a result of the foreclosure of this Mortgage.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Mortgage, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies. Nothing under this Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the Indebtedness.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the

**MORTGAGE**
**(Continued)**

Loan No: 51576                                                           Page 14

---

terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Any notice required to be given under this Mortgage, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage shall be sent to Lender's address, as shown near the beginning of this Mortgage. Any party may change its address for notices under this Mortgage by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law.** With respect to procedural matters related to the perfection and enforcement of Lender's rights against the Property, this Mortgage will be governed by federal law applicable to Lender and to the extent not preempted by federal law, the laws of

**MORTGAGE**

Loan No: 51576                          **(Continued)**                          Page 15

the State of South Dakota. In all other respects, this Mortgage will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Minnesota without regard to its conflicts of law provisions. However, if there ever is a question about whether any provision of this Mortgage is valid or enforceable, the provision that is questioned will be governed by whichever state or federal law would find the provision to be valid and enforceable. The loan transaction that is evidenced by the Note and this Mortgage has been applied for, considered, approved and made, and all necessary loan documents have been accepted by Lender in the State of Minnesota.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Norman County, State of Minnesota.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Mortgage unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Mortgage shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Mortgage. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Mortgage to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Mortgage. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Mortgage shall not affect the legality, validity or enforceability of any other provision of this Mortgage.

**Non-Liability of Lender.** The relationship between Grantor and Lender created by this Mortgage is strictly a debtor and creditor relationship and not fiduciary in nature, nor is the relationship to be construed as creating any partnership or joint venture between Lender and Grantor. Grantor is exercising Grantor's own judgment with respect to Grantor's business. All information supplied to Lender is for Lender's protection only and no other party is entitled to rely on such information. There is no duty for Lender to review, inspect, supervise or inform Grantor of any matter with respect to Grantor's business. Lender and Grantor intend that Lender may reasonably rely on all information supplied by Grantor to Lender, together with all representations and warranties given by Grantor to Lender, without investigation or confirmation by Lender and that any investigation or failure to investigate will not diminish Lender's right to so rely.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

## MORTGAGE
**Loan No: 51576**                    **(Continued)**                    Page 16

**Sole Discretion of Lender.** Whenever Lender's consent or approval is required under this Mortgage, the decision as to whether or not to consent or approve shall be in the sole and exclusive discretion of Lender and Lender's decision shall be final and conclusive.

**Successors and Assigns.** Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**Waiver of Homestead Exemption.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of South Dakota as to all Indebtedness secured by this Mortgage.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means THE RUINS, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean individually, collectively, and interchangeably any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Grantor.** The word "Grantor" means THE RUINS, LLC.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness, and, in each case, the successors, assigns, heirs, personal representatives, executors and administrators of any guarantor, surety, or accommodation party.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor, or any other guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

| | **MORTGAGE** | |
|---|---|---|
| Loan No: 51576 | **(Continued)** | Page 17 |

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage. Specifically, without limitation, Indebtedness includes the future advances set forth in the Future Advances provision of this Mortgage, together with all interest thereon.

**Lender.** The word "Lender" means Red River State Bank, its successors and assigns.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Note.** The word "Note" means the promissory note dated August 1, 2022, **in the original principal amount of $2,750,000.00** from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues,

| Loan No: 51576 | MORTGAGE<br>(Continued) | Page 18 |
|---|---|---|

royalties, profits, and other benefits derived from the Property.

**GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND GRANTOR AGREES TO ITS TERMS.**

**GRANTOR:**

**THE RUINS, LLC**

By: _____

    **JESSE ROBERT CRAIG, Member of THE RUINS, LLC**

---

### LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

STATE OF ___Minnesota___          )
                                  ) SS
COUNTY OF ___Norman___            )

On this ___1___ day of ___August___, 20 _22_, before me, the undersigned Notary Public, personally appeared **JESSE ROBERT CRAIG, Member of THE RUINS, LLC,** and known to me to be a member or designated agent of the limited liability company that executed the Mortgage and acknowledged the Mortgage to be the free and voluntary act and deed of the limited liability company, by authority of statute, its articles of organization or its operating agreement, for the uses and purposes therein mentioned, and on oath stated that he or she is authorized to execute this Mortgage and in fact executed the Mortgage on behalf of the limited liability company.

By ___Lori Ann Moen___

Notary Public in and for the State of ___Minnesota___    My commission expires ___Jan. 31, 2024___



LORI ANN MOEN
Notary Public-Minnesota
My Commission Expires Jan 31, 2024

LaserPro, Ver. 22.1.0.044 Copr. Finastra USA Corporation 1997, 2022.  All Rights Reserved.
  - SD/MN  C:\HARLAND\CFI\LPL\G03.FC  TR-5926  PR-5

EXHIBIT

**I**

THIS DOCUMENT PREPARED BY:
AUSTIN, STRAIT, BENSON,
THOLE & KOEHN LLP
25 1ST AVENUE SOUTHWEST
WATERTOWN, SD 57201
PHONE: 605-886-5823

**INSTRUMENT NO. 202201074  Pages: 5**
**BOOK: 990  SUB AGREEMENT**
**PAGE: 8556**

**3/10/2022 9:58:44 AM**

*Ann Rasmussen*

**ANN RASMUSSEN, REGISTER OF DEEDS**
**CODINGTON COUNTY, SOUTH DAKOTA**
**Recording Fee: 30.00**
**Return To: FIRST DAKOTA TITLE - WTN**

SD224130

## SUBORDINATION AGREEMENT

SUBORDINATION AGREEMENT dated this 7ᵗʰ day of March, 2022, between the Watertown Development Company, PO Box 332, Watertown, South Dakota 57201 (herein "WDC"), and Red River State Bank of 114 North Mill Street, Fertile, Minnesota 56540 (herein "Red River").

