IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Case No. 25-30004 |
| | ) | |
| THE RUINS, LLC | ) | Chapter 11 |
| | ) | |
| Debtor | ) | |
| | ) | |

**OPPOSITION TO MOTION TO CONVERT**

Comes now The Ruins, LLC (the "Ruins" or the "Debtor"), by and through undersigned counsel, in opposition to the Motion to Convert Case to Chapter 7, DE #109 (the "Motion"), and states as follows:

**I.	Introduction**

With a new plan of reorganization—alongside a proposed form of disclosure statement—on file in this case, Red River State Bank ("RRSB") has apparently resolved to avoid confirmation through any and all means permissible under Title 11 of the United States Code (the "Bankruptcy Code"). And understandably so, insofar as having a trustee with whom to cut a deal is assuredly preferable—in the bank's viewpoint—to allowing a plan to be confirmed, development of a property to be completed, and litigation to continue. Yet advancing the lender's unique interests is not nearly cause to convert this case to chapter 7, nor does the Motion otherwise set forth any legally valid rationale for conversion.

The thrust of RRSB's argument is twofold: (i) this case was filed in bad faith; and (ii) there exists a continuing or ongoing diminution of the Debtor's estate without any correlative likelihood of reorganization. Both of these arguments are deeply flawed in nature.

This is not—and never has been—a bad faith bankruptcy filing. The Debtor faced a foreclosure suit which, in the realm of chapter 11 filings, is an extraordinarily mundane and

1

normative a rationale for seeking bankruptcy protection. That the foreclosure suit came from an entity seemingly liable for myriad lender liability claims only compounded the utterly ordinary nature of the filing in this case. RRSB may not like that the Debtor is pursuing legal claims against the bank. And RRSB may not like that its own repetitive violations of norms and promises have created a paradigm through which the bank—remarkably if not breathtakingly—managed to comingle its own loan disbursements. But such is hardly fodder upon which to tag Ruins with the scarlet letter of bad faith and abandon reorganization so a chapter 7 trustee might conduct a fire sale.

Similarly, there does not exist any ongoing substantial loss or diminution of the Debtor's estate. While legal fees continue to be incurred (largely in response to the bank's unusually-proactive scorched earth litigation strategy), the assets of the Debtor have stood in status quo posture since the filing of this case. Insurance is paid. Taxes are paid. The physical building is being preserved. And, perhaps more importantly, there now exists a rather viable plan of reorganization through which construction may be completed and funds will be made available to benefit *all* creditors—not merely a senior secured creditor.

Equally, it bears notation that part of RRSB's argument in this Motion—as has been intimated in other filings—is fundamentally odd: the bank does not much like that this Honorable Court has recently blessed a third party injunction in connection with a chapter 11 plan's confirmation and, as such, now asserts that the Debtor ought not be able to remain in chapter 11 because such would tempt a similar outcome here. Whether RRSB agrees or disagrees with this Honorable Court's legal rationale in another case is not cause to suggest an unrelated debtor be expelled from the protections of chapter 11. If RRSB believes an injunction is improper, it is RRSB's right to argue such at confirmation in this case. But positing that RRSB would not wish

2

to see such an injunction in this case and, *ipso facto*, this case should be immediately converted, is simply not a valid line of legal argument.

For these reasons, and as extrapolated upon *infra*, it is respectfully urged the Motion be denied and a scheduling order be entered on the Debtor's disclosure statement and plan of reorganization.

II.     **Argument: This is Not a Bad Faith Bankruptcy**

Normally, allegations of a bad faith chapter 11 filing concern the rationale for an entity's entry into bankruptcy in the first instance, and not allegations concerning the manner in which an entity has navigated reorganizational waters following the docketing of a petition for relief. It is not that debtors are permitted to traffic in bad faith once an order for relief has been entered; it is, rather, that the Bankruptcy Code already contains plentiful checks against debtors-in-possession who abuse their fiduciary charge. In this case, there has been no abuse of that fiduciary role in any event. Yet, in looking at the Motion, it nonetheless seems RRSB is conflating two very distinct temporal horizons.

