*RRSB Draft as of 11.18.2025*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Case No. 25-30002 |
| | ) | (Chapter 11) |
| THE RUINS, LLC | ) | |
| | ) | |
| Debtor | ) | |
| | ) | |

**DRAFT CHAPTER 11 PLAN OF REORGANIZATION OF THE RUINS, LLC**

Red River State Bank ("RRSB" or the "Plan Proponent"), by and through undersigned counsel, pursuant to Section 1121(b) of Title 11 of the United States Code, and provides the following plan of reorganization (the "Plan") for The Ruins, LLC ("Ruins" or the "Debtor"):

**ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT ISSUED PURSUANT TO SECTION 1125(b) OF TITLE 11 OF THE UNITED STATES CODE IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, FEDERAL RULE OF BANKRUPTCY PROCEDURE 3018 AND IN THIS PLAN, THE PLAN PROPONENT RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THIS PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.**

ARTICLE I

**DEFINITIONS; RULES OF INTERPRETATION; COMPUTATION OF TIME**

1.1   **Scope of Definitions.**  For purposes of the Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings assigned to them in Article I of the Plan.  Any term used herein that is not defined herein, but that is used in Title 11 of the United States Code (the "Bankruptcy Code") or the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.  Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine and the feminine gender shall include the masculine.

1.2   **Definitions.**

RRSB Draft as of 11.18.2025

  a. "Administrative Claim" means all Claims that have been allowed pursuant to an order of the Bankruptcy Court and that are entitled to priority under sections 507(a)(2) or 507(b) of the Bankruptcy Code.

  b. "Administrative Claims Bar Date" means the thirtieth (30th) calendar day succeeding the Effective Date, subject to the allowances of Section 1.4 hereof.

  c. "Administrative Claims Bar Date" means the last date for a person to file any applications or requests for payment of Administrative Claims and shall be specifically defined as the first business day next succeeding the thirtieth calendar day following the Confirmation Date.

  d. "Adversary Proceeding" means the adversary proceeding brought by the Debtor AP-25-7009 in the United States Bankruptcy Court for the District of North Dakota.

  e. "Ballot" means the ballot, the form of which has been approved by the Bankruptcy Court, provided to each Holder of a Claim entitled to vote to accept or reject this Plan.

  f. "Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of North Dakota.

  g. "Business Day" means any day that is not a Saturday, a Sunday or "legal holiday" in the District of Columbia as such term is defined in Bankruptcy Rule 9006(a).

  h. "Cash on Hand" means the cash and cash equivalents held by the Debtor on the Effective Date.[1]

  i. "Causes of Action" means, any and all claims, choses in action, causes of action suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payments and claims, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether assertable directly or derivatively, in law, equity or otherwise, which are owned or held by, or have accrued to, the Debtor, whether arising before or after the Petition Date, including, without limitation, those which are: (i) against any party that has filed a Claim herein; (ii) property of any Estate under and pursuant to Section 541 of the Bankruptcy Code; (iii) for subrogation and contribution; (iv) for turnover; (v) for avoidable transfers and preferences under and pursuant to Sections 542 through 550 and 553 of the Bankruptcy Code and applicable state law; (vi) to determine the extent, validity and priority of liens and encumbrances; (vii) for surcharge under Section 506(c) of the Bankruptcy Code; (viii) for subordination under Section 510 of the Bankruptcy Code; (ix) related to federal or state securities laws; (x) direct or derivative claims or causes of action of any type or kind; (xi) for professional malpractice against professionals employed by any Debtor; (xii) against any and all current and/or former officers and directors of any Debtor; (xiii) under and pursuant to any policies of insurance maintained by any Debtor; (xiv) for collection on accounts, accounts receivables, loans, notes receivables or other rights to payment; (xv) for the right to seek a determination by

---

[1] NTD: Unless a third party makes a plan contribution, all Cash on Hand will be subject to RRSB's lien. RRSB will have to "gift" this to the estate for payment of administrative expenses on the Effective Date.

