IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Case No. 25-30004 |
| | ) | |
| THE RUINS, LLC | ) | Chapter 11 |
| | ) | |
| Debtor | ) | |
| | ) | |

**MOTION TO EQUITABLY SUBORDINATE CLAIM
OF RED RIVER STATE BANK TO THOSE OF ALL
OTHER CREDITORS EXCEPTING INSIDERS OR, IN THE
ALTERNATIVE, FOR ENTRY OF AN ORDER DIRECTING
RED RIVER STATE BANK TO SHOW CAUSE WHY IT
OUGHT NOT BE HELD IN CONTEMPT OF COURT**

Comes now The Ruins, LLC ("Ruins" or the "Debtor"), by and through undersigned counsel, and moves to equitably subordinate the claim of Red River State Bank ("RRSB") to those of all other creditors, secured or unsecured (excepting insiders), or, in the alternative, for entry of an order directing RRSB to show cause why it ought not be held in contempt of court, and in support thereof states as follows:

I.   **Introduction**

RRSB has violated the exclusivity provisions of Title 11 of the United States Code (the "Bankruptcy Code"). More than a week before the exclusivity period was set to expire—on a date carefully negotiated by the parties and stipulated to in open court—RRSB elected to dishonor this sacrosanct statutory protection and run roughshod over one of Congress' hallmark allowances aimed at permitting those in chapter 11 the rightful helm of their own cases. For this fairly egregious and unapologetic transgression, it is appropriate to equitably subordinate the claim of RRSB to the claims of all other creditors, as established by applicable precedent.

1

## II.  Standard & Relevant Facts

The Bankruptcy Code provides that ". . . only the debtor may file a plan until after 120 days after the date of the order for relief under this chapter," 11 U.S.C. § 1121(b), with an allowance that the subject 120-day period be subsequently extended by court order, 11 U.S.C. § 1121(d).

In this case, that deadline was extended—by court order—to January 1, 2026. *See* DE #51. While not expressly reflected on the docket, the Debtor and RRSB later agreed—on the record—to shorten that deadline to November 28, 2025. *See* DE #157.

On November 18, 2025—some ten days before the exclusivity period was set to lapse—RRSB docketed a plan of reorganization. *See* DE #178 (the "RRSB Plan"). The RRSB Plan is docketed as a chapter 11 plan of reorganization, *id.*, and, while marked with the word "draft," was promulgated to all parties receiving notice via CM/ECF, *id.*

RRSB immediately proceeded to mark its plan as an exhibit for a forthcoming hearing. DE #180 at pp. 10-11.

## III.  Argument: Equitable Subordination is Appropriate

In the pantheon of exclusivity violations, the actions of RRSB in this case are amongst the most egregious. This is not a case where a creditor mis-calendared a deadline or mistakenly applied the "traditional" exclusivity period to the elongated tenure of exclusivity in a small business case. This is, rather, a case where a creditor saw the exclusivity period extended, negotiated to have the period then shortened, and proceeded—scantly two weeks later—to openly violate that period. Worse, it very much appears RRSB did all of this for the express purpose of having an alternative plan to advertise to parties in interest, by making the offending document an exhibit at a subsequent hearing at which the fate of the Debtor's stay in bankruptcy is being addressed.

2

The seriousness with which the exclusivity period of Section 1121—and violations thereof—are to be regarded has been well addressed by a sister court:

> Section 1121(b) creates not only a bright line but a "third rail": don't file a plan during the exclusivity period. The right of exclusivity was violated by the filing of a plan and needs to be vindicated. Whether this unauthorized filing, together with the notice of it that was given through the Exclusivity Motion, also effected an unauthorized solicitation, is merely academic.

*In re Charles St. African Methodist Episcopal Church of Bos.*, 499 B.R. 126, 132 (Bankr. D. Mass. 2013).

Equally, as also made quite clear by the *Charles St.* Court, it is the mere act of filing a premature plan—even if unadorned by formal solicitation thereof—that irretrievably poisons the well in a chapter 11 case:

> The filing of a document puts it on the public record, 11 U.S.C. § 107(a), supplying actual notice to any who care to look at it. Creditors may or may not have viewed the filed Bank Plan, but the burden of proving that they did not, to the extent that it matters at all, is on the party that violated the exclusivity statute, a rule against *filing*.

*Id.* at 133 (emphasis in original).

The question in this case is not if the exclusivity period has been violated: quite plainly, RRSB has made a conscious and knowing decision to do so. And, to be sure, the fact that the word "draft" appears on the RRSB Plan does not serve to mitigate this breach of the Bankruptcy Code's mandate. Rather, case law—somehow, and quite remarkably—actually addresses the pernicious harms attendant to precisely this form of prosaic gamesmanship:

> The secured and other unsecured creditors in this case have been told by Foresta and Caliber that rejection of the Debtor's plan will be followed by Foresta's and Caliber's plan offering prompt payment in full of their claims. Unsecured creditors are unlikely to forget the unapproved plan and disclosure statement mailed to them by Foresta and Caliber, **albeit in purportedly draft form**.

*In re Clamp-All Corp.*, 233 B.R. 198, 210 (Bankr. D. Mass. 1999) (emphasis added). As noted by the *Clamp-All* Court, the question accordingly becomes one of "[t]he appropriate remedy . . .

3

designed to undo that harm," *id.*, with it being critical that such remedy ". . . be designed to make [the offender's] offer to creditors no longer valid."

