IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Case No. 25-30002 |
| | ) | (Chapter 11) |
| THE RUINS, LLC | ) | |
| | ) | |
| Debtor | ) | |
| | ) | |

## CREDITOR'S PLAN OF LIQUIDATION FOR THE RUINS, LLC

Red River State Bank ("RRSB" or the "Plan Proponent"), by and through undersigned counsel, pursuant to Section 1121(b) of Title 11 of the United States Code, and provides the following Chapter 11 plan of liquidation (the "Plan") for The Ruins, LLC ("Ruins" or the "Debtor"):

**ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT ISSUED PURSUANT TO SECTION 1125(b) OF TITLE 11 OF THE UNITED STATES CODE IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, FEDERAL RULE OF BANKRUPTCY PROCEDURE 3018 AND IN THIS PLAN, THE PLAN PROPONENT RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THIS PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.**

## ARTICLE I

## DEFINITIONS; RULES OF INTERPRETATION; COMPUTATION OF TIME

1.1　　**Scope of Definitions.**　For purposes of the Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings assigned to them in Article I of the Plan.　Any term used herein that is not defined herein, but that is used in Title 11 of the United States Code (the "Bankruptcy Code") or the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.　Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine and the feminine gender shall include the masculine.

1.2　　**Definitions.**

1

a.      "Administrative Claim" means all Claims that have been allowed pursuant to an order of the Bankruptcy Court and that are entitled to priority under sections 507(a)(2) or 507(b) of the Bankruptcy Code.

b.      "Administrative Claims Bar Date" means the fourteenth calendar day after the Confirmation Date, subject to the allowances of Section 1.4 hereof.

c.      "Auction" shall have the meaning set forth in Section 4.3 of the Plan.

d.      "Adversary Proceeding" means the adversary proceeding brought by the Debtor AP-25-7009 in the United States Bankruptcy Court for the District of North Dakota.

e.      "Ballot" means the ballot, the form of which has been approved by the Bankruptcy Court, provided to each Holder of a Claim entitled to vote to accept or reject this Plan.

f.      "Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of North Dakota.

g.      "Bid Procedures" shall have the meaning set forth in Section 4.2 of the Plan.

h.      "Bid Procedures Order" shall mean an order entered by the Bankruptcy Court approving specific Bid Procedures for the Sale.

i.      "Bid Deadline" shall have the meaning ascribed to such term in the Bid Procedures Order.

j.      "Broker" has the meaning assigned to such term in Section 4.1 of the Plan.

k.      "Broker Agreement" means Plan Exhibit A, to be filed no later than December 31, 2025.

l.      "Business Day" means any day that is not a Saturday, a Sunday or "legal holiday" in the District of North Dakota as such term is defined in Bankruptcy Rule 9006(a).

m.      "Cash on Hand" means the cash and cash equivalents held by the Debtor on the Effective Date that are not subject to a lien in favor of RRSB. The Plan Proponent estimates that Cash on Hand will consist of $385.00 on the Effective Date.

n.      "Causes of Action" means, any and all claims, choses in action, causes of action suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payments and claims, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether assertable directly or derivatively, in law, equity or otherwise, which are owned or held by, or have accrued to, the Debtor, whether arising before or after the Petition Date, including, without limitation, those which are: (i) against any party that has filed a Claim herein; (ii) property of any Estate under and pursuant to Section 541 of the Bankruptcy Code; (iii) for subrogation and contribution; (iv) for turnover; (v) for avoidable transfers and preferences under and pursuant to Sections 542 through 550 and 553 of the Bankruptcy Code and applicable state law; (vi) to determine the extent, validity and priority of

2

liens and encumbrances; (vii) for surcharge under Section 506(c) of the Bankruptcy Code; (viii) for subordination under Section 510 of the Bankruptcy Code; (ix) related to federal or state securities laws; (x) direct or derivative claims or causes of action of any type or kind; (xi) for professional malpractice against professionals employed by any Debtor; (xii) against any and all current and/or former officers and directors of any Debtor; (xiii) under and pursuant to any policies of insurance maintained by any Debtor; (xiv) for collection on accounts, accounts receivables, loans, notes receivables or other rights to payment; (xv) for the right to seek a determination by the Bankruptcy Court of any tax, fine or penalty relating to a tax, or any addition to a tax, under Section 505 of the Bankruptcy Code; (xvi) which arise under or as a result of any section of the Bankruptcy Code, including Section 362; and (xvii) or may be available to any Debtor against any third party(ies) under any legal or equitable theory, whether or not specifically identified or described herein.

o.    "Claim" has the meaning ascribed to it in Section 101(5) of the Bankruptcy Code.

p.    "Class" means a category of Holders of Claims or Equity Interests as set forth in Article III of the Plan.

q.    "Closing Date" shall have the meaning given to such term in the Sale Order.

r.    "Confirmation" shall mean the entry of an order of the Bankruptcy Court confirming the Plan in accordance with Section 1129 of the Bankruptcy Code

s.    "Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

t.    "Confirmation Order" means the order of the Bankruptcy Court confirming this Plan pursuant to Section 1129 of the Bankruptcy Code, as such order may be amended, modified or supplemented.

u.    "Creditor" has the meaning ascribed in Section 101(10) of the Bankruptcy Code and shall refer to any Holder of a Claim against any Debtor or Holder of any Claim against Property of Debtor as defined in Section 102(2) of the Bankruptcy Code.

v.    "Creditor Trust" has the meaning ascribed to it in in Article IV of the Plan.

w.    "Creditor Trust Agreement" means Plan Exhibit B, to be filed no later than December 31, 2025.

x.    "Creditor Trustee" means the trustee of the Creditor Trust, who shall be named in a plan supplement.

y.    "Disclosure Statement" means the Disclosure Statement with respect to this Plan, as may be amended.

z.    "Distribution" means each distribution of Cash to Holders of allowed Claims pursuant to and under the terms of this Plan.

aa.      "Effective Date" shall mean the first business day after the Sale has closed and Sale Proceeds are available for distribution under this Plan.

bb.      "Equity Interest" means any ownership interest or share in the Debtor (including, without limitation all rights to obtain such an interest or share in any Debtor).

cc.      "Estate" means the estate created in this case for the Debtor pursuant to Section 541 of the Bankruptcy Code.

dd.      "File, Filed or Filing" means file, filed or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Case.

ee.      "Final Order" means an order or judgment of the Bankruptcy Court which has not been reversed, stayed, modified or amended and: (i) as to which the time to appeal or seek reconsideration or rehearing thereof has expired; (ii) in the event of a motion for reconsideration or rehearing is filed, such motion shall have been denied by an order or judgment of the Bankruptcy Court; or (iii) in the event of an appeal is filed and pending, a stay pending appeal has not been entered; provided, however that with respect to an order or judgment of the Bankruptcy Court allowing or disallowing a Claim, such order or judgment shall have become final and non-appealable; and provided further, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or analogous rule under the Bankruptcy Rules, may be filed with respect to such order or judgment shall not cause such order or judgment not to be a Final Order.

ff.      "Holder" means a Person holding a Claim or any authorized agent who has completed, executed and delivered a Ballot in accordance with the applicable voting instructions.

gg.      "Insiders" shall have the meaning ascribed to such term in 11 USC § 101.

hh.      "Insider Settlement Payment" means $500,000, as set forth in Section 4.11 of the Plan.

ii.      "Lien" means any mortgage, lien, pledge, security interest or other charge or encumbrance or security device of any kind affecting any asset or any property of the Debtor contemplated by Section 101(37) of the Bankruptcy Code.

jj.      The "First Ruins Note" means that certain promissory note dated March 9, 2022 in the original principal amount of $7,740,000, executed and delivered to RRSB, with a maturity date of March 15, 2027. Interest accrues on the First Ruins Notes at a rate of 4.250% per annum.

kk.      The "Second Ruins Note" means that certain promissory note dated August 1, 2022 in the original principal amount of $2,750,000, executed and delivered to RRSB, with a maturity date of March 15, 2027. Interest accrues on the Second Ruins Notes at a rate of 4.600% per annum.

ll.      The "Third Ruins Note" means that certain promissory note dated February 17, 2023 in the original principal amount of $600,000, executed and delivered to RRSB, with a maturity date of December 30, 2023. Interest accrues on the Third Ruins Notes at a rate of 7.750% per annum.

mm.     "Person" has the meaning ascribed in Section 101(41) of the Bankruptcy Code.

nn.     "Petition Date" means January 6, 2025, the date on which the Debtor commenced this case by filing a petition for relief pursuant to Section 301 of the Bankruptcy Code.

oo.     "Plan Payment Commencement Date" shall mean the first business day of the first calendar month next succeeding the Effective Date.

pp.     "Priority Claim" means a Claim to the extent that it is of the kind described in, and entitled to priority under Sections 507(a)(3), (a)(4), (a)(5), (a)(6), (a)(7) or (a)(9) of the Bankruptcy Code, that is not a Priority Tax Claim.

qq.     "Priority" shall mean the priorities for the payment of Claims as set forth in 11 U.S.C. § 507.

rr.     "Priority Tax Claim" means a Claim of a governmental unit of the kind specified in Section 507(a)(8) of the Bankruptcy Code.

ss.     "Professional" means any professional employed or to be compensated pursuant to Sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code.

tt.     "Qualified Bid" shall have the meaning ascribed to such term in the Bid Procedures Order.

uu.     "Qualified Bidder" shall have the meaning ascribed to such term in the Bid Procedures Order.

vv.     "Real Estate" means that certain parcel of real property, and those various improvements thereupon, commonly known as 315 East Kemp Avenue, Watertown, South Dakota 57201.

ww.     "RRSB" means Red River State Bank.

xx.     "RRSB Claim" means the claim of RRSB set forth in Proof of Claim No. 1, evidenced by the First, Second and Third Ruins Notes, in the allowed amount of $11,658,331.25.

yy.     "RRSB Collateral" means the Real Estate  which is secured by certain recorded mortgages including a Construction Mortgage – One Hundred Eighty Day Redemption dated March 9, 2022 and recorded on March 10, 2022 at 9:57 a.m. in Book 990 on Page 8555 in the office of the Register of Deeds of Codington County, South Dakota and a Construction Mortgage – One Hundred Eighty Day Redemption dated August 1, 2022 and recorded on August 4, 2022 at 11:10 a.m. in Book 990 on Page 9258 in the office of the Register of Deeds of Codington County, South Dakota.

zz.     "RRSB Plan Contribution" means such amount, as may be needed, to pay Allowed Administrative Claims, including Professional Fees, Priority Tax Claims, and $50,000 to fund the Creditor Trust, which will be paid out of Sale Proceeds that would otherwise be distributed to RRSB on account of its Allowed Class 1 Claim.

aaa.     "RRSB Deficiency Claim" is defined in Section 3.2 of the Plan.

bbb.    "Sale" has the meaning ascribed to it in Article IV of the Plan.

ccc.    "Sale Order" is defined in Section 4.4 of the Plan.

ddd.    "Sale Proceeds" means proceeds of the sale of the RRSB Collateral.

eee.    "Schedules" means the Debtor's schedules of assets and liabilities and statement of financial affairs filed with the clerk of the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they have been or may be amended or supplemented from time to time in accordance with Bankruptcy Rule 1009.

fff.    "Secured Claim" means a Claim that is secured by a Lien on, or security interest in, property of any Debtor, or that has the benefit of rights of setoff under Section 553 of the Bankruptcy Code, but only to the extent of the value of the creditor's interest in the Debtor's interest in such property, which value shall be determined as provided in Section 506 of the Bankruptcy Code.

ggg.    "Stalking Horse Bidder" means a Qualified Bidder in the Sale with bid protections approved by the Bankruptcy Court

hhh.    "Subordination Agreements" means the agreements dated March 7, 2022 and August 22, 2022, respectively, between RRSB and WDC, pursuant to which WDC subordinated its lien position in the RRSB Collateral up to $10,490,000, plus interest.

iii.    "TIF" means Tax Increment Financing District No. 16, enacted by the City of Watertown pursuant to SDCL § 11-9-1 *et seq.*

jjj.    "TIF Agreements" means the TIF plus related agreements and assignments between and among the City of Watertown, The Ruins, LLC, Craig Holdings, LLC and WDC pursuant to which the City of Watertown agreed that a portion of future real estate taxes would be paid to Debtor, and Debtor's right to such payments was absolutely assigned to RRSB and WDC.

kkk.    "TIF Revenue" means the estimated sum of future payments under the TIF Agreements from present through December 31, 2042, which the Plan Proponent estimates will be $2,113,378.32[1],

lll.    "U.S. Trustee" shall mean the Office of the United States Trustee.

mmm.    "WDC" means Watertown Development Company.

nnn.    "WDC Claim" means the claim of the WDC set forth in Proof of Claim No. 7 filed on March 10, 2025, which shall be allowed under the Plan in the amount of $2,485,641.14.

