UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In re: | Bankr. No. 25-30004 |
| The Ruins, LLC, | Chapter 11 |
| Debtor. | |

**WDC's OBJECTION TO DISCLOSURE STATEMENT FOR SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION OF THE RUINS, LLC**

1. Watertown Development Company ("WDC"), through its undersigned counsel, hereby objects to the Disclosure Statement for Second Amended Chapter 11 Plan of Reorganization of The Ruins, LLC (the "Disclosure Statement") (doc. 200) on the basis that it does not contain adequate information as required by 11 U.S.C. § 1125.

2. WDC is a non-profit corporation organized under the laws of the State of South Dakota.

3. WDC filed a Proof of Claim on March 10, 2025. (*See* Claims Registry, Claim No. 7.) WDC is a secured creditor and holds a pre-petition claim in the amount of $2,485,641.14. (*Id.*)

4. No objection has been made to WDC's claim.

5. Debtor filed its Second Amended Chapter 11 Plan of Reorganization of The Ruins, LLC (the "Plan") on September 23, 2025. (Doc. 181.)

6. The Disclosure Statement (and the Plan itself) not only fails to contain adequate information, but it also contains incorrect information regarding WDC's claim.

7. In describing WDC's claim (doc. 200, p. 7), Debtor refers to the "TIF Arrangement," which is fundamentally misstated by Debtor. The Disclosure Statement

1

represents that $2,448,400.91 will be paid toward WDC's claim by the City of Watertown, and all Debtor has to do in exchange is pay its property taxes.  <u>This is plainly incorrect</u> and will leave creditors reading the Disclosure Statement with the impression that WDC will not need to utilize dollars from its monthly or annual cash flow to pay a substantial portion of WDC's claim.

8. The underlying loan documents attached to WDC's claim unequivocally demonstrate that Debtor signed a Loan Agreement dated March 16, 2021, and a Promissory Note of the same date in the original principal amount of $2,275,000.00.  (Claims Registry, Claim No. 7, Exs. 1 and 2.)  Debtor is absolutely liable to WDC for the full amount of the debt, despite Debtor's attempt to shift responsibility for the lion's share of the debt to the City of Watertown.

9. Debtor provides no support for it statement that "WDC shall receive $2,448,400.91 from the City of Watertown."  (Doc. 200, p. 7.)

10. While it is true that Debtor is a party to agreements that establish a tax increment financing ("TIF") district in Watertown, South Dakota the implications of those agreements are misstated by the Debtor, and Debtor does not provide evidentiary support of its position.  The details of TIF financing can be complex, but the general concept is simple.  To facilitate development in downtown Watertown, the City of Watertown agreed to establish a TIF District encompassing the real estate where Debtor's sole asset, an unfinished apartment complex, is situated (the "Real Estate").  The purpose of the TIF is to allow the Debtor to recapture a portion of the property taxes it pays every year on the Real Estate in the form of a grant, which also helps Debtor repay the loan it took from WDC to finance acquisition of the land and the construction.

11. A copy of the Development Agreement is attached to the Affidavit of Jennifer Collins that is submitted with this objection (the "Collins Aff").

12. Debtor and the City of Watertown are the sole parties to a Development Agreement which establishes the TIF arrangement. (Collins Aff. Ex. A.) Exhibit B to the Development Agreement is the Tax Increment Project Plan (the "TIF Project Plan"). The estimated tax revenues are set forth on page 13 of the TIF Project Plan. The assumptions upon which the estimated tax revenues are based are set forth on page 18-19 of the TIF Project Plan. Among the assumptions are the date on which construction would be completed, the assessed value upon completion of construction, and the average tax levy amount, all of which was and is subject to change. (*Id.*)

13. Importantly, the Development Agreement and the TIF Project Plan are based on the parties *estimates* of the future value of the Real Estate and the corresponding property tax that could reasonably be expected to flow from it. From there, the parties determined the estimated grant Debtor would receive from the City over the 20-year TIF period. To determine the amount of the grant, the Real Estate was valued before any improvements were made (the "Base Value"), and then the parties *estimated* what the value of the Real Estate would be after completion of construction. (*See* Collins Aff., Ex. A, Development Agreement, Section 1.) Pursuant to the Development Agreement, the property taxes paid on the difference between the Base Value and the final value (which was *estimated* in the Development Agreement) constitute the TIF Revenue to which the Debtor is entitled to receive as a grant from the City of Watertown. (*Id.*, Section 2.) Section 2.01 of the Development Agreement states: "City agrees to pay to Developer through a grant, but solely from Tax Increment Revenues, a sum not to exceed $2,448,400.91." (*Id.*) (emphasis added).

