UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In re:<br><br>The Ruins, LLC,<br><br>                     Debtor. | Bankr. No. 25-30004<br><br>Chapter 11 |

## AFFIDAVIT OF JENNIFER COLLINS

STATE OF SOUTH DAKOTA     )
                                 :SS
COUNTY OF CODINGTON      )

     I, Jennifer Collins, hereby state and declare as follows:

     1.     I am the Licensing and Records Manager for the City of Watertown, South Dakota, a position which I have occupied for approximately 2 ½ years.

     2.     I have personal knowledge of the matters described in this Affidavit.

     3.     Attached as <u>Exhibit A</u> and incorporated herein by reference is a true and correct copy of a Development Agreement between the City of Watertown and The Ruins, LLC, that is maintained by the City of Watertown in the ordinary course of its business. I am one of the persons who has custody and control of such document as the Licensing and Records Manager.

     Dated this 19th day of November, 2025.

                                           Jennifer Collins

Subscribed and sworn to before me
this 19th day of November, 2025.

Notary Public – South Dakota
My commission expires: 2|14|29



Emily Forrest
NOTARY PUBLIC
SOUTH DAKOTA
SEAL

1



Document Prepared By:
City Attorney's Office
PO Box 910
Watertown, SD 57201-0910
605-882-6200

INSTRUMENT NO. 202102986  Pages: 46
BOOK: 4T  DEVELOPMENT AGREEMENT
PAGE: 8731

5/21/2021 2:55:00 PM

*Ann Rasmussen*

ANN RASMUSSEN, REGISTER OF DEEDS
CODINGTON COUNTY, SOUTH DAKOTA
Recording Fee: 30.00
Return To: CITY OF WATERTOWN

## TIF #16 DEVELOPMENT AGREEMENT

**THIS DEVELOPMENT AGREEMENT** (this "*Agreement*") is entered into as of this 12th day of May , 2021 (the "*Effective Date*") by and between the **CITY OF WATERTOWN** a South Dakota Municipality ("*City*"), and **THE RUINS, LLC,** a South Dakota Limited Liability Company ("*Developer*").

### RECITALS:

**WHEREAS**, City has an interest in promoting economic development and is authorized pursuant to SDCL Chapter 11-9 (the "*Act*"), and any amendments thereto, to create tax increment districts for such purposes; and

**WHEREAS**, Developer intends to construct a mixed-use facility consisting of main floor commercial or public use space, as well as a 63 units of residential apartments in Downtown Watertown adjacent to the future downtown city park based in part on the City's creation of a tax increment district that will provide a grant to Developer; and

**WHEREAS**, in order to accelerate the development of certain property that would not otherwise occur solely through private investment in the reasonably foreseeable future, the City Council of the City of Watertown (the "*Council*") on March 1, 2021 adopted Resolution No. 21-10, a true and correct copy of which is attached hereto as *Exhibit A*, to create Tax Increment District Number 16 (the "*TID*" or "*District*" or "*TIF #16*"), encompassing the following described real property (the "*TID Property*"):

*The West 85' of Lots 19, 20, 21, & 22 in Block 1 of the Original Plat of the City of Watertown, Codington County, South Dakota;*

*Lots 15 & 16 in Block 1 of the Original Plat of the City of Watertown, Codington County, South Dakota;*

*Lots 1, 2, 3, 4, 5, 6, & 7 of Monk's & Sheldon's Subdivision of Lots 17 & 18 in Block 1 of the Original Plat of the City of Watertown, Codington County, South Dakota;*

*The 20' Wide Alley Lying Adjacent to Lots 15, 16, 19, 20, 21 & 22 in Block 1 of*

# EXHIBIT A

*the Original Plat of the City of Watertown and Adjacent to Lot 7 of Monk's & Sheldon's Subdivision of Lots 17 & 18 in Block 1 of the Original Plat of the City of Watertown, Codington County, South Dakota;*

*The 20' Wide Alley Lying Adjacent to Lots 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15 & 22 in Block 1 of the Original Plat of the City of Watertown, Codington County, South Dakota;*

*The East 23 Feet of 3rd Street NE Lying Adjacent to Lots 15 & 16 in Block 1 of the Original Plat of the City of Watertown, Codington County, South Dakota; and Adjacent to Lot 1 of Monk's & Sheldon's Subdivision of Lots 17 & 18 in Block 1 of the Original Plat of the City of Watertown, Codington County, South Dakota; and Adjacent to the North 14 feet of E Kemp Avenue; and adjacent to the 20' Alley Lying Adjacent Thereto;*

*The North 14 Feet of E. Kemp Avenue Lying Adjacent to the West 85 Feet of Lot 19 in Block 1 of the Original Plat of the City of Watertown, Codington County, South Dakota; and Adjacent to Lots 1-7 of Monk's Subdivision of Lots 17 & 18 in Block 1 of the Original Plat of the City of Watertown, Codington County, South Dakota; and Adjacent to the 20' Alley Lying Adjacent thereto.*

**WHEREAS,** the Act authorizes the expenditure of funds derived within a tax increment district for the payment of expenditures made or estimated to be made and monetary obligations incurred or estimated to be incurred by the City establishing the TID, for grants, costs of public works or public improvements in the TID, plus other costs incidental to those expenditures and obligations, consistent with the project plan of the TID, which expenditures and monetary obligations constitute project costs, as defined in Section 11-9-14 of the Act; and

**WHEREAS,** on March 1, 2021, the Council adopted Resolution No. 21-10 to approve the Tax Increment Project Plan, a true and correct copy of which is attached hereto as *Exhibit B* and incorporated by reference, providing for development of the TID Property (the "***Project Plan***"), which included the payment of a grant to Developer in an amount not to exceed $2,448,400.91 toward certain costs of development as described in the Project Plan.

**NOW, THEREFORE,** in consideration of the mutual promises, covenants, obligations, apportionment and benefits contained in this Agreement, City and Developer hereby agree as follows:

**Section 1.  Definitions**

Unless the context otherwise requires, the terms used in this Agreement will have the meanings set forth in this Section.  If not defined in this Agreement, capitalized terms will have the meaning given to them in the Project Plan.

"**Base Revenues**" means the taxes collected on the Base Value.

2

**"Base Value"** means the value of the TID Property at the time of the creation of the district as certified by the South Dakota Department of Revenue.

**"Construction Schedule"** means the timetable for constructing the improvements specified in Section 3.01(b).

**"Grant"** means an amount not to exceed $2,448,400.91 through the use of Tax Increment Revenues.

**"Project"** means the construction of a residential, commercial, and public space mixed-use facility in Downtown Watertown adjacent to the future downtown park.

**"Project Costs"** means $2,448,400.91 of construction costs associated with the Project.

**"Public Improvements"** means all improvements referenced in the Project Plan that constitute public improvements to be dedicated to the City upon completion.

**"Tax Increment Revenue(s)"** means all tax revenues of the TID Property in excess of the Base Revenues.

Words used herein in the singular, where the context so permits, also includes the plural and vice versa, unless otherwise specified. Unless otherwise specified, the terms used in this Agreement found in the Act shall have the meaning set forth in the Act.

## Section 2.  Obligation and Representations

**2.01    Remittance of Tax Increment Revenues.** City agrees to pay to Developer through a grant, but solely from Tax Increment Revenues, a sum not to exceed $2,448,400.91.

**2.02    Grant.** The parties acknowledge that Developer's right to receive the Tax Increment Revenues hereunder is a grant under the Act, and a personal property right vested with Developer on the date hereof.

**2.03    No Certificated Tax Increment Revenue Bonds.** City will have no obligations to the Developer except as set forth in this Agreement, and will not issue any certificated tax increment revenue bonds to evidence such obligations.

**2.04    Developer's Representations.**

    (a)    Developer is a Limited Liability Company organized in the State of South Dakota.

    (b)    Developer has the authority to enter into this Agreement and to perform the requirements of this Agreement.

    (c)    Developer's performance under this Agreement will not violate any applicable judgment, order, law or regulation.

3

(d)     Developer's performance under this Agreement will not result in the creation of any claim against City for money or performance, any lien, charge, encumbrance or security interest upon any asset of City.

(e)     Developer will have sufficient capital to perform all of its obligations under this Agreement.

(f)     Developer owns the TID Property.

(g)     Developer waives its right to participate in the County's Property Tax Reduction Program for the Project.

**2.05    Approvals.** The City's obligations pursuant to this Agreement are specifically conditioned upon the resolution implementing TIF #16 becoming effective. The City will make good faith efforts to timely introduce and secure approval of such resolution.

**2.06    Payment of Tax Increment Revenues.** Upon Developer's South Dakota propety tax payments each April and October, Developer will provide City with documentation confirming such payments. City will refund to Developer the Tax Increment Revenue portion of each payment within a reasonable time, but not later than each June 15 and December 15, respectively.

**2.07    Continued Cooperation.** City and Developer represent each to the other that they will make reasonable efforts to expedite the subject matters hereof and acknowledge that the successful performance of this Agreement requires its continued cooperation.

**2.08    No General Obligation of the City.** City's obligations hereunder are limited obligations payable solely out of the Tax Increment Revenues and are not payable from any other revenues of City, nor a charge against its general taxing power. Developer shall bear all risks that such Tax Increment Revenues may be insufficient to pay the maximum amounts specified in Section 2.01.

**2.09    Assignment of Payments.** For the purpose of financing its obligations related to this Agreement, Developer hereby pledges, transfers, and assigns its right to payments hereunder to Red River State Bank (Red River), a Minnesota chartered bank, 114 North Mill Street, Fertile, MN 56540, and Watertown Development Company (WDC), 1 East Kemp Ave, Watertown, SD 57201. Developer directs the City to pay and remit directly to Red River State Bank each and every payment and reimbursement to be made pursuant to this Agreement up to $580,000.00. Developer then directs the City to pay and remit directly to Watertown Development Company each and every remaining payment and reimbursement over and above $580,000.00 to be made pursuant to this Agreement. The City shall not begin to remit payments to WDC unless and until Red River gives written notification to the City that's all its debt related to this project has been paid in full.

The City consents to the assignment and agrees to remit payments made under this Agreement to Red River and WDC and to provide both Red River and WDC concurrent copies of any written notice delivered to Developer. Upon written notice to the City, and with the express written consent of Red River and WDC, Developer may re-assign to itself or another third party its right to payments hereunder. Irrespective of the assignee, Developer's right to such payments is subject to the other limitations of this Agreement.

4

## Section 3.  The Project.

**3.01    The Project.**  The Project will be comprised of real estate, and the design, construction, assembly, and installation of the improvements described in the Project Plan.

(a)    Description of the Project.  The Project consists of $2,448,400.91 of improvements to the property as described in the Project Plan.

(b)    Completion of the Project Improvements:  Developer shall diligently work to complete the respective portions of the project by December 31, 2022.

The time periods set forth above in this Section 3.01(b) shall be extended by reason of delays caused by Force Majeure.  As used herein, "Force Majeure" shall refer to delays caused by or occasioned by labor disputes, acts of God, moratoriums, war, riots, insurrections, civil commotion, a general inability to obtain labor or materials, fire, unusual delay in transportation, severe and adverse weather conditions preventing performance of work, unavoidable casualties, failures to act by any governmental entity or their respective agents or employees, governmental restrictions, regulations or controls including the inability to obtain the necessary governmental approvals and/or permits necessary to complete any portion of the Project.

