IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In re: ) | Case No. 25-30004 |
| ) | (Chapter 11) |
| THE RUINS, LLC ) | |
| ) | |
| Debtor ) | |
| ) | |

**FIRST AND FINAL APPLICATION OF THE
DAKOTA BANKRUPTCY FIRM FOR ALLOWANCE OF
COMPENSATION AND REIMBURSEMENT OF EXPENSES INCURRED
IN CONNECTION WITH REPRESENTATION OF THE RUINS, LLC**

Come now Maurice B. VerStandig and The VerStandig Law Firm, LLC d/b/a the Dakota Bankruptcy Firm (collectively, "DBF"), former counsel for The Ruins, LLC (the "Debtor" or "Ruins"),[1] pursuant to Section 330 of Title 11 of the United States Code (the "Bankruptcy Code") and Federal Rule of Bankruptcy Procedure 2016, and apply to this Honorable Court for final allowance of compensation of (i) $50,766.66 in attorneys' fees, and (ii) reimbursement of $286.53 in expenses, to be paid through (iii) application of a retainer in the amount of $9,948.67; and (iv) allowance of an administrative expense claim in the amount of $41,104.52, and in support thereof state as follows:

---

[1] DBF will assist in the transition of this case to a chapter 7 trustee and will ensure an attorney is present at the meeting of creditors, albeit acknowledging such appearance cannot, legally, be on behalf of the Debtor, insofar as when a case is converted from chapter 11 to chapter 7, such "terminate[s] [the debtor's] status as debtor-in-possession and so terminate[s] [counsel's] service under § 327 as an attorney for the debtor-in-possession." *Lamie v. U.S. Trustee*, 540 U.S. 526, 532 (2004). *See also In re NRG Res., Inc.*, 64 B.R. 643, 647 (W.D. La. 1986) ("The intent of the Bankruptcy Code seems crystal clear that just as a trustee replaces the debtor-in-possession for the purpose of administering the estate and operating its business, so it is that the trustee's attorney displaces the debtor's attorney in order that the trustee will have counsel and assistance in performing his fiduciary duties. There is no need for the debtor to have assistance performing those duties which are fully assumed by the trustee, and hence any 'debtor's attorneys' can serve no beneficial purpose for the estate unless they are characterized as attorneys for the trustee.").

1

**I.  Introduction**

For just under a year, the Ruins yearned to reorganize in chapter 11. And while those efforts ultimately did not prove successful, no small amount of effort went into representing the Debtor along the way, through a claim objection, through plan drafting, through settlement negotiations, through an adversary proceeding and—most recently—through an exhausting five-day trial on a motion to convert to chapter 7. DBF had the privilege of being the Debtor's counsel throughout and, consistent with the allowances of Title 11 of the United States Code (the "Bankruptcy Code"), now seeks allowance of compensation, and reimbursement of fees, for the work involved in this case.

**II.  Recitations Pursuant to Applicable Law**

1. The services for which compensation is herein sought were performed between January 6, 2025 and December 31, 2025. Maurice VerStandig and Christianna Cathcart performed all billable work.

2. No interim applications for compensation were filed by DBF in this case.

3. Complete time records for attorney work are appended hereto as Exhibits A and B. Exhibit A is comprised of time and expense records specific and exclusive to this case. Exhibit B is comprised of time and expense records that cover this matter alongside two other, related cases; only 1/3 of the time and expenses documented in Exhibit B is sought herein. In preparing this application, it has come to DBF's attention that certain attorney efforts do not appear to have been contemporaneously documented; specifically, efforts surrounding the negotiation of a factual stipulation, in a related adversary proceeding, are known to have included various phone calls with opposing counsel and a Debtor designee, most of which are not present on the time records of DBF

for unknown reasons. DBF has *not* tried to recreate these records and is simply not seeking compensation for the correlative services.

4. Records of expenses incurred are included in the time records appended hereto as Exhibits A and B.

5. The compensation sought hereunder, if approved, will be paid (i) first, from a retainer in the sum of $9,948.67, being held in trust, and (ii) second, through allowance of an administrative expense claim to be paid, if funds are available, through the chapter 7 process, in accord with the Bankruptcy Code's priority scheme.

6. There is no agreement for DBF to share compensation with any third party.

### III. Categorization of Time Entries

In accord with guidelines promulgated by the United States Trustee, DBF recorded all time in this matter in project categories. The time recorded—and compensation requested—for each such project category is as follows:[2]

    a. Case Administration – 144.81[3] Hours – $42,902.80

       *Plus expenses of* $98.79

    b. Plan and Disclosure Statement – 13.1 Hours – $5,240.00

       *Plus expenses of* $62.56

    c. Claims Administration – 0.4 Hours – $80.00

    d. Fee and Employment Applications – 0.3 Hours – $60.00

---

[2] As noted *supra*, time recorded as being applicable to three related cases (including this matter) is documented on Exhibit B but reflected herein in hourly—and dollar—increments of one-third the total sum recorded.

