## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

In re:

The Ruins, LLC,                                          Case No.: 25-30004
                                                         Chapter 7
                            Debtor.

## MOTION TO APPROVE BID PROCEDURE AND SET A SALE HEARING DATE FOR PROPOSED SALE OF REAL PROPERTY

### MOTION

1.      This court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This motion is filed under Fed. R. Bankr. P. 9014 and Local Rules 9013-1.  This proceeding is a core proceeding 28 U.S.C. § 157(b).  The case is now pending in this court.

2.      On January 6, 2025, Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code in this Court.

3.      On December 31, 2025, upon a motion of creditor Red River State Bank, the Court entered an order converting the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code [Doc. No. 252] (the "Conversion Order"). Pursuant to the Conversion Order, conversion became effective December 31, 2025.

4.      The Trustee was appointed Chapter 7 trustee on January 6, 2026.

5.      Property of the estate includes real property. The real property is a partially completed mixed use apartment complex located at 315 E Kemp Avenue Watertown, South Dakota 5720 and legally described as follows:

"The Ruins Addition to the City of Watertown, Codington County,

South Dakota." (the "Real Property")

6.      The Trustee seeks to sell the Real Property via a managed bid process (the "Bid Procedure").  A true and correct copy of the proposed timeline and summary of the Bid Procedure is attached hereto as <u>Exhibit A</u>.  The Bid Procedure contemplates use of a purchase agreement in substantially the form attached hereto as <u>Exhibit B.</u>

7.       The Trustee proposes that Hilco Real Estate, LLC and Sioux Falls Commercial, Inc. dba NAI Sioux Falls (collectively "Co-Brokers") market and conduct the Bid Procedure. The Trustee has filed an Application to Employ the Co-Brokers to market and conduct a managed bid process for the sale of the Real Property.

8.      The Trustee shall file a notice on the Court's docket to announce the results of the Bid Procedure as soon as practicable after the Trustee's acceptance of  an offer  and to move the Court to approve the sale free and clear of all liens and encumbrances pursuant to 11 U.S.C. 363(f) (the "Sale Motion"). The Sale Motion shall identify the prospective purchaser and an alternate purchaser (if applicable), and their respective bid amounts.  The Sale Motion shall also include the date and time of the Sale Hearing (defined below) and the deadline by which objections must be filed prior to the Sale Hearing.

9.      The Trustee requests that the Court schedule a sale hearing as soon as practicable after the Trustee's acceptance of an offer (the "Sale Hearing").  At the Sale Hearing, the Trustee will request that the Court approve a sale to the prospective purchaser  and alternate purchaser (if applicable) free and clear of all liens and encumbrances pursuant to 11 U.S.C. 363(f).

**WHEREFORE**, the Trustee, by and through the undersigned attorney, moves the court for an order of the court approving the proposed Bid Procedure and setting a Sale Hearing at which to consider entry of an order authorizing the Trustee to sell the Real Property free and clear of all liens and encumbrances pursuant to 11 U.S.C. 363(f).


Ahlgren Law Office, PLLC

Dated: March 2, 2026                    /e/Erik A. Ahlgren
                                        Attorney #09561 (ND)
                                        220 West Washington Ave, Ste 105
                                        Fergus Falls, MN 56537
                                        Office: 218-998-2775
                                        Fax: 218-998-6404
                                        erik@ahlgrenlawoffice.net

                                        ATTORNEY FOR TRUSTEE

**Verification**.

I, Erik A. Ahlgren, the moving party named in the foregoing notice of hearing and motion, declare under penalty of perjury that the foregoing is true and correct according to the best of my knowledge, information and belief.

Dated: March 2, 2026                          Signed: /e/ Erik A. Ahlgren

# EXHIBIT A

# <u>Proposed Timeline</u>

**TIMELINE**
The following is an estimated timeline for the sales process. This outline is predicated on running a managed qualifying bid process with a defined series of marketing tools and is representative of what we believe is warranted based on our knowledge of the situation. However, this timeline can be modified or amended as circumstances, facts and real-time feedback may dictate.

**Marketing Setup, Start and End** – Beginning of **March 2026**
- As soon as Listing Agreement is fully executed Hilco and NAI's marketing departments will start putting together all marketing materials.
- **Targeted Marketing Launch March 11th 2026.** Market and advertise the property to local, regional and national buyers to generate as much interest as possible. Provide property information to interested buyers and conduct multiple property tours.

**Qualifying Bids Due & Reviewed** - **April 16**, **2026**
- Qualifying bids are due – **April 16, 2026**
- To be a qualified bid, the bid must be submitted on the pre-approved contract with initial earnest money of $200,000.
- Bids are reviewed with Client and other parties of interest. – **April 17, 2026**
- **The best qualifying bids are notified on April 20th or 21st** invited to participate in a runoff auction – although if one offer is significantly better than the others, we have the flexibility to work directly with that buyer and forgo a runoff auction by asking for best and final bid.

