UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In re:<br><br>The Ruins, LLC,<br><br>              Debtor. | Bankruptcy Case No.:  25-30004<br><br>Chapter 7 |

**LIMITED OBJECTION TO MOTION FOR SALE OF REAL ESTATE,
FREE OF LIENS AND ENCUMBRANCES (DOC. 324) SOLELY AS
TO COMPENSATION OF REAL ESTATE AGENTS**

Interested Person Jesse Craig ("Craig") objects to the Trustee's Motion for Sale of Real Estate, Free of Liens and Encumbrances (Doc. 324) (the "Motion") solely as it relates to the compensation to be paid to the Trustee's real estate agents at closing.  The proposed five percent (5%) commission provided for in the Application to Employ Real Estate Agents and the Real Estate Consulting, Advisory Services, and Co-Broker Agreement (Doc. 275) as applied to the real estate sale the Trustee seeks approval of (Doc. 327) is excessive as provided under 11 U.S.C. §§ 328 and 330.

**FACTS AND BACKGROUND**

On February 27, 2026, the Trustee applied to employ real estate agents Hilco Real Estate, LLC and Sioux Falls Commercial, Inc. dba NAI Sioux Falls (collectively, "Co-Brokers") (Doc. 275).  Under the Real Estate Consulting, Advisory Services, and Co-Broker Agreement attached to the Trustee's Application, the Co-Brokers would earn a commission of five percent (5%) based on the Gross Sale Proceeds as defined therein for a sale of the Debtor's Real Property (as defined in the Motion).  On March 16, 2026, the Court entered an order approving the Trustee's Application but specifically reserved ruling on any approval of the compensation owed to the Co-Brokers:  "This Order is not a determination that the services or rates charged are reasonable.  The

1

Court will consider the auctioneers compensation request in the context of the motion to sell." (Doc. 287).

On May 5, 2026, the Trustee filed the Motion seeking approval of the sale of the Real Property to Build, LLC ("Build") (Docs. 324 and 327 (the "Purchase Agreement")) for a total purchase price of $11,265,000.  As shown by the Purchase Agreement, Craig is the President of Build.  The Motion also seeks approval of a backup offer of $6,100,000 to Archer Land Co., LLC (Doc. 326) (the "Backup Offer").  The Motion asks that part of the sale proceeds be applied to brokerage fees as approved by the Court.

If the Court were to approve the requested 5% commission to Build's purchase price, the commission owed to the Co-Brokers will be $563,250.  The commission owed from the Backup Offer would be $305,000.  Craig does not know whether Archer Land Co., LLC has its own real estate agent with whom the commission may have to be split.  Build was not working with a buyer's real estate agent with whom the fee would be split.

As described in the Affidavit of Jesse Craig filed with this Objection, the Co-Brokers chose to begin marketing the Real Property despite needed exterior repairs to the building.  There was also inaccurate information provided in the materials made available to prospective buyers that may have impacted the bidding process and resulted in the significant disparity between the purchase price in the Purchase Agreement and the Backup Offer.

First, the Tyvek wrap on the exterior of the building had ripped in many places due to the weather.  Craig first notified the Trustee of this issue on January 6, 2026.  Craig provided the Trustee the name and number of the subcontractor who had installed the Tyvek.  The Tyvek had not been repaired at the time the Co-Brokers chose to move forward with the listing on March 11, 2026.  The repair was completed sometime after March 13, 2026.

2

Second, the incorrect floorplan was included in the Co-Broker's bidding materials. Specifically, the Co-Brokers included the initial floorplan provided to the City of Watertown for permitting. However, this floorplan was changed prior to construction. The updated floorplan was not included in the materials provided to prospective bidders.

