**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| In Re:<br><br>The Ruins, LLC,<br><br>        Debtor. | Case No.:  25-30004<br><br>Chapter 7 |

**EXPEDITED MOTION OF RED RIVER STATE BANK TO ENFORCE THE AMENDED ORDER APPROVING MOTION FOR SALE OF REAL ESTATE, FREE OF LIENS AND ENCUMBRANCES, PURSUANT TO 11 U.S.C. 363(f) AND DISTRIBUTION OF PROCEEDS FROM THE SALE**

Red River State Bank ("RRSB"), a secured creditor and party in interest, by and through its undersigned counsel, respectfully moves this Court under 11 U.S.C. § 105(a) and its inherent authority to interpret and enforce its own orders, for entry of an order enforcing this Court's Amended Order Approving Motion for Sale of Real Estate, Free of Liens and Encumbrances, Pursuant to 11 U.S.C. § 363(f) and Distribution of Proceeds from the Sale [ECF No. 387] (the "Sale Order"), and compelling Build, LLC ("Build") to discontinue its efforts to prevent consummation of the alternative sale authorized by the Sale Order (the "Motion").  In support, RRSB states as follows:

**INTRODUCTION**

1.      The Sale Order did two things relevant to this Motion.  First, it approved the Trustee's sale of the estate's principal asset—the real property known as "The Ruins"—to Build LLC ("Build") for $11,265,000 on the terms of the parties' purchase agreement.  ECF No. 387, at ¶ 2.  Second, in the event that "if Build fail[ed] to close the sale of [The Ruins] by the Closing Date (as defined in the Build Purchase Agreement), or otherwise default[ed] under

the Build Purchase Agreement," the Sale Order authorized the Trustee to sell The Ruins to the backup bidder, Archer Land Co., LLC ("Archer"), for $6,100,000. *Id.* at ¶ 3.

2.      Build did not close by the Closing Date.  When it failed to close, rather than permit the Trustee to consummate the alternative sale to Archer—exactly as the Sale Order authorizes—Build responded by filing an eleven-count adversary proceeding seeking, among other things, to enjoin the Trustee from conveying the property to Archer, to compel specific performance of a sale to Build, and to toll or excuse the closing deadline. *See generally* ECF No. 388.

3.      Despite its assurance that the adversary action "does not seek to collaterally attack or modify the Sale Order[,]" *id.* at ¶ 6, Build's adversary action is a collateral attack on the Sale Order.  The injunctive and specific-performance relief Build seeks would nullify the very backup-sale mechanism the Sale Order established, and would rewrite the remedy the parties bargained for in the event of default.

4.      RRSB is not a stranger to this dispute.  It is the first-priority mortgagee, and an express beneficiary of the Sale Order, designated to be paid from the sale proceeds ahead of junior creditors and the estate.  *See* ECF No. 387, at ¶ 5(e).  Every week Build's suit delays the sale, it not only postpones, it places RRSB's primary source of recovery in jeopardy by risking the loss of the backup bid and further deterioration of the condition of its collateral.  In the interim, RRSB is also paying substantial monthly carrying costs out of pocket.  Build quite literally asks this Court to gamble with other parties' money, and to rewrite the express terms of not only the Build Purchase Agreement, but also the Archer Purchase Agreement.  RRSB therefore asks the Court to enforce its Sale Order: to direct Build to dismiss the counts of its adversary proceeding that seek to block that sale, and to make clear that Build's remedy for

2

any disputed default is to litigate its breach of contract claim against the Chapter 7 trustee only—not in derailing the Court-approved sale process.

## JURISDICTION

5.      This Court has jurisdiction under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (N), and (O), and the matter arises in the above-captioned case.  A dispute whose resolution "turns on the interpretation of the bankruptcy court's sale order" is a core proceeding, because "[a] bankruptcy court's decision to interpret and enforce a prior sale order falls under this formulation of 'arising in' jurisdiction." *Elliott v. General Motors LLC*, 829 F.3d 135, 153 (2d Cir. 2016).

