UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In re:<br><br>The Ruins, LLC,<br><br>            Debtor. | Bankruptcy Case No.: 25-30004<br><br>Chapter 7 |

**BUILD, LLC'S RESPONSE IN OPPOSITION TO EXPEDITED MOTION OF
RED RIVER STATE BANK TO ENFORCE THE AMENDED ORDER APPROVING
MOTION FOR SALE OF REAL ESTATE, FREE OF LIENS AND ENCUMBRANCES,
PURSUANT TO 11 U.S.C. 363(F) AND DISTRIBUTION OF
PROCEEDS FROM THE SALE**

Build, LLC ("Build" or the "Successful Bidder"), by and through undersigned counsel,
respectfully submits this Response in Opposition to the Expedited Motion of Red River State Bank
("RRSB") to Enforce the Amended Sale Order (the "Motion"). RRSB asks this Court to
summarily determine the central disputed issues in the pending adversary proceeding and, based
upon that unproven premise, dismiss Build's claims for declaratory judgment, specific
performance and injunctive relief, authorize consummation of a substitute sale, and limit Build's
remedies to forfeiture or return of its earnest money deposit.

The Federal Rules do not permit a secured creditor that is not a party to the adversary
proceeding to obtain dispositive relief concerning disputed contract claims through an expedited
contested matter in the main bankruptcy case. The Motion should therefore be denied.

**INTRODUCTION**

RRSB's Motion is remarkable not because it seeks enforcement of the Sale Order, but
because it asks this Court to decide virtually every significant issue pending in the adversary
proceeding without discovery, testimony, or trial. RRSB repeatedly assumes that Build defaulted

under the Purchase Agreement, and at the same time fails to acknowledge the Trustee's conceded default of the Purchase Agreement. That assumption is the entire foundation of its Motion.

The Trustee himself acknowledged that the transaction could not close under the Sale Order as originally entered when he sought Rule 60 relief *after* multiple title insurers refused to insure title under the existing Sale Order. The Trustee cannot simultaneously contend that amendment of the Sale Order was necessary because the transaction could not close as structured, while RRSB insists the Court should simply presume that Build alone defaulted.

Nor does RRSB attempt to support its request for expedited relief with competent evidence. It speculates that Archer Land Co. LLC ("Archer") may withdraw if the substitute sale does not immediately proceed, yet submits no support that Archer intends to terminate its Purchase Agreement or that a brief adjudication of the parties' contractual rights will jeopardize the proposed backup sale.

By contrast, if RRSB obtains the relief it requests, the consequences cannot be undone. Build's contractual rights will be permanently extinguished before the Court determines the Trustee and Build's respective contractual and legal rights. The bankruptcy estate will forgo a purchase contract of approximately **$11.265 million** in favor of a backup proposal of **$6.1 million**—a difference of approximately **$5.165 million**—while simultaneously exposing the estate to substantial administrative expense claims arising from the Trustee's material breach of the Purchase Agreement.

Most fundamentally, however, RRSB asks this Court to dismiss claims pending in an adversary proceeding to which it is *not a party*. Rather than seek intervention pursuant to Bankruptcy Rule 7024 or litigate the issues through the procedures governing adversary proceedings, RRSB attempts an end-run around those procedures by styling its request as a

2

"Motion to Enforce." The label does not change the substance. The Motion seeks summary adjudication of disputed contract rights, equitable claims, and requests for injunctive relief that are already pending before this Court.

Because RRSB's Motion seeks to obtain through an expedited contested matter the very merits determinations reserved for the pending adversary proceeding, the Motion should be denied.

### FACTUAL BACKGROUND

The Debtor, The Ruins, LLC, owns certain real property and improvements commonly known as "The Ruins" (the "Property"). The Property constitutes the Debtor's principal asset and is subject to liens and encumbrances, including mortgages held by RRSB.

In connection with the Chapter 7 Trustee's marketing and sale of the Property, Build submitted the successful bid to purchase the Property for $11,265,000. Build's bid exceeded the bid submitted by the designated backup purchaser, Archer, by approximately $5.165 million. Build was declared the "Successful Bidder."

On April 24, 2026, Build and the Chapter 7 Trustee entered into that certain Real Estate Purchase and Sale Agreement (the "Purchase Agreement"), pursuant to which Build agreed to purchase the Property for $11,265,000. In accordance with the Purchase Agreement, Build deposited earnest money in the amount of $1,125,000.

The Purchase Agreement contemplated a bankruptcy sale free and clear of liens and encumbrances pursuant to 11 U.S.C. § 363 and required the Trustee to deliver fee simple title to the Property *as well as* the documents necessary to consummate the transaction in accordance with the Purchase Agreement and the order approving the sale. As is commonplace in commercial real estate transactions, the transaction necessarily contemplated the issuance of commercially

3

acceptable owner's and lender's title insurance policies without exceptions materially impairing Build's ownership or its lender's mortgage and security interest.