## RECITALS

1.      The Ruins, LLC, a South Dakota Limited Liability Company (herein The Ruins) has applied for a loan through Red River to finance a construction project in Watertown, South Dakota. The real estate is currently owned by Craig Holdings, LLC, a North Dakota Limited Liability Company, (herein Craig Holdings). The address for this project, a/k/a The Ruins is 315 East Kemp, Watertown, South Dakota. The address for The Ruins, LLC and Craig Holdings is both 1405 1ˢᵗ Avenue North, Fargo, North Dakota 58012. Both entities are single member limited liability companies with Jesse Craig as the single member.

2.      The legal description of the real estate (herein "the Real Estate"), which is the subject of this agreement is described as:

> The Ruins Addition to the City of Watertown, Codington County, South Dakota.

This property was formerly known as:

Page 1 of 5

- The West 85 Feet of Lots 19, 20, 21, and 22 in Block 1 of Watertown, Codington County, South Dakota according to the recorded plat thereof;

- The East 129.69 Feet of Lots 15 and 16 in Block 1 of the Original Plat of Watertown, Codington County, South Dakota, and Lot 1 of Monk's and Sheldon's Subdivision of Lots 17 and 18 in Block 1 of the Original Plat of Watertown, Codington County, South Dakota; and

- The 20' Wide Alley Lying Adjacent to Lots 15, 16, 19, 20, 21 & 22 in Block 1 of the Original Plat of the City of Watertown and Adjacent to Lot 1 of Monk's & Sheldon's Subdivision of Lots 17 & 18 in Block 1 of the Original Plat of the City of Watertown, Codington County, South Dakota.

3.    WDC has provided the initial financing for this project and will subordinate its mortgages to a mortgage in favor of Red River, which is further described below.  On March 16, 2021, The Ruins and Craig Holdings executed a Promissory Note in favor of WDC in the amount of $2,275,000.00.  The due date of the note is March 26, 2022.  Subsequently the maturity date of the Note was extended to November 1, 2022.  This note is secured by two mortgages:

a.    Dated March 16, 2021, and recorded on March 17, 2021, in Book 990 of Mortgages on page 6316.

b.    Dated November 1, 2021, and recorded on November 26, 2021, in Book 990 of Mortgages on page 7854.

4.    Red River will become the primary lender of this project.  Red River will borrow The Ruins and Craig Holdings $9,875,000.00, plus interest, and secure this loan with a mortgage against the real estate described in paragraph 2 above.  Red River represents that all money loaned to Craig Holdings is to be used for this project, known as "The Ruins".

**AGREEMENTS**

THE PARTIES MUTUALLY AGREE AS FOLLOWS:

1.    Red River and WDC acknowledge that the loans described above in paragraphs 3 and 4 are secured by the same Real Estate, which is described in paragraph 2. Red River and WDC agree that notwithstanding the time or order of attachment or perfection of their

Page 2 of 5

respective security interests, or the time of filing or recording the Mortgages with respect to the Red River loan, WDC's interests, liens, and rights with respect to the Real Estate will be subordinated to the conflicting interests, liens, and rights of Red River to the extent of the Mortgage filed March, 10ᵗʰ, 2022, not to exceed $9,875,000.00 plus interest.

2.      This Subordination Agreement does not apply and does not affect the transfer and assignment by Craig Holdings to WDC of the payments pursuant to the terms of Tax Increment Financing District No. 16 and between the City of Watertown, a South Dakota municipality, and Craig Holdings/The Ruins. WDC will continue to have priority with respect to all Tax Increment Financing payments. Any assignments of this Tax Increment Financing by WDC to third parties are not affected.

3.      This Subordination Agreement applies only to the loans described above. This Subordination Agreement is not intended to prevent either party from making other loans to or for the account of Craig Holdings. This Subordination Agreement does not constitute a commitment or obligation on either Red River or WDC to make any future loans or other extensions of credit, or financial accommodation to the Borrower.

4.      Each party agrees to do such acts or things, and to execute and deliver such additional agreements, powers and instruments, as the other party may reasonably request to carry into effect the terms, conditions and purposes of this Subordination Agreement.

5.      The failure of either party to enforce strict performance of any covenant, promise, or condition herein contained shall not operate as a waiver of the right of such party thereafter to require that the terms hereof be strictly performed according to the tenor thereof.

6.      No waiver shall be deemed to have been made by either party hereto of any of its rights hereunder, unless the same shall be in writing, signed by an authorized representative of the party, and each such waiver, if any, shall be a waiver only of the specific matter to which the waiver relates, and shall not impair the rights of such party or the obligations of the other party in any other respect or at any other time.

7.      Except as otherwise provided herein, this Subordination Agreement shall remain in full force and effect for thirty (30) days after such time as the Borrower makes full and final payment on either the Red River loan or the WDC loan.

Page 3 of 5

8.      This Subordination Agreement and the terms and conditions hereof, are solely for the benefit of Red River and WDC and shall not benefit, in any way, any person not specifically a party to this Subordination Agreement. Nothing herein is intended to affect, limit, or in any way diminish the respective security interests and liens that Red River and WDC claim in the collateral, insofar as the rights of Borrower and third parties are concerned.

9.      This agreement shall be the whole and only agreement with regard to the subordination of Red River's interest in the collateral.

10.     This Subordination Agreement may not be amended, except in writing, which writing shall be expressly identified as a part hereof or thereof, and which writing will be signed by an authorized representative of each of the parties.

11.     In the event that any provision of this Subordination Agreement shall be held unenforceable or invalid by any court of competent jurisdiction, such holding shall not invalidate or render unenforceable any other provision hereof.

IN WITNESS WHEREOF, Red River and WDC have caused this Subordination Agreement to be duly executed the date first above written.

WATERTOWN DEVELOPMENT
COMPANY

BY: _Michelle Kakacek_
Michelle Kakacek, Interim Director

RED RIVER STATE BANK

BY: _Charles Aarestad_

(SEAL)                                    Charles Aarestad, Vice President

Page 4 of 5

STATE OF SOUTH DAKOTA
                              ss
COUNTY OF CODINGTON

On this the 7th day of March, 2022, before me, the undersigned officer, personally appeared Michelle Kakacek, who acknowledged herself to be a duly authorized Interim Director of Watertown Development Company, and that she, as such Interim Director, being authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of the Company by herself as the Interim Director.