Allegations of bad faith chapter 11 petitions typically encompass debtors who do not have any extant need to reorganize in the first instance. *See, e.g.*, *Cedar Shore Resort, Inc. v. Mueller (In re Cedar Shore Resort, Inc.)*, 235 F.3d 375, 380 (8th Cir. 2000) ("Chapter 11 is intended for valid reorganization of 'financially troubled businesses,' not to permit financially solvent companies to 'rapidly conclude litigation to enable a continuation of their business.'"). For this reason, some of the most notable bad faith filing allegations, in chapter 11, come from cases involving substantial talc liability or debtors engaged in so-called "two step" maneuvers.

Scantly two years ago, the Fourth Circuit reaffirmed a longstanding and well-settled doctrine providing that in order for a chapter 11 case to be dismissed on bad faith grounds, "the

3

complaining party must show both 'subjective bad faith' and the 'objective futility of any possible reorganization.'" *Bestwall LLC v. Off. Comm. of Asbestos Claimants (In re Bestwall LLC)*, 71 F.4th 168, 182 (4th Cir. 2023) (quoting *LTL Mgmt., LLC v. Those Parties Listed on Appendix A to Complaint (In re LTL Mgmt., LLC)*, 64 F.4th 84, 98 n.8 (3d Cir. 2023) (quoting *Carolin Corp. v. Miller*, 886 F.2d 693, 694 (4th Cir. 1989))). In so holding, the appellate court addressed the case of an entity formed pursuant to a two-step maneuver for the transparent purposes of abiding a divisional merger counterparty's "desire to pursue its non-asbestos-related business apart from asbestos-related litigation or a bankruptcy proceeding while keeping its assets available to satisfy any asbestos-related liabilities, if required." *Bestwall*, 71 F.4th at 183.

Whether or not a so-called "two step" filing is permissible is a question that continues to work through various bankruptcy courts. It is also a fascinating question that has been—and should continue to be—the source of fervent debate unless and until resolved by a Supreme Court ruling.[1] The notion that state law may be used to segregate assets from certain liabilities, and to then extinguish those liabilities through the synergistic processes of chapter 11, is assuredly fodder for healthy discussion and a topic on which different courts will, invariably, continue to reach different conclusions.

Yet, like just about any discussion of bad faith motivations correlative to a chapter 11 petition, this is also wholly besides the point *sub judice*. Ruins is most certainly not a two-step debtor. And, even taking the Motion in the manner most favorable to RRSB, it does not appear the bank is sincerely arguing Ruins' filing was one rooted in bad faith at the time of the case's commencement. After all, and as noted *supra*, a debtor seeking bankruptcy relief, in lieu of facing

---

[1] By way of acknowledged bias, undersigned counsel—in a wholly unrelated matter, with a wholly unrelated client—currently represents a so-called "two step" debtor in a case pending in the District of Columbia. *See In re JPK NewCo LLC*, Case No. 25-200-ELG (Bankr. D.D.C. 2025).

4

de facto liquidation through foreclosure, would seem as prototypical an exercise of chapter 11 jurisdiction as there exists.

Moreover, while the Eighth Circuit seemingly eschews the assumption that an absence of objective futility necessarily means a case is not filed in bad faith, *Cedar Shore Resort*, 235 F.3d at 381, precedent does make clear that allegations of bad faith are to be assessed pursuant to a "totality of the circumstances test," *Lariat Cos. v. Wigley (In re Wigley)*, 557 B.R. 671, 675 (B.A.P. 8th Cir. 2016). This is because:

> Debtors often wish to shelter whatever assets they can from their creditors, and the Bankruptcy Code permits them to do so. We therefore must require a pattern of concealment, evasion, *and* direct violations of the Code or court order which clearly establishes an improper motive before allowing dismissals for bad faith.

*In re Kerr*, 908 F.2d 400, 404 (8th Cir. 1990) (citing *In re Johnson*, 880 F.2d 78 (8th Cir. 1989)) (emphasis added).

Here, RRSB does not allege Ruins to have violated any court orders. Nor does RRSB allege Ruins to have been evasive. Nor does RRSB allege Ruins to have engaged in acts of concealment. So, it would seem, none of the three prongs of the conjunctive test are satisfied.