2

**RRSB Draft as of 11.18.2025**

the Bankruptcy Court of any tax, fine or penalty relating to a tax, or any addition to a tax, under Section 505 of the Bankruptcy Code; (xvi) which arise under or as a result of any section of the Bankruptcy Code, including Section 362; and (xvii) or may be available to any Debtor against any third party(ies) under any legal or equitable theory, whether or not specifically identified or described herein.

       j.       "Claim" has the meaning ascribed to it in Section 101(5) of the Bankruptcy Code.

       k.       "Class" means a category of Holders of Claims or Equity Interests as set forth in Article III of the Plan.

       l.       "Conditional Class 3 Payment" means that if Class 3 votes in favor of the Plan, RRSB and WDC will permit Sale Proceeds up to [$XXX] to be allocated to pay Administrative Expenses and [$XXX] shall be allocated to fund a distribution to Holders of Class 3 Claims.

       m.       "Confirmation" shall mean the entry of an order of the Bankruptcy Court confirming the Plan in accordance with Section 1129 of the Bankruptcy Code

       n.       "Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

       o.       "Confirmation Order" means the order of the Bankruptcy Court confirming this Plan pursuant to Section 1129 of the Bankruptcy Code, as such order may be amended, modified or supplemented.

       p.       "Creditor" has the meaning ascribed in Section 101(10) of the Bankruptcy Code and shall refer to any Holder of a Claim against any Debtor or Holder of any Claim against Property of Debtor as defined in Section 102(2) of the Bankruptcy Code.

       q.       "Creditor Trust" has the meaning ascribed to it in in Article IV of the Plan.

       r.       "Disclosure Statement" means the Disclosure Statement with respect to this Plan, as may be amended.

       s.       "Distribution" means each distribution of Cash to Holders of Allowed Claims pursuant to and under the terms of this Plan by the Debtor on each Distribution Date.

       t.       "Effective Date" shall mean the date fourteen days after the Confirmation Date.

       u.       "Equity Interest" means any ownership interest or share in the Debtor (including, without limitation all rights to obtain such an interest or share in any Debtor).

       v.       "Estate" means the estate created in this case for the Debtor pursuant to Section 541 of the Bankruptcy Code.

       w.       "File, Filed or Filing" means file, filed or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Case.

       x.       "Final Order" means an order or judgment of the Bankruptcy Court which has not been reversed, stayed, modified or amended and: (i) as to which the time to appeal or seek

**RRSB Draft as of 11.18.2025**

reconsideration or rehearing thereof has expired; (ii) in the event of a motion for reconsideration or rehearing is filed, such motion shall have been denied by an order or judgment of the Bankruptcy Court; or (iii) in the event of an appeal is filed and pending, a stay pending appeal has not been entered; provided, however that with respect to an order or judgment of the Bankruptcy Court allowing or disallowing a Claim, such order or judgment shall have become final and non-appealable; and provided further, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or analogous rule under the Bankruptcy Rules, may be filed with respect to such order or judgment shall not cause such order or judgment not to be a Final Order.

      y.      "Hilco" means Hilco Real Estate.

      z.      "Holder" means a Person holding a Claim or any authorized agent who has completed, executed and delivered a Ballot in accordance with the applicable voting instructions.

      aa.      "Lien" means any mortgage, lien, pledge, security interest or other charge or encumbrance or security device of any kind affecting any asset or any property of the Debtor contemplated by Section 101(37) of the Bankruptcy Code.

      bb.      The "First Ruins Note" means that certain promissory note dated march 9, 2022 in the original principal amount of $7,740,000, executed and delivered to RRSB, with a maturity date of March 15, 2027. Interest accrues on the First Ruins Notes at a rate of 4.250% per annum.

      cc.      The "Second Ruins Note" means that certain promissory note dated August 1, 2022 in the original principal amount of $2,750,000, executed and delivered to RRSB, with a maturity date of March 15, 2027. Interest accrues on the Second Ruins Notes at a rate of 4.600% per annum.

      dd.      The "Third Ruins Note" means that certain promissory note dated February 17, 2023 in the original principal amount of $600,000, executed and delivered to RRSB, with a maturity date of December 30, 2023. Interest accrues on the Third Ruins Notes at a rate of 7.750% per annum.

      ee.      "Person" has the meaning ascribed in Section 101(41) of the Bankruptcy Code.