In *Clamp-All Corp.*, that remedy was found to be equitable subordination, with the claim of the offending creditor being subordinated to those of all other non-insider creditors. *Id.* at 211 ("In view of the foregoing, the Court will subordinate the claims of Foresta and Caliber to the claims of all other creditors (other than any insider claims). Such subordination will assist the Debtor in approving its offer to creditors."). The court further ordered the offending creditor to pay the correlative fees of debtor's counsel. *Id.*

In this judicial circuit, "[e]quitable subordination requires proof of inequitable conduct by the claimant that injured other creditors or conferred an unfair advantage." *Kaler v. Bala (In re Racing Servs.)*, 571 F.3d 729, 731 (8th Cir. 2009) (citing *In re Bellanca Aircraft Corp.*, 850 F.2d 1275, 1282 (8th Cir. 1988)). This typically involves application of a three prong analysis:

> (i) The claimant must have engaged in some type of inequitable conduct. (ii) The misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant. (iii) Equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy [Code].

*In re Bellanca Aircraft Corp.*, 850 F.2d at 1282 (quoting *Wilson v. Huffman (In re Missionary Baptist Foundation)*, 712 F.2d 206, 212 (5th Cir. 1983); citing *Estes v. N & D Properties, Inc. (In re N & D Properties, Inc.)*, 799 F.2d 726, 731 (11th Cir. 1986); *Sepco, Inc. v. Valley State Bank (In re Sepco, Inc.)*, 36 B.R. 279, 287 (D.S.D. 1984)).

Here, the filing of a competing plan, prior to the lapsing of the exclusivity period and with transparent designs of using the same to sway the positions of other creditors, is manifestly inequitable. Similarly, doing so confers a palpably unfair advantage on RRSB, with the bank now being able to approach the final two days of a hearing on conversion—a hearing now focused on the "unusual circumstances" exception, 11 U.S.C. § 1112(b)(2)—with other creditors (secured and

4

unsecured) aware of what alternative will lay ahead if the Debtor's proposed plan is rejected and the bank is permitted to proceed with its own chapter 11 plan. And equitable subordination is consistent with the plain provisions of the Bankruptcy Code. 11 U.S.C. § 510(c)(1).

To be sure, the Ruins is entitled—as a matter of law—to proceed through the exclusivity date *without* creditors being made privy to the contents of any competing or alternative plans of reorganization. As observed by the *Charles St.* Court, this provision is a proverbial "third rail." And, as observed by the *Clamp-All Corp* Court, this violation rings a bell that cannot be unrung, with creditors now being tempted by the fruits of a competing plan at a time when governing law expressly provides no such plan is to be circulated (also at a time, no less, when the Debtor's fate is being hotly debated).

This is accordingly a case well meritorious of equitable subordination. RRSB has impermissibly shopped its aspirations to the creditor body writ large. With the exception of insiders, the claims of RRSB should be subordinated to those of the parties wrongfully confronted with the RRSB Plan.

IV. **Argument: In the Alternative, An Order of Contempt—with an Appropriate Purge Provision—Should be Entered**

While equitable subordination would appear the textbook remedy for RRSB's wanton and willful indiscretion, the Debtor does acknowledge that at least one court, confronted with similar but distinguishable circumstances, has seen fit to use its equitable powers to craft an alternative remedy. Should this Honorable Court be so inclined in this case, the Ruins would submit that entry of an order directing RRSB to show cause why it ought not be held in contempt of court, followed by a contempt order with a proper purge allowance, would be alternatively proper.

The *Charles St.* Court declined to enter an order of equitable subordination, *In re Charles St. African Methodist Episcopal Church of Bos.*, 499 B.R. at 133, instead favoring an order (i)

5

prohibiting the offending creditor from proposing a plan in the case; (ii) directing the offending creditor to pay the legal fees of the debtor's counsel; and (iii) denying the creditor the fees expended in connection with the offending activity and the motions practice stemming therefrom, *id.* at 133-34.

Here, if equitable subordination is not the appropriate remedy, an order of contempt is certainly a fit sanction within the powers of this Honorable Court. *See, e.g.*, *Isaacson v. Manty*, 721 F.3d 533, 538 (8th Cir. 2013) ("Federal courts possess certain inherent powers, including the 'power to punish for contempts,' which 'reaches both conduct before the court and that beyond the court's confines.'") (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991)).

The actions of RRSB are certainly contemptuous in nature, displaying a brazen disregard for the very provisions of federal statutory law that govern conduct in chapter 11 cases. And a finding of contempt would accordingly be altogether proper.

If such a finding is to be made, the Debtor believes such should—in the tradition of the *Charles St.* case—include a disallowance of the filing of any plan in this case by RRSB and a purge provision that may be exercised by RRSB paying the fees of Debtor's counsel incurred in connection with the RRSB Plan and correlative motions practice (subject to such fees being first approved by this Honorable Court).

### V.    Conclusion

WHEREFORE, the Ruins respectfully prays this Honorable Court (i) equitably subordinate the claim of RRSB to those of all other non-insider creditors; or, in the alternative (ii) order RRSB to show cause why RRSB ought not be held in contempt of court; and (iii) afford such other and further relief as may be just and proper.

*[Signature on Following Page]*

|  |  |
|---|---|
|  | Respectfully Submitted, |
| Dated: November 19, 2025 | By: /s/ Maurice B. VerStandig<br>Maurice B. VerStandig, Esq.<br>The Dakota Bankruptcy Firm<br>1630 1st Avenue N<br>Suite B PMB 24<br>Fargo, North Dakota 58102-4246<br>Phone: (701) 394-3215<br>mac@dakotabankruptcy.com<br>*Counsel for the Debtor* |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 19th day of November, 2025, a copy of the foregoing was served electronically upon filing via the ECF system.

/s/ Maurice B. VerStandig
Maurice B. VerStandig

7