---

[1] In enacting the TIF, the City of Watertown estimated the total amount of revenue available through the TIF for debt service to be $2,724,755.92. The original estimate was based on the assumption that construction would be complete in 2021. The revised estimate under the plan assumes construction will be completed in 2026.

ooo.    "WDC Collateral" means the TIF Revenue in excess of $580,000, which the Plan Proponent estimates will be $1,533,378.32.

ppp.    "WDC Deficiency Claim" means the amount of the WDC Claim minus the WDC Collateral, which the Plan Proponent estimates will be $952,262.82.

1.3    **Interpretation.**    For purposes of the Plan, (a) any reference herein to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (b) any reference herein to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented; (c) unless otherwise specified, all references herein to Articles, Sections, Schedules and Exhibits are references to Articles, Sections, Schedules and Exhibits of or to the Plan; (d) the words "herein" and "hereto" refer to the Plan in their entirety rather than to a particular portion of the Plan; (e) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; and (f) the rules of construction set forth in Section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

1.4    **Computation of Time.**    In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006 shall apply.

## ARTICLE II

### PROVISIONS FOR PAYMENT OF ALLOWED ADMINISTRATIVE EXPENSE CLAIMS, PRIORITY TAX CLAIMS AND STATUTORY FEES

2.1    **Administrative Expense Claims**.    Each Holder of an allowed Administrative Claim shall receive payment in full, in cash, on the Effective Date. Any Cash on Hand may be used to pay allowed Professional Fees on the Effective Date of the Plan. If Cash on Hand is not sufficient allowed Administrative Claims will be paid from the Insider Settlement Payment or the RRSB Plan Contribution, in that order

2.2    **Professionals.** On the Effective Date, Debtor's counsel shall be entitled to apply the balance of a $15,000 pre-petition retainer (the "Retainer") to payment of its allowed fees and expenses ("Professional Fees"). Plan Proponent estimates that Debtor's counsel will be owed an additional $45,000 for Professional Fees on the Effective Date. Any Cash on Hand may be used to pay allowed Professional Fees on the Effective Date of the Plan. If Cash on Hand is not sufficient to pay allowed compensation, the Insider Settlement Payment or the RRSB Plan Contribution, in that order, may be used to pay such claims.

To facilitate the orderly payment of Administrative Claims, all Administrative Claims must be asserted no later than the Administrative Claims Bar Date in order to be allowed and eligible for payment. Parties who fail to assert Administrative Claims in accordance with the Administrative Bar Date will be forever barred from receiving distributions under the Plan as

Administrative Claim Holders. Administrative Claims remain subject to approval of the Bankruptcy Court as a condition precedent to payment.

2.3     **Priority Tax Claims.**  Each Holder of an allowed Priority Tax Claim against the Debtor shall receive payment in full on the Effective Date, in full and final satisfaction of such claim.  Codington County shall have an allowed priority tax claim in the amount of $57,060.60, which will be paid on the Effective Date from the Insider Settlement Payment or the RRSB Plan Contribution, in that order.

2.4     **U.S. Trustee's Fees.**  The United States Trustee shall receive payment, on or before the Effective Date, of all fees owed under 28 U.S.C. § 1930(a)(6) on account of disbursements made by the Debtor from the Petition Date through the Effective Date. Any U.S. Trustee's fees owed subsequent to the Effective Date will be paid from the Debtor's operating revenue. The Cash on Hand shall be used to pay these fees.

2.5     **Full Satisfaction, Discharge and Release**.  The payments, distributions and other treatment afforded to Holders of allowed Administrative Claims against the Debtor under this Article II shall be in full and complete satisfaction, discharge and release of such allowed Claims.

## ARTICLE III

## CLASSIFICATION, IMPAIRMENT AND TREATMENT OF
## CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR

3.1     **Generally.**  All Claims and Equity Interests, except Administrative Expense Claims, are placed in Classes as set forth below.  A Claim or Equity Interest is placed in a particular Class only to the extent that such Claim or Equity Interest is an allowed Claim or Equity Interest in that Class and such Claim or Equity Interest has not been paid, released, or otherwise settled or paid prior to the Effective Date.

3.2     **Identification and Treatment of Classes.**  The following are the designations for, and treatment of, the Classes of Claims against—and Equity Interests in—the Debtor:

**Class 1 – Allowed Secured Claim of Red River State Bank.**     Class 1 consists of the allowed Secured Claim of RRSB.

By stipulation, RRSB's Claim has been allowed in the amount of $11,658,331.25. [ECF 103]

RRSB's Claim is secured by valid security interests in the RRSB Collateral. Pursuant to the Subordination Agreements, RRSB's Claim is secured by a valid, first-priority Lien in the RRSB Collateral of $10,490,000, plus interest. The value of the RRSB Collateral will be determined by the Sale. On account of its Lien, RRSB shall be entitled to receive Sale Proceeds up to $10,490,000.

Nothing in this Plan shall modify the validity, scope or priority of RRSB's Liens or its right to credit bid under Section 363(k). Moreover, nothing in this Plan shall modify the TIF, TIF Agreements or TIF Revenue.

The Plan does not provide for full payment of RRSB's Class 1 Claim. The RRSB Plan Contribution will divert Sale Proceeds that would otherwise have been used to pay Class 1 and/or 2 claims. The RRSB Plan Contribution will cause a dollar-for-dollar reduction in the Class 1 distribution under the Plan.

Class 1 is impaired by the Plan and entitled to vote.

**Class 2 – Allowed Secured Claim of Watertown Development Company.** Class 2 consists of the Allowed Secured Claim of WDC.

WDC's Claim shall be allowed in the amount of $2,485,641.14.

WDC's Claim is secured by a valid security interest in the RRSB Collateral. Pursuant to the Subordination Agreements, WDC has a first-priority security interest in the RRSB Collateral in excess of $10,490,000, plus interest. The value of the RRSB Collateral will be determined by the Sale. On account of its Lien, WDC shall be entitled to receive any Sale Proceeds in excess of $10,490,000, plus interest, up to $2,485,641.14. The Plan Proponent anticipates that the value of Sale Proceeds distributed to WDC under this Plan will be $0.

Nothing in this Plan shall modify the validity, scope of priority of WDC's Liens. Moreover, nothing in the Plan is intended to modify the TIF, the TIF Agreements, TIF Revenue or WDC's right to credit bid under Section 363(k).

The Plan does not provide for full payment of the WDC Claim. The RRSB Plan Contribution will divert funds from the Sale of the RRSB Collateral to pay certain Administrative Expenses and to fund a distribution to the Creditor Trust. The RRSB Plan Contribution will further subordinate WDC's right to payment from the Sale Proceeds, causing a dollar for dollar reduction in the Class 2 distribution under the Plan.

Class 2 is impaired by the Plan and entitled to vote.

**Class 3 – General Unsecured Creditors**. Class 3 consists of all Holders of allowed unsecured Claims.

Holders of Class 3 Claims will receive their pro rata share of the Insider Settlement Payment, after payment of allowed Administrative Claims and Priority Tax Claims.  If the Craig Insiders do not accept the settlement offered in Section 4.11 of the Plan, Holders of Class 3 Claims shall receive their pro rata share of all future distributions from the Creditor Trust.

Class 3 is impaired and entitled to vote, with the exception of Insiders, pursuant to 11 USC 1129(a)(10).

**Class 4 – Equity.** Class 4 consists of Holders of Equity Interests. All Equity Interests will be extinguished on the Effective Date. Class 4 is not entitled to receive a distribution under the Plan. Class 4 is comprised exclusively of Insiders. Pursuant to 11 USC 1129(a)(10), Class 4 is disregarded for the purpose of voting.

# ARTICLE IV

## MEANS OF IMPLEMENTING THE PLAN

**4**

**4.1     Retention of Broker**. The Plan Proponent will retain a Broker to market and sell the Real Estate for the highest and best offer, free and clear of liens, pursuant to 11 USC 363 (the "Sale"). The proposed terms of the Broker's engagement are set forth in **Plan Exhibit A**.

**4.2     Bid Procedures**. The Sale shall be conducted in accordance with Bid Procedures approved by the Bankruptcy Court. The Bid Procedures shall provide for, among other things: (a) qualification of bidders; (b) submission of binding bids by the Bid Deadline; (c) a minimum overbid increment of $100,000; (d) deposit requirements of $250,000; (e) authority to designate a Stalking Horse Bidder; and (f) authority to conduct an auction if the Plan Proponent receives more than one Qualified Bid.

**4.3     Auction**. If applicable, the Plan Proponent shall conduct an Auction in accordance with the Bid Procedures. Only Qualified Bidders may participate. The Plan Proponent, in consultation with the Broker, shall determine the highest or otherwise best bid.

**4.4     Sale Hearing and Approval**. Following the Auction, the Plan Proponent shall seek entry of an order approving the Sale (the "Sale Order") pursuant to sections 105, 363, and 365. The Sale Order shall, among other things: (a) approve the terms of a purchase agreement with the prevailing bidder; (b) authorize the Sale free and clear under section 363(f), with liens attaching to Sale Proceeds; and (c) approve any bid protections for a Stalking Horse Bidder, if any.

**4.5     Free and Clear Sale**. The Real Estate shall be transferred to the prevailing bidder free and clear of all liens, claims, interests, and encumbrances to the maximum extent permitted by section 363(f), with such interests attaching to the Sale Proceeds with the same validity, priority, and extent as existed prepetition, subject to subsequent determination and distributions under the Plan.

**4.6     Good-Faith Purchaser**. The prevailing bidder shall be deemed a good-faith purchaser under section 363(m). The Sale Order shall include findings necessary to afford the protections of section 363(m).

**4.7     Credit Bidding**. Any Holder of an Allowed Secured Claim may credit bid at the Auction in accordance with section 363(k), subject to any limitations set forth in the Bid Procedures Order.

**4.8     Creditor Trust.** A trust shall be formed on the Effective Date for the benefit of creditors (the "Creditor Trust") pursuant to the trust agreement, a draft of which is attached hereto as **Plan Exhibit B.** Debtor's records confirm the existence of potentially avoidable transfers, including transfers to Insiders in excess of $4 million. [ECF 137 and 177]. On the Effective Date, all Causes of Action shall be assigned to the Creditor Trust. Creditor Trustee shall investigate, litigate and/or settle Causes of Action for the benefit of all Holders of Class 3 Claims. The RRSB

Plan Contribution will provide no less than $50,000 to fund the Creditor Trust. If the Insider Settlement Payment is received, the Creditor Trust shall be terminated and the remainder of the RRSB Plan Contribution shall be distributed ratably to Holders of Class 3 Claims.

**4.9     Claim Objection, Debt Recharacterization, and Equitable Subordination of Insider Claims**. On the Effective Date, any proof(s) of claim filed by Insiders seeking allowance of claims against The Ruins, LLC shall be equitably subordinated to all other holders of Class 3 Claims pursuant to 11 USC § 510, due to the Insiders' prepetition misconduct.

**4.10     RRSB Settlement**. In exchange for the RRSB Plan Contribution, all claims against RRSB related to The Ruins, LLC, or the First, Second or Third Ruins Notes in the Adversary Proceeding that were raised or could have been raised and all claims against RRSB and any of its employees, officers, directors, and representatives that were raised or could have been raised in the Foreclosure Proceeding (*RRSB v. The Ruins, LLC et. al.*, Codington County Circuit Court, South Dakota, Case No. CV-24-000068) shall be dismissed with prejudice. In further consideration thereof, RRSB will dismiss the Foreclosure Proceeding with respect to the Debtor on or before the Effective Date.

**4.11     Insider Settlement**. Mr. Jesse Craig has testified and/or bank records confirm potentially fraudulent transfers were made to him or other Insiders, in excess of $4 million. [ECF 177] Pursuant to Rule 9019, Mr. Craig and other Insiders owned by or related to Mr. Craig (collectively, the "Craig Insiders") may settle their potential liability for such transfers for a one time payment of $500,000 on or before the Effective Date of the Plan (the "Insider Settlement Payment"). As a condition of settlement, the Craig Insiders must also waive their 502(h) claims, if any, against the estate and subordinate their rights to a plan distribution on account of their Class 3 Claims to all other Holders of Class 3 Claims. If the Insider Settlement Payment is not remitted on or before the Effective Date, the Creditor Trust will retain all rights to prosecute all Causes of Action against the Craig Insiders.