14. The estimated amount of the grant was used to determine the amount of the loan WDC made to Debtor, and in return, Debtor assigned all of its rights to the grant money it would

3

receive from the City of Watertown to Red River State Bank and WDC. (Collins Aff., Ex. A, Development Agreement, Section 2.09.)

15.     The grant amount *must be* an estimate because the assessed value of the Real Estate can and likely will change every year, and there would be no way to anticipate the future assessed value of the Real Estate from year-to-year. The assessed value depends on many variables like market conditions and here, most notably, completion of construction. Because The Ruins is not completed, the value of the Real Estate is lower than it would be if construction was complete. Accordingly, the amounts that are and will continue to be realized through the TIF grant are undeniably lower than the amounts estimated on the front end in a Development Agreement that assumed the timely completion of construction.

16.     Importantly, nothing in any of these agreements: (i) established a definitive grant amount; (ii) made the City of Watertown liable to WDC for the debt; (iii) established a separate portion of the debt for which Debtor was responsible; or (iv) states that WDC's receipt of the real estate tax proceeds every year satisfies Debtor's obligations under the loan documents. The Debtor is the only borrower and obligor on the full amount of the debt owed to WDC.

17.     Debtor's obligation to repay WDC is absolute and wholly independent of any amounts it receives from the City of Watertown through a grant. In other words, and by way of example only, if the Real Estate were assessed such that there is no value exceeding the Base Value, Debtor would be entitled to nothing under the TIF grant, but Debtor would still owe WDC for the loan it received. There is simply no contingency that excuses Debtor from liability to repay the loan if the TIF amount is less than expected.

18.     The actual structure of the TIF Arrangement is at odds with Debtor's explanation in the Disclosure Statement. Debtor characterizes the $2,448,400.91 as a sum certain that will be

4

paid by the City of Watertown to WDC, which is incorrect. The amount to be paid to WDC through the TIF will be unknown until the completion of the 20-year period over which the grant is paid. Nobody can predict the assessed value of the Real Estate in future years, especially given that the timeline for finishing construction is unknown, making it impossible to know how much Debtor will ultimately receive in grant funds. The only guarantee provided in the Development Agreement as to the grant amount is set forth in Section 2.01, which states that the grant amount will not "exceed $2,448,400.91." The Development Agreement specifically contemplates that the maximum grant amount may never be realized. Section 2.08 states: "Developer [(Debtor)] shall bear all risks that such Tax Increment Revenues may be insufficient to pay the maximum amounts specified in Section 2.01." (Collins Aff., Ex. A, Development Agreement, Section 2.08.) This section also states that the "City's obligations hereunder are limited obligations payable solely out of the Tax Increment Revenues and are not payable form any other revenues of City, nor a charge against its general taxing power." (*Id.*)

19. WDC filed an objection (doc. 53) to Debtor's first proposed plan which explained, in detail, why the description of the TIF in the original plan and the repayment obligations to WDC were wrong. Debtor, however, included essentially the same incorrect and misleading information in its first and second Disclosure Statement several months later.

20. Because the Disclosure Statement does not accurately describe the TIF, and because it states that a substantial portion of WDC's claim will be paid by a third party when it will not be, the Disclosure Statement does not contain adequate information and cannot be approved by the Court.

21. The Disclosure Statement is also insufficient because it does not contain a liquidation analysis or income and expense projections. It is insufficient for Debtor to introduce

5

these items at a plan confirmation hearing, because creditors should have this information when deciding whether or not to support a plan. Because this information is missing from the Disclosure Statement, it does not contain adequate information.

WHEREFORE, WDC respectfully requests that the Court determine that the Disclosure Statement does not contain adequate information as required by 11 U.S.C. ¶ 1125.

Dated this 29th day of December, 2025.

> WOODS, FULLER, SHULTZ & SMITH P.C.
>
> By /s/ Jordan J. Feist  _
>   Jordan J. Feist (#08592)
>   P.O. Box 5027
>   300 South Phillips Avenue, Suite 300
>   Sioux Falls, SD 57117-5027
>   Phone (605) 336-3890
>   Fax (605) 339-3357
>   Jordan.Feist@woodsfuller.com
>   Attorneys for Watertown Development Company

## CERTIFICATE OF SERVICE

The undersigned states that on the 29th day of December, 2025, I served a copy of the foregoing Objection to Disclosure Statement for Second Amended Chapter 11 Plan of Reorganization of The Ruins, LLC electronically upon all CM/ECF participations in this case, including upon the attorney for the Debtor and the U.S. Trustee.

> */s/ Jordan J. Feist*  
> Attorney for Watertown Development Company