**3.02    Construction of the Public Improvements.**  The City of Watertown will cause Public Improvements to be constructed by the Developer through private contract.  The City will not bid nor contract any improvement described in the Project Plan or this Agreement.

**3.03    Financing of the Project and Improvements.**  Payment of all Project Costs will be made from Developer's own capital and/or other sources obtained solely by Developer. Developer may use any or part of the TID Property as collateral for such loans as required to pay Project Costs.

## Section 4.  Developer Covenants

**4.01    Duties and Obligations of Developer.**  Developer hereby agrees to:  (a) complete, or cause to be completed, all improvements described in the Project Plan and this Agreement, (b) provide, or cause to be provided, all materials, labor, and services for completing the Project, (c) obtain or cause to be obtained, all necessary permits and approvals from City and/or all other governmental agencies having jurisdiction over the construction of improvements to the TID Property, (d) provide the City all necessary information, including documentation of actual expenses incurred for Reimbursable Project Costs, and (e) submit written annual reports, starting no later than thirty (30) days following the end of the fiscal year in which the TID was created detailing the amount of Tax Increment Revenues received and the amounts thereof applied to pay Developer's Project Costs.

**4.02    Insurance.** Developer will maintain a policy of liability insurance, acceptable to City, with liability limits of at least One Million Dollars ($1,000,000) that names City as an additional insured. Such a policy must remain in effect until City accepts the improvements. City will provide no insurance for the Project.

5

**4.03    Indemnification.** Except to the extent of the negligence or willful misconduct of Indemnitees, Developer will without a determination of liability or payment being made FULLY INDEMNIFY, DEFEND, and HOLD HARMLESS, City (and the elected officials, employees, officers, directors, and representatives of City) (collectively, "Indemnitees") from and against any and all costs, claims, liens, damages, losses, expenses, fees, fines, penalties, proceedings, actions, demands, causes of action, liability and suits of any kind and nature, including but not limited to, personal injury or death and property damage, made upon City directly or indirectly arising out of, resulting from or related to Developer's negligence, willful misconduct or criminal conduct in Developer's activities under this Agreement, including any such acts or omissions of Developer, its Members, Managers, any agent, officer, director, representative, employee, consultant or subconsultants of Developer, and their respective officers, agents, employees, directors and representatives while in the exercise or performance of the rights or duties under this Agreement, all without, however, waiving any governmental immunity available to City under South Dakota law and without waiving any defenses of the parties under South Dakota law. The provisions of this INDEMNIFICATION are solely for the benefit of the parties hereto and not intended to create or grant any rights, contractual or otherwise, to any other person or entity. Developer will promptly advise City in writing of any claim or demand against City related to or arising out of Developer's activities under this Agreement and will see to the investigation and defense of such claim or demand at Developer's cost to the extent required in this paragraph.  City will have the right, at its option and expense, to participate in such defense with attorneys of its choice, without relieving Developer of any of its obligations under this paragraph. Neither party shall be liable for incidental, indirect, special or consequential damages hereunder, even if advised of the possibility thereof.

**4.04    Liability.**  Developer will be solely responsible for compensation and taxes payable to any employee or contractor of Developer, and none of Developer's employees or contractors will be deemed to be employees or contractors of City.  No elected official, director, officer, employee, representative or agent of City shall be personally responsible for any liability arising out of or resulting from this Agreement.

**4.05    Taxes & Licenses.**  Developer will pay, on or before their respective due dates, to the appropriate collecting authority all Federal, State, and local taxes and fees that are now or may hereafter be levied upon the TID Property or upon Developer or upon the business conducted on the TID Property, or upon any of Developer's property used in connection therewith, including employment taxes; and Developer shall maintain in current status all Federal, State, and local licenses and permits required for the operation of the business conducted by Developer.

**4.06    Examination of Records.** Developer will allow City to conduct examinations and makes copies, during regular business hours and following notice to Developer by City, of the books and records related to this Agreement no matter where books and records are located.

## Section 5.  Term and Termination

**5.01    Term.**  The term of this Agreement shall commence on the date the resolution approving this Agreement becomes effective and end on the date which is the *earliest* to occur of the following, at which time City's obligations hereunder will be deemed fully discharged:

(i)     the date on which the amount payable under Section 2.01 has been paid in full to Developer, or to Developer's assign(s) pursuant to Section 2.09;

(ii)    the date this Agreement is terminated as provided in Section 5.02; or

(iii)   the 20th anniversary of the creation of the TID.

**5.02    Default and Termination.** If Developer fails to commence and complete construction substantially in accordance with the construction schedule detailed in Section 3.01(b) above, City may terminate this Agreement if Developer does not fully cure its failure within sixty (60) calendar days after receiving written notice from City requesting the failure be cured. If the Agreement is terminated as set forth in this Section, City's obligations under this Agreement will be deemed fully discharged.

### Section 6. Miscellaneous

**6.01    Non-Waiver.** Provisions of this Agreement may be waived only in writing. No course of dealing on the part of City, or Developer nor any failure or delay by City or Developer in exercising any right, power, or privilege under this Agreement shall operate as a waiver of any right, power or privilege owing under this Agreement.

**6.02    Entire Agreement.** This Agreement embodies the final and entire agreement between the parties hereto concerning the subject matter herein. The Exhibits attached to this Agreement are incorporated herein and shall be considered a part of this Agreement for the purposes stated herein, except that if there is a conflict between any such Exhibit and a provision of this Agreement, the provision of this Agreement will control.

**6.03    Amendments.** All amendments to this Agreement and the Project Plan may only be made in a writing executed by City and Developer, after obtaining all necessary approvals.

**6.04    Severability.** If any clause or provision of this Agreement is held invalid or unenforceable, such holding will not invalidate or render unenforceable any other provision hereof.

**6.05    Venue and Governing Law.** This Agreement shall be construed under and in accordance with the laws of the state of South Dakota. Any legal action or proceeding brought or maintained, directly or indirectly, as a result of this Agreement shall be heard and determined in Codington County, South Dakota.

**6.06    Notice.** Any notice sent under this Agreement shall be written and mailed with sufficient postage, sent by certified mail, return receipt requested, documented facsimile or delivered personally to an officer of the receiving party at the following addresses:

| **City:** | **Developer:** | **Assignee:** | **Assignee:** |
|---|---|---|---|
| City of Watertown | The Ruins, LLC | Red River State Bank | WDC |
| PO Box 910 | 1405 1ˢᵗ Ave N | 114 North Mill St. | 1 East Kemp |
| Watertown, SD 57201 | Fargo, ND 58102 | Fertile, MN 56540 | Watertown, SD 57201 |

7

Any of the above parties may, by notice given hereunder, designate any further or different addresses to which subsequent notices, certificates, or other communications may be sent.

**6.07    Assignment.** This Agreement shall inure to the benefit of, and be binding upon, the successors and assigns of Developer.

**6.08    Captions.** Captions used herein are only for the convenience of reference and shall not be construed to have any effect or meaning as to the agreement between the parties hereto.

IN WITNESS THEREOF, the parties hereto have caused this instrument to be duly executed as of the day and year first written above.

**THE RUINS, LLC**

Jesse Craig
Managing Member

STATE OF ___*ND*___ )
                                          : SS.
COUNTY OF ___*Cass*___ )

On this the _26th_ day of ___*April*___, 2021, before me, the undersigned officer, personally appeared Jesse Craig, who acknowledged himself to be the Managing Member of The Ruins, LLC, and that he as such Managing Member, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of The Ruins, LLC, by himself as a Managing Member.

IN WITNESS THEREOF I hereunto set my hand and official seal.

ANGELA THOMAS
Notary Public
State of North Dakota
My Commission Expires Nov. 9, 2023

Notary Public – ~~South Dakota~~ *North Dakota*
My Commission Expires:

*Additionaal Signature and Notary Page Follows*

8

CITY OF WATERTOWN

Sarah Caron, PE, CFM
Mayor


ATTEST:

Kristen Bobzien
Finance Officer

(SEAL)


STATE OF SOUTH DAKOTA      )
                           : SS.
COUNTY OF CODINGTON        )

On this the 12 day of May, 2021, before me, the undersigned officer, personally appeared Sarah Caron and Kristen Bobzien, who acknowledged themselves to be the Mayor and Finance Officer, respectively, of the City of Watertown, a municipal corporation, and that they as such Mayor and Finance Officer, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the City of Watertown by themselves as Mayor and Finance Officer.

IN WITNESS THEREOF I hereunto set my hand and official seal.


(SEAL)

Notary Public – South Dakota
My Commission Expires: 7-10-24



9

# Exhibit A

**RESOLUTION NO. 21-10**

**A RESOLUTION TO PROVIDE FOR THE CREATION OF
TAX INCREMENT DISTRICT NUMBER SIXTEEN**

**WHEREAS,** the Planning Commission of the City of Watertown has held a public hearing on March 1, 2021 and adopted and recommended the district boundaries and tax increment plan for Tax Increment District Number Sixteen, City of Watertown, South Dakota and;

**WHEREAS,** the City Council of the City of Watertown, South Dakota (the "City"), has the powers, pursuant to SDCL 11-9-2, to create Tax Increment District Number Sixteen, City of Watertown, South Dakota, and to define its boundaries.

**NOW, THEREFORE, BE IT RESOLVED BY THE CITY COUNCIL OF THE CITY OF WATERTOWN, SOUTH DAKOTA:**

That pursuant to SDCL Chapter 11-9, the City Council hereby declares the following:

1. <u>Authority and Declaration of Necessity.</u> The City of Watertown, South Dakota, declares the necessity for the creation of Tax Increment District Number Sixteen, City of Watertown, (hereinafter sometimes referred to as the "District"), pursuant to SDCL Chapter 11-9. Further, the City recognizes that the renewal area requires a coordinated, cooperative strategy, with financing possibilities, to eliminate blight, prevent the spread of blight, and accomplish the City's development objectives for improving the continued viability of downtown Watertown.

2. <u>Findings.</u> The City Council makes the following findings with regard to economic development:
   a. More than 50% of the property in the District by area will stimulate and develop the general economic welfare and prosperity of the City;
   b. Improvements to the District will significantly and substantially enhance the value of all property within the District;
   c. Development of the District will enhance sales tax revenue and create employment in the District;
   d. Development of the District will create an opportunity for a future development and employment once the improvements have been made.

3. <u>Findings of Maximum Percentage of Tax Increment Districts.</u> The aggregate assessed value of the taxable property in the District, plus all other tax increment districts, does not exceed ten percent (10%) of the total assessed valuation of the City.

4. <u>Creation of District.</u> There is hereby created, pursuant to SDCL Chapter 11-9, Tax Increment District Number Sixteen, City of Watertown, South Dakota. The District is hereby created on the day this resolution becomes effective which shall be twenty (20) days after publication of this resolution.