[3] Time increments in hundredths of an hour are simply a byproduct of the splitting of certain time entries between three debtors. *See, supra,* n. 2. Time was recorded in tenth-of-an-hour increments.

      e.    Adversary Suit Against Red River State Bank – 27.98 Hours – $8,124.60

*Plus expenses of* $125.18

### IV.    Hourly Rate

Time has been billed in this case at the rate of $400.00 per hour for partner time and $200.00 per hour for associate time. At the time this case was filed, these were the rates DBF often—albeit not always—charged to chapter 11 debtors in North Dakota, being premised upon (i) the rate normally charged by DBF's principal in other districts (typically between $500.00 and $600.00 per hour); (ii) the prevailing rates charged by other attorneys in this district (which, rather properly, tend to be slightly lower than those assessed in other districts where DBF's attorneys frequently practice); (iii) the experience of DBF's attorneys; and (iv) a generalized economic observation of the rates that the North Dakota market seems most inclined to support. Since the filing of this case, DBF has raised its rates in North Dakota but elected to not charge an increased rate for any subsequent time entries in this case.

The average—or "blended"—hourly rate applicable to work in this case was $302.30 (before application of the discount discussed in Section V, *infra*, which brings the blended rate to $272.07). It is respectfully submitted this is reasonable for a matter of some complexity, especially in the context of a proceeding often punctuated by contested matters and litigation where opposing parties have been represented by preeminent local attorneys.

### V.    Discount

DBF has applied an across-the-board 10% discount to all time entries in this case (but not to expense entries), which explains why the sum sought herein is 90% of that set forth in Section III of this application (where non-discounted totals are reflected). This discount is in addition to the apparent omission of certain billable entries, for which compensation is not sought since

4

contemporaneous records are not extant. *See, supra,* § II, ¶ 3. The discount is extended both as a courtesy and as a means of avoiding disputes concerning any time entry(ies); while efforts have been undertaken to ensure there was not an unnecessary duplication of efforts by and between DBF's two attorneys, and while billing records are believed to be clear in nature, the firm nonetheless recognizes that fee applications often fetch questions about the efficiency of efforts between counsel, and the precision of specific time entries. It is hoped that the discount provided will serve to quell any such concerns.

The discount is also applied in recognition of the fact that while a joint billing matter was used for time entries applicable to three related cases, at least *some* of the time entries therein may have more profoundly impacted the other two matters. When time entries were not at all applicable to this Debtor, they were not entered in the joint billing matter (instead being split between the two related matters or simply billed to one of the other two matters).[4] But the innate imprecision of joint billing appears to justify a discount in the interests of cautiousness, and such thusly also informs application of a 10% fee reduction.

### VI. Travel Time and Expenses

DBF does not seek compensation for time spent traveling to and from North Dakota, nor reimbursement for the expenses incurred in connection with such travel. As such, while there were multiple such trips occasioned by this case, the time records appended hereto are notably devoid of any time entries for travel and any expense entries for airfare/lodging/rental cars.

---

[4] There appears to be one exception to this: a motion for leave to maintain pre-petition bank accounts was billed to the joint matter, in a time increment of .4 hours, yet does not appear to have materially impacted this specific Debtor. One-third of the $160.00 fee for this—totaling $52.80—is included in the fees sought but, notably and not coincidentally, is dwarfed by the $5,640.74 discount applied to the compensation being sought.

To the extent compensable work was undertaken while traveling (i.e., preparing for a hearing while on an airplane), however, such is included in the services for which compensation is sought.

VII. **Description of Services Rendered**

The time records appended hereto as Exhibits A and B contain a thorough description of all services rendered for which compensation is instantly sought. And many of those services are also well reflected on the docket of this case and a related adversary proceeding, in the form of briefs and other papers. By way of a generalized description, however, DBF notes that services included the following:

    a. Advising the Debtor in connection with case-centric matters;

    b. Aiding the Debtor in preparation of monthly operating reports;

    c. Representation of the Debtor at an initial interview with the United States Trustee and a subsequent meeting of creditors;

    d. Drafting of a plan of reorganization and amendments thereto;

    e. Drafting of a disclosure statement;

    f. Filing and pursuit of a claim objection, including a review of records produced in connection with said objection;

    g. Bringing of an adversary proceeding against the largest creditor, Red River State Bank, and the management of myriad matters therein (including extensive briefing on a motion to dismiss and related choice-of-laws issues); and

    h. Defense of a motion to convert, including a five-day trial thereupon and detailed briefing thereof.

### VIII. Conclusion

WHEREFORE, Maurice Belmont VerStandig and The Dakota Bankruptcy Firm respectfully pray this Honorable Court (i) finally approve and ratify fees in the sum of $50,766.66; (ii) finally approve and ratify expenses in the sum of $286.53; (iii) permit DBF to draw $9,948.67, from the funds being held as a retainer, in trust, toward payment of the foregoing fees and expenses; (iv) award The Dakota Bankruptcy Firm an administrative claim of $41,104.52, to be paid in accord with the Bankruptcy Code's governing priority scheme, through the chapter 7 process; and (v) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: January 2, 2026      By:   /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
The Dakota Bankruptcy Firm
1630 1st Avenue N
Suite B PMB 24
Fargo, North Dakota 58102-4246
Phone: (701) 394-3215
mac@dakotabankruptcy.com

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of January, 2026, a copy of the foregoing was served electronically upon filing via the ECF system.

I FURTHER CERTIFY that, pursuant to Federal Rule of Bankruptcy Procedure 2002(a)(6), a copy of the notice attached hereto as Exhibit C (but not of this application or the other exhibits) is being sent, on this 2nd day of January, 2026, via First Class Mail, postage prepaid, to all parties on the mailing matrix attached hereto as Exhibit D, *except* no copy will be mailed to (i) this Honorable Court; or (ii) The Dakota Bankruptcy Firm.

/s/ Maurice B. VerStandig
Maurice B. VerStandig

7