**Best & Final, Runoff Auction, Contracts Signed, Earnest Money Deposited and Closing -**
- Best & Finals Requested, OR
- Qualifying bids are invited to participate in a runoff auction where the bidding will start at the highest qualifying offer received. All bidders will be notified of this starting bid. – **April 23, 2026.**
- The winning bidder will be determined upon the conclusion of the auction.
- After the conclusion of the auction, the winning bidder will sign a pre-approved contract with the new price.
- Within three days from acceptance of the winning offer, the winning bidder is required to deposit additional earnest money to make the total amount of earnest money equal 10% of the purchase price.
- Transactions will close within 15-days after the final approval of the bankruptcy court.

**TOTAL PROGRAM TIME (start to closing): 90 to 120 days**

**EXHIBIT B**

## REAL ESTATE PURCHASE AND SALE AGREEMENT

**Date of Contract:**              _____, 2026

**Address:**              315 E Kemp Avenue Watertown, South Dakota

**PIN:**              _____

**PURCHASER:**

NAME(S)

_____
                                        *(Print Name)*

_____
                                        *(Print Name)*

ADDRESS

_____

_____

_____

PHONE:              Work _____              Home
_____

                    Cell _____

                    E-mail or Fax:
_____

SOCIAL SECURITY
OR FEIN NUMBER:
_____

PURCHASER'S ATTORNEY:
_____

ADDRESS:
_____

_____

PHONE:_____FAX: _____

**SELLER**:

NAME:                          Erik Ahlgren, solely in his capacity as trustee for the
                               bankruptcy estate of The Ruins, LLC, Bky Case No. 25-30004

ADDRESS:                       Ahlgren Law Office, PLLC
                               Suite 105 (East Entrance)
                               220 West Washington Ave
                               Fergus Falls, MN 56537

                               Email: erik@ahlgrenlawoffice.net

      **1.**     **PURCHASE & DESCRIPTION OF REAL ESTATE**: Seller agrees to sell to Purchaser  and Purchaser agrees to purchase from Seller the real estate and improvements, if any, situated in State of South Dakota, County of Codington, commonly known as The Ruins, located at 315 E Kemp Avenue Watertown, South Dakota, together with any and all buildings, improvements, fixtures owned by the Seller located in, on, attached to the property; and all privileges and appurtenances pertaining thereto including any right, title and interest, if any, of Seller in and to adjacent streets, or rights-of-way, Seller's interest in any assignable warranties or guaranties relating to the property and fixtures located on, attached to, or used in connection with the property; all of the above hereinafter collectively called "**Property**", legally described in <u>Exhibit A</u> attached hereto and made a part hereof.

**2.**     **PURCHASE PRICE**:

(A)            **Total Purchase Price**                 $_____

(B)            **Initial Earnest Money** ($200,000)      $_____

C)            **Additional Earnest Money** (equals C x 10%- $200,000) $_____

**3.**     **PRICE AND TERMS**:

(A)      The Total Purchase Price is the amount set forth in (A) above (the "**Total Purchase Price**"), payable in U.S. dollars by Purchaser as follows:

       (1)      Earnest money (the Initial Earnest Money and any Additional Earnest Money are collectively referred to herein as the "**Earnest Money**") shall be paid in the form of a certified or cashier's check made payable to the order of _____, as escrow agent (the "**Escrow Agent**") in the amount set forth above.  Initial Earnest Money is due upon submission of Purchaser's initial bid and delivery of this Agreement signed by Purchaser, and shall be nonrefundable. Additional Earnest Money shall be due within three days of Seller's acceptance of this Agreement.

(2)　　The balance of the Total Purchase Price (the "**Balance**"), plus or minus prorations and closing adjustments, if any, is due at the closing of this transaction ("**Closing**") and must be paid by immediately available funds by wire transfer or Purchaser's official cashier's check from a bank, made payable to the Escrow Agent or such other payee(s) as Seller may hereafter designate in writing.

(B)　　Delivery of a trustee's deed and acceptance by Purchaser at the Closing shall be deemed to be full performance and discharge of all obligations (either express or implied) on the part of Seller to be performed pursuant to this Agreement. No representation, warranty or agreement, express or implied, of Seller shall survive the Closing except those which are herein specifically stated to survive the Closing.

**4.　　ALL-CASH TRANSACTION:** This is an all-cash sale and purchase; and is NOT contingent upon obtaining financing. Although, Purchaser may apply to a lending institution of Purchaser's choice for a loan but, Purchaser has been advised that neither his receipt of a commitment from such a lending institution, nor his acceptance of said commitment, does not in any way alter Purchaser's obligations under this Purchase and Sale Agreement.

**5.　　CLOSING:** Closing shall occur at 10:00 a.m. on or before 15 days from entry of the Approval Order (as defined herein at Section 21) (the **"Closing Date"),** at the offices of the Escrow Agent, or at such other location that Seller may designate.

**6.　　CLOSING DOCUMENTS:**

A.　　At the Closing, Seller shall deliver to Purchaser, at Seller's sole cost and expense, the following:

(1)　　A duly executed and acknowledged trustee's deed in recordable form conveying title in fee simple to all of the real estate, free and clear of any and all liens, encumbrances, and subject to the permitted title exceptions attached hereto as Exhibit B (the "**Permitted Title Exceptions**");

(2)　　Internal Revenue Code reporting requirements or disclosure including FIRPTA;

(3)　　A quitclaim bill of sale, without warranties, for any personal property being transferred; and

(4)　　All other documents that are reasonably customary to close this transaction; in accordance with the terms and conditions of this Agreement.