Third, the Affidavit of Matthew Gehrtz and associated reports previously filed in this case as Doc. 60 was provided to the Co-Brokers and included in the materials to prospective bidders. This Affidavit was of course filed as part of contested litigation in support of Red River State Bank's Motion for Relief from Stay to undermine the value and condition of the Real Property. In this Affidavit, Gehrtz stated an opinion that the Real Property could contain mold and provided a water and mold remediation plan costing $293,951.43 (Doc. 60, ¶ 8). However, the mold remediation contractor had never been to the property. In December 2024, Craig had the Real Property tested for mold, and the test came back negative. The Trustee stipulated to provide the mold testing reports as part of the Stipulation Regarding Motion to Approve Bid Procedure and Set a Sale Hearing Date for Proposed Sale of Real Property (Doc. 295). The Co-Brokers added the mold test reports to the information provided to prospective bidders and also completely removed Gehrtz's Affidavit. However, by this time Gehrtz's speculation that the Real Property contained mold had been available to prospective bidders for 20 days of a 47 total day marketing period, which very likely turned away other prospective bidders and led to the significant disparity in submitted bids.

The Court also presided over proceedings regarding the rejection of the City of Watertown's lease of part of the Real Property (Doc. 313 and Doc. 314). During that hearing, the representative of the Co-Brokers testified he was unable to state the size of the building built on

the Real Property, was unfamiliar with the adjoining city plaza, was unsure whether the city plaza

was in use, and was not using the adjoining city plaza as a marketing amenity.

## LAW AND ARGUMENT

Bankruptcy Code § 328(a) provides for the compensation of professionals employed by

the bankruptcy trustee:

> The trustee . . . with the court's approval, may employ or authorize the employment
> of a professional person under section 327 or 1103 of this title, as the case may be,
> on any reasonable terms and conditions of employment, including on a retainer, on
> an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis.
> Notwithstanding such terms and conditions, the court may allow compensation
> different from the compensation provided under such terms and conditions after the
> conclusion of such employment, if such terms and conditions prove to have been
> improvident in light of developments not capable of being anticipated at the time
> of the fixing of such terms and conditions.

Further, Bankruptcy Code § 330(a)(1)(A) gives the court discretion to award professional persons

"reasonable compensation for actual, necessary services rendered[.]"

The court's base principal in exercising its discretion is whether the terms of retention and

compensation are fair to the professional retained and to the debtor and creditors, which bear its

expense, regardless of the size of the case.  In re Truong, 259 B.R. 264, 267 (Bankr. D.N.J. 2001).

"[A] bankruptcy judge's discretion in awarding compensation for services performed during

bankruptcy proceedings deserves great deference."  Electro-Wire Prods. v. Sirote & Permutt, P.C.

(In re Prince), 40 F.3d 356, 359 (11th Cir. 1994).  The moving party has the burden to establish

the reasonableness of the professional's employment terms and conditions.  In re C & P Auto

Transp., Inc., 94 B.R. 682, 686 (Bankr. E.D. Cal. 1988).  "What is reasonable must be assessed

with due regard for the particular and unique circumstances of each bankruptcy case and for the

fair and equitable administration of the bankruptcy estate."  In re Thermadyne Holdings Inc., No.

01-52840-399, 2002 Bankr. LEXIS 1735, at *7 (Bankr. E.D. Mo. Feb. 12, 2002).

In the context of a sale of real estate, the court has discretion to reduce a real estate agent's commission when the real estate agent played a minimal role in the ultimate sale of the property to a successful purchaser.  See In re Schubert, 143 B.R. 337, 343, 346 (S.D.N.Y. 1992) (reducing a real estate agent's commission where the real estate agent had a minimal, if any, role in bringing a final purchaser to the property).  The court may also consider the professional's errors in setting the reasonable compensation.  See In re Airlift Int'l, Inc., 24 B.R. 128, 131 (Bankr. S.D. Fla. 1982) (considering errors committed by the professional in setting its reasonable compensation).