6.      A bankruptcy court retains authority and jurisdiction to interpret and enforce its own orders.  *In re Galardi*, 673 B.R. 39, 42 (Bankr. M.D. Ga. 2025).  That authority is grounded in 11 U.S.C. § 105(a), which empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C.A. § 105.  Build does not contest this point. Indeed, its own complaint invokes this Court's "inherent authority, together with authority under 11 U.S.C. § 105(a), to interpret, enforce, clarify, and implement its own orders, including the Sale Order."  *See* ECF No. 388, at ¶ 4.

## FACTUAL BACKGROUND

7.      Build and the Trustee executed a Real Estate Purchase and Sale Agreement dated April 24, 2026 [Doc. 327] (the "Build Purchase Agreement"), under which Build agreed to purchase The Ruins for $11,265,000 in an all-cash transaction.  ECF No. 327, §§ 2 & 3.

8.      The Build Purchase Agreement makes time of the essence, *id.* at § 19(B), and requires closing "on or before 30 days from entry of the Approval Order[.]"  *Id.* at § 5.  It defines a broad set of defaults—including any failure "to perform any obligation" of the

3

purchaser—and fixes a single consequence for the purchaser's default: the earnest money "shall be retained or collected by Seller as liquidated damages, and not as a penalty as Seller's sole and exclusive remedy in law and equity." *Id.* at § 9. It further provides that the Bankruptcy Court "shall have exclusive jurisdiction and authority over" disputes, "including without limitation any action to interpret or enforce this Agreement." *Id.* at §19(J).

9.      On June 4, 2026, the Court entered its Order Approving Motion for Sale of Real Estate, Free of Liens and Encumbrances, Pursuant to 11 U.S.C. § 363(f) and Distribution of Proceeds from the Sale. *See generally* ECF No. 363.[1] Paragraph 2 of that order, and the Sale Order, authorized the Trustee to sell The Ruins free and clear to Build under Section 363(f) for $11,265,000 "in accordance with the terms of the purchase agreement between the Trustee and Build [Doc. 327][.]" ECF No. 387, ¶ 2 (first bracket in original). Paragraph 3 provided the alternative: "if Build fails to close the sale of the Real Property by the Closing Date . . . , or otherwise defaults under the Build Purchase Agreement," the Trustee "is authorized to sell" the Property to Archer for $6,100,000. *Id.* at ¶ 3. Paragraph 4 directed distribution of the proceeds, with RRSB to be paid, fifth in priority, "to Red River State Bank to pay the debt secured by the Red River State Bank Mortgages up to the Mortgage Cap." *Id.* at ¶ 5. The Court waived the Rule 6004(h) stay and made the Order "effective immediately." *Id.* at ¶ 7.

10.     Build did not close by the Closing Date. Build acknowledges that closing did not occur, and that the Trustee "contends that Build defaulted under the Purchase Agreement by failing to close on or before July 6, 2026." ECF No. 388, at ¶ 8.

---

[1]   This Order was subsequently amended via the Sale Order on July 15, 2026, with the terms outlined herein remaining unchanged.

11.     On July 15, 2026, Build filed its adversary complaint against the Trustee.  *See generally* ECF No. 388.  Build disputes that it defaulted, contending that title insurers would not issue commercially acceptable title insurance under the Sale Order as entered and that the Trustee's own Rule 60 motion to amend the Sale Order confirms the point.  *Id.* at ¶ 10 & 66.  Across eleven counts, Build seeks (among other relief): a declaration that it did not default and that the Trustee is not authorized to sell to Archer, *see id.* at ¶¶ A & C; specific performance directing the Trustee to convey the Property to Build, *see id.* at ¶ D; a temporary, preliminary, and permanent injunction barring conveyance of the Property to Archer or any other purchaser, *see id.* at ¶ E; and an order tolling or excusing the July 6, 2026 closing deadline.  *See id.* at ¶ F.  In the alternative, Build seeks the return of its $1,125,000 earnest-money deposit.  *See id.* at ¶ L.

<u>**REQUEST FOR EXPEDITED RELIEF**</u>

12.     Upon information and belief, Archer has deposited 10% of the purchase price and it is ready, willing and able to perform under the Archer Purchase Agreement by Thursday, July 22, 2026.

13.      RRSB requests expedited relief because Build seeks to enjoin the sale of The Ruins to Archer, which would effect a breach of the Sale Order and the Archer Purchase and Sale Agreement with Archer if such an injunction were allowed to go into effect, and the sale with Archer not consummated.