RRSB supported approval of the sale to Build. The Purchase Agreement was thereafter presented to this Court for approval pursuant to 11 U.S.C. § 363 along with a proposed order.

Following notice and hearing, this Court entered its Order Approving Motion for Sale of Real Estate, Free of Liens and Encumbrances Pursuant to 11 U.S.C. § 363(f). The Court subsequently entered its Amended Order Approving Motion for Sale of Real Estate, Free of Liens and Encumbrances Pursuant to 11 U.S.C. § 363(f) and Distribution of Proceeds from the Sale (collectively, the "Sale Order").

The Sale Order expressly approved the sale to Build, as the Successful Bidder, in accordance with the terms of the Purchase Agreement. The Sale Order further provided that, if Build failed to close by the Closing Date or otherwise defaulted under the Purchase Agreement, the Trustee was authorized to consummate a sale to Archer as the designated backup purchaser.

Following entry of the Sale Order, Build diligently worked toward consummation of the transaction. Build pursued financing, coordinated with the Trustee, title companies, and lenders, and remained prepared to close the transaction upon satisfaction of the contractual conditions necessary for closing.

As closing approached, however, significant issues arose concerning the Trustee's ability to convey marketable title to the Property with commercially insurable title as contemplated by the Purchase Agreement. The title insurer advised that it would not issue commercially acceptable title insurance under the Sale Order as originally entered unless numerous liens and encumbrances were excepted from coverage.

4

Those proposed exceptions included mortgages, mechanics' liens, lis pendens, bankruptcy-related matters, and other interests the bankruptcy sale was intended to address through a sale free and clear under 11 U.S.C. § 363. A title policy containing those exceptions would not insure marketable title as contemplated by the Purchase Agreement or required by Build's lender.

Build promptly communicated those concerns to the Trustee and the closing participants. It did so in good faith. Build did not repudiate the Purchase Agreement or abandon the transaction. Rather, Build continued working toward a closing structure under which the Trustee could satisfy the Purchase Agreement and deliver commercially insurable title.

The title insurance issues were not hypothetical and were not unique to a single title company. Multiple title insurers declined to insure marketable title under the Sale Order as originally entered.  The Trustee subsequently acknowledged those very issues by filing a motion under Rule 60 requesting amendment of the Sale Order because the original Sale Order could not convey marketable title under South Dakota law.

The Trustee's Rule 60 motion confirmed that the inability to close was not simply the product of an unexplained refusal by Build to perform. Rather, genuine issues existed concerning whether the Trustee could satisfy the closing requirements contemplated by the Purchase Agreement and the Sale Order.

Notwithstanding those unresolved issues, the Trustee asserted that Build defaulted by failing to close on the scheduled Closing Date and further asserted that Build's $1,125,000 earnest-money deposit was subject to forfeiture. Build disputes those assertions. Build maintains that it remained ready, willing, and able to consummate the transaction. Build further maintains that any failure to close resulted from the Trustee's inability to satisfy those obligations and conditions, including the delivery of marketable title and commercially acceptable and insurable title.

5

To resolve those disputes, Build commenced the pending adversary proceeding seeking declaratory, equitable, and related relief concerning the Purchase Agreement, the Sale Order, and the parties' respective rights and obligations. Among other relief, Build seeks that the Trustee failed to satisfy obligations necessary to consummate the transaction, that the Trustee prevented or excused Build's performance, and that the contractual conditions authorizing the Trustee to proceed with the backup sale therefore never occurred.

Concurrently with the adversary complaint, Build filed its Emergency Motion for Temporary Restraining Order and Preliminary Injunction requesting that this Court preserve the status quo and prevent conveyance of the Property to Archer or any other purchaser until the Court determines whether Build defaulted under the Purchase Agreement and whether the Trustee acquired authority to proceed with the backup sale. The requested injunctive relief is intended to preserve this Court's ability to grant meaningful relief and in recognition of the unique nature of real estate transactions under South Dakota law. If the Property is conveyed to Archer or any other party before the parties' contractual rights are adjudicated, Build's contractual right to acquire this unique parcel of real property will be permanently lost, and its claims for specific performance may become unavailable as a practical matter.

The consequences to the bankruptcy estate are likewise substantial. Build's approved purchase price is $11,265,000. Archer's backup purchase price is $6,100,000. Thus, before any determination that Build actually defaulted, the estate stands to relinquish a purchase agreement providing approximately $5.165 million more in gross sale proceeds than the proposed backup transaction. In addition, if the Property is conveyed to Archer and Build ultimately prevails on its claims that the Trustee breached the Purchase Agreement or improperly prevented Build from closing, the estate may be exposed to substantial damage claims, including Build's asserted claim

6

that such damages constitute administrative expenses arising from the Trustee's post-petition conduct.