IN WITNESS WHEREOF I hereunto set my hand and official seal.

**TRACI E. STEIN**
NOTARY PUBLIC
SOUTH DAKOTA
(SEAL)

Notary Public, South Dakota
My Commission Expires: 11/7/24

STATE OF SOUTH DAKOTA
                              ss
COUNTY OF CODINGTON

On this the 2nd day of March, 2022, before me, the undersigned officer, personally appeared Charles Aarestad, who acknowledged himself to be a duly Authorized Representative of Red River State Bank, and that he, as such Authorized Representative, being authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of the by himself as Authorized Representative.

IN WITNESS WHEREOF I hereunto set my hand and official seal.

**LORI ANN MOEN**
Notary Public-Minnesota
My Commission Expires Jan 31, 2024
(SEAL)

Notary Public, Minnesota
My Commission Expires: Jan. 31. 2024

Page 5 of 5

**EXHIBIT**

**I-2**

INSTRUMENT NO. 202203689  Pages: 5
BOOK: 990  SUB AGREEMENT
PAGE: 9353

8/26/2022 12:29:00 PM

*Ann Rasmussen*

**ANN RASMUSSEN, REGISTER OF DEEDS**
**CODINGTON COUNTY, SOUTH DAKOTA**
Recording Fee: 30.00
Return To: RED RIVER STATE BANK

THIS DOCUMENT PREPARED BY:
AUSTIN, STRAIT, BENSON,
THOLE & KOEHN LLP
25 1ST AVENUE SOUTHWEST
WATERTOWN, SD 57201
PHONE: 605-886-5823

## SUBORDINATION AGREEMENT

SUBORDINATION AGREEMENT dated this __22__ day of August, 2022, between the Watertown Development Company, PO Box 332, Watertown, South Dakota 57201 (herein "WDC"), and Red River State Bank of 114 North Mill Street, Fertile, Minnesota 56540 (herein "Red River").

## RECITALS

1.    The Ruins, LLC, a South Dakota Limited Liability Company (herein The Ruins) has applied for a loan through Red River to finance a construction project in Watertown, South Dakota. The real estate is currently owned by The Ruins, LLC, a South Dakota Limited Liability Company, (herein The Ruins). The address for this project, a/k/a The Ruins is 315 East Kemp, Watertown, South Dakota. The address for The Ruins, LLC is 1405 1st Avenue North, Fargo, North Dakota 58012. The Ruins, LLC is a single member limited liability companies with Jesse Craig as the single member.

2.    The legal description of the real estate (herein "the Real Estate"), which is the subject of this agreement is described as:

　　　　　The Ruins Addition to the City of Watertown, Codington County,
　　　　　South Dakota.

3.    WDC has provided the initial financing for this project and will subordinate its mortgages to a mortgage in favor of Red River, which is further described below. On March 16, 2021, The Ruins and Craig Holdings executed a Promissory Note in favor of WDC

in the amount of $2,275,000.00. The due date of the note is March 26, 2022. Subsequently the maturity date of the Note was extended to November 1, 2022. This note is secured by two mortgages:

    a.    Dated March 16, 2021, and recorded on March 17, 2021, in Book 990 of Mortgages on page 6316.

    b.    Dated November 1, 2021, and recorded on November 26, 2021, in Book 990 of Mortgages on page 7854.

4.    Red River will become the primary lender of this project. Red River will additionally borrow The Ruins $615,000.00, plus interest, and secure this loan with a mortgage against the real estate described in paragraph 2 above. Red River represents that all money loaned to The Ruins, LLC is to be used for this project, known as "The Ruins".

## AGREEMENTS

THE PARTIES MUTUALLY AGREE AS FOLLOWS:

1.    Red River and WDC acknowledge that the loans described above in paragraphs 3 and 4 are secured by the same Real Estate, which is described in paragraph 2. Red River and WDC agree that notwithstanding the time or order of attachment or perfection of their respective security interests, or the time of filing or recording the Mortgages with respect to the Red River loan, WDC's interests, liens, and rights with respect to the Real Estate will be subordinated to the conflicting interests, liens, and rights of Red River to the extent of the Mortgage filed August 4, 2022, not to exceed $615,000.00 plus interest.

2.    This Subordination Agreement does not apply and does not affect the transfer and assignment by The Ruins to WDC of the payments pursuant to the terms of Tax Increment Financing District No. 16 and between the City of Watertown, a South Dakota municipality, and The Ruins. WDC will continue to have priority with respect to all Tax Increment Financing payments. Any assignments of this Tax Increment Financing by WDC to third parties are not affected.

3.    This Subordination Agreement applies only to the loans described above. This Subordination Agreement is not intended to prevent either party from making other loans to or

for the account of The Ruins, LLC. This Subordination Agreement does not constitute a commitment or obligation on either Red River or WDC to make any future loans or other extensions of credit, or financial accommodation to the Borrower.

4.    Each party agrees to do such acts or things, and to execute and deliver such additional agreements, powers and instruments, as the other party may reasonably request to carry into effect the terms, conditions and purposes of this Subordination Agreement.

5.    The failure of either party to enforce strict performance of any covenant, promise, or condition herein contained shall not operate as a waiver of the right of such party thereafter to require that the terms hereof be strictly performed according to the tenor thereof.

6.    No waiver shall be deemed to have been made by either party hereto of any of its rights hereunder, unless the same shall be in writing, signed by an authorized representative of the party, and each such waiver, if any, shall be a waiver only of the specific matter to which the waiver relates, and shall not impair the rights of such party or the obligations of the other party in any other respect or at any other time.

7.    Except as otherwise provided herein, this Subordination Agreement shall remain in full force and effect for thirty (30) days after such time as the Borrower makes full and final payment on either the Red River loan or the WDC loan.