Indeed, the Motion does not allege the Debtor to have entered bankruptcy with illicit motives or to have carried on in bankruptcy with a dishonest tact. Much to the contrary, the record is clear that Ruins has stood by and allowed the bank to take extensive discovery on seemingly every financial aspect of every transaction ever engaged by Ruins. This is, in no small part, how it is that RRSB has managed to seemingly litter the docket with documents at seemingly every turn.

What RRSB seems to be alleging, rather, is something far different: that it is bad faith for a debtor to remain in chapter 11 where insiders may benefit from a reorganization or where a third party injunction may be part of a chapter 11 plan. Yet the latter assuredly cannot be so, for the reasons discussed above: if this Honorable Court allows third party injunctions, such cannot—by

5

definition—be indicia of bad faith. And the former point—the idea of equity benefiting from a reorganization—would seem an omnipresent reality in almost every chapter 11 case excepting those extraordinary, oftentimes quite large, cases where a promptly-filed plan proposes a wipe out of equity's interests. (And, even then, it would seem myriad insiders stand to benefit from retaining their roles and employment, with stockholders—oftentimes being third parties—standing to see their shares cancelled, voided, or reduced to junk value.)

To be sure, the Motion alleges the existence of chapter 5 claims. The Debtor vehemently denies such to be extant in this case. Yet, more perniciously, the evidence adduced at a hearing upon the Motion will show that the alleged chapter 5 claims—theories of relief tied to the comingling of monies—emanate, *en toto,* from the bank's own inexplicable decisions to comingle loan distributions, to dishonor its promise to use a third party agent for draw requests, and to create an overly-byzantine universe of notes and borrowers as part of an ever-evolving effort to avoid lending limits and regulatory safeguards.

Most simply stated: there was no bad faith in filing this case and there has been no bad faith—at least on the Debtor's part—post-petition.

**III.     Argument: There is No Substantial Diminution or Ongoing Loss**

Though the argument is paid relatively short shrift in the Motion, the bank's alternative theory of relief—conversion on the basis of a substantial or ongoing loss or diminution of the Debtor's estate coupled with an absence of a reasonably likelihood of reorganization—is actually perhaps the more interesting. This is a case where the Debtor appears primed to confirm a plan of reorganization. Yet RRSB, either by design or revealing inadvertence, utterly ignores the fact that there is a rather viable plan on file.

6

Pertinently, ongoing or substantial loss is only a ground of dismissal if there is also "the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A).

Here, the Motion does not make clear what substantial or ongoing loss is being alleged. RRSB seems to intimate that construction—which was halted solely because of RRSB's own tortious conduct—cannot be completed. The bank likewise suggests an issue with insurance (which seems to be a strange refrain in this case and two related matters, despite more-than-adequate insurance having always been in place). Yet the plan of reorganization on file provides for completion of construction through the efforts of various specifically-identified subcontractors and an insider's economic contribution.

That plan is, however, the more relevant point: there *is* a plan. It is on file. It provides for the payment of all claims in full. It is accompanied by a reasoned and measured disclosure statement. It is ready to move through the confirmation process once the disclosure statement is approved. Yet RRSB, inexplicably, ignores this reality and seeks conversion on the spurious theory that a plan is unlikely to be confirmed in this case.

All of which necessarily leads back to the anomaly underlying the Motion in the first instance: RRSB is seeking to scuttle this case as a plan sits on the docket, waiting to be advanced. This is not an economically rationale position at first blush—surely the bank is better served by construction being finished under a plan than through a fire sale. Yet this position does make sense if one considers the bank's interests in derailing an adversary proceeding and avoiding ongoing scrutiny of its pre-petition actions. Such, however, is not cause for conversion; if anything, such is merely cause to ensure this case marches toward confirmation.

### IV. Conclusion

WHEREFORE, the Ruins respectfully prays this Honorable Court deny the Motion and afford such other and further relief as may be just and proper.

Respectfully Submitted,

Dated: October 17, 2025    By:    /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
The Dakota Bankruptcy Firm
1630 1st Avenue N
Suite B PMB 24
Fargo, North Dakota 58102-4246
Phone: (701) 394-3215
mac@dakotabankruptcy.com
*Counsel for the Debtors*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of October, 2025, a copy of the foregoing was served electronically upon filing via the ECF system.

/s/ Maurice B. VerStandig
Maurice B. VerStandig

8