      ff.      "Petition Date" means January 6, 2025, the date on which the Debtor commenced this case by filing a petition for relief pursuant to Section 301 of the Bankruptcy Code.

      gg.      "Plan Payment Commencement Date" shall mean the first business day of the first calendar month next succeeding the Effective Date.

      hh.      "Priority Claim" means a Claim to the extent that it is of the kind described in, and entitled to priority under Sections 507(a)(3), (a)(4), (a)(5), (a)(6), (a)(7) or (a)(9) of the Bankruptcy Code, that is not a Priority Tax Claim.

      ii.      "Priority" shall mean the priorities for the payment of Claims as set forth in 11 U.S.C. § 507.

      jj.      "Priority Tax Claim" means a Claim of a governmental unit of the kind specified in Section 507(a)(8) of the Bankruptcy Code.

kk. "Professional" means any professional employed or to be compensated pursuant to Sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code.

ll. "Real Estate" means that certain parcel of real property, and those various improvements thereupon, commonly known as 315 East Kemp Avenue, Watertown, South Dakota 57201.

mm. "RRSB" means Red River State Bank.

nn. "RRSB Claim" means the claim of RRSB set forth in Proof of Claim No. 1, evidenced by the First, Second and Third Ruins Notes, in the allowed amount of $11,658,331.25.

oo. "RRSB Collateral" means the Real Estate which is secured by certain recorded mortgages including a Construction Mortgage – One Hundred Eighty Day Redemption dated March 9, 2022 and recorded on March 10, 2022 at 9:57 a.m. in Book 990 on Page 8555 in the office of the Register of Deeds of Codington County, South Dakota and a Construction Mortgage – One Hundred Eighty Day Redemption dated August 1, 2022 and recorded on August 4, 2022 at 11:10 a.m. in Book 990 on Page 9258 in the office of the Register of Deeds of Codington County, South Dakota.

pp. "RRSB Conditional Gift" is defined in Section 3.2 of the Plan.

qq. "RRSB Deficiency Claim" is defined in Section 3.2 of the Plan.

rr. "Sale" has the meaning ascribed to it in Article IV of the Plan.

ss. "Sale Proceeds" means proceeds of the sale of the RRSB Collateral.

tt. "Schedules" means the Debtor's schedules of assets and liabilities and statement of financial affairs filed with the clerk of the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they have been or may be amended or supplemented from time to time in accordance with Bankruptcy Rule 1009.

uu. "Secured Claim" means a Claim that is secured by a Lien on, or security interest in, property of any Debtor, or that has the benefit of rights of setoff under Section 553 of the Bankruptcy Code, but only to the extent of the value of the creditor's interest in the Debtor's interest in such property, which value shall be determined as provided in Section 506 of the Bankruptcy Code.

vv. "Subordination Agreements" means the agreements dated March 7, 2022 and August 22, 2022, respectively, between RRSB and WDC, pursuant to which WDC subordinated its lien position in the RRSB Collateral up to $10,490,000, plus interest.

ww. "TIF" means Tax Increment Financing District No. 16, enacted by the City of Watertown pursuant to SDCL § 11-9-1 *et seq*.

xx. "TIF Agreements" means the TIF plus related agreements and assignments between and among the City of Watertown, The Ruins, LLC, Craig Holdings, LLC and WDC pursuant to

which the City of Watertown agreed that a portion of future real estate taxes would be paid to Debtor, and Debtor's right to such payments was absolutely assigned to RRSB and WDC.

yy. "TIF Revenue" means the estimated sum of future payments under the TIF Agreements from present through December 31, 2042, which the Plan Proponent estimates will be $2,113,378.32[2],

zz. "U.S. Trustee" shall mean the Office of the United States Trustee.

aaa. "WDC" means Watertown Development Company.

bbb. "WDC Claim" means the claim of the WDC set forth in Proof of Claim No. 7 filed on March 10, 2025, which shall be allowed under the Plan in the amount of $2,485,641.14.

ccc. "WDC Collateral" means the TIF Revenue in excess of $580,000, which the Plan Proponent estimates will be $1,533,378.32.

ddd. "WDC Deficiency Claim" means the amount of the WDC Claim minus the WDC Collateral, which the Plan Proponent estimates will be $952,262.82.