**4.12     Leases and Executory Contracts**. Any executory contracts with Insiders will be deemed rejected as of the Effective Date.

<div align="center">

**ARTICLE V**

**PROVISIONS GOVERNING DISTRIBUTIONS**

</div>

**5.1     Delivery of Distributions**.  Distributions and deliveries to Holders of allowed Claims shall be made at the addresses set forth on the proofs of claim filed by such Holders (or at the last known addresses of such Holders if no proof of claim is filed).

**5.2     No Interest Unless Otherwise Provided**.  No interest shall be paid on any Claim unless, and only to the extent permitted, under the terms of the Plan.

**5.3     Undistributed Property**. If any Distribution remains unclaimed for a period of 90 days after it has been delivered (or attempted to be delivered) in accordance with the Plan to the Holder entitled thereto, such Unclaimed Property shall be forfeited by such Holder.  Unclaimed

Property shall be used to satisfy unpaid Administrative Expenses, if any, or donated to  Legal Services of North Dakota.

## ARTICLE VI

## <u>CONDITIONS PRECEDENT TO EFFECTIVENESS OF PLAN</u>

**6.1    Conditions to Effectiveness of Plan.**  The Effective Date of the Plan shall not occur unless and until the following conditions shall have been satisfied or waived by the Plan Proponent: (a) the Bankruptcy Court shall have entered the Confirmation Order in form and substance acceptable to the Plan Proponent, and such Confirmation Order shall be a Final Order; and (b) the Bankruptcy Court shall have approved the information contained in the Disclosure Statement as adequate pursuant to Section 1125 of the Bankruptcy Code.

**6.2    Notice of Confirmation of the Plan.**  Notice of entry of the Confirmation Order shall be provided as required by Bankruptcy Rule 3020(c)(2).

## ARTICLE VII

## <u>RETENTION OF JURISDICTION</u>

**7.1    Retention of Jurisdiction.**  Pursuant to Sections 1334 and 157 of Title 28 of the United States Code, the Bankruptcy Court shall retain jurisdiction of all matters arising in, arising under, and related to the chapter 11 case of the Debtor and the Plan, for the purposes of Sections 105(a) and 1142 of the Bankruptcy Code, and for, among other things, the following purposes:

(a)    to hear and determine any and all adversary proceedings, applications, or contested matters, including avoidance actions, and any remands from any appeals;

(b)    to hear and to determine all controversies, disputes, and suits which may arise in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan;

(c)    to consider any modification of the Plan pursuant to section 1127 of the Bankruptcy Code, to cure any defect or omission or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(d)    to enter, enforce and implement such orders (including orders entered prior to the Confirmation Date) as may be necessary or appropriate to execute, interpret, implement, consummate or enforce the terms and conditions of the Plan and the transactions contemplated hereunder;

(e)    to enter and to implement such orders (including orders entered prior to the Confirmation Date) as may be necessary or appropriate to execute, interpret, implement or enforce the terms and conditions of the Plan;

(f)      to hear and to determine any other matter not inconsistent with the Bankruptcy Code and title 28 of the United States Code that may arise in connection with or related to the Plan; and

(g)      to enter a final decree closing this Chapter 11 case.

**7.2      Abstention and Other Courts.**  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of or relating to the Chapter 11 Case, this section of the Plan shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE VIII

## <u>RELEASE FOR PLAN PROPONENT AND PROFESSIONALS</u>

**8.1      Limitation of Liability in Connection with the Case, the Plan, and Related Documents.**  Pursuant to § 1125(e) of the Bankruptcy Code; the Plan Proponent and the Creditor Trustee, and their Professionals, representatives, successors, and assigns (collectively, the "<u>Plan Participants</u>") will neither have nor incur any liability to any Person for any act taken or omitted to be taken in connection with or related to the Case, including, but not limited to, the formulation, preparation, dissemination, negotiation, implementation, confirmation or consummation of the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release or other agreement, pleading or document created or entered into, the pursuit, non-pursuit or settlement of Causes of Action or any other act taken or omitted to be taken in connection with or for the purpose of carrying out the Plan, the Disclosure Statement, the Confirmation Order or related agreement, including solicitation of acceptances of the Plan ("<u>Exculpated Conduct</u>"); provided, however, that no Person shall be relieved of liability for fraud, gross negligence, and intentional misconduct.

All Persons are permanently enjoined from commencing, or continuing in any manner, any action or proceeding against any of the Plan Participants, whether directly, derivatively, on account of or respecting any Claim, debt, right, or cause of action based in whole or in part upon any Exculpated Conduct.

## ARTICLE IX

## <u>MISCELLANEOUS PROVISIONS</u>

**9.1      Severability.**  Should the Bankruptcy Court determine that any provision of the Plan is unenforceable either on its face or as applied to any Claim or Equity Interest or transaction, the Plan Proponents may modify the Plan in accordance with the Plan, as applicable, so that such provision shall not be applicable to the Holder of any Claim or Equity Interest.

**9.2      Binding Effect.**  Upon the entry of the Confirmation Order, all provisions of the Plan shall be binding upon, and shall inure to the benefit of, the Debtor, the Holders of Claims and Equity Interests, and such Persons' respective successors and assigns.

**9.3      Transfer Tax Exemption.**  Pursuant to § 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of any notes or securities under the Plan, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, any deeds, deeds of trust, mortgages, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan, including the sale of the Real Estate provided for under this Plan, shall not be subject to any stamp tax or other similar tax, including, but not limited to, transfer and recordation tax on the sale of the Real Estate.

**9.4      Governing Law.**  Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, or a specific choice of law provision is provided, the laws of North Dakota shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, without regard to conflicts of law.

**9.5      Timing of Distributions.**  Any Distribution required to be made hereunder on a day other than a Business Day shall be due and payable on the next succeeding Business Day.

**9.6      Revocation or Withdrawal of Plan.**  The Plan Proponent reserves the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order. If the Plan is withdrawn or revoked, then the result shall be the same as if the Confirmation Order had not been entered and the Effective Date had not occurred.  If the Plan is revoked or withdrawn prior to the entry of the Confirmation Order, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the such entity or any Person in any further proceedings involving such entity.

**9.7      Nonmaterial Modifications.**  The Plan Proponent may, with the approval of the Bankruptcy Court and without notice to Holders of Claims and Equity Interests, correct any nonmaterial defect, omission, or inconsistency herein in such manner and to such extent as may be necessary or desirable.

**9.8      Material Modifications.**  Modifications of the Plan may be proposed in writing by the Plan Proponents at any time prior to Confirmation, provided that the Plan, as modified, meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code, and the Plan Proponents shall have complied with Section 1125 of the Bankruptcy Code. The Plan may be modified at any time after Confirmation and before substantial consummation, provided that the Plan, as modified, meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as modified, under Section 1129 of the Bankruptcy Code, and the circumstances warrant such modification.

**9.9      Cramdown.**  This section shall constitute the Plan Proponent's request, if necessary, pursuant to Section 1129(b)(1) of the Bankruptcy Code, that the Bankruptcy Court confirm the Plan notwithstanding the fact that the requirements of Section 1129(a)(8) of the Bankruptcy Code may not be met.

**9.10 No Recourse.** No Person entitled to receive a payment or Distribution under the Plan will have any recourse against the Estate, the Plan Proponent or its professionals, or the Debtor, other than the right to receive Distributions in accordance with the terms of the Plan.

**9.11 Notices.** Any notice required or permitted to be provided hereunder shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) prepaid overnight delivery service and addressed as follows:

Kesha L. Tanabe
Vogel Law Firm
218 N.P. Ave.
Fargo, ND 58102
*Counsel for the Plan Proponent*

**9.12 Default.** A default under this Plan shall be deemed to occur if (i) the Debtor fails to perform any obligation(s) hereunder; (ii) written notice of such failure is delivered to the Plan Proponent by email to ktanabe@vogellaw.com; and (iii) said failure remains, uncured, for a period of fourteen (14) days following the giving of such notice. Upon such a default, any impacted party—alongside the U.S. Trustee—shall have all remedies available under the Bankruptcy Code as well as all remedies available under applicable nonbankruptcy law.

**9.13 Remedies Upon Default.** Upon the occurrence of a default, the case shall be converted to a Chapter 7 liquidation.

**9.14 Saturday, Sunday, or Legal Holiday.** If any payment or act under the Plan should be required to be made or performed on a day that is not a Business Day, then the payment or act may be completed on the next succeeding day that is a Business Day, in which event the payment or act will be deemed to have been completed on the required day.

**9.15 Successors and Assigns.** The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such Person.

**9.16 Entry of a Final Decree**. The Plan Proponent may file a motion with the Bankruptcy Court to obtain the entry of a final decree upon completion of Plan payments or on such other time as the Debtor determines appropriate.

[*The rest of this page is intentionally omitted.*]

December 8, 2025                     **VOGEL LAW FIRM**

BY: _/s/ Kesha L. Tanabe_____
    Caren W. Stanley (#06100)
    cstanley@vogellaw.com
    Kesha L. Tanabe
    ktanabe@vogellaw.com
    Drew J. Hushka (#08230)
    dhushka@vogellaw.com
    218 NP Avenue
    PO Box 1389
    Fargo, ND 58107-1389
    Telephone: (701) 237-6983
    Fax: (701) 476-7676

    *COUNSEL TO PLAN PROPONENT*

4929-8586-4058 v.7

16

## PLAN EXHIBIT A

**(Broker Agreement)**



dir:   847.714.1288
fax:   847.714.1289
www.hilcorealestate.com

5 Revere Drive, Suite 410
Northbrook, IL 60062

December 3, 2025

Vogel Law Firm
Attn: Kesha Tenabe, Attorney
218 Northern Pacific Avenue
Fargo, ND 58107

**RE: The Ruins, LLC**

Ms. Tenabe,

Hilco proposes taking a unique and aggressive approach to marketing and selling the properties scheduled in the ***In re The Ruins, LLC*** (25-30004) bankruptcy. (the "**Property**"). Our recommended sale strategy, structure, fees, and timeline are detailed below.  We will be casting an extremely wide net, going beyond just the local market for the property, while also utilizing our proprietary database of 30,000+ buyers nationwide.  Unlike a traditional brokerage firm only focused on real estate, with numerous business units ranging from Corporate Finance to Private Equity to Industrial Equipment, Hilco garners significant interest from buyers/investors across many different asset types and throughout various international geographies, many with real estate needs.  This expanded universe of buyers/investors and increased exposure results in more competition and higher prices.  As the Master Real Estate Broker here, we are confident in our ability to clear the market to reach the best buyers for this property and to attain the highest price that the current market will bear.

We appreciate the opportunity to submit this proposal to serve as the "**Master Real Estate Broker**" on behalf of The Ruins, LLC, its affiliated entities, (the "Client's"), the bankruptcy professionals, and counsel on behalf of the estate.

While we believe we have the strength and capabilities to sell these assets on our own, due to the abbreviated timeline, we believe HRE is best served in a role to manage this sales process, cradle to the grave, overseeing the local conventional brokers/teams.

We believe that a single brokerage team with decades of experience within difficult situations and bankruptcy are mission critical to maximizing the value of the bankruptcy estate. We view HRE's involvement as the best of both worlds, leveraging our marketing and distribution channels in conjunction with local partners to uncover all buyers, local, regionally, and nationally as well.

We view that a single point of contact between the bankruptcy professionals and the teams of brokers **will provide not only transparency but clearly defined rules, processes, and timeline for this transaction**.  HRE will streamline communications, reporting requirements, and clearly define to the hired brokers' expectations and deliverables. The chain of command we envision would be, the brokers report to and take direction from us and we report to and take direction from you. Lastly, we believe the structured bid process that we specialize in, will ensure maximum interest from qualified buyers, which in turn will lead to maximum proceeds for the bankruptcy estate.

Below is our recommended strategy and structure for this sale:

A Hilco Global Company
Vested in Your Success

Page 2 - the property scheduled in the *In re: The Kiins, LLC* (25-30004) bankruptcy. (the "**Property**").

<u>SALE STRATEGY</u>
For the subject sale, Hilco recommends a **Managed Qualifying Bid Program** (Qualifying Bid + Final Round Competitive Bid). Bid Procedures and Terms of Sale would be reviewed and approved prior to launching the sales process.

1. Qualifying Bids would be due by a set deadline after heavily marketing the property. The client would then select a shortlist of qualified bidders to advance.
2. Qualified Bidders are invited to perform additional due diligence and inspect the property again (if they choose).
3. Winning bidder is determined with a runoff auction or a call for best and final offers.