5. <u>Designation of District Boundaries.</u> The District shall be located within the northern, southern, western and eastern boundaries of the following described real property:

   The West 85' of Lots 19, 20, 21, & 22 in Block 1 of the Original Plat of the City of Watertown, Codington County, South Dakota;

Lots 15 & 16 in Block 1 of the Original Plat of the City of Watertown, Codington County, South Dakota;

Lots 1, 2, 3, 4, 5, 6, & 7 of Monk's & Sheldon's Subdivision of Lots 17 & 18 in Block 1 of the Original Plat of the City of Watertown, Codington County, South Dakota;

The 20' Wide Alley Lying Adjacent to Lots 15, 16, 19, 20, 21 & 22 in Block 1 of the Original Plat of the City of Watertown and Adjacent to Lot 7 of Monk's & Sheldon's Subdivision of Lots 17 & 18 in Block 1 of the Original Plat of the City of Watertown, Codington County, South Dakota;

The 20' Wide Alley Lying Adjacent to Lots 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15 & 22 in Block 1 of the Original Plat of the City of Watertown, Codington County, South Dakota;

The East 23 Feet of 3rd Street NE Lying Adjacent to Lots 15 & 16 in Block 1 of the Original Plat of the City of Watertown, Codington County, South Dakota; and Adjacent to Lot 1 of Monk's & Sheldon's Subdivision of Lots 17 & 18 in Block 1 of the Original Plat of the City of Watertown, Codington County, South Dakota; and Adjacent to the North 14 feet of E Kemp Avenue; and adjacent to the 20' Alley Lying Adjacent Thereto;

The North 14 Feet of E Kemp Lying Adjacent to the West 85 Feet of the Lot 19 in Block 1 of the Original Plat of the City of Watertown, Codington County, South Dakota; and Adjacent to Lots 1-7 of Monk's Subdivision of Lots 17 & 18 in Block 1 of the Original Plat of the City of Watertown, Codington County, South Dakota; and Adjacent to the 20' Alley Lying Adjacent thereto.

6. <u>Creation of Tax Increment Fund.</u> There is hereby created, pursuant to SDCL 11-9-31, a Tax Increment District Number Sixteen Fund, which shall be a segregated asset account. All tax increments collected pursuant to Tax Increment District Number Sixteen shall be deposited into the Tax Increment District Number Sixteen Fund. All funds in the Tax Increment District Number Sixteen Fund shall be used solely for those purposes expressly stated and reasonably inferred in SDCL Chapter 11-9 and per the Developer's Agreement between the Developer and City of Watertown.

7. <u>Adoption of Tax Increment Plan.</u> The City Council of the City of Watertown does hereby adopt the Tax Increment Plan Number Sixteen as presented.

Dated this 1ˢᵗ day of March, 2021

The above and foregoing Resolution was moved for adoption by Alderperson Holien, seconded by Alderperson Lalim, and upon voice vote motion carried, whereupon the Mayor declared the Resolution to be duly passed and adopted.

I hereby certify that Resolution No. 21-10 was published in the Watertown Public Opinion, the official newspaper of said City, on the 6ᵗʰ day of March, 2021.

Kristen Bobzien, Finance Officer

ATTEST:                                                    CITY OF WATERTOWN

Kristen Bobzien
Finance Officer

Sarah Caron, PE, CFM
Mayor

# Exhibit B

## City of Watertown, S.D.
## Tax Increment Financing District
## Plan No. 16

## The Ruins

## Craig Development, LLC and Terry Stroh
## Affordable Housing Project

Prepared by:

Traci Stein, CEDFP

Watertown Development Company

February 23, 2021

## Table of Contents

*Introduction, Summary, and Purpose* ............................................................................... *4*

**Introduction** ................................................................................................................. **4**

**Summary** ...................................................................................................................... **5**

**Purpose** ........................................................................................................................ **6**

*Project Plan Requirements – Contents as per SDCL § 11-9-13* .................................. *7*

The Kind, Number, and Location of All Proposed Public Works or Improvements Within the District; ........... 7
Economic Feasibility Study ............................................................................................................. 7
Detailed List of Estimated Project Costs ........................................................................................ 7
Fiscal Impact Statement ................................................................................................................. 7
Description of Methods of Financing .............................................................................................. 7

**Additional contents of project plan. The project plan for each District shall also include SDCL § 11-9-16:** ...................................................................................................................... **7**

(1)    A map showing the existing uses and conditions of real property in the district; ..................... 7
(2)    A map showing the proposed improvements and uses; .......................................................... 7
(3)    A map showing the proposed changes of zoning ordinances; ................................................ 7
(4)    A statement listing changes needed in the master plan, map, building codes, and municipal ordinances; . 7
(5)    A list of estimated non-project costs; and ............................................................................. 7
(6)    A statement of a proposed method for the relocation of persons to be displaced. ................. 7

*Proposed Tax Increment Financing District No. 16 Location* ................................... *8*

Address Locations: ......................................................................................................................... 8
Legal Description: ........................................................................................................................... 8

*Exhibit A – TIF 16 Boundary Map* ............................................................................ *9*

*Schedule 1: Statement of the Kind, Number and Location of All Proposed Public Works or Improvements Within the District SDCL 11-19-13(1)* ............................................. *10*

**Capital Costs 11-9-15(1)** ............................................................................................ **10**

Acquisition of Easements ............................................................................................................. 10
Demolition .................................................................................................................................... 10
Site Grading ................................................................................................................................. 10
Sanitary Sewer System Improvements ......................................................................................... 10
Water System Improvements ........................................................................................................ 11
Stormwater Management System Improvements .......................................................................... 11
Electric Service ............................................................................................................................ 11
Gas Service .................................................................................................................................. 11
Communication Infrastructure ...................................................................................................... 11
Street Improvements .................................................................................................................... 11
Streetscaping and Landscaping ................................................................................................... 11

**Financing Costs SDCL 11-9-15(2)** ............................................................................. **12**

**Professional Service Costs SDCL 11-9-15(4)** ........................................................... **12**

**Imputed Administrative Costs SDCL 11-9-15(5)** ..................................................... **12**

**Relocation Costs SDCL 11-9-15(6)** ............................................................................ **12**

**Organizational Costs SDCL 11-9-15(7)** ..................................................................... **12**

**Environmental Audits and Remediation SDCL 11-9-15(7)** ...................................... **12**

**Payments and Grants Made SDCL 11-9-15(8)** .......................................................... **12**

*Maximum Amount of Tax Increment Revenue* ................................................................ *13*

*Eligible Project Costs* ..................................................................................................... *14*

*Expenditures Exceeding Estimated Cost* ....................................................................... *14*

*Schedule 2: Economic Feasibility Study* ....................................................................... *15*
Key Assumptions ............................................................................................................ 15
Analysis of Demand for Future Development Opportunities and Potential ....................... 15
Financing and Implementation ....................................................................................... 15

*Schedule 3: Detailed List of Estimated Costs* ............................................................. *16*

*Estimated Incremental Tax Revenue* ............................................................................ *17*

*Schedule 4: Fiscal Impact to Taxing Authorities* ........................................................ *18*

   **Definitions** ................................................................................................................. **18**

   **Assumptions** .............................................................................................................. **19**

*Taxable Value of City of Watertown* ............................................................................. *20*

   **Maximum Percentage of Taxable Property in Municipality Permitted in District** ........ **20**

*Schedule 5: Method of Financing* ................................................................................. *21*

*Additional Contents of Project Plan as Required by SDCL 11-9-16(1)* ....................... *22*

   **Existing Uses and Conditions of Real Property Map SDCL 11-9-16(1)** .......................... **22**

   **Proposed Improvements and Uses Map SDCL 11-9-16(2)** ........................................... **23**

*Proposed Changes on Zoning Ordinances SDCL 11-9-16(3)* ....................................... *24*

   **Changes to City Comprehensive/Master Plan Map, Building Codes and City Ordinances SDCL
11-9-16(4)** ..................................................................................................................... **24**

*Estimated Non-Eligible Project Costs 11-9-16(5)* ........................................................ *25*

*Statement of a Proposed Method for The Relocation of Persons to Be Displaced 11-9-16(6)* . *25*

*TIF District No. 16 Classification* .................................................................................. *26*

*Establishing Affordable Housing Purpose* ................................................................... *27*

   **Summary of Findings in Establishing Affordable Housing Purpose** .............................. **31**

*Required Findings in Resolution Creating District* ...................................................... *32*

   **Economic Development Analysis of City of Watertown TIF District No. 16** ................... **32**

*Definitions Used in This Plan* ....................................................................................... *33*

## Introduction, Summary, and Purpose

### Introduction

Tax increment financing (TIF) is an incentive utilized by local governments to attract private development and investment. New investment creates new jobs, more customers, and in turn, more investment opportunity. TIF can also retain existing businesses that might otherwise find more attractive options elsewhere. The jobs and additional investment, both private and public, mean more revenue for the community. TIF helps to overcome the extraordinary costs that often prevent redevelopment and private investment from occurring in difficult to develop areas of the community. As a result, the TIF District itself improves and property values increase.

In Watertown, TIF funding has been used for the following purposes: to encourage the redevelopment of deteriorated, or otherwise blighted real property; to stimulate economic development in the community by assisting projects that promote the long term economic vitality of Watertown; and, to stimulate increased private investment in areas that would have otherwise remained undeveloped or under-developed and which will, in the long term, provide a significant source of additional tax revenues to all taxing entities.



As set forth in South Dakota Codified Law, Chapter 11-9, a local government can designate a specific area within its boundaries as a redevelopment area appropriate for TIF district and prepare a plan for development. TIF projects must be approved by the City Planning Commission and the City Council.

## Summary

The City of Watertown has been requested to assist in a major development project by creating a Tax Increment Financing District to fund a portion of eligible site improvements at property located at what is referred to as "The Palace Apartments" and "Watertown Senior Citizens Center" in Watertown.

The Watertown Development Company, later referred to throughout this document as "WDC," is making the request on behalf of Craig Development, LLC, and Terry Stroh, who are the primary owners of the development property.

Tax Increment Financing District No. 16 is a proposed 63-unit apartment building project that will be created to pay the costs of public infrastructure, property acquisition, and other expenses needed to facilitate the construction.

Craig Development, LLC and Terry Stroh, will construct the facility, which is expected to result in over $9 million dollars in investment over a one-year timeframe. The development is estimated to produce an incremental valuation over $2.7MM over the 20-year life of the TIF District.

The Project Costs included in this Plan relate directly to promoting affordable housing in the District that are consistent with the purpose for which the District was created.



## Purpose

The purpose of this Plan, to be implemented by the City of Watertown, is to satisfy the requirements for Tax Increment Financing District No. 16, as specified in SDCL Chapter 11-9. There are 11 mandated requirements, each to be addressed in this Plan.

This Plan was prepared for adoption by the Watertown City Planning Commission and the Watertown City Council in recognition that the renewal area requires a coordinated, cooperative strategy to eliminate blight, prevent the spread of blight, and accomplish the City's development objectives for improving the continued viability of Watertown.

By utilizing Tax Increment Financing, proceeds from anticipated increases in property taxes can be used to fund necessary and eligible improvements at the Project Site. The District is being created by the City of Watertown under the authority provided by SDCL 11-9 and will be designated as an "Affordable Housing District" based on SDCL 13-13-10.9.