B.　　At the Closing, Purchaser shall:

(1)　　Pay the Balance;

(2)　　If Purchaser is a corporation or a limited liability company, deliver to Seller:

(a)　　Certified resolutions of the board of directors of Purchaser (or managing member) authorizing all the transactions contemplated by this Agreement;

(b)    An incumbency certificate with respect to those officers (or managing member) of Purchaser executing any documents or instruments in connection with the transactions contemplated herein; and

(c)    Certificate of Good Standing for the entity acquiring title from the Secretary of State or other appropriate governmental office of the state in which the entity was formed.

(3)    If the entity acquiring title is a partnership, deliver to Seller a certified copy of the partnership agreement and all appropriate resolutions, partnership consents and evidence of authority of said entity;

(4)    Execute such other and further documents necessary to close this transaction; in accordance with the terms and conditions of this Agreement and the Approval Order (defined herein at Paragraph 21);

7.    **SALES EXPENSES TO BE PAID IN CASH AT OR PRIOR TO CLOSING:**

**A.    SELLER'S EXPENSES:**  All costs of releasing and recording any release of a mortgage required by the terms of this Agreement, 1/2 of any escrow fee, if Purchaser does not use commercial lending for the purchase (otherwise the title escrow fee is payable in full by Purchaser); real estate brokerage fees pursuant to the listing agreement between Hilco Real Estate and Sioux Falls Commercial, Inc., dba NAI Sioux Falls (together, the "**Seller's Brokers**"), and Seller, and other expenses stipulated to be paid by Seller under provisions of this Agreement. State, County, or City transfer taxes (if any) shall be paid by the party that typically pays these expenses based on where the property is located.

**B.    PURCHASER'S EXPENSES:**  All recording costs of the Mortgage, if any, the deed, and any collateral documents, the full amount of any money lender's escrow, expense of ALTA Mortgage Title Policy, if Purchaser is using a commercial lender for the purchase it will pay the entire title company escrow fee (otherwise, 1/2 of any escrow fee); and expenses stipulated to be paid by Purchaser under other provisions of this Agreement. State, County, or City transfer taxes (if any) shall be paid by the party that typically pays these expenses based on where the property is located.

8.    **PRORATIONS AND ADJUSTMENTS:**  The following shall be prorated and adjusted between Seller and Purchaser as of the Closing Date, except as otherwise expressly provided herein:

A.    Water, electricity, sewer, gas, telephone and other utility charges based, to extent practicable, on final meter readings and/or final invoices.

B.    Accrued general real estate taxes shall be prorated as of the time of closing.  If such bills are not available, then such taxes shall be prorated on the basis of 100% of the most recent ascertainable tax bills.

C.    Special Assessments - If at the time of Closing, the Property is affected by an assessment which is or may become payable in installments, then only those installments due prior to the Closing Date shall be paid by the Seller, and all installments due subsequent to Closing Date shall be paid by Purchaser.

D.    Such other items that are customarily prorated in transactions of this nature shall be ratably prorated as of the Closing Date.  Except as expressly provided herein, all prorations shall be final.  The covenants and agreements set forth in this paragraph shall survive the closing.

E.    As of the Closing Date, Purchaser shall be responsible for the transfer of accounts and establishment of all utility services to the real estate to the name of Purchaser, including the making of any new utility deposits with the utility providers.  Seller shall be entitled to receive a refund of utility service deposits, if any, covering the period prior to the Closing Date.

F.    Real estate tax assessment reductions, tax refunds, and credits received after the Closing Date after deducting the expenses of collection thereof including attorney's fees which obligation shall survive the Closing that are:

1.    attributable to the tax year during which the Closing Date occurs and thereafter    shall be prorated between Seller and Purchaser;

2.    attributable to all tax years before the year in which the Closing occurs belong to    Seller.

9.    **DEFAULTS**:  A failure to appear at the time and place stated in the notice of the Closing Date, a failure to pay any amounts due hereunder (including Earnest Money), a failure to enter into, execute and deliver customary closing documents, or Purchaser's failure to perform any obligation of Purchaser required under the Contract and any supplemental written agreements made a part of the Contract shall be a default. In the event of Purchaser's default, the Earnest Money shall be retained or collected by Seller as liquidated damages, and not as a penalty as Seller's sole and exclusive remedy in law and equity. In the event Seller shall fail or be unable to deliver title to the Property as herein provided on account of title defects which Purchaser is unwilling to waive, this Agreement shall be terminated and the Earnest Money shall be returned forthwith to Purchaser. The return of Purchaser's funds shall be Purchaser's sole and exclusive remedy in the event of any form of Seller's default under this Agreement. **UNDER NO CIRCUMSTANCES SHALL SELLER BE LIABLE FOR ANY CONSEQUENTIAL OR INCIDENTAL DAMAGES**.