In this case, Build, a limited liability company majority owned and led by Craig, is buying the Debtor's Real Property.  As the Court is aware, Craig is the sole member of the Debtor.  The Co-Brokers had minimal if any role in Build being the ultimate purchaser of the Real Property.  The amount of commission has a material impact on the bankruptcy estate.  If the Court awards the Co-Brokers a 5% commission on the total Gross Sale Proceeds, the commission paid to the Co-Brokers will be $563,250.  The total marketing period for the property from March 11, 2026, until April 27, 2026, when all initial bids were due, was only 47 days, which would equal approximately $11,984 per day to eventually sell the property to a new buyer that Craig is again the majority owner of.  If Build did not submit a bid for the Real Property, the sale price would be only $6,100,000, resulting in a commission of $305,000, $258,250 less than a 5% commission based off the Purchase Agreement.  Under these circumstances, it would be appropriate for the Court to significantly reduce the commission owed to the real estate agents.  Even if the Court bases the commission on the Backup Offer, the bankruptcy estate is still improved by hundreds of thousands of dollars.

Furthermore, the Court should consider the marketing strategy and errors of the Co-Brokers when exercising its discretion over the compensation to be paid to the Co-Brokers.  The Co-

5

Brokers did not consult with the Debtor, through Craig, in any way in preparing the marketing strategy for the Real Property despite the Debtor and Craig having the most motivation to see a competitive sale.  The best offer the Co-Brokers received other than Build's was only $6,100,000.  The Co-Brokers chose to move forward with marketing the Real Property without waiting for the Trustee to authorize repairs to the Tyvek, which could have influenced prospective bidders when considering the reports implying there was water damage in the building.  As part of its marketing information, the Co-Brokers provided the wrong floorplan to bidders.  The Co-Brokers also used not just Gehrtz's inspection reports but his actual affidavit that was prepared solely for the purpose of undermining the Real Property's condition and value as part of their marketing materials, effectively advertising a false statement and opinion that the Real Property contained mold that may have required $293,951.43 in remediation.  Craig brought this mistake to the Co-Broker's attention through the Trustee and provided the reports to accurately describe the condition of the Real Property.  This revelation appears to have caused the Co-Brokers to completely remove Gehrtz's Affidavit and associated inspection report from the information provided to prospective bidders.  However, by that time, the damage to the marketing strategy may very well have been baked in.  The Court itself also heard the designated representative of the Co-Brokers testify, unable to describe the Real Property and one of its largest amenities (the city plaza) with any detail whatsoever.  These should all be factors for the Court when it considers what compensation is reasonable for the Co-Brokers.

**CONCLUSION**

For these reasons, Craig asks the Court to reduce the real estate commission to be paid to the Co-Brokers in an amount to be determined by the Court following a hearing on the Motion.

Craig submits that the real estate commission should be no more than $305,000, but a greater

reduction may be appropriate under the facts of this case.

Dated this 27th day of May, 2026.

/s/ Douglas W. Murch
Douglas W. Murch, ND ID #05983
CONMY FESTE LTD.
3369 45th Street South
Fargo, ND  58104
(701) 293-9911
dmurch@conmylaw.com

ATTORNEY FOR JESSE CRAIG

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In re:<br><br>The Ruins, LLC,<br><br>       Debtor. | Bankruptcy Case No.:  25-30004<br><br>Chapter 7 |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that she is an employee at the law firm of Conmy Feste Ltd., and is a person of such age and discretion as to be competent to serve papers.

That on May 27, 2026, she served a copy of:

**LIMITED OBJECTION TO MOTION FOR SALE OF REAL ESTATE,
FREE OF LIENS AND ENCUMBRANCES (DOC. 324) SOLELY AS
TO COMPENSATION OF REAL ESTATE AGENTS**

electronically by Notice of Electronic Filing upon all parties who have requested service in this case by filing the same via ECF with the Bankruptcy Court in the District of North Dakota.

/s/ *Leslyn A. Anderson*
Leslyn A. Anderson

8