14.     RRSB respectfully suggests that the relevant parties in interest, including Build and the Trustee, are currently prepared for hearing beginning on Tuesday, July 21, 2026.

15.     Alternatively, the Motion could be heard on or before July 27, 2026, which is seven calendar days after the filing date of this Motion.

16.     Rule 9006(d) requires notice of a hearing on the Motion to be served at least 7 days before the hearing date.  Local Rule 9013-1 allows a longer 14-day notice period for all contested matters.

17.     Rule 9006(c), however, permits this court to reduce the notice period. Local Rules 9006-1 and 9013-1 further contemplate that the Motion could be heard on an expedited basis.

18.     RRSB respectfully submits that the circumstances here support the request for expedited relief and mitigate any potential prejudice to Build or the Trustee.

19.     For all the foregoing reasons, RRSB requests that the parties be permitted to go forward on the Motion on Tuesday, July 21, 2026, or Monday, July 27, 2026.

**LAW AND ARGUMENT**

**I.      The Court has authority to enforce the Sale Order and the Sale Order binds Build as the successful bidder.**

20.     Section 105(a) authorizes the Court to enter orders "necessary or appropriate to carry out the provisions of this title[,]" and it is the source of the Court's power to enforce its own orders. 11 U.S.C. § 105(a).  That enforcement power is not limited to any particular kind of order—a bankruptcy court's "authority to enforce its own orders . . . derives from the same statutes and the same general principles" regardless of the Code chapter under which the order issued. *Beckhart v. NewRez LLC*, 31 F.4th 274, 277 (4th Cir. 2022).  A Section 363 sale order is fully enforceable under this authority.

21.     The Sale Order binds Build.  It is "the sale order ultimately entered by the bankruptcy court which defines the terms and conditions of sale," *In re Maxko Petroleum, LLC*, 425 B.R. 852, 875 (Bankr. S.D. Fla. 2010) (citations omitted), and "the successful bidder

6

at a bankruptcy sale is bound by the offer as stated and embodied in an approval order." *In re Chateaugay Corp.*, 186 B.R. 561, 594 (Bankr. S.D.N.Y. 1995) (citation omitted). Successful bidders at Section 363 sales "are bound and obligated to consummate the sale when it is authorized by the Bankruptcy Court." *In re Oyster Bay Cove, Ltd.*, 161 B.R. 338, 342 (Bankr. E.D.N.Y. 1993). Build was the successful bidder, and the Sale Order approved the sale on the terms of the Build Purchase Agreement. ECF No. 387, ¶ 2. Build is therefore bound both by the Sale Order and by the incorporated Agreement, including its time-is-of-the-essence provision, its closing deadline, and its default and remedy terms.

22.     Two features of that bargain control the present dispute. First, the Sale Order itself supplies the consequence of Build's failure to close: the Trustee's authority to sell to Archer "if Build fails to close . . . or otherwise defaults." *Id.* at ¶ 3. Second, the incorporated Agreement supplies Build's remedy on its own default—retention of the earnest money as the Trustee's "sole and exclusive remedy in law and equity." ECF No. 327, at § 9. The parties did not agree that a defaulting Build could halt the sale process and litigate for an exclusive right to purchase The Ruins—they agreed that Build's default would be resolved by forfeiture of its deposit and the Trustee's move to the backup buyer. *Id.*

**II.     Build's adversary proceeding is an impermissible collateral attack on the sale Order, despite its disclaimer.**

23.     Build asserts that its suit "does not seek to collaterally attack or modify the Sale Order." ECF No. 388, at ¶ 6. The conclusory statement does not control—the relief Build seeks does. Build asks the Court to enjoin the conveyance to Archer, to compel a sale to Build, and to suspend the closing deadline the Sale Order incorporated. *Id.* at ¶¶ A, C, E & F. Each of those requests, if granted, would displace the alternative-sale mechanism the Sale Order

established and rewrite the remedy structure the Sale Order approved.  A challenge that would undo a sale order's operative terms is a collateral attack no matter how it is styled.