Rather than litigate those issues in the pending adversary proceeding, RRSB filed the present Expedited Motion to Enforce Sale Order in the main bankruptcy case. RRSB is not a plaintiff, defendant, or intervenor in the adversary proceeding. Through its Motion, RRSB asks this Court to summarily dismiss substantial portions of Build's adversary complaint, confirm that the Trustee may immediately proceed with the Archer sale, and limit Build's remedies to disposition of its earnest-money deposit. Although styled as a motion to "enforce" the Sale Order, the Motion necessarily requires this Court to determine the central disputed contract issues between Build and the Trustee in the adversary proceeding.

RRSB has not sought to intervene in the adversary proceeding pursuant to Bankruptcy Rule 7024. Nor has it filed a motion to dismiss or motion for summary judgment in that proceeding. Instead, RRSB seeks dispositive relief through an expedited contested matter filed in the main bankruptcy case.

RRSB's assertion of urgency rests principally upon speculation that Archer's backup transaction could be jeopardized by delay. However, RRSB has submitted nothing supporting that Archer intends to terminate its purchase agreement. There is therefore no basis for concluding that preserving the status quo pending resolution of the parties' contractual rights will cause Archer to withdraw. By contrast, consummation of the backup sale before adjudication of the issues presented in the adversary proceeding will permanently extinguish Build's contractual rights, eliminate any meaningful opportunity for specific performance, expose the estate to potentially significant damage claims, and cause the estate to accept approximately $5.165 million less than Build's approved purchase price before any determination that Build actually defaulted.

7

**ARGUMENT**

**A.**     **The Motion Should be Denied Because It Seeks a Merits Determination of Disputed Issues that are the Subject of a Pending Adversary Proceeding to which RRSB is Not a Party.**

RRSB repeatedly characterizes its Motion as one seeking to "enforce" the Sale Order. Instead, it asks this Court to dismiss substantial portions of the pending adversary complaint, deny Build's request for injunctive relief, authorize the Trustee to proceed immediately with the backup sale, and limit Build's remedies to disposition of its earnest money deposit. Each of those requests requires determination of disputed factual and legal issues presently pending before this Court in the adversary proceeding.

Those issues include, among others: whether the Trustee satisfied his obligations under the Purchase Agreement to convey marketable title; whether the Trustee was capable of conveying commercially insurable title; whether the Trustee prevented or excused Build's performance; whether Build committed the alleged default; whether the contractual condition authorizing the backup sale occurred; whether specific performance remains available; and whether injunctive relief is necessary to preserve the Court's ability to grant meaningful relief. These issues cannot, as RRSB suggest, be properly resolved through an expedited contested matter filed in the main bankruptcy case.

The fact that the transaction did not close on the scheduled Closing Date does not answer the question presented here. The issue before this Court is why the transaction failed to close. Build contends that it remained ready, willing, and able to perform, but that the Trustee could not satisfy the contractual conditions necessary for closing, including the ability to deliver marketable and insurable title. The Trustee disputes those assertions. Those competing positions present classic

8

questions of contractual performance, prevention of performance, conditions precedent, and alleged default. The Sale Order resolved none of those issues.

Indeed, the Trustee's own Rule 60 motion demonstrates precisely why no such determination can simply be presumed. After the scheduled closing date, the Trustee sought amendment of the Sale Order because multiple title insurers communicated that the original Sale Order could not convey marketable and insurable title. The Trustee's motion necessarily acknowledged that genuine issues existed concerning the parties' ability to consummate the transaction under the approved sale structure. Those issues remain unresolved. RRSB cannot convert that unresolved factual and legal dispute into an established fact in the summary fashion it seeks.

**B.      The Pending Adversary Proceeding Seeks to Enforce, Not Attack, the Sale Order.**

A central premise of RRSB's Motion is incorrect. Build has never sought to vacate, modify, reconsider, appeal or otherwise invalidate the Sale Order. To the contrary. Build seeks enforcement of the Sale Order and to close the sale of the Property to Build. The adversary proceeding asks this Court to determine whether the Trustee's inability to satisfy the conditions necessary for closing prevented Build from performing under the Purchase Agreement. Resolution of that issue enforces, not attacks, the Sale Order.

The principles cited by RRSB's own authorities presuppose that Build seeks to alter or undo the order itself. Neither circumstance exists here. Unlike the authorities cited by RRSB, Build does not seek to unwind a completed bankruptcy sale, reopen bidding procedures, vacate a final sale order, or relitigate an auction process. This case is not about the finality of the Sale Order.