8.    This Subordination Agreement and the terms and conditions hereof, are solely for the benefit of Red River and WDC and shall not benefit, in any way, any person not specifically a party to this Subordination Agreement. Nothing herein is intended to affect, limit, or in any way diminish the respective security interests and liens that Red River and WDC claim in the collateral, insofar as the rights of Borrower and third parties are concerned.

9.    This agreement shall be the whole and only agreement with regard to the subordination of Red River's interest in the collateral.

10.    This Subordination Agreement may not be amended, except in writing, which writing shall be expressly identified as a part hereof or thereof, and which writing will be signed by an authorized representative of each of the parties.

11.    In the event that any provision of this Subordination Agreement shall be held unenforceable or invalid by any court of competent jurisdiction, such holding shall not

Page 3 of 5

invalidate or render unenforceable any other provision hereof.

IN WITNESS WHEREOF, Red River and WDC have caused this Subordination Agreement to be duly executed the date first above written.

WATERTOWN DEVELOPMENT
COMPANY

BY: _Michelle Kakacek_

Michelle Kakacek, Executive Director

RED RIVER STATE BANK

BY: _Charles Aarestad_

Charles Aarestad, E. Vice President

STATE OF SOUTH DAKOTA
                                    SS
COUNTY OF CODINGTON

On this the 26th day of August, 2022, before me, the undersigned officer, personally appeared Michelle Kakacek, who acknowledged herself to be a duly authorized Executive Director of Watertown Development Company, and that she, as such Executive Director, being authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of the Company by herself as the Executive Director.

IN WITNESS WHEREOF I hereunto set my hand and official seal.

**TRACI E. STEIN**
NOTARY PUBLIC
SOUTH DAKOTA

(SEAL)

_____

Notary Public, South Dakota
My Commission Expires: 11-7-24

Page 4 of 5

STATE OF MINNESOTA

COUNTY OF   NORMAN    ss

On this the ___22nd___ day of August, 2022, before me, the undersigned officer, personally appeared Charles Aarestad, who acknowledged himself to be a duly Authorized Representative of Red River State Bank, and that he, as such Authorized Representative, being authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of the by himself as Authorized Representative.

IN WITNESS WHEREOF I hereunto set my hand and official seal.

(SEAL)

DANIELLE AARESTAD HARLESS
NOTARY PUBLIC - MINNESOTA
My Comm. Exp. Jan. 31, 2026

Notary Public, Minnesota
My Commission Expires: Jan 31, 2026

Case 25-30004    Claim 1-2    Filed 09/12/25    Desc Main Document    Page 80 of 84