1.3 **Interpretation.** For purposes of the Plan, (a) any reference herein to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (b) any reference herein to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented; (c) unless otherwise specified, all references herein to Articles, Sections, Schedules and Exhibits are references to Articles, Sections, Schedules and Exhibits of or to the Plan; (d) the words "herein" and "hereto" refer to the Plan in their entirety rather than to a particular portion of the Plan; (e) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; and (f) the rules of construction set forth in Section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

1.4 **Computation of Time.** In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006 shall apply.

## ARTICLE II

## PROVISIONS FOR PAYMENT OF ALLOWED ADMINISTRATIVE EXPENSE CLAIMS, PRIORITY TAX CLAIMS AND STATUTORY FEES

2.1 **Administrative Expense Claims**. On the Effective Date or at such time as otherwise agreed, the holder of an allowed Administrative Claim against the Debtor shall receive,

---

[2] In enacting the TIF, the City of Watertown estimated the total amount of revenue available through the TIF for debt service to be $2,724,755.92. The original estimate was based on the assumption that construction would be complete in 2021. The revised estimate under the plan assumes construction will be completed in 2026.

6

RRSB Draft as of 11.18.2025

in full and final satisfaction of such Holder's allowed Claim, cash in an amount equal to the unpaid portion of such allowed Claim.

2.2     **Professionals.** On the Effective Date, Debtor's counsel shall be entitled to apply a $15,000 pre-petition retainer (the "Retainer") to payment of its allowed fees and expenses. Any Cash on Hand that is not subject to a secured creditor's lien may also be used to pay allowed Professional fees.

To facilitate the orderly payment of Administrative Claims, <u>all Administrative Claims must be asserted no later than the Administrative Claims Bar Date in order to be allowed and eligible for payment. Parties who fail to assert Administrative Claims in accordance with the Administrative Bar Date will be forever barred from receiving distributions under the Plan as Administrative Claim holders</u>. Administrative Claims remain subject to approval of the Bankruptcy Court as a condition precedent to payment.

2.3     **U.S. Trustee's Fees.** The United States Trustee shall receive payment, on or before the Effective Date, of all fees owed under 28 U.S.C. § 1930(a)(6) on account of disbursements made by the Debtor from the Petition Date through the Effective Date. Any U.S. Trustee's fees owed subsequent to the Effective Date will be paid from the Debtor's operating revenue. The Cash on Hand shall be used to pay these fees.

2.4     **Full Satisfaction, Discharge and Release**.   The payments, distributions and other treatment afforded to Holders of allowed Administrative Claims against the Debtor under this Article II shall be in full and complete satisfaction, discharge and release of such allowed Claims.

## ARTICLE III

### CLASSIFICATION, IMPAIRMENT AND TREATMENT OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR

3.1     **Generally.**  All Claims and Equity Interests, except Administrative Expense Claims, are placed in Classes as set forth below.  A Claim or Interest is placed in a particular Class only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and such Claim or Interest has not been paid, released, or otherwise settled or paid prior to the Effective Date, and is classified in other Classes to the extent that any remainder of the Claim or Equity Interest qualifies within the description of such other Classes. A breakdown of each Claim holder, and the respective Class(es) in which they are placed, is attached hereto as Exhibit A.

3.2     **Identification and Treatment of Classes.** The following are the designations for, and treatment of, the Classes of Claims against—and Equity Interests in—the Debtor:

**Class 1 – Allowed Secured Claim of Red River State Bank.**     Class 1 consists of the Allowed Secured Claim of RRSB.

By stipulation, RRSB's Claim has been allowed in the amount of $11,658,331.25. [ECF 103]

RRSB's Claim is secured by  valid security interests in the RRSB Collateral. Pursuant to the Subordination Agreements, RRSB's Claim is secured by a valid, first-priority Lien in the

7

*RRSB Draft as of 11.18.2025*

RRSB Collateral of $10,490,000, plus interest (such amount, the "Subordinated Amount"). The value of the RRSB Collateral will be determined by the Sale. On account of its Lien, RRSB shall be entitled to receive Sale Proceeds up to $10,490,000.