This sales strategy allows us to flush out the market of potential buyers and put them in a competitive bidding environment to maximize the sales price for the property.

<u>SALE STRUCTURE</u>
**A Reserve Sale subject to bankruptcy court approval,** all final sales will be presented to the court for approval.

<u>COMMISSION</u>
In the event the Property is sold, Hilco shall earn a fee/commission equal to five percent (5%) of the Gross Sale Proceeds. Hilco and Co-Broker will split the fee three and one half percent (3.5%) to Hilco and one and one half percent (1.5%) to the Co-Broker. In the event of a credit bid, Hilco shall earn a flat work fee of $75,000, plus the reimbursement of out of pocket marketing expenses outline provided below.

<u>TIMELINE</u>
The following is an estimated timeline for the sales process. This outline is predicated on running a managed qualifying bid process with a defined series of marketing tools and is representative of what we believe is warranted based on our knowledge of the situation. However, this timeline can be modified or amended as circumstances, facts and real-time feedback may dictate.

**Phase I – Preliminary (Day 1 to 15)**

- Review, revise and execution of listing agreement and employment documents, collection of due diligence and preparation of marketing material.

**Phase II – Marketing (Day 16 to 60)**

- Market and advertise the property to local, regional and national buyers to generate as much interest as possible. Provide property information to interested buyers and conduct multiple property tours.

**Phase III – Qualifying Bids Due & Reviewed (Day 61 to 67)**

- Qualifying bids are due.
- To be a qualified bid, the bid must be submitted on the pre-approved contract with earnest money.
- Bids are reviewed with Client and other parties of interest.
- The best qualifying bids are invited to participate in a runoff auction – although if one offer is significantly better than the others, we have the flexibility to work directly with that buyer and forgo a runoff auction.


A Hilco Global Company
Vested in Your Success

Page 3 – the property scheduled in the *In re: The Ruins, LLC* (25-30004) bankruptcy. (the "**Property**").

**Phase IV - Runoff Auction, Contracts Signed, Earnest Mo`ney Deposited and Closing (Day 70 to 100)**

- Qualifying bids are invited to participate in a runoff auction where the bidding will start at the highest qualifying offer received. All bidders will be notified of this starting bid.
- The winning bidder will be determined upon the conclusion of the auction.
- After the conclusion of the auction, the winning bidder will sign a revised contract with the new price.
- Buyers are required to increase their earnest money deposit to 10% of the purchase price within three days of Debtor's acceptance.
- Transactions will close within 30-days after the auction.

**TOTAL PROGRAM TIME (start to closing): 90 to 120 days**

<u>**MARKETING BUDGET**</u>
This budget is meant to be a general outline of where the marketing funds will be spent, Hilco can advance the marketing funds subject to being reimbursed from sales proceeds.

<u>**CATEGORY**</u>
**MEDIA**

| | |
|---|---|
| Display Advertising | $12,500 |
| Internet Advertising | $12,500 |

**OTHER MARKETING MATERIAL**

| | |
|---|---|
| Sales Brochure | $3,000 |
| Photography | $2,500 |

**IT SETUP**

| | |
|---|---|
| Web Page Setup & Administration | $1,000 |

**PUBLIC RELATIONS**

| | |
|---|---|
| Public Relations Distribution Fee | $500 |

**ADMINISTRATION**

| | |
|---|---|
| Misc. Setup and Maintenance | <u>$500</u> |

**TOTAL**                                              <u>**$32,500**</u>

*Hilco reserves the right in its reasonable discretion to modify and reallocate monies under the marketing plan in accordance with its best judgment during the term of their engagement.*

The above details are our general outline of the sales structure, strategy, timeline, and marketing that we feel would be ideal for this property. Upon further discussions, we are open to alternatives or modifications to these recommendations.  We look forward to working with you on this project.


Sincerely,


Jonathan Cuticelli          Jeff Azuse
Director                    Executive Director


A Hilco Global Company
Vested in Your Success

## PLAN EXHIBIT B

**(Creditor Trust Agreement)**

# Liquidation Trust Agreement

This Liquidation Trust Agreement ("**Agreement**" or "**Liquidation Trust Agreement**") is made this [DATE] day of [MONTH], by and between [DEBTOR], [on behalf of itself and certain of its affiliates, each] a debtor and debtor-in-possession ([collectively, ]the "**Debtor[s]**") in the [jointly administered] Chapter 11 case[s] (the "**Cases**") pending in the United States Bankruptcy Court for the District of North Dakota (the "**Bankruptcy Court**") under Case Number [XX-XXXXX] and [NAME OF TRUSTEE] (the "**Liquidation Trustee**"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan (as hereinafter defined).

WHEREAS, on January 6, 2025, the Debtor[s each] filed voluntary petition[s] under Chapter 11 of the Bankruptcy Code;

WHEREAS, on [DATE], the Debtor[s] filed a plan of liquidation pursuant to Chapter 11 of the Bankruptcy Code (as amended or modified from time to time, the "**Plan**");

WHEREAS, on [DATE], the Bankruptcy Court entered an order confirming the Plan (the "**Confirmation Order**");

WHEREAS, the Plan and the Confirmation Order provide for the establishment of this Agreement and the appointment of the Liquidation Trustee to administer the Liquidation Trust for the benefit of holders of Allowed claims in Class[es] [NUMBER[S]] ("**Allowed Claims**") under the Plan, and to provide administrative services relating to the Plan's implementation;

WHEREAS, the Liquidation Trust is established pursuant to the Plan and this Agreement as a liquidating trust in accordance with Treasury Regulation section 301.7701-4(d) for the sole purpose of liquidating the Liquidation Trust Assets, with no objective to continue or engage in the conduct of a trade or business except, to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidation Trust and the Plan;

WHEREAS, The Liquidation Trust is established for the benefit of the holders Allowed Claims that are entitled to receive Distributions from the Liquidation Trust under the Plan (each a "**Beneficiary**" and collectively, "**Beneficiaries**"); and

WHEREAS, the Liquidation Trust is intended to qualify as a "grantor trust" for US federal income tax purposes pursuant to sections 671-677 of the Internal Revenue Code, with the Liquidation Trust beneficiaries treated as the grantors and owners of the Liquidation Trust.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein and in the Plan, the Debtor[s], [the Secured Lender], and the Liquidation Trustee agree that the Trust shall be comprised, held, and disposed of as follows:

## Declaration of Trust

The Debtor[s], [the Secured Lender], and the Liquidation Trustee enter into this Agreement to effectuate the Distribution of the Liquidation Trust Assets to the holders of Allowed Claims pursuant to the Plan and the Confirmation Order;

Pursuant to section [X.X] of the Plan, paragraphs [X, X, X] of the Confirmation Order, and Section 2.03 of this Agreement, all right, title, and interest in, under, and to the Liquidation Trust Assets shall be absolutely and irrevocably assigned to the Trust and to its successors in trust and its successors and assigns;

TO HAVE AND TO HOLD unto the Liquidation Trustee and its successors in trust; and

IT IS HEREBY FURTHER COVENANTED AND DECLARED, that the Liquidation Trust Assets and all other property held from time to time by the Trust under this Agreement and any proceeds thereof and earnings thereon (collectively, "**Trust Assets**") are to be held by the Trust and applied on behalf of the Trust by the Liquidation Trustee on the terms and conditions set forth herein and in the Plan, solely for the benefit of the holders of Allowed Claims and for no other party.

## ARTICLE I
### Recitals, Definitions, and Interpretations

**Section 1.01   Recitals**. The Recitals are incorporated into and made terms of this Agreement.

**Section 1.02   Plan Definitions**. All terms used in this Agreement but not defined herein shall have the same meanings set forth in the Plan.

**Section 1.03   Interpretation, Headings**. All references herein to specific provisions of the Plan or Confirmation Order are without exclusion or limitation of other applicable provisions of the Plan or Confirmation Order. Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender. The headings in this Agreement are for convenience of reference only and shall not limit or otherwise affect the provisions of this Agreement.

**Section 1.04   Conflict Among Documents**. In the event of any inconsistency between the Plan or Confirmation Order, as applicable, on the one hand, and this Agreement, on the other hand, the Plan or Confirmation Order, as applicable, shall control and take precedence.

## ARTICLE II
### Establishment of Trust

**Section 2.01   Effectiveness of Agreement; Name of Trust.** This Agreement shall become effective on the Plan Effective Date. The Trust shall be officially known as the **"[DEBTOR NAME] Liquidation Trust"**.

**Section 2.02   Purpose of Trust.** The Debtor[s] and the Liquidation Trustee, pursuant to the Plan and in accordance with Bankruptcy Code, hereby create the Trust for the primary purpose of collecting, holding, administering, distributing, and liquidating the Trust Assets for the benefit of the holders of Claims in accordance with the terms and conditions of this Agreement and the Plan, and with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Trust.

2

**Section 2.03   Transfer of Trust Assets.**

(a)   <u>Conveyance of Liquidation Trust Assets</u>. The Debtor[s] hereby grant[s], release[s], assign[s], transfer[s], convey[s], and deliver[s], on behalf of the holders of Claims, the Trust Assets to the Trust as of the Effective Date in trust for the benefit of such holders to be administered and applied as specified in this Agreement and the Plan. The Liquidation Trustee shall have no duty to arrange for any of the transfers contemplated under this Agreement or by the Plan or to ensure their compliance with the terms of the Plan and the Confirmation Order and shall be conclusively entitled to rely on the legality and validity of such transfers.

(b)   <u>Title to Trust Assets</u>. Pursuant to the Plan, all of the Debtor['s'] right, title, and interest in and to the Trust Assets, including all such assets held or controlled by third parties, are automatically vested in the Trust on the Effective Date, free and clear of all liens, claims, encumbrances, and other interests, except as specifically provided in the Plan, and such transfer is on behalf of the holders of Claims to establish the Trust. The Trust shall be authorized to obtain possession or control of, liquidate, and collect all of the Trust Assets in the possession or control of third parties and pursue all of the Causes of Action. On the Effective Date, the Trust shall stand in the shoes of the Debtor[s] for all purposes with respect to the Trust Assets and administration of the Claims. To the extent any law or regulation prohibits the transfer of ownership of any of the Trust Assets from the Debtor[s] to the Trust and such law is not superseded by the Bankruptcy Code, the Trust's interest shall be a lien upon and security interest in such Trust Assets, in trust, nevertheless, for the sole use and purposes set forth in Section 2.02, and this Agreement shall be deemed a security agreement granting such interest thereon without need to file financing statements or mortgages. By executing this Agreement, the Liquidation Trustee on behalf of the Trust hereby accepts all of such property as Trust Assets, to be held in trust for the holders of Claims, subject to the terms of this Agreement and the Plan.

(c)   <u>Capacity of Trust</u>. Notwithstanding any state or federal law to the contrary or anything herein, the Trust itself shall have the capacity, in its own right and name, to act or refrain from acting, including the capacity to sue and be sued and to enter into contracts. The Trust may alone be the named movant, respondent, party plaintiff or defendant, or the like in all adversary proceedings, contested matters, and other state or federal proceedings brought by or against it, and may settle and compromise all such matters in its own name.

(d)   <u>No Retention of Excess Cash</u>. Notwithstanding anything in this Agreement to the contrary, under no circumstances shall the Trust or Trustee retain cash or cash equivalents in excess of a reasonable amount to meet claims, expenses, and contingent liabilities or to maintain the value of the Trust Assets during liquidation other than reserves established pursuant to Section 4.01(b) of this Agreement, and, subject to Article VIII of this Agreement, shall distribute all amounts not required to be retained for such purposes to the holders of Allowed Claims as promptly as reasonably practicable in accordance with the Plan and this Agreement.

3

(e)   <u>Acceptance by Trustee</u>. The Liquidation Trustee accepts its appointment as Liquidation Trustee of the Trust.

## ARTICLE III
## Trust Administration

**Section 3.01   Rights, Powers, and Privileges of Trustee Generally**. Except as otherwise provided in this Agreement, the Plan, or the Confirmation Order, as of the date that the Trust Assets are transferred to the Trust the Liquidation Trustee on behalf of the Trust may control and exercise authority over the Trust Assets, over the acquisition, management, and disposition thereof, and over the management and conduct of the affairs of the Trust. In administering the Trust Assets, the Liquidation Trustee shall endeavor not to unduly prolong the Trust's duration, with due regard that undue haste in the administration of the Trust Assets may fail to maximize value for the benefit of the holders of Allowed Claims and otherwise be imprudent and not in the best interests of such holders.