A combination of private investment and tax increment financing will assist in the progress toward the following objectives for the City of Watertown:

- To address and remedy conditions in the area that impair or arrest the sound growth of the City.
- To redevelop and rehabilitate the area in a manner which is compatible with and complementary to unique circumstances in the area.
- To effectively utilize underdeveloped land.
- To encourage the voluntary rehabilitation of conditions in the area.
- To improve areas that are likely to significantly enhance the value of all property in the district, and
- To contribute to increased revenues for all taxing entities.

The development of residential property which allows for the expansion of market rate housing, the generation of property tax in Watertown, and the growth of the city's workforce is an essential governmental purpose and stimulates further economic development.

## Project Plan Requirements – Contents as per SDCL § 11-9-13

SDCL states that the planning commission shall adopt a project plan for each district and submit the plan to the governing body.

The purpose of this Plan, to be implemented by the City of Watertown, is to satisfy the requirements for Tax Increment Financing District No. 16, as specified in SDCL Chapter 11-9. There are 11 mandated requirements, each to be addressed in this Plan:

### The Kind, Number, and Location of All Proposed Public Works or Improvements Within the District; Included as Schedule 1 is the kind, number, and location of all proposed public works or improvements within the district SDCL § 11-9-13(1).

### Economic Feasibility Study included as Schedule 2 is an Economic Feasibility Study per SDCL § 11-9-13(2)

### Detailed List of Estimated Project Costs Included as Schedule 3 is a detailed list of estimated Project Costs for the project as per SDCL § 11-9-13(3).

### Fiscal Impact Statement Included as Schedule 4 is a Fiscal Impact Statement showing the impact of the Tax Increment Financing District upon all entities levying property taxes in the district. Required as per SDCL § 11-9-13(4).

### Description of Methods of Financing SDCL § 11-9-13(5). Included as Schedule 5 is a description of the methods of financing all estimated project costs and the time when related costs or monetary obligations are to be incurred.

### Additional contents of project plan. The project plan for each District shall also include SDCL § 11-9-16:

(1) A map showing the existing uses and conditions of real property in the district;
(2) A map showing the proposed improvements and uses;
(3) A map showing the proposed changes of zoning ordinances;
(4) A statement listing changes needed in the master plan, map, building codes, and municipal ordinances;
(5) A list of estimated non-project costs; and
(6) A statement of a proposed method for the relocation of persons to be displaced.

## Proposed Tax Increment Financing District No. 16 Location

The proposed location of the TIF District is at an area referred to as "The Palace Apartments" and the "Watertown Senior Citizens Center" in Watertown.

### Address Locations:

315 E Kemp Avenue, Watertown, SD (SOUTH DAKOTA) 57201
Parcel ID: 9352

8-12 3rd St NE, Watertown, SD (SOUTH DAKOTA) 57201
Parcel ID 9350

301 East Kemp Avenue, Watertown, SD (SOUTH DAKOTA) 57201
Parcel ID 9351

### Legal Description:

**SUBJECT PROPERTY LEGAL DESCRIPTION:**

THE WEST 85' OF LOTS 19, 20, 21 & 22 IN BLOCK 1 OF THE ORIGINAL PLAT OF THE CITY OF WATERTOWN, CODINGTON COUNTY, SOUTH DAKOTA;

LOTS 15 & 16 IN BLOCK 1 OF THE ORIGINAL PLAT OF THE CITY OF WATERTOWN, CODINGTON COUNTY, SOUTH DAKOTA;

LOTS 1, 2, 3, 4, 5, 6 & 7 OF MONK'S & SHELDON'S SUBDIVISION OF LOTS 17 & 18 IN BLOCK 1 OF THE ORIGINAL PLAT OF THE CITY OF WATERTOWN, CODINGTON COUNTY, SOUTH DAKOTA;

THE 20' WIDE ALLEY LYING ADJACENT TO LOTS 15,16,19, 20, 21 & 22 IN BLOCK 1 OF THE ORIGINAL PLAT OF THE CITY OF WATERTOWN AND ADJACENT TO LOT 7 OF MONK'S & SHELDON'S SUBDIVISION OF LOTS 17 & 18 IN BLOCK 1 OF THE ORIGINAL PLAT OF THE CITY OF WATERTOWN, CODINGTON COUNTY, SOUTH DAKOTA;

THE 20' WIDE ALLEY LYING ADJACENT TO LOTS 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15 & 22 IN BLOCK 1 OF THE ORIGINAL PLAT OF THE CITY OF WATERTOWN, CODINGTON COUNTY, SOUTH DAKOTA.

**SUBJECT PROPERTY LEGAL DESCRIPTION (CONTINUED):**

THE EAST 23 FEET OF 3RD STREET NE LYING ADJACENT TO LOTS 15 & 16 IN BLOCK 1 OF THE ORIGINAL PLAT OF THE CITY OF WATERTOWN, CODINGTON COUNTY, SOUTH DAKOTA; AND ADJACENT TO LOT 1 OF MONK'S & SHELDON'S SUBDIVISION OF LOTS 17 & 18 IN BLOCK 1 OF THE ORIGINAL PLAT OF THE CITY OF WATERTOWN, CODINGTON COUNTY, SOUTH DAKOTA; AND ADJACENT TO THE NORTH 14 FEET OF E. KEMP AVENUE; AND ADJACENT TO THE 20' ALLEY LYING ADJACENT THERETO;

THE NORTH 14 FEET OF E. KEMP AVENUE LYING ADJACENT TO THE WEST 85 FEET OF LOT 19 IN BLOCK 1 OF THE ORIGINAL PLAT OF THE CITY OF WATERTOWN, CODINGTON COUNTY, SOUTH DAKOTA; AND ADJACENT TO LOTS 1 - 7 OF MONK'S & SHELDON'S SUBDIVISION OF LOTS 17 & 18 IN BLOCK 1 OF THE ORIGINAL PLAT OF THE CITY OF WATERTOWN, CODINGTON COUNTY, SOUTH DAKOTA; AND ADJACENT TO THE 20' ALLEY LYING ADJACENT THERETO.

**TOTAL AREA = 70,904 SF±, 1.63 ACRES±**

## Exhibit A – TIF 16 Boundary Map



## Schedule 1: Statement of the Kind, Number and Location of All Proposed Public Works or Improvements Within the District SDCL 11-19-13(1)

Project costs are any expenditure made, estimated to be made, or monetary obligations incurred or estimated to be incurred as outlined in this Plan. Project Costs will be diminished by any income, special assessments, or other revenues, including user fees or charges.

With all Project Costs, the costs of engineering, design, survey, inspection, materials, construction, restoring property to its original condition, apparatus necessary for public works, legal and other consultant fees, testing, environmental studies, permits, updating ordinances and plans, judgements or claims for damages and other expenses are included as Project Costs.

The following is a list of public works and other tax increment financing eligible costs that the Developer expects to make, or may need to make, in conjunction with the implementation of the District's Plan. The maps found in this document along with a Detailed List of Project Costs included as Schedule 3 of this Plan provide additional information as to the kind, number, and location of potential Project Costs.

### Capital Costs 11-9-15(1)

Include the actual costs of the construction of public works or improvements, buildings, structures, and permanent fixtures; the demolition, alteration, remodeling, repair, or reconstruction of existing buildings, structures, and permanent fixtures; the acquisition of equipment; the clearing and grading of land; and the amount of interest payable on tax increment bonds issued pursuant to this chapter until such time as positive tax increments to be received from the district, as estimated by the project plan, are sufficient to pay the principal of and interest on the tax increment bonds when due;

### Acquisition of Easements

The Developer may need to acquire temporary or permanent easements to allow for installation and maintenance of streets, driveways, alleyways, utilities, stormwater management practices and other public infrastructure. Costs incurred by the Developer to identify, negotiate, and acquire easement rights are eligible Project Costs.

### Demolition

To make the site suitable for development, the Developer will incur costs relation to demolition and removal of structures or other land improvements, to include abandonment of existing utility services.

### Site Grading

Land within the District may require grading to make it suitable for development, to provide access, and to control stormwater runoff. The Developer may need to remove and dispose of excess material or bring in fill material to provide for proper site elevations. Expenses incurred by the Developer for site grading are eligible Project Costs.

### Sanitary Sewer System Improvements

There may be inadequate sanitary sewer facilities serving the District. To allow development to occur, the Developer will need to construct, alter, rebuild, or expand sanitary sewer infrastructure within the District. Eligible Project Costs include, but are not limited to, construction, alteration, rebuilding or

10

expansion of collection mains; utility access holes and cleanouts; service laterals; force mains; interceptor sewers; pumping stations; lift stations; and all related appurtenances.

### Water System Improvements

There may be inadequate water distribution facilities servicing the District. To allow development to occur, the Developer will need to construct, alter, rebuild, or expand water system infrastructure within the District. Eligible Project Cost include, but are not limited to, construction, alterations, rebuilding or expansion of distribution mains, utility access holes and valves, hydrants, service laterals, pumping stations, and all related appurtenances.

### Stormwater Management System Improvements

To manage stormwater runoff, the Developer will need to construct, alter, rebuild, or expand stormwater management infrastructure within the District. Examples of eligible Project Costs include, but are not limited to, construction, alteration, rebuilding or expansion of stormwater collection mains, utility access holes and valves, service laterals.

### Electric Service

To create a site suitable for development the Developer may incur costs to provide, relocate, or upgrade electric services. Relocation may require abandonment and removal of existing poles or towers, installation of new poles or towers, or burying of overhead electric lines. Costs incurred by the Developer to undertake this work are eligible Project Costs.

### Gas Service

To create sites suitable for development the Developer may incur costs to provide, relocate or upgrade gas mains and services. Costs incurred by the Developer to undertake this work are eligible Project Costs.

### Communication Infrastructure

To create sites suitable for development the Developer may incur costs to provide, relocate or upgrade infrastructure required for voice and data communications, including, but not limited to telephone lines, cable lines, and fiber optic cable. Costs incurred by the Developer to undertake this work are eligible Project Costs.

### Street Improvements

There are inadequate street improvements serving areas of the proposed District. To allow development to occur, the Developer may need to construct or reconstruct streets, access drives and parking areas. Eligible Project Costs include, but are not limited to: excavation; removal or placement of fill; construction of road base; asphalt or concrete paving or repaving; installation of curb and gutter; installation of sidewalks and bicycle lanes; utility relocation, to include burying overhead utility lines; street lighting; installation of traffic control signage and traffic signals; pavement marking; right-of-way restoration; installation of retaining walls; and installation of fences, berms, and landscaping.

### Streetscaping and Landscaping

To attract development consistent with the objectives of this Plan, the Developer may install amenities to enhance the development site, right-of-way, and other public space. These amenities include but are not limited to: Landscaping; lighting of streets, sidewalks, parking areas and public areas; installation of

11

planters, benches, clocks, tree rings, trash receptacles, and related items; and installation of brick or other decorative walks, terraces, and street crossings. These and any other similar amenities installed by the Developer are eligible Project Costs.

### Financing Costs SDCL 11-9-15(2)

Interest expense, debt issuance expenses, redemption premiums, and any other fees and costs incurred in conjunction with obtaining financing for projects undertaken in this Plan are eligible Project Costs.

### Professional Service Costs SDCL 11-9-15(4)

The costs of professional services rendered, and other costs incurred, in relation to the creation, administration and termination of the District, and the undertaking of the projects contained within this Plan, are eligible Project Costs. Professional services include but are not limited to architectural; environmental; planning; engineering; legal; audit; financial.