10.    **WARRANTY DISCLAIMERS**:

(A)    **THE PROPERTY IS BEING SOLD "AS IS".  SELLER HEREBY EXCLUDES AND DISCLAIMS ANY AND ALL WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING BY WAY OF ILLUSTRATION AND NOT LIMITATION, WARRANTIES OF FITNESS FOR PARTICULAR PURPOSE, HABITABILITY AND MERCHANTABILITY. SELLER NEITHER ASSUMES NOR AUTHORIZES ANY PERSON TO ASSUME FOR SELLER ANY LIABILITY IN CONNECTION WITH THE SALE OR USE OF THE PROPERTY, AND THERE ARE NO AGREEMENTS OR WARRANTIES, EITHER ORAL OR WRITTEN, COLLATERAL TO OR AFFECTING THIS AGREEMENT, OR THE PROPERTY. PURCHASER ACKNOWLEDGES THAT NO WARRANTY CLAIMS FOR ANY MATTERS RELATING TO THE CONDITION OF THE PROPERTY MAY BE MADE AGAINST SELLER. PURCHASER FURTHER ACKNOWLEDGES THAT PURCHASER'S ACCEPTANCE OF SELLER'S DISCLAIMER OF WARRANTIES, INCLUDING THE DISCLAIMER OF ANY APPLICABLE IMPLIED WARRANTY OF HABITABILITY, IS AN ESSENTIAL PART OF THE AGREEMENT REACHED BETWEEN PURCHASER AND SELLER.**

(B)    Purchaser acknowledges and understands that if a dispute arises with Seller and the dispute results in a lawsuit, Purchaser will not be able to rely on the Implied Warranty of Habitability described above, as a basis for suing Seller or as the basis of a defense if Seller sues Purchaser.

(C)    Seller shall not be responsible for any incidental or consequential damages.

11.    **POSSESSION:** Purchaser shall not take possession of the Property or commence any work prior to delivery of the Deed and full compliance with the terms of this Agreement.  The Property shall be delivered at Closing.  Purchaser shall be responsible for installing new locks on the Property immediately after the Closing, and Purchaser shall hold Seller and Seller's representatives and agents harmless from any and all damages, claims, liens, liabilities, costs, injuries and expenses of any kind that may be made against Seller as a result of Purchaser's failure to install new locks on the property.

12.    **BROKER'S COMMISSION**:  The Seller's Broker shall be paid a broker's commission in accordance with its listing agreement at Closing.  This Paragraph and disbursement instructions may not be amended or revoked without the prior written consent of Seller's Broker, unless superseded by an order of the Bankruptcy Court.

13.    **AGENCY DISCLOSURE:**  The Seller's Broker, and their agents represent Seller.  The Seller's Broker owe duties of trust, loyalty and confidence to Seller only.  While the Seller's Broker has a duty to treat Purchaser honestly and fairly at all times, the Seller's Broker is the Seller's agent and acting on behalf of Seller and not Purchaser.  Any cooperating broker will be recognized as an agent of the Purchaser.  BY SIGNING BELOW, PURCHASER ACKNOWLEDGES PRIOR TIMELY NOTICE BY SELLER'S BROKER IS SELLER'S AGENT ONLY.

14.    **CONSULT YOUR ATTORNEY:**  THIS IS INTENDED TO BE A LEGALLY BINDING AGREEMENT.  READ IT CAREFULLY.  NO REPRESENTATION OR RECOMMENDATION IS MADE BY SELLER, SELLER'S BROKER OR THEIR AGENTS OR EMPLOYEES AS TO THE LEGAL SUFFICIENCY, LEGAL EFFECT, OR TAX CONSEQUENCES OF THIS DOCUMENT OR THE TRANSACTION RELATING THERETO.  THESE ARE QUESTIONS FOR YOUR ATTORNEY.  CONSULT YOUR ATTORNEY BEFORE SIGNING.  NEITHER THE SELLER NOR THE SELLER'S BROKER CAN GIVE YOU ANY LEGAL ADVICE.

15.    **DISCLAIMER:**

(A)    EXCEPT AS OTHERWISE SPECIFICALLY STATED IN THIS AGREEMENT, SELLER HEREBY SPECIFICALLY DISCLAIMS ANY WARRANTY, GUARANTY, OR REPRESENTATION, ORAL OR WRITTEN, PAST, PRESENT, OR FUTURE OF, AS TO, OR CONCERNING THE NATURE AND CONDITION OF THE PROPERTY, INCLUDING, WITHOUT LIMITATION, THE WATER, SOIL, AND GEOLOGY, AND THE SUITABILITY THEREOF AND OF THE PROPERTY FOR ANY AND ALL ACTIVITIES AND USES WHICH PURCHASER MAY ELECT TO CONDUCT THEREON.

(B)    EXCEPT AS SPECIFICALLY STATED IN THIS AGREEMENT, SELLER HAS NOT MADE AND IS NOT MAKING ANY REPRESENTATION OR WARRANTY REGARDING MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE, ENVIRONMENTAL CONDITIONS, ZONING OR THE AVAILABILITY OF UTILITIES OR PERMITS.