24.    A Section 363 sale order is "a final appealable judicial order" that "may be vacated only" on a showing of "fraud, unfairness, or mistake in the conduct of the sale[,]" or other Rule 60(b) grounds.  *In re TLFO, LLC*, 572 B.R. 391, 429 (Bankr. S.D. Fla. 2016).  Outside of appeal or a Rule 60(b) motion, "final sale orders of bankruptcy courts may not be challenged or collaterally attacked," and mounting such a challenge "by way of ancillary proceedings in the same court or in another court" is "an impermissible collateral attack."  *In re TLFO*, 572 B.R. at 429.  Indeed, "[i]n the absence of an appeal of a final sale order, the only manner in which a sale order may be challenged is through Rule 60(b)." *In re TLFO*, 572 B.R. at 430.  Build has neither appealed the Sale Order, nor moved to vacate it.  Instead, Build has filed an ancillary adversary proceeding—precisely the vehicle these authorities foreclose.

25.    Courts apply this rule directly to defaulting bidders.  In *In re Maxko Petroleum*, the court refused to "permit the [defaulting bidders] to collaterally attack the Final Sale Order and the finality of the . . . auction sale approved by that Order[]" where the bidders raised their objections through later litigation rather than by direct challenge.   425 B.R. at 874.  The same principle governs here: Build's contractual complaints about the closing do not entitle it to relitigate, through collateral litigation, the sale process the Sale Order fixed.

26.    The authority to interpret and enforce the Sale Order belongs to this Court, and its determinations are "reviewable by the federal appellate courts alone; they cannot be subject to collateral attack." *In re Motors Liquidation Co.*, 531 B.R. 354, 362 (Bankr. S.D.N.Y. 2015).  Where a party pursues litigation contrary to a sale order, "the normal remedy for the filing of a complaint in violation of a court order . . . would be an order mandating that complaint's

dismissal." *Id.* at 357.  RRSB asks the Court to apply that remedy to the counts of Build's adversary proceeding that seek to block or displace the Archer sale.

**III.    Enforcing the Sale Order does not deprive Build of its bargained-for remedy—it holds Build to it.**

27.    This Motion does not ask the Court to decide, on this record, every contract question Build raises.  Build's contentions that it did not default, that the Trustee failed to deliver insurable title, and that the earnest money should be returned, present disputes the Build Purchase Agreement itself routes to this Court, and they can be adjudicated without halting the sale.  What Build may not do is convert those contract defenses into an injunction that freezes the estate's largest asset and a decree of specific performance compelling a sale to itself.

28.    The Build Purchase Agreement forecloses that path.  Even accepting Build's premise that a dispute exists over default, the Build Purchase Agreement fixes the consequences of a purchaser's default as retention of the earnest money—"as Seller's sole and exclusive remedy in law and equity[,]" ECF No. 327, § 9—and, correspondingly, gives Build no contractual right to compel conveyance or to block a resale after failing to close.  Build's own pleading recognizes that its fallback remedy is monetary: it seeks, in the alternative, the return of its $1,125,000 deposit.  ECF No. 388, at ¶ L.  That alternative confirms that money, not specific performance to purchase The Ruins, is the measure of Build's rights if the closing did not occur.  The dispute over the deposit can proceed; the sale should not be held hostage to it.

29.    Enforcing the Sale Order also serves the finality that bankruptcy sales depend upon.  Successful bidders are held to their bids precisely to "provide stability and finality to judicial sales[.]" *In re Oyster Bay Cove*, 161 B.R. at 342.  Permitting a defaulting bidder to

9

suspend the alternative-sale mechanism through collateral litigation would defeat that purpose and chill participation in future bankruptcy estate sales.

## IV. RRSB has standing to seek enforcement of the Sale Order.

30. RRSB is a party in interest with a direct, particularized stake in enforcement. A secured creditor has standing to seek enforcement of a bankruptcy court order where it "assert[s] a claim for [its] own direct injury and not a claim that belongs to the estate," a requirement "typically satisfied where the violation . . . impairs a secured creditor's interest." *In re Sofer*, 507 B.R. 444, 449 (Bankr. E.D.N.Y. 2014) (citations omitted). A bona fide lienholder that suffers "particularized harm" may invoke the Court's authority under Section 105 to enforce its orders, because lienholders "are not 'outside parties' but rather are participants in the administration of the estate" with "vested, *in rem*, rights." *Matter of Ring*, 178 B.R. 570, 580-81 (Bankr. S.D. Ga. 1995). RRSB satisfies that standard on the face of the Sale Order. RRSB is the first-priority mortgagee, expressly designated to be paid from the sale proceeds ahead of junior creditors and the estate. *See* ECF No. 387, at ¶ 5(e). Build's suit to enjoin the sale directly delays and threatens that recovery—an injury particular to RRSB and not shared generally by the creditor body.