9

**C.**     **The Trustee's own Rule 60 Motion Confirms that Genuine Issues Exist Regarding The Purchase Agreement.**

Perhaps the most significant omission from RRSB's Motion is the Trustee's own Rule 60 motion.  After the scheduled closing date, the Trustee requested amendment of the Sale Order because multiple title insurers communicated the Sale Order could not convey marketable title as originally entered, which would allow for issuance of title insurance. That filing is fundamentally inconsistent with RRSB's contention that Build simply failed to close. The Trustee cannot simultaneously acknowledge that amendment of the Sale Order became necessary because the transaction could not be completed under the original Sale Order while RRSB asks this Court to presume that Build alone defaulted. At minimum, the Trustee's Rule 60 motion demonstrates the existence of substantial factual and legal disputes concerning whether the Trustee could satisfy the contractual conditions necessary for closing.  Those disputes require adjudication. They cannot be simply presumed away.

**D.**     **RRSB Cannot Obtain Dispositive Relief Concerning Claims Pending in an Adversary Proceeding to which it is Not a Party.**

Although RRSB is a creditor and party in interest in the bankruptcy case, it is not a party to the pending adversary proceeding. Nevertheless, RRSB asks this Court to summarily dismiss Build's claims, determine the merits of those claims, and limit the relief available to Build.

The Federal Rules of Bankruptcy Procedure establish procedures for litigating disputes pending in adversary proceedings or otherwise seeking the functional equivalent of declaratory relief. *See, e.g.,* Fed. R. Bankr. P. 7001 et seq. RRSB has not sought intervention pursuant to Bankruptcy Rule 7024. Instead, RRSB seeks to obtain dispositive relief through a contested matter filed in the main bankruptcy case. Nothing in the Bankruptcy Rules authorizes such an end-run

10

around the procedures governing adversary proceedings. The Motion should therefore be denied for that reason alone.

**E.      RRSB has Failed to Establish Any Basis for Expedited Relief.**

RRSB's request for expedited relief rests entirely upon speculation. It offers no support that Archer intends to withdraw. By contrast, Build has demonstrated precisely the opposite. If the Property is conveyed before adjudication, Build's rights will be permanently extinguished. Specific performance may become impossible. The estate will relinquish a purchase agreement exceeding the backup proposal by more than $5 million.   The balance of equities therefore overwhelmingly favors preservation of the status quo until the parties' contractual rights are determined.

**F.       Equity and the Purposes of Chapter 7 Favor Preserving the Status Quo.**

The Trustee accepted Build's offer because it maximized value for the estate.  RRSB now asks the Court to authorize a substitute transaction producing approximately $5.165 million less in gross sale proceeds before the Court determines the parties disputed factual issues. If Build ultimately prevails, the estate will have surrendered millions of dollars in value while simultaneously exposing itself to substantial damages. Conversely, preserving the status quo while the Court determines the parties' rights creates little prejudice. RRSB has produced no competent evidence that Archer will withdraw. Indeed, Archer has continued its due diligence. Fundamental fairness therefore favors resolving the parties' contractual rights before irrevocably transferring the Property.

11

## CONCLUSION

WHEREFORE, Build, the Successful Bidder, respectfully requests that the Court Deny RRSB's Expedited Motion in its entirety and award Build its costs and such further relief as the Court deems just and proper.

Dated this 21st day of July, 2026.

/s/ Douglas W. Murch
Douglas W. Murch, ND ID #05983
CONMY FESTE LTD.
3369 45th Street South
Fargo, ND  58104
(701) 293-9911
dmurch@conmylaw.com

ATTORNEY FOR BUILD, LLC

12

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In re:<br><br>The Ruins, LLC,<br><br>        Debtor. | Bankruptcy Case No.:  25-30004<br><br>Chapter 7 |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that she is an employee at the law firm of Conmy Feste Ltd., and is a person of such age and discretion as to be competent to serve papers.

That on July 21, 2026, she served a copy of:

**BUILD, LLC'S RESPONSE IN OPPOSITION TO EXPEDITED MOTION OF
RED RIVER STATE BANK TO ENFORCE THE AMENDED ORDER APPROVING
MOTION FOR SALE OF REAL ESTATE, FREE OF LIENS AND ENCUMBRANCES,
PURSUANT TO 11 U.S.C. 363(F) AND DISTRIBUTION OF
PROCEEDS FROM THE SALE**

electronically by Notice of Electronic Filing upon all parties who have requested service in this case by filing the same via ECF with the Bankruptcy Court in the District of North Dakota.

/s/ *Leslyn A. Anderson*
Leslyn A. Anderson

13