EXHIBIT J

## The First Ruins Note: Payment History and Accrual of Interest + Late Fees

Dated 3/9/22 — Originating Interest Rate: 4.250% per annum

| Date | Charge (+) | Total Pmt. (-) | Interest Pmt. | Principal Pmt. | Description | Per Diem | # of Days | Accrued Interest | (Principal Pmt.) | Interest | Principal | Late Fees | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/9/2022 | $ 2,952,702.33 | | | | Loan Account Opened | $ - | 0 | $ - | | $ - | $ 2,952,702.33 | $ - | |
| 3/11/2022 | $ 181,947.80 | | | | Opening Advance - Draws #4-6 | $ 343.81 | 0 | $ - | | $ - | 2,952,702.33 | $ - | |
| 3/23/2022 | $ 2,274,820.42 | | | | Advance - Draw #7 | $ 343.81 | 12 | $ 4,125.69 | | $ 4,125.69 | 3,134,650.13 | $ - | |
| 4/8/2022 | | | | | Advance - Draw #8 | $ 364.99 | 16 | 5,839.90 | | $ 9,965.59 | 5,409,470.55 | $ - | |
| 4/15/2022 | | | | | April 2022 Payment Due | $ 629.87 | 7 | 4,409.09 | | 14,374.68 | 5,409,470.55 | $ - | |
| 4/21/2022 | | | | | Interest Calculation | $ 629.87 | 6 | 3,779.22 | | 18,153.90 | 5,409,470.55 | $ - | |
| 4/21/2022 | | $ (12,520.54) | $ (12,520.54) | - | April 2022 Payment Received | Payment: | | (12,520.54) | | 5,633.36 | 5,409,470.55 | $ - | |
| 5/10/2022 | $ 1,479,434.10 | | | | Advance - Draw #9 | $ 628.87 | 19 | 11,967.53 | | 17,600.89 | 6,887,904.65 | $ - | |
| 5/12/2022 | | | | | Interest Calculation | $ 802.02 | 2 | 1,604.03 | | 19,204.92 | 6,887,904.65 | $ - | |
| 5/12/2022 | | $ (25,040.48) | $ (20,750.24) | $ (4,290.24) | May 2022 Payment Received | Payment: | | (20,750.24) | $ (4,290.24) | (1,545.32) | 6,887,904.65 | $ - | |
| 5/15/2022 | | | | | May 2022 Payment Due (paid early) | Payment: | | | | 6,885,514.41 | 6,887,904.65 | $ - | |
| 6/10/2022 | $ 882,095.36 | | | | Advance - Draw #10 | $ 601.52 | 29 | 23,243.99 | | 21,898.66 | 7,735,709.77 | $ - | |
| 6/15/2022 | | | | | June 2022 Payment Due | $ 900.73 | 5 | 4,503.67 | | 26,302.33 | 7,735,709.77 | $ - | |
| 6/27/2022 | $ 1,265.31 | | | | Late Fee | | | | | | 7,735,709.77 | 1,265.31 | |
| 7/14/2022 | | $ (53,224.33) | $ (53,224.33) | - | June and July 2022 Payments Received | Payment: | | (53,224.33) | | (27,022.00) | 7,735,709.77 | 1,265.31 | |
| 7/15/2022 | | | | | July 2022 Payment Due | Payment: | 30 | 22,022.00 | | 0.00 | 7,735,709.77 | 1,265.31 | |
| 7/25/2022 | $ 7.28 | | | | Late Fee | | | | | | 7,735,709.77 | 1,292.59 | |
| 8/15/2022 | | | | | August 2022 Payment Due | $ 900.73 | 31 | 27,922.73 | | 27,922.73 | 7,735,709.77 | 1,292.59 | |
| 8/18/2022 | | $ (27,922.73) | $ (27,922.73) | - | August 2022 Payment Received | Payment: | | (27,922.73) | | 0.00 | 7,735,709.77 | 1,292.59 | |
| 9/15/2022 | | | | | September 2022 Payment Due | $ 900.73 | 31 | 27,922.73 | | 27,922.74 | 7,735,709.77 | 1,292.59 | |
| 9/23/2022 | | $ (27,922.74) | $ (27,922.74) | - | September 2022 Payment Received | Payment: | | (27,922.74) | | (0.00) | 7,735,709.77 | 1,292.59 | |
| 10/15/2022 | | | | | October 2022 Payment Due | $ 900.73 | 30 | 27,022.00 | | 27,022.00 | 7,735,709.77 | 1,292.59 | |
| 10/20/2022 | | $ (27,021.99) | $ (27,021.99) | - | October 2022 Payment Received | Payment: | | (27,021.99) | | 0.01 | 7,735,709.77 | 1,292.59 | |
| 11/15/2022 | | | | | November 2022 Payment Due | $ 900.73 | 31 | 27,922.73 | | 27,922.74 | 7,735,709.77 | 1,292.59 | |
| 11/25/2022 | $ 1,396.14 | | | | Late Fee | | | | | | 7,735,709.77 | 2,688.73 | |
| 12/9/2022 | | $ (54,944.74) | $ (54,944.74) | - | Nov and Dec 2022 Payments Received | Payment: | | (54,944.74) | | (27,022.00) | 7,735,709.77 | 2,688.73 | |
| 12/15/2022 | | | | | December 2022 Payment Due (paid early) | Payment: | 30 | 27,022.00 | | (0.00) | 7,735,709.77 | 2,688.73 | |
| 1/15/2023 | | | | | January 2023 Payment Due | $ 900.73 | 31 | 27,922.73 | | 27,922.73 | 7,735,709.77 | 2,688.73 | |
| 1/25/2023 | $ 1,396.14 | | | | Late Fee | | | | | | 7,735,709.77 | 4,084.87 | |
| 2/14/2023 | | $ (55,845.46) | $ (55,845.46) | - | Jan and Feb 2023 Payments Received | Payment: | | (55,845.46) | | (27,922.73) | 7,735,709.77 | 4,084.87 | |
| 2/15/2023 | | | | | February 2023 Payment Due (paid early) | Payment: | 31 | 27,922.73 | | 0.01 | 7,735,709.77 | 4,084.87 | |
| 3/15/2023 | | | | | March 2023 Payment Due | $ 900.73 | 28 | 25,220.53 | | 25,220.54 | 7,735,709.77 | 4,084.87 | |
| 3/27/2023 | $ 1,261.03 | | | | Late Fee | | | | | | 7,735,709.77 | 5,345.90 | |
| 4/15/2023 | | | | | April 2023 Payment Due | $ 900.73 | 31 | 27,922.73 | | 53,143.27 | 7,735,709.77 | 5,345.90 | |
| 4/17/2023 | | $ (54,944.73) | $ (54,944.73) | - | Mar and Apr 2023 Payments Received | Payment: | | (54,944.73) | | (1,801.46) | 7,735,709.77 | 5,345.90 | |
| 5/15/2023 | | | | | May 2023 Payment Due | $ 900.73 | 30 | 27,022.00 | | 25,220.54 | 7,735,709.77 | 5,345.90 | |
| 5/16/2023 | | $ (25,220.54) | $ (25,220.54) | - | May 2023 Payment Received | Payment: | | (25,220.54) | | 0.00 | 7,735,709.77 | 5,345.90 | |
| 6/15/2023 | | | | | June 2023 Payment Due | $ 900.73 | 31 | 27,922.73 | | 27,922.73 | 7,735,709.77 | 5,345.90 | |
| 6/26/2023 | $ 1,396.14 | | | | Late Fee | | | | | | 7,735,709.77 | 6,742.04 | |
| 6/29/2023 | | $ (27,922.73) | $ (27,922.73) | - | June 2023 Payment Received | Payment: | | (27,922.73) | | 0.01 | 7,735,709.77 | 6,742.04 | |
| 7/15/2023 | | | | | July 2023 Payment Due | $ 900.73 | 30 | 27,022.00 | | 27,022.01 | 7,735,709.77 | 6,742.04 | |
| 7/19/2023 | | $ (27,022.00) | $ (27,022.00) | - | July 2023 Payment Received | Payment: | | (27,022.00) | | 0.01 | 7,735,709.77 | 6,742.04 | |
| 8/15/2023 | | | | | August 2023 Payment Due | $ 900.73 | 31 | 27,922.73 | | 27,922.74 | 7,735,709.77 | 6,742.04 | |
| 8/25/2023 | $ 1,396.14 | | | | Late Fee | | | | | | 7,735,709.77 | 8,138.18 | |
| 8/31/2023 | | $ (27,922.73) | $ (27,922.73) | - | August 2023 Payment Received | Payment: | | (27,922.73) | | 0.01 | 7,735,709.77 | 8,138.18 | |
| 9/15/2023 | | | | | September 2023 Payment Due | $ 900.73 | 31 | 27,922.73 | | 27,922.74 | 7,735,709.77 | 8,138.18 | |
| 9/25/2023 | $ 1,396.14 | | | | Late Fee | | | | | | 7,735,709.77 | 9,534.32 | |
| 10/17/2023 | | $ (27,922.74) | $ (27,922.74) | - | September 2023 Payment Received | Payment: | | (27,922.74) | | 0.00 | 7,735,709.77 | 9,534.32 | |