RRSB's Claim is also secured by a valid first-priority security interest in the TIF Revenue up to $580,000. On account of such Lien, RRSB shall be entitled to receive TIF Revenue up to $580,000. Nothing in this Plan shall modify the validity, scope or priority of RRSB's Liens or its right to credit bid under Section 363(k).

The Plan does not provide for full payment of the RRSB Claim. The Conditional Class 3 Payment will divert proceeds from the Sale of the RRSB Collateral to pay certain Administrative Expenses and to fund a distribution to Holders of Class 3 Claims who are junior in Priority to RRSB. The Conditional Class 3 Payment will cause a dollar-for-dollar reduction in the Class 1 distribution under the Plan.

Class 1 is impaired by the Plan and entitled to vote.

**Class 2 – Allowed Secured Claim of Watertown Development Company.** Class 2 consists of the Allowed Secured Claim of WDC.

WDC's Claim shall be allowed in the amount of $2,485,641.14.

WDC's Claim is secured by a valid security interest in the RRSB Collateral. Pursuant to the Subordination Agreements, WDC has a first-priority security interest in the RRSB Collateral in excess of the Subordinated Amount. The value of the RRSB Collateral will be determined by the Sale. On account of its Lien, WDC shall be entitled to receive any Sale Proceeds in excess of the Subordinated Amount, up to $2,485,641.14. The Plan Proponent anticipates that the value of Sale Proceeds distributed to WDC under this Plan will be $0.

WDC's Claim is also secured by a valid security interest in the TIF Revenue. On account of such Lien, WDC shall be entitled to receive TIF Revenue in excess of the initial $580,000, up to a total of $2,448,400.91. The Plan Proponent anticipates that the value of TIF Revenue distributed to WDC under this Plan will be $1,533,378.32.

Nothing in this Plan shall modify the validity, scope of priority of WDC's Liens, the TIF, the TIF Agreements, or its right to credit bid under Section 363(k).

The Plan does not provide for full payment of the WDC Claim. The Conditional Class 3 Payment will divert funds from the Sale of the RRSB Collateral to pay certain Administrative Expenses and to fund a distribution to Holders of Class 3 Claims who are junior in Priority to WDC. The Conditional Class 3 Payment will further subordinate WDC's right to payment from its collateral.

Class 2 is impaired by the Plan and entitled to vote.

**Class 3 – General Unsecured Creditors**. Class 3 consists of all holders of Allowed Unsecured Claims.

RRSB Draft as of 11.18.2025

Holders of Class 3 Claims will be entitled to receive their pro rata share of Cash on Hand, after payment of Administrative Expenses.

Holders of Class 3 Claims will also receive their pro rata share of any distributions from the Creditor Trust as discussed in Article IV of the Plan.

The Conditional Class 3 Payment: If and only if Class 3 votes in favor of the Plan, Holders of Class 3 claims will also receive their pro rata share of the Conditional Class 3 Payment, which will be funded from the Sale of the RRSB Collateral and which would otherwise have been distribution to Holders of Class 1 and 2 Claims.

[Pursuant to 11 USC § 510, Class 3 Claims held by the Insiders will be equitably subordinated to all other Class 3 Claims on account of the Craig Insiders prepetition misconduct.]

Class 3 is impaired and entitled to vote.

**Class 4 – Equity.** Class 4 consists of Holders of Equity Interests. Class 4 is not entitled to receive a distribution under the Plan. All Equity Interests will be extinguished on the Effective Date. Class 4 is comprised exclusively of insiders, as such term is defined in 11 USC 101 and pursuant to 11 USC 1129(a)(10), Class 4 is disregarded for the purpose of voting.

## ARTICLE IV

## MEANS OF IMPLEMENTING THE PLAN

4.1   **Sale of Real Estate**. The Debtor will retain Hilco to market and sell the Real Estate for the highest and best offer, free and clear of liens, pursuant to 11 USC 363 (the "Sale"). Hilco will also provide management services while the Sale is pending. The terms of Hilco's engagement are set forth in a broker agreement that will be filed as a plan exhibit.