**Section 3.02   Power to Contract**. In furtherance of the purpose of the Trust, and except as otherwise specifically restricted in the Plan, Confirmation Order, or this Agreement, the Liquidation Trustee shall have the right and power on behalf of the Trust, and also may cause the Trust, to enter into any covenants or agreements binding the Trust, and to execute, acknowledge, and deliver any and all instruments that are necessary or deemed by the Liquidation Trustee to be consistent with and advisable in furthering the purpose of the Trust.

**Section 3.03   Ultimate Right to Act Based on Advice of Counsel or Other Professionals**. Nothing in this Agreement shall be deemed to prevent the Liquidation Trustee from taking or refraining to take any action on behalf of the Trust that, based upon the advice of counsel or other professionals, the Liquidation Trustee determines it is obligated to take or to refrain from taking in the performance of any duty that the Liquidation Trustee may owe the holders of Claims or any other Person under the Plan, Confirmation Order, or this Agreement.

**Section 3.04   Powers of Trustee**. Without limiting the generality of the above Section 3.01, in addition to the powers granted in the Plan, the Liquidation Trustee shall have the power to take the following actions on behalf of the Trust and any powers reasonably incidental thereto that the Liquidation Trustee, in its reasonable discretion, deems necessary or appropriate to fulfill the purpose of the Trust, unless otherwise specifically limited or restricted by the Plan or this Agreement:

(a)   Hold legal title to the Trust Assets and to any and all rights of the Debtor[s] and the holders of Claims in or arising from the Trust Assets.

(b)   Manage, invest, supervise, protect, and where appropriate, cause the Trust to abandon the Trust Assets, including causing the Trust to invest any moneys held as Trust Assets in accordance with the terms of Section 3.08 hereof.

(c)   Open and maintain bank accounts on behalf of or in the name of the Trust.

4

(d)     Cause the Trust to enter into any agreement or execute any document or instrument required by or consistent with the Plan, the Confirmation Order or this Agreement, and to perform all obligations thereunder.

(e)     Subject to Article VIII of this Agreement, collect and liquidate all Trust Assets, including the sale of any Trust Assets.

(f)     Protect and enforce the rights to the Trust Assets (including any Causes of Action) vested in the Trust and Trustee by this Agreement and the Plan by any method deemed appropriate, including, without limitation, by judicial proceedings or otherwise.

(g)     Investigate any Trust Assets, including potential Causes of Action, and any objections to Claims, and cause the Trust to seek the examination of any Person pursuant to Federal Rule of Bankruptcy Procedure.

(h)     Cause the Trust to employ and pay professionals, claims agents, disbursing agents, and other agents and third parties pursuant to this Agreement.

(i)     Cause the Trust to pay all of its lawful expenses, debts, charges, taxes, and other liabilities, and make all other payments relating to the Trust Assets.

(j)     Subject to Article VIII of this Agreement, cause the Trust to pursue, commence, prosecute, compromise, settle, dismiss, release, waive, withdraw, abandon, or resolve all Causes of Action.

(k)     Subject to Article VIII of this Agreement, calculate and make all Distributions on behalf of the Trust to the holders of Allowed Claims provided for in, or contemplated by, the Plan and this Agreement.

(l)     Establish, adjust, and maintain reserves for Disputed Claims required to be administered by the Trust.

(m)     Cause the Trust to withhold from the amount distributable to any Person the maximum amount needed to pay any tax or other charge that the Liquidation Trustee has determined, based upon the advice of its agents and/or professionals, may be required to be withheld from such Distribution under the income tax or other laws of the United States or of any state or political subdivision thereof.

(n)     In reliance initially solely upon the Debtor['s'] schedules and the official claims register maintained in the Debtor['s'] Chapter 11 Case[s], review, and where appropriate, cause the Trust to allow or object to Claims and Interests; and, subject to Article VIII of this Agreement, supervise and administer the Trust's commencement, prosecution, settlement, compromise, withdrawal, or resolution of all objections to Disputed Claims required to be administered by the Trust.

(o)     In reliance upon the Debtor['s'] schedules and the official Claims register maintained in the Chapter 11 Case[s], maintain a register evidencing the beneficial interest herein held by each Beneficiary and, in accordance with section [3.09] of this

5

Agreement, such register may be the official Claims register maintained in the Chapter 11 Case[s].

(p)     Cause the Trust to make all tax withholdings, file tax information returns, file and prosecute tax refund claims, make tax elections by and on behalf of the Trust, and file tax returns for the Trust as a grantor trust under IRC section 671 and Treasury Income Tax Regulation section 1.671-4 pursuant to and in accordance with the Plan and Article VII hereof, and pay taxes, if any, payable for and on behalf of the Trust; provided, however, that notwithstanding any other provision of this Agreement, the Liquidation Trustee shall have no personal responsibility for the signing or accuracy of the Debtor['s'] income tax returns that are due to be filed after the Effective Date or for any tax liability related thereto.

(q)     Cause the Trust to abandon or donate any Trust Assets that the Liquidation Trustee determines to be too impractical to distribute to Beneficiaries or of inconsequential value to the Trust and Beneficiaries to Legal Services of North Dakota.

(r)     Cause the Trust to send annually to Beneficiaries, in accordance with the tax laws, a separate statement stating a Beneficiary's interest in the Trust and its share of the Trust's income, gain, loss, deduction or credit, and to instruct all such Beneficiaries to report such items on their federal tax returns;

(s)     Cause the Trust to seek a determination of tax liability or refund under section 505 of the Bankruptcy Code.

(t)     Cause the Trust to establish such reserves for taxes, assessments, and other expenses of administration of the Trust as may be necessary and appropriate for the proper operation of matters incident to the Trust.

(u)     Cause the Trust to purchase and carry all insurance policies that the Liquidation Trustee deems reasonably necessary or advisable and to pay all associated insurance premiums and costs out of the Trust Assets.

(v)     Subject to Article VIII of this Agreement, if the Liquidation Trustee has a conflict or if any of the Trust Assets are situated in any state or other jurisdiction in which the Liquidation Trustee is not qualified to act as trustee, nominate, and appoint a Person duly qualified to act as trustee in such state or jurisdiction in accordance with the terms of this Agreement.

(w)     Undertake all administrative functions of the Trust, including overseeing the winding down and termination of the Trust.

(x)     Undertake all administrative functions remaining in the Chapter 11 Case[s], including reporting and making any required payments of fees to the US Trustee and overseeing the closing of the Chapter 11 Case[s].

(y)    Exercise, implement, enforce, and discharge all of the terms, conditions, powers, duties, and other provisions of the Plan, the Confirmation Order, and this Agreement.

(z)    Take all other actions consistent with the provisions of the Plan that the Liquidation Trustee deems reasonably necessary or desirable to administer the Trust.

**Section 3.05    Exclusive Authority to Pursue Causes of Action**. The Trust shall have the exclusive right, power, and interest to pursue, settle, waive, release, abandon, or dismiss the Causes of Action. The Trust shall be the sole representative of the Estate under section 1123(b)(3) of the Bankruptcy Code with respect to the Causes of Action.

**Section 3.06    Abandonment**. If, in the Liquidation Trustee's reasonable judgment, any non-cash Trust Assets cannot be sold in a commercially reasonable manner or the Liquidation Trustee believes in good faith that such property has inconsequential value to the Trust or its Beneficiaries, the Liquidation Trustee shall have the right to cause the Trust to abandon or otherwise dispose of such property, including by donation of such property to Legal Services of North Dakota.

**Section 3.07    Responsibility for Administration of Claims**. As of the Effective Date, the Trust shall become responsible for administering and paying Distributions to the holders of Allowed Claims entitled to receive Distributions from the Trust pursuant to the Plan. The Trust shall have the exclusive right to object to the allowance of any Claim on any ground and shall be entitled to assert all defenses of the Debtor[s] and [its/their] Estate[s]. The Trust shall also be entitled to assert all of the Estate[s'/'s] rights under, without limitation, section 558 of the Bankruptcy Code. The Trust may also seek estimation of any Claims under and subject to section 502(c) of the Bankruptcy Code.

**Section 3.08    Agents and Professionals**. The Liquidation Trustee may, but shall not be required to, consult with and retain attorneys, financial advisors, accountants, appraisers, and other professionals the Liquidation Trustee believes have qualifications necessary to assist in the administration of the Trust, including professionals previously retained by the Debtor[s]. For the avoidance of doubt, and without limitation of applicable law, nothing in this Agreement shall limit the Liquidation Trustee from engaging counsel or other professionals, including the Liquidation Trustee itself or the Liquidation Trustee's firm or their affiliates, to do work for the Trust. The Liquidation Trustee may pay the reasonable salaries, fees and expenses of such Persons out of the Trust Assets in the ordinary course of business.

**Section 3.09    Safekeeping and Investment of Trust Assets**. All moneys and other assets received by the Liquidation Trustee shall, until distributed or paid over as provided herein and in the Plan, be held in trust for the benefit of the holders of Claims, but need not be segregated in separate accounts from other Trust Assets, unless and to the extent required by law or the Plan. The Liquidation Trustee shall not be under any obligation to invest Trust Assets. Neither the Trust nor the Liquidation Trustee shall have any liability for interest or producing income on any moneys received by them and held for Distribution or payment to holders of Claims, except as such interest shall actually be received by the Trust or Trustee, which shall be distributed as provided in the Plan. Except as otherwise provided by the Plan, the powers of the

7

Liquidation Trustee to invest any moneys held by the Trust, other than those powers reasonably necessary to maintain the value of the assets and to further the Trust's liquidating purpose, shall be limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary liquid investments, such as treasury bills; provided, however, that the scope of permissible investments shall be limited to include only those investments that a Liquidation Trust, within the meaning of Treas. Reg. § 3.01.7701-4(d), may be permitted to hold pursuant to the Treasury Regulations, or any modification of the IRS guidelines, whether set forth in IRS rulings, IRS pronouncements, or otherwise. For the avoidance of doubt, the provisions of section 11-2.3 of the Estates, Power, and Trusts Law of New York shall not apply to this Agreement. Notwithstanding the foregoing, the Liquidation Trustee shall not be prohibited from engaging in any trade or business on its own account, provided that such activity does not interfere or conflict with the Liquidation Trustee's administration of the Trust [and in accordance with Section 8.08 of this Agreement].

**Section 3.10   Maintenance and Disposition of Trust Records**. The Liquidation Trustee shall maintain accurate records of the administration of Trust Assets, including receipts and disbursements and other activity of the Trust. The Trust may engage a claims agent to continue to maintain and update the Claims register maintained in the Chapter 11 Cases throughout the administration of the Trust, and such Claims register may serve as the Liquidation Trustee's register of beneficial interests held by Beneficiaries. The books and records maintained by the Liquidation Trustee may be disposed of by the Liquidation Trustee at the later of (a) such time as the Liquidation Trustee determines that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the Trust or its Beneficiaries, or (b) upon the termination and completion of the winding down of the Trust.

**Section 3.11   Reporting Requirements**. The Liquidation Trustee shall provide any Oversight Committee member the information and reports they may reasonably request concerning Trust administration. To the extent feasible and practicable as determined by the Liquidation Trustee, each Distribution by the Liquidation Trustee shall be accompanied by a report to the Beneficiaries which details and accounts for the Liquidation Trust Assets remaining since the prior report. The report shall include a summary of expenses incurred by the Liquidation Trustee and Distributions made on account of Allowed Claims. After the Liquidation Trustee makes all Distributions provided by the Plan and this Agreement, the Liquidation Trustee shall file a final report with the Bankruptcy Court which details and accounts for the Liquidation Trust Assets and contains a summary of expenses incurred by the Liquidation Trustee and Distributions made on account of Allowed Claims.

**Section 3.12   Conflicts of Interest**. Conflicts of interest of the Liquidation Trustee will be addressed by the Oversight Committee as set forth below in Article VIII. If no Oversight Committee is established or serving, the Liquidation Trustee will appoint a disinterested Person to handle any matter where the Liquidation Trustee has identified a conflict of interest or the Bankruptcy Court, on motion of a party in interest, determines one exists. In the event the Liquidation Trustee is unwilling or unable to appoint a disinterested Person to handle any such matter, the Bankruptcy Court, on notice and hearing, may do so.