### Imputed Administrative Costs SDCL 11-9-15(5)

The Developer may charge to the District as eligible Project Costs reasonable allocations of administrative costs, including, but not limited to, a City Administrative Fee.

### Relocation Costs SDCL 11-9-15(6)

### Organizational Costs SDCL 11-9-15(7)

The Developer may charge to the District as eligible Project Costs the costs of informing the public with respect to the creation of the District and the implementation of the Plan.

### Environmental Audits and Remediation SDCL 11-9-15(7)

If it becomes necessary to evaluate any land or improvement within the District, any cost incurred by the Developer related to site surveys, environmental audits, soil boring testing and remediation are eligible Project Costs.

### Payments and Grants Made SDCL 11-9-15(8)

Payments and grants made, at the discretion of the governing body, which are found to be necessary or convenient to the creation of a district, the implementation of project plans, or to stimulate and develop the general economic welfare and prosperity of the state.

## Maximum Amount of Tax Increment Revenue

The maximum amount of tax increment revenue monetary obligations to be paid through Tax Increment Financing District No.16 shall be an amount not to exceed the total tax increment revenue generated by the Tax Increment District in 20 years. At the time of the creation of the TIF District No. 16, the total amount of tax increment revenue estimated to be generated within 20 years is $2,724,755 million dollars. The final terms and conditions will be set forth in the Developer's Agreement with the City of Watertown.

| Construction Year | Valuation Year | Revenue Year | Total Mill Rate | % completed | TAXABLE VALUATION | Property Taxes | Frozen Base Property Value Taxes Payable | Amount Available for Debt Service (less base value amount) |
|---|---|---|---|---|---|---|---|---|
| 2021 | 2021 | 2022 | $15.171 | 0% | $333,741.00 | $5,063.40 | $5,063.40 | $0.00 |
| 2022 | 2022 | 2023 | $16.870 | 50% | $3,966,841.63 | $66,920.62 | $5,063.40 | $61,857.22 |
| 2023 | 2023 | 2024 | $16.870 | 100% | $7,933,683.25 | $133,841.24 | $5,063.40 | $128,777.84 |
| 2024 | 2024 | 2025 | $16.870 | 100% | $7,933,683.25 | $133,841.24 | $5,063.40 | $128,777.84 |
| 2025 | 2025 | 2026 | $16.870 | 100% | $8,013,020.08 | $135,179.65 | $5,063.40 | $130,116.25 |
| 2026 | 2026 | 2027 | $16.870 | 100% | $8,093,150.28 | $136,531.45 | $5,063.40 | $131,468.05 |
| 2027 | 2027 | 2028 | $16.870 | 100% | $8,174,081.79 | $137,896.76 | $5,063.40 | $132,833.36 |
| 2028 | 2028 | 2029 | $16.870 | 100% | $8,255,822.60 | $139,275.73 | $5,063.40 | $134,212.33 |
| 2029 | 2029 | 2030 | $16.870 | 100% | $8,338,380.83 | $140,668.48 | $5,063.40 | $135,605.08 |
| 2030 | 2030 | 2031 | $16.870 | 100% | $8,421,764.64 | $142,075.17 | $5,063.40 | $137,011.77 |
| 2031 | 2031 | 2032 | $16.870 | 100% | $8,505,982.28 | $143,495.92 | $5,063.40 | $138,432.52 |
| 2032 | 2032 | 2033 | $16.870 | 100% | $8,591,042.11 | $144,930.88 | $5,063.40 | $139,867.48 |
| 2033 | 2033 | 2034 | $16.870 | 100% | $8,676,952.53 | $146,380.19 | $5,063.40 | $141,316.79 |
| 2034 | 2034 | 2035 | $16.870 | 100% | $8,763,722.05 | $147,843.99 | $5,063.40 | $142,780.59 |
| 2035 | 2035 | 2036 | $16.870 | 100% | $8,851,359.27 | $149,322.43 | $5,063.40 | $144,259.03 |
| 2036 | 2036 | 2037 | $16.870 | 100% | $8,939,872.87 | $150,815.66 | $5,063.40 | $145,752.26 |
| 2037 | 2037 | 2038 | $16.870 | 100% | $9,029,271.60 | $152,323.81 | $5,063.40 | $147,260.41 |
| 2038 | 2038 | 2039 | $16.870 | 100% | $9,119,564.31 | $153,847.05 | $5,063.40 | $148,783.65 |
| 2039 | 2039 | 2040 | $16.870 | 100% | $9,210,759.95 | $155,385.52 | $5,063.40 | $150,322.12 |
| 2040 | 2040 | 2041 | $16.870 | 100% | $9,302,867.55 | $156,939.38 | $5,063.40 | $151,875.98 |
| 2041 | 2041 | 2042 | $16.870 | 100% | $9,395,896.23 | $158,508.77 | $5,063.40 | $153,445.37 |
| *85% of Full and True Value | | | | | | | | $2,724,755.92 |

## Eligible Project Costs

| 11-9-15 Items included in project costs. | | | | |
|---|---|---:|---|---:|
| 1 **Capital Costs** | | | | |
| | Closing Costs | $ 18,750.00 | | |
| | Demolition and Site Clearing | $ 229,000.00 | | |
| | Excavation/Clearing/Grading | $ 189,000.00 | | |
| | Site Survey | $ 30,727.00 | | |
| | Soil Borings | $ 17,754.00 | | |
| | Testing & Inspections | $ 40,090.91 | | |
| | | | $ | 525,321.91 |
| 1 **Public Works Improvements** | | | | |
| | Paving and Sidewalks | $ 45,100.00 | | |
| | Perimeter Safety (Site Fence) | $ 20,302.00 | | |
| | Disconnect Utilities | $ 38,500.00 | | |
| | Remove Existing Alley | $ 83,300.00 | | |
| | Remove Existing Sidewalks | $ 12,000.00 | | |
| | Provide New Curb and Gutter | $ 37,500.00 | | |
| | Residential Drive Approaches | $ 14,500.00 | | |
| | Landscaping in ROW | $ 7,500.00 | | |
| | Site Fence | $ 34,500.00 | | |
| | Signage and Barricades | $ 7,700.00 | | |
| | | | $ | 300,902.00 |
| 2 **Financing Costs** | | | | |
| | Interest expense | $ 521,181.00 | | |
| | | | $ | 521,181.00 |
| 3 **Real Property Assembly** | | | | |
| | | $ - | $ | - |
| 4 **Professional Services Costs** | | | | |
| | A&E Fees | $ 469,152.00 | | |
| | | | $ | 469,152.00 |
| 5 **Imputed Administrative Costs** | | | | |
| | Estimated City/administrative/municipal cost | $ 131,844.00 | | |
| | | | $ | 131,844.00 |
| 6 **Relocation Costs** | | | | |
| | | $ - | $ | - |
| 7 **Organizational Costs** | | | | |
| | | $ - | $ | - |
| 8 **Payment and Grants Made** | | | | |
| | Land acquisition | $ 500,000 | | |
| | | | $ | 500,000.00 |
| | | **Total Cost: $** | | **2,448,400.91** |

## Expenditures Exceeding Estimated Cost

The Developer understands that any expenditures, which in sum would exceed the total estimated amount for Project Costs by 35% included within this Plan of $2,448,400 million dollars will require an amendment of this Plan. All amendments would be undertaken pursuant to SDCL §11-9-23.

## Schedule 2: Economic Feasibility Study

The table below establishes the current Base Value of the property located in the proposed TIF District No. 16 and estimated incremental tax revenue.

| | | | |
|---|---|---|---|
| Certified base assessed valuation | | | $333,745.00 |
| Estimated assessed value of improvements | | | $9,000,000.00 |
| Estimated total full and true valuation | | $ | 9,333,745 |
| Estimated assessed valuation calculated at | 85% | $ | 7,933,683 |
| Revenue estimates from tax increments | | | $2,724,755.92 |
| *refer to detailed spreadsheet | | | |
| Estimated total valuation in year 20 | | $ | 9,584,754 |
| (full and true value, 1% increase per year) | | | |

### Key Assumptions

For the purposes of this Plan, the Developer is projecting that the development will be built and fully developed by year 2022.

### Analysis of Demand for Future Development Opportunities and Potential

#### *Consumer Characteristics & Market Segmentation*

**Population growth may help drive new retail demand.** Major new housing development projects may lead to an increase in the town's population, which will help move the needle in terms of property and sales tax revenues.

### Financing and Implementation

At this time, it is expected there shall be no advances by the City of Watertown before project completion. However, the City may choose to bond for the purpose of paying project costs, and the governing body may issue tax increment bonds payable out of positive tax increments.

Otherwise, it is assumed that all obligations incurred by the Developer would be secured as to allow the payment of principal and interest when due from lenders involved in the project.

The City's role is to act as a conduit for the revenue and pass on all positive increment to reimburse developers for TIF Eligible Project Costs, or for up to 20 years, whichever comes first.

It is understood by the Developer that the estimated property tax revenue from the District may not fully satisfy the Project Costs incurred within 20 years from the implementation of the TIF District. If there is a shortfall of revenue, the Developer understands that he will be responsible for satisfying any remaining obligations when due.

In addition, if TIF Eligible Project Costs, in sum, exceed the total value set forth by 35%, an amendment to the Plan in accordance with SDCL 11-9-23 will be required.

City of Watertown TIF No. 16 is feasible based on the calculations made by the WDC, projecting a total of $2,724,755 million dollars in tax increment revenue during the life of the 20-year TIF District. The

15

calculations of the estimated tax increment valuation and tax generated for the TIF District can be found in Schedule 3.

## Schedule 3: Detailed List of Estimated Costs

| 11-9-15 Items included in project costs. | | | | |
|---|---|---|---|---|
| **Capital Costs** | | | | |
| Closing Costs | $ | 18,750.00 | | |
| Demolition and Site Clearing | $ | 229,000.00 | | |
| Excavation/Clearing/Grading | $ | 189,000.00 | | |
| Site Survey | $ | 30,727.00 | | |
| Soil Borings | $ | 17,754.00 | | |
| Testing & Inspections | $ | 40,090.91 | | |
| | | | $ | 525,321.91 |
| **Public Works Improvements** | | | | |
| Paving and Sidewalks | $ | 45,100.00 | | |
| Perimeter Safety  (Site Fence) | $ | 20,302.00 | | |
| Disconnect Utilities | $ | 38,500.00 | | |
| Remove Existing Alley | $ | 83,300.00 | | |
| Remove Existing Sidewalks | $ | 12,000.00 | | |
| Provide New Curb and Gutter | $ | 37,500.00 | | |
| Residential Drive Approaches | $ | 14,500.00 | | |
| Landscaping in ROW | $ | 7,500.00 | | |
| Site Fence | $ | 34,500.00 | | |
| Signage and Barricades | $ | 7,700.00 | | |
| | | | $ | 300,902.00 |
| **Financing Costs** | | | | |
| Interest expense | $ | 521,181.00 | | |
| | | | $ | 521,181.00 |
| **Real Property Assembly** | | | | |
| | $ | - | | |
| | | | $ | - |
| **Professional Services Costs** | | | | |
| A&E Fees | $ | 469,152.00 | | |
| | | | $ | 469,152.00 |
| **Imputed Administrative Costs** | | | | |
| Estimated City/administrative/municipal cost | $ | 131,844.00 | | |
| | | | $ | 131,844.00 |
| **Relocation Costs** | | | | |
| | $ | - | | |
| | | | $ | - |
| **Organizational Costs** | | | | |
| | $ | - | | |
| | | | $ | - |
| **Payment and Grants Made** | | | | |
| Land acquisition | $ | 500,000 | | |
| | | | $ | 500,000.00 |
| | | Total Cost: | $ | 2,448,400.91 |

The items listed above are estimated TIF Eligible Project Costs. The final total may be greater or smaller. The costs represent identified activities expected to be incurred for the development to occur and for which this TIF District and Project Plan is created.