(C)    PURCHASER ACKNOWLEDGES THAT HAVING BEEN GIVEN A SUFFICIENT OPPORTUNITY TO INSPECT THE PROPERTY, AND TO REVIEW OTHER MATERIAL GIVEN

TO PURCHASER, PURCHASER IS RELYING SOLELY ON ITS OWN INVESTIGATION OF THE PROPERTY IN ARRIVING AT ITS DECISION TO PURCHASE THE PROPERTY AND HAS NOT RELIED UPON ANY PLANS SELLING BROCHURES, ADVERTISEMENTS, REPRESENTATIONS WARRANTES, STATEMENTS OR ESTIMATES OF ANY NATURE WRITTEN OR ORAL BY SELLER OR SELLER'S BROKER IN DECIDING TO PURCHASE THE PROPERTY AT THE STATED PRICE.

(D)    PURCHASER IS PURCHASING THE PROPERTY IN ITS PRESENT CONDITION, "AS IS, WHERE IS", AND SELLER HAS NO OBLIGATION TO CONSTRUCT ANY IMPROVEMENTS THEREON, OR TO PERFORM ANY OTHER ACT REGARDING THE PROPERTY, EXCEPT AS EXPRESSLY PROVIDED HEREIN.

(E)    ANY FACTUAL INFORMATION SUCH AS PROPERTY DIMENSIONS, SQUARE FOOTAGE, OR SKETCHES SHOWN TO PURCHASER OR SET FORTH HEREIN ARE OR MAY BE APPROXIMATE AND PURCHASER REPRESENTS TO SELLER THAT THEY HAVE INSPECTED AND VERIFIED THE FACTS AND INFORMATION PRIOR TO THE EXECUTION OF THIS AGREEMENT.  NO LIABILITY FOR ANY INACCURACIES, ERRORS OR OMISSIONS IS ASSUMED BY THE SELLER, THE BROKER OR OTHER AGENTS.

(F)    THE REAL ESTATE SALESPERSONS AND BROKERS IN THIS TRANSACTION HAVE NO EXPERTISE WITH RESPECT TO ENVIRONMENTAL MATTERS.  PROPER INSPECTIONS OF THE PROPERTY BY QUALIFIED EXPERTS ARE ENCOURAGED TO DETERMINE WHETHER OR NOT THERE ARE ANY CURRENT OR POTENTIAL ENVIRONMENTAL CONCERNS RELATING TO THE PROPERTY.  THE REAL ESTATE SALESPERSONS AND BROKERS IN THIS TRANSACTION HAVE NOT MADE, NOR WILL THEY MAKE, ANY REPRESENTATIONS, EITHER EXPRESSED OR IMPLIED, REGARDING THE EXISTENCE OR NON-EXISTENCE OF ANY SUCH ENVIRONMENTAL CONCERNS IN OR ON THE PROPERTY.

(G)    PURCHASER HAS BEEN MADE AWARE OF ANY DEED RESTRICTIONS THAT ARE ATTACHED TO THIS PROPERTY AND IS BUYING SUBJECT TO THOSE DEED RESTRICTIONS.  THE SPECIFIC DEED RESTRICTIONS ARE ATTACHED AS <u>EXHIBIT C</u>.

16.    **<u>RISK OF LOSS:</u>**    If any material portion of the Property is damaged or destroyed prior to the Closing Date, as determined by Seller is its sole discretion, Seller shall give Purchaser written notice thereof.  Purchaser shall have the option, within ten (10) business days after receipt of such written notice, to either (a) terminate this Agreement, or (b) consummate this Agreement in accordance with its terms.  In any event, Seller shall not be deemed in default under this Agreement as a result of such damage or destruction.  Purchaser shall be deemed to have waived his right to terminate this Agreement if Purchaser does not notify Seller in writing of it election to terminate this Agreement within ten (10) business days after receipt of Seller's written notice of material damage.  If within five (5) days after Seller's receipt of such written notice of termination by Purchaser, Seller delivers to Purchaser Seller's written agreement to repair at its sole cost and expense all such damage, then any such termination notice given by Purchaser shall be rendered ineffective.  In such event, the Closing Date shall be deemed automatically extended until such time as the Seller completes the repairs, upon completion Purchaser will be given notice that such repair is complete and will have five (5) business days to close.  Purchaser shall not be entitled to any insurance proceeds or obtain any rights with respect to any claims Seller may have with respect to the Property.

17.    **DISCLOSURES:**        Purchaser acknowledges and agrees that Purchaser has received and had adequate opportunity to read and understand all disclosures made available by Seller, Broker, or auctioneer regarding the property.  Purchaser shall execute at or prior to Closing, all federal, state and local disclosures concerning the property that Purchaser is required to execute under applicable laws and regulations.  Purchaser acknowledges that any information provided by or on behalf of Seller with respect to the Property and Disclosures were obtained from a variety of sources and neither Seller, Broker, nor Auctioneer have verified such information and make no representation as to the accuracy or completeness of said information.