## V. If Build persists after the Court rules, contempt is an available remedy.

31. RRSB seeks enforcement first, not sanctions. But if, after the Court confirms that the Sale Order authorizes the alternative sale and bars Build's collateral effort to block it, Build continues to prosecute the enjoining counts of its adversary proceeding, civil contempt is available. A court may hold a party in civil contempt for violating an order where "there is no fair ground of doubt as to whether the order barred the [party's] conduct." *Taggart v. Lorenzen*, 587 U.S. 554, 557 (2019) (emphasis omitted). A contempt motion is properly

10

brought in the main case, and this Court "may entertain and rule on a motion for contempt filed in an adversary proceeding which seeks to enforce an order entered in the main bankruptcy case," and vice versa. *In re Galardi*, 673 B.R. at 49. RRSB reserves the right to seek contempt and its fees and costs should Build persist.

### CONCLUSION

32.     WHEREFORE, RRSB respectfully requests that the Court enter an order:

A.  Enforcing the Sale Order;

B.  Directing Build to dismiss the counts of its adversary proceeding that seek to enjoin, delay, or displace the sale authorized by the Sale Order—including its claims for injunctive relief and specific performance—and, to the extent Build does not do so, provide that such counts are barred as an impermissible collateral attack on the Sale Order;

C.  Confirming that Build's remedy, if any, arising from the failed closing is limited to the disposition of its earnest-money deposit as provided in the Build Purchase Agreement, and that such dispute may proceed without impairing consummation of the sale;

D.  Reserving RRSB's right to seek civil contempt, together with its reasonable attorneys' fees and costs, should Build continue to prosecute the enjoined counts after entry of the order; and

E.  Granting such other and further relief as the Court deems just and proper.

Dated this 20th day of July, 2026.

11

**VOGEL LAW FIRM**


BY:/s/ Drew J. Hushka
    Kesha L. Tanabe (#0387520)
    Caren W. Stanley (#06100)
    Drew J. Hushka (#08230)
    218 NP Avenue
    PO Box 1389
    Fargo, ND  58107-1389
    701.237.6983
    ATTORNEYS FOR RED RIVER STATE
    BANK

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| In Re: | Case No.: 25-30004 |
| The Ruins, LLC, | Chapter 7 |
| Debtor. | |

**NOTICE OF EXPEDITED MOTION OF RED RIVER STATE BANK TO ENFORCE THE AMENDED ORDER APPROVING MOTION FOR SALE OF REAL ESTATE, FREE OF LIENS AND ENCUMBRANCES, PURSUANT TO 11 U.S.C. 363(F) AND DISTRIBUTION OF PROCEEDS FROM THE SALE**

TO:     DEBTOR, ALL CREDITORS, AND OTHER INTERESTED PARTIES

NOTICE IS HEREBY GIVEN that Red River State Bank ("RRSB") has filed a Motion to Enforce, a copy of which is annexed hereto and herewith served upon you.

NOTICE IS FURTHER GIVEN that RRSB has requested relief on an expedited basis pursuant to Federal Rule of Bankruptcy 9006 and Local Rule 9006-1.

NOTICE IS FUTHER GIVEN that written objections to said motion, if any, shall be filed with the Clerk of the United States Bankruptcy Court, whose address is 655 First Avenue North, Suite 210, Fargo, ND 58102-4932, with a copy mailed to counsel for RRSB, whose name and address is listed below. Any objections not filed and served may be deemed waived.

Dated this 20th day of July, 2026.

**VOGEL LAW FIRM**

BY: /s/ Drew J. Hushka
      Kesha L. Tanabe (#0387520)
      Caren W. Stanley (#06100)
      Drew J. Hushka (#08230)
      218 NP Avenue
      PO Box 1389
      Fargo, ND  58107-1389
      701.237.6983
      ATTORNEYS FOR RED RIVER STATE
      BANK

2