Case 25-30004    Claim 1-2    Filed 09/12/25    Desc Main Document        Page 81 of 84

| Date | Amount | | | | Description | Payment | | | | | | Balance | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/15/2023 | $1,351.10 | $(27,021.99) | $(27,021.99) | - | October 2023 Payment Due | $900.73 | 30 | $27,022.00 | $27,022.00 | | $27,022.00 | 7,735,709.77 | $9,534.32 |
| 10/25/2023 | | | | | Late Fee | | | | | | | 7,735,709.77 | $10,885.42 |
| 11/13/2023 | | | | | October 2023 Payment Received | Payment: | | $(27,021.99) | | | 0.01 | 7,735,709.77 | $10,885.42 |
| 11/27/2023 | 1,396.14 | | | | Late Fee | | | | | | | 7,735,709.77 | $12,281.56 |
| 12/26/2023 | 1,441.17 | | | | Late Fee | | | | | | | 7,735,709.77 | $13,722.73 |
| 1/25/2024 | 1,396.11 | | | | Late Fee | | | | | | | 7,735,709.77 | $15,118.84 |
| 2/6/2024 | | | | | Interest Calculation | $900.73 | 116 | $104,485.07 | | $104,485.08 | | 7,735,709.77 | $15,118.84 |
| 2/6/2024 | | $(670.08) | $(670.08) | (670.08) | Right of offset - applied to principal | $900.66 | | $ | (670.80) | $104,485.08 | | 7,735,039.69 | $15,118.84 |
| 2/26/2024 | 1,396.11 | | | | Late Fee | | | | | | | 7,735,039.69 | $16,514.95 |
| 3/25/2024 | 1,306.96 | | | | Late Fee | | | | | | | 7,735,039.69 | $17,820.90 |
| 4/25/2024 | 1,396.02 | | | | Late Fee | | | | | | | 7,735,039.69 | $19,216.92 |
| 5/28/2024 | 1,350.98 | | | | Late Fee | | | | | | | 7,735,039.69 | $20,567.90 |
| 6/25/2024 | 1,396.02 | | | | Late Fee | | | | | | | 7,735,039.69 | $21,983.92 |
| 7/25/2024 | 1,350.98 | | | | Late Fee | | | | | | | 7,735,039.69 | $23,314.90 |
| 8/26/2024 | 1,396.02 | | | | Late Fee | | | | | | | 7,735,039.69 | $24,710.92 |
| 9/25/2024 | 1,396.02 | | | | Late Fee | | | | | | | 7,735,039.69 | $26,106.94 |
| 10/25/2024 | 1,350.98 | | | | Late Fee | | | | | | | 7,735,039.69 | $27,457.92 |
| 11/25/2024 | 1,396.02 | | | | Late Fee | | | | | | | 7,735,039.69 | $28,853.94 |
| 12/26/2024 | 1,350.98 | | | | Late Fee | | | | | | | 7,735,039.69 | $30,204.92 |
| 1/6/2025 | | $(27,021.99) | $(27,021.99) | | BANKRUPTCY PETITION DATE | $900.66 | 333 | $299,918.23 | | $404,403.31 | | 7,735,039.69 | $30,204.92 | $8,169,647.92 |