4.2   **Creditor Trust.** Debtor's records confirm the existence of potentially avoidable transfers, including transfers to Insiders, in excess of $4 million. [ECF 177]. [Danielle Harless] will be appointed as trustee of the Creditor Trust and [the Vogel Law Firm] will be retained as counsel to the Creditor Trust to investigate, litigate and/or settle such claims for the benefit of all Holders of Class 3 Claims. The terms of the Creditor Trust Agreement will be filed as a plan exhibit.

4.3   **Claim Objection, Debt Recharacterization, and Equitable Subordination of Insider Claims**. Any proof(s) of claim filed by Insiders seeking allowance of claims against The Ruins, LLC shall be equitably subordinated to all other holders of Class 3 Claims pursuant to 11 USC 510.

4.4   **RRSB Settlement**. If the Plan is confirmed, on or before the Effective Date, the Ruins LLC will dismiss its claims with prejudice, if any, against RRSB in the Adversary Proceeding and against RRSB and any of its representatives in the Foreclosure Proceeding (*RRSB v. The Ruins, LLC et. al.*, Codington County Circuit Court, South Dakota, Case No. CV-24-

9

*RRSB Draft as of 11.18.2025*

000068). In exchange, RRSB will dismiss the Foreclosure Proceeding, with respect to The Ruins, LLC, as soon as practicable after the Effective Date.

**4.5** **Insider Settlement**. Jesse Craig has testified and bank records confirm potentially fraudulent transfers were made to him, his relatives, and entities solely owned by Mr. Craig, or for their benefit, in excess of $4 million. [ECF 177] Pursuant to Rule 9019, Mr. Craig and other Insiders owned by or related to Mr. Craig (collectively, the "Craig Insiders") may settle potential liability for the aforementioned transfers for a one time payment of $[1,000,000] on or before [the Effective Date of the Plan.] As a condition of settlement, the Craig Insiders must also waive their 502(h) claims, if any, against the estate and subordinate their rights to a plan distribution on account of any Class 3 Claim to all other Holders of Class 3 Claims. In the event this Insider Settlement payment is not remitted on or before the Effective Date, the Creditor Trust will retain all rights to prosecute all potentially fraudulent transfers with respect to Insiders.

**4.6** **Leases and Executory Contracts**. Any contracts with Insiders and executory contracts will be deemed rejected as of the Effective Date.

## ARTICLE V

## PROVISIONS GOVERNING DISTRIBUTIONS

**5.1** **Delivery of Distributions**. Distributions and deliveries to Holders of allowed Claims shall be made at the addresses set forth on the proofs of claim filed by such Holders (or at the last known addresses of such Holders if no proof of claim is filed).

**5.2** **No Interest Unless Otherwise Provided**. No interest shall be paid on any Claim unless, and only to the extent permitted, under the terms of the Plan.

**5.3** **Undistributed Property**. If any Distribution remains unclaimed for a period of 90 days after it has been delivered (or attempted to be delivered) in accordance with the Plan to the Holder entitled thereto, such Unclaimed Property shall be forfeited by such Holder. Unclaimed Property shall be used to satisfy unpaid Administrative Expenses, if any, or donated to Legal Services of North Dakota.

*RRSB Draft as of 11.18.2025*

# ARTICLE VI

## CONDITIONS PRECEDENT TO EFFECTIVENESS OF PLAN

**6.1    Conditions to Effectiveness of Plan.**  The Effective Date of the Plan shall not occur unless and until the following conditions shall have been satisfied or waived by the Plan Proponent: (a) the Bankruptcy Court shall have entered the Confirmation Order in form and substance acceptable to the Plan Proponent, and such Confirmation Order shall be a Final Order; and (b) the Bankruptcy Court shall have approved the information contained in the Disclosure Statement as adequate pursuant to Section 1125 of the Bankruptcy Code.

**6.2    Notice of Confirmation of the Plan.**  Notice of entry of the Confirmation Order shall be provided as required by Bankruptcy Rule 3020(c)(2).