**Section 3.13   No Bond Required; Procurement of Insurance**. Notwithstanding any state or other applicable law to the contrary, the Liquidation Trustee (including any successor

8

Trustee) shall be exempt from giving any bond or other security in any jurisdiction and shall serve hereunder without bond. The Liquidation Trustee is hereby authorized, but not required to obtain all reasonable insurance coverage for itself, its agents, representatives, employees or independent contractors, including, without limitation, coverage with respect to the liabilities, duties and obligations of the Liquidation Trustee and its agents, representatives, employees, or independent contractors under this Agreement. The cost of any such insurance coverage shall be an expense of the Trust and paid out of Trust Assets.

     **Section 3.14  Charitable Donations**. The Liquidation Trustee may donate any remaining proceeds to a charitable organization after the Liquidation Trustee has made all Distributions possible pursuant to the terms and conditions of this Agreement.

<div align="center">

**ARTICLE IV**
**Distributions**

</div>

     **Section 4.01  Distribution and Reserve of Trust Assets**. Following the transfer of Trust Assets to the Trust, the Liquidation Trustee shall make continuing efforts on behalf of the Trust to collect, liquidate, and distribute all Trust Assets, subject to the reserves required under the Plan or this Agreement.

     (a)    **Distributions**. Subject to Article VIII of this Agreement, the Liquidation Trustee shall cause the Trust to distribute the Trust's net Cash income and net Cash proceeds from the liquidation of the Trust Assets to holders of Allowed Claims, except the Trust may retain an amount of net income and other Trust Assets reasonably necessary to maintain the value of the Trust Assets or to meet expenses, claims and contingent liabilities of the Trust and Trustee, and retention of such amount may preclude Distributions to holders of Allowed Claims.

     (b)    **Reserves; Pooling of Reserved Funds**. Before any Distribution can be made, the Liquidation Trustee shall, in its reasonable discretion, establish, supplement, and maintain reserves in an amount sufficient to meet any and all expenses and liabilities of the Trust, including attorneys' fees and expenses, the fees and expenses of other professionals, and any fees owed the US Trustee. Except with respect to the Professional Fee Reserve, the Liquidation Trustee need not maintain the Trust's reserves in segregated bank accounts and may pool funds in the reserves with each other and other funds of the Trust; provided, however, that the Trust shall treat all such reserved funds as being held in a segregated manner in its books and records.

     (c)    **Distributions Net of Reserves and Costs**. Distributions shall be made net of reserves in accordance with the Plan and also net of the actual and reasonable costs of making the Distributions.

     (d)    **Right to Rely on Professionals**. Without limitation of the generality of Section 6.06 of this Agreement, in determining the amount of any Distribution or reserves, the Liquidation Trustee may rely and shall be fully protected in relying on the advice and opinion of the Trust's financial advisors, accountants, or other professionals.

<div align="center">9</div>

**Section 4.02   Method and Timing of Distributions**. Distributions to holders of Allowed Claims will be made from the Trust in accordance with the terms of the Plan and this Agreement. The Trust may engage disbursing agents and other Persons to help make Distributions.

**Section 4.03   Withholding from Distributions**. The Liquidation Trustee, in its discretion, may cause the Trust to withhold from amounts distributable from the Trust to any Beneficiary any and all amounts as may be sufficient to pay the maximum amount of any tax or other charge that has been or might be assessed or imposed by any law, regulation, rule, ruling, directive, or other governmental requirement on such Beneficiary or the Trust with respect to the amount to be distributed to such Beneficiary. The Liquidation Trustee shall determine such maximum amount to be withheld by the Trust in its sole, reasonable discretion and shall cause the Trust to distribute to the Beneficiary any excess amount withheld.

**Section 4.04   Tax Identification Numbers**. The Liquidation Trustee may require any Beneficiary to furnish its taxpayer identification number as assigned by the Internal Revenue Service and may condition any Distribution to any Beneficiary upon receipt of such identification number. If a Beneficiary does not timely provide the Liquidation Trustee with its taxpayer identification number in the manner and by the deadline established by the Liquidation Trustee, then the Distribution to such Beneficiary shall be administered in accordance with Section 4.05 of this Agreement.

**Section 4.05   Unclaimed and Undeliverable Distributions**. If any Distribution to a Beneficiary is returned to the Liquidation Trustee as undeliverable or is otherwise unclaimed, no further Distributions to such Beneficiary shall be made unless and until the Beneficiary claims the Distributions by timely notifying the Liquidation Trustee in writing of any information necessary to make the Distribution to the Beneficiary in accordance with this Agreement, the Plan, and applicable law, including such Beneficiary's then-current address or taxpayer identification number. If the Beneficiary timely provides the Liquidation Trustee such missing information, all missed Distributions shall be made to the Beneficiary as soon as is practicable, without interest. Undeliverable or unclaimed Distributions shall be administered in accordance with Article [XX] of the Plan.

   (a)   **No Responsibility to Attempt to Locate Beneficiaries**. The Liquidation Trustee may, in its sole discretion, attempt to determine a Beneficiary's current address or otherwise locate a Beneficiary, but nothing in this Agreement or the Plan shall require the Liquidation Trustee to do so.

   (b)   **Disallowance of Claims; Cancellation of Corresponding Beneficial Interests**. All Claims in respect of undeliverable or unclaimed Distributions that pursuant to Article [XX] of the Plan have become unclaimed property under section 347(b) of the Bankruptcy Code, shall be deemed Disallowed and expunged, and the corresponding beneficial interests in the Trust of the Beneficiary holding such Disallowed Claims shall be deemed canceled. The Holder of any such Disallowed Claim shall no longer have any right, claim, or interest in or to any Distributions in respect of such Disallowed Claims. The Holder of any such Disallowed Claim is forever barred, estopped, and enjoined from

receiving any Distributions under this Agreement and from asserting such Disallowed Claim against the Trust or Trustee.

(c)     **Inapplicability of Unclaimed Property or Escheat Laws**. Unclaimed property held by the Trust shall not be subject to the unclaimed property or escheat laws of the United States, any state, or any local governmental unit.

**Section 4.06    Voided Checks; Request for Reissuance**. Distribution checks issued to Beneficiaries shall be null and void if not negotiated within [ninety (90)] days after the date of issuance thereof. Requests for reissuance of any check shall be made in writing directly to the Liquidation Trustee by the Beneficiary that was originally issued such check. All such requests shall be made promptly. Distributions in respect of voided checks shall be treated as unclaimed Distributions under the Plan and administered under Section 4.05 of this Agreement.

**Section 4.07    Conflicting Claims**. If any conflicting claims or demands are made or asserted with respect to the beneficial interest of a Beneficiary under this Agreement, or if there is any disagreement between the assignees, transferees, heirs, representatives, or legatees succeeding to all or a part of such an interest resulting in adverse claims or demands being made in connection with such interest, then, in any of such events, the Liquidation Trustee shall be entitled, in its sole discretion, to refuse to comply with any such conflicting claims or demands.

(a)     The Liquidation Trustee may elect to cause the Trust to make no payment or Distribution with respect to the beneficial interest subject to the conflicting claims or demand, or any part thereof, and to refer such conflicting claims or demands to the Bankruptcy Court, which shall have exclusive jurisdiction over resolution of such conflicting claims or demands. Neither the Trust nor the Liquidation Trustee shall be or become liable to any of such parties for their refusal to comply with any such conflicting claims or demands, nor shall the Trust or Trustee be liable for interest on any funds which may be so withheld.

(b)     The Liquidation Trustee shall be entitled to refuse to act until either (i) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court, or (ii) all differences have been resolved by a valid written agreement among all such parties to the satisfaction of the Liquidation Trustee, which agreement shall include a complete release of the Trust and Trustee. Until the Liquidation Trustee receives written notice that one of the conditions of the preceding sentence is met, the Liquidation Trustee may deem and treat the Beneficiary as the absolute owner under this Agreement of the beneficial interest in the Trust the Beneficiary identified as the owner of that interest in the books and records maintained by the Liquidation Trustee. The Liquidation Trustee may deem and treat such Beneficiary as the absolute owner for purposes of receiving Distributions and any payments on account thereof for federal and state income tax purposes, and for all other purposes whatsoever.

(c)     In acting or refraining from acting under and in accordance with this Section 4.07 of the Agreement, the Liquidation Trustee shall be fully protected and incur no liability to any purported claimant or any other Person to the extent set forth in Article VI of this Agreement.

**Section 4.08   Priority of Expenses of Trust**. The Trust must pay or reserve for all of its expenses before making Distributions.

**ARTICLE V**
**Beneficiaries**

**Section 5.01   Interest Beneficial Only**. The ownership of a beneficial interest in the Trust shall not entitle any Beneficiary to any title in or to the Trust Assets or to any right to call for a partition or division of such assets or to require an accounting.

**Section 5.02   Ownership of Beneficial Interests Hereunder**. Each Beneficiary shall own a beneficial interest herein, which shall, subject to section 4.01 herein and the Plan, be entitled to a Distribution in the amounts, and at the times, set forth in the Plan.

**Section 5.03   Evidence of Beneficial Interest**. Ownership of a beneficial interest in the Trust Assets shall not be evidenced by any certificate, security, or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Trust by the Liquidation Trustee.

**Section 5.04   No Right to Accounting**. Except as set forth in Section 9.04 of this Agreement, neither the Beneficiaries nor their successors, assigns, creditors, or any other Person shall have any right to an accounting by the Liquidation Trustee, and the Liquidation Trustee shall not be obligated to provide any accounting to any Person. Nothing in this Agreement is intended to require the Liquidation Trustee at any time or for any purpose to file any accounting or seek approval of any court with respect to the administration of the Trust or as a condition for making any advance, payment, or Distribution out of proceeds of Trust Assets.

**Section 5.05   No Standing**. Except as expressly provided in this Agreement, a Beneficiary shall not have standing to direct or to seek to direct the Trust or Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any Person upon or with respect to the Trust Assets.

**Section 5.06   Requirement of Undertaking**. The Liquidation Trustee may request the Bankruptcy Court to require, in any suit for the enforcement of any right or remedy under this Agreement, or in any suit against the Liquidation Trustee for any action taken or omitted by it as Trustee, that the filing party litigant in such suit pay the costs of such suit, including reasonable attorneys' fees, against any party litigant in such suit; provided, however, that the provisions of this Section 5.06 shall not apply to any suit by the Liquidation Trustee.

**Section 5.07   Limitation on Transferability**. It is understood and agreed that the beneficial interests herein shall be non-transferable and non-assignable during the term of this Agreement except by operation of law. An assignment by operation of law shall not be effective until appropriate notification and proof thereof is submitted to the Liquidation Trustee, and the Liquidation Trustee may continue to cause the Trust to pay all amounts to or for the benefit of the assigning Beneficiaries until receipt of proper notification and proof of assignment by operation of law. The Liquidation Trustee may rely upon such proof without the requirement of any further investigation.

Section 5.08  **Exemption from Registration**. The rights of the Beneficiaries arising under this Agreement may be deemed "securities" under applicable law. However, such rights have not been defined as "securities" under the Plan because (a) the parties hereto intend that such rights shall not be securities, and (b) if the rights arising under this Agreement in favor of the Beneficiaries are deemed to be "securities," the exemption from registration under section 1145 of the Bankruptcy Code is intended to be applicable to such securities. No party to this Agreement shall make a contrary or different contention.

Section 5.09  **Delivery of Distributions**. Subject to the terms of this Agreement, the Liquidation Trustee shall cause the Trust to make Distributions to holders of Allowed Claims in the manner provided in the Plan.

## ARTICLE VI
## Indemnification and Third Party Rights

Section 6.01  **Parties Dealing With the Liquidation Trustee**. In the absence of actual knowledge to the contrary, any Person dealing with the Trust or the Liquidation Trustee shall be entitled to rely on the authority of the Liquidation Trustee or any of the Liquidation Trustee's agents to act in connection with the Trust Assets. There is no obligation of any Person dealing with the Liquidation Trustee to inquire into the validity, expediency, or propriety of any transaction by the Liquidation Trustee or any agent of the Liquidation Trustee.

Section 6.02  **Limitation of Trustee's and Oversight Committee's Liability**. In exercising the rights granted herein, the Liquidation Trustee shall exercise the Liquidation Trustee's best judgment, to the end that the affairs of the Trust shall be properly managed and the interests of all of the holders of Claims safeguarded. But, notwithstanding anything herein or in the Plan to the contrary, neither Trustee, any member of the Oversight Committee, nor their respective firms, companies, affiliates, partners, officers, directors, members, employees, professionals, advisors, attorneys, financial advisors, investment bankers, disbursing agents, or agents, and any of such Person's successors and assigns shall incur any responsibility or liability by reason of any error of law or fact or of any matter or thing done or suffered or omitted to be done under or in connection with this Agreement, whether sounding in tort, contract, or otherwise, except for fraud, gross negligence, or willful misconduct that is found by a final judgment (not subject to further appeal or review) of a court of competent jurisdiction to be the direct and primary cause of loss, liability, damage, or expense suffered. In no event shall the Liquidation Trustee or Oversight Committee be liable for indirect, punitive, special, incidental, or consequential damage or loss (including but not limited to lost profits) whatsoever, even if the Liquidation Trustee or Oversight Committee has been informed of the likelihood of such loss or damages and regardless of the form of action.