Eligible expenses are intended to be expended as allowed by SDCL 11-9-32 by the Developer. Money shall be paid out of the special fund created to pay project costs or grants of the district, to reimburse the municipality for the payments, or to satisfy claims of holders of tax increment bonds issued for the district. The total TIF Eligible Costs are $2,448,400.91. The estimated Tax Increment Revenue is $2,724,755. The property payout is calculated to be 20 years. All obligations of the City are subject to creation of the District and the Development Agreement becoming effective.

16

If Eligible Project Costs, in sum, exceed the total value set forth above by 35%, an amendment to the Plan in accordance with SDCL 11-9-23 will be required.

The property included within TIF District No. 16 is currently assessed at $333,745. The improvements to be made to the property included within TIF District No. 16 are estimated to add $9.0 million dollars to the assessed valuation of the property within. The estimated annual tax increment is expected to be fully realized in tax year 2023 (payable in 2024) with a .01% annual escalator of value during the term of TIF District No. 16.

The information in the table below establishes an assessed full and true value of approximately $9,584,754 as of the estimated stabilized year of 2041, generating a total of $2,724,755 increment payable to TIF District No. 16.

## Estimated Incremental Tax Revenue

| Construction Year | Valuation Year | Revenue Year | Total Mill Rate | % completed | TAXABLE VALUATION | Property Taxes | Frozen Base Property Value Taxes Payable | Amount Available for Debt Service (less base value amount) |
|---|---|---|---|---|---|---|---|---|
| 2021 | 2021 | 2022 | $15.171 | 0% | $333,745.00 | $5,063.40 | $5,063.40 | $0.00 |
| 2022 | 2022 | 2023 | $16.870 | 50% | $3,966,841.63 | $66,920.62 | $5,063.40 | $61,857.22 |
| 2023 | 2023 | 2024 | $16.870 | 100% | $7,933,683.25 | $133,841.24 | $5,063.40 | $128,777.84 |
| 2024 | 2024 | 2025 | $16.870 | 100% | $7,933,683.25 | $133,841.24 | $5,063.40 | $128,777.84 |
| 2025 | 2025 | 2026 | $16.870 | 100% | $8,013,020.08 | $135,179.65 | $5,063.40 | $130,116.25 |
| 2026 | 2026 | 2027 | $16.870 | 100% | $8,093,150.28 | $136,531.45 | $5,063.40 | $131,468.05 |
| 2027 | 2027 | 2028 | $16.870 | 100% | $8,174,081.79 | $137,896.76 | $5,063.40 | $132,833.36 |
| 2028 | 2028 | 2029 | $16.870 | 100% | $8,255,822.60 | $139,275.73 | $5,063.40 | $134,212.33 |
| 2029 | 2029 | 2030 | $16.870 | 100% | $8,338,380.83 | $140,668.48 | $5,063.40 | $135,605.08 |
| 2030 | 2030 | 2031 | $16.870 | 100% | $8,421,764.64 | $142,075.17 | $5,063.40 | $137,011.77 |
| 2031 | 2031 | 2032 | $16.870 | 100% | $8,505,982.28 | $143,495.92 | $5,063.40 | $138,432.52 |
| 2032 | 2032 | 2033 | $16.870 | 100% | $8,591,042.11 | $144,930.88 | $5,063.40 | $139,867.48 |
| 2033 | 2033 | 2034 | $16.870 | 100% | $8,676,952.53 | $146,380.19 | $5,063.40 | $141,316.79 |
| 2034 | 2034 | 2035 | $16.870 | 100% | $8,763,722.05 | $147,843.99 | $5,063.40 | $142,780.59 |
| 2035 | 2035 | 2036 | $16.870 | 100% | $8,851,359.27 | $149,322.43 | $5,063.40 | $144,259.03 |
| 2036 | 2036 | 2037 | $16.870 | 100% | $8,939,872.87 | $150,815.66 | $5,063.40 | $145,752.26 |
| 2037 | 2037 | 2038 | $16.870 | 100% | $9,029,271.60 | $152,323.81 | $5,063.40 | $147,260.41 |
| 2038 | 2038 | 2039 | $16.870 | 100% | $9,119,564.31 | $153,847.05 | $5,063.40 | $148,783.65 |
| 2039 | 2039 | 2040 | $16.870 | 100% | $9,210,759.95 | $155,385.52 | $5,063.40 | $150,322.12 |
| 2040 | 2040 | 2041 | $16.870 | 100% | $9,302,867.55 | $156,939.38 | $5,063.40 | $151,875.98 |
| 2041 | 2041 | 2042 | $16.870 | 100% | $9,395,896.23 | $158,508.77 | $5,063.40 | $153,445.37 |
|  |  |  |  |  |  |  |  | $2,724,755.92 |

*85% of Full and True Value

17

## Schedule 4: Fiscal Impact to Taxing Authorities

The fiscal impact statement is intended to provide an analysis of the estimated impact of the Tax Increment Financing District to the public pursuant to 11-9-13(4). It is not intended to rival the level of detail required by a detailed financial analysis. A fiscal impact statement shows the impact of TIF District No. 16 both until and after the obligations are repaid, upon all entities levying taxes upon property within the District.

During the reimbursement phase that can last up to twenty years from the date TIF District No. 16 is created, the anticipated .01% annual increase in taxes is expected to reimburse the Developer for Project Costs and is expected to have a positive fiscal impact on all entities levying taxes upon property in TIF District No. 16 after the District is dissolved.

| Year | Projected Tax Increment | School District | County | City |
|------|------------------------|-----------------|--------|------|
| 2020 | $0.00 | $0.00 | $0.00 | $0.00 |
| 2021 | $61,857.22 | $41,902.08 | $11,542.56 | $9,167.24 |
| 2022 | $128,777.84 | $87,234.11 | $24,029.94 | $19,084.88 |
| 2023 | $128,777.84 | $87,234.11 | $24,029.94 | $19,084.88 |
| 2024 | $130,116.25 | $88,140.75 | $24,279.69 | $19,283.23 |
| 2025 | $131,468.05 | $89,056.45 | $24,531.94 | $19,483.56 |
| 2026 | $132,833.36 | $89,981.32 | $24,786.70 | $19,685.90 |
| 2027 | $134,212.33 | $90,915.43 | $25,044.02 | $19,890.27 |
| 2028 | $135,605.08 | $91,858.88 | $25,303.91 | $20,096.67 |
| 2029 | $137,011.77 | $92,811.77 | $25,566.40 | $20,305.14 |
| 2030 | $138,432.52 | $93,774.19 | $25,831.51 | $20,515.70 |
| 2031 | $139,867.48 | $94,746.23 | $26,099.27 | $20,728.36 |
| 2032 | $141,316.79 | $95,727.99 | $26,369.71 | $20,943.15 |
| 2033 | $142,780.59 | $96,719.57 | $26,642.86 | $21,160.08 |
| 2034 | $144,259.03 | $97,721.07 | $26,918.74 | $21,379.19 |
| 2035 | $145,752.26 | $98,732.58 | $27,197.37 | $21,600.48 |
| 2036 | $147,260.41 | $99,754.20 | $27,478.79 | $21,823.99 |
| 2037 | $148,783.65 | $100,786.04 | $27,763.03 | $22,049.74 |
| 2038 | $150,322.12 | $101,828.20 | $28,050.11 | $22,277.74 |
| 2039 | $151,875.98 | $102,880.79 | $28,340.06 | $22,508.02 |
| 2040 | $153,445.37 | $17,323.98 | $4,772.15 | $3,790.10 |
|  | **$2,724,756** | **$1,759,130** | **$484,579** | **$384,858** |

## Definitions

**Assumptions** means factors or definitions used in the fiscal analysis. Assumptions may include facts and figures identified by the District and educated guesses that are sometimes necessary when not all of the information is available. Assumptions are often used to extrapolate an estimate. Assumptions may include an estimate of tax levies of each taxing entity, the school aid formula contribution, the value of the real property, etc.

**Base Value** means the taxes collected on the base value before improvements to the property are made.

**Fiscal Impact** means the increase or decrease in revenues and refers to an impact to revenues caused by the District.

**Amount Available for Debt Service** means the increase in property tax revenue less the **Base Value.**

**Tax Increment Financing District** means City of Watertown, Tax Increment Financing District No. 16.

18

*Taxing Districts* means all political subdivisions of the state which have ad valorem taxing power over property within the boundaries of the referenced Tax Increment Financing District No. 16.

*Tax Increment Revenues* means all revenues above the Base Revenues.

### Assumptions

1. The property will have improvements which at completion will be valued for taxable purposes at $9,000,000 million dollars.
2. The average tax levy of all taxing districts will be $16.87 per $1,000 dollars of taxable valuation.
3. Tax increment will start to be collected in 2023 and end in 2041.
4. **The discretionary formula will be waived by the property owner.**

| 2020 Payable in 2021 | Dollars Per $1,000 Assessed |
|---|---|
| City of Watertown (includes Event Center.313) | $2.47 |
| Codington County (includes EDWCD .024) | $3.11 |
| School District "Other" | $11.29 |
| Total Tax Levy | $16.87 |

*Actual Taxable Valuation will depend upon the value determined by the Codington County Director of Equalization when assessed with the application of dollars-per-thousand from local taxes. All tax increment revenues shall be from Generally Applicable Taxes attributable to the improvements to be constructed in the TIF District. The potential for total increment collections is estimated to be at the maximum range of $2,724,755 million covering a span of captured tax years not to exceed 20. Collection is anticipated to begin in 2023, and the schedule carries out the tax captured 20 years from the date of Plan adoption.

All public-school districts are funded through the State Aid to Education Formula. The two primary channels of the formula are State Aid and Local Effort. Multiple agencies of the State of South Dakota calculate the amount of General Fund money to be distributed to school districts each year through the State portion. Local effort is considered the amount of revenue that is generated by local property taxes at maximum levies.

In South Dakota, if a TIF District is classified as Economic Development, Industrial, or Affordable Housing, the school funding that would be generated by the increment valuation is considered lost local effort and is paid through the State Aid side of the formula.

City of Watertown TIF District No. 16 will be classified as Affordable Housing; therefore, any lost local effort will be funded through the State Aid to Education Formula.

19

## Taxable Value of City of Watertown

### Maximum Percentage of Taxable Property in Municipality Permitted in District

The resolution required by SDCL § 11-9-7 shall contain a finding that the aggregate assessed value of the taxable property in the district plus the tax increment base of all other existing districts does not exceed **ten (10) percent** of the total assessed value of all taxable property in the municipality.