18.    **OCCUPIED PROPERTY:** Seller makes no representations or warranties as to whether the Property is occupied as of the Closing Date.  Purchaser expressly waives any right to terminate this Agreement based on the status of the occupancy of the Property.  Purchaser acknowledges that Purchaser may be subject to any federal, state, or local laws in regards to protecting the rights of tenants who may be occupying the Property.

19.    **MISCELLANEOUS:**

(A)    NOTICES:  All notices and demands required hereunder shall be made in writing and the mailing of notice by email with a copy by regular first class mail to Seller or Purchaser and to their attorneys at the addresses given in this Agreement shall be sufficient.

(B)    TIME IS OF THE ESSENCE OF THIS AGREEMENT

(C)    NO RECORDING**:**  Neither this Agreement nor any type of memorandum thereof shall be recorded with the Codington County Registrar of Deeds or with any other governmental agency, and any purported recordation or filing hereof by Purchaser shall constitute a default on the part of Purchaser.

(C)    ENTIRE AGREEMENT:  This Agreement constitutes the entire agreement between the parties as to the subject matter hereof and supersedes all prior understandings and agreements. There are no representations, agreements arrangements or understandings oral or written between the parties, including the Broker, relating to the subject matter contained in this Agreement which is not fully expressed or referred to herein.

(D)    SUCCESSORS AND ASSIGNS:
    (1)    The provisions of this Agreement shall bind and inure to the benefit of Purchaser

    and Purchaser's heirs, legal representatives, successors and permitted assigns and shall

    bind and inure to the benefit of the Seller and its successors and assigns.  This Agreement

    may not be assigned by Purchaser without prior written consent of Seller.


    (2)    The Seller's refusal to consent to an assignment shall not entitle Purchaser to cancel this Agreement nor give rise to any claim for damages against Seller.

(E)    PURCHASER ASSIGNMENT TO TAKE TITLE: Purchaser may request the conveyance be made to another, persons or entity ("**Nominee**"), upon notification in writing delivered to Seller at least ten days prior to the date of Closing.  Purchaser's designation of a Nominee to take title

to the Property shall not relieve the Purchaser of any obligation hereunder.  Any additional transfer taxes due as a result of the designation of a Nominee shall be Purchaser's obligation to pay.

(F)      JOINT PURCHASERS:  The term "Purchaser" shall be read as "Purchasers" if more than one person is the Purchaser of the Property, in which case their obligations shall be joint and several.

(G)      FURTHER ASSURANCES:  Either party shall execute, acknowledge and deliver to the other party such instruments and take such other actions, in addition to the instruments and actions specifically provided for herein at any time and from time to time after execution of this Agreement whether before or after the Closing, as such other party may reasonably request in order to effectuate the provisions of this Agreement or the transaction contemplated herein or to confirm or perfect any right to be created or transferred hereunder or pursuant to this transaction, provided that neither party shall be required to incur any material expense in connection therewith.

(H)      SEVERABILITY:  If any clause or provision of this Agreement is held to be invalid or unenforceable by any court of competent jurisdiction as against any person or under any circumstances, the remainder of this Agreement and the applicability of any such clause or provision to other persons or circumstances shall not be affected thereby.  All other clauses or provisions of this Agreement, not found invalid or unenforceable shall be and remain valid and enforceable.

(I)      STRICT COMPLIANCE:  Any failure by either party to insist upon strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of any of the provisions hereof, irrespective of the number of violations or breaches that may occur, and each party, notwithstanding any such failure, shall have the right thereafter to insist upon strict performance by the other of any and all of the provisions of this Agreement.

(J)      GOVERNING LAW:  The provisions of this Agreement shall be governed by, and construed and enforced in accordance with the laws of the state of North Dakota.

(K)      WAIVER OF JURY TRIAL:  **EXCEPT AS PROHIBITED BY LAW, THE PARTIES SHALL, AND THEY HEREBY DO, EXPRESSLY WAIVE TRIAL BY JURY IN ANY LITIGATION ARISING OUT OF, CONNECTED WITH, OR RELATING TO THIS AGREEMENT OR THE RELATIONSHIP CREATED HEREBY**.  With respect to any matter for which a jury trial cannot be waived, the parties agree not to assert any such claim as a counterclaim in, nor move to consolidate such claim with, any action or proceeding in which a jury trial is waived.

(L)      ATTORNEYS FEES:  A party to this Agreement who is the prevailing party in any legal proceeding against any other party brought under or with respect to this Agreement or the transaction contemplated hereby shall be additionally entitled to recover court costs and reasonable attorney's fees from the non-prevailing party.

(M)      GENDER: A reference in this Agreement to any one gender, masculine, feminine or neuter, includes the other two, and the singular includes the plural, and vice versa, unless the context requires otherwise.

(N)      CERTAIN REFERENCES:  The term "herein", "hereof" or "hereunder" or similar terms used in this Agreement refer to this entire Agreement and not to the particular provision in which the term is used.  Unless otherwise stated, all references herein to paragraphs, subparagraphs

or other provisions are references to paragraph, subparagraphs or other provisions of this Agreement.

(O)    SINGULAR ALSO MEANS PLURAL:  Any singular word or term herein shall also be read as in the plural whenever the sense of this Agreement may require it.