## The Second Ruins Note: Payment History and Accrual of Interest + Late Fees

Dated 8/1/22 — Originating Interest Rate: 4.60% per annum

| Date | TRANSACTION TYPE AND AMOUNT Charge (+) | Payment (-) | Description | INTEREST CALCULATION Per Diem | # of Days | Accrued Interest | Principal Payment | Interest | RUNNING BALANCE Principal | Late Fees | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 8/1/2022 | $ 1,268,944.90 | | Opening Advance - Ruins Draw #11 | $ 159.92 | 0 | $ - | | $ - | $ 1,268,944.90 | $ - | |
| 8/16/2022 | $ 1,322,454.31 | | Advance - Ruins Draw #12 | $ 159.92 | 15 | $ 2,398.83 | | $ 2,398.83 | $ 2,591,399.21 | $ - | |
| 8/31/2022 | $ 158,600.79 | | Advance - Ruins Draw #13 | $ 326.59 | 15 | $ 4,898.81 | | $ 7,297.64 | $ 2,750,000.00 | $ - | |
| 9/15/2022 | | | September 2022 Payment Due | $ 346.58 | 15 | $ 5,198.63 | | $ 12,496.27 | $ 2,750,000.00 | $ - | |
| 9/23/2022 | | | Interest Calculation | $ 346.58 | 8 | $ 2,772.60 | | $ 15,268.87 | $ 2,750,000.00 | $ - | |
| 9/23/2022 | | $ (12,329.02) | September 2022 Payment Received | Interest Payment: | | $ (12,329.02) | $ - | $ 2,939.85 | $ 2,750,000.00 | $ - | |
| 10/15/2022 | | | October 2022 Payment Due | $ 346.58 | 30 | $ 10,397.26 | | $ 13,337.11 | $ 2,750,000.00 | $ - | |
| 10/25/2022 | $ 540.67 | | Late Fee Added | | | | | | $ 2,750,000.00 | $ 540.67 | |
| 11/15/2022 | | | November 2022 Payment Due | $ 346.58 | 31 | $ 10,743.84 | | $ 24,080.95 | $ 2,750,000.00 | $ 540.67 | |
| 11/25/2022 | $ 543.03 | | Late Fee Added | | | | | | $ 2,750,000.00 | $ 1,083.70 | |
| 12/9/2022 | | | Interest Calculation | $ 346.58 | 24 | $ 8,317.81 | | $ 32,398.75 | $ 2,750,000.00 | $ 1,083.70 | |
| 12/9/2022 | | $ (32,184.24) | Oct, Nov, and Dec 2022 Payments Received | Interest Payment: | | $ (32,184.24) | $ - | $ 214.51 | $ 2,750,000.00 | $ 1,083.70 | |
| 12/15/2022 | | | December 2022 Payment Due (paid early) | $ 346.58 | 6 | $ 2,079.45 | | $ 2,293.97 | $ 2,750,000.00 | $ 1,083.70 | |
| 1/15/2023 | | | January 2023 Payment Due | $ 346.58 | 31 | $ 10,743.84 | | $ 13,037.80 | $ 2,750,000.00 | $ 1,083.70 | |
| 1/25/2023 | $ 543.03 | | Late Fee Added | | | | | | $ 2,750,000.00 | $ 1,626.73 | |
| 2/14/2023 | | | Interest Calculation | $ 346.58 | 30 | $ 10,397.26 | | $ 23,435.06 | $ 2,750,000.00 | $ 1,626.73 | |
| 2/14/2023 | | $ (21,721.24) | Jan 2023 and Feb 2023 Payments Received | Interest Payment: | | $ (21,721.24) | $ - | $ 1,713.82 | $ 2,750,000.00 | $ 1,626.73 | |
| 2/15/2023 | | | February 2023 Payment Due (paid early) | $ 346.58 | 1 | $ 346.58 | | $ 2,060.40 | $ 2,750,000.00 | $ 1,626.73 | |
| 3/15/2023 | | | March 2023 Payment Due | $ 346.58 | 28 | $ 9,704.11 | | $ 11,764.51 | $ 2,750,000.00 | $ 1,626.73 | |
| 3/27/2023 | $ 490.48 | | Late Fee Added | | | | | | $ 2,750,000.00 | $ 2,117.21 | |
| 4/15/2023 | | | April 2023 Payment Due | $ 346.58 | 31 | $ 10,743.84 | | $ 22,508.34 | $ 2,750,000.00 | $ 2,117.21 | |
| 4/17/2023 | | | Interest Calculation | $ 346.58 | 2 | $ 693.15 | | $ 23,201.49 | $ 2,750,000.00 | $ 2,117.21 | |
| 4/17/2023 | | $ (21,370.89) | Mar 2023 and Apr 2023 Payments Received | Interest Payment: | | $ (21,370.89) | $ - | $ 1,830.60 | $ 2,750,000.00 | $ 2,117.21 | |
| 5/15/2023 | | | May 2023 Payment Due | $ 346.58 | 30 | $ 10,397.26 | | $ 12,227.86 | $ 2,750,000.00 | $ 2,117.21 | |
| 5/16/2023 | | | Interest Calculation | $ 346.58 | 1 | $ 346.58 | | $ 12,574.44 | $ 2,750,000.00 | $ 2,117.21 | |
| 5/16/2023 | | $ (9,809.59) | May 2023 Payment Received | Interest Payment: | | $ (9,809.59) | $ - | $ 2,418.27 | $ 2,750,000.00 | $ 2,117.21 | |
| 6/8/2023 | | | June 2023 Payment Due | $ 346.58 | 23 | $ 7,971.23 | | $ 10,389.51 | $ 2,750,000.00 | $ 2,117.21 | |
| 6/8/2023 | | $ (10,860.61) | June 2023 Payment Received | Interest Payment: | | $ (10,389.51) | $ (471.10) | $ - | $ 2,749,528.90 | $ 2,117.21 | |
| 6/15/2023 | | | June 2023 Payment Due (paid early) | $ 346.52 | 7 | $ 2,425.61 | | $ 4,843.89 | $ 2,749,528.90 | $ 2,117.21 | |
| 7/15/2023 | | | July 2023 Payment Due | $ 346.52 | 30 | $ 10,395.48 | | $ 15,239.36 | $ 2,749,528.90 | $ 2,117.21 | |
| 7/19/2023 | | | Interest Calculation | $ 346.52 | 4 | $ 1,386.06 | | $ 16,625.43 | $ 2,749,528.90 | $ 2,117.21 | |
| 7/19/2023 | | $ (10,510.28) | July 2023 Payment Received | Interest Payment: | | $ (10,510.28) | $ - | $ 4,729.08 | $ 2,749,528.90 | $ 2,117.21 | |
| 8/15/2023 | | | August 2023 Payment Due | $ 346.52 | 27 | $ 9,355.93 | | $ 14,085.02 | $ 2,749,528.90 | $ 2,117.21 | |
| 8/25/2023 | $ 543.03 | | Late Fee Added | | | | | | $ 2,749,528.90 | $ 2,660.24 | |
| 8/30/2023 | | | Interest Calculation | $ 346.52 | 15 | $ 5,197.74 | | $ 19,282.75 | $ 2,749,528.90 | $ 2,660.24 | |
| 8/30/2023 | | $ (10,860.62) | August 2023 Payment Received | Interest Payment: | | $ (10,860.62) | $ - | $ 3,224.40 | $ 2,749,528.90 | $ 2,660.24 | |
| 9/15/2023 | | | September 2023 Payment Due | $ 346.52 | 16 | $ 5,544.26 | | $ 8,768.65 | $ 2,749,528.90 | $ 2,660.24 | |
| 9/20/2023 | | | Interest Calculation | $ 346.52 | 5 | $ 1,732.58 | | $ 10,501.23 | $ 2,749,528.90 | $ 2,660.24 | |
| 9/20/2023 | | $ (10,860.61) | September 2023 Payment Received | Interest Payment: | | $ (10,501.23) | $ (369.38) | $ - | $ 2,749,169.52 | $ 2,660.24 | |
| 10/15/2023 | | | October 2023 Payment Due | $ 346.47 | 25 | $ 8,661.77 | | $ 8,661.77 | $ 2,749,169.52 | $ 2,660.24 | |
| 10/25/2023 | $ 525.51 | | Late Fee Added | | | | | | $ 2,749,169.52 | $ 3,185.75 | |
| 11/13/2023 | | | Interest Calculation | $ 346.47 | 29 | $ 10,047.65 | | $ 18,709.42 | $ 2,749,169.52 | $ 3,185.75 | |
| 11/13/2023 | | $ (10,510.28) | October 2023 Payment Received | Interest Payment: | | $ (10,510.28) | $ - | $ 8,199.14 | $ 2,749,169.52 | $ 3,185.75 | |