# ARTICLE VII

## RETENTION OF JURISDICTION

**7.1    Retention of Jurisdiction.**  Pursuant to Sections 1334 and 157 of Title 28 of the United States Code, the Bankruptcy Court shall retain jurisdiction of all matters arising in, arising under, and related to the chapter 11 case of the Debtor and the Plan, for the purposes of Sections 105(a) and 1142 of the Bankruptcy Code, and for, among other things, the following purposes:

(a)    to hear and determine any and all adversary proceedings, applications, or contested matters, including avoidance actions, and any remands from any appeals;

(b)    to hear and to determine all controversies, disputes, and suits which may arise in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan;

(c)    to consider any modification of the Plan pursuant to section 1127 of the Bankruptcy Code, to cure any defect or omission or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(d)    to enter, enforce and implement such orders (including orders entered prior to the Confirmation Date) as may be necessary or appropriate to execute, interpret, implement, consummate or enforce the terms and conditions of the Plan and the transactions contemplated hereunder;

(e)    to enter and to implement such orders (including orders entered prior to the Confirmation Date) as may be necessary or appropriate to execute, interpret, implement or enforce the terms and conditions of the Plan;

(f)    to hear and to determine any other matter not inconsistent with the Bankruptcy Code and title 28 of the United States Code that may arise in connection with or related to the Plan; and

(g)    to enter a final decree closing this Chapter 11 case.

*RRSB Draft as of 11.18.2025*

**7.2     Abstention and Other Courts.**  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of or relating to the Chapter 11 Cases, this section of the Plan shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE VIII

### RELEASE FOR PLAN PROPONENT AND PROFESSIONALS

**8.1     Limitation of Liability in Connection with the Case, the Plan, and Related Documents.**  Pursuant to § 1125(e) of the Bankruptcy Code; the Debtor and its Professionals, representatives, successors, and assigns; and the Plan Proponent (collectively, the "Plan Participants") will neither have nor incur any liability to any Person for any act taken or omitted to be taken in connection with or related to the Case, including, but not limited to, the formulation, preparation, dissemination, negotiation, implementation, confirmation or consummation of the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release or other agreement, pleading or document created or entered into, the pursuit, non-pursuit or settlement of Causes of Action or any other act taken or omitted to be taken in connection with or for the purpose of carrying out the Plan, the Disclosure Statement, the Confirmation Order or related agreement, including solicitation of acceptances of the Plan ("Exculpated Conduct"); provided, however, that no Person shall be relieved of liability for fraud, gross negligence, and intentional misconduct.

All Persons are permanently enjoined from commencing, or continuing in any manner, any action or proceeding against any of the Plan Participants, whether directly, derivatively, on account of or respecting any Claim, debt, right, or cause of action based in whole or in part upon any Exculpated Conduct.

## ARTICLE IX

### MISCELLANEOUS PROVISIONS

**9.1 Severability.**  Should the Bankruptcy Court determine that any provision of the Plan is unenforceable either on its face or as applied to any Claim or Equity Interest or transaction, the Plan Proponents may modify the Plan in accordance with the Plan, as applicable, so that such provision shall not be applicable to the Holder of any Claim or Equity Interest.

**9.2     Binding Effect.**  Upon the entry of the Confirmation Order, all provisions of the Plan shall be binding upon, and shall inure to the benefit of, the Debtor, the Holders of Claims and Equity Interests, and such Persons' respective successors and assigns.

**9.3     Transfer Tax Exemption.**  Pursuant to § 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of any notes or securities under the Plan, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, any deeds, deeds of trust, mortgages, bills of sale or assignments

RRSB Draft as of 11.18.2025

executed in connection with any of the transactions contemplated under the Plan, including the sale of the Real Estate provided for under this Plan, shall not be subject to any stamp tax or other similar tax, including, but not limited to, transfer and recordation tax on the sale of the Real Estate.

**9.4     Governing Law.**  Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, or a specific choice of law provision is provided, the laws of North Dakota shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, without regard to conflicts of law.

**9.5     Timing of Distributions.**  Any Distribution required to be made hereunder on a day other than a Business Day shall be due and payable on the next succeeding Business Day.

**9.6     Revocation or Withdrawal of Plan.**  The Plan Proponent reserves the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order. If the Plan is withdrawn or revoked, then the result shall be the same as if the Confirmation Order had not been entered and the Effective Date had not occurred.  If the Plan is revoked or withdrawn prior to the entry of the Confirmation Order, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the such entity or any Person in any further proceedings involving such entity.