Section 6.03  **No Liability for Acts of Other Persons**. None of the Persons identified in the immediately preceding Section 6.02 of this Agreement shall be liable for the act or omission of any other Person identified in that section.

Section 6.04  **No Liability for Acts of Predecessors**. No successor Trustee shall be in any way responsible for the acts or omissions of any Trustee in office prior to the date on which

13

such successor becomes the Liquidation Trustee, unless a successor Trustee expressly assumes such responsibility.

**Section 6.05  No Liability for Good Faith Error of Judgment**. The Liquidation Trustee shall not be liable for any error of judgment made in good faith, unless it shall be finally determined by a final judgment of a court of competent jurisdiction (not subject to further appeal or review) that the Liquidation Trustee was grossly negligent or engaged in willful misconduct in ascertaining the pertinent facts.

**Section 6.06  Reliance by Trustee and Oversight Committee on Documents and Advice of Counsel or Other Persons**. Except as otherwise provided herein, the Liquidation Trustee and Oversight Committee may rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by them to be genuine and to have been signed or presented by the proper party or parties. The Liquidation Trustee and Oversight Committee also may engage and consult with their respective legal counsel and other agents and advisors, and shall not be liable for any action taken, omitted, or suffered by them in reliance upon the advice of such counsel, agents, or advisors.

**Section 6.07  No Liability For Acts Approved by Bankruptcy Court or Oversight Committee**. The Liquidation Trustee and Oversight Committee shall have the right at any time to seek instructions from the Bankruptcy Court concerning the administration or disposition of the Trust Assets and the Claims required to be administered by the Trust. Neither the Oversight Committee nor the Liquidation Trustee shall be liable for any act or omission that has been approved by the Bankruptcy Court, and all such actions or omissions shall conclusively be deemed not to constitute fraud, gross negligence, or willful misconduct. The Liquidation Trustee shall not be liable for any act or omission approved by the Oversight Committee under Article VIII of this Agreement or otherwise, and all such actions or omissions shall conclusively be deemed not to constitute fraud, gross negligence, or willful misconduct.

**Section 6.08  No Personal Obligation for Trust Liabilities**. Persons dealing with the Liquidation Trustee shall have recourse only to the Trust Assets to satisfy any liability incurred by the Liquidation Trustee to any such Person in carrying out the terms of this Agreement, and the Liquidation Trustee shall have no personal, individual obligation to satisfy any such liability.

**Section 6.09  Indemnification**. The Liquidation Trustee and the members of the Oversight Committee, and their respective firms, companies, affiliates, partners, officers, directors, members, employees, professionals, advisors, attorneys, financial advisors, investment bankers, disbursing agents, or agents and any of such parties' successors and assigns (collectively, the **"Indemnified Parties"** and each, an **"Indemnified Party"**) shall, to the fullest extent permitted by applicable law, be defended, held harmless, and indemnified by the Trust from time to time and receive reimbursement from and against any and all loss, liability, expense (including counsel fees), or damage of any kind, type or nature, whether sounding in tort, contract, or otherwise, that the Indemnified Parties may incur or sustain in connection with the exercise or performance of any of the Trust's, Trustee's, or Oversight Committee's powers and duties under this Agreement or in rendering services by the Indemnified Party to the Trust, Trustee, or Oversight Committee (the **"Indemnified Conduct"**), including, without limitation,

14

the costs of counsel or others in investigating, preparing, defending, or settling any action or claim (whether or not litigation has been initiated against the Indemnified Party) or in enforcing this Agreement (including its indemnification provisions), except if such loss, liability, expense, or damage is finally determined by a final judgment (not subject to further appeal or review) of a court of competent jurisdiction to result directly and primarily from the fraud, gross negligence, or willful misconduct of the Indemnified Party asserting this provision.

(a) **Expense of Trust; Limitation on Source of Payment of Indemnification**. All indemnification liabilities of the Trust under this Section 6.09 shall be an expense of the Trust. The amounts necessary for such indemnification and reimbursement shall be paid by the Trust out of the available Trust Assets after reserving for all actual and anticipated expenses and liabilities of the Trust. The Liquidation Trustee shall not be personally liable for the payment of any Trust expense or claim or other liability of the Trust, and no Person shall look to the Liquidation Trustee or other Indemnified Parties personally for the payment of any such expense or liability.

(b) **Procedure for Current Payment of Indemnified Expenses; Undertaking to Repay**. The Trust shall reasonably promptly pay an Indemnified Party all amounts subject to indemnification under this Section 6.09 on submission of invoices for such amounts by the Indemnified Party. The Oversight Committee shall approve the indemnification of any Indemnified Party and thereafter shall approve any monthly bills of such Indemnified Party for indemnification of more than AMOUNT]. All invoices for indemnification shall be subject to the approval of the Liquidation Trustee. By accepting any indemnification payment, the Indemnified Party undertakes to repay such amount promptly if it is determined that the Indemnified Party is not entitled to be indemnified under this Agreement. The Bankruptcy Court shall hear and finally determine any dispute arising out of this Section 6.09.

**Section 6.10   No Implied Obligations**. The Liquidation Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth herein, and no implied covenants or obligations shall be read into this Agreement against the Liquidation Trustee.

**Section 6.11   Confirmation of Survival of Provisions**. Without limitation in any way of any provision of this Agreement, the provisions of this Article VI shall survive the death, dissolution, liquidation, resignation, replacement, or removal, as may be applicable, of the Liquidation Trustee, or the termination of the Trust or this Agreement, and shall inure to the benefit of the Liquidation Trustee's and the Indemnified Parties' heirs and assigns.

## ARTICLE VII
## Tax Matters

**Section 7.01   Tax Treatment of Trust**. Pursuant to and in accordance with the Plan, for all federal income tax purposes, the Debtors, the Beneficiaries, the Liquidation Trustee, and the Trust shall treat the Trust as a Liquidation Trust within the meaning of Treasury Income Tax Regulation Section 301.7701-4(d) and IRS Revenue Procedure 94-45, and transfer of the Trust Assets to the Trust shall be treated as a transfer of the Trust Assets by the Debtors to the

15

Beneficiaries in satisfaction of their Allowed Claims, followed by a transfer of the Trust Assets by the Beneficiaries to the Trust in exchange for their pro rata beneficial interests in the Trust. The Beneficiaries shall be treated as the grantors and owners of the Trust for federal income tax purposes.

**Section 7.02   Annual Reporting and Filing Requirements**. Pursuant to and in accordance with the terms of the Plan and this Agreement, the Liquidation Trustee shall file tax returns for the Trust as a grantor trust pursuant to Treasury Income Tax Regulation Section 1.671-4(a).

**Section 7.03   Tax Treatment of Reserves for Disputed Claims**. The Liquidation Trustee may, in the Liquidation Trustee's sole discretion, determine the best way to report for tax purposes with respect to any reserve for Disputed Claims, including (a) filing a tax election to treat any and all reserves for Disputed Claims as a Disputed Ownership Fund (**"DOF"**) within the meaning of Treasury Income Tax Regulation Section 1.468B-9 for federal income tax purposes rather than to tax such reserve as a part of the Trust, or (b) electing to report as a separate trust or sub-trust or other entity. If an election is made to report any reserve for disputed claims as a DOF, the Trust shall comply with all federal and state tax reporting and tax compliance requirements of the DOF, including but not limited to the filing of a separate federal tax return for the DOF and the payment of federal and/or state income tax due.

**Section 7.04   Valuation of Trust Assets**. After the Effective Date, but in no event later than the due date for timely filing of the Trust's first federal income tax return (taking into account applicable tax filing extensions), the Liquidation Trustee shall (a) determine the fair market value of the Trust Assets as of the Effective Date, based on the Liquidation Trustee's good faith determination, (b) advise the Oversight Committee of such valuation, and (c) establish appropriate means to apprise the Beneficiaries of such valuation. The valuation shall be used consistently by all parties (including, without limitation, the Debtors, the Trust, the Liquidation Trustee, and the Beneficiaries) for all federal income tax purposes.

## ARTICLE VIII
## Oversight Committee

**Section 8.01   Appointment, Composition, and Governance of Oversight Committee**. The Liquidation Trust Oversight Committee (the **"Oversight Committee"**) shall be comprised of three members, who are: (A) [ENTITY NAME, CONTACT NAME, CONTACT TITLE], (B) [ENTITY NAME, CONTACT NAME, CONTACT TITLE], and (C) [ENTITY NAME, CONTACT NAME, CONTACT TITLE].

**Section 8.02   Rights and Duties of Oversight Committee; Corresponding Limitations on Trustee's Actions**. The rights and duties of the Oversight Committee shall be those set forth in this Agreement and the Plan. The Liquidation Trustee shall limit its actions on behalf of the Trust in accordance with the limits established by those provisions.

**Section 8.03   Approval and Authorization on Negative Notice**. The Liquidation Trustee may obtain any approval or authorization required under the Plan or this Agreement from the Oversight Committee on three business days' negative notice. The Liquidation Trustee

16

may make requests on behalf of the Trust for approval or authorization by the Oversight Committee in writing, which may be made in the form of an e-mail. In the event any Oversight Committee member objects to the Liquidation Trustee's request, the Liquidation Trustee shall consult with the members of the Oversight Committee about how to proceed. The Bankruptcy Court shall hear and finally determine any dispute arising out of this section or this Article.

Section 8.04   **Compensation of Professionals**. The Oversight Committee shall approve any professional's monthly bill that is for more than [$NUMBER]. Either the Liquidation Trustee or the professional submitting the bill may seek such approval. The Liquidation Trustee may obtain approval as set forth in the preceding Section 8.03 of this Agreement.

Section 8.05   **Appointment of Supplemental Trustee**. The Oversight Committee shall approve the Liquidation Trustee's appointment of any Supplemental Trustee (defined in Section 9.09 below) in accordance with Section 9.09 of this Agreement and the removal and replacement of any Supplemental Trustee under that provision.

Section 8.06   **Reimbursement of Oversight Committee Expenses**. The Liquidation Trustee shall pay from the Trust Assets all reasonable costs and expenses, including attorneys' fees and expenses, of members of the Oversight Committee. The Bankruptcy Court shall hear and finally determine any dispute arising out of this section.

Section 8.07   **Oversight Committee Member's Conflicts of Interest**. The Oversight Committee members shall disclose any actual or potential conflicts of interest that such member has with respect to any matter arising during the administration of the Trust to the other Oversight Committee members and the Liquidation Trustee and such member shall be recused from voting on any matter on which such member has an actual or potential conflict of interest.

Section 8.08   **Trustee's Conflicts of Interest**. The Liquidation Trustee shall disclose to the Oversight Committee any conflicts of interest that the Liquidation Trustee has with respect to any matter arising during administration of the Trust. In the event that the Liquidation Trustee cannot take any action, including without limitation the prosecution of any Causes of Action or the Objection to any Claim, by reason of an actual or potential conflict of interest, the Oversight Committee acting by majority shall be authorized to take any such action(s) in the Liquidation Trustee's place and stead, including without limitation the retention of professionals (which may include professionals retained by the Liquidation Trustee) for the purpose of taking such actions. The Bankruptcy Court shall hear and finally determine any dispute arising out of this section.

Section 8.09   **Resignation of Oversight Committee Member**. A member of the Oversight Committee may resign at any time on written notice (including e-mailed notice) to the other Oversight Committee members and the Liquidation Trustee. The resignation shall be effective on the later of (a) the date specified in the notice delivered to the other Oversight Committee members and the Liquidation Trustee, or (b) the date that is thirty (30) days after the date such notice is delivered. In no case shall the resignation of the Liquidation Trustee be effective on less than thirty (30) days' notice.

Section 8.10   **Appointment of Replacement Oversight Committee Members**. In the event of the resignation, death, incapacity, or removal of a member of the Oversight Committee,

the Liquidation Trustee shall nominate and the remaining members of Oversight Committee shall approve, by a vote of at least one member of the Oversight Committee, an additional member to the Oversight Committee.