As confirmed with the Codington County Auditor, the 2020 Taxes Payable value for the City of Watertown is $1,729,064,855.00. The base value of the taxable property for inclusion into this Tax Increment Financing District No. 16, as estimated but not yet verified by S.D. Department of Revenue, is $333,745.00.

Currently, there are fifteen other active and inactive TIF Districts under the authority of the City of Watertown, South Dakota.

| Tax Increment District Base Value | | Maturity |
|---|---|---|
| 1 | $84,064.00 | 2024 |
| 2 | $25,494.00 | 2024 |
| 3 | $33,117.00 | Dissolved |
| 4 | $0.00 | Dissolved |
| 5 | $496,156.00 | 2030 |
| 6 | $3,542,623.00 | 2029 |
| 7 | $123,142.00 | 2039 |
| 8 | $473,200.00 | 2039 |
| 9 | $490,590.00 | 2039 |
| 10 | $0.00 | 2039 |
| 11 | $119,673.00 | Due for City Council Approval |
| 12 | $67,568.00 | |
| 13 | $70,748.00 | |
| 14 | $1,447,544.00 | Stony Point |
| 15 | $172,359.00 | The Plains |
| 16 | $333,745.00 | Current Plan Under Review |
| **TOTAL** | **$7,480,023.00** | |

**City of Watertown Current Taxable Value:** $1,729,064,855.00
**All TIF Base Value must be less than 10%:** $172,906,485.50

The total current base value of all active and inactive TIF Districts in the City of Watertown is $7,480,023 million. Using the estimates provided for TIF District No. 16, the value of all existing Tax Increment Financing Districts combined is less than 10% of the total 2020 Taxable Valuation.

20

## Schedule 5: Method of Financing

TIF District No. 16 is a site-specific TIF District. In this type of transaction, the local government (City of Watertown) provides a financing commitment to a Developer to pay up to a certain maximum amount of future TIF revenue, arising only from the Project itself.

At this time, it is expected there shall be no advances by the City of Watertown before project completion. However, the City may choose to bond for the purpose of paying project costs, and the governing body may issue tax increment bonds payable out of positive tax increments.

The payment of the Estimated Project Costs is expected to be made by the City to the Developer from the special fund set aside for the Tax Increment Financing District. SDCL 11-9-30(1). Pursuant to the Developer's Agreement, the City will pay all positive Tax Increment Revenue it receives from the District to satisfy project costs, of which, are never to exceed the amount of Tax Increment Revenue generated, or 20 years, whichever comes first.

21

## Additional Contents of Project Plan as Required by SDCL 11-9-16(1)

### Existing Uses and Conditions of Real Property Map SDCL 11-9-16(1)

The property within the TIF District is not occupied by any residents. Currently there is a Senior Citizens Center, a vacant apartment building (previously referred to as the "Palace Apartments", two alleys, a park, and a parking lot. The alley that runs north and south next to the apartment building is expected to be vacated.

TIF 16 - Existing Uses and Conditions of Real Property Map SDCL 11-9-16(1)



January 18, 2021

1:1,128

0    35    70    140 ft
0    10    20    40 m

Sources: Esri, HERE, Garmin, USGS, Intermap, INCREMENT P, NRCan, Esri Japan, METI, Esri China (Hong Kong), Esri Korea, Esri (Thailand),

Disclaimer: Map and parcel data are believed to be accurate, but accuracy is not guaranteed. This is not a legal document and should not be substituted for a title search, appraisal, survey, or for zoning verification.

22

Proposed Improvements and Uses Map SDCL 11-9-16(2)



## Proposed Changes on Zoning Ordinances SDCL 11-9-16(3)

The property within the TIF District is currently zoned C1. No zoning changes are expected.

TIF 16 - Proposed Changes on Zoning Ordinances SDCL 11-9-16(3)



### Changes to City Comprehensive/Master Plan Map, Building Codes and City Ordinances SDCL 11-9-16(4)

The proposed development is consistent with the City of Watertown Master Plan. There are no changes to the Master Plan.

## Estimated Non-Eligible Project Costs 11-9-16(5)

The estimated non-eligible project costs are shown in the table below.

| General Conditions | | $ 178,232.73 |
|---|---|---|
| Concrete | Limoges Construction | $ 560,127.27 |
| Concrete - Waterproofing & Insulation | Herzog Coatings | $ 30,354.55 |
| Precast Concrete - Materials / Erection | Gage Brothers | $ 1,310,000.00 |
| Gypcrete | Don Johnson Construction | $ 65,400.00 |
| Masonry | Ottertail Stucco and Stone | $ 344,191.00 |
| Steel - Erection | 0 | $ - |
| Misc. Metals | Red River Fabricating | $ 18,493.36 |
| General W & L Rough Carpentry Labor | 0 | $ 227,600.00 |
| General W & L Rough Carpentry Materials | 0 | $ 286,500.00 |
| General W & L - Finish Carpentry Labor | 0 | $ 101,372.73 |
| General Work & Labor - Finish Carpentry Materials | 0 | $ 63,687.27 |
| Millwork - Cabinets | Rusco Window Company | $ 97,652.29 |
| Countertops - Kitchen & Bathroom | Fabricators Unlimited | $ 39,985.53 |
| Bathroom Vanities | By Owner (Allowance) | $ 21,420.00 |
| Wood Componenets / Trusses | 0 | $ 178,900.00 |
| Moisture Protections | Pro-Tec Roofing | $ 87,718.91 |
| Building Insulation | RL Drywall & Insulation | $ 166,090.91 |
| Exterior Insulation & Finish System | 0 | $ - |
| Metal Siding / Metal Panels | 0 | $ 206,181.82 |
| Sealants | 0 | $ 24,818.18 |
| Commercial Doors, Frames & Hardware | Central Door & Hardware | $ 139,606.00 |
| Residential Wood Doors & Frames | Central Door & Hardware | incl with 38A |
| Overhead Doors | Skold Specialty Contracting | $ 16,494.55 |
| Vinyl Windows | Rusco Window Company | $ 89,116.36 |
| Glass & Glazing | Fargo Glass & Paint | $ 64,523.45 |
| Drywall | RL Drywall & Insulation | $ 276,800.00 |
| Carpet | 0 | $ 155,667.27 |
| Painting / Staining | 0 | $ 160,363.64 |
| Fill Nail Holes | 0 | $ 13,745.45 |
| Postal Specialties/Bike Rack/Door Markers | By Owner (Allowance) | $ 16,609.09 |
| Exterior Signage | By Owner (Allowance) | $ 16,609.09 |
| Fire Extinguishers & Cabinets | Tri-State Specialties | $ 14,196.76 |
| Ceiling Fans | By Owner (Allowance) | $ 16,815.27 |
| Closet Shelving | By Owner (Allowance) | $ 12,027.27 |
| Toilets/Accessories | By Owner (Allowance) | $ 17,038.64 |
| Appliances & AC Units | Dugens | $ 223,426.00 |
| Kitchen Sinks/Faucets | By Owner (Allowance) | $ 14,764.91 |
| Bath Faucets/Shower Heads | By Owner (Allowance) | $ 12,294.16 |
| Bathroom Mirrors | By Owner (Allowance) | $ 15,475.09 |
| Window Treatments | By Owner (Allowance) | $ 12,909.27 |
| Conveying Systems | Thyssenkrupp Elevators | $ 130,581.82 |
| Building Sprinkler | Xtreme Fire Protection | $ 87,790.00 |
| Plumbing | 0 | $ 441,572.73 |
| HVAC | 0 | $ 211,909.09 |
| Electrical/Security System | 0 | $ 463,909.09 |
| | | $ 6,632,971.56 |

## Statement of a Proposed Method for The Relocation of Persons to Be Displaced 11-9-16(6)

Pursuant to SDCL 11-9-16 (6), a statement of a proposed method for the relocation of persons to be displaced needs to be provided.

The property is currently unoccupied therefore no proposed method for the relocation of persons is needed.

## TIF District No. 16 Classification

Mechanisms are built within State Codified Law to ensure that school districts are held harmless by TIF districts for their General and Special Education Funds. For these purposes, law (SDCL 13-13- 10.10) defines four classifications of Tax Increment Financing Districts:

- **Economic Development** – includes only those areas where there is or will be one or more businesses engaged in any activity defined as commercial or industrial by the governing body that has zoning authority over the real property contained within the Tax Increment Financing District. This classification is exempt from the provisions of SDCL 10-12-44(1) that require the County Auditor to impose an additional school levy on real property within the district. Any increment value in an Economic Development TIF district is not considered in the state-aid to education formula.

- **Industrial** – includes only those areas where there is or will be one or more businesses engaged in any activity defined as commercial or industrial by the governing body that has zoning authority over the real property contained within the Tax Increment Financing District. This classification is also exempt from the provisions of SDCL 10-12-44(1) that require the County Auditor to impose an additional school levy on real property within the district. Any increment value in an Industrial TIF district is not considered in the state-aid to education formula.

- **Affordable Housing** – During the 2018 Legislative Session, the legislature created a fourth TIF district classification for Affordable Housing. The criteria for an Affordable Housing TIF are as follows:
  (1)  The original selling price of any house in the district will be at or below the first-time homebuyer purchase price limit being used by the South Dakota Housing Development Authority as of the date the house is sold; or
  (2)  The monthly rental rate of all multifamily housing units in the district will be at or below the calculated rent for the state's eighty percent area median income, being used by the South Dakota Housing Development Authority, as of the date the TIF district is created, for a minimum of five years following the date of first occupancy.
  This classification is also exempt from the provisions of SDCL 10-12-44(1) that require the County Auditor to impose an additional school levy on real property within the district. Any increment value in an Industrial TIF district is not considered in the state-aid to education formula.

- **Local** –Local TIF Districts are not presently defined in statute. Rather, local classification is the default classification. Unless the TIF district meets the definition of an Industrial, Economic Development, or Affordable Housing TIF district, it is a Local TIF district. For further clarification, in this classification, the project usually benefits the local government instead of having a regional or statewide benefit. Unlike the other classifications, the assessed value of a Local TIF District for purposes of the state-aid-formula is the total assessed value of the district. The County Auditor is required to impose an additional school levy on all real property within any impacted school district to hold the district(s) harmless.

TIF District No. 16 is expected to be classified as **Affordable Housing**; therefore, this classification is exempt from the provisions of SDCL § 10-12-44(1) that require the County Auditor to impose an additional school levy on real property within the district. Any increment value in an Affordable Housing TIF district is not considered in the state-aid to education formula.

## Establishing Affordable Housing Purpose

South Dakota law describes affordable housing as activity that will have rents at or below the calculated rent for the state's eighty percent area median income as of the date the district is created.

The area within the boundaries of TIF District No. 16 to be developed is expected to help the Region realize new opportunities for growth and attract more workforce talent for the Region's employers.