(P)    CAPTIONS:  The captions in this Agreement are for convenience and reference only and in no way define, limit or describe the scope of this Agreement or the intent of any provision hereof.

(Q)    NO ORAL CHANGES:  This Agreement cannot be changed or any provision waived orally. ANY CHANGES OR ADDITIONAL PROVISIONS OR WAIVERS MUST BE SET FORTH IN A RIDER ATTACHED HERETO OR IN A SEPARATE WRITTEN AGREEMENT SIGNED BY THE PARTIES.

(R)    DATE OF PERFORMANCE:  If any date for performance hereunder falls on a Saturday, Sunday or other day which is a federal holiday or holiday under the laws of the state in which the Property is located, the date for such performance shall be the next succeeding business day.

(S)    NO PRESUMPTION REGARDING DRAFTING:  It is acknowledged and presumed that the substance and form of this Agreement have been fully reviewed by the parties hereto and approved as to form by their respective counsel.  It is further acknowledged and agreed that no presumption shall exist against either party hereto by virtue of this Agreement being considered to have been drafted by counsel for either party thereto.

(T)    COUNTERPARTS:   This Agreement may be executed in multiple counterparts all of which when taken together shall constitute an Agreement for the sale of real estate under the laws of this state.  It is binding upon and inures to the benefit of the parties hereto and their respective heirs, devisees, executors, administrators, successors and assigns, and may be canceled, modified or amended only by a written instrument executed by both the Seller and the Purchaser.

(U)    COUNTERPART BY EMAIL OR FACSIMILE EXECUTION:  For purposes of, executing this Agreement, a document signed and transmitted by email or facsimile machine shall be treated as an original document. The signature of any party thereon shall be considered as an original signature, and the document transmitted shall be considered to have the same binding legal effect as an original signature on an original document.  At the request of either party, any email or facsimile document shall be re-executed by both parties in original form.  No party hereto may raise the use of email or a facsimile machine or the fact that any signature was transmitted through the use of email a facsimile machine as a defense to the enforcement of this Agreement or any amendment executed in compliance with this Paragraph.  This Paragraph does not supersede the requirements of the "Notices" Paragraph.

(V)    FIRPTA:  Seller represents and warrants to Purchaser that Seller is not a "foreign person", as that term is defined for purposes of the Foreign Investment in Real Property Tax Act, Internal Revenue Code ("IRC") Section 1445, as amended, and the regulations promulgated thereunder (collectively "FIRPTA").

**20.    IRREVOCABLE OFFER**: Purchaser further acknowledges that this Agreement is executed and delivered by Purchaser pursuant to an auction conducted on behalf of Seller.   In consideration of the  following: (a) preserving  the  integrity  of  the  auction  process  and assuring

that all offers are made in conformity therewith and in reliance thereon; (b) the monies spent by Seller to arrange for the auction; (c) the opportunity of the Purchaser to bid for the Property; (d) the promise by the Seller to sell the Property to Purchaser if this Agreement is accepted by Seller as hereinafter provided and (e) for other good and valuable consideration, the receipt and adequacy of which is expressly acknowledged by Purchaser, including the mutual promises made by each party, this Agreement constitutes an irrevocable offer to purchase by Purchaser in accordance with this Agreement which cannot be revoked by Purchaser prior to 5:00 p.m. local time, (based on the location of the Property) on the five (5) business day following Purchaser Execution of this Agreement ("Irrevocable Deadline").

Such offer to purchase shall not be deemed accepted by Seller until executed by Seller or Seller's duly authorized agent prior to revocation thereof. Notice from Seller or its duly authorized agent to accept or reject Purchaser's offer under this paragraph may be given pursuant to the Notices Paragraph in this Agreement or by telephone and confirmed at a later date by notice given pursuant to Notices Paragraph in this Agreement.

Failure of Seller or its duly authorized agent to notify Purchaser on or prior to the Irrevocable Deadline that Seller accepts or rejects Purchaser's offer shall not constitute acceptance or rejection by Seller of Purchaser's offer, but Purchaser's irrevocable offer shall thereafter become revocable. Execution hereof by Seller prior to the Irrevocable Deadline shall constitute acceptance by Seller without the need for any further notification by Seller to Purchaser and the date of Purchaser's execution hereof, if any, shall be the Effective Date.

21. **APPROVAL BY BANKRUPTCY COURT:** Purchaser understands, acknowledges and agrees that the sale contemplated by this Agreement shall be made in accordance with Section 363 of the Bankruptcy Code with the Property to be sold free and clear of all liens, claims, taxes and encumbrances of whatever kind or nature (the "Liens") with such Liens, if any, if valid, to attach to the net proceeds of the Purchase Price, that is net of attorney's fees and expenses of the sale reflected in this Agreement, subject to the provisions of any Order approving this sale issued by the Bankruptcy Court (the "Approval Order").

This Purchase and Sale Agreement is expressly subject to and contingent upon the entry of an Order, pursuant to Section 363 of the Bankruptcy Code, approving the sale of the Property by the bankruptcy court in case number 25-30004 pending in the United States Bankruptcy Court, District of North Dakota (the "**Bankruptcy Court**"). Seller shall promptly file its application for the Approval Order upon receipt of a fully executed counterpart of this Agreement and receipt of the Earnest Money. Purchaser shall cooperate in good faith with the Seller to secure the Approval Order, including, but not limited to, attending the hearing to consider the entry of the Approval Order, and, if necessary, testifying before the Bankruptcy Court and providing documentary evidence as to Purchaser's financial wherewithal to perform the obligations of Purchaser under this Agreement. In the event that the Bankruptcy Court enters an Order denying the entry of the Approval Order, Seller shall return the Earnest Money to Purchaser within ten (10) business days of the entry of such Order and this Agreement shall be deemed to be null and void ab initio.

22. **EXHIBITS**: The attached Exhibits shall be and hereby are made a part of this Agreement. Any Exhibits attached hereto containing blank spaces, which exhibit is to be executed and delivered at the Closing shall be completed in accordance with the terms and provisions contained herein, prior to or at the time of execution and delivery thereof. The exhibits marked below are attached to this Agreement and incorporated herein:

☒    Legal Description – Exhibit A
☒    Permitted Title Exceptions – Exhibit B
☒    Deed Restrictions – Exhibit C

[Signature Page to Follow]

IN WITNESS WHEREOF, this Agreement has been executed as of the Effective Date.

SELLER:                                              PURCHASER:

By:
                                                     _____
_____                   Signature
Name:
                                                     _____
                                                     Print Name

Effective Date: _____                _____
                                                     Signature

                                                     _____
                                                     Print Name

                                                     Date of Execution:

                                                     _____

# EXHIBIT "A"

# Legal Description

The legal description of the real estate which is the subject of this agreement is described as:

The Ruins Addition to the City of Watertown, Codington County, South Dakota.

This property was formerly known as: The West 85 Feet of Lots 19, 20, 21, and 22 in Block 1 of Watertown, Codington County, South Dakota according to the recorded plat thereof; The East 129.69 Feet of Lots 15 and 16 in Block | of the Original Plat of Watertown, Codington County, South Dakota, and Lot I of Monk's and Sheldon's Subdivision of Lots 17 and 18 in Block 1 of the Original Plat of Watertown, Codington County, South Dakota; and The 20' Wide Alley Lying Adjacent to Lots 15, 16, 19, 20, 21 & 22 in Block 1 of the Original Plat of the City of Watertown and Adjacent to Lot 1 of Monk's & Sheldon's Subdivision of Lots 17 & 18 in Block 1 of the Original Plat of the City of Watertown, Codington County, South Dakota.

## EXHIBIT "B"

## Permitted Title Exceptions

A.   General Exceptions

(1)   Rights or claims of parties in possession not shown by the public records

(2)   Encroachments, overlaps, boundary line disputes, and any other matters which would be disclosed by an accurate survey and inspection of the Property.

(3)   Easements or claims of easements not shown by the public records and existing water, mineral, oil and exploration rights.

(4)   Any lien, or right to lien for services labor or material heretofore or hereafter furnished imposed by law and not shown by the public records.

(5)   Taxes or special assessments which are not shown as existing liens by the public records.

(6)   Restrictions upon the use of the Property not appearing in the record chain of title.

B.   Specific Exceptions

(1)   Covenants, Conditions, Easements and Restrictions of record.

(2)   General Real Estate Taxes not due and payable and subsequent years.

(3)   Special Assessments and installments due after the date of Closing.

(4)   Acts of Purchaser

(5)   Drainage Ditches and Laterals

## EXHIBIT "C"

## DEED RESTRICTIONS

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NORTH DAKOTA**

---

In re:

The Ruins, LLC,                                     Case No.: 25-30004
                                                    Chapter 7
                    Debtor.

---

**NOTICE OF MOTION TO APPROVE BID PROCEDURE AND SET A SALE**
**HEARING DATE FOR PROPOSED SALE OF REAL PROPERTY**

---

The Trustee filed and served a Motion to Approve Bid Procedure and Set a Sale Hearing Date for Proposed Sale of Real Property.   Your rights may be affected in the action.  You should read the papers carefully and discuss the matters with your attorney if you have one.  If you want the court to consider your views you should mail a written response to the action, within 14 days of the date of mailing of this document, and file the response with the Clerk of Bankruptcy Court and a copy served upon the U.S. Trustee and Bankruptcy Trustee.

| Clerk, U.S. Bankruptcy Court | United States Trustee | Trustee |
|---|---|---|
| Quentin N Burdick U.S. Courthouse | 314 S Main Ave. | (See address below) |
| 655 First Ave N – Ste 210 | Suite 303 | |
| Fargo ND  58107-4932 | Sioux Falls SD  57104-6462 | |

DATE OF MAILING:  March 2, 2026      /s/ Erik A. Ahlgren
                                     Erik A. Ahlgren, Trustee
                                     220 W Washington Ave Ste 105
                                     Fergus Falls MN  56537
                                     218-998-2775
                                     erik@ahlgrenlawoffice.net