Case 25-30004   Claim 1-2   Filed 09/12/25   Desc Main Document   Page 83 of 84

| | | | | | | |
|---|---|---|---|---|---|---|
| 11/27/2023 | $ | 543.03 | Late Fee Added | | $ | 2,749,169.52 | $ | 3,728.78 |
| 12/26/2023 | $ | 560.55 | Late Fee Added | | $ | 2,749,169.52 | $ | 4,289.33 |
| 1/25/2024 | $ | 543.03 | Late Fee Added | | $ | 2,749,169.52 | $ | 4,832.36 |
| 2/26/2025 | $ | 543.03 | Late Fee Added | | $ | 2,749,169.52 | $ | 5,375.39 |
| 3/25/2024 | $ | 508.00 | Late Fee Added | | $ | 2,749,169.52 | $ | 5,883.39 |
| 4/25/2024 | $ | 543.03 | Late Fee Added | | $ | 2,749,169.52 | $ | 6,426.42 |
| 5/28/2024 | $ | 525.51 | Late Fee Added | | $ | 2,749,169.52 | $ | 6,951.93 |
| 6/25/2024 | $ | 543.03 | Late Fee Added | | $ | 2,749,169.52 | $ | 7,494.96 |
| 7/25/2024 | $ | 525.51 | Late Fee Added | | $ | 2,749,169.52 | $ | 8,020.47 |
| 8/26/2024 | $ | 543.03 | Late Fee Added | | $ | 2,749,169.52 | $ | 8,563.50 |

| 1/6/2025 | | | **BANKRUPTCY PETITION DATE** | $ 346.47 | 420 | $ 145,517.69 | $ 153,716.82 | $ 2,749,169.52 | $ 8,563.50 | $ 2,911,449.84 |

The Third Ruins Note: Payment History and Accrual of Interest + Late Fees

Dated 2/17/23 — Originating Interest Rate: 7.75% per annum

| Date | Charge (+) | TRANSACTION TYPE AND AMOUNT | | | Description | INTEREST CALCULATION | | | | RUNNING BALANCE | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Total Payment (-) | Interest Pmt. | Principal Pmt. | | Per Diem | # of Days | Accrued Interest | (Principal Pmt.) | Interest | Principal | Late Fees | TOTAL |
| 2/17/2023 | | | | | Loan 51658 Account Opened | | | | | $ - | $ - | $ - | |
| 2/17/2023 | $ 600,000.00 | | | | Opening Advance | | 0 | $ - | | $ - | 600,000.00 | $ - | |
| 4/10/2023 | $ 1,250.00 | | | | Late Fee Assessed | | | | | $ - | 600,000.00 | $ 1,250.00 | |
| 4/17/2023 | | | | | Interest Calculation | $ 127.40 | 59 | 7,516.44 | | $ 7,516.44 | 600,000.00 | $ 1,250.00 | |
| 4/17/2023 | | $ (25,000.00) | $ (7,516.44) | $ (17,483.56) | March 2023 Payment Made | $25,000.00 Payment: | $ | (7,516.44) | $ (17,483.56) | $ (0.00) | 582,516.44 | $ 1,250.00 | |
| 6/8/2023 | | | | | Interest Calculation | $ 123.68 | 52 | 6,431.62 | | $ 6,431.62 | 582,516.44 | $ 1,250.00 | |
| 6/8/2023 | | $ (25,000.00) | $ (6,431.62) | $ (18,568.38) | April 2023 Payment Made | $25,000.00 Payment: | $ | (6,431.62) | $ (18,568.38) | $ (0.00) | 563,948.06 | $ 1,250.00 | |
| 7/10/2023 | $ 1,250.00 | | | | Late Fee Assessed | | | | | $ - | 563,948.06 | $ 2,500.00 | |
| 7/24/2023 | | | | | Interest Calculation | $ 119.74 | 46 | 5,508.15 | | $ 5,508.15 | 563,948.06 | $ 2,500.00 | |
| 7/24/2023 | | $ (25,000.00) | $ (5,508.15) | $ (19,491.85) | May 2023 Payment Made | $25,000.00 Payment: | $ | (5,508.15) | $ (19,491.85) | $ (0.00) | 544,456.21 | $ 2,500.00 | |
| 8/10/2023 | $ 1,250.00 | | | | Late Fee Assessed | | | | | $ - | 544,456.21 | $ 3,750.00 | |
| 8/22/2023 | | | | | Interest Calculation | $ 115.60 | 29 | 3,352.51 | | $ 3,352.51 | 544,456.21 | $ 3,750.00 | |
| 8/22/2023 | | $ (25,000.00) | $ (3,352.51) | $ (21,647.49) | June 2023 Payment Made | $25,000.00 Payment: | $ | (3,352.51) | $ (21,647.49) | $ (0.00) | 522,808.72 | $ 3,750.00 | |
| 9/11/2023 | $ 4,396.04 | | | | Late Fee Assessed | | | | | $ - | 522,808.72 | $ 8,146.04 | |
| 9/20/2023 | | | | | Interest Calculation | $ 111.01 | 29 | 3,219.21 | | $ 3,219.21 | 522,808.72 | $ 8,146.04 | |
| 9/20/2023 | | $ (25,000.00) | $ (3,219.21) | $ (21,780.79) | Partial July 2023 Payment Made | $25,000.00 Payment: | $ | (3,219.21) | $ (21,780.79) | $ (0.00) | 501,027.93 | $ 8,146.04 | |
| 10/10/2023 | $ 4,396.04 | | | | Late Fee Assessed | | | | | | 501,027.93 | $ 12,542.08 | |
| 11/9/2023 | $ 4,396.04 | | | | Late Fee Assessed | | | | | | 501,027.93 | $ 16,938.12 | |
| 12/11/2023 | $ 4,396.04 | | | | Late Fee Assessed | | | | | | 501,027.93 | $ 21,334.16 | |
| 1/9/2024 | $ 4,396.04 | | | | Late Fee Assessed | | | | | | 501,027.93 | $ 25,730.20 | |
| 1/6/2025 | 1/6/2025 | | | | BANKRUPTCY PETITION FILED | $ 106.38 | 474 | $ 50,425.36 | | $50,425.36 | 501,027.93 | $ 25,730.20 | $ 577,183.49 |