**9.7     Nonmaterial Modifications.**  The Plan Proponent may, with the approval of the Bankruptcy Court and without notice to Holders of Claims and Equity Interests, correct any nonmaterial defect, omission, or inconsistency herein in such manner and to such extent as may be necessary or desirable.

**9.8     Material Modifications.**  Modifications of the Plan may be proposed in writing by the Plan Proponents at any time prior to Confirmation, provided that the Plan, as modified, meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code, and the Plan Proponents shall have complied with Section 1125 of the Bankruptcy Code. The Plan may be modified at any time after Confirmation and before substantial consummation, provided that the Plan, as modified, meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as modified, under Section 1129 of the Bankruptcy Code, and the circumstances warrant such modification.

**9.9     Cramdown.**  This section shall constitute the Plan Proponent's request, if necessary, pursuant to Section 1129(b)(1) of the Bankruptcy Code, that the Bankruptcy Court confirm the Plan notwithstanding the fact that the requirements of Section 1129(a)(8) of the Bankruptcy Code may not be met.

**9.10    No Recourse.**  No Person entitled to receive a payment or Distribution under the Plan will have any recourse against the Estate, the Plan Proponent or its professionals, or the Debtor, other than the right to receive Distributions in accordance with the terms of the Plan.

**9.11    Notices.**  Any notice required or permitted to be provided hereunder shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) prepaid overnight delivery service and addressed as follows:

Kesha L. Tanabe
Vogel Law Firm
218 N.P. Ave.
Fargo, ND 58102
*Counsel for the Plan Proponent*

**9.12    Default.** A default under this Plan shall be deemed to occur if (i) the Debtor fails to perform any obligation(s) hereunder; (ii) written notice of such failure is delivered to the Debtor by email to [Vogel/Counsel to Plan Proponent]; and (iii) said failure remains, uncured, for a period of fourteen (14) days following the giving of such notice. Upon such a default, any impacted party—alongside the U.S. Trustee—shall have all remedies available under the Bankruptcy Code as well as all remedies available under applicable nonbankruptcy law.

**9.13    Remedies Upon Default.** Upon the occurrence of a Default, and without any further notice to the Debtor or order of the Court: (i) any impacted party (including the U.S. Trustee) shall have all remedies available under the Bankruptcy Code as well as all remedies available under applicable nonbankruptcy law; (ii) the automatic stay and any injunction provided for in this Plan or under the Bankruptcy Code, shall immediately terminate; and (iii) Creditors (including RRSB) may immediately pursue all legal rights and remedies available to such Creditors, including, without limitation, foreclosure of any Liens and recovery of any collateral in accordance with applicable nonbankruptcy law. Additionally, if Debtor defaults under this Plan with respect to Class 1, RRSB shall be entitled to enter a confession of judgment for voluntary foreclosure in the State/District Court of Coddington County, South Dakota. The form of said confession of judgment will be included as a plan exhibit.

[**Option B**: Conversion to CH 7 in lieu of stay relief]

**9.14    Saturday, Sunday, or Legal Holiday.** If any payment or act under the Plan should be required to be made or performed on a day that is not a Business Day, then the payment or act may be completed on the next succeeding day that is a Business Day, in which event the payment or act will be deemed to have been completed on the required day.

**9.15    Successors and Assigns.** The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such Person.

**9.16    Entry of a Final Decree**. The Debtor may file a motion with the Bankruptcy Court to obtain the entry of a final decree upon completion of Plan payments or on such other time as the Debtor determines appropriate.

        Respectfully submitted,

November 18, 2025       **VOGEL LAW FIRM**

      BY: <u>*/s/ Kesha L. Tanabe*</u>
        Caren W. Stanley (#06100)
        cstanley@vogellaw.com
        Kesha L. Tanabe
        ktanabe@vogellaw.com
        Drew J. Hushka (#08230)
        dhushka@vogellaw.com
        218 NP Avenue
        PO Box 1389
        Fargo, ND 58107-1389
        Telephone: (701) 237-6983
        Fax: (701) 476-7676

        *COUNSEL TO PLAN PROPONENT*