**Section 8.11   Absence of Oversight Committee**. In the event that the members of the Creditors' Committee do not appoint an Oversight Committee, an Oversight Committee is not yet formed, no one is willing to serve on the Oversight Committee, or there shall have been no Oversight Committee members for a period of thirty (30) consecutive days, then the Liquidation Trustee may, during such vacancy and thereafter, ignore any reference in this Agreement, the Plan, or the Confirmation Order to an Oversight Committee, and all references to the Oversight Committee's rights and responsibilities in the Plan, this Agreement and the Confirmation Order will be null and void.

## ARTICLE IX
### Trustee Selection, Removal, Replacement, and Compensation

**Section 9.01   Initial Trustee**. The Liquidation Trustee has been selected by [_____] and is appointed effective as of the Effective Date. The initial trustee shall be the Liquidation Trustee.

**Section 9.02   Term of Service**. The Liquidation Trustee shall serve until (a) the completion of the administration of the Trust Assets and the Trust, including the winding up of the Trust, in accordance with this Agreement and the Plan; (b) termination of the Trust in accordance with the terms of this Agreement and the Plan; or (c) the Liquidation Trustee's resignation, death, incapacity or removal. In the event the Liquidation Trustee's appointment terminates by reason of death, dissolution, liquidation, resignation, or removal, the Liquidation Trustee shall be immediately compensated for all reasonable fees and expenses accrued through the effective date of termination, whether or not previously invoiced. The provisions of Article VI of this Agreement shall survive the resignation or removal of any Trustee.

**Section 9.03   Removal of Trustee**. Any party in interest, on notice and hearing before the Bankruptcy Court, may seek removal of the Liquidation Trustee for cause. The Bankruptcy Court shall hear and finally determine any dispute arising out of this section.

**Section 9.04   Resignation of Trustee**. The Liquidation Trustee may resign at any time on written notice to the Oversight Committee, US Trustee, and Bankruptcy Court. The resignation shall be effective on the later of (a) the date specified in the notice of resignation, or (b) the date that is thirty (30) days after the date such notice is filed with the Bankruptcy Court and served on the Oversight Committee members and the US Trustee. In no case shall the resignation of the Liquidation Trustee be effective on less than thirty (30) days' notice. In the event of a resignation, the resigning Trustee shall render to the Oversight Committee and the US Trustee a full and complete accounting of monies and assets received, disbursed, and held during the term of office of that Trustee.

**Section 9.05   Appointment of Successor Trustee**. Upon the resignation, death, incapacity, or removal of a Trustee, a successor Trustee shall be appointed by the Oversight Committee. In the event no party in interest seeks the appointment of a successor Trustee, the

Bankruptcy Court may do so on its own motion. Any successor Trustee so appointed shall consent to and accept its appointment as successor Trustee, which may be done by e-mail or through acquiescence in not objecting to a motion for approval of its appointment as successor Trustee. Any successor Trustee may be appointed to serve only on an interim basis.

**Section 9.06    Powers and Duties of Successor Trustee**. A successor Trustee shall have all the rights, privileges, powers, and duties of its predecessor under this Agreement, the Plan, and Confirmation Order.

**Section 9.07    Trust Continuance**. The resignation, death, incapacitation, dissolution, liquidation, or removal of the Liquidation Trustee shall not terminate the Trust or revoke any existing agency created pursuant to this Agreement or invalidate any action theretofore taken by the Liquidation Trustee.

**Section 9.08    Compensation of Trustee and Costs of Administration**. The Liquidation Trustee shall receive fair and reasonable compensation for its services, which shall be a charge against, and paid out of, the Trust Assets. All costs, expenses, and obligations incurred by the Liquidation Trustee (or professionals who may be employed by the Liquidation Trustee in administering the Trust, in carrying out their other responsibilities under this Agreement, or in any manner connected, incidental, or related thereto) shall be paid by the Trust from the Trust Assets prior to any Distribution to the Beneficiaries. The terms of the compensation of the Liquidation Trustee and the timing and manner of payment are set forth on Exhibit A hereto.

**Section 9.09    Appointment of Supplemental Trustee**. Subject to Article VIII of this Agreement, if the Liquidation Trustee has a conflict or any of the Trust Assets are situated in any state or other jurisdiction in which the Liquidation Trustee is not qualified to act as trustee, the Liquidation Trustee shall nominate and appoint a Person duly qualified to act as trustee (the **"Supplemental Trustee"**) in such state or jurisdiction and require from each such Supplemental Trustee such security as may be designated by the Liquidation Trustee in its discretion. The Liquidation Trustee may confer upon such Supplemental Trustee all of the rights, powers, privileges, and duties of the Liquidation Trustee hereunder, subject to the conditions and limitations of this Agreement, except as modified or limited by the laws of the applicable state or other jurisdiction (in which case, the laws of the state or other jurisdiction in which such Supplemental Trustee is acting shall prevail to the extent necessary). The Liquidation Trustee shall require such Supplemental Trustee to be answerable to the Liquidation Trustee for all monies, assets, and other property that may be received in connection with the administration of all the Trust Assets by the Supplemental Trustee. Subject to Article VIII of this Agreement, the Liquidation Trustee may remove such Supplemental Trustee, with or without cause, and appoint a successor Supplemental Trustee at any time by executing a written instrument declaring such Supplemental Trustee removed from office and specifying the effective date and time of removal.

**ARTICLE X**
**Trust Duration**

19

**Section 10.01 Duration**. Once the Trust becomes effective upon the Effective Date of the Plan, the Trust and this Agreement shall remain and continue in full force and effect until the Trust is terminated.

**Section 10.02 Termination on Payment of Trust Expenses and Distribution of Trust Assets**. Upon the payment of all costs, expenses, and obligations incurred in connection with administering the Trust, and the Distribution of all Trust Assets in accordance with the provisions of the Plan, the Confirmation Order, and this Agreement, the Trust shall terminate and the Liquidation Trustee shall have no further responsibility in connection therewith except as may be required to effectuate such termination under relevant law.

**Section 10.03 Termination After Five Years**. If the Trust has not been previously terminated pursuant to Section 10.02 hereof, on the fifth anniversary of the Effective Date, and unless the Trust term has been extended in accordance with section [X.X] of the Plan (such extension to be approved by the Bankruptcy Court within six months of the beginning of the extended term), the Liquidation Trustee shall distribute all of the Trust Assets to the Beneficiaries in accordance with the Plan, and immediately thereafter the Trust shall terminate and the Liquidation Trustee shall have no further responsibility in connection therewith except to the limited extent set forth in Section 10.05 of this Agreement.

**Section 10.04 No Termination by Beneficiaries**. The Trust may not be terminated at any time by the Beneficiaries.

**Section 10.05 Continuance of Trust for Winding Up; Discharge and Release of Trustee**. After the termination of the Trust and solely for the purpose of liquidating and winding up the affairs of the Trust, the Liquidation Trustee shall continue to act as such until its responsibilities have been fully performed. Except as otherwise specifically provided herein, upon the Distribution of the Trust Assets including all excess reserves, the Oversight Committee members, the Liquidation Trustee, and the Trust's professionals and agents shall be deemed discharged under this Agreement and have no further duties or obligations hereunder. Upon a motion by the Liquidation Trustee, the Bankruptcy Court may enter an order relieving the Oversight Committee members and the Liquidation Trustee, its employees, and the Trust's professionals and agents of any further duties, discharging and releasing the Liquidation Trustee from all liability related to the Trust, and releasing the Liquidation Trustee's bond, if any.

**ARTICLE XI**
**Miscellaneous**

**Section 11.01 Cumulative Rights and Remedies**. The rights and remedies provided in this Agreement are cumulative and not exclusive of any rights and remedies under law or in equity.

**Section 11.02 Notices**. All notices to be given to Beneficiaries may be given by ordinary mail, or may be delivered personally, to the Holders at the addresses appearing on the books kept by the Liquidation Trustee. Any notice or other communication which may be or is required to be given, served, or sent to the Liquidation Trustee shall be in writing and shall be sent by

registered or certified United States mail, return receipt requested, postage prepaid, or transmitted by hand delivery or facsimile (if receipt is confirmed) addressed as follows:

        (a)    <u>If to the Trust or the Liquidation Trustee:</u>

           [TRUSTEE NAME]

           [ADDRESS]

           [PHONE]

           [E-mail]

           with a copy to its counsel:

           [COUNSEL NAME]

           [COUNSEL FIRM]

           [ADDRESS]

           [PHONE]

           [E-mail]

or to such other address as may from time to time be provided in written notice by the Liquidation Trustee.

       **Section 11.03 Governing Law**. This Agreement shall be governed by and construed in accordance with the laws of the State of North Dakota, without giving effect to rules governing the conflict of laws.

       **Section 11.04 Successors and Assigns**. This Agreement shall inure to the benefit of and shall be binding upon the Parties and their respective successors and assigns.

       **Section 11.05 Particular Words**. Reference in this Agreement to any Section or Article is, unless otherwise specified, to that such Section or Article under this Agreement. The words "hereof," "herein," and similar terms shall refer to this Agreement and not to any particular Section or Article of this Agreement.

       **Section 11.06 Execution**. All funds in the Trust shall be deemed in *custodia legis* until such times as the funds have actually been paid to or for the benefit of a Beneficiary, and no Beneficiary or any other Person can execute upon, garnish or attach the Trust Assets or the Liquidation Trustee in any manner or compel payment from the Trust except by Final Order of the Bankruptcy Court. Payments will be solely governed by the Plan and this Agreement.

       **Section 11.07 Amendment**. This Agreement may be amended by written agreement of the Liquidation Trustee and the Oversight Committee or by order of the Bankruptcy Court;

provided, however, that such amendment may not be inconsistent with the Plan, Confirmation Order, or Sale Order.

**Section 11.08  No Waiver**. No failure or delay of any party to exercise any right or remedy pursuant to this Agreement shall affect such right or remedy or constitute a waiver thereof.

**Section 11.09  No Relationship Created**. Nothing contained herein shall be construed to constitute any relationship created by this Agreement as an association, partnership, or joint venture of any kind.

**Section 11.10  Severability**. If any term, provision, covenant, or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable, or against its regulatory policy, the remainder of the terms, provisions, covenants, and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired, or invalidated.

**Section 11.11  Further Assurances**. Without limitation of the generality of Section 3.04 of this Agreement, the Parties agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes and provide for the full implementation of this Agreement and the pertinent provisions of the Plan, and to consummate the transactions contemplated hereby.

**Section 11.12  Counterparts**. This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

**Section 11.13  Jurisdiction**. The Bankruptcy Court shall have jurisdiction over the Trust, Trustee, and Trust Assets, including, without limitation, the determination of all disputes arising out of or related to administration of the Trust. The Bankruptcy Court shall have exclusive jurisdiction and venue to hear and finally determine all matters among the Parties arising out of or related to this Agreement or the administration of the Trust.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the date set forth above.

[DEBTOR]                              [TRUSTEE]

By_____                   By_____

Name:                                 Name:

Title:                                Title:



                                      [SECURED LENDER]

                                      By_____

                                      Name:

                                      Title:

23

## EXHIBIT A

### Terms of Compensation of Trustee

- <u>Compensation</u>. In consideration for the services of the Liquidation Trustee under this Agreement, the Liquidation Trustee shall receive the following compensation from the Trust Assets: (a) start-up costs not to exceed $[20,000/$ AMOUNT]; (b) a monthly fee of $[15,000/$ AMOUNT]; and (c) reimbursement of reasonable and necessary expenses, including payment of all fees and expenses of the Liquidation Trustee's attorneys incurred in drafting, reviewing, revising, negotiating, and executing this Agreement, the Plan, Confirmation Order, and any related documents.

- <u>Payment of Monthly Fee and Start-Up Costs; Full Fee for Initial Month</u>. The Liquidation Trustee's monthly fee, together with payment of any start-up costs and expenses under the above paragraph, shall be payable out of the Trust Assets beginning on the Effective Date and continuing thereafter until the Liquidation Trustee is discharged. The first monthly fee shall be incurred immediately on the Confirmation Date, but not payable until the appointment of the Liquidation Trustee on the Effective Date. The Liquidation Trustee shall be entitled to payment of its entire monthly fee, without prorating, for and beginning with the month in which the Liquidation Trustee is appointed.

- <u>Means and Timing of Payment</u>. The Liquidation Trustee's monthly fee shall be automatically paid in advance by wire transfer or equivalent electronic means in the Liquidation Trustee's discretion on the Effective Date and thereafter on the first day of each month though and including the month in which the Liquidation Trustee is discharged.

24