The project will lie within the following area:

**SUBJECT PROPERTY LEGAL DESCRIPTION:**

*THE WEST 85' OF LOTS 19, 20, 21 & 22 IN BLOCK 1 OF THE ORIGINAL PLAT OF THE CITY OF WATERTOWN, CODINGTON COUNTY, SOUTH DAKOTA;*

*LOTS 15 & 16 IN BLOCK 1 OF THE ORIGINAL PLAT OF THE CITY OF WATERTOWN, CODINGTON COUNTY, SOUTH DAKOTA;*

*LOTS 1, 2, 3, 4, 5, 6 & 7 OF MONK'S & SHELDON'S SUBDIVISION OF LOTS 17 & 18 IN BLOCK 1 OF THE ORIGINAL PLAT OF THE CITY OF WATERTOWN, CODINGTON COUNTY, SOUTH DAKOTA;*

*THE 20' WIDE ALLEY LYING ADJACENT TO LOTS 15,16,19, 20, 21 & 22 IN BLOCK 1 OF THE ORIGINAL PLAT OF THE CITY OF WATERTOWN AND ADJACENT TO LOT 7 OF MONK'S & SHELDON'S SUBDIVISION OF LOTS 17 & 18 IN BLOCK 1 OF THE ORIGINAL PLAT OF THE CITY OF WATERTOWN, CODINGTON COUNTY, SOUTH DAKOTA;*

*THE 20' WIDE ALLEY LYING ADJACENT TO LOTS 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15 & 22 IN BLOCK 1 OF THE ORIGINAL PLAT OF THE CITY OF WATERTOWN, CODINGTON COUNTY, SOUTH DAKOTA.*

**SUBJECT PROPERTY LEGAL DESCRIPTION (CONTINUED):**

*THE EAST 23 FEET OF 3RD STREET NE LYING ADJACENT TO LOTS 15 & 16 IN BLOCK 1 OF THE ORIGINAL PLAT OF THE CITY OF WATERTOWN, CODINGTON COUNTY, SOUTH DAKOTA; AND ADJACENT TO LOT 1 OF MONK'S & SHELDON'S SUBDIVISION OF LOTS 17 & 18 IN BLOCK 1 OF THE ORIGINAL PLAT OF THE CITY OF WATERTOWN, CODINGTON COUNTY, SOUTH DAKOTA; AND ADJACENT TO THE NORTH 14 FEET OF E. KEMP AVENUE; AND ADJACENT TO THE 20' ALLEY LYING ADJACENT THERETO;*

*THE NORTH 14 FEET OF E. KEMP AVENUE LYING ADJACENT TO THE WEST 85 FEET OF LOT 19 IN BLOCK 1 OF THE ORIGINAL PLAT OF THE CITY OF WATERTOWN, CODINGTON COUNTY, SOUTH DAKOTA; AND ADJACENT TO LOTS 1 - 7 OF MONK'S & SHELDON'S SUBDIVISION OF LOTS 17 & 18 IN BLOCK 1 OF THE ORIGINAL PLAT OF THE CITY OF WATERTOWN, CODINGTON COUNTY, SOUTH DAKOTA; AND ADJACENT TO THE 20' ALLEY LYING ADJACENT THERETO.*

**TOTAL AREA = 70,904 SF±, 1.63 ACRES±**

The Project is expected to expand the city's presence, increase workforce, and bring an annual increase in economic impact to the Region. It is also expected to provide improvements to an area of Watertown that will encourage the development of new and existing commercial retail development, and housing for workforce locating to the area. The development is expected to create jobs, fill positions for area employers, and create and rehabilitate new infrastructure and site improvements, which in turn are expected to enhance Watertown's ability to encourage future growth.

The Project is expected to be completed by April of calendar year 2022.

The rents will be classified as affordable based on 80% of the area median income:

27

| Unit Description | No. of Units | Monthly Rent |
|---|---|---|
| Commerical Space<br>CAM<br><br>Floor 2 - 4<br><br>1BR<br>2BR<br>eff |  <br><br><br><br>36<br>15<br>12 | <br><br><br><br>955<br>1275<br>875 |
| Garages / Parking passes | 0 | 0 |
| Storage Units | 0 | 0 |
| Totals: |  |  |

28

**Tax Increment Financing Affordable Housing Classification**
**Monthly Rental Rate**
**SDCL 13-13-10.10**

2020 State Median Income – $77,800
Rents at State's 80% Area Median Income

| | |
|---|---|
| Zero Bedroom | $1,089 |
| One Bedroom | $1,245 |
| Two Bedroom | $1,400 |
| Three Bedroom | $1,556 |
| Four Bedroom | $1,680 |
| Five Bedroom | $1,805 |

**Affordable Housing Structure Classification for Purposes of Taxation**
**Monthly Rental Rate**
**SDCL 10-6-35.2**

2020 State Median Income – $77,800
Rents at State's 60% Area Median Income

| | |
|---|---|
| Zero Bedroom | $817 |
| One Bedroom | $934 |
| Two Bedroom | $1,050 |
| Three Bedroom | $1,167 |
| Four Bedroom | $1,260 |
| Five Bedroom | $1,354 |

The Project Costs relate directly to promoting affordable housing in the District consistent with the purpose for which the District is created.

29

## Summary of Findings in Establishing Affordable Housing Purpose

Below, the WDC has provided a "But For" analysis of the project. SDCL does not require that a "But For" analysis be met before a TIF Plan can be approved; however, this type of analysis is strongly recommended as it helps to answer questions about the transformative nature of the project and the goals and objectives of the community in relation to using Tax Increment Financing.

As documented in this Plan and the attachments contained and referenced herein, the following findings are made:

1. **That "But For" the creation of this District, the development projected to occur as detailed in this Plan: 1) would not occur; or 2) would not occur in the manner, at the values, or within the timeframe desired by the Developer**. In reaching this determination, the WDC has considered that in making the area within the District suitable for this development, the Project will require a substantial investment to pay for the costs of site preparation, clean-up of the property, proper asbestos removal and disposal, installation, and rehabilitation of utilities; professional, legal, and financing costs, and other expenses. Due to the extensive initial investment needed to allow the Project to occur, the Developer has determined that development of the area as proposed will not occur solely from private investment.

Accordingly, the Developer finds that absent the use of Tax Increment Financing, the Project as proposed would not proceed.

2. **The economic benefits of the Tax Increment Financing District, as measured by increased employment, attraction of professional workforce to the Region, business and personal income, and property value, are sufficient to compensate for the Project Costs incurred.** In making this determination, the WDC has considered the following:

Analysis prepared by the WDC projects that the anticipated economic benefits to be realized within Watertown, Codington County, and Northeast South Dakota are as follows:

- An estimated $9.0 million dollars of capital investment to construct and equip the area.
- The attraction of additional workforce for the Region.
- Additional effects effects of the Developer purchasing from materials and supplying skilled labor to the area.
- Provide for affordable housing.

It is expected that once the improvements within the Project Plan are made, they will significantly enhance the value of it and other real property surrounding the district.

## Required Findings in Resolution Creating District
### Economic Development Analysis of City of Watertown TIF District No. 16

The City of Watertown has been approached concerning the creation of a tax increment financing district (TIF District) located within the City limits. Per South Dakota Codified Law 11-9-8, the Governing Body must make a finding that at least 25% of the real property within the district to be blighted or at least 50% of the real property in the district will be developed for affordable housing purposes and the improvement will significantly enhance the value of all other real property in the district.

Tax Increment Financing District No. 16 is a proposed housing project that will be created to pay the costs of public infrastructure and other expenses needed to facilitate the construction of an apartment complex. Current plans are for a 63-unit apartment building.

The investment of about $9.0 million dollars will stimulate and develop the general economic welfare and prosperity of the State through the promotion of employment and advancement of commerce during the construction period. Upon completion, the Project is expected to enhance the Region by creating additional jobs, fill various open professional positions that are available in the Region, and add housing for professionals, having a substantial annual economic impact to the Region and state.

Therefore, it is found that not less than 50%, by area, of the real property within the District will stimulate and develop the general economic welfare and prosperity of the State of South Dakota through the promotion and advancement of industrial, commercial, manufacturing, agricultural, and natural resources. It is also found that the improvement of the area is likely to significantly enhance the value of all real property in the District in accordance with SDCL 11-9-8.

.

32

## Definitions Used in This Plan

The following terms found in this Plan are defined below:

**Base Value or Tax Incremental Base Value** means the aggregate assessed value of all taxable property located within a Tax Incremental District on the date the District is created, as determined by SDCL 11-9-20.

**Blighted** means property that meets any of the criteria as defined and established by SDCL 11-9-9.

**Developer** means any individual or entity responsible for carrying out any portion of the projects listed in the TIF Plan, including both expenses considered eligible for TIF reimbursement and any other costs associated with private projects within the plan. In this Plan, the Developer is Craig Development, LLC, and Terry Stroh.

**Developer Project Developer Agreement** means any agreement which is binding between the City and one or more Developers and which specifies the duties, responsibilities, and obligations of all parties relative to the implementation of this plan. The agreement commits the Developer to complete listed projects and commits the City to payments of tax increment revenues to the developer(s), among other items. The agreement can include contingency and performance revisions.

**Economic Development** means all powers expressly granted and reasonable inferred pursuant to SDCL 9-54.

**Estimated Project Costs** means any *estimated* expenditure or monetary obligations by the City of Watertown, whether made, estimated to be made, incurred, or estimated to be incurred, which are listed as project Costs herein will include any costs incidental thereto but diminished by any income, special assessments, or other revenues, other than tax increments, received, or expected to be received, by the City of Watertown in connection with the implementation of this Plan.

**Generally Applicable Taxes** means taxes that have a uniform rate that is applied to all persons of the same classification in the appropriate authority, and the tax has an applicable manner of determination and collection.

**Governing Body** means the Watertown, S.D (SOUTH DAKOTA). City Council.

**Plan** means this Project Plan.

**Planning Commission** means the City of Watertown S.D. Planning Commission.

**Project Costs** means any expenditure or monetary obligations by the City of Watertown, whether made, estimated to be made, incurred, or estimated to be incurred, which are listed as project Costs herein will include any costs incidental thereto but diminished by any income, special assessments, or other revenues, other than tax increments, received, or expected to be received, by the City of Watertown in connection with the implementation of this Plan.

**Project Plan** refers to this plan.

33

**Project Site** means the location of the project.

**Public Works** means the Infrastructure Improvements, the acquisition by purchase or condemnation of real and public property within the Tax Increment District and the sale, lease, or other disposition of such property to private individuals, partnerships, corporations, or other entities at a price less than the cost of such acquisition which benefit or further the health, safety, welfare, and economic development of the City and Project Costs.

**SDCL** means South Dakota Codified Law.

**Taxable Property** all taxable property located in a Tax Incremental District.

**Tax Increment District** a contiguous geographic area within the City of Watertown defined and created by resolution of the governing body and named "City of Watertown Tax Increment Financing District Number Sixteen" (TIF No.16).

**Tax Increment Valuation** is the total value of the Tax Increment Financing District minus the tax incremental base pursuant to 11-9-19.

**TIF Eligible Project Costs** are any expenditures made or estimated to be made, or monetary obligations incurred or estimated to be incurred, by a municipality that are listed in a project plan as grants or costs of public works or improvements within a district, plus any incidental costs diminished by any income, special assessments, or other revenues, other than tax increments, received, or reasonably expected to be received, by the municipality in connection with the implementation of the plan.

**TIF Plan** refers to this project plan.

**All other definitions in SDCL